John H. Gomez, Esq. (SBN: 171485)
**GOMEZ TRIAL ATTORNEYS**
655 W. Broadway, Suite 1700
San Diego, CA 92101
Phone: (619) 237-3490
Facsimile: (619) 237-3496
Email: jgomez@thegomezfirm.com

Pete Patterson (Federal ID# 13074) (Pro Hac Vice Application Pending)
**PATTERSON, PC**
4309 Yoakum Blvd., Ste. 2000
Houston, Texas 77006
Phone: (713) 874-6444
Facsimile: (713) 874-6445
Email: pete@pyllp.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENSOURCE INEVESMENTS LLC, a Delaware limited liability company,<br><br>                             Plaintiff,<br><br>v.<br><br>THOMAS P. TATHAM, an individual; MARK A. WILLIS, an individual; PDP MANAGEMENT GROUP, LLC, a Texas limited liability company; TITLE ROVER, LLC, a Texas limited liability company, BEYOND REVIEW, LLC, a Texas limited liability company; IMAGE ENGINE, LLC, a Texas limited liability company; WILLIS GROUP, LLC, a Texas limited liability company,<br><br>                         Defendants. | Case No.: 3:17-CV-00079-H-JMA<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR TO TRANSFER VENUE**<br><br>**Date: March 13, 2017**<br>**Time: 10:30AM**<br>**Courtroom: 15A**<br>**Honorable Marilyn L. Huff** |

-1-

1

# **TABLE OF CONTENTS**

2
Page

3   I.   FACTS ........................................................................................ 4

4   II.   DISMISSAL UNDER RULE 12 ................................................. 7

5

6   A.   Dismissal for Lack of Personal Jurisdiction Under
        Rule 12(b)(2) ..................................................................... 7

7
        1.   Legal Standard ........................................................ 7

8       2.   Personal Jurisdiction Does Not Lie in California .................... 8

9           a)   EnSource Cannot Establish General Jurisdiction ............ 8

10          b)   EnSource Cannot Establish Specific Jurisdiction ........... 10

11

12  B.   Dismissal or Transfer for Improper Venue Under
        Rule 12(b)(3) and 28 USC§1406(a) ................................ 11

13
        1.   Legal Standard ...................................................... 11

14      2.   California Venue is Improper ................................ 11

15  C.   Dismissal for Failure to State a Claim Under Rule 12(b)(6) .......... 12

16  III.   CONCLUSION .......................................................................... 15
17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

*Cases*                                                                                              **Page**

3

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ........................................................ 13

4

*Atlantic Marine Constr. Co., Inc. v. U.S. District Court*
    *for the Western District of Texas*, 134 S.Ct. 568 (2013)............................ 11

5

6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 555 (2007)................................................ 13

7

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ....................................7, 8

8

*Calder v. Jones*, 465 U.S. 783 (1984) ................................................................. 8

9

*Daimler AG v. Bauman*, 187 L. Ed. 2d 624 (2014)............................................9

10

*Estate of Townes v. Townes*, 867 S.W.2d 414
    (Tex. App. – Houston [14th Dist.] 1993, writ denied) ............................... 14

11

12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    131 S. Ct. 2846 (2011) .............................................................................9

13

14

*J. McIntyre Machinery Ltd. v. Nicastro*, 564 U.S.873 (2011)......................... 8

15

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006) ............................ 7, 8, 9, 10

16

17

***Rules and Statutes***

18

Fed. R. Civ. P. 12(B)(2)(3) and (6).................................................................... 4, 7, 11, 12

19

28 U.S.C. §1391 ..................................................................................................... 11

20

28 U.S.C. §1404..................................................................................................... 4, 12

21

28 U.S.C. §1406..................................................................................................... 4, 12

