1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

10

11

12

13

14

15

16

17

18

19

| | |
|---|---|
| ENSOURCE INVESTMENTS LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS P. TATHAM, an individual; MARK A. WILLIS, an individual; et al.,<br><br>Defendants. | Case No.:  3:17-cv-00079<br><br>**ORDER:**<br>**1. DENYING RULE 12(b)(2) MOTION TO DISMISS**<br>**2. DENYING RULE 12(b)(3) MOTION TO DISMISS**<br>**3. DENYING RULE 12(b)(6) MOTION TO DISMISS**<br>**4. DECLINING TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404**<br><br>[Doc. No. 8] |

20

21

22

23

24

25

26

27

28

On January 13, 2017, Plaintiff EnSource Investments LLC filed a complaint against Defendants Thomas P. Tatham, Mark A. Willis, and five limited liability companies controlled by Tatham and Willis.[1] (Doc. No. 1.) The First Claim is against Tatham and Willis only for violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. The Second Claim is against all Defendants for conversion.

On February 9, 2017, Defendants filed a motion to dismiss for lack of personal

---

[1] The limited liability companies are: PDP Management Group LLC, Title Rover LLC, Beyond Review LLC, Imagine Engine LLC, and Willis Group LLC.

1    jurisdiction, improper venue, and failure to state a claim. (Doc. No. 8.) In the alternative,
2    Defendants seek a transfer of venue to the Southern District of Texas. On February 27,
3    2017, Plaintiff filed its opposition. (Doc. No. 13.) Defendants did not file a reply. Pursuant
4    to its discretion under Local Rule 7.1(d)(1), the Court determined that the motion was fit
5    for resolution without oral argument and submitted the motion on the parties' papers. (Doc.
6    No. 14.) For the reasons below, the Court denies the motion to dismiss in full and declines
7    to transfer venue.

8    **Background**

9    This action arises out of a securities transaction by which Plaintiff invested in an
10   entity called the Hopewell – Pilot Project, LLC ("Hopewell"). (Doc. No. 1 at 2, ¶¶ 1-3.)
11   Hopewell was created to deploy title searching technology in order to quickly find viable
12   oil and gas opportunities. (Doc. No. 1 at 12, ¶¶ 35-38; Id. at 18, Ex. A_002.) Defendants
13   Tatham and Willis are purportedly managers of Hopewell. (Doc. No. 1 at 4, ¶¶ 9-10.)
14   Tatham and Willis have submitted declarations stating that they traveled to California in
15   August, 2016 and had conversations about Hopewell. (Doc. Nos. 8-3 at 4, ¶ 8; 8-4 at 4, ¶
16   8; 8-1 at 6, ¶ 6.) In the opposition brief, Plaintiff states that Tatham and Willis were in
17   California to pitch the Hopewell project. (Doc. No. 13 at 6.) Plaintiff also states that
18   EnSource, the Plaintiff LLC in this action, was formed based on the representations made
19   during the initial meetings with Tatham and Willis. (Id.) EnSource was formed later in the
20   same month that Tatham and Willis travelled to California. (Doc. No. 8-5.)

21   According to Plaintiff, the securities transaction was a scheme to commit fraud.
22   (Doc. No. 1 at 2, ¶ 1.) Tatham and Willis allegedly concealed Hopewell's insolvency, even
23   when the entity's financial condition was inquired into. (Id. ¶¶ 1, 16-22.) Tatham and Willis
24   also allegedly used Plaintiff's investment to pay entities they owned and controlled, while
25   representing that the money would fund go-forward activities. (Id. ¶¶ 1, 23-30). They also
26   purportedly made misrepresentations regarding Hopewell's licensed technology and the
27   progress and potential payoff of the endeavor. (Id. ¶¶ 1, 31-38.) Plaintiff claims to have
28   lost $430,000 through its purchase of the Hopewell securities. (Id. ¶ 8.)

2

<u>**Discussion**</u>

**I.      Legal Standards**

      **A.      Motion to Dismiss for Improper Venue**

Pursuant to Federal Rule of Civil Procedure 12(b)(3), a complaint may be dismissed if it is brought in an improper venue. The plaintiff bears the burden of showing that venue is proper in the chosen district. <u>Piedmont Label Co. v. Sun Garden Packing Co.</u>, 598 F.2d 491, 496 (9th Cir. 1979). In considering a motion to dismiss under Rule 12(b)(3), the pleadings need not be accepted as true and the court may consider supplemental written materials and consider facts outside of the pleadings. <u>Murphy v. Schneider Nat'l, Inc.</u>, 362 F.3d 1133, 1137 (9th Cir. 2004). If genuine contested factual issues are presented, the court is obligated to draw all reasonable inferences and resolve the factual conflicts in favor of the non-moving party. <u>Murphy</u>, 362 F.3d at 1138-1140. Alternatively, the court may hold a pre-trial evidentiary hearing on the disputed facts or may deny the motion with leave to re-file if further development of the record would eliminate any genuine factual issues. <u>Id.</u> at 1139.

