Pete Patterson (Federal ID# 13074) (Pro Hac Vice)
**PATTERSON, PC**
4309 Yoakum Blvd., Ste. 2000
Houston, Texas 77006
Phone: (713) 874-6444
Facsimile: (713) 874-6445
Email: pete@pyllp.com

Bibianne Fell (SBN: 234194)
**GOMEZ TRIAL ATTORNEYS**
655 W. Broadway, Suite 1700
San Diego, CA 92101
Phone: (619) 237-3490
Facsimile: (619) 237-3496
Email: bibi@thegomezfirm.com

Attorney for Defendants.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENSOURCE INEVESMENTS LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS P. TATHAM, an individual; MARK A. WILLIS, an individual; PDP MANAGEMENT GROUP, LLC, a Texas limited liability company; TITLE ROVER, LLC, a Texas limited liability company, BEYOND REVIEW, LLC, a Texas limited liability company; IMAGE ENGINE, LLC, a Texas limited liability company; WILLIS GROUP, LLC, a Texas limited liability company,<br><br>Defendants. | Case No.: 3:17-CV-00079-H-JMA<br><br>**DEFENDANTS' MOTION TO TRANSFER VENUE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**DATE: SEPTEMBER 11, 2017<br>TIME: 10:30AM<br>COURTROOM: 15A<br>HONORABLE MARILYN L. HUFF** |

Table of Contents

| | | | Page |
|---|---|---|---|
| I. | FACTS | | 4 |
| II. | ARGUMENT | | 7 |
| | A. | Transfer of Venue to the Southern District of Texas is Warranted Under U.S.C § 1412 | 7 |
| | | 1. 28 U.S.C. § 1412 Applies to This Processing | 7 |
| | | 2. Transfer of Venue is Warranted Under 28 U.S.C. § 1412 | 9 |
| | |    a) The Interests of Justice Favor Transfer | 10 |
| | |    b) The Convenience of the Parties Favors Transfer | 12 |
| | B. | Transfer of Venue to the Southern District of Texas is Warranted Under 28 U.S.C. § 1404(a) | 13 |
| III. | CONCLUSION | | 16 |

|    | Table of Authorities |      |
|----|----------------------|------|
| 1  |                      |      |
| 2  | <u>Cases</u>         | <u>Page</u> |
| 3  | *DRI Companies*, 552 B.R. at 195, 197 (Bankr. C.D.Cal.2016) | 10,12 |
| 4  | *Fietz,* 852 F.2d 455,457 (9th Cir. 1988) | 8 |
| 5  | *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir.2000) | 13 |
| 6  | *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir. 1984) | 8 |
| 7  | *Tapia v Davol, Inc.,* 562 B.R. 765,768 (S.D. Cal. 2016) | 8 |
| 8  | *Tapia,* 562 B.R. at 769 | 10 |
| 10 | <u>Rules and Statutes</u> | |
| 11 | 28 U.S.C. § 1404(a) | 7,13,16 |
| 12 | 28 U.S.C. § 1412 | 7-13,16 |
| 14 | <u>Journals</u> | |
| 15 | Ayer, John D. et al., *An Overview of Bankruptcy Litigation*, | |
| 16 | ABI Journal, Vol. XXIII, No. 1, Feb. 2004, at 1. | 15 |

Defendants, THOMAS P. TATHAM, an individual ("Tatham"); MARK A. WILLIS, an individual ("Willis"); PDP MANAGEMENT GROUP, LLC, a Texas limited liability company; TITLE ROVER, LLC, a Texas limited liability company ("Title Rover"); BEYOND REVIEW, LLC, a Texas limited liability company; IMAGE ENGINE, LLC, a Texas limited liability company; and WILLIS GROUP, LLC, a Texas limited liability company (collectively, the "Defendants") move to transfer venue to the United States District Court for the Southern District of Texas (Houston Division)(the "Southern District of Texas) under the authority of 28 U.S.C. §§ 1412 and 1404(a).

## I. FACTS

1. The Plaintiff filed this case against the Defendants on January 13, 2017. The Plaintiff asserts violation of the federal securities laws against Tatham and Willis and conversion against all of the Defendants.

