**PANAKOS LAW, APC**
Aaron D. Sadock  (SBN 282131)
555 West Beech Street, Ste. 500
San Diego, California 92101
Telephone:   (619) 800-0529
Facsimile:    (866) 365-4856
Email: asadock@panakoslaw.com

**LAW OFFICES OF RICHARD E. NAWRACAJ**
**Richard Edward Nawracaj** *(Pro Hac Vice)*
155 N. Wacker Drive
Suite 4250
Chicago, IL 60606
312-803-4837
Email: rich.nawracaj@nawracaj-law.com

Attorneys for Plaintiff ENSOURCE INVESTMENTS LLC

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENSOURCE INVESTMENTS LLC, a Delaware limited liability company,<br><br>        Plaintiff,<br>v.<br><br>THOMAS P. TATHAM, an individual; MARK A. WILLIS, an individual; PDP MANAGEMENT GROUP, LLC, a Texas limited liability company; TITLE ROVER, LLC, a Texas limited liability company; BEYOND REVIEW, LLC, a Texas limited liability company; IMAGE ENGINE, LLC, a Texas limited liability company; WILLIS GROUP, LLC, a Texas limited liability company; and DOES 1-50,<br><br>        Defendants. | Case No.: 3:17-CV-00079-H-LL<br><br>**DECLARATION OF BONNIE E. MCKNIGHT IN SUPPORT OF MOTION BY PLAINTIFF FOR LEAVE TO FILE AMENDED COMPLAINT**<br><br>**Date: December 17, 2018**<br>**Time: 10:30 a.m.**<br>**Courtroom: 15A**<br><br>District Judge: Hon. Marilyn L. Huff<br>Magistrate Judge: Hon. Linda Lopez |

1    I, Bonnie E. McKnight, hereby declare:

2        1.      I am an attorney at law duly licensed to practice law before in all the

3    federal and state courts of the State of California.

4        2.      I am an attorney at the law firm of Panakos Law APC, attorneys of

5    record for Plaintiff Ensource Investments LLC.

6        3.      I am familiar with the files, pleadings and facts of this case. I have

7    personal knowledge of the facts stated in this declaration and, if called as a

8    witness, could testify competently about them.

9        4.      On January 13, 2017, Plaintiff filed its operative Complaint against

10   Defendants Mark Willis, Thomas Tatham, Beyond Review, LLC, Image Engine,

11   LLC, Willis Group, LLC, Title Rover, LLC, and PDP Management, LLC. See ECF

12   Entry No. 1.

13       5.      On May 4, 2017, only five months later, Defendant Title Rover, LLC

14   filed for Bankruptcy on May 4, 2017. *See* ECF No. 1, Case No. 17-32881. That

15   same day, Hopewell-Pilot Project, LLC filed for Chapter 7 Bankruptcy on May 4,

16   2017. *See* ECF Entry No. 1, Case No. 17-32880.

17       6.      Judge Jones informed the parties on October 24, 2017 that any activity

18   against Defendant Title Rover was a violation of the automatic stay.

19       7.      On August 30, 2017, District Judge Jones issued an Order modifying

20   the stay and ordered that Hopewell and Title Rover may now be included as

21   nominal Defendants in this present action. A true and correct copy of the August

22   30, 2018 Order of the Bankruptcy Court for the Southern District of Texas is

23   attached hereto as **Exhibit A**.

24       8.      Plaintiff now seeks leave from the Court to add Hopewell as a

25   nominal Party to its proposed Amended Complaint. A true and correct copy of

26   Plaintiff's proposed Amended Complaint is attached hereto as **Exhibit B**.

27       9.      A true and correct copy of Plaintiff's proposed Amended Complaint

28

1  with "redlining" that shows how the proposed Amended Complaint differs from
2  the operative Complaint is attached hereto as **Exhibit C**.

3

4       I declare under penalty of perjury under the laws of the State of California
5  that the information contained in this declaration is true and correct to the best of
6  my knowledge.
7  Executed this 16th day of November, 2018 at San Diego, California.

8

9                      /s/ Bonnie E. McKnight
                    Bonnie E. McKnight Esq.

# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
08/30/2018

| | | |
|---|---|---|
| IN RE: | § | |
| HOPEWELL-PILOT PROJECT LLC | § | Case No. 17-32880 |
|     Debtor | § | Chapter 7 |
| | § | |
| Title Rover LLC | § | Case No. 17-32881 |
|     Debtor | § | Chapter 7 |
| | § | |
| | § | (Jointly Administered under 17-32880) |
| ENSOURCE INVESTMENTS, LLC | § | |
|     Movant | § | |
| | § | |
| vs. | § | |
| | § | |
| HOPEWELL-PILOT PROJECT LLC and | § | |
| TITLE ROVER, LLC, and | § | |
| RODNEY TOW, TRUSTEE | § | |
|     Respondents. | § | |

**AGREED ORDER CONCERNING
ENSOURCE INVESTMENTS, LLC'S MOTION FOR RELIEF FROM THE
AUTOMATIC STAY REGARDING PENDING LITIGATION**

IN HOUSTON, TEXAS, on July 19, 2018, came on for hearing, the Motion for Relief

From the Automatic Stay Regarding Pending Litigation filed by Ensource Investments, LLC

("Ensource") to which Rodney Tow, Trustee ("Trustee") objected.  At the hearing, Ensource and

the Trustee (collectively "Parties") reached an agreement which was announced to the Court.

Based upon the announcement of the Parties and the announcement being in the best interest of

the estates and the Parties; it is THEREFORE

ORDERED that the automatic stay in the captioned jointly administered bankruptcy cases

is modified as follows:

1.     Ensource may add the Debtors, captioned above, as nominal parties to Ensource Investments, LLC vs Thomas Tatham et al; Civil Action No. 17-cv-00079 in the United States District Court, Southern District of California, San Diego Division ("San Diego Action"),

2.     Ensource may conduct discovery in accordance with the Federal Rules of Civil Procedure ("Discovery") of the Debtors and their bankruptcy estates in the San Diego Action,

3.     The Debtors' designated corporate representatives are directed to cooperate with and assist the Trustee in responding to the Discovery,

4.     Costs, other than legal fees, incurred by the Trustee or the Trustee's professionals in copying items produced in response to the Discovery and otherwise complying with the Discovery shall be borne by Ensource, *provided* that (a) the Trustee shall notify Ensource prior to incurring any such costs for which the Trustee or the Trustee's professionals will seek reimbursement and (b) Ensource consents to said costs,

5.     The Trustee and Ensource may seek relief from this Court concerning any provision of this Order including, but not limited to, the Discovery and costs that the Trustee seeks to incur in connection with the Discovery,

6.     The Trustee shall not contest, object to or seek to subordinate or otherwise challenge the proofs of claim filed by Ensource in the captioned cases until the San Diego Action is concluded by final judgment or settlement, and

7.     All other relief not granted is denied.

**Signed: August 30, 2018.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

By: *Alan S. Gerger*
Alan S. Gerger
State Bar No.: 07816350
2211 Norfolk St., Suite 517
Houston, Texas 77098
Telephone: 713-337-6423
E-mail: asgerger@gerglaw.com

ATTORNEYS FOR
ENSOURCE INVESTMENTS LLC

By: */s/ R. J. Shannon*
R. J. Shannon
State Bar No.: 24108062
Diamond McCarthy LLP
909 Fannin Street, 37th Floor
Houston, Texas 77010
713-333-5143
robert.shannon@diamondmccarthy.com

ATTORNEYS FOR RODNEY D. TOW, IN
HIS CAPACITY AS CHAPTER 7 TRUSTEE

# Exhibit B

**PANAKOS LAW, APC**
Aaron D. Sadock  (SBN 282131)
555 West Beech Street, Ste. 500
San Diego, California 92101
Telephone:   (619) 800-0529
Facsimile:    (866) 365-4856
Email: asadock@panakoslaw.com

Attorney for Plaintiff ENSOURCE INVESTMENTS LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENSOURCE INVESTMENTS LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS P. TATHAM, an individual; MARK A. WILLIS, an individual; PDP MANAGEMENT GROUP, LLC, a Texas limited liability company; HOPEWELL-PILOT PROJECT, LLC, a Texas limited liability company [nominal party]; TITLE ROVER, LLC, a Texas limited liability company [nominal party]; BEYOND REVIEW, LLC, a Texas limited liability company; IMAGE ENGINE, LLC, a Texas limited liability company; WILLIS GROUP, LLC, a Texas limited liability company; and DOES 1-50,<br><br>Defendants. | Case No. 3:17-cv-00079-H-LL<br><br>**AMENDED COMPLAINT FOR:**<br><br>1. **Violation of Section 10(b) of The Exchange Act and Rule 10b-5(b) Promulgated Thereunder**<br>2. **Conversion**<br>3. **Intentional Misrepresentation**<br>4. **Unfair Competition (Business & Professions Code §17200, et seq.)**<br><br>**(Jury Trial Requested)** |

NOW COMES the Plaintiff, EnSource Investments LLC ("EnSource"), by and through its undersigned counsel, and for its Complaint against Thomas P.

Tatham, Mark A. Willis, Hopewell-Pilot Project, LLC, PDP Management Group, LLC, Title Rover, LLC, Beyond Review, LLC, Imagine Engine, LLC and Willis Group, LLC (collectively, the "<u>Defendants</u>"), states as follows:

## I.    INTRODUCTION

1.    This litigation arises from a scheme to defraud the Plaintiff in connection with the purchase and sale of securities of Defendant Hopewell – Pilot Project, LLC ("<u>Hopewell</u>").  The scheme was propagated and otherwise conducted by two main ring leaders:  Defendants Thomas P. Tatham ("<u>Tatham</u>") and Mark A. Willis ("<u>Willis</u>").

2.    As set forth more particularly *infra*, Defendants Tatham and Willis solicited investment from the Plaintiff in exchange for an interest in Hopewell (the "<u>Hopewell Interest</u>") as well as a warrant to convert the Hopewell Interest into an interest in Defendant Title Rover, LLC ("<u>Title Rover</u>") (the "<u>Title Rover Warrant</u>") (the Hopewell Interest and Title Rover Warrant shall be collectively referred to herein as the "<u>Securities</u>") and, in connection therewith, failed to disclose material fact, as well as committed omissions of material fact.