22

23

24

25

26

27

28

Defendants, THOMAS P. TATHAM, an individual ("Tatham"); MARK A. WILLIS, an individual ("Willis"); PDP MANAGEMENT GROUP, LLC, a Texas limited liability company; TITLE ROVER, LLC, a Texas limited liability company, BEYOND REVIEW, LLC, a Texas limited liability company; IMAGE ENGINE, LLC, a Texas limited liability company; and WILLIS GROUP, LLC, a Texas limited liability company (collectively, the "Texas LLC Defendants") move to dismiss the Complaint filed by Plaintiff, ENSOURCE INVESTMENTS LLC, a Delaware limited liability company ("Ensource") pursuant to Rule 12(B)(2)(3) and (6) of the Federal Rules of Civil Procedure and 28 U.S.C. §1406(a), or alternatively (if necessary) to transfer venue to the United States District Court for the Southern District of Texas (Houston Division) under the authority of 28 U.S.C. §1404(a) or 1406(a).

## I.     FACTS

1.     Plaintiff Ensource Investments, LLC ("Ensource") did not exist (and thus could not have done business) until August 31, 2016 (**Ex. 1**).  After August 30, 2016, none of the Defendants traveled to California or intentionally directed any communications or solicitations to California (Tatham Affid. ¶3; Willis Affid. ¶3).  Even if any of Ensource's representatives happened to be in California when receiving or opening a telephone call, text message, or email from any one or more of the Defendants, the Defendants did not know where Ensource's representatives would choose to receive these communications, and Defendants did not aim their communications at California (Tatham Affid. ¶3; Willis Affid. ¶3).

2.     Plaintiff Ensource and non-party Hopewell executed the September 29, 2016 Subscription Agreement (the "Ensource Subscription Agreement," **Ex. 2**).  Ensource was represented by counsel and conducted its own, extensive due-diligence, using materials Hopewell provided to Ensource in Texas before Ensource executed the Ensource Subscription Agreement (Tatham Affid. ¶4; Willis Affid. ¶4).  Even if any of Ensource's representatives happened to be in California when reviewing due diligence materials, the

-4-

Defendants did not know or intend for the materials to reach Ensource's representatives in California rather than in some other jurisdiction (Tatham Affid. ¶4; Willis Affid. ¶4).

3.     Among other things, the Ensource Subscription Agreement (**Ex. 2**), executed by Ensource, expressly provides and admits:

**at 3(g)**: Ensource "is aware of and understands each of the risks and conflicts of interest inherent of an investment in [Hopewell] as set forth in the Memorandum;" and

**at 5(d)**: "No representations or warranties have been made to [Ensource] by [Hopewell], [Hopewell's] Managers, or any agent thereof other than as set forth in the Company Agreement and this Agreement."

4.     Ensource, together with Hopewell's other members, executed the Third Amended and Restated Company Agreement of Hopewell-Pilot Project, LLC (the "Company Agreement," **Ex. 3**) effective September 1, 2016.  The Company Agreement defines Company Business and Area of Mutual Interest to be centered in Madison County, Texas, and four other Texas counties, with no indication of any intent to do business outside of Texas (**Ex. 3 at 1.1**; Tatham Affid. ¶5; Willis Affid. ¶5).  The Company Agreement and the Ensource Subscription Agreement both provide for Texas law to apply to any disputes (**Ex. 2 at ¶14**; **Ex. 3 at ¶13.7**; Tatham Affid. ¶5; Willis Affid. ¶5).

5.     None of the defendants intend to voluntarily submit to the jurisdiction of this Court if requested (Tatham Affid. ¶6; Willis Affid. ¶6).   None of the Texas LLC Defendants nor Hopewell have ever registered to do business in California, nor have they ever maintained an office in California, nor do they have any officers, employees, or registered agents for service of process in California (Tatham Affid. ¶7; Willis Affid. ¶7). None of the Defendants nor Hopewell maintain a telephone listing, mailing address or post office box located in California (Tatham Affid. ¶7; Willis Affid. ¶7).