      **B.      Motion to Transfer Venue**

A district court may transfer an action to a different venue under 28 U.S.C. § 1404(a). Section 1404(a) permits a court to transfer an action "[f]or the convenience of parties and witnesses" and "in the interest of justice," so long as the action could have been filed in the transferee district in the first instance. 28 U.S.C. § 1404(a). The district court must "adjudicate motions for transfer [of venue] according to an individualized, case-by-case consideration of convenience and fairness." <u>Jones v. GNC Franchising, Inc.</u>, 211 F.3d 495, 498 (9th Cir. 2000) (quoting <u>Stewart Org. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988) (internal quotation marks omitted)).

In deciding a motion to transfer venue, the court typically weighs a number of public and private factors, including: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the

1  contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences

2  in the costs of litigation in the two forums, (7) the availability of compulsory process to

3  compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources

4  of proof." Jones, 211 F.3d at 498-99.

5  　　　The burden is generally on the moving party to establish that a transfer will allow a

6  case to proceed more conveniently and better serve the interests of justice. See, e.g.,

7  Commodity Futures Trading Comm., 611 F.2d at 279. A plaintiff's choice of venue is

8  generally accorded deference. See, e.g., Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)

9  ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum

10 should rarely be disturbed"); Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d

11 834, 842 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to

12 warrant upsetting the plaintiff's choice of forum").

13 　　　**C.　　Motion to Dismiss for Lack of Personal Jurisdiction**

14 　　　Pursuant to Federal Rule of Civil Procedure 12(b)(2), a complaint may be dismissed

15 for lack of personal jurisdiction. The plaintiff bears the burden of establishing that the court

16 has jurisdiction over the defendant. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th

17 Cir. 2006). But this demonstration requires that the plaintiff "make only a prima facie

18 showing of jurisdictional facts to withstand the motion to dismiss." Love v. Assoc'd.

19 Newspapers, Ltd., 611 F.3d 601, 608 (9th Cir. 2010). To make this showing, "the plaintiff

20 need only demonstrate facts that if true would support jurisdiction over the defendant."

21 Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). In challenging personal jurisdiction,

22 a party may present evidence outside of the pleadings. Doe v. Unocal Corp., 248 F.3d 915,

23 922 (9th Cir. 2001). "Unless directly contravened, [plaintiff's] version of the facts is taken

24 as true," and disputed facts must be resolved in the plaintiff's favor. Mattel, Inc. v. Greiner

25 & Hausser GmbH, 354 F.3d 857, 862 (9th Cir. 2003) (citing Harris Rutsky & Co. Ins.

26 Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003)).

27

28

3:17-cv-00079

1    **D.    Motion to Dismiss for Failure to State a Claim**

2        Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed

3    for failure to state a claim upon which relief can be granted. A complaint generally must

4    satisfy only the pleading requirements of Federal Rule of Civil Procedure 8 to evade

5    dismissal under a Rule 12(b)(6) motion. Landers v. Quality Commc'ns, Inc., 771 F.3d 638,

6    640-41 (9th Cir. 2014). Rule 8(a) requires "a short and plain statement of the claim showing

7    that the pleader is entitled to relief, in order to give the defendant fair notice of what the

8    claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544,

9    555 (2007) (quotation marks and alteration notations omitted). "While a complaint attacked

10   by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

11   obligation to provide the grounds of his entitlement to relief requires more than labels and

12   conclusions, and a formulaic recitation of the elements of a cause of action will not do."

13   Id. (quotation marks, alteration notations, and citations omitted).

14       "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

15   accepted as true, to 'state a claim to relief that is plausible on its face.'" Hartmann v. Cal.