2. On March 10, 2017, this Court ruled that venue was proper in the United States District Court for the Southern District of California (the "Southern District of California") because Section 27 of the Securities Exchange Act of 1934 permits civil suits to be brought in any district wherein *any* act or transaction constituting the violation occurred and the Plaintiff alleged that it had had certain conversations with the Defendants in California containing some of the misstatements and omissions complained of in this suit.

3. Nevertheless, neither the Plaintiff nor any of the Defendants are California residents or entities or have their principal places of business in California. Venue in California is currently based solely on a few conversations that are alleged to have taken place in California. The Plaintiff is a Delaware corporation with its principal place of business in Tennessee. The Defendants are all Texas residents and entities with their principal places of business in Texas.

4. In addition, Hopewell-Pilot Project, LLC ("Hopewell"), though not a defendant in this lawsuit, is a primary figure in the events giving rise to this lawsuit. The Plaintiff purchased interests in Hopewell pursuant to a September 29, 2016 Subscription

Agreement (the "Subscription Agreement"). The Plaintiff's allegation is that the Defendants made misrepresentations and omissions in connection with that purchase and misused the funds paid for the interests. Hopewell, like the Defendants, is a Texas company with its principal place of business in Texas.

5. On May 3, 2017, after this Court found that venue for this suit was proper in the Southern District of California, both Title Rover and Hopewell filed petitions for chapter 11 bankruptcy in the Southern District of Texas, where their principal places of business are located. Both bankruptcy cases are currently pending in the Southern District of Texas.

6. The assets of the Defendants and Hopewell are primarily in Texas. Moreover, the assets of Title Rover and Hopewell are now currently part of their respective bankruptcy estates and subject to the oversight of the Southern District of Texas bankruptcy court.

7. Title Rover owns title work software that is of particular importance both in this case and in the Title Rover and Hopewell bankruptcy cases. The software is Title Rover's primary asset. It searches data related to property transfers and discovers defects in the chains of title. Title Rover licensed the software exclusively to Hopewell and Hopewell expected that the software would give it an advantage over its competitors in procuring mineral interests.

8. The Plaintiff alleges that Title Rover's title work software is "not nearly as robust or automated as represented by Defendants Tatham and Willis"; does not "maintain any automation to discover defects concerning the chain of title of property transfers"; and "produced no results for Hopewell." [Doc. 1 at ¶¶ 37-38]. Although the Defendants do not agree with these allegations, the very allegations in a public forum diminish the value of the software. Any finding by a court that the Plaintiff's allegations are true would further and severely diminish the value of the software. Since the software is Title Rover's primary asset, the adjudication of this issue has a substantial potential impact on the total value of Title Rover's bankruptcy estate.

9. Furthermore, Hopewell's exclusive license to use the title work software is a significant asset in its bankruptcy estate. Therefore, the adjudication of the Plaintiff's claims regarding the software will have a substantial potential impact on the total value of Hopewell's bankruptcy estate as well.

10. In addition, the efficacy of the title work software may inform whether or not any transfers made from Hopewell to Title Rover were for value and proper. To the extent that any transfers from Hopewell to Title Rover were proper, the Plaintiff's claim of conversion against Title Rover, and therefore against Title Rover's bankruptcy estate, will be reduced or eliminated.

11. The books and records of the Defendants and Hopewell are in Texas, including those records specific to the transactions at issue in this lawsuit.

12. The materials that the Defendants and Hopewell provided to the Plaintiff for its due diligence in connection with the transactions at issue in this case were all provided in Texas. Therefore, the witnesses to the Plaintiff's due diligence in purchasing the Hopewell interests are virtually all in Texas.

13. The mineral interests that Hopewell intended to acquire were all located in Texas. The Third Amended and Restated Company Agreement of Hopewell-Pilot Project, LLC (the "Company Agreement"), which the Plaintiff signed, defines "Company Business" and "Area of Mutual Interest" to be centered in Madison County, Texas and four other Texas counties, with no indication of any intent to do business outside of Texas.