3.    In particular, Defendants Tatham and Willis: (a) failed to disclose the insolvency of Hopewell to the Plaintiff, notwithstanding inquiries thereof by the Plaintiff, and actively engaged in acts to conceal the insolvency and otherwise dire and bankrupt financial condition of Hopewell; (b) made misrepresentations to the Plaintiff that its investment would be used for go-forward oil, gas and mineral exploration activities of Hopewell when, in fact, Defendants Tatham and Willis had planned to use and, in fact, actually used nearly all of the proceeds of the investment of the Plaintiff to pay themselves, related entities (including Defendants Beyond Review, Willis Group, Image Engine, and PDP Management ("<u>Entity Defendants</u>") and even relatives for previously-incurred amounts allegedly owed but never disclosed to the Plaintiffs, thereby leaving next to nothing of the investment of the Plaintiff available for the go-forward oil, gas and mineral

exploration activities of Hopewell; (c) made misrepresentations with respect to the progress of Hopewell with respect to its then-current oil, gas and mineral exploration activities as well as potential payoff in connection therewith at the time they solicited the investment from the Plaintiff; and (d) made misrepresentations concerning the efficacy of the technology licensed to Defendant Hopewell by Defendant Title Rover, an entity owned and controlled directly and indirectly by Defendants Tatham and Willis, which technology was crucial to the oil, gas and mineral exploration activities of Hopewell.

4. While Defendants Tatham and Willis were actively and consciously squandering nearly every dollar invested into Hopewell by the Plaintiff in order to line their own pockets through direct payments to themselves as well as payments to their affiliated companies, including the Entity Defendants, and relatives, neither one ever provided the Plaintiff with any information concerning the financial affairs of Hopewell and, in fact, lead the Plaintiff to believe that all was going well – until Defendant Tatham sent the Plaintiff an electronic mail on December 7, 2016 (the "December 7th E-Mail") essentially stating that Hopewell was out of money, insolvent and in need of immediate cash infusion in order to be able to continue business activities.

## II. JURISDICTION AND VENUE

5. The claims of the Plaintiff arise under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78(j)(b) and 78(t), and Rule 10b-5 promulgated thereunder; and under §§11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act).

6. Jurisdiction is conferred by §27 of the Exchange Act, and 28 U.S.C. §1331, as well as by §22 of the Securities Act.

7. Venue is proper in the United States District Court for the Southern District of California (the "District") pursuant to §27 of the Exchange Act because acts and practices complained of herein occurred in part in the District.

Alternatively, venue is proper in the United States District Court for the Southern District of California (the "District") pursuant to 28 U.S.C. § 1391(b)(2).

## III.    THE PARTIES

8.    The Plaintiff, EnSource Investments LLC, is a Delaware limited liability company that maintains its principal place of business at 216 Centerview Drive, Suite 160, Brentwood, Tennessee 37027.  The Plaintiff lost Four Hundred Thirty Thousand Dollars ($430,000) in connection with the purchase of the Hopewell Interest.

9.    Defendant Tatham is an individual who, on information and belief, resides in Houston, Texas.  Defendant Tatham had, in connection with the purchase and sale of the Hopewell Interest to the Plaintiff, touted himself as an expert in the oil, gas and mineral exploration industry having decades of relevant experience and numerous successful past transactions and business dealings.  Defendant Tatham is a manager of Hopewell and represented to the Plaintiff that he would undertake and successfully and faithfully fulfill the duties of a manager of Hopewell as well as maintain an officer position whereby he would be an integral part of day-to-day operations of Hopewell.   As noted *infra*, combined with Defendant Willis, Defendant Tatham syphoned no less than Three Hundred Ninety-Nine Thousand Dollars ($399,000) out of the Four Hundred Thirty Thousand Dollars ($430,000) – nearly ninety-threepercent (93%) -- that was invested into Hopewell by the Plaintiff through entities that he owed and controlled.

10.    Defendant Willis is an individual who, on information and belief, resides in Houston, Texas.  Defendant Willis had, in connection with the purchase and sale of the Hopewell Interest to the Plaintiff, represented himself as a successful businessman and serial entrepreneur having started, grown and sold companies many times for profits in the millions of dollars.  Defendant Willis is a manager of Hopewell and represented to the Plaintiff that he would undertake and successfully and faithfully fulfill the duties of a manager of Hopewell as well as

maintain an officer position whereby he would be an integral part of day-to-day operations of Hopewell.   As noted *infra*, combined with Defendant Tatham, Defendant Willis syphoned no less than Three Hundred Ninety-Nine Thousand Dollars ($399,000) out of the Four Hundred Thirty Thousand Dollars ($430,000) – nearly ninety-three percent (93%) -- that was invested into Hopewell by the Plaintiff through entities that he owed and controlled

11.   Defendant Hopewell-Pilot Project, LLC ("Hopewell") is a Texas limited liability company with its principal place of business in Texas. Hopewell is owned and controlled, directly and indirectly, by Defendants Tatham and Willis. Hopewell is a chapter 7 debtor in bankruptcy case number 17-32880 pending in the United States Bankruptcy Court, Southern District of Texas, Houston Division. The automatic stay was lifted to allow Hopewell to be a nominal party in this lawsuit. The chapter 7 trustee for Hopewell is Rodney Tow.

12.   Defendant PDP Management Group, LLC ("PDP Management") is a Texas limited liability company with its principal place of business at 800 Brazos Street, Suite 400, Austin, Texas 78701.  Defendant Tatham is the sole manager of PDP Management.   PDP Management syphoned, as bogus management and related services fees, no less than One Hundred Fifty-Nine Thousand Two Hundred Fifty Dollars ($159,250) in the less than three (3) month period from the initial investment by the Plaintiff in Hopewell to the December 7th E-mail.   In reality, PDP Management was merely a conduit by which the funds invested by the Plaintiff into Hopewell could land in the pocket of Defendant Tatham.

13.   Defendant Title Rover ("Title Rover") is a Texas limited liability company with its principal place of business at 1400 Post Oak Boulevard, Suite 200, Houston, Texas 77056.  Title Rover is owned and controlled, directly and indirectly, by Defendants Tatham and Willis and was represented to hold a license to revolutionary software that would perform title work for land ownership in a manner that is at least ten (10) times quicker than any other software available and

discover all errors in connection with the chain of title with respect to land ownership.  Title Rover syphoned no less than One Hundred Fifty Thousand Five Hundred Ninety Dollars ($150,590) in the less than three (3) month period from the initial investment by the Plaintiff in Hopewell to the December 7th E-mail.  In reality, Title Rover was merely a conduit by which the funds invested by the Plaintiff into Hopewell could land in the pocket of Defendants Tatham and Willis. Title Rover is a chapter 7 debtor in bankruptcy case number 17-32881 pending in the United States Bankruptcy Court, Southern District of Texas, Houston Division. The automatic stay was lifted to allow Hopewell to be a nominal party in this lawsuit.  The chapter 7 trustee for Title Rover is Rodney Tow.

14.   Defendant Beyond Review, LLC ("Beyond Review") is a Texas limited liability company with its principal place of business at 1400 Post Oak Boulevard, Suite 200, Houston, Texas 77056.   Defendant Willis is the sole manager of Beyond Review.  Beyond Review syphoned, as bogus services fees, no less than Fifty Thousand Five Hundred Forty-Eight Dollars ($50,548) in the less than three (3) month period from the initial investment by the Plaintiff in Hopewell to the December 7th E-mail.  In reality, Beyond Review was merely a conduit by which the funds invested by the Plaintiff into Hopewell could land in the pocket of Defendant Willis.

15.   Defendant Image Engine, LLC ("Image Engine") is a Texas limited liability company with its principal place of business at 1400 Post Oak Boulevard, Suite 200, Houston, Texas 77056.  Defendant Willis is the sole manager of Image Engine.  Image Engine syphoned, as bogus services fees, no less than Twenty-Four Thousand Dollars ($24,000) in the less than three (3) month period from the initial investment by the Plaintiff in Hopewell to the December 7th E-mail.  In reality, Image Engine was merely a conduit by which the funds invested by the Plaintiff into Hopewell could land in the pocket of Defendant Willis.

16.   Defendant Willis Group, LLC ("Willis Group") is a Texas limited

liability company with its principal place of business at 1400 Post Oak Boulevard, Suite 200, Houston, Texas 77056.  Defendant Willis is the sole manager of Willis Group.  Willis Group syphoned, as bogus services fees, no less than Fifteen Thousand Dollars ($15,000) in the less than three (3) month period from the initial investment by the Plaintiff in Hopewell to the December 7th E-mail.  In reality, Willis Group was merely a conduit by which the funds invested by the Plaintiff into Hopewell could land in the pocket of Defendant Willis.

## **ALTER EGO ALLEGATIONS**

### **Image Engine, Beyond Review, and Defendant Willis**

17.    Plaintiff alleges that corporate defendants Image Engine and Beyond Review, are, and at all times herein mentioned were, alter ego corporations of individual Defendant Willis by reason of the following:

a.  At all times herein mentioned herein, Willis dominated, influenced, and controlled Beyond Review and Image Engine and their business, property, and affairs.

b.  Currently and at all times herein mentioned herein, Defendant Willis has shared a unity of interest with Beyond Review and Image Engine, and any individuality and separateness between them have ceased.

c.  At all times since their incorporation, Beyond Review and Image Engine  have been mere shells and shams without capital or assets, which Defendant Willis used as a conduit to conduct his personal business, property, and affairs.

d.  At all times mentioned herein, Beyond Review and Image Engine were created and continued pursuant to a fraudulent plan, scheme, and device conceived and operated by Defendant Willis where the income, revenue and profits of Beyond Review and Image Engine were diverted to Defendant Willis directly.

e.  At all times mentioned herein, Beyond Review and Image Engine, and

1   were organized by Defendant Willis as a device to avoid individual

2   liability and for the purpose of substituting financially irresponsible

3   corporations in the place and stead of Defendant Willis.