6.     None of the Texas LLC Defendants nor Hopewell have ever held a board meeting or other corporate function, official or unofficial, in California (Tatham Affid. ¶8; Willis Affid. ¶8).  No officers, directors, or employees of the Texas LLC Defendants have

traveled to California for the business of Hopewell or of the Texas LLC Defendants (Tatham Affid. ¶8; Willis Affid. ¶8).  While in California on personal matters, Tatham and Willis each had one or two informal discussions about Hopewell no later than August 12, 2016, and before Ensoure was formed on August 31, 2016 (Tatham Affid. ¶8; Willis Affid. ¶8; **Ex. 1**).  As noted above, Ensoure admitted in the Ensoure Subscription Agreement that Ensoure did not receive any representations or warranties during those discussions (**Ex. 2 at 5d**).  None of the defendants or Hopewell ever recruited any California residents for employment (Tatham Affid. ¶8; Willis Affid. ¶8).

7.     Tatham sold a California house no later than 1988, and then never again owned or leased any California property (Tatham Affid. ¶9).  Willis co-signed his daughter's California apartment lease, but has never otherwise owned or leased any California property (Willis Affid. ¶9).  None of the Texas LLC Defendants, nor Hopewell, have ever owned, leased or sold any California property (Tatham Affid. ¶9; Willis Affid. ¶9).  None of the defendants (nor Hopewell) have ever sold any products or services in California (Tatham Affid. ¶9; Willis Affid. ¶9).

8.     Tatham has not maintained a California bank account since 1988, and none of the other defendants have ever maintained a California bank account (Tatham Affid. ¶10; Willis Affid. ¶10).  Tatham does not recall ever being involved in a California lawsuit (any suit would have occurred decades ago), and none of the other defendants (nor Hopewell) have ever been parties to a California lawsuit (Tatham Affid. ¶10; Willis Affid. ¶10).

9.     None of the defendants nor Hopewell have ever directly and purposefully conducted business in California (Tatham Affid. ¶11; Willis Affid. ¶11).  By act or omission, none of the defendants nor Hopewell have ever directly and purposefully availed themselves of California courts or California business (Tatham Affid. ¶11; Willis Affid. ¶11).

10.     All of the defendants and Hopewell are Texas residents (Tatham Affid. ¶12; Willis Affid. ¶12).  Hopewell's records for this transaction are in Texas, and Hopewell's plan was always to acquire Texas mineral interests (Tatham Affid. ¶12; Willis Affid. ¶12).

Due diligence conducted on behalf of Ensource was conducted with materials provided in Texas, and thus the witnesses to Ensource's due diligence are virtually all in Texas (Tatham Affid. ¶12; Willis Affid. ¶12).  On information and belief, only one of Ensource's principals resides in California, while at least three (3) of Ensource's principals reside in Texas (Tatham Affid. ¶12; Willis Affid. ¶12). For the convenience of parties and witnesses, and in the interest of justice, any civil action regarding Ensource's investment in Hopewell must be conducted in Texas (Tatham Affid. ¶12; Willis Affid. ¶12).

## II.    DISMISSAL UNDER RULE 12

11.    The Complaint (**Dkt 1**) fails to allege any facts supporting California jurisdiction over these Texas defendants consistent with due process.  In the Complaint, plaintiff EnSource alleges only that purported federal securities law violations necessarily mean jurisdiction must lie in some federal court, and that venue is allegedly proper in this Honorable Court because unspecified "acts and practices complained of herein occurred in part in the District" (Complaint at ¶7).

**A.    Dismissal for Lack of Personal Jurisdiction Under Rule 12(b)(2)**

12.    Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Plaintiff's Complaint as to defendants should be dismissed for lack of personal jurisdiction.  The named defendants are not subject to personal jurisdiction in this Court. The plaintiff cannot cure the lack of personal jurisdiction, and the Court should dismiss the Complaint as to all named defendants.

**1.    Legal Standard**

13.    A federal court may not exercise personal jurisdiction over a nonresident defendant unless the exercise of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154-55 (9th Cir. 2006).  To be consistent with due process, the Court must conclude: (1) that the defendant has established minimum contacts with the forum state; and, (2) that the exercise of personal jurisdiction over the defendant would not offend traditional notions of fair play and substantial justice. *Burger King Corp. v.*

-7-

1  *Rudzewicz*, 471 U.S. 462, 475- 77 (1985).