16   Dept. of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting Ashcroft v. Iqbal,

17   556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual

18   content that allows the court to draw the reasonable inference that the defendant is liable

19   for the misconduct alleged." Iqbal, 556 U.S. at 678. "Factual allegations must be enough

20   to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5

21   C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

22   **II.    Analysis**

23       **A.    Motion to Dismiss for Improper Venue**

24       Plaintiff brings a securities fraud claim pursuant to Section 10(b) of the Securities

25   Exchange Act of 1934 ("1934 Act") and Rule 10b-5 promulgated thereunder. (Doc. No. 1

26   at 13.) Section 27 of the 1934 Act provides that a "[c]ivil suit may be brought in any district

27   'wherein any act or transaction constituting the violation occurred.'" Bourassa v.

28   Desrochers, 938 F.2d 1056, 1057 (9th Cir. 1991) (quoting 15 U.S.C. § 78aa(a)). Defendants

1    admit that they traveled to California and had conversations about Hopewell. (See Doc.

2    Nos. 8-3 at 4, ¶ 8; 8-4 at 4, ¶ 8; 8-1 at 6, ¶ 6.) Plaintiff argues that the Defendants were in

3    California to pitch the project. (Doc. No. 13 at 5.) Plaintiff alleges, among other things,

4    that Defendants failed to disclose that Hopewell was on the verge of bankruptcy when

5    soliciting Plaintiff's investment. (Doc. No. 1 at 7, ¶¶ 18-22.) This failure to disclose applies

6    to any conversations that were had in California. Thus, Defendants are alleged to have

7    committed an "act or transaction" in California constituting a violation of the 1934 Act.

8    Furthermore, according to Plaintiff, some of the alleged violations occurred in the Southern

9    District of California. (Doc. No. 1 at 3, ¶ 7.) Accordingly, venue is proper in this district.

10          Defendants raise arguments that do not change this analysis. First, Defendants state

11   that their trip to California occurred a few weeks before the Plaintiff LLC was formed. (See

12   Doc. No. 8-1 at 4, ¶ 1; see also id. at 6, ¶ 6.) Defendants imply that they did not violate the

13   1934 Act in California because they spoke to a person in California and not the Plaintiff

14   LLC. (Id.) But it does not matter whether the Plaintiff LLC had been formed yet. If

15   Defendants misled a person in California, and induced that person to invest through an

16   LLC, then Defendants may have violated the 1934 Act in California.[2] It does not matter

17   that the LLC was formed after Defendants allegedly misled the person that created the

18   LLC.

19          Defendants also argue that Plaintiff did not receive any representations or warranties

20   during the California discussions. (Doc. No. 8-1 at 6, ¶ 6.) In support of this argument,

21   Defendants cite a subscription agreement, which provides that Plaintiff did not receive any

22   representations or warranties other than those set forth in various documents. (Id. at 5-6,

23   ¶¶ 3, 6.) But even if no representations or warranties were made in California, Defendants

24   may have still materially misled Plaintiff by failing to disclose the financial status of

25

26

---

27   [2] Plaintiff argues that the LLC "was specifically created for the purpose of the parties' dealing and was

28   created based on the representations made by Defendant's during the parties' initial meetings." (Doc. No. 13 at 6.)

3:17-cv-00079

1  Hopewell during the California discussions. Thus, venue is appropriate in California. The

2  Court therefore denies the Rule 12(b)(3) motion to dismiss.

3          **B.      Motion to Transfer Venue**

4          While venue is proper in the Southern District of California, the Court has discretion

5  to transfer venue pursuant to 28 U.S.C. § 1404(a). The burden is generally on the moving

6  party to establish that a transfer will allow a case to proceed more conveniently and better

7  serve the interests of justice. See, e.g., Commodity Futures Trading Comm., 611 F.2d at

8  279. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of

9  forum should rarely be disturbed." Gulf Oil Corp., 330 U.S. at 508.

10         Here, Defendants provide a two-sentence argument for transferring venue, stating

11  that venue is more convenient in the Southern District of Texas because non-party

12  Hopewell is filing a suit in that forum against Plaintiff. (Doc. No. 8-1 at 12, ¶ 33.) This

13  argument is insufficient to satisfy Defendants' burden in convincing the Court to disturb

14  Plaintiff's choice of forum. Accordingly, the Court declines to transfer venue.

15         **C.      Motion to Dismiss for Lack of Personal Jurisdiction**

16         When a court seeks to assert personal jurisdiction over a defendant, the defendant

17  must have certain "minimum contacts" with the forum in order to satisfy the requirements

18  of due process. See International Shoe Co. v. Washington, 326 U.S. 310 (1945); Worldwide

19  Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980). Defendants argue that they do not

20  have minimum contacts with California; therefore, they move to dismiss for lack of

21  personal jurisdiction.