14. Both the Subscription Agreement and the Company Agreement provide for Texas law to apply to any disputes. Furthermore, the Private Placement Memorandum, which the Plaintiff identifies as a source of the alleged misstatements made by Tatham and Willis, incorporates as "Other Terms and Conditions" those provided in the Subscription Agreement and Company Agreement. Therefore, by incorporation, the Private Placement Memorandum also provides for Texas law to apply to any disputes.

15. Neither the Defendants nor Hopewell have any offices, officers, or employees in California. On information and belief, neither does the Plaintiff, except for one principal.

## II. ARGUMENT

16. Although this Court previously declined to transfer venue to the Southern District of Texas, Defendant Title Rover has since filed a petition for chapter 11 bankruptcy in the Southern District of Texas, where it has its principal place of business. In addition, Hopewell, whose principal place of business is also in the Southern District of Texas, has also filed a petition for chapter 11 bankruptcy in that district. Although Hopewell is not a party to this lawsuit, it is intimately involved in the facts of this case.

17. Because this case is related to the Title Rover and Hopewell bankruptcies, transfer of this case to the Southern District of Texas, where those bankruptcies are pending, is warranted under 28 U.S.C. § 1412. In addition, the bankruptcy cases of Title Rover and Hopewell alter the balance of considerations in favor of transferring this case to Texas under the general venue transfer provision of 28 U.S.C. § 1404(a). Overall, venue is inconvenient for the Defendants in this district and will be more convenient in the Southern District of Texas. Therefore, the Court should transfer this suit to that district.

**A.  Transfer of Venue to the Southern District of Texas is Warranted Under 28 U.S.C. § 1412**

18. The Court should transfer venue of this suit to the Southern District of Texas under 28 U.S.C. § 1412 because this suit is related to the bankruptcy cases of Defendant Title Rover and non-party Hopewell currently pending in that district and because the resolution of this case in that district will improve judicial efficiency and the overall economics of the administration of the bankruptcy estates.

**1.  28 U.S.C. § 1412 Applies to This Proceeding**

19. Under 28 U.S.C. § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. "It is clear that 28 U.S.C. § 1412 applies to

'claims asserted directly against an estate.'" *Tapia v. Davol, Inc.*, 562 B.R. 765, 768 (S.D. Cal. 2016). In addition, a "majority of courts have held that 28 U.S.C. § 1412 applies to related proceedings." *Id.*

20. The Ninth Circuit has expressly approved the "related to" test announced by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984). *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988). In *Pacor*, the Third Circuit explained:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

21. Defendant Title Rover has a bankruptcy case currently pending in the Southern District of Texas. All of its assets therefore belong to the bankruptcy estate in that case. In the case before this Court, the Plaintiff has asserted a claim of conversion against Title Rover. The Plaintiff therefore seeks to adjudicate the ownership of certain property that is currently held by the Title Rover bankruptcy estate. Any damages and other amounts sought from Title Rover in this lawsuit are now claims asserted directly against the bankruptcy estate in the Southern District of Texas. Therefore, transfer of venue of these claims is properly sought under 28 U.S.C. § 1412.

22. In addition, the securities claims asserted in this case against Tatham and Willis are related to Title Rover's bankruptcy because they could conceivably have an effect on the Title Rover bankruptcy estate and because the outcome of this case could alter Title Rover's rights, liabilities, options, or freedom of action and could impact the handling and administration of the Title Rover bankruptcy estate.

23. Title Rover's primary asset is its title work software. The Plaintiff alleges that Tatham and Willis made misrepresentations regarding this software because the soft-

ware did not perform as well as Tatham and Willis had led the Plaintiff to believe. The Plaintiff states: "the Title Rover Technology was not nearly as robust or automated as represented by Defendants Tatham and Willis. Nor did it maintain any automation to discover defects concerning the chain of title of property transfers….The Title Rover Technology produced no results for Hopewell in connection with viable potential transactions for oil, gas and/or mineral rich properties for which defects in the chain of title were present." [Doc. No. 1 at ¶¶ 37-38].