4   f.  At all times mentioned herein, Image Engine and Beyond Review

5   were formed by Defendant Willis with capitalization totally inadequate

6   for the business in which each company was engaged.

7   g.  Under the circumstances, allowing the fiction of the separate

8   corporate existences of Beyond Review and Image Engine to persist

9   would sanction a fraud and promote injustice in that Plaintiff would be

10   unable to enforce any judgment in its favor.

11   18.   As alter egos of one another, these Defendants are jointly and

12   severally liable for all damages owed to Plaintiff.

13   **PDP Management and Defendant Tatham**

14   19.   Plaintiff alleges that corporate defendant PDP Management is, and at

15   all times herein mentioned was, an alter ego corporations of individual Defendant

16   Tatham by reason of the following:

17   a.  At all times herein mentioned herein, Defendant Tatham dominated,

18   influenced, and controlled PDP Management and its business, property,

19   and affairs.

20   b.  Currently and at all times herein mentioned herein, PDP Management

21   has shared a unity of interest and ownership, and any individuality and

22   separateness between it and Defendant Tatham has ceased.

23   c.  At all times since their incorporation, PDP Management has been a

24   mere shell and sham without capital or assets, which Defendant Tatham

25   has used as a conduit to conduct his personal business, property, and

26   affairs.

27   d.  At all times mentioned herein, PDP Management was created and

28

continued pursuant to a fraudulent plan, scheme, and device conceived and operated by Defendant Tatham where the income, revenue and profits of PDP Management were diverted to Defendant Tatham directly.

e.  At all times mentioned herein, PDP Management was  organized by Defendant Tatham as a device to avoid individual liability and for the purpose of substituting financially irresponsible corporations in the place and stead of Defendant Tatham.

f.  At all times mentioned herein, PDP Management was formed by Defendant Tatham with capitalization totally inadequate for the business in which each company was engaged.

g.  Under the circumstances, allowing the fiction of the separate corporate existence of PDP Management to persist would sanction a fraud and promote injustice in that Plaintiff would be unable to enforce any judgment in its favor.

20.    As alter egos of one another, these Defendants are jointly and severally liable for all damages owed to Plaintiff.

## IV.    GENERAL ALLEGATIONS

### A.    HOPEWELL'S UNDISCLOSED DIRE FINANCIAL CONDITION

21.    Defendants Tatham and Willis began soliciting the Plaintiff for an investment in or around July 2016.  In connection with the solicitation activities, Defendants Tatham and Willis provided certain information and material to the Plaintiff, among which was a "Private Placement Memorandum – Hopewell Pilot – Project, LLC" (the "Private Placement Memorandum").  A true and correct copy of the Private Placement Memorandum is attached hereto and incorporated herein as Exhibit A.

22.    In the Private Placement Memorandum, it is stated that "…Hopewell is seeking qualified debt and equity investors to provide up to $2,000,000 in new funds from the placement of up to 1,000,000 Initial Additional Equity Shares *for*

*the purpose of acquiring new lease and mineral interest acquisitions in the four target areas and for working capital to continue the Company's operations and evaluation of lease acquisition opportunities.*" *See* "Executive Summary" in <u>Exhibit A</u>,

23.     The Private Placement Memorandum mentions no aspect of the financial condition of Hopewell, even though during the time period of the solicitation of investment from the Plaintiff, Hopewell: (a) had less than Ten Thousand Dollars ($10,000) and, at times, had a negative balance in its one and only checking account; and (b) was at all times insolvent and on the verge of bankruptcy.

24.     Further, at no time during the solicitation of the investment from the Plaintiff did either of Defendants Tatham and Willis even remotely mention the insolvency of Hopewell or the dire financial position of the company and its verge of bankruptcy, even though they were both fully aware of such condition. Defendant Willis also represented that they had a $25 million investor potentially waiting to invest in Hopewell and that Hopewell was oversubscribed in its investments, further buttressing Plaintiff's confidence to invest in Hopewell.

25.     When questioned about the financial strength of Hopewell, both Defendants Tatham and Willis failed to disclose: (a) Hopewell's pathetically low (and sometimes negative) cash balance, insolvency and near bankrupt condition; (b) the fact that Hopewell was running at a huge loss each month since its inception; and (c) any financial statement of Hopewell including, without limitation, any income statement, balance sheet, statement of cash flows or statement of stockholders' equity.

26.     Instead, Defendants Tatham and Willis would affirm the viability of Hopewell to the Plaintiff, even though they both knew of its dire financial condition and near bankrupt state and notwithstanding the fact that both Defendants Tatham and Willis maintained the duty *to disclose the precarious and*

1    *near bankrupt state of Hopewell to the Plaintiff.*

2        27.    Further, when the initial tranche of the investment of the Plaintiff into

3    Hopewell was delayed and Defendants Tatham and Willis knew that the

4    discontinuation of the company's operations was imminent, instead of disclosing

5    such precarious state of Hopewell, Defendants Tatham and Willis requested a

6    bridge loan from the Plaintiff through the issuance of a convertible promissory

7    note (the "Convertible Note"). This Note was personally guaranteed by Defendant

8    Willis himself.   Defendants Tatham and Willis conducted themselves in the

9    aforementioned manner to further hide the truth of Hopewell's desperate financial

10   condition.

11
12
## B.   MISREPRESENTATIONS CONCERNING THE USE OF THE INVESTMENT PROCEEDS

13       28.    Throughout the entire solicitation period, Defendants Tatham and

14   Willis stated, on behalf of themselves and as agents of Hopewell, on numerous

15   occasions, that the use of the investment proceeds would be for go-forward

16   working capital requirements and for acquiring new lease and mineral interest

17   acquisitions in the four target areas.   In fact, such use of funds was stated in the

18   Private Placement Memorandum. Defendants Tatham and Willis, individually and

19   as agents of Hopewell, omitted that Hopewell had any outstanding debt, and

20   informed Plaintiff that the proceeds would be used for tech commitments.

21   Defendant Tatham himself informed Plaintiff that nothing would appear like self-

22   dealing. Defendants Tatham and Willis also represented that the Entity Defendants

23   (Beyond Review, Image Engine, Willis Group, and PDP Management) would be

24   providing legitimate services to Hopewell.

25       29.    In reality, Defendants Tatham and Willis had covertly planned to use

26   the investment proceeds to line their pockets for alleged amounts owed to them as

27   well as the Entity Defendants, companies that they owned and controlled.  Neither

28   of Defendants Tatham or Willis had any intention of using the investment proceeds

for either go-forward working capital needs or the acquisition of new lease and mineral interest acquisitions in the four target areas.

30.    In fact, on September 13, 2016 – the very day the first tranche of investment from the Plaintiff was received in the amount of Two Hundred Five Thousand Dollars ($205,000) pursuant to the Convertible Note (the "First Tranche") – One Hundred Eleven Thousand Dollars ($111,000), over half of the amount of the initial tranche, was immediately wire transferred to companies owned and controlled by Defendants Tatham and Willis.

31.    Then, in just a three (3) day period thereafter from September 14, 2016 through September 16, 2016, Defendants Tatham and Willis drained the remaining Ninety-Four Thousand Dollars ($94,000) and even managed to create an overdraw in the checking account of Hopewell in excess of Three Thousand Dollars ($3,000) by, among other things, wire transferring over Fifty-Seven Thousand Dollars ($57,000) into the accounts of companies they owed and controlled.  In the course of just four (4) days, Defendants Tatham and Willis put over One Hundred Sixty-Eight Thousand Dollars ($168,000) – over Eighty Percent (80%) – into their own pocket through transfer of such amount to companies they owned and controlled.  Not only was such amount not used for either go-forward working capital needs or the acquisition of new lease and mineral interest acquisitions in the four target areas as represented by Defendants Tatham and Willis, but none of the remaining amount of the First Tranche was used for either such purposes.

32.    After draining the First Tranche from the coffers of Hopewell for their own individual benefits and against their expressed representations of the use of such funds – and once again creating an undisclosed, negative cash balance in the sole bank account of Hopewell, Defendants Tatham and Willis did not stop there.  Specifically, on September 30, 2016, Defendants Tatham and Willis received the second tranche of the investment from the Plaintiff in the amount of Twenty

Thousand Dollars ($20,000) (the "<u>Second Tranche</u>") and spent such funds consistent with how they spent the funds of the First Tranche – without any of such funds actually used for either go-forward working capital needs or the acquisition of new lease and mineral interest acquisitions in the four target areas, as represented by Defendants Tatham and Willis.

33.     On October 28, 2016, the third tranche of the investment from the Plaintiff in the amount of Two Hundred Five Thousand Dollars ($205,000) (the "<u>Third Tranche</u>") was received into the coffers of Hopewell.  Instead of using such funds for either go-forward working capital needs or the acquisition of new lease and mineral interest acquisitions in the four target areas as represented by Defendants Tatham and Willis, they used such amount to, once again, line their own pockets and, in the process, putting Hopewell in yet another round of insolvency and negative cash balance in its checking account – and Defendants Tatham and Willis did it in much the same ways as they had squandered the prior tranches.

34.     Specifically, on the very day the Third Tranche was received, nearly Seventy-Seven Thousand Dollars ($77,000) – over Thirty-Seven Percent (37%) – of the Third Tranche was wire transferred to companies owned and controlled by Defendants Tatham and Willis.  Then, in the period from October 29, 2016 through November 1, 2016 – just four (4) days – Defendants Tatham and Willis wire transferred another near Eighty-Three Thousand Dollars ($83,000) to companies they owned and controlled, thereby making their five (5) day pillage total of the Third Tranche to over One Hundred Sixty Thousand Dollars ($160,000) – over Seventy-Eight Percent (78%) – of the amount of the Third Tranche.   As with the two prior tranches, none of such funds for either go-forward working capital needs or the acquisition of new lease and mineral interest acquisitions in the four target areas as represented by Defendants Tatham and Willis.  Further, reminiscent of the First Tranche, the remainder of the Third Tranche steadily was spent on items

other than the stated use of funds and in such a haphazard fashion to eventually create a negative balance in the sole checking account of Hopewell of **over Thirty-Six Thousand Dollars ($36,000)**.