2      14.    Plaintiff EnSource is required to make a prima facie showing of jurisdictional

3  facts in order to withstand Defendants' challenge to jurisdiction. *Caddy* at 1154.  Disputed

4  facts (if any) are resolved in Plaintiff's favor.  *Id.*

5          **2.    Personal Jurisdiction Does Not Lie in California.**

6      15.    To satisfy the minimum contacts prong, EnSource must show a defendant

7  "purposefully avails itself of the privilege of conducting activities within the forum state,

8  thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475.

9  "Each defendant's contacts with the forum State must be assessed individually."  *Calder*

10  *v. Jones*, 465 U.S. 783, 790 (1984).

11      16.    Minimum contacts can be established either through contacts sufficient to

12  assert general jurisdiction, or contacts sufficient to assert specific jurisdiction. *J. McIntyre*

13  *Machinery Ltd. v. Nicastro*, 564 U.S.873, 880-81 (2011) (omitting citations).  Minimum

14  contacts for general jurisdiction can be established by the defendant's express consent, by

15  service of the defendant while the defendant is in the jurisdiction, or by showing that the

16  defendant is a resident of the jurisdiction.  *Id.*  Minimum contacts for specific jurisdiction

17  can be established by showing the plaintiff's claims arise from or relate to the defendant's

18  contacts with the forum.  *Id.*

19      17.    The showing of minimum contacts for specific jurisdiction has three essential

20  components: (1) the defendant has performed some act or consummated some transaction

21  within the forum or otherwise purposefully availed himself of the privileges of conducting

22  activities in the forum, (2) the claim arises out of or results from the defendant's forum-

23  related activities, and (3) the exercise of jurisdiction is reasonable. *Caddy* at 1155 (omitting

24  citation).  The Ninth Circuit has refined the first of these three prongs to mean defendant

25  must either (a) purposefully avail itself of the privilege of conducting activities within the

26  forum via defendant's activities within the forum, or (b) purposefully direct its activities

27  toward the forum via defendant's activities conducted outside the forum.  *Id.* at 1155-56.

28          **a)  EnSource Cannot Establish General Jurisdiction.**

-8-

18.     Although EnSource's jurisdictional allegations are vague, they cannot be read to plead general personal jurisdiction. In any event, none of the defendants' contacts meet the exacting standard for general jurisdiction.

19.     A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011); *see also Daimler AG v. Bauman*, 187 L. Ed. 2d 624, 630 (2014).  The general jurisdiction "inquiry under Goodyear is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State." *Diamler*, 187 L. Ed. 2d at 630 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)); *Daimler*, 187 L. Ed. 2d at 639-40 ("[F]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.").

20.     Here, defendants did not consent to California jurisdiction or venue, they were not served with the summons for this case while in California, and the evidence shows all defendants (individual and corporate) are Texas residents lacking the continuous and systematic contacts needed to support general jurisdiction.  The Texas LLC Defendants lack any continuous and systematic contacts with California at all.  Willis' daughter resides in California, but Willis himself does not.  Tatham has not had any continuous or systematic contacts with California since 1988.

21.     In *Caddy*, the Ninth Circuit held that Caddy's past residence in California was insufficient to establish general jurisdiction.  *Caddy* at fn.1.  Even if the Complaint could be construed to allege general jurisdiction (and it cannot), the Complaint's allegations are factually and legally insufficient to make a prima facie showing of general jurisdiction.

22.   The evidence shows the defendants do not maintain an office or other property in California. Defendants do not conduct business in California.  In other words, defendants are not at home in California. Accordingly, defendants are not subject to general personal jurisdiction.

### b)   EnSource Cannot Establish Specific Jurisdiction.

23.   Plaintiff also fails to show that specific jurisdiction exists for its claims against each of the defendants.  EnSource's vague, conclusory reference to unspecified "acts and practices" cannot establish compliance with due process.