22         Defendants seek to apply the wrong minimum contacts standard in this case. It is

23  true that when a federal court sits in diversity, defendants must have minimum contacts

24  with the forum state. Sec. Inv'r Prot. Corp. v. Vigman, 764 F.2d 1309, 1315 (9th Cir. 1985).

25  But this is a federal question case, not a diversity case. Some federal statutes provide for

26

27

28

1  nationwide service of process,[3] and for those statutes, "the question becomes whether the

2  party has sufficient contacts with the United States, not any particular state." <u>Vigman</u>, 764

3  F.2d at 1315 (internal quotation marks omitted). . <u>Vigman</u>, 764 F.2d at 1315.

4       Section 27 of the 1934 Act provides for nationwide service of process. 15 U.S.C.

5  § 78aa. Therefore, "so long as a defendant has minimum contacts with the United States,

6  Section 27 of the [1934] Act confers personal jurisdiction over the defendant in any federal

7  district court." <u>Vigman</u>, 764 F. 2d at 1316. Thus, "where a claim of federal securities

8  violations is brought in a proper district, the test for whether the district court has personal

9  jurisdiction over a defendant is whether the defendant has minimum contacts with the

10  United States." <u>Bourassa v. Desrochers</u>, 938 F.2d 1056, 1057 (9th Cir. 1991) (citing

11  <u>Vigman</u>, 764 F.2d at 1316). Here, the Court has already established that the claim is

12  brought in a proper district. (<u>Supra</u>, II.A.) Defendants admit to being residents of the United

13  States (Doc. Nos. 8-3 at 5, ¶ 12; 8-4 at 5, ¶ 12.) Defendants therefore have minimum

14  contacts with the United States, and this Court has personal jurisdiction over Defendants.

15  Accordingly, the Court denies the Rule 12(b)(2) motion to dismiss.

16       **D.**    **Motion to Dismiss for Failure to State a Claim**

17            **1.**    **First Claim: Section 10(b) and Rule 10b-5**

18       The First Claim is against Defendants Tatham and Willis for securities fraud under

19  Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder. 15 U.S.C. § 78j(b);

20  17 C.F.R. § 240.10b-5. Violations of Section 10(b) are enforced through Rule 10b-5. A

21  private plaintiff must prove six elements to bring a claim under Rule 10b-5: (1) a material

22  misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the

23  misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the

24  misrepresentation or omission; (5) economic loss; and (6) loss causation. <u>Halliburton Co.</u>

25

26

27  ---

[3] "Congress can provide for nationwide service of process in federal court . . . without falling short of

28  the requirements of due process." <u>Johnson Creative Arts & Wool v. Masters, Inc.</u>, 743 F.2d 947, 950

(1st Cir. 1984).

1   v. Erica P. John Fund, Inc., 134 S. Ct. 2398, 2419 n.1 (2014) (citing Amgen Inc. v.

2   Connecticut Retirement Plans and Trust Funds, 133 S. Ct. 1184, 1191-1194 (2013)).

3   The heightened pleading standards of Federal Rule of Procedure 9(b) apply to every

4   element of a securities fraud action. Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.,

5   774 F.3d 598, 605 (9th Cir. 2014). Rule 9(b) provides that in "alleging fraud or mistake, a

6   party must state with particularity the circumstances constituting fraud or mistake." Fed.

7   R. Civ. P. 9(b). Thus, to allege securities fraud, Plaintiff must state with particularity the

8   circumstances constituting every element of a Rule 10b-5 action.

9   To plead the first element of a 10b-5 action, Plaintiff must allege a material

10   misrepresentation or omission. For an omission to be material, "there must be a substantial

11   likelihood that the disclosure of the omitted fact would have been viewed by the reasonable

12   investor as having significantly altered the 'total mix' of information made available."

13   Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988) (quoting TSC Indus., Inc. v.

14   Northway, Inc., 426 U.S. 438, 449 (1976)). Plaintiff alleges a number of omissions and

15   misrepresentations that would be material for purposes of Rule 10b-5. For example,

16   Plaintiff alleges that Defendants failed to disclose that Hopewell was on the verge of

17   bankruptcy when soliciting Plaintiff's investment. (Doc. No. 1 at 7, ¶¶ 18-22.) If true, this

18   omission may significantly alter the total mix of information in the view of a reasonable

19   investor. Therefore, the complaint sufficiently alleges a material omission.