24. The alleged misrepresentations form in part the basis for the securities claim against Tatham and Willis. Although the securities claim is against Tatham and Willis rather than Title Rover, the truth or falsity of the Plaintiff's allegations regarding the title work software will have a serious effect on the value of that software, which is now the Title Rover bankruptcy estate's primary asset. Any finding by a court that the Plaintiff's allegations are true will seriously diminish the value of the title work software. Therefore, the securities claim against Tatham and Willis is related to the Title Rover bankruptcy case.

25. In addition, Title Rover gave an exclusive license to Hopewell to use the title work software and that license is a significant asset in Hopewell's bankruptcy estate. To the extent that adjudication of the Plaintiff's claims may diminish the value of the title work software, the value of Hopewell's exclusive license to use the software will be likewise diminished, thereby affecting the value of Hopewell's bankruptcy estate. Therefore, the securities claim against Tatham and Willis is also related to the Hopewell bankruptcy case, even though Hopewell is not a defendant in this lawsuit.

26. Because this lawsuit and the claims asserted in this lawsuit are related to the Title Rover and Hopewell bankruptcies, both of which are currently pending in the Southern District of Texas, the transfer of this lawsuit to the Southern District of Texas is properly sought under 28 U.S.C. § 1412.

**2.  Transfer of Venue is Warranted Under 28 U.S.C. § 1412**

27. Under 28 U.S.C. § 1412, a district court may transfer a case or proceeding to another district court either "in the interest of justice" or "for the convenience of the parties."

        a.    The Interests of Justice Favor Transfer

28. The "interests of justice" prong requires the Court to consider the following factors: (1) the economics of estate administration; (2) the presumption in favor of the "home court"; (3) judicial efficiency; (4) the ability to receive a fair trial; (5) the state's interest in having local controversies decided within its borders by those familiar with its laws; (6) the enforceability of the judgment; and (7) the plaintiff's original choice of forum. *Tapia*, 562 B.R. at 769. However, these factors are not weighed equally: "the most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate." *Id.*

29. The economics of estate administration, which are the most important consideration, weigh in favor of transfer. If the Plaintiff prevails, the conversion claim will have an effect on the administration of the Title Rover estate because the Plaintiff will be a claimant who must be provided for in Title Rover's bankruptcy plan. Furthermore, because Title Rover has its principal place of business in Houston, Texas and has no presence in California, its costs to defend the suit will be much lower in Texas than in California. Considering that Title Rover is in such a precarious financial condition that it has filed bankruptcy, it is important for it to conserve its remaining assets for creditors—including the Plaintiff, should the Plaintiff prevail against it in this lawsuit.

30. The "home court" is the Southern District of Texas because that is the district in which Title Rover voluntarily filed its bankruptcy case. *See In re DRI Companies*, 552 B.R. 195, 197 (Bankr. C.D. Cal. 2016)("The 'home court' is the bankruptcy court in which the debtor's case is pending."). In addition, the Southern District of Texas is the home court with respect to Hopewell's bankruptcy case.

31. Judicial efficiency will be served by administering all the claims in this suit in the Southern District of Texas, since Title Rover's bankruptcy case is already there.

Furthermore, the Subscription Agreement, the Company Agreement, and, by incorporation, the Private Placement Memorandum all select the laws of the State of Texas as governing law. Because the Southern District of Texas has greater familiarity with Texas law, judicial efficiency will be served by administering these claims in Texas.

32. There is no reason to believe that a trial in this lawsuit will be any less fair in the Southern District of Texas than in the current forum.

33. The State of California does not have a strong interest in deciding the controversies raised in this lawsuit. The claims against Tatham and Willis are federal securities claims, which can be equally enforced in a Texas federal court. The conversion claims do not involve property that is or was located in California. On the whole, relatively few of the events giving rise to the claims in this lawsuit took place in or concern California. Therefore, this factor does not weigh against transfer of venue to the Southern District of Texas.

34. Any judgment in this case will be enforceable in the Southern District of Texas because all of the Defendants are residents of Texas. Furthermore, all of the assets of Title Rover are currently under the oversight of the Southern District of Texas Bankruptcy Court. If the Plaintiff obtains a judgment on its claims against Title Rover, the claim will most likely be provided for in a bankruptcy plan approved by the bankruptcy court.