35.     Meanwhile, while Defendants Tatham and Willis pillage and plunder the investment of the Plaintiff the second it hit the account of Hopewell to line their own pockets and to eventually drive Hopewell into a desperate financial crisis, neither one makes any communication whatsoever to any representative of the Plaintiff.  In fact and to the contrary, Defendants Tatham and Willis proceeded to interface with representatives of the Plaintiff in a manner that creates the intended illusion that the business of Hopewell is proceeding as planned.  Until, of course, Defendant Tatham sends the December 7th E-mail to the Plaintiff noting the insolvency and imminent bankruptcy of Hopewell – without any plan to reverse the situation except, of course, to ask for the Plaintiff to invest more money into Hopewell.

### C.   MISREPRESENTATIONS CONCERNING THE PROGRESS AND BUSINESS STATE OF HOPEWELL

36.     In the Private Placement Memorandum, it is stated that "…Hopewell is seeking qualified debt and equity investors to provide up to $2,000,000 in new funds from the placement of up to 1,000,000 Initial Additional Equity Shares *for the purpose of acquiring new lease and mineral interest acquisitions in the four target areas and for working capital to continue the Company's operations and evaluation of lease acquisition opportunities.*"

37.     Such aforementioned statement in the Private Placement Memorandum implies that Hopewell had current lease and mineral acquisitions, which it did not at the time of the solicitation of the investment from the Plaintiff.

38.     Further, at all times since the initial solicitation of the investment from the Plaintiff through the December 7th E-Mail, both in the Private Placement Memorandum and otherwise, Defendants Tatham and Willis continuously and

consciously misrepresented the payoff potential of the lease and mineral acquisitions as well as the relative ease of conducting negotiations and actually procuring such lease and mineral acquisitions.

39.    In fact, notwithstanding their representations of ease-of-closing and moon-shot profits with respect to the lease and mineral acquisitions, Defendants Tatham and Willis merely closed a fraction of the amount needed to achieve commercial critical mass.  Phrased differently, Defendants Tatham and Willis intentionally misrepresented the profit potential as well as the probability of such profit potential of the lease and mineral acquisitions of Hopewell in connection with the solicitation of the investment from the Plaintiff.

### D.    MISREPRESENTATIONS CONCERNING THE TECHNOLOGY AND KNOW-HOW OF TITLE ROVER AND HOPEWELL

40.    Defendants Tatham and Willis represented that the primary advantage that Hopewell maintained in its efforts to procure oil, gas and mineral interests was the proprietary title-searching technology of Title Rover, which such technology had been licensed to Hopewell (the "Title Rover Technology").

41.    Defendants Tatham and Willis, individually and as agents of Hopewell and Title Rover, represented that the Title Rover Technology could search data related to property transfers and discover, without any human intervention, any and all defects concerning the chain of title of property transfers in a fraction of the time that it would take humans to perform the same activities. Furthermore, Defendants Tatham and Willis represented that the technology was being used by IBM under a separate exclusive license, that Willis Group had invested $3 million into the Title Rover technology, and that the software had or was already in use for a case involving BP dealing with e-discovery.

42.    In fact, the Title Rover Technology was not nearly as robust or automated as represented by Defendants Tatham, Willis, Hopewell, and Title

Rover.  Nor did it maintain any automation to discover defects concerning the chain of title of property transfers.

43.    The Title Rover Technology produced no results for Hopewell in connection with viable potential transactions for oil, gas and/or mineral rich properties for which defects in the chain of title were present.

**FIRST CLAIM**
**VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND**
**RULE 10b-5(b) PROMULGATED THEREUNDER**
**(Against Defendants Tatham, Willis, and Entity Defendants)**

44.    The Plaintiff re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

45.    Defendants Tatham and Willis, on behalf of themselves, and as agents of Entity Defendants, Title Rover, and Hopewell, deceived Plaintiff, and in so doing caused the Plaintiff to purchase the Hopewell interest, by: (a) failing to disclose the insolvency of Hopewell to the Plaintiff, notwithstanding inquiries thereof by the Plaintiff, and actively engaged in acts to conceal the insolvency and otherwise dire and bankrupt financial condition of Hopewell; (b) making misrepresentations to the Plaintiff that its investment would be used for go-forward oil, gas and mineral exploration activities of Hopewell,  tech commitments, and for legitimate services provided by their companies, which include the Entity Defendants (Beyond Review, Image Engine, Willis Group, and PDP Management), when, in fact, Defendants Tatham and Willis had planned to use and, in fact, actually used nearly all of the proceeds of the investment of the Plaintiff to pay themselves, related entities and even relatives for previously-incurred amounts allegedly owed but never disclosed to the Plaintiffs, thereby leaving next to nothing of the investment of the Plaintiff available for the go-forward oil, gas and mineral exploration activities of Hopewell; (c) making misrepresentations with respect to the progress of Hopewell with respect to its

then-current oil, gas and mineral exploration activities as well as potential payoff in connection therewith at the time they solicited the investment from the Plaintiff; (d) making misrepresentations concerning the efficacy and use of the core technology licensed to Defendant Hopewell by Defendant Title Rover, an entity owned and controlled directly and indirectly by Defendants Tatham and Willis, which technology was crucial to the oil, gas and mineral exploration activities of Hopewell.

46.     Defendants Tatham and Willis, on behalf of themselves, the Entity Defendants, Title Rover, and Hopewell, made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading, and/or substantially participated in the creation of the alleged misrepresentations, which operated as a fraud and deceit upon the Plaintiff in connection with its purchase of the Hopewell Interest and in violation of Section 10(b) of the Exchange Act and Rule 10b-5(b).

47.     Defendants Tatham and Willis, on behalf of themselves, the Entity Defendants, Title Rover, and Hopewell, directly and indirectly, by the use of means and instrumentalities of interstate commerce and/or the mails, made, or substantially participated in the creation of, untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made about the Hopewell investment in light of the circumstances under which they were made, not misleading, as set forth herein.

48.     Defendants Tatham and Willis, on behalf of themselves, the Entity Defendants, Title Rover, and Hopewell, had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were unavailable to them.

49.     The facts alleged herein set forth a strong inference that each of Defendants acted with scienter.

50.     Each of Defendants had a strong motive to engage in the fraudulent scheme set forth herein.  Namely, to pilfer the investment funds for their own gain.

51.     By reason of the foregoing, the Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5(b), promulgated thereunder and are liable to the Plaintiff for damages which they suffered in connection with their purchases of the Hopewell Interest.

## SECOND CLAIM
## CONVERSION
### (Against Defendants Tatham, Willis, PDP Management, Title Rover, Beyond Review, Imagine Engine and Willis Group)

52.     The Plaintiff re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.   This count is directly to Defendants Tatham, Willis, PDP Management, Title Rover, Beyond Review, Imagine Engine and Willis Group (the "Conversion Defendants").

53.     Through Defendants' Tatham and Willis' orchestrated efforts to defraud the Plaintiff in connection with the purchase and sale of the Hopewell Interest, the Conversion Defendants have possession, control and dominion over funds not rightfully owned by them.

54.     Due to such possession, control and dominion over funds not rightfully owned by them, the Conversion Defendants damaged the Plaintiff to the extent that such funds were derived from the investment from the Plaintiff.

55.     The possession, control and dominion over funds not rightfully owned by the Conversion Defendants continues as of the date of the filing of this Complaint.

## THIRD CLAIM

## INTENTIONAL MISREPRESENTATION
### (Against Defendants Tatham, Willis, and Entity Defendants)

56. Plaintiff realleges and incorporates by reference all prior paragraphs of this Amended Complaint as though fully set forth herein.

57.     Defendants Willis and Tatham, individually and as agents of Entity Defendants, Hopewell, and Title Rover, intentionally misrepresented material facts to Plaintiff concerning the Hopewell investment by: (a) failing to disclose the insolvency of Hopewell to the Plaintiff, notwithstanding inquiries thereof by the Plaintiff, and actively engaged in acts to conceal the insolvency and otherwise dire and bankrupt financial condition of Hopewell; (b) making misrepresentations to the Plaintiff that its investment would be used for go-forward oil, gas and mineral exploration activities of Hopewell,  tech commitments, and for legitimate services provided by their companies, which include the Entity Defendants (Beyond Review, Image Engine, Willis Group, and PDP Management), when, in fact, Defendants Tatham and Willis had planned to use and, in fact, actually used nearly all of the proceeds of the investment of the Plaintiff to pay themselves, related entities, including Entity Defendants, and even relatives for previously-incurred amounts allegedly owed but never disclosed to the Plaintiffs, thereby leaving next to nothing of the investment of the Plaintiff available for the go-forward oil, gas and mineral exploration activities of Hopewell; (c) making misrepresentations with respect to the progress of Hopewell with respect to its then-current oil, gas and mineral exploration activities as well as potential payoff in connection therewith at the time they solicited the investment from the Plaintiff; (d) making misrepresentations concerning the efficacy and use of the core technology licensed to Defendant Hopewell by Defendant Title Rover, an entity owned and controlled directly and indirectly by Defendants Tatham and Willis, which technology was crucial to the oil, gas and mineral exploration activities of Hopewell.

58.     Defendants knew that these representations were false and made them with the intent to defraud Plaintiff.

59.     Plaintiff reasonably relied upon Defendants' representations in deciding to invest in Hopewell.

60.     As a direct result of Defendants' intentional misrepresentations,

Plaintiff suffered damages in an amount to be proven at trial, but not less than $430,000.00, the amount invested into Hopewell.

61.     Given the fraudulent, malicious, and oppressive nature of Defendants' conduct described above, Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial.

## **FOURTH CLAIM**

### **Unfair Competition (Business & Professions Code §17200, et seq.)**

### **(Against Defendants Willis, Tatham, and Entity Defendants)**

62.     Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

63.     Plaintiff is a "person" as that term is defined under California Business & Professions Code section 17021.

64.     California's Unfair Competition law defines unfair competition as any unlawful, unfair, or fraudulent business act or practice. Section 17203 authorizes injunctive, declaratory, and/or other equitable relief with respect to unfair competition as follows:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been required by means of such unfair competition.