24.   EnSource did not exist before August 31, 2016, and Ensource admitted in the Ensource Subscription Agreement that Ensource did not receive any representations or warranties during the two or three informal discussions which preceded EnSource's formation (**Ex. 2 at 5d**).  EnSource has failed to describe those informal discussions or allege: (a) which (if any) of the Texas LLC Defendants purportedly participated in those informal discussions; (b) which (if any) of the defendants allegedly owed a duty to disclose purportedly concealed facts during those discussions; (c) the source (if any) of any defendants' alleged duty to disclose which purportedly existed during these informal discussions; or (d) how that alleged duty to disclose arose before EnSource embarked on its formal due diligence review.

25.   In *Caddy*, the Pebble Beach golf resort sued Michael Caddy for Caddy's use of the name "Pebble Beach" to identify Caddy's bed-and-breakfast located in southern England and overlooking a beach made of pebbles.  Caddy advertised his Pebble Beach resort via a passive website which provides information but does not accept reservations. The Ninth Circuit expressly rejected "any contention that a passive website constitutes expressed aiming." *Caddy* at 1158.  The *Caddy* opinion held that Caddy was not subject to personal jurisdiction in California, and "the fact that Caddy's website is not directed at California is controlling." *Caddy* at 1158 and 1160.

26.   Here, non-party Hopewell provided information for EnSource's due diligence by uploading that data in Texas for EnSource to review from any location, in the same

manner as a passive website provides information for viewers from all over the world.  Just as in *Caddy*, the fact that Hopewell's due-diligence information **could** be viewed from California did not mean the information was **aimed at** California.

27.    EnSource therefore cannot show that EnSource's claims arise from any of the defendants' meager California contacts.   Moreover, EnSource cannot show that the exercise of personal jurisdiction in California is reasonable as to claims which cry out for Texas jurisdiction. This civil action must be dismissed as to all (or at least some) defendants for EnSource's inability to plead facts supporting personal jurisdiction which does not violate defendants' rights to constitutional due process.

**B.    Dismissal or Transfer for Improper Venue Under Rule 12(b)(3) and 28 USC§1406(a)**

28.    California venue is wrong or improper, and this case must therefore be dismissed or transferred to another court of proper venue – such as the United States District Court for the Southern District of Texas (Houston Division).

### 1.    Legal Standard

29.    "When venue is challenged, the court must determine whether the case falls within one of the three categories …" in 28 U.S.C. §1391(b): "[a] civil action may be brought in— (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *Atlantic Marine Constr. Co., Inc. v. U.S. District Court for the Western District of Texas*, 134 S.Ct. 568, 577 (2013).  If the case does not fall within one of these three categories, then venue is improper and the case must be dismissed or transferred.  *Id.* (omitting citation).

### 2.    California Venue is Improper

-11-

30.     The first of the three categories does not apply because none of the defendants are California residents.  Indeed, all of the defendants are Texas residents, so that Texas venue would be proper under the first category.  The third category does not apply because there is a district (the Southern District of Texas) in which the civil action could be brought, and in any event we have already seen that this Honorable Court lacks personal jurisdiction over the defendants.

31.     Thus, venue in this Honorable Court is improper unless "a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. §1391(b).  EnSource's Complaint fails to support this basis for venue because it includes only the vague, conclusory allegation that some unspecified "acts and practices complained of herein occurred in part in the District."

32.     EnSource's Complaint fails to allege that the acts or practices purportedly occurring in the District were a "substantial part" of the events or omissions giving rise to EnSource's claims.  Indeed, the evidence shows there were no events or omissions in California giving rise to EnSource's claims, or at the very least that any such events or omissions were not a substantial part of those claims.