20   Plaintiff must also plead scienter. "A defendant who makes misrepresentations or

21   omissions 'either intentionally or with deliberate recklessness' acts with scienter." Oregon

22   Pub. Employees Ret. Fund, 774 F.3d at 607 (quoting In re Daou Sys., Inc., 411 F.3d 1006,

23   1015 (9th Cir. 2005)). Defendants purportedly knew that Hopewell had less than $10,000

24   and sometimes had a negative account balance. (Doc. No. 1 at 7, ¶ 18.) Plaintiff also alleges

25   that Defendants failed to inform Plaintiff of Hopewell's financial status even when Plaintiff

26   questioned Defendants about Hopewell's financial strength. (Id. ¶ 20.) These allegations

27   are sufficient to plead scienter.

28

3:17-cv-00079

1   Plaintiff must also plead a connection between the misrepresentation or omission

2   and the purchase or sale of a security and reliance upon the misrepresentation or omission.

3   Plaintiff alleges that Defendants caused them to purchase the Hopewell interest, in part, by

4   failing to disclose Hopewell's insolvency. (Id. at 13, ¶ 40.) Thus, Plaintiff has sufficiently

5   pled a connection between the omission and the interest and reliance on the omission.

6   Finally, Plaintiff must plead economic loss and loss causation. Plaintiff alleges that

7   it lost $430,000 in connection with the Hopewell interest (id. at 4, ¶ 8), further alleging that

8   those losses were caused, in part, by Defendants' failure to disclose Hopewell's financial

9   condition (id. at 13, ¶ 40). Plaintiff has therefore sufficiently alleged economic loss and

10   loss causation.

11   Given that Plaintiff has sufficiently pled a cause of action for securities fraud, the

12   Court denies Defendants' motion to dismiss the First Claim.

### 2.      Second Claim: Conversion

14   The Second Claim is for conversion against all named Defendants.[4] Conversion is a

15   state law tort claim. Because the Court has original jurisdiction over the Rule 10b-5 claim,

16   the Court may also exercise supplemental jurisdiction over the conversion claim pursuant

17   to 28 U.S.C. § 1367(a).

### a.      Texas law applies

19   The Court must first determine which State's law to apply in analyzing the

20   conversion claim. Defendants cite Texas law in challenging the claim. (Doc. No. 8-1 at 14,

21   ¶ 42.) Presumably, Defendants cite Texas law because the Hopewell company agreement

22   contains a choice of law provision stating that the agreement shall be construed in

23   accordance with Texas law. (Doc. No. 8-7 at 27.) Plaintiff does not specify which State's

24   law governs the conversion claim. (See Doc. Nos. 1 at 14-15; 13 at 9.)

25

26

27

28   ----

[4] Defendants Thomas P. Tatham, Mark A. Willis, PDP Management Group LLC, Title Rover LLC, Beyond Review LLC, Imagine Engine LLC, and Willis Group LLC.

3:17-cv-00079

1    "When a federal court exercises supplemental jurisdiction, 'the federal court applies

2    the choice-of-law rules of the forum state,' which in this case is California." <u>Douglas v.</u>

3    <u>U.S. Dist. Court for Cent. Dist. of California</u>, 495 F.3d 1062, 1067 (9th Cir. 2007) (quoting

4    <u>Paracor Fin., Inc. v. Gen. Elec. Capital Corp.</u>, 96 F.3d 1151, 1164 (9th Cir.1996)). When

5    parties have executed a contract containing a choice-of-law provision, California courts

6    "apply the principles set forth in Restatement [(Second) of Conflict of Laws] section 187,

7    which reflects a strong policy favoring enforcement of such provisions." <u>Nedlloyd Lines</u>

8    <u>B.V. v. Superior Court</u>, 3 Cal. 4th 459, 465 (1992). "The law of the state chosen by the

9    parties to govern their contractual rights and duties will be applied, even if the particular

10   issue is one which the parties could not have resolved by an explicit provision in their

11   agreement directed to that issue." <u>Id.</u> (quoting RESTATEMENT (SECOND) OF CONFLICT OF

12   LAWS § 187(2) (1971)). This rule will be applied unless there is no reasonable basis for the

13   parties' choice or it would be contrary to a fundamental policy of a state which has a

14   materially greater interest than the chosen state. <u>Id.</u>

15        Here, the parties executed an agreement specifying the rights and duties of the

16   members of the Hopewell project. (Doc. No. 8-7.) That agreement contains a choice of law

17   provision stating that the agreement shall be construed in accordance with the law of the

18   State of Texas. (<u>Id.</u> at 27.) The alleged conversion may not be covered by an explicit

19   provision of the contract, but the allegations arise from rights and duties created by the

20   contract. Because Hopewell is a Texas company seeking to do business in Texas, there is

21   a reasonable basis for applying Texas law. The Court is aware of no fundamental policy of

22   California that would be harmed by applying Texas law to the conversion claim. Therefore,

23   the Court will apply Texas law to the conversion claim.