35. Although the Plaintiff selected the Southern District of California as its forum, it is neither a California entity nor does it have its principal place of business in California. It is a Delaware corporation with its principal place of business in Tennessee. Venue in the Southern District of California is currently based on a few discussions that are alleged to have taken place in California. Therefore, even if venue in California is proper, the Plaintiff does not have a compelling interest in ensuring that venue remains in California.

36. All of the factors to be considered under the "interests of justice" prong of 28 U.S.C. § 1412 either weigh in favor of transferring this case to the Southern District of

Texas or do not weigh against such transfer. Therefore, transfer of venue to the Southern District of Texas is warranted in the interest of justice.

### b. The Convenience of the Parties Favors Transfer

37. "In addition to considering the 'interests of justice,' courts consider the convenience of the parties" in determining whether or not to transfer venue under 28 U.S.C. § 1412. *DRI Companies*, 552 B.R. at 197. The factors relevant to the convenience of the parties include: (1) location of the plaintiff and the defendant; (2) ease of access to necessary proof; (3) convenience of witnesses; (4) availability of subpoena power for the unwilling witnesses; and (5) expenses related to obtaining witnesses. *Id.*

38. The Defendants are located in Texas; they are all Texas residents with their principal places of business in Texas. Although the Plaintiff is not located in Texas, it is not located in California either. Its principal place of business is in Tennessee. On information and belief, three of the Plaintiff's principals reside in Texas. Therefore, the Southern District of Texas will be more convenient for the Defendants, but not less convenient for the Plaintiff, than the Southern District of California. This factor weighs in favor of transferring venue.

39. The remaining factors relate to the accessibility of evidence, including witnesses. To the best of the Defendants' knowledge, there are no evidence or witnesses located in California. All evidence and witnesses are located either in Texas or, if not in Texas, not in California either. The Defendants and Hopewell are all Texas residents and have their principal places of business in Texas. Any employees or representatives of the Defendants and Hopewell who might be witnesses in the lawsuit would be located in Texas. The oil and gas leases that Hopewell intended to acquire, as stated in the Private Placement Memorandum, were located in Texas. The books and records of the Defendants and Hopewell are in Texas. The bank accounts of the Defendants and Hopewell are located primarily in Texas. Therefore, the ease of access to necessary proof is greater in Texas than in California; it will be more convenient for witnesses for the lawsuit to take place in Texas rather than California; more evidence and witnesses will be subject to the Southern

District of Texas's subpoena power than to that of the Southern District of California; and the expense to obtain witnesses will be less in Texas than in California.

40. Under 28 U.S.C. § 1412, a transfer of venue may be warranted either in the interest of justice or for the convenience of the parties. For the reasons stated above, transfer of this lawsuit to the Southern District of Texas is warranted under both tests.

**B.    Transfer of Venue to the Southern District of Texas is Warranted Under 28 U.S.C. § 1404(a)**

41. Transfer of venue to the Southern District of Texas is also warranted under 28 U.S.C. § 1404(a). Although the Court previously declined to transfer venue under 28 U.S.C. § 1404(a), the bankruptcy cases of Title Rover and Hopewell that are now pending in the Southern District of Texas alter the balance of factors such that a transfer of venue under this section is now warranted.

42. Under 28 U.S.C. § 1404(a), a district court may transfer a suit to any other district or division where it could have been brought for the convenience of the parties and witnesses and in the interest of justice.

43. In determining whether to transfer venue under 28 U.S.C. § 1404(a), "the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

44. Many of the factors to be considered under 28 U.S.C. § 1404(a) overlap with factors to be considered under 28 U.S.C. § 1412. As with 28 U.S.C. § 1412, the factors to be considered under 28 U.S.C. § 1404(a) either weigh in favor of transferring venue to the Southern District of Texas or do not weigh heavily against such transfer.