(Cal. Business & Professions Code, §17203.)

65.     Through the conduct alleged herein, Defendants Willis and Tatham, as agents of Entity Defendants, Hopewell, and Title Rover, engaged in unlawful business practices, including, but not limited to violating federal Law, including

Section 10(b) of the Exchange Act and Rule 10b-5(b), for which this Court should issue declaratory, injunctive, and/or other equitable relief, pursuant to California Business and Professions Code section 17203, as may be necessary to prevent and remedy the conduct held to constitute unfair competition.

66. Defendants Willis and Tatham's, individually and on behalf of Entity Defendants, violations of the Business and Professions Code section, as alleged herein, include, but are not limited to, omitting Hopewell's financial insolvency when soliciting Plaintiff to invest in Hopewell, representing that legitimate services would be provided by the Entity Defendants, and misrepresenting the efficacy of Title Rover's technology.

67. The business acts and practices of Defendants Tatham and Willis, individually and as agents of Entity Defendants, Hopewell, and Title Rover in violating Section 10(b) of the Exchange Act and Rule 10b-5(b), as described above, constitute an unlawful, unfair and/or fraudulent business practice in violation of the Unfair Competition Law.

68. Defendants Willis and Tatham's knowing failure to adhere to these laws, all of which are binding upon and burdensome to competitors of Defendants Tatham and Willis and the Entity Defendants, engenders an unfair competitive advantage for Willis, Tatham and the Entity Defendants, and hereby constituting an unfair business practice, as set forth in California Business and Professions Code sections 17200-17208.

69. By and through the unfair and unlawful business practices described above, Defendants Tatham, Willis, and the Entity Defendants have obtained valuable property, money, and services from Plaintiff, and has deprived it of valuable rights and benefits guaranteed by law, all to its detriment and to the benefit of Tatham,  Willis and their companies so as to allow Tatham and Willis to unfairly compete.

70. All the acts described here as violations of, among other things, the

California Business and Professions Code, are unlawful, are in violation of public policy, are immoral, unethical, oppressive, and unscrupulous, and are likely to deceive consumers, and thereby constitute deceptive, unfair and unlawful business practices in violation of California Business and Professions Code section 17200 *et seq.*

71.    As a result of Defendants Tatham's, Willis', and Entity Defendants' unfair business practices, they have reaped unfair benefits and illegal profits at the expense of Plaintiff. Defendants Willis, Tatham and Entity Defendants should be made to disgorge all ill-gotten gains and restore such monies to Plaintiff.

## JURY REQUEST

72.    The Plaintiff hereby requests a trial by jury on all claims so triable.

## PRAYER

**WHEREFORE,** the Plaintiff prays for relief and judgment, as follows:

a.    Awarding compensatory damages against all of the defendants (excluding nominal defendants Hopewell and Title Rover), jointly and severally, in favor of the Plaintiffs for all losses and damages suffered as a result of defendants' wrongdoing alleged herein, in an amount to be determined at trial, together with interest thereon;

b.    Awarding the Plaintiff its reasonable costs, and expenses incurred in this action;

c.    For exemplary and punitive damages, according to proof at the time of trial;  and

d.    Awarding the Plaintiff such other and further relief as the Court may deem just and proper.

DATED: November 16, 2018              PANAKOS LAW, APC


                                      By: /s/ Aaron D. Sadock
                                      Aaron D. Sadock Esq. Attorney for Plaintiff
                                      ENSOURCE INVESTMENTS LLC

# Exhibit C

1   **PANAKOS LAW, APC**
    Aaron D. Sadock  (SBN 282131)
2   555 West Beech Street, Ste. 500
    San Diego, California 92101
3   Telephone:   (619) 800-0529
    Facsimile:    (866) 365-4856
4   Email: asadock@panakoslaw.com

5   Attorney for Plaintiff ENSOURCE INVESTMENTS LLC

6

7

8                   **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   ENSOURCE INVESTMENTS LLC, a          Case No. 3:17-cv-00079-H-LL
     Delaware limited liability company,   ~~Case No.~~
12
                        Plaintiff,          **AMENDED COMPLAINT FOR:**
13   v.

14   THOMAS P. TATHAM, an                    1. **Violation of Section 10(b) of**
     individual; MARK A. WILLIS, an             **The Exchange Act and Rule**
15   individual; PDP MANAGEMENT                 **10b-5(b) Promulgated**
     GROUP, LLC, a Texas limited                **Thereunder**
16   liability company; HOPEWELL-            2. **Conversion**
     PILOT PROJECT, LLC, a Texas           3. **Intentional Misrepresentation**
17   limited liability company [nominal     4. **Unfair Competition (Business**
     party]; TITLE ROVER, LLC, a Texas         **& Professions Code §17200, et**
18   limited liability company [nominal        **seq.)**
     party]; BEYOND REVIEW, LLC, a         ~~2.~~
19   Texas limited liability company;
     IMAGE ENGINE, LLC, a Texas
20   limited liability company; WILLIS
     GROUP, LLC, a Texas limited
21   liability company; and DOES 1-50,
                                            **(Jury Trial Requested)**
22                     Defendants.
23
24
25
26

27        NOW COMES the Plaintiff, EnSource Investments LLC ("EnSource"), by

28   and through its undersigned counsel, and for its Complaint against Thomas P.

Tatham, Mark A. Willis, Hopewell-Pilot Project, LLC, PDP Management Group, LLC, Title Rover, LLC, Beyond Review, LLC, Imagine Engine, LLC and Willis Group, LLC (collectively, the "Defendants"), states as follows:

## I.   INTRODUCTION

1.     This litigation arises from a scheme to defraud the Plaintiff in connection with the purchase and sale of securities of Defendant Hopewell – Pilot Project, LLC ("Hopewell").  The scheme was propagated and otherwise conducted by two main ring leaders:  Defendants Thomas P. Tatham ("Tatham") and Mark A. Willis ("Willis").

2.     As set forth more particularly *infra*, Defendants Tatham and Willis solicited investment from the Plaintiff in exchange for an interest in Hopewell (the "Hopewell Interest") as well as a warrant to convert the Hopewell Interest into an interest in Defendant Title Rover, LLC ("Title Rover") (the "Title Rover Warrant") (the Hopewell Interest and Title Rover Warrant shall be collectively referred to herein as the "Securities") and, in connection therewith, failed to disclose material fact, as well as committed omissions of material fact.

3.     In particular, Defendants Tatham and Willis: (a) failed to disclose the insolvency of Hopewell to the Plaintiff, notwithstanding inquiries thereof by the Plaintiff, and actively engaged in acts to conceal the insolvency and otherwise dire and bankrupt financial condition of Hopewell; (b) made misrepresentations to the Plaintiff that its investment would be used for go-forward oil, gas and mineral exploration activities of Hopewell when, in fact, Defendants Tatham and Willis had planned to use and, in fact, actually used nearly all of the proceeds of the investment of the Plaintiff to pay themselves, related entities (including , but not limited to, Defendants Beyond Review, Willis Group, Image Engine, and PDP Management ("Entity Defendants") and even relatives for previously-incurred amounts allegedly owed but never disclosed to the Plaintiffs, thereby leaving next to nothing of the investment of the Plaintiff available for the go-forward oil, gas

and mineral exploration activities of Hopewell; (c) made misrepresentations with respect to the progress of Hopewell with respect to its then-current oil, gas and mineral exploration activities as well as potential payoff in connection therewith at the time they solicited the investment from the Plaintiff; and (d) made misrepresentations concerning the efficacy of the technology licensed to Defendant Hopewell by Defendant Title Rover, an entity owned and controlled directly and indirectly by Defendants Tatham and Willis, which technology was crucial to the oil, gas and mineral exploration activities of Hopewell.

4.     While Defendants Tatham and Willis were actively and consciously squandering nearly every dollar invested into Hopewell by the Plaintiff in order to line their own pockets through direct payments to themselves as well as payments to their affiliated companies, including the Entity Defendants, and relatives, neither one ever provided the Plaintiff with any information concerning the financial affairs of Hopewell and, in fact, lead the Plaintiff to believe that all was going well – until Defendant Tatham sent the Plaintiff an electronic mail on December 7, 2016 (the "December 7th E-Mail") essentially stating that Hopewell was out of money, insolvent and in need of immediate cash infusion in order to be able to continue business activities.

## II.   JURISDICTION AND VENUE

5.     The claims of the Plaintiff arise under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78(j)(b) and 78(t), and Rule 10b-5 promulgated thereunder; and under §§11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act)".

6.     Jurisdiction is conferred by §27 of the Exchange Act, and 28 U.S.C. §1331, as well as by §22 of the Securities Act.

7.     Venue is proper in the United States District Court for the Southern District of California (the "District") pursuant to §27 of the Exchange Act because acts and practices complained of herein occurred in part in the District.

Alternatively, venue is proper in the United States District Court for the Southern District of California (the "District") pursuant to 28 U.S.C. § 1391(b)(2).

## III.   THE PARTIES

8.     The Plaintiff, EnSource Investments LLC, is a Delaware limited liability company that maintains its principal place of business at 216 Centerview Drive, Suite 160, Brentwood, Tennessee 37027.  The Plaintiff lost Four Hundred Thirty Thousand Dollars ($430,000) in connection with the purchase of the Hopewell Interest.

9.     Defendant Tatham is an individual who, on information and belief, resides in Houston, Texas.  Defendant Tatham had, in connection with the purchase and sale of the Hopewell Interest to the Plaintiff, touted himself as an expert in the oil, gas and mineral exploration industry having decades of relevant experience and numerous successful past transactions and business dealings. Defendant Tatham is a manager of Hopewell and represented to the Plaintiff that he would undertake and successfully and faithfully fulfill the duties of a manager of Hopewell as well as maintain an officer position whereby he would be an integral part of day-to-day operations of Hopewell.  As noted *infra*, combined with Defendant Willis, Defendant Tatham syphoned no less than Three Hundred Ninety-Nine Thousand Dollars ($399,000) out of the Four Hundred Thirty Thousand Dollars ($430,000) – nearly ninety-three percent (93%) -- that was invested into Hopewell by the Plaintiff through entities that he owed and controlled.