33.     EnSource failed to establish that venue is proper in California because EnSource cannot do so.  Moreover, even if venue were somehow proper in California, venue in the Southern District of Texas is still more convenient.   This case must be dismissed or transferred to the United States District Court for the Southern District of Texas under 28 U.S.C. §1404(a) or 1406(a), where non-party Hopewell is even now filing suit against EnSource, seeking damages for EnSource's breach of its agreement to provide capital to Hopewell.

**C.     Dismissal for Failure to State a Claim Under Rule 12(b)(6).**

34.     Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff's Complaint should be dismissed for failure to state a claim against any Defendant upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

-12-

on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570 (2007)).

### 1.    Legal Standard

35.    "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[If] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1940-41. Determining whether relief is "plausible" is not static, but requires a Court to construe the claims in light most favorable to plaintiff and "to draw on its judicial experience and common sense." *Id.* at 1940.

36.    When reviewing the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S.Ct. at 1949-50. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See Iqbal*, 129 S.Ct. at 1949 (*quoting Twombly*, 550 U.S. at 570).

### 2.    EnSource's Complaint Fails to State a Claim

37.    EnSource complains extensively of the defendants' alleged failure to disclose non-party Hopewell's financial condition.  If necessary, the evidence will eventually show these allegations are false – but for now, the allegations are merely insufficient because there are no allegations identifying the alleged source of each defendants' purported duty to disclose the information allegedly withheld.   If the duty of disclosure arose from misleadingly incomplete statements, EnSource has failed to identify those allegedly incomplete statements.

38.    EnSource's Complaint cites the attached Private Placement Memorandum, but fails to allege how and why EnSource proceeded in reliance on that document even after it was superseded by the EnSource Subscription Agreement and the Company Agreement as referenced in the Private Placement Memorandum itself but omitted from EnSource's Complaint (**Dkt. At page 21**).

-13-

39.     In fact, EnSource claims that it was not told its money would be used for Hopewell's pre-existing operating expenses, but the Private Placement Memorandum attached to EnSource's Complaint clearly says the money was sought "for working capital to continue [Hopewell's] operations …" (**Dkt. 1 at page 18**), and that the money raised would "be used to fund all operating overhead of [Hopewell] through December 31, 2016, and for the acquisition of Mineral Interests …" (**Dkt. 1 at page 19**).  EnSource's Complaint fails to explain how EnSource could have been surprised to learn its funds were applied to Hopewell's operating overhead.

40.     EnSource's Complaint alleges that defendants "syphoned off" the funds EnSource contributed to Hopewell, and that the amounts of Hopewell's payments to those defendants were never disclosed.  However, EnSource fails to allege that the affiliation of these vendors was not known to EnSource, that Hopewll's outstanding obligation to those vendors was not known to EnSource, that these affiliated vendors did not earn their payments, that Hopewell's payments to these affiliated vendors were not disclosed to EnSource, or that these payments were otherwise improper.

41.     Indeed, the Private Placement Memorandum warned that Hopewell was incurring $17,500 per month in direct costs from defendant Title Rover, LLC, not including the cost of acquiring data (**Dkt. 1 at page 20**).  EnSource's Complaint fails to explain how EnSource was misled about Hopewell's obligations to Title Rover, LLC in light of this disclosure.

42.     EnSource pleads conversion, but conversion is not a valid cause of action for EnSource's cash.  "Money is subject to conversion only when it can be described or identified as a specific chattel, and not where an indebtedness may be discharged by the payment of money generally." *Estate of Townes v. Townes*, 867 S.W.2d 414, 419 (Tex. App. – Houston [14th Dist.] 1993, writ denied).  EnSource cannot state a valid cause of action for conversion.

/ / /

/ / /

-14-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.    CONCLUSION

For these reasons, Defendants request that this Court dismiss Plaintiff's Original Complaint without prejudice, or alternatively, that this civil action be transferred to the United States District Court for the Southern District of Texas (Houston Division), and that defendants be granted all further relief to which they may be entitled.


DATED:       February 9, 2017                Respectfully admitted,

**GOMEZ TRIAL ATTORNEYS**


/s/ John H. Gomez, Esq.

-15-