### b.    Plaintiff has stated a claim for conversion

25        Defendants argue that under Texas law, conversion is not a valid cause of action by

26   which Plaintiff can recover its money. (Doc. No. 8-1 at 14, ¶ 42.) According to Defendants,

27   money is subject to conversion only when it can be described or identified as a specific

28   chattel, and not where an indebtedness may be discharged by the payment of money

1  generally. (Id.) Defendants are correct that an "action for conversion will not lie for money

2  represented by a general debt." Houston Nat. Bank v. Biber, 613 S.W.2d 771, 774 (Tex.

3  Civ. App. 1981), writ refused NRE (June 30, 1981). But an "action will lie for conversion

4  of money when identification of the money is possible and there is a breach of an obligation

5  to deliver the specific money in question or to otherwise treat specific money." Sw. Indus.

6  Inv. Co. v. Berkeley House Inv'rs, 695 S.W.2d 615, 617 (Tex. App. 1985), writ refused

7  NRE (Nov. 27, 1985) (citations omitted). "When a person has designated a particular use

8  for proceeds . . ., those proceeds count as 'specific money,' capable of identification . . . .

9  and capable of conversion." Id. (citing Biber, 613 S.W. 2d at 774); accord Intermarkets

10  U.S.A., Inc. v. C-E Natco, a Div. of Combustion Eng'g, Inc., 749 S.W.2d 603, 604 (Tex.

11  App. 1988), writ denied (Jan. 11, 1989).

12        Texas courts allow actions for conversion when a party breaches its obligation to

13  treat money in a specific manner. In Berkeley House, plaintiffs purchased property and

14  provided money that was meant to cover payments on the property's note as well as

15  property taxes. Berkeley House, 695 S.W.2d at 616. The defendant kept the money and did

16  not use any of it to pay the property taxes. Id. A judgment of conversion was appropriate

17  because the defendant breached its obligation to treat the money in a specific manner and

18  instead converted the funds to the defendant's own use. Id. at 616-17; see also Texas State

19  Title Co. v. Sawicki, No. 01-94-00915-CV, 1995 WL 555853, at *2 (Tex. App. Sept. 21,

20  1995) (conversion could lie where defendants allegedly breached obligation to use specific

21  funds to pay lienholders and instead converted the money to their own use). Similarly in

22  Intermarkets, the defendant purchased equipment from the plaintiff. Intermarkets, 749

23  S.W.2d at 604. The defendant had received a letter of credit from a third party, which was

24  supposed to be used to pay for the equipment. Id. However, the defendant never paid for

25  the equipment. Id. The defendant was liable for converting the money because the

26  defendant violated its obligation to use the money for the specific purpose of paying for

27  the equipment. Id.

28

3:17-cv-00079

1        Here, Plaintiff alleges that its investment was meant to be used in a specific

2   manner—to fund go-forward oil, gas and mineral exploration activities. (Doc. No. 1 at 2,

3   ¶ 3.) Plaintiff also alleges that Defendants instead applied the investment to its own use—

4   to pay themselves, related entities, and relatives for previously-incurred amounts allegedly

5   owed but never disclosed to the Plaintiff. (Id.) Accordingly, Plaintiff has stated a claim for

6   conversion. See also, Biber, 613 S.W. 2d at 773-75 (bank converted investors' capital

7   contributions by failing to treat the contributions as directed and instead applying them to

8   the bank's own use); N. Texas Opportunity Fund L.P. v. Hammerman & Gainer Int'l, Inc.,

9   107 F. Supp. 3d 620, 637-38 (N.D. Tex. 2015) (denying motion to dismiss conversion

10  claim where defendants allegedly defrauded an investor). The Court therefore denies the

11  Rule 12(b)(6) motion to dismiss the Second Claim.

## Conclusion

13       The Court denies the motion to dismiss in full and declines to transfer venue.

14      **IT IS SO ORDERED.**

15  DATED: March 9, 2017

16                                MARILYN L. HUFF, District Judge

17                                UNITED STATES DISTRICT COURT

3:17-cv-00079