45. The location where the relevant agreements were negotiated and executed is primarily Texas. Although some conversations may have taken place in California, the negotiation and the execution of the Subscription Agreement and Company Agreement took place either in Texas or not in California. The Defendants provided in Texas the materials that the Plaintiff reviewed for its due diligence with respect to these agreements. The Defendants executed the agreements in Texas. There is no indication that the Plaintiff executed the agreements in California.

46. Texas is the state that is most familiar with the governing law. Both the Subscription Agreement and the Company Agreement, as well as the Private Placement Memorandum by incorporation of those agreements, specify Texas law as the law to govern disputes regarding the agreements. Although the Plaintiff alleges claims under federal securities law, Southern District of Texas will be equally familiar with federal law.

47. Although the Plaintiff selected a forum in California, it does not have a compelling interest in ensuring that venue remains in California because it is neither a California entity, nor does it have its principal place of business in California. The Plaintiff is a Delaware corporation with its principal place of business in Tennessee.

48. Neither the Plaintiff nor the Defendants have extensive contacts with California. In contrast, the Defendants have extensive contacts with Texas, since they are all Texas residents or Texas entities. They all have their principal places of business, officers, employees, books, and records in Texas. The Defendants' assets are located primarily in Texas. The business that Hopewell was expected to conduct was to take place in Texas. Title Rover's bankruptcy case is currently pending in Texas. Although the Plaintiff's contacts with Texas may not be as extensive as those of the Defendants, there is no indication that the Plaintiff's contacts with Texas are less than those that it has with California.

49. The contacts with California relating to the Plaintiff's causes of action are minimal. The only relevant contacts are a few conversations that took place in California while Tatham and Willis happened to be in California on personal matters. There are no contacts with California relating to the Plaintiff's claims of conversion.

50. The costs of litigation will be less in Texas than in California. Because the Defendants are located in Texas, the cost to the Defendants to defend this lawsuit will be far greater if venue is in California rather than in Texas due to the travel that would be required. This consideration is of particular importance because Defendant Title Rover has already suffered sufficient financial difficulties to have filed for bankruptcy. It must be permitted to conserve its resources to the extent possible for the benefit of its creditors—which may ultimately include the Plaintiff, if the Plaintiff succeeds in its claims against Title Rover. In addition, because Title Rover has a pending bankruptcy case, the Defendants expect that this case will be referred to the bankruptcy court once transferred to the Southern District of Texas. Bankruptcy courts may be able to resolve disputes at a faster pace than in non-bankruptcy litigation.[1] A faster resolution of the Plaintiff's claims would further preserve Title Rover's assets for the benefit of creditors.

51. The availability of compulsory process to compel attendance of unwilling non-party witnesses will be greater in Texas than in California because there are no such witnesses known to the Defendants who would be within this Court's subpoena power. In contrast, all of the witnesses that the Defendants know of, such as those who witnessed the provision of due diligence materials to the Plaintiff, are located in Texas and are subject to the subpoena power of the Southern District of Texas. The witnesses are located in Texas because the Defendants provided the due diligence materials to the Plaintiff in Texas.

52. The ease of access to proof is greater in Texas than in California. The Defendants' assets, books and records, records relating to the transactions at issue, and witnesses regarding the negotiations and due diligence relating to the transactions at issue are all located in Texas. The Defendants do not know of any proof that is located in California or that could be accessed with greater ease in California than in Texas.

///

---

[1] Ayer, John D. et al., *An Overview of Bankruptcy Litigation*, ABI Journal, Vol. XXIII, No. 1, Feb. 2004, at 1.

53. For the reasons stated above, transfer of venue in this case to the Southern District of Texas is warranted under the general venue transfer provision of 28 U.S.C. § 1404(a) as well as the venue transfer provision of 28 U.S.C. § 1412 specific to bankruptcy-related litigation.

### III. CONCLUSION

Because transferring venue of this lawsuit to the Southern District of Texas would serve the interest of justice and the convenience of the parties under both 28 U.S.C. §§ 1412 and 1404(a), the Defendants request that this Court order such transfer and grant the Defendants all further relief to which they may be entitled.

Dated:      August 14, 2017             Respectfully admitted,

/s/ *Pete T. Patterson*
Pete T. Patterson
Attorney for the Defendants