10.     Defendant Willis is an individual who, on information and belief, resides in Houston, Texas.  Defendant Willis had, in connection with the purchase and sale of the Hopewell Interest to the Plaintiff, represented himself as a successful businessman and serial entrepreneur having started, grown and sold companies many times for profits in the millions of dollars.  Defendant Tatham

Willis is a manager of Hopewell and represented to the Plaintiff that he would undertake and successfully and faithfully fulfill the duties of a manager of Hopewell as well as maintain an officer position whereby he would be an integral part of day-to-day operations of Hopewell.   As noted *infra*, combined with Defendant Tatham, Defendant Willis syphoned no less than Three Hundred Ninety-Nine Thousand Dollars ($399,000) out of the Four Hundred Thirty Thousand Dollars ($430,000) – nearly ninety-three percent (93%) -- that was invested into Hopewell by the Plaintiff through entities that he owed and controlled

11.   Defendant Hopewell-Pilot Project, LLC ("Hopewell") is a Texas limited liability company with its principal place of business in Texas. Hopewell is owned and controlled, directly and indirectly, by Defendants Tatham and Willis. Hopewell is a chapter 7 debtor in bankruptcy case number 17-32880 pending in the United States Bankruptcy Court, Southern District of Texas, Houston Division. The automatic stay was lifted to allow Hopewell to be a nominal party in this lawsuit. The chapter 7 trustee for Hopewell is Rodney Tow.——

12.   Defendant PDP Management Group, LLC ("PDP Management") is a Texas limited liability company with its principal place of business at 800 Brazos Street, Suite 400, Austin, Texas 78701.  Defendant Tatham is the sole manager of PDP Management.   PDP Management syphoned, as bogus management and related services fees, no less than One Hundred Fifty-Nine Thousand Two Hundred Fifty Dollars ($159,250) in the less than three (3) month period from the initial investment by the Plaintiff in Hopewell to the December 7th E-mail.   In reality, PDP Management was merely a conduit by which the funds invested by the Plaintiff into Hopewell could land in the pocket of Defendant Tatham.

132.   Defendant Title Rover ("Title Rover") is a Texas limited liability company with its principal place of business at 1400 Post Oak Boulevard, Suite 200, Houston, Texas 77056.  Title Rover is owned and controlled, directly and indirectly, by Defendants Tatham and Willis and was represented to hold a license

to revolutionary software that would perform title work for land ownership in a manner that is at least ten (10) times quicker than any other software available and discover all errors in connection with the chain of title with respect to land ownership.  Title Rover syphoned no less than One Hundred Fifty Thousand Five Hundred Ninety Dollars ($150,590) in the less than three (3) month period from the initial investment by the Plaintiff in Hopewell to the December 7th E-mail.  In reality, Title Rover was merely a conduit by which the funds invested by the Plaintiff into Hopewell could land in the pocket of Defendants Tatham and Willis.  Title Rover is a chapter 7 debtor in bankruptcy case number 17-32881 pending in the United States Bankruptcy Court, Southern District of Texas, Houston Division.  The automatic stay was lifted to allow Hopewell to be a nominal party in this lawsuit.  The chapter 7 trustee for Title Rover is Rodney Tow.

1314.    Defendant Beyond Review, LLC ("Beyond Review") is a Texas limited liability company with its principal place of business at 1400 Post Oak Boulevard, Suite 200, Houston, Texas 77056.  Defendant Willis is the sole manager of Beyond Review.  Beyond Review syphoned, as bogus services fees, no less than Fifty Thousand Five Hundred Forty-Eight Dollars ($50,548) in the less than three (3) month period from the initial investment by the Plaintiff in Hopewell to the December 7th E-mail.  In reality, Beyond Review was merely a conduit by which the funds invested by the Plaintiff into Hopewell could land in the pocket of Defendant Willis.

1415. Defendant Image Engine, LLC ("Image Engine") is a Texas limited liability company with its principal place of business at 1400 Post Oak Boulevard, Suite 200, Houston, Texas 77056.  Defendant Willis is the sole manager of Image Engine.  Image Engine syphoned, as bogus services fees, no less than Twenty-Four Thousand Dollars ($24,000) in the less than three (3) month period from the initial investment by the Plaintiff in Hopewell to the December 7th E-mail.  In reality, Image Engine was merely a conduit by which the funds invested by the Plaintiff

into Hopewell could land in the pocket of Defendant Willis.

~~15~~16. Defendant Willis Group, LLC ("Willis Group") is a Texas limited liability company with its principal place of business at 1400 Post Oak Boulevard, Suite 200, Houston, Texas 77056.  Defendant Willis is the sole manager of Willis Group.   Willis Group syphoned, as bogus services fees, no less than Fifteen Thousand Dollars ($15,000) in the less than three (3) month period from the initial investment by the Plaintiff in Hopewell to the December 7th E-mail.  In reality, Willis Group was merely a conduit by which the funds invested by the Plaintiff into Hopewell could land in the pocket of Defendant Willis.

## ALTER EGO ALLEGATIONS

### Image Engine, Beyond Review, and Defendant Willis

17.   Plaintiff alleges that corporate defendants Image Engine and, Beyond Review, are, and at all times herein mentioned were, alter ego corporations of individual Defendant Willis by reason of the following:

a.  At all times herein mentioned herein, Willis dominated, influenced, and controlled Beyond Review and Image Engine and their business, property, and affairs.

b.  Currently and at all times herein mentioned herein, Defendant Willis has shared a unity of interest with Beyond Review and Image Engine, and any individuality and separateness between them have ceased.

c.  At all times since their incorporation, Beyond Review and Image Engine  have been mere shells and shams without capital or assets, which Defendant Willis used as a conduit to conduct his personal business, property, and affairs.

d.  At all times mentioned herein, Beyond Review and Image Engine were created and continued pursuant to a fraudulent plan, scheme, and device conceived and operated by Defendant Willis where the income,

revenue and profits of Beyond Review and Image Engine were diverted to Defendant Willis directly.

e.  At all times mentioned herein, Beyond Review and Image Engine, and were organized by Defendant Willis as a device to avoid individual liability and for the purpose of substituting financially irresponsible corporations in the place and stead of Defendant Willis.

f.  At all times mentioned herein, Image Engine and Beyond Review were formed by Defendant Willis with capitalization totally inadequate for the business in which each company was engaged.

___

g. Under the circumstances, allowing the fiction of the separate corporate existences of Beyond Review and Image Engine to persist would sanction a fraud and promote injustice in that Plaintiff would be unable to enforce any judgment in its favor.

18.   As alter egos of one another, these Defendants are jointly and severally liable for all damages owed to Plaintiff.

### PDP Management and Defendant Tatham

19.   Plaintiff alleges that corporate defendant PDP Management is, and at all times herein mentioned was, an alter ego corporations of individual Defendant Tatham by reason of the following:

a.  At all times herein mentioned herein, Defendant Tatham dominated, influenced, and controlled PDP Management and its business, property, and affairs.

b.  Currently and at all times herein mentioned herein, PDP Management has shared a unity of interest and ownership, and any individuality and separateness between it and Defendant Tatham has ceased.

c.  At all times since their incorporation, PDP Management has been a

mere shell and sham without capital or assets, which Defendant Tatham has used as a conduit to conduct his personal business, property, and affairs.

d. At all times mentioned herein, PDP Management was created and continued pursuant to a fraudulent plan, scheme, and device conceived and operated by Defendant Tatham where the income, revenue and profits of PDP Management were diverted to Defendant Tatham directly.

e. At all times mentioned herein, PDP Management was organized by Defendant Tatham as a device to avoid individual liability and for the purpose of substituting financially irresponsible corporations in the place and stead of Defendant Tatham.

f. At all times mentioned herein, PDP Management was formed by Defendant Tatham with capitalization totally inadequate for the business in which each company was engaged.

g. Under the circumstances, allowing the fiction of the separate corporate existence of PDP Management to persist would sanction a fraud and promote injustice in that Plaintiff would be unable to enforce any judgment in its favor.

20. As alter egos of one another, these Defendants are jointly and severally liable for all damages owed to Plaintiff.

## IV.   GENERAL ALLEGATIONS

## A.   HOPEWELL'S UNDISCLOSED DIRE FINANCIAL CONDITION

IV. GENERAL ALLEGATIONS

21. A. HOPEWELL'S UNDISCLOSED DIRE FINANCIAL CONDITION

16.   Defendants Tatham and Willis began soliciting the Plaintiff for an investment in or around July 2016.  In connection with the solicitation activities, Defendants Tatham and Willis provided certain information and material to the Plaintiff, among which was a "Private Placement Memorandum – Hopewell Pilot – Project, LLC" (the "Private Placement Memorandum").  A true and correct copy of the Private Placement Memorandum is attached hereto and incorporated herein as Exhibit A.

1722.   In the Private Placement Memorandum, it is stated that "…Hopewell is seeking qualified debt and equity investors to provide up to $2,000,000 in new funds from the placement of up to 1,000,000 Initial Additional Equity Shares *for the purpose of acquiring new lease and mineral interest acquisitions in the four target areas and for working capital to continue the Company's operations and evaluation of lease acquisition opportunities.*"  *See* "Executive Summary" in Exhibit A,

1823. The Private Placement Memorandum mentions no aspect of the financial condition of Hopewell, even though during the time period of the solicitation of investment from the Plaintiff, Hopewell: (a) had less than Ten Thousand Dollars ($10,000) and, at times, had a negative balance in its one and only checking account; and (b) was at all times insolvent and on the verge of bankruptcy.

1924. Further, at no time during the solicitation of the investment from the Plaintiff did either of Defendants Tatham and Willis even remotely mention the insolvency of Hopewell or the dire financial position of the company and its verge of bankruptcy, even though they were both fully aware of such condition. Defendant Willis also represented that they had a $25 million investor potentially waiting to invest in Hopewell and that Hopewell was oversubscribed in its investments, further buttressing Plaintiff's confidence to invest in Hopewell.

250.   When questioned about the financial strength of Hopewell, both

Defendants Tatham and Willis failed to disclose: (a) Hopewell's pathetically low (and sometimes negative) cash balance, insolvency and near bankrupt condition; (b) the fact that Hopewell was running at a huge loss each month since its inception; and (c) any financial statement of Hopewell including, without limitation, any income statement, balance sheet, statement of cash flows or statement of stockholders' equity.

26~~1~~. Instead, Defendants Tatham and Willis would affirm the viability of Hopewell to the Plaintiff, even though they both knew of its dire financial condition and near bankrupt state and notwithstanding the fact that both Defendants Tatham and Willis maintained the duty *to disclose the precarious and near bankrupt state of Hopewell to the Plaintiff*.

27~~2~~. Further, when the initial tranche of the investment of the Plaintiff into Hopewell was delayed and Defendants Tatham and Willis knew that the discontinuation of the company's operations was imminent, instead of disclosing such precarious state of Hopewell, Defendants Tatham and Willis requested a bridge loan from the Plaintiff through the issuance of a convertible promissory note (the "Convertible Note"). This Note was personally guaranteed by Defendant Willis himself. Defendants Tatham and Willis conducted themselves in the aforementioned manner to further hide the truth of Hopewell's desperate financial condition.

## B. MISREPRESENTATIONS CONCERNING THE USE OF THE INVESTMENT PROCEEDS

28~~3~~. Throughout the entire solicitation period, Defendants Tatham and Willis stated, on behalf of themselves and as agents of Hopewell, on numerous occasions, that the use of the investment proceeds would be for go-forward working capital requirements and for acquiring new lease and mineral interest acquisitions in the four target areas. In fact, such use of funds was stated in the Private Placement Memorandum. . Moreover, Defendants Tatham and Willis,

individually and as agents of Hopewell, omitted that Hopewell had any outstanding debt, and informed Plaintiff that the proceeds would be used for —tech commitments. Defendant Tatham himself informed Plaintiff that nothing would appear like self-dealing. Defendants Tatham and Willis also represented that the Entity Defendants (Beyond Review, Image Engine, Willis Group, and PDP Management) would be providing legitimate services to Hopewell.

294. In reality, Defendants Tatham and Willis had covertly planned to use the investment proceeds to line their pockets for alleged amounts owed to them as well as the Entity Defendants, companies that they owned and controlled. Neither of Defendants Tatham or Willis had any intention of using the investment proceeds for either go-forward working capital needs or the acquisition of new lease and mineral interest acquisitions in the four target areas.

2530. In fact, on September 13, 2016 – the very day the first tranche of investment from the Plaintiff was received in the amount of Two Hundred Five Thousand Dollars ($205,000) pursuant to the Convertible Note (the "First Tranche") – One Hundred Eleven Thousand Dollars ($111,000), over half of the amount of the initial tranche, was immediately wire transferred to companies owned and controlled by Defendants Tatham and Willis.

2631. Then, in just a three (3) day period thereafter from September 14, 2016 through September 16, 2016, Defendants Tatham and Willis drained the remaining Ninety-Four Thousand Dollars ($94,000) and even managed to create an overdraw in the checking account of Hopewell in excess of Three Thousand Dollars ($3,000) by, among other things, wire transferring over Fifty-Seven Thousand Dollars ($57,000) into the accounts of companies they owed and controlled. In the course of just four (4) days, Defendants Tatham and Willis put over One Hundred Sixty-Eight Thousand Dollars ($168,000) – over Eighty Percent (80%) – into their own pocket through transfer of such amount to companies they owned and controlled. Not only —was such amount not used did such amount not

1    be used for either go-forward working capital needs or the acquisition of new lease

2    and mineral interest acquisitions in the four target areas as represented by

3    Defendants Tatham and Willis, but none of the remaining amount of the First

4    Tranche was used for either such purposes.

5         2732. After draining the First Tranche from the coffers of Hopewell for their

6    own individual benefits and against their expressed representations of the use of

7    such funds – and once again creating an undisclosed, negative cash balance in the

8    sole bank account of Hopewell, Defendants Tatham and Willis did not stop there.

9    Specifically, on September 30, 2016, Defendants Tatham and Willis received the

10   second tranche of the investment from the Plaintiff in the amount of Twenty

11   Thousand Dollars ($20,000) (the "Second Tranche") and spent such funds

12   consistent with as how they spent the funds of the First Tranche – without any of

13   such funds actually used for either go-forward working capital needs or the

14   acquisition of new lease and mineral interest acquisitions in the four target areas,

15   as represented by Defendants Tatham and Willis.

16        2833. On October 28, 2016, the third tranche of the investment from the

17   Plaintiff in the amount of Two Hundred Five Thousand Dollars ($205,000) (the

18   "Third Tranche") was received into the coffers of Hopewell.  Instead of using such

19   funds for either go-forward working capital needs or the acquisition of new lease

20   and mineral interest acquisitions in the four target areas as represented by

21   Defendants Tatham and Willis, they used such amount to, once again, line their

22   own pockets and, in the process, putting Hopewell in yet another round of

23   insolvency and negative cash balance in its checking account – and Defendants

24   Tatham and Willis did it in much the same ways as they had squandered the prior

25   tranches.

26        2934. Specifically, on the very day the Third Tranche was received, nearly

27   Seventy-Seven Thousand Dollars ($77,000) – over Thirty-Seven Percent (37%) –

28   of the Third Tranche was wire transferred to companies owned and controlled by

Defendants Tatham and Willis.  Then, in the period from October 29, 2016 through November 1, 2016 – just four (4) days – Defendants Tatham and Willis wire transferred another near Eighty-Three Thousand Dollars ($83,000) to companies they owned and controlled, thereby making their five (5) day pillage total of the Third Tranche to over One Hundred Sixty Thousand Dollars ($160,000) – over Seventy-Eight Percent (78%) – of the amount of the Third Tranche.   As with the two prior tranches, none of such funds for either go-forward working capital needs or the acquisition of new lease and mineral interest acquisitions in the four target areas as represented by Defendants Tatham and Willis.  Further, reminiscent of the First Tranche, the remainder of the Third Tranche steadily was spent on items other than the stated use of funds and in such a haphazard fashion to eventually create a negative balance in the sole checking account of Hopewell of ***over Thirty-Six Thousand Dollars ($36,000)***.

30.35.Meanwhile, while Defendants Tatham and Willis pillage and plunder the investment of the Plaintiff the second it hit the account of Hopewell to line their own pockets and to eventually drive Hopewell into a desperate financial crisis, neither one makes any communication whatsoever to any representative of the Plaintiff.  In fact and to the contrary, Defendants Tatham and Willis proceeded to interface with representatives of the Plaintiff in a manner that creates the intended illusion that the business of Hopewell is proceeding as planned.  Until, of course, Defendant Tatham sends the December 7th E-mail to the Plaintiff noting the insolvency and imminent bankruptcy of Hopewell – without any plan to reverse the situation except, of course, to ask for the Plaintiff to invest more money into Hopewell.

## C.   MISREPRESENTATIONS CONCERNING THE PROGRESS AND BUSINESS STATE OF HOPEWELL

36 1.   In the Private Placement Memorandum, it is stated that "…Hopewell

is seeking qualified debt and equity investors to provide up to $2,000,000 in new funds from the placement of up to 1,000,000 Initial Additional Equity Shares *for the purpose of acquiring new lease and mineral interest acquisitions in the four target areas and for working capital to continue the Company's operations and evaluation of lease acquisition opportunities.*"

3237. Such aforementioned statement in the Private Placement Memorandum implies that Hopewell had current lease and mineral acquisitions, which it did not at the time of the solicitation of the investment from the Plaintiff.

3338. Further, at all times since the initial solicitation of the investment from the Plaintiff through the December 7th E-Mail, both in the Private Placement Memorandum and otherwise, Defendants Tatham and Willis continuously and consciously misrepresented the payoff potential of the lease and mineral acquisitions as well as the relative ease of conducting negotiations and actually procuring such lease and mineral acquisitions.

3439. In fact, notwithstanding their representations of ease-of-closing and moon-shot profits with respect to the lease and mineral acquisitions, Defendants Tatham and Willis merely closed a fraction of the amount needed to achieve commercial critical mass. Phrased differently, Defendants Tatham and Willis intentionally misrepresented the profit potential as well as the probability of such profit potential of the lease and mineral acquisitions of Hopewell in connection with the solicitation of the investment from the Plaintiff.

### D. MISREPRESENTATIONS CONCERNING THE TECHNOLOGY AND KNOW-HOW OF TITLE ROVER AND HOPEWELL

3540. Defendants Tatham and Willis represented that the primary advantage that Hopewell maintained in its efforts to procure oil, gas and mineral interests was the proprietary title-searching technology of Title Rover, which such technology had been licensed to Hopewell (the "Title Rover Technology").

3641. Defendants Tatham and Willis, individually and as agents of Hopewell and Title Rover, represented that the Title Rover Technology could search data related to property transfers and discover, without any human intervention, any and all defects concerning the chain of title of property transfers in a fraction of the time that it would take humans to perform the same activities. Furthermore, Defendants Tatham and Willis represented that the technology was being used by IBM under a separate exclusive license, that Willis Group had invested $3 million into the Title Rover technology, and that the software had or was already in use for a case involving BP dealing with e-discovery.

3742. In fact, the Title Rover Technology was not nearly as robust or automated as represented by Defendants Tatham and Willis, Hopewell, and Title Rover. Nor did it maintain any automation to discover defects concerning the chain of title of property transfers.

3843. The Title Rover Technology produced no results for Hopewell in connection with viable potential transactions for oil, gas and/or mineral rich properties for which defects in the chain of title were present.

///
///
///

**FIRST CLAIM**
**VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND**
**RULE 10b-5(b) PROMULGATED THEREUNDER**
**(Against Defendants Tatham and Willis Defendants Tatham, Willis, and**
**Entity Defendants)**

3944. The Plaintiff re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein. This count is directly to Defendants Tatham and Willis solely.

4045. Defendants —Tatham and Willis, on behalf of themselves, and as agents of Entity Defendants, Title Rover, and Hopewell, deceived Plaintiff, and in

so doing caused the Plaintiff to purchase the Hopewell interest, by:; (a) failing to disclose the insolvency of Hopewell to the Plaintiff, notwithstanding inquiries thereof by the Plaintiff, and actively engaged in acts to conceal the insolvency and otherwise dire and bankrupt financial condition of Hopewell; (b) making misrepresentations to the Plaintiff that its investment would be used for go-forward oil, gas and mineral exploration activities of Hopewell and , tech commitments, and for legitimate services provided by their companies, which include the Entity Defendants (Beyond Review, Image Engine, Willis Group, and PDP Management), when, in fact, Defendants Tatham and Willis had planned to use and, in fact, actually used nearly all of the proceeds of the investment of the Plaintiff to pay themselves, related entities and even relatives for previously-incurred amounts allegedly owed but never disclosed to the Plaintiffs, thereby leaving next to nothing of the investment of the Plaintiff available for the go-forward oil, gas and mineral exploration activities of Hopewell; (c) making misrepresentations with respect to the progress of Hopewell with respect to its then-current oil, gas and mineral exploration activities as well as potential payoff in connection therewith at the time they solicited the investment from the Plaintiff; and (d) making misrepresentations concerning the efficacy and use of the core technology licensed to Defendant Hopewell by Defendant Title Rover, an entity owned and controlled directly and indirectly by Defendants Tatham and Willis, which technology was crucial to the oil, gas and mineral exploration activities of Hopewell.

4146. Defendants Tatham and Willis, on behalf of themselves, the Entity Defendants, Title Rover, and Hopewell, made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading, and/or substantially participated in the creation of the alleged misrepresentations, which operated as a fraud and deceit upon the Plaintiff in connection with its purchase of the Hopewell Interest and in violation of Section

10(b) of the Exchange Act and Rule 10b-5(b).

4247. Defendants Tatham and Willis, ,on behalf of themselves, the Entity Defendants, Title Rover, and Hopewell, directly and indirectly, by the use of means and instrumentalities of interstate commerce and/or the mails, made, or substantially participated in the creation of, untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made about the Hopewell investment in light of the circumstances under which they were made, not misleading, as set forth herein.

4348. Defendants Tatham and Willis, on behalf of themselves, the Entity Defendants, Title Rover, and Hopewell, had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were unavailable to them.

4449. The facts alleged herein set forth a strong inference that each of Defendants Tatham and Willis acted with scienter.

4550. Each of Defendants Tatham and Willis had a strong motive to engage in the fraudulent scheme set forth herein.  Namely, to pilfer the investment funds for their own personal gain.

4651. By reason of the foregoing, the Defendants Tatham and Willis have violated Section 10(b) of the Exchange Act and Rule 10b-5(b), promulgated thereunder and are liable to the Plaintiff for damages which they suffered in connection with their purchases of the Hopewell Interest.

**SECOND CLAIM**
**CONVERSION**
**(Against Defendants Tatham, Willis, PDP Management, Title Rover, Beyond Review, Imagine Engine and Willis Group)**

4752. The Plaintiff re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.  This count is directly to Defendants Tatham, Willis, PDP Management, Title Rover, Beyond Review,

Imagine Engine and Willis Group (the "Conversion Defendants").

4853. Through Defendants' Tatham and Willis' orchestrated efforts to defraud the Plaintiff in connection with the purchase and sale of the Hopewell Interest, the Conversion Defendants have possession, control and dominion over funds not rightfully owned by them.

4954. Due to such possession, control and dominion over funds not rightfully owned by them, the Conversion Defendants damaged the Plaintiff to the extent that such funds were derived from the investment from the Plaintiff.

5055. The possession, control and dominion over funds not rightfully owned by the Conversion Defendants continues as of the date of the filing of this Complaint.

### THIRD CLAIM

### INTENTIONAL MISREPRESENTATION
### (Against Defendants Tatham, Willis, and Entity Defendants)

516. Plaintiff realleges and incorporates by reference all prior paragraphs of this Amended Complaint as though fully set forth herein.

527. Defendants Willis and Tatham, individually and as agents of Entity Defendants, Hopewell, and Title Rover, intentionally misrepresented material facts to Plaintiff concerning the Hopewell investment by: (a) failing to disclose the insolvency of Hopewell to the Plaintiff, notwithstanding inquiries thereof by the Plaintiff, and actively engaged in acts to conceal the insolvency and otherwise dire and bankrupt financial condition of Hopewell; (b) making misrepresentations to the Plaintiff that its investment would be used for go-forward oil, gas and mineral exploration activities of Hopewell, tech commitments, and for legitimate services provided by their companies, which include the Entity Defendants (Beyond Review, Image Engine, Willis Group, and PDP Management), and tech commitments when, in fact, Defendants Tatham and Willis had planned to use and, in fact, actually used nearly all of the proceeds of the investment of the Plaintiff to

pay themselves, related entities, including Entity Defendants, and even relatives for previously-incurred amounts allegedly owed but never disclosed to the Plaintiffs, thereby leaving next to nothing of the investment of the Plaintiff available for the go-forward oil, gas and mineral exploration activities of Hopewell; (c) making misrepresentations with respect to the progress of Hopewell with respect to its then-current oil, gas and mineral exploration activities as well as potential payoff in connection therewith at the time they solicited the investment from the Plaintiff; (d) making misrepresentations concerning the efficacy and use of the core technology licensed to Defendant Hopewell by Defendant Title Rover, an entity owned and controlled directly and indirectly by Defendants Tatham and Willis, which technology was crucial to the oil, gas and mineral exploration activities of Hopewell.

53 8. Defendants knew that these representations were false and made them with the intent to defraud Plaintiff.

54 9. Plaintiff reasonably relied upon Defendants' representations in deciding to invest in Hopewell.

55 60. As a direct result of Defendants' intentional misrepresentations, Plaintiff suffered damages in an amount to be proven at trial, but not less than $430,000.00, the amount invested into Hopewell.

56 61. Given the fraudulent, malicious, and oppressive nature of Defendants' conduct described above, Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial.

### FOURTH CLAIM

### Unfair Competition (Business & Professions Code §17200, et seq.)

### (Against Defendants Willis, Tatham, and Entity Defendants)

57 62. Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

63.    Plaintiff is a "person" as that term is defined under California Business & Professions Code section 17021.

64.    California's Unfair Competition law defines unfair competition as any unlawful, unfair, or fraudulent business act or practice. Section 17203 authorizes injunctive, declaratory, and/or other equitable relief with respect to unfair competition as follows:

Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been required by means of such unfair competition.

(Cal. Business & Professions Code, §17203.)

65.    Through the conduct alleged herein, Defendants Willis and Tatham, as agents of Entity Defendants, Hopewell, and Title Rover, engaged in unlawful business practices by, including, but not limited to violating federal Law, including Section 10(b) of the Exchange Act and Rule 10b-5(b), for which this Court should issue declaratory, injunctive, and/or other equitable relief, pursuant to California Business and Professions Code section 17203, as may be necessary to prevent and remedy the conduct held to constitute unfair competition.

66.    Defendants Willis and Tatham's, individually and on behalf of Entity Defendants, violations of the Business and Professions Code section, as alleged herein, include, but are not limited to, omitting Hopewell's financial insolvency when soliciting Plaintiff to invest in Hopewell, representing that legitimate services would be provided by the Entity Defendants, and misrepresenting the efficacy of Title Rover's technology.

67.   The business acts and practices of Defendants Tatham and Willis, individually and as agents of Entity Defendants, Hopewell, and Title Rover in violating Section 10(b) of the Exchange Act and Rule 10b-5(b), as described above, constitute an unlawful, unfair and/or fraudulent business practice in violation of the Unfair Competition Law.

68.   Defendants Willis and Tatham's knowing failure to adhere to these laws, all of which are binding upon and burdensome to competitors of Defendants' Willis,Defendants Tatham and Willis and the Entity Defendants, engenders an unfair competitive advantage for Willis, Tatham and, the Entity Defendants, and hereby constituting an unfair business practice, as set forth in California Business and Professions Code sections 17200-17208.

69.   By and through the unfair and unlawful business practices described above, Defendants Tatham, and, Willis, and the Entity Defendants have obtained valuable property, money, and services from Plaintiff, and has deprived it of valuable rights and benefits guaranteed by law, all to its detriment and to the benefit of Tatham and, Willis and their companies so as to allow Tatham and Willis to unfairly compete.

70.   All the acts described here as violations of, among other things, the California Business and Professions Code, are unlawful, are in violation of public policy, are immoral, unethical, oppressive, and unscrupulous, and are likely to deceive consumers, and thereby constitute deceptive, unfair and unlawful business practices in violation of California Business and Professions Code section 17200 et seq.

71.   As a result of Defendants Tatham's and, Willis', and Entity Defendants' unfair business practices, they have reaped unfair benefits and illegal profits at the expense of Plaintiff. Defendants Willis, Tatham and Entity Defendants should be made to disgorge all ill-gotten gains and restore such monies to Plaintiff.

1

2 **JURY REQUEST**

3      51_72_. The Plaintiff hereby requests a trial by jury on all claims so triable.

4 **PRAYER**

5 **WHEREFORE,** the Plaintiff prays for relief and judgment, as follows:

6     a.     Awarding compensatory damages against all of the defendants

7 (excluding nominal defendants Hopewell and Title Rover), jointly and severally, in

8 favor of the Plaintiffs for all losses and damages suffered as a result of defendants'

9 wrongdoing alleged herein, in an amount to be determined at trial, together with

10 interest thereon;

11     b.     Awarding the Plaintiff its reasonable costs, and expenses incurred in

12 this action;

13     b.c.     For exemplary and punitive damages, according to proof at the time of

14 trial; and

15     d.     Awarding the Plaintiff such other and further relief as the Court may

16 deem just and proper.

17     c.

18 DATED: November 16, 2018January 13, 2017       PANAKOS LAW, APC

19

20               By: /s/ Aaron D. Sadock

21               Aaron D. Sadock Esq. Attorney for Plaintiff
              ENSOURCE INVESTMENTS LLC

22

23

24

25

26

27

28