**EXHIBIT X**

**To:**      Justin Pannu[justinpannu1503@gmail.com]
**Cc:**      Mark Willis[Mark@willisgroupus.com]; jerry.johns@intelometry.com[jerry.johns@intelometry.com];
chadlandmark@hotmail.com[chadlandmark@hotmail.com]
**From:**    Tom Tatham
**Sent:**    Sat 8/27/2016 5:34:53 PM
**Subject:** Re: Dilution / OA / TR / other provisions

Justin,
OK, please send me the executed subscription agreements that were effective on Friday August 26, 2016
deliverable to Hopewell subject to receipt of fully executed Amended and Restated Company Agreement
in acceptable form and acknowledgement of such acceptance by each subscriber and we will go from
there on Monday.
Thanks,
Tom

Sent from my iPhone

On Aug 27, 2016, at 4:58 PM, Justin Pannu <justinpannu1503@gmail.com> wrote:

>     Thanks Tom.
>     EnSource Investments LLC was formed for the purpose of a potential investment in
>     Hopewell and this entity may consist of the investors described herein. To provide you
>     with as much understanding as I have on the fluidity of the funding situation, I will list out
>     the individual members ranges and comfort level (if applicable).

I have had discussions with Jerry and his group is discussing a potential investment ranging from
    $50,000 - $90,000. Jerry may possibly have additional investment in the $50,000 -
    $90,000 range (he will have an answer tomorrow).

My (Justin Pannu) potential investment is in the range of $75,000 - $100,000.

I just spoke to Chad and his potential investment is in the range of $75,000 - $150,000. Chad
    conveyed that Cliff Sharp's potential investment is also $75,000 - $150,000. Chad also
    expressed that Raj Sardessi is back in play but still very much on the fence and his
    potential investment could range from $50,000 - $100,000. Chad mentioned he
    approached Mark Schwasuch for a potential at investment at $150,000.

The timing is uncertain and any clarity on timing should be discussed with Chad.

My understanding is that two other potential investors may be approached by Jerry and Chad,
    although, I don't have a range for either.

I hope this helps

Regards,

Justin



EXHIBIT
22
Panno
PENGAD 800-631-6989

WIL_00000881

Page 417

On Sat, Aug 27, 2016 at 12:54 PM, Tom Tatham <tpt@lngpartners.com> wrote:

> To summarize accurately I mentioned that I sent the memo to Doherty & Doherty on Friday together with a request to provide a draft Amended & Restated Company Agreement and the appropriate Manager/Director resolutions as soon as possible. We may be able to finish on Monday. I will take up your points and suggested additional provisions with Mark over the weekend. What level of subscription have you received? Please let us know.

Thanks,
Tom

Sent from my iPhone

> On Aug 27, 2016, at 2:33 PM, Justin Pannu <justinpannu1503@gmail.com> wrote:
>
> Hi Tom,
>
>
> For Jerry's and Rich's benefit I will summarize our discussion.
>
> Thank you for taking my call today to address the our two high level concerns regarding the Memo and TR Operating/Company Agreement. We fully appreciate that certain agreements are not in place as the deal and companies are a work-in-progress. I understand that Doherty is releasing a draft operating agreement on Tuesday to address the governance aspects of a robust operating agreement and to reflect the recently drafted memo.
>
> Jerry, Rich and I have discussed a few items we'd like to address in those draft agreements and, if you agree, we hope that you can forward to Doherty so they can address the following points in the draft. Please let us know if any of the items below need additional discussion.
>
> 1. What are your thoughts on including a Ratchet provision for any shares that are sold below the original offering price?
>
> 2. Would you be willing to include a Right of First Refusal for the sale and purchase of new shares?
>
> 3. As it pertains to the share exchange agreement, we'd like to add language that allows us an ability to confirm how many outstanding shares are going to be in TR prior to conversion.

WIL_00000882

>
> 4. With respect to voting rights, would you be open to super majority in interest votes on Loan's
     made to either company and to address the potentially significant number of units in TR
     that could be issued or exercised.
>
> We are open to suggestions and welcome your feedback on these additional provisions or we
     can wait for the draft and address any remaining concerns after the release.
>
> Please let me know if you require any additional clarification.
>
> Regards,
>
> Justin
>
>
>
>
>
>

WIL_00000883

**EXHIBIT Y**



From: **Justin Pannu** justinpannu1503@gmail.com
Subject: EnSource Subscription Agreement
Date: September 2, 2016 at 12:11 PM
To: Tom Tatham tpf@lngpartners.com
Cc: **Chad Martin** chadlandmark@hotmail.com, **Mark Willis** Mark@willisgroupus.com, **James P. Dibble** james.dibble@intelometry.com, **Jeff Merola** jeff.merola@intelometry.com, **Cliff Sharp** ecsharp111@gmail.com, **jerry johns** jerry.johns@intelometry.com

Hi Tom,

We have attached a partially executed Subscription Agreement. The language concerning the investment's contingency on the Amended Company Agreement of Title Rover, LLC is found in the last paragraph of Section 4 on the third page of the PDF.

There are currently four members with EnSource. Three of the members have committed to funding the investment. Chad is a member, however, his investment will be a follow-on and is not included in the subscribed amount.

Jerry is working with another investor who may become a member of EnSource next week. We will seek your approval next week for the additional commitment and an amended Subscription Agreement (reflecting a potentially increased amount). Of course such approval would be in your sole discretion.

We anticipate the EnSource bank account to be opened either today or Tuesday. We will have everyone fund the account and the wire to Hopewell accordingly. Keeping in mind that we are still working on the logistics, we are hoping to have the funds to you by next week.

We appreciate all the assistance you have provided us in allowing the investors to get comfortable with this deal. I believe everyone with EnSource is excited about this opportunity and we are are more than excited to join your team.

Please let me know if you have any questions.

Justin

**PDF**

Ensource
Subscr...TX.pdf

## HOPEWELL-PILOT PROJECT, LLC

### INITIAL ADDITIONAL EQUITY SHARES

### SUBSCRIPTION AGREEMENT

THE OFFERING OF SECURITIES DESCRIBED HEREIN HAS NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR UNDER ANY SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OR ANY OTHER JURISDICTION.  THIS OFFERING IS MADE PURSUANT TO REGULATION S OR REGULATION D UNDER SECTION 4(a)(2) OF SAID ACT, WHICH EXEMPTS FROM SUCH REGISTRATION CERTAIN TRANSACTIONS.  FOR THIS REASON, THESE SECURITIES WILL BE SOLD ONLY TO INVESTORS WHO MEET CERTAIN MINIMUM SUITABILITY QUALIFICATIONS DESCRIBED HEREIN.

A PROSPECTIVE INVESTOR SHOULD BE PREPARED TO BEAR THE ECONOMIC RISK OF AN INVESTMENT IN THE COMPANY FOR AN INDEFINITE PERIOD OF TIME BECAUSE THE SHARES OR MEMBER'S INTERESTS HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OR THE LAWS OF ANY OTHER JURISDICTION, AND, THEREFORE, CANNOT BE SOLD UNLESS THEY ARE SUBSEQUENTLY REGISTERED OR AN EXEMPTION FROM REGISTRATION IS AVAILABLE.  THERE IS NO OBLIGATION OF THE ISSUER TO REGISTER THE SHARES OR MEMBER'S INTERESTS UNDER THE SECURITIES ACT OR THE LAWS OF ANY OTHER JURISDICTION.  TRANSFER OF THE SHARES OR MEMBER'S INTERESTS IS ALSO RESTRICTED BY THE TERMS OF THE AMENDED AND RESTATED COMPANY AGREEMENT RELATING THERETO.

-1-

## HOPEWELL-PILOT PROJECT, LLC

## A TEXAS LIMITED LIABILITY COMPANY

Hopewell-Pilot Project, LLC
c/o Willis Group
1400 Post Oak Blvd. Suite 200
Attention: Tom Tatham
Telephone: (713) 547-4531
E-mail: TTatham@HopewellTX.com

Ladies & Gentlemen:

This **SUBSCRIPTION AGREEMENT** (the "Agreement") is entered into as of the Closing Date specified on the signature page hereto by and among **HOPEWELL-PILOT PROJECT, LLC**, a Texas limited liability company (the "Company"), and the investor identified on the signature page hereto (the "Investor"). Investor seeks admission to the Company as a New Member and the acquisition of Shares representing Member's Interest in the Company (the "Interest") in accordance with the Company's Amended and Restated Company Agreement (the "Company Agreement"). Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Company Agreement.

1.     **Capital Commitment.**  In accordance with the terms of the Company Agreement and this Agreement, the Investor agrees to contribute to the Company the amount of capital specified under the heading "Capital Commitment" set forth on the signature page hereto, or such lesser amount as the Company shall accept as determined by the Company's Managers in their sole and absolute discretion.

2.     **Adoption.**  If the Investor is accepted as a New Member pursuant to paragraph 3 below, the Investor hereby agrees to adhere to and be bound by all terms and provisions of the Company Agreement and to perform all obligations therein imposed upon a New Member with respect to the Interest.

3.     **Acceptance of Subscription; Delivery of Company Agreement.**  The Investor understands and agrees that this subscription is made subject to the following terms and conditions:

(a)     The Managers jointly reserve the right to review the suitability of any person desiring to acquire an Interest and, in connection with such review, to waive such suitability standards as to such person as the Managers jointly deem appropriate under applicable law;

(b)     The Managers may accept or reject the Investor's subscription, in whole or in part, and the Investor's subscription shall be deemed to be accepted by the Managers only when both of the Company's Managers have executed Investor's Agreement and Investor has been admitted to the Company as a New Member in accordance with the terms of the Company Agreement;

(c)     The Managers shall have no obligation to accept subscriptions in the order received;

(d)     The Interest to be created on account of this subscription shall be created only in the name of the Investor, and the Investor agrees to comply with the terms of the Company Agreement

-1-

28ML-207663

PLTF_001175

and to execute any and all further documents necessary in connection with becoming a New Member of the Company;

(e)     The Investor hereby requests and authorizes the Managers to enter Investor's name on the Schedule of Members as holder of the Interest;

(f)     The Investor has consulted to the extent deemed appropriate by the Investor with the Investor's own advisers as to the financial, tax, legal and related matters concerning an investment in Interests and on that basis believes that an investment in the Interests is suitable and appropriate for the Investor;

(g)     The Investor is aware of and understands each of the risks and potential conflicts of interest inherent of an investment in the Company as set forth in the Memorandum;

(h)     The Managers, acting jointly, may transfer proceeds into an account in the name of the Company, and in such event, the Managers shall not be liable for any losses arising from such transfer and shall be fully indemnified by the Company out of the assets of the Company to the fullest extent permitted by law for any and all actions, costs, claims, damages, demands or expenses (including any reasonable attorneys' fees) suffered or incurred by the Managers as a result of such transfer;

(i)     The Investor hereby undertakes in respect of the Interest that the Investor: (i) shall comply with the restrictions on transfer of the Interest contained in the Company Agreement; and (ii) acknowledges and agrees that, in the event that Investor defaults on its capital contribution obligation to the Company, the Interest may be subject to forfeiture and other consequences as specified in the Company Agreement; and

(j)     The Investor hereby declares that the Investor is not in the course of winding up or under liquidation or judicial management.

4.     **Conditions to Closing.** The Company's obligations hereunder are subject to acceptance by the Managers of the Investor's subscription, and to the fulfillment at the time of, or prior to, the Closing Date of each of the following conditions:

(a)     The representations and warranties of the Investor contained in this Agreement shall be true and correct as of the Closing Date; and

(b)     All proceedings in connection with the transactions contemplated hereby and all documents and instruments incident to such transactions shall be satisfactory in substance and form to the Managers, and the Company shall have received all such counterpart originals or certified or other copies of such documents as the Managers may request.

The Investor's obligations hereunder are subject to the fulfillment at the time of, or prior to, the Closing Date of the following condition:  an Amended and Restated Company Agreement of Title Rover, LLC reasonably acceptable to Investor.

5.     **Investor Representations.** In connection with the Investor's acquisition of the Interest as of the Closing Date, the Investor makes the following representations and warranties on which the Managers and the Company are entitled to rely:

(a)     The Interest will be held under the type of ownership identified on the signature page hereto.

-2-

PLTF_001176

**(b)**     If the Investor has checked that the Investor is not a "U.S. Person," as such term is used in Internal Revenue Service Form W-9, under the subheading "Tax Jurisdiction" below, the Investor hereby represents, under penalties of perjury, that the Investor (i) is a "non-U.S. Person" (as defined below); (ii) will not transfer or deliver any interest in the Interests except in accordance with the restrictions set forth in the Company Agreement; (iii) will notify the Managers immediately if the Investor becomes a U.S. Person at any time during which the Investor holds or owns any Interests; (iv) is not subscribing on behalf of or funding its Capital Contribution with funds obtained from U.S. Persons; and (v) it was not in the United States at the time that the Interests were offered to it, and it was not in the United States at the time such offer was accepted; and (vi) it is not acting on behalf of, and it will not fund any portion of its subscription with assets of, any entity that is a "benefit plan investor" within the meaning of the United States Department of Labor Reg. Section 2510-101.3.  For purposes of this section 5(b), a "non-U.S. Person" is an individual who is not a citizen or resident of the United States or a corporation, partnership, estate or trust which is not a U.S. entity.   Except for offers and sales to discretionary or similar accounts held for the benefit or account of a non-U.S. person by a U.S. dealer or other professional fiduciary, all offers to sell and offers to buy the Interests were made to or by the Investor while the Investor was outside the United States and at the time that the Investor's order to buy the Interests was originated the Investor was outside the United States.

**(c)**     The Investor is an "accredited investor" within the meaning of Regulation D of the U.S. Securities Act of 1933, as amended (the "Securities Act") and a "qualified client" as defined in the Investment Advisers Act of 1940, as amended, on the basis identified by checking the box adjacent to the applicable representation on *Schedule 2, Part 1* in the case of an individual investors and on *Schedule 2, Part 2* in the case of entity investors; and in the case of entity investors, represents to such further matters by checking the boxes adjacent to the applicable further representations on *Schedule 2, Part 2* (which checked representations in *Schedule 2, Parts 1 and 2* are hereby incorporated by reference).  The Investor (i) is not subject to any of the "Bad Actor" disqualifications (each, a "Disqualification Event") described in Rule 506(d)(1) under the Securities Act and (ii) will, subsequent to the date hereof, notify the Company's Managers of (A) any Disqualification Event relating to the Investor not previously disclosed and (B) any event that would, with the passage of time, become a Disqualification Event relating to the Investor. The Investor is acquiring the Interest solely for the Investor's own account and not directly or indirectly for the account of any other person whatsoever for investment and not with a view to, or for sale in connection with, any distribution of the Interest.  The Investor does not have any contract, undertaking or arrangement with any person to sell, transfer or grant a participation to any person with respect to the Interest. The Investor has such knowledge and experience in financial and business matters that the Investor is capable of evaluating the merits and risks of the investment evidenced by the Investor's acquisition of the Interest, and the Investor is able to bear the economic risk of such investment.

**(d)**     No representations or warranties have been made to the Investor by the Company, the Company's Managers, or any agent thereof, other than as set forth in the Company Agreement, and this Agreement.  The Investor has had access to such information concerning the Company as the Investor deems necessary to enable the Investor to make an informed decision concerning the acquisition of the Interest.  The Investor has had access to the designated representatives of the Company, its Managers and the opportunity to ask questions of, and receive answers satisfactory to the Investor from, the Managers and or such designated representatives concerning the offering of Interests in the Company generally.  The Investor has obtained all additional information requested by the Investor to verify the accuracy of all information furnished in connection with the offering of Interests in the Company.

**(e)**     The Investor understands that the Interest has not been registered under the Securities Act, or any securities law of any state of the United States or any other jurisdiction in reliance on an exemption for private offerings, and the Investor acknowledges that it has received and carefully

-3-

read the Confidential Private Placement Memorandum of the Company (the "Memorandum"), the Company Agreement and this Agreement. The Investor understands that Doherty & Doherty LLP acts as counsel for the Company, the Company's Managers. No separate counsel has been retained to act on behalf of the Investors. No attorney-client relationship exists with any other person by reason of such person making an investment in the Company. The Investor has received and reviewed all such other information of the Company as the Investor or its representatives and advisers have requested.

(f)　　　The Investor is aware that the Investor must bear the economic risk of investment in the Interest for an indefinite period of time, possibly until final winding up of the Company, because the Interest has not been registered under the Securities Act, there is currently no public market therefor, and the Interest cannot be sold unless subsequently registered under the Securities Act or an exemption from such registration is available. The Investor understands that the Company is under no obligation, and does not intend, to effect any such registration at any time. The Investor also understands that sales or transfers of the Interest are further restricted by the provisions of the Company Agreement and, as applicable, securities laws of other jurisdictions and the states of the United States, and that the Interest will not be transferred or disposed of except in accordance with the terms of this Agreement, the Company Agreement and registration under the Securities Act, or pursuant to an applicable exemption therefrom.

(g)　　　The execution and delivery of the Company Agreement and this Agreement, the consummation of the transactions contemplated thereby and the performance of the obligations thereunder will not conflict with or result in any violation of or default under any provision of any other agreement or instrument to which the Investor is a party or any license, permit, franchise, judgment, order, writ or decree, or any statute, rule or regulation, applicable to the Investor.

(h)　　　The Investor has full power and authority to make the representations referred to in this Agreement, to acquire the Interest pursuant to this Agreement and the Company Agreement and to deliver the Company Agreement and this Agreement. The Company Agreement and this Agreement create valid and binding obligations of the Investor and are enforceable against the Investor in accordance with their terms, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, arrangement, moratorium or other similar laws affecting creditors' rights, and subject to general equity principles and to limitations on availability of equitable relief, including specific performance.

(i)　　　The Investor confirms that the Investor has been advised to consult with the Investor's attorney regarding legal matters concerning the Company and to consult with independent tax advisers regarding the tax consequences of investing in the Company. The Investor acknowledges that it understands that any anticipated United States federal or state income tax benefits may not be available and, further, may be adversely affected through adoption of new laws or regulations or amendments to existing laws or regulations. The Investor acknowledges and agrees that the Company has made no warranty or assurance regarding the ultimate availability of any tax benefits to the Investor by reason of the Investor's investment in the Company.

(j)　　　The Investor acknowledges and agrees that (i) information relating to the identity of the Investor shall appear on the Schedule of Members and may appear on the financial statements of the Company, and (ii) other Members shall receive such information and may share such information with their advisors and other parties pursuant to the terms of the Company's Confidentiality Agreement.

(k)　　　The Investor is knowledgeable and experienced in evaluating investments and experienced in financial and business matters and is capable of evaluating the merits and risks of investing in the Interests. The Investor has evaluated the risks of investing in the Interests, and has determined that the Interests are a suitable investment for the Investor. In evaluating the suitability of an

-4-

investment in the Interests, the Investor has not relied upon any representations or other information (whether oral or written) other than as set forth herein, in the Memorandum, the Company Agreement, the other agreements and independent investigations made by the Investor or representative(s) of the Investor. With respect to its investment in the Company, the Investor is not relying upon any other information, representation or warranty by the Company, the Managers of the Company or any designated representatives of the Company.

(l) The Investor is aware and acknowledges that (i) the Company has limited or no significant operating history; (ii) there is no assurance of any income from an investment in the Company; (iii) any federal and/or state income tax benefits which may be available to the Investor may be lost through the adoption of new laws or regulations or changes to existing laws and regulations or differing interpretations of existing laws and regulations, in certain circumstances with retroactive effect; and (iv) the Investor, in making this investment, is relying, if at all, solely upon the advice of such Investor's personal tax advisor with respect to the tax aspects of an investment in the Company.

6.   **Company's and Manager's Representations.**   The Company and the Company's Managers make the following representations and warranties on which the Investor and its counsel are entitled to rely:

(a) The execution and delivery of the Company Agreement and this Agreement, the consummation of the transactions contemplated thereby and the performance of the obligations thereunder will not conflict with or result in any violation of or default under any provision of any other agreement or instrument to which the Company is a party or any judgment, order, writ or decree applicable to the Company.

(b) No suit, action, claim, investigation or other proceeding is pending or, to the best of the Company's or the Manager's knowledge, is threatened in writing against the Company which questions the validity of the Company Agreement or this Agreement or any action taken or to be taken pursuant to the Company Agreement or this Agreement, or which could otherwise have a material adverse effect on the Company.

(c) The Company Agreement and this Agreement create valid and binding obligations of the Company and are enforceable against the Company in accordance with their terms.

7.   **Trustee, Agent, Representative or Nominee.**   If the natural person or entity completing this Agreement is acting as trustee, agent, representative or nominee for the Investor (such person or entity, the "Agent"), the Agent agrees that the representations, warranties and agreements made herein are made by such Agent (a) in respect of such Agent and (b) in respect of the underlying subscriber on whose behalf the Agent is acting. The Agent represents and warrants that such Agent has all requisite power and authority to execute this Agreement and perform the obligations under this Agreement on the underlying Investor's behalf. The Agent agrees to provide any additional documents and information that the Company reasonably requests relating to itself or the underlying Investor.

8.   **Survival of Agreements, Representations and Warranties; Indemnification.**

(a) All agreements, representations and warranties contained herein or made in writing by or on behalf of the Investor, the Company or the Managers of the Company in connection with the transactions contemplated by this Agreement shall survive the execution of this Agreement and the Company Agreement, any investigation at any time made by the Investor, the Company or the Managers of the Company or on behalf of any of them and the sale and acquisition of the Interest and payment therefor.

-5-

PLTF_001179

**(b)**   The Investor acknowledges that the Investor understands the meaning and legal consequences of the representations and warranties made by the Investor herein. Such representations and warranties are complete and accurate, shall be complete and accurate as of the Closing Date and may be relied upon by the Company's Managers and the Company. If there should be any material change in any of the representations or warranties or other information regarding the Investor set forth herein, including at any time following the Closing Date, the Investor agrees to notify the Company's Managers in writing as promptly as reasonably practicable.

**(c)**   The Investor agrees that the foregoing representations and warranties, and all other information regarding the Investor set forth herein, may be used as a defense in any actions relating to the Company, the Managers of the Company or the private placement of the Interest, and that it is only on the basis of such representations, warranties and other information that the Company's Managers may be willing to accept this Agreement on behalf of the Company. The Investor acknowledges that the Company, and the Managers of the Company shall rely on such information, representations and warranties on an ongoing basis.

**9.     Binding Effect.** This Agreement shall be binding upon the Investor and the heirs, personal representatives, successors and assigns of the Investor. The Investor agrees that neither this Agreement nor any rights which may accrue to the Investor hereunder may be transferred or assigned without the consent of the Company's Managers, which may be granted or withheld in its sole discretion or otherwise as provided in the Company Agreement. This Agreement shall survive the admission of the Investor to the Company and shall, if the Investor consists of more than one person, be the joint and several obligations of all such persons.

**10.     Severability.** If any provision of this Agreement is held to be invalid or unenforceable in any jurisdiction, such provision shall be deemed modified to the minimum extent necessary so that such provision, as so modified, shall no longer be held to be invalid or unenforceable. Any such modification, invalidity or unenforceability shall be strictly limited both to such provision and to such jurisdiction, and in each case to no other. Furthermore, in the event of any such modification, invalidity or unenforceability, this Agreement shall be interpreted so as to achieve the intent expressed herein to the greatest extent possible in the jurisdiction in question and otherwise as set forth herein.

**11.     Confidentiality.** The Investor has carefully read the Company's Confidentiality Agreement and by execution thereof understands, including without limitation the confidentiality and non-solicitation undertakings set forth therein which shall apply to the Investor, whether or not this Agreement is accepted by the Company.

**12.     Counterparts.** his Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

**13.     Amendments.** Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated orally, but only with the written consent of the Investor and the Company.

**14.     Governing Law.** The interpretation and enforceability of this Agreement and the rights and liabilities of the parties hereto shall be governed by the laws of the State of Texas. To the extent permitted by the Act and other applicable law, the provisions of this Agreement shall supersede any contrary provisions of the Act or other applicable law.

-6-

PLTF_001180

THE UNDERSIGNED INVESTOR HEREBY REPRESENTS THAT (I) THE UNDERSIGNED INVESTOR HAS CAREFULLY READ AND IS FAMILIAR WITH THIS AGREEMENT AND THE COMPANY AGREEMENT, (II) THE INFORMATION CONTAINED HEREIN IS COMPLETE AND ACCURATE AND MAY BE RELIED UPON, AND (III) THE EXECUTION OF THE FOLLOWING SIGNATURE PAGE SHALL CONSTITUTE THE EXECUTION OF THIS AGREEMENT AND THE COMPANY AGREEMENT BY THE INVESTOR IN THE EVENT THAT THE INVESTOR IS ADMITTED TO THE COMPANY AS A NEW MEMBER.

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement as of this 2nd day of September, 2016.

THE COMPANY:

HOPEWELL-PILOT PROJECT, LLC

_____
By: **THOMAS P. TATHAM**
Its:  Manager

_____
BY: **MARK A. WILLIS**
Its:  Manager

INDIVIDUAL INVESTOR:

_____
(Signature)

_____
(Signature)

_____
(Print Name As It Will Be Registered With This Investment)

ENTITY INVESTOR:
EnSource Investments LLC

By: _____

Name: _JUSTIN PAWNU_____

Title: _MANAGER_____

Closing Date:
(To be completed by the Company)

Capital Commitment: **$410,000.00***
*$205,000.00 at Closing Date
 $205,000.00 on thirty (30) days after Closing Date

Please provide the following information:

☐  Individual                          ☐  Irrevocable Trust
☐  Community Property                   ☐  Living Trust or Revocable Trust w/ ___grantors.
☐  Partnership                          ☐  Corporation
☐  Limited Liability Company            ☐  Other:_____

If the Investor is an entity, as of the Closing Date, there are four (4) holders of its outstanding securities (other than short-term paper) (*please fill in the blank specifying the number of beneficial owners*).

PLTF_001181

Primary contact person: ___Justin Pannu_____

Telephone Number:____(619) 318-2607_____   Fax Number: _____

E-mail Address:_____justinpannu1503@gmail.com_____

     ■   Social Security or Taxpayer I.D. Number_____

     ☐  U.S. Investor / U.S. Person           ☐  Non-U.S. Investor / Foreign Person

     ☐  Exempt under Code Section 401(a)     ☐  Exempt under Code Section 892

     ☐  Exempt under Code Section 501(c)3

Residential/Business Address (Domicile for Blue Sky filing purposes):

     700 W. E Street, Unit 3804
     San Diego, California 92101

Registered Address (if applicable):

     _____

     _____

     _____

Mailing Address *(select one)*:

[X]    Please use the Subscriber's Residential/Business Address as the Mailing Address

[ ]    Please use the Subscriber's Registered Address as the Mailing Address

[ ]    Please use the following as the Subscriber's Mailing Address:

          _____

          _____

          _____

**METHOD OF DELIVERY OF ACCOUNT COMMUNICATIONS.** Account Communications may be delivered via the e-mail address provided on this page. Should this means of transmission be unacceptable, Account Communications will be delivered via facsimile or physical delivery if the following box is checked:

☐ E-mail transmission is declined, please send Account Communications via facsimile or physical delivery

**For all account communications, please send via e-mail as well as physical delivery.**

-8-

PLTF_001182

IN WITNESS WHEREOF, this Amended and Restated Company Agreement has been entered into by the parties as of this 2nd day of September, 2016.

THE COMPANY

HOPEWELL-PILOT PROJECT, LLC

By: _____
      MANAGER

By: _____
      MANAGER

NEW MEMBERS

INDIVIDUAL:

By: _____

By: _____

Name: _____

ENTITY:

_____

EnSource Investments LLC

By: _*Justin Pannu*_ (signature)

Name: _JUSTIN PANNU_

Title: _MANAGER_

*Signature Page to the Amended and Restated Company Agreement of*
*Hopewell-Pilot Project, LLC*

PLTF_001183

**ANNEX 1**

**PART 1**

**Individual Investor Representations.**

All defined terms have the meanings provided to them in the Agreement; the following representations are incorporated by reference into the Agreement.

The Investor makes the following representations regarding the Investor's status as an Accredited Investor and a Qualified Client *by checking the box adjacent to each representation below*:

☐ **(a)** <u>Accredited Investor</u>: The Investor is an individual and has a net worth, either individually or upon a joint basis with the Investor's spouse, that exceeds $1,000,000, excluding the net equity value of such individual's primary residence, if any, but including as a liability the amount by which any indebtedness secured by such residence exceeds the value of such residence (within the meaning of such terms as used in Rule 501 under the Securities Act),[1] *or* has had an individual income in excess of $200,000 for each of the two most recent years, or a joint income with the Investor's spouse in excess of $300,000 in each of those years, and has a reasonable expectation of reaching the same income level in the current year.

☐ **(b)** <u>Qualified Client</u>: The Investor is an individual that (i) has a net worth, together with assets held jointly with the Investor's spouse, of more than $2,000,000, excluding the net equity value of such individual's primary residence, if any, but including as a liability the amount by which any indebtedness secured by such residence exceeds the value of such residence (within the meaning of such terms as used in Rule 501 under the Securities Act),[2] or (ii) is a Qualified Purchaser.

---

[1] Any indebtedness secured by such primary residence that the Investor incurred within the 60 day period preceding the date of the sale of securities pursuant to this Agreement (other than indebtedness incurred as a result of the acquisition of the primary residence) will be included as a liability for purposes of this calculation, even if the total amount of indebtedness securing such primary residence does not exceed the value of such residence.

-1-

PLTF_001184

Page 432

**ANNEX 1**

**PART 2**

**Entity Investor Representations.**

All defined terms have the meanings provided to them in the Agreement; the following representations are incorporated by reference into the Agreement.

The Investor makes the representations regarding the Investor's status as an Accredited Investor and a Qualified Client *by checking the box adjacent to the each representation below:*

**ACCREDITED INVESTOR REPRESENTATION** (*check the box adjacent to* **at least one** *applicable representation below*):

☐ **(i)** The Investor is a corporation, partnership, business trust or limited liability company, **not** formed for the purpose of acquiring an Interest, or an organization described in section 501(c)(3) of the Code, in each case with total assets in excess of $5,000,000.

■ **(ii)** The Investor is an entity in which **all** of the equity owners (or *a living trust or other revocable trust* in which **all** of the grantors to such trust) qualify under Annex 1, Part 1, clause (a) or (b), or clause (i), (iii), (iv), (v) or this clause (ii) of this Annex 1, Part 2.

☐ **(iii)** The Investor is an employee benefit plan and *either* all investment decisions are made by a bank, savings and loan association, insurance company, or registered investment advisor, *or* the Investor has total assets in excess of $5,000,000 *or*, if such plan is a self-directed plan, investment decisions are made solely by persons who are Accredited Investors.

☐ **(iv)** The Investor is an *irrevocable* trust with total assets in excess of $5,000,000 whose acquisition is directed by a person with such knowledge and experience in financial and business matters that such person is capable of evaluating the merits and risks of the prospective investment.

☐ **(v)** The Investor is a bank, insurance company, investment company registered under the Investment Company Act, a broker or dealer registered pursuant to Section 15 of the United States Securities Exchange Act of 1934, as amended, a business development company, a Small Business Investment Company licensed by the United States Small Business Administration, a plan with total assets in excess of $5,000,000 established and maintained by a state for the benefit of its employees, or a private business development company as defined in Section 202(a)(22) of the Investment Advisers Act.

☐ **(vi)** The Investor cannot make any of the representations set forth in clauses (i) through (v) above.

-1-

**QUALIFIED CLIENT REPRESENTATION** (*check the box adjacent to at least one applicable representation below*):

☐ **(i)** The Investor is a corporation, partnership, association, joint-stock company, trust, or any organized group of persons, whether incorporated or not, that has a net worth of more than $2,000,000. *If the Investor belongs to this investor category, please either check clause (iii) below, if applicable, or affirmatively deny the applicability of clause (iii) below.*

■ **(ii)** The Investor is a corporation, partnership, association, joint stock company, trust, or any organized group of persons, whether incorporated or not, that is a Qualified Purchaser. *If the Investor belongs to this investor category, please either check clause (iii) below, if applicable, or affirmatively deny the applicability of clause (iii) below.*

☐ **(iii)** The Investor is a corporation, partnership, association, joint-stock company, trust, or any organized group of persons, whether incorporated or not, that is an Excluded Company, and all of the Investor's equity owners (and all of their respective equity owners) are Qualified Clients.

■ The Investor has checked either or both of clauses (i) or (ii) above and affirmatively denies applicability of this clause (iii).

☐ **(vi)** The Investor cannot make any of the representations set forth in clauses (i) through (iii) above.


**FURTHER ENTITY INVESTOR REPRESENTATIONS**

The Investor makes the following representations *by checking the box adjacent to the correct response to each representation below*:

■ True ☐ False    The Investor is **neither** an "investment company" under the Investment Company Act **nor** does the Investor rely upon the exclusions from the definition of "investment company" provided for in Section 3(c)(1) or 3(c)(7) of the Investment Company Act.

☐ True ■ False    The Investor was **not** organized for the purpose of acquiring the Interest.

■ True ☐ False    The Investor has made investments prior to the date hereof or intends to make investments in the near future and each beneficial owner of interests in the Investor has and will share in the same proportion to each such investment.

☐ True ■ False    The Investor's investment in the Company will **not** constitute more than 40% of the assets of the Investor (including any capital commitments that may be drawn upon demand by the Investor).

■ True ☐ False    The governing documents of the Investor require that each beneficial owner of the Investor, including, but not limited to, shareholders, partners and beneficiaries, participate through their interest in the Investor in all of the Investor's investments and that the profits and losses from each such investment are shared among such beneficial owners in the same proportions as all other investments of the Investor. No such beneficial owner may vary the Investor's share of the profits and losses or the amount of the Investor's contribution for any investment made by the Investor.

-2-

PLTF_001186

If any of the above statements are marked "False," then the Investor will have, as of the Closing Date, four (4) holders of its outstanding securities (other than short-term paper) (*please fill in the blank specifying the number of beneficial owners*).

The Investor is:

☐ True   ■ False   **(1)**   an "employee welfare benefit plan" or an "employee pension benefit plan" as defined in sections 3(1) and 3(2), respectively, of ERISA; or

☐ True   ■ False   **(2)**   a plan described in section 4975(e)(1) of the Code; or

☐ True   ■ False   **(3)**   an entity that is deemed to be a "benefit plan investor" under the DOL Regulations because all or part of its underlying assets include "plan assets" by reason of a plan's investment in the entity (including, by way of example only, a partnership not qualifying as an operating company within the meaning of the DOL Regulations, which is 25% or more owned by entities described in (1) or (2) above); or

☐ True   ■ False   **(4)**   subject to any rules or regulations similar to the fiduciary provisions of ERISA and/or the prohibited transaction provisions of Section 4975 of the Code.

If clause (3) above is marked "True," please provide the percentage that the Investor's "plan assets" holdings bear to its aggregate asset holdings (based upon value as of the Closing Date): _____% (the "Plan Asset Percentage").

☐ True   ■ False   The Investor is a "private foundation" as described in Section 509 of the Code.

☐ True   ■ False   The Investor is subject to the Bank Holding Company Act of 1956, as amended.

■ True   ☐ False   To the best of the Investor's knowledge, the Investor does **not** control nor is it controlled by or under common control with, any other Investor.

*Please check the box next to each applicable statement and provide appropriate information in response to each such statement:*

☐ True   ■ False   The Investor is subject to federal or state freedom of information (FOIA) statutes or other similar statutes in each of the following jurisdictions. (*If a similar statute is applicable, please specify the applicable statute along with the applicable jurisdiction, to the extent known*):

_____

☐ True   ■ False   One or more of the Investor's beneficial owners is subject to federal or state FOIA statutes or other similar statutes in each of the following jurisdictions. (*If a similar statute is applicable, please specify the applicable statute along with the applicable jurisdiction, to the extent known*):

_____

-3-

PLTF_001187

☐ True   ■ False        The Investor is a public agency, department, office or pension plan. *(Please specify type and applicable jurisdiction.)*:

_____

☐ True   ■ False        One or more of the Investor's beneficial owners is a public agency, department, office or pension plan. *(If known, please specify type of owner and applicable jurisdiction below.)*:

_____

-4-

**EXHIBIT Z**

From: **Mark Willis** Mark@willisgroupus.com 
Subject: FW: Revised Operating Agreement - Title Rover, LLC
Date: September 8, 2016 at 1:12 PM
To: Justin Pannu justinpannu1503@gmail.com

Justin,

I thought we all agreed to turn the document quickly and try to sign today. I certainly understand scheduling conflicts. Can we agree to request Rich be available to finalize all docs this evening and be prepared to sign and fund tomorrow? My concern is that Rich turns a doc this evening (might be acceptable legal-e) might need to be tweaked, don't know? My fear is that we waist another day and disappoint my tech commitments by delaying them. Appreciate your help and look forward to finalizing and getting on with building something that our entire group will be proud to be a part of.

Thanks, Mark

Mark Willis -- CEO & President
**O** 713-248-4510 | **M** 713-248-1555 | mark@willisgroupus.com | www.linkedin.com/pub/mark-willis
1400 Post Oak Boulevard, Suite 200 | Houston, TX 77056 | www.wgcompanies.com

**WILLIS GROUP** FAMILY OF COMPANIES

Professional Services | Project + Process Delivery | Talent Acquisition + Flexible Workforce Solutions

THIS ELECTRONIC MESSAGE, INCLUDING ANY ACCOMPANYING DOCUMENTS, IS CONFIDENTIAL and may contain information that is privileged and exempt from disclosure under applicable law. If you are neither the intended recipient nor responsible for delivering the message to the intended recipient, please note that any dissemination, distribution, copying or the taking of any action in reliance upon the message is strictly prohibited. If you have received this communication in error, please notify the sender immediately.

**From:** Richard E. Nawracaj [mailto:rich.nawracaj@nawracaj-law.com]
**Sent:** Thursday, September 08, 2016 2:10 PM
**To:** 'Tom Tatham' <tpt@lngpartners.com>
**Cc:** Mark Willis <Mark@willisgroupus.com>
**Subject:** RE: Revised Operating Agreement - Title Rover, LLC

Tom,

We addressed that issue in our call today.

I will send a revised Company Agreement to everyone later today. To set expectation and as mentioned to my client, it won't be until later this evening because I'm tied up with other matters pretty much until 7:00 p.m. CST.

Thanks,
Rich

Richard E. Nawracaj
Law Offices of Richard E. Nawracaj
155 N. Wacker Drive, Suite 4250
Chicago, Illinois 60606
Phone: (312) 803-4837



EXHIBIT
30
Panno

Cell: (773) 255-4541
Fax: (312) 873-4640
rich.nawracaj@nawracaj-law.com

---

**From:** Tom Tatham [mailto:tpt@lngpartners.com]
**Sent:** Thursday, September 8, 2016 1:41 PM
**To:** Richard E. Nawracaj <rich.nawracaj@nawracaj-law.com>
**Cc:** Mark Willis <Mark@willisgroupus.com>
**Subject:** FW: Revised Operating Agreement - Title Rover, LLC
**Importance:** High

Rich,
Mark indicated that you have a question or questions regarding the "cap table" which was attached as
Schedule A to our mark up ?  If so, please give me or Pat Doherty a call.
Thanks,
Tom

---

**From:** Tom Tatham <tpt@lngpartners.com>
**Date:** Wednesday, September 7, 2016 at 5:13 PM
**To:** "Richard E. Nawracaj" <rich.nawracaj@nawracaj-law.com>
**Cc:** "'Jerome E. Johns'" <jerry.johns@intelometry.com>, 'Justin Pannu'
<justinpannu1503@gmail.com>, "Martin, Chad" <ChadMartin@bgcpartners.com>, Cliff Sharp
<ecsharp111@gmail.com>, Mark Willis <Mark@willisgroupus.com>, Pat Doherty <Pat@Doherty-
Law.com>
**Subject:** FW: Revised Operating Agreement - Title Rover, LLC

Rich,
Attached please find our mark up reflecting our revisions to your clean draft of the Amended and
Restated Company Agreement for Title Rover, LLC sent yesterday.  Please give us a call if you would like
to discuss.  Upon receipt of your client's Subscription Agreement as stated below, we will provide a
revised Company Agreement for Hopewell-Pilot Project, LLC in substantially similar form.
Thanks,
Tom Tatham
713 547-4531
713 504-7199
Pat Doherty
713 572-1000

---

**From:** Pat Doherty <Pat@Doherty-Law.com>
**Date:** Wednesday, September 7, 2016 at 4:19 PM
**To:** Tom Tatham <tpt@lngpartners.com>
**Subject:** RE: Revised Operating Agreement - Title Rover, LLC

Tom-

Please see attached. If this revised draft is acceptable, please forward to Rich, et al.

PLTF_001452

**From:** Tom Tatham [mailto:tpt@lngpartners.com]
**Sent:** Wednesday, September 07, 2016 11:39 AM
**To:** Richard E. Nawracaj <rich.nawracaj@nawracaj-law.com>
**Cc:** 'Jerome E. Johns' <jerry.johns@intelometry.com>; 'Justin Pannu'
<justinpannu1503@gmail.com>; 'Chad Martin' <chadlandmark@hotmail.com>; 'Cliff Sharp'
<ecsharp111@gmail.com>; Pat Doherty <pat@doherty-law.com>; Mark Willis
<Mark@willisgroupus.com>
**Subject:** Re: Revised Operating Agreement - Title Rover, LLC

Rich,
We have completed review of your draft Revised Operating Agreement – Title Rover, LLC with our
counsel, Pat Doherty. It is our intent to provide a mark up later today containing the revisions we are
willing to accept. If your clients accept our revised draft as submitted, we will further revise the
Hopewell Company Agreement accordingly based upon receipt of your client's Subscription for the
purchase of IAE Shares of Hopewell-Pilot Project, LLC with a condition to Closing that we will provide
substantially the same revisions to the Hopewell Company Agreement in the form of a new Second
Amended and Restated Company Agreement for Hopewell-Pilot Project, LLC, duly approved and
executed by all existing Hopewell Members for your client's execution at Closing. Please give me or Pat a
call if you have any questions.
Thanks,
Tom Tatham
Manager
Hopewell-Pilot Project, LLC
Title Rover, LLC
713 547-4531 (office direct
713 504-7199 (mobile
Pat Doherty
713 572-1000

---

**From:** "Richard E. Nawracaj" <rich.nawracaj@nawracaj-law.com>
**Date:** Tuesday, September 6, 2016 at 3:38 PM
**To:** Tom Tatham <tpt@lngpartners.com>, 'Mark Willis' <Mark@willisgroupus.com>
**Cc:** "'Jerome E. Johns'" <jerry.johns@intelometry.com>, 'Justin Pannu'
<justinpannu1503@gmail.com>, 'Chad Martin' <chadlandmark@hotmail.com>, 'Cliff Sharp'
<ecsharp111@gmail.com>
**Subject:** Revised Operating Agreement - Title Rover, LLC

Tom and Mark,

Attached is a revised Company Agreement for Title Rover, LLC, in both unmarked as
well as marked formats. The marked version illustrates the modifications made to the
draft Tom sent to me on Friday.

Please contact me with any questions.

Thanks,

PLTF_001453

Rich

Richard E. Nawracaj
Law Offices of Richard E. Nawracaj
155 N. Wacker Drive, Suite 4250
Chicago, Illinois 60606
Phone: (312) 803-4837
Cell: (773) 255-4541
Fax: (312) 873-4640
rich.nawracaj@nawracaj-law.com

**WILLIS ☺ GROUP** FAMILY OF COMPANIES

PLTF_001454

**EXHIBIT AA**

**To:**      Justin Pannu[justinpannu1503@gmail.com]
**Cc:**      Cliff Sharp[ecsharp111@gmail.com]; jerry johns[jerry.johns@intelometry.com]; Jeff
Merola[jeff.merola@intelometry.com]; Martin, Chad[ChadMartin@bgcpartners.com]; Mark
Willis[Mark@willisgroupus.com]; Pat Doherty[Pat@doherty-law.com]; Richard E. Nawracaj
(rich.nawracaj@nawracaj-law.com)[rich.nawracaj@nawracaj-law.com]
**From:**    Tom Tatham
**Sent:**    Fri 9/30/2016 2:14:40 PM
**Subject:** Re: EnSource Subscription Agreement to Hopewell Pilot-Project LLC
Hopewell -Pilot Project-Initial Additional Equity Shares-Subscription Agrmt-EnSource-9.29.2016.pdf
Schedule A Third Amendment 9 29 2016 w addition of EnSource Investments, LLC.docx
Third  Amended  Restated Company Agreement.signature page - EnSource Investment, LLC 9-29-16.doc

Hi Justin,
Attached is the ==fully executed Subscription Agreement for your files.  I== have also attached a revised SCHEDULE A to
the Third Amended and Restated Company Agreement which reflects the addition of EnSource Investments, LLC.
 Please execute, scan and return the MEMBERS SIGNATURE PAGE and I will circulate the revised SCHEDULE A to all
Members.
Please send the initial payment by wire transfer as per the Subscription Agreement to:  Amegy Bank, N.A.; ABA#
113011258; Account #:  5793018168; Account Holder:  Hopewell-Pilot Project, LLC; Reference:  for the benefit of
EnSource Investments, LLC as per Subscription Agreement dated September 29, 2016.
Thanks for your help!
Have a good weekend,
Tom

**From:** Tom Tatham <tpt@lngpartners.com>
**Date:** Friday, September 30, 2016 at 9:18 AM
**To:** Justin Pannu <justinpannu1503@gmail.com>
**Cc:** Cliff Sharp <ecsharp111@gmail.com>, jerry johns <jerry.johns@intelometry.com>, Jeff Merola
<jeff.merola@intelometry.com>, "Martin, Chad" <ChadMartin@bgcpartners.com>, Mark Willis
<Mark@willisgroupus.com>, Pat Doherty <Pat@Doherty-Law.com>, "Richard E. Nawracaj
(rich.nawracaj@nawracaj-law.com)" <rich.nawracaj@nawracaj-law.com>
**Subject:** Re: EnSource Subscription Agreement to Hopewell Pilot-Project LLC

Hi Justin,
Thanks!  I will have the fully executed subscription back to you this morning when Mark gets in together with wire
transfer instructions.  It looks like the third time will finally be the charm!
Talk soon,
Tom

**From:** Justin Pannu <justinpannu1503@gmail.com>
**Date:** Thursday, September 29, 2016 at 9:24 PM
**To:** Tom Tatham <tpt@lngpartners.com>
**Cc:** Cliff Sharp <ecsharp111@gmail.com>, jerry johns <jerry.johns@intelometry.com>, Jeff Merola
<jeff.merola@intelometry.com>, "Martin, Chad" <ChadMartin@bgcpartners.com>, Mark Willis
<Mark@willisgroupus.com>, Pat Doherty <Pat@Doherty-Law.com>, "Richard E. Nawracaj
(rich.nawracaj@nawracaj-law.com)" <rich.nawracaj@nawracaj-law.com>
**Subject:** EnSource Subscription Agreement to Hopewell Pilot-Project LLC

Hi Tom,
==Please see attached Subscription Agreement reflecting the total new investment of $530,000.== Please send us a fully
executed copy of the Subscription Agreement by tomorrow morning and ==we will transfer the next payment of
$20,000 by COB tomorrow.==

EXHIBIT
34
Pannu
PENGAD 800-631-6989

WIL_00000933

Page 443

Hopefully third time is the charm!

Thanks!

Justin

WIL_00000934

# HOPEWELL-PILOT PROJECT, LLC

## INITIAL ADDITIONAL EQUITY SHARES

### SUBSCRIPTION AGREEMENT

THE OFFERING OF SECURITIES DESCRIBED HEREIN HAS NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR UNDER ANY SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OR ANY OTHER JURISDICTION. THIS OFFERING IS MADE PURSUANT TO REGULATION S OR REGULATION D UNDER SECTION 4(a)(2) OF SAID ACT, WHICH EXEMPTS FROM SUCH REGISTRATION CERTAIN TRANSACTIONS. FOR THIS REASON, THESE SECURITIES WILL BE SOLD ONLY TO INVESTORS WHO MEET CERTAIN MINIMUM SUITABILITY QUALIFICATIONS DESCRIBED HEREIN.

A PROSPECTIVE INVESTOR SHOULD BE PREPARED TO BEAR THE ECONOMIC RISK OF AN INVESTMENT IN THE COMPANY FOR AN INDEFINITE PERIOD OF TIME BECAUSE THE SHARES OR MEMBER'S INTERESTS HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OR THE LAWS OF ANY OTHER JURISDICTION, AND, THEREFORE, CANNOT BE SOLD UNLESS THEY ARE SUBSEQUENTLY REGISTERED OR AN EXEMPTION FROM REGISTRATION IS AVAILABLE. THERE IS NO OBLIGATION OF THE ISSUER TO REGISTER THE SHARES OR MEMBER'S INTERESTS UNDER THE SECURITIES ACT OR THE LAWS OF ANY OTHER JURISDICTION. TRANSFER OF THE SHARES OR MEMBER'S INTERESTS IS ALSO RESTRICTED BY THE TERMS OF THE AMENDED AND RESTATED COMPANY AGREEMENT RELATING THERETO.

-1-

## HOPEWELL-PILOT PROJECT, LLC

### A TEXAS LIMITED LIABILITY COMPANY

Hopewell-Pilot Project, LLC
c/o Willis Group
1400 Post Oak Blvd. Suite 200
Attention: Tom Tatham
Telephone: (713) 547-4531
E-mail: TTatham@HopewellTX.com

Ladies & Gentlemen:

This SUBSCRIPTION AGREEMENT (the "Agreement") is entered into as of the Closing Date specified on the signature page hereto by and among HOPEWELL-PILOT PROJECT, LLC, a Texas limited liability company (the "Company"), and the investor identified on the signature page hereto (the "Investor"). Investor seeks admission to the Company as a New Member and the acquisition of Shares representing Member's Interest in the Company (the "Interest") in accordance with the Company's Amended and Restated Company Agreement (the "Company Agreement"). Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Company Agreement.

1.      **Capital Commitment.**  In accordance with the terms of the Company Agreement and this Agreement, the Investor agrees to contribute to the Company the amount of capital specified under the heading "Capital Commitment" set forth on the signature page hereto, or such lesser amount as the Company shall accept as determined by the Company's Managers in their sole and absolute discretion.

2.      **Adoption.**  If the Investor is accepted as a New Member pursuant to paragraph 3 below, the Investor hereby agrees to adhere to and be bound by all terms and provisions of the Company Agreement and to perform all obligations therein imposed upon a New Member with respect to the Interest.

3.      **Acceptance of Subscription; Delivery of Company Agreement.**  The Investor understands and agrees that this subscription is made subject to the following terms and conditions:

(a)     The Managers jointly reserve the right to review the suitability of any person desiring to acquire an Interest and, in connection with such review, to waive such suitability standards as to such person as the Managers jointly deem appropriate under applicable law;

(b)     The Managers may accept or reject the Investor's subscription, in whole or in part, and the Investor's subscription shall be deemed to be accepted by the Managers only when both of the Company's Managers have executed Investor's Agreement and Investor has been admitted to the Company as a New Member in accordance with the terms of the Company Agreement;

(c)     The Managers shall have no obligation to accept subscriptions in the order received;

(d)     The Interest to be created on account of this subscription shall be created only in the name of the Investor, and the Investor agrees to comply with the terms of the Company Agreement

-1-

28ML-207663

and to execute any and all further documents necessary in connection with becoming a New Member of the Company;

    (e)    The Investor hereby requests and authorizes the Managers to enter Investor's name on the Schedule of Members as holder of the Interest;

    (f)    The Investor has consulted to the extent deemed appropriate by the Investor with the Investor's own advisers as to the financial, tax, legal and related matters concerning an investment in Interests and on that basis believes that an investment in the Interests is suitable and appropriate for the Investor;

    (g)    The Investor is aware of and understands each of the risks and potential conflicts of interest inherent of an investment in the Company as set forth in the Memorandum;

    (h)    The Managers, acting jointly, may transfer proceeds into an account in the name of the Company, and in such event, the Managers shall not be liable for any losses arising from such transfer and shall be fully indemnified by the Company out of the assets of the Company to the fullest extent permitted by law for any and all actions, costs, claims, damages, demands or expenses (including any reasonable attorneys' fees) suffered or incurred by the Managers as a result of such transfer;

    (i)    The Investor hereby undertakes in respect of the Interest that the Investor: (i) shall comply with the restrictions on transfer of the Interest contained in the Company Agreement; and (ii) acknowledges and agrees that, in the event that Investor defaults on its capital contribution obligation to the Company, the Interest may be subject to forfeiture and other consequences as specified in the Company Agreement; and

    (j)    The Investor hereby declares that the Investor is not in the course of winding up or under liquidation or judicial management.

    4.    **Conditions to Closing.** The Company's obligations hereunder are subject to acceptance by the Managers of the Investor's subscription, and to the fulfillment at the time of, or prior to, the Closing Date of each of the following conditions:

    (a)    The representations and warranties of the Investor contained in this Agreement shall be true and correct as of the Closing Date; and

    (b)    All proceedings in connection with the transactions contemplated hereby and all documents and instruments incident to such transactions shall be satisfactory in substance and form to the Managers, and the Company shall have received all such counterpart originals or certified or other copies of such documents as the Managers may request.

    The Investor's obligations hereunder are subject to the fulfillment at the time of, or prior to, the Closing Date of the following condition: an Amended and Restated Company Agreement of Title Rover, LLC reasonably acceptable to Investor.

    5.    **Investor Representations.** In connection with the Investor's acquisition of the Interest as of the Closing Date, the Investor makes the following representations and warranties on which the Managers and the Company are entitled to rely:

    (a)    The Interest will be held under the type of ownership identified on the signature page hereto.

-2-

**(b)** If the Investor has checked that the Investor is not a "U.S. Person," as such term is used in Internal Revenue Service Form W-9, under the subheading "Tax Jurisdiction" below, the Investor hereby represents, under penalties of perjury, that the Investor (i) is a "non-U.S. Person" (as defined below); (ii) will not transfer or deliver any interest in the Interests except in accordance with the restrictions set forth in the Company Agreement; (iii) will notify the Managers immediately if the Investor becomes a U.S. Person at any time during which the Investor holds or owns any Interests; (iv) is not subscribing on behalf of or funding its Capital Contribution with funds obtained from U.S. Persons; and (v) it was not in the United States at the time that the Interests were offered to it, and it was not in the United States at the time such offer was accepted; and (vi) it is not acting on behalf of, and it will not fund any portion of its subscription with assets of, any entity that is a "benefit plan investor" within the meaning of the United States Department of Labor Reg. Section 2510-101.3. For purposes of this section 5(b), a "non-U.S. Person" is an individual who is not a citizen or resident of the United States or a corporation, partnership, estate or trust which is not a U.S. entity. Except for offers and sales to discretionary or similar accounts held for the benefit or account of a non-U.S. person by a U.S. dealer or other professional fiduciary, all offers to sell and offers to buy the Interests were made to or by the Investor while the Investor was outside the United States and at the time that the Investor's order to buy the Interests was originated the Investor was outside the United States.

**(c)** The Investor is an "accredited investor" within the meaning of Regulation D of the U.S. Securities Act of 1933, as amended (the "Securities Act") and a "qualified client" as defined in the Investment Advisers Act of 1940, as amended, on the basis identified by checking the box adjacent to the applicable representation on *Schedule 2, Part 1* in the case of an individual investors and on *Schedule 2, Part 2* in the case of entity investors; and in the case of entity investors, represents to such further matters by checking the boxes adjacent to the applicable further representations on *Schedule 2, Part 2* (which checked representations in *Schedule 2, Parts 1 and 2* are hereby incorporated by reference). The Investor (i) is not subject to any of the "Bad Actor" disqualifications (each, a "Disqualification Event") described in Rule 506(d)(1) under the Securities Act and (ii) will, subsequent to the date hereof, notify the Company's Managers of (A) any Disqualification Event relating to the Investor not previously disclosed and (B) any event that would, with the passage of time, become a Disqualification Event relating to the Investor. The Investor is acquiring the Interest solely for the Investor's own account and not directly or indirectly for the account of any other person whatsoever for investment and not with a view to, or for sale in connection with, any distribution of the Interest. The Investor does not have any contract, undertaking or arrangement with any person to sell, transfer or grant a participation to any person with respect to the Interest. The Investor has such knowledge and experience in financial and business matters that the Investor is capable of evaluating the merits and risks of the investment evidenced by the Investor's acquisition of the Interest, and the Investor is able to bear the economic risk of such investment.

**(d)** No representations or warranties have been made to the Investor by the Company, the Company's Managers, or any agent thereof, other than as set forth in the Company Agreement, and this Agreement. The Investor has had access to such information concerning the Company as the Investor deems necessary to enable the Investor to make an informed decision concerning the acquisition of the Interest. The Investor has had access to the designated representatives of the Company, its Managers and the opportunity to ask questions of, and receive answers satisfactory to the Investor from, the Managers and or such designated representatives concerning the offering of Interests in the Company generally. The Investor has obtained all additional information requested by the Investor to verify the accuracy of all information furnished in connection with the offering of Interests in the Company.

**(e)** The Investor understands that the Interest has not been registered under the Securities Act, or any securities law of any state of the United States or any other jurisdiction in reliance on an exemption for private offerings, and the Investor acknowledges that it has received and carefully

-3-

WIL_00000938

read the Confidential Private Placement Memorandum of the Company (the "Memorandum"), the Company Agreement and this Agreement. The Investor understands that Doherty & Doherty LLP acts as counsel for the Company, the Company's Managers. No separate counsel has been retained to act on behalf of the Investors. No attorney-client relationship exists with any other person by reason of such person making an investment in the Company. The Investor has received and reviewed all such other information of the Company as the Investor or its representatives and advisers have requested.

(f)     The Investor is aware that the Investor must bear the economic risk of investment in the Interest for an indefinite period of time, possibly until final winding up of the Company, because the Interest has not been registered under the Securities Act, there is currently no public market therefor, and the Interest cannot be sold unless subsequently registered under the Securities Act or an exemption from such registration is available. The Investor understands that the Company is under no obligation, and does not intend, to effect any such registration at any time. The Investor also understands that sales or transfers of the Interest are further restricted by the provisions of the Company Agreement and, as applicable, securities laws of other jurisdictions and the states of the United States, and that the Interest will not be transferred or disposed of except in accordance with the terms of this Agreement, the Company Agreement and registration under the Securities Act, or pursuant to an applicable exemption therefrom.

(g)     The execution and delivery of the Company Agreement and this Agreement, the consummation of the transactions contemplated thereby and the performance of the obligations thereunder will not conflict with or result in any violation of or default under any provision of any other agreement or instrument to which the Investor is a party or any license, permit, franchise, judgment, order, writ or decree, or any statute, rule or regulation, applicable to the Investor.

(h)     The Investor has full power and authority to make the representations referred to in this Agreement, to acquire the Interest pursuant to this Agreement and the Company Agreement and to deliver the Company Agreement and this Agreement. The Company Agreement and this Agreement create valid and binding obligations of the Investor and are enforceable against the Investor in accordance with their terms, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, arrangement, moratorium or other similar laws affecting creditors' rights, and subject to general equity principles and to limitations on availability of equitable relief, including specific performance.

(i)     The Investor confirms that the Investor has been advised to consult with the Investor's attorney regarding legal matters concerning the Company and to consult with independent tax advisers regarding the tax consequences of investing in the Company. The Investor acknowledges that it understands that any anticipated United States federal or state income tax benefits may not be available and, further, may be adversely affected through adoption of new laws or regulations or amendments to existing laws or regulations. The Investor acknowledges and agrees that the Company has made no warranty or assurance regarding the ultimate availability of any tax benefits to the Investor by reason of the Investor's investment in the Company.

(j)     The Investor acknowledges and agrees that (i) information relating to the identity of the Investor shall appear on the Schedule of Members and may appear on the financial statements of the Company, and (ii) other Members shall receive such information and may share such information with their advisors and other parties pursuant to the terms of the Company's Confidentiality Agreement.

(k)     The Investor is knowledgeable and experienced in evaluating investments and experienced in financial and business matters and is capable of evaluating the merits and risks of investing in the Interests. The Investor has evaluated the risks of investing in the Interests, and has determined that the Interests are a suitable investment for the Investor. In evaluating the suitability of an

-4-

investment in the Interests, the Investor has not relied upon any representations or other information (whether oral or written) other than as set forth herein, in the Memorandum, the Company Agreement, the other agreements and independent investigations made by the Investor or representative(s) of the Investor. With respect to its investment in the Company, the Investor is not relying upon any other information, representation or warranty by the Company, the Managers of the Company or any designated representatives of the Company.

      (l)      The Investor is aware and acknowledges that (i) the Company has limited or no significant operating history; (ii) there is no assurance of any income from an investment in the Company; (iii) any federal and/or state income tax benefits which may be available to the Investor may be lost through the adoption of new laws or regulations or changes to existing laws and regulations or differing interpretations of existing laws and regulations, in certain circumstances with retroactive effect; and (iv) the Investor, in making this investment, is relying, if at all, solely upon the advice of such Investor's personal tax advisor with respect to the tax aspects of an investment in the Company.

      **6.**      **Company's and Manager's Representations.**  The Company and the Company's Managers make the following representations and warranties on which the Investor and its counsel are entitled to rely:

      (a)      The execution and delivery of the Company Agreement and this Agreement, the consummation of the transactions contemplated thereby and the performance of the obligations thereunder will not conflict with or result in any violation of or default under any provision of any other agreement or instrument to which the Company is a party or any judgment, order, writ or decree applicable to the Company.

      (b)      No suit, action, claim, investigation or other proceeding is pending or, to the best of the Company's or the Manager's knowledge, is threatened in writing against the Company which questions the validity of the Company Agreement or this Agreement or any action taken or to be taken pursuant to the Company Agreement or this Agreement, or which could otherwise have a material adverse effect on the Company.

      (c)      The Company Agreement and this Agreement create valid and binding obligations of the Company and are enforceable against the Company in accordance with their terms.

      **7.**      **Trustee, Agent, Representative or Nominee.**  If the natural person or entity completing this Agreement is acting as trustee, agent, representative or nominee for the Investor (such person or entity, the "Agent"), the Agent agrees that the representations, warranties and agreements made herein are made by such Agent (a) in respect of such Agent and (b) in respect of the underlying subscriber on whose behalf the Agent is acting.  The Agent represents and warrants that such Agent has all requisite power and authority to execute this Agreement and perform the obligations under this Agreement on the underlying Investor's behalf.  The Agent agrees to provide any additional documents and information that the Company reasonably requests relating to itself or the underlying Investor.

      **8.**      **Survival of Agreements, Representations and Warranties; Indemnification.**

      (a)      All agreements, representations and warranties contained herein or made in writing by or on behalf of the Investor, the Company or the Managers of the Company in connection with the transactions contemplated by this Agreement shall survive the execution of this Agreement and the Company Agreement, any investigation at any time made by the Investor, the Company or the Managers of the Company or on behalf of any of them and the sale and acquisition of the Interest and payment therefor.

-5-

(b)     The Investor acknowledges that the Investor understands the meaning and legal consequences of the representations and warranties made by the Investor herein. Such representations and warranties are complete and accurate, shall be complete and accurate as of the Closing Date and may be relied upon by the Company's Managers and the Company. If there should be any material change in any of the representations or warranties or other information regarding the Investor set forth herein, including at any time following the Closing Date, the Investor agrees to notify the Company's Managers in writing as promptly as reasonably practicable.

(c)     The Investor agrees that the foregoing representations and warranties, and all other information regarding the Investor set forth herein, may be used as a defense in any actions relating to the Company, the Managers of the Company or the private placement of the Interest, and that it is only on the basis of such representations, warranties and other information that the Company's Managers may be willing to accept this Agreement on behalf of the Company. The Investor acknowledges that the Company, and the Managers of the Company shall rely on such information, representations and warranties on an ongoing basis.

9.     **Binding Effect.** This Agreement shall be binding upon the Investor and the heirs, personal representatives, successors and assigns of the Investor. The Investor agrees that neither this Agreement nor any rights which may accrue to the Investor hereunder may be transferred or assigned without the consent of the Company's Managers, which may be granted or withheld in its sole discretion or otherwise as provided in the Company Agreement. This Agreement shall survive the admission of the Investor to the Company and shall, if the Investor consists of more than one person, be the joint and several obligations of all such persons.

10.     **Severability.** If any provision of this Agreement is held to be invalid or unenforceable in any jurisdiction, such provision shall be deemed modified to the minimum extent necessary so that such provision, as so modified, shall no longer be held to be invalid or unenforceable. Any such modification, invalidity or unenforceability shall be strictly limited both to such provision and to such jurisdiction, and in each case to no other. Furthermore, in the event of any such modification, invalidity or unenforceability, this Agreement shall be interpreted so as to achieve the intent expressed herein to the greatest extent possible in the jurisdiction in question and otherwise as set forth herein.

11.     **Confidentiality.** The Investor has carefully read the Company's Confidentiality Agreement and by execution thereof understands, including without limitation the confidentiality and non-solicitation undertakings set forth therein which shall apply to the Investor, whether or not this Agreement is accepted by the Company.

12.     **Counterparts.** his Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

13.     **Amendments.** Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated orally, but only with the written consent of the Investor and the Company.

14.     **Governing Law.** The interpretation and enforceability of this Agreement and the rights and liabilities of the parties hereto shall be governed by the laws of the State of Texas. To the extent permitted by the Act and other applicable law, the provisions of this Agreement shall supersede any contrary provisions of the Act or other applicable law.

-6-

WIL_00000941

THE UNDERSIGNED INVESTOR HEREBY REPRESENTS THAT (I) THE UNDERSIGNED INVESTOR HAS
CAREFULLY READ AND IS FAMILIAR WITH THIS AGREEMENT AND THE COMPANY AGREEMENT,
(II) THE INFORMATION CONTAINED HEREIN IS COMPLETE AND ACCURATE AND MAY BE RELIED
UPON, AND (III) THE EXECUTION OF THE FOLLOWING SIGNATURE PAGE SHALL CONSTITUTE THE
EXECUTION OF THIS AGREEMENT AND THE COMPANY AGREEMENT BY THE INVESTOR IN THE
EVENT THAT THE INVESTOR IS ADMITTED TO THE COMPANY AS A NEW MEMBER.

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement as of this
29th day of September, 2016.

THE COMPANY:                                      INDIVIDUAL INVESTOR:

HOPEWELL-PILOT PROJECT, LLC
                                                  _____
                                                  (Signature)

By: THOMAS P. TATHAM                              _____
Its:  Manager                                     (Signature)


                                                  _____
By: MARK A. WILLIS                                (Print Name As It Will Be Registered With This
Its:  Manager                                     Investment)


                                                  ENTITY INVESTOR:
                                                  EnSource Investments LLC

                                                  By: _____Justin Pannu_____

                                                  Name: __JUSTIN PANNU_____

                                                  Title: __MANAGER_____


Closing Date:                                     Capital Commitment: $530,000.00*
(To be completed by the Company)                  *$205,000.00 through exercise of convertible
                                                  promissory note; $20,000 on or before
                                                  September 30, 2016; $205,000 on or before
                                                  October 28, 2016; $100,000 on or before
                                                  December 31, 2016.

Please provide the following information:

    ☐   Individual                    ☐   Irrevocable Trust
    ☐   Community Property             ☐   Living Trust or Revocable Trust w/ ___ grantors.
    ☐   Partnership                    ☐   Corporation
    ☐   Limited Liability Company      ☐   Other:_____.

If the Investor is an entity, as of the Closing Date, there are four (4) holders of its outstanding securities
(other than short-term paper) (*please fill in the blank specifying the number of beneficial owners*).

-7-

WIL_00000942

Primary contact person:____Justin Pannu_____

Telephone Number:____(619) 318-2607_____ Fax Number: _____

E-mail Address:_____justinpannu1503@gmail.com_____

■ Social Security or Taxpayer I.D. Number____91 - 377 3197_____
☐ U.S. Investor / U.S. Person              ☐ Non-U.S. Investor / Foreign Person
☐ Exempt under Code Section 401(a)    ☐ Exempt under Code Section 892
☐ Exempt under Code Section 501(c)3

Residential/Business Address (Domicile for Blue Sky filing purposes):

700 W. E Street, Unit 3804
San Diego, California 92101

Registered Address (if applicable):

_____
_____
_____

Mailing Address *(select one)*:

[X]   Please use the Subscriber's Residential/Business Address as the Mailing Address

[ ]   Please use the Subscriber's Registered Address as the Mailing Address

[ ]   Please use the following as the Subscriber's Mailing Address:

_____
_____
_____

**METHOD OF DELIVERY OF ACCOUNT COMMUNICATIONS.** Account Communications may be delivered via the e-mail address provided on this page. Should this means of transmission be unacceptable, Account Communications will be delivered via facsimile or physical delivery if the following box is checked:

☐ E-mail transmission is declined, please send Account Communications via facsimile or physical delivery

**For all account communications, please send via e-mail as well as physical delivery.**

-8-

IN WITNESS WHEREOF, this Amended and Restated Company Agreement has been entered into by the parties as of this 29th day of September, 2016.

THE COMPANY

HOPEWELL-PILOT PROJECT, LLC

By: _____
    MANAGER

By: _____
    MANAGER

NEW MEMBERS

INDIVIDUAL:

By: _____
By: _____
Name: _____

ENTITY:

_____
EnSource Investments LLC

By: _____
Name: ___JUSTIN PANNU_____
Title: ___MANAGER_____

*Signature Page to the Amended and Restated Company Agreement of*
*Hopewell-Pilot Project, LLC*

WIL_00000944

ANNEX 1

PART 1

**Individual Investor Representations.**

All defined terms have the meanings provided to them in the Agreement; the following representations are incorporated by reference into the Agreement.

The Investor makes the following representations regarding the Investor's status as an Accredited Investor and a Qualified Client *by checking the box adjacent to each representation below*:

☐ **(a)** Accredited Investor: The Investor is an individual and has a net worth, either individually or upon a joint basis with the Investor's spouse, that exceeds $1,000,000, excluding the net equity value of such individual's primary residence, if any, but including as a liability the amount by which any indebtedness secured by such residence exceeds the value of such residence (within the meaning of such terms as used in Rule 501 under the Securities Act),[1] *or* has had an individual income in excess of $200,000 for each of the two most recent years, or a joint income with the Investor's spouse in excess of $300,000 in each of those years, and has a reasonable expectation of reaching the same income level in the current year.

☐ **(b)** Qualified Client: The Investor is an individual that (i) has a net worth, together with assets held jointly with the Investor's spouse, of more than $2,000,000, excluding the net equity value of such individual's primary residence, if any, but including as a liability the amount by which any indebtedness secured by such residence exceeds the value of such residence (within the meaning of such terms as used in Rule 501 under the Securities Act),[2] or (ii) is a Qualified Purchaser.

---

[1] Any indebtedness secured by such primary residence that the Investor incurred within the 60 day period preceding the date of the sale of securities pursuant to this Agreement (other than indebtedness incurred as a result of the acquisition of the primary residence) will be included as a liability for purposes of this calculation, even if the total amount of indebtedness securing such primary residence does not exceed the value of such residence.

-1-

WIL_00000945

ANNEX 1

PART 2

**Entity Investor Representations.**

All defined terms have the meanings provided to them in the Agreement; the following representations are incorporated by reference into the Agreement.

The Investor makes the representations regarding the Investor's status as an Accredited Investor and a Qualified Client *by checking the box adjacent to the each representation below:*

**ACCREDITED INVESTOR REPRESENTATION** (*check the box adjacent to at least one applicable representation below*):

☐     **(i)**     The Investor is a corporation, partnership, business trust or limited liability company, not formed for the purpose of acquiring an Interest, or an organization described in section 501(c)(3) of the Code, in each case with total assets in excess of $5,000,000.

☒     **(ii)**     The Investor is an entity in which **all** of the equity owners (or *a living trust or other revocable trust* in which all of the grantors to such trust) qualify under Annex 1, Part 1, clause (a) or (b), or clause (i), (iii), (iv), (v) or this clause (ii) of this Annex 1, Part 2.

☐     **(iii)**     The Investor is an employee benefit plan and *either* all investment decisions are made by a bank, savings and loan association, insurance company, or registered investment advisor, *or* the Investor has total assets in excess of $5,000,000 *or*, if such plan is a self-directed plan, investment decisions are made solely by persons who are Accredited Investors.

☐     **(iv)**     The Investor is an *irrevocable* trust with total assets in excess of $5,000,000 whose acquisition is directed by a person with such knowledge and experience in financial and business matters that such person is capable of evaluating the merits and risks of the prospective investment.

☐     **(v)**     The Investor is a bank, insurance company, investment company registered under the Investment Company Act, a broker or dealer registered pursuant to Section 15 of the United States Securities Exchange Act of 1934, as amended, a business development company, a Small Business Investment Company licensed by the United States Small Business Administration, a plan with total assets in excess of $5,000,000 established and maintained by a state for the benefit of its employees, or a private business development company as defined in Section 202(a)(22) of the Investment Advisers Act.

☐     **(vi)**     The Investor cannot make any of the representations set forth in clauses (i) through (v) above.

–i–

WIL_00000946

**QUALIFIED CLIENT REPRESENTATION** (*check the box adjacent to at least one applicable representation below*):

☐    **(i)**    The Investor is a corporation, partnership, association, joint-stock company, trust, or any organized group of persons, whether incorporated or not, that has a net worth of more than $2,000,000. *If the Investor belongs to this investor category, please either check clause (iii) below, if applicable, or affirmatively deny the applicability of clause (iii) below.*

■    **(ii)**    The Investor is a corporation, partnership, association, joint stock company, trust, or any organized group of persons, whether incorporated or not, that is a Qualified Purchaser. *If the Investor belongs to this investor category, please either check clause (iii) below, if applicable, or affirmatively deny the applicability of clause (iii) below.*

☐    **(iii)**    The Investor is a corporation, partnership, association, joint-stock company, trust, or any organized group of persons, whether incorporated or not, that is an Excluded Company, and all of the Investor's equity owners (and all of their respective equity owners) are Qualified Clients.

■      The Investor has checked either or both of clauses (i) or (ii) above and affirmatively denies applicability of this clause (iii).

☐    **(vi)**    The Investor cannot make any of the representations set forth in clauses (i) through (iii) above.


**FURTHER ENTITY INVESTOR REPRESENTATIONS**

The Investor makes the following representations *by checking the box adjacent to the correct response to each representation below:*

■ True    ☐ False      The Investor is neither an "investment company" under the Investment Company Act nor does the Investor rely upon the exclusions from the definition of "investment company" provided for in Section 3(c)(1) or 3(c)(7) of the Investment Company Act.

☐ True    ■ False      The Investor was not organized for the purpose of acquiring the Interest.

■ True    ☐ False      The Investor has made investments prior to the date hereof or intends to make investments in the near future and each beneficial owner of interests in the Investor has and will share in the same proportion to each such investment.

☐ True    ■ False      The Investor's investment in the Company will not constitute more than 40% of the assets of the Investor (including any capital commitments that may be drawn upon demand by the Investor).

■ True    ☐ False      The governing documents of the Investor require that each beneficial owner of the Investor, including, but not limited to, shareholders, partners and beneficiaries, participate through their interest in the Investor in all of the Investor's investments and that the profits and losses from each such investment are shared among such beneficial owners in the same proportions as all other investments of the Investor. No such beneficial owner may vary the Investor's share of the profits and losses or the amount of the Investor's contribution for any investment made by the Investor.

-2-

WIL_00000947

If any of the above statements are marked "False," then the Investor will have, as of the Closing Date, four (4) holders of its outstanding securities (other than short-term paper) *(please fill in the blank specifying the number of beneficial owners)*.

The Investor is:

☐ True  ■ False  (1)  an "employee welfare benefit plan" or an "employee pension benefit plan" as defined in sections 3(1) and 3(2), respectively, of ERISA; or

☐ True  ■ False  (2)  a plan described in section 4975(e)(1) of the Code; or

☐ True  ■ False  (3)  an entity that is deemed to be a "benefit plan investor" under the DOL Regulations because all or part of its underlying assets include "plan assets" by reason of a plan's investment in the entity (including, by way of example only, a partnership not qualifying as an operating company within the meaning of the DOL Regulations, which is 25% or more owned by entities described in (1) or (2) above); or

☐ True  ■ False  (4)  subject to any rules or regulations similar to the fiduciary provisions of ERISA and/or the prohibited transaction provisions of Section 4975 of the Code.

If clause (3) above is marked "True," please provide the percentage that the Investor's "plan assets" holdings bear to its aggregate asset holdings (based upon value as of the Closing Date): _____% (the "Plan Asset Percentage").

☐ True  ■ False  The Investor is a "private foundation" as described in Section 509 of the Code.

☐ True  ■ False  The Investor is subject to the Bank Holding Company Act of 1956, as amended.

■ True  ☐ False  To the best of the Investor's knowledge, the Investor does not control nor is it controlled by or under common control with, any other Investor.

*Please check the box next to each applicable statement and provide appropriate information in response to each such statement:*

☐ True  ■ False  The Investor is subject to federal or state freedom of information (FOIA) statutes or other similar statutes in each of the following jurisdictions. *(If a similar statute is applicable, please specify the applicable statute along with the applicable jurisdiction, to the extent known)*:

_____

☐ True  ■ False  One or more of the Investor's beneficial owners is subject to federal or state FOIA statutes or other similar statutes in each of the following jurisdictions. *(If a similar statute is applicable, please specify the applicable statute along with the applicable jurisdiction, to the extent known)*:

_____

-3-

WIL_00000948

☐ True   ■ False          The Investor is a public agency, department, office or pension plan. *(Please specify type and applicable jurisdiction.)*:

_____

☐ True   ■ False          One or more of the Investor's beneficial owners is a public agency, department, office or pension plan. *(If known, please specify type of owner and applicable jurisdiction below.)*:

_____

-4-

WIL_00000949

**SCHEDULE A**
**Member Information**

| Name and Address of Each Member | Founders Shares | Initial Ownership Percentage | Initial Additional Equity Shares** | Capital Contribution Paid for Initial Additional Equity Shares | Adjusted Ownership Percentage after issue of Initial Additional Equity Shares*** |
|---|---|---|---|---|---|
| **Willis Group Members:** | | | | | |
| **Hopewell Willis Holdings, LLC** 1400 Post Oak Blvd. Suite 200 Houston, TX 77056 | 450,000 | 45% | 50,000 | $100,000 | 34.25% |
| **Willis Group LLC** 1400 Post Oak Blvd. Suite 200 Houston, TX 77056 | 225,000 | 22.5% | | | 15.41% |
| **Tatham Group Members:** | | | | | |
| **Hopewell Tatham Holdings LLC** 1400 Post Oak Blvd. Suite 200 Houston, TX 77056 | 112,500 | 11.25% | | | 7.71% |
| **LNG Partners, LLC** 600 Travis St. Suite 5900 Houston, TX 77002 | 112,500 | 11.25% | | | 7.71% |
| **Mark A. Bush** 5868 Westheimer, Apt 458 Houston, TX 77057 | 100,000 | 10% | | | 6.84% |

| Initial New Members: | | | | | |
|---|---|---|---|---|---|
| Gil Lopez III<br>16522 Champions Cove Circle<br>Spring, TX 77379 | | | 25,000 | $50,000 | 1.71% |
| Michael Casey Foran<br>200 Lamont Ave.<br>San Antonio, TX 78209 | | | 17,500 | $35,000 | 1.20% |
| Foran Ltd.<br>200 Lamont Ave.<br>San Antonio, TX 78209 | | | 12,500 | $25,000 | 0.86% |
| Michael T. Willis<br>1400 Post Oak Blvd.<br>Suite 200<br>Houston, TX 77056 | | | 15,000 | $30,000 | 1.03% |
| South Padre Gas Partners, L.P.<br>10 S. Briar Hollow Ln., #30<br>Houston, TX 77027 | | | 25,000 | $50,000 | 1.71% |
| Thomas Trent Stout<br>231 Bryn Mawr Cir.<br>Houston, TX 77024 | | | 50,000 | $100,000 | 3.42% |
| EnSource Investments, LLC | | | 265,000 | $530,000 | 18.15% |
| Totals | 1,000,000 | 100% | 460,000 | $920,000 | 100% |

* 1,000,000 Founders Shares allocated among Willis Group Members, Tatham Group Members and Mark A. Bush
** Initial Additional Equity Shares subscribed by Founding Members and Initial New Members
*** Rounded to nearest 1/100th of one per cent (.01%)

WIL_00000951

Page 461

## MEMBER SIGNATURE PAGE

The undersigned Member of **HOPEWELL - PILOT PROJECT, LLC**, a Texas limited liability company (the "Company"), does hereby execute this signature page to be attached to that certain Third Amended and Restated Company Agreement for the Company and agrees to be bound by all of the terms and provisions of such Agreement.

EnSource Investments, LLC

*By:* _____
           Justin Pannu, Manager

*Address:*  700 W. E Street, #3804
           San Diego, CA 92101

1

WIL_00000952

Page 462

**EXHIBIT BB**

**Accrual Basis**

**Hopewell-Pilot Project, LLC**
**General Ledger**
**As of December 31, 2016**

| | | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 0.00 |
| **Amegy Bank** | | | | | | | | | | |
| | | | Deposit | 04/04/2016 | | | Deposit | Tom Tatham | 100.00 | 100.00 |
| | | | Deposit | 04/05/2016 | | | Deposit | Willis Group- Jabco | 30,000.00 | 30,100.00 |
| | | | Check | 04/05/2016 | ach | Amegy Bank | | Bank Fees | -13.00 | 30,087.00 |
| | | | Check | 04/05/2016 | 999 | Greg Kane | March and April Rent | Travel / Lodging | -3,600.00 | 26,487.00 |
| | | | Check | 04/05/2016 | 1000 | Greg Kane | | Greg Kane | -3,800.00 | 22,687.00 |
| | | | Check | 04/06/2016 | Trans | Title Rover, LLC | | Title Rover - IT & License Fees | -17,500.00 | 5,387.00 |
| | | | Check | 04/19/2016 | ach | Title Rover, LLC | | Title Rover - IT & License Fees | -5,050.00 | 337.00 |
| | | | Check | 04/20/2016 | wire | Steve Ervi/SDE Ventures LLC | | -SPLIT- | -6,366.85 | -6,029.85 |
| | | | Check | 04/20/2016 | 1002 | Greg Kane | | -SPLIT- | -4,896.66 | -10,926.51 |
| | | | Check | 04/21/2016 | avh | Amegy Bank | | Bank Fees | -13.00 | -10,939.51 |
| | | | Check | 04/21/2016 | ach | PDP Management Group, LLC | | PDP Management Group LLC | -34,500.00 | -45,439.51 |
| | | | Deposit | 04/21/2016 | | | Deposit | Willis Group- Jabco | 50,000.00 | 4,560.49 |
| | | | Check | 04/22/2016 | ach | P2 ES Holdings | | Title Records, Maps & Drafting | -2,000.00 | 2,560.49 |
| | | | Check | 04/22/2016 | ach | Amegy Bank | | Bank Fees | -25.00 | 2,535.49 |
| | | | Check | 04/22/2016 | ach | Amegy Bank | | Bank Fees | -25.00 | 2,510.49 |
| | | | Check | 04/22/2016 | 1003 | Madison County Clerk | Land Records in CD form | Title Records, Maps & Drafting | -90.00 | 2,420.49 |
| | | | Deposit | 05/03/2016 | | | Deposit | Willis Group- Jabco | 17,500.00 | 19,920.49 |
| | | | Check | 05/03/2016 | Trans | Title Rover, LLC | | Title Rover - IT & License Fees | -17,500.00 | 2,420.49 |
| | | | Deposit | 05/03/2016 | | | Deposit | Tom Tatham | 5,000.00 | 7,420.49 |
| | | | Check | 05/03/2016 | ach | Amegy Bank | wire fee | Bank Fees | -15.50 | 7,404.99 |
| | | | Deposit | 05/04/2016 | | | Deposit | Willis Group- Jabco | 5,000.00 | 12,404.99 |
| | | | Check | 05/05/2016 | ach | Amegy Bank | wire fee | Bank Fees | -15.50 | 12,389.49 |
| | | | Check | 05/05/2016 | ach | Amegy Bank | wire fee | Bank Fees | -19.50 | 12,369.99 |
| | | | Bill Pmt -Check | 05/05/2016 | 3000 | Daniel L. Ellwood PC | | Accounts Payable | -5,000.00 | 7,369.99 |
| | | | Bill Pmt -Check | 05/05/2016 | 3001 | Carlos Manrique | | Accounts Payable | -2,200.00 | 5,169.99 |
| | | | Bill Pmt -Check | 05/05/2016 | Wire | Steve Ervi/SDE Ventures LLC | | Accounts Payable | -4,219.45 | 950.54 |
| | | | Deposit | 05/13/2016 | | | To cover Schubarth Inc. | Tom Tatham | 6,000.00 | 6,950.54 |
| | | | Check | 05/13/2016 | wire | Schurbarth Inc. | Contract for initial EUR estimates Areas 1-4 | Geology & Resevoir Engineering | -6,120.00 | 830.54 |
| | | | Check | 05/13/2016 | ach | Amegy Bank | wire fee | Bank Fees | -19.50 | 811.04 |
| | | | Deposit | 05/18/2016 | | | Deposit | Tom Tatham | 2,000.00 | 2,811.04 |
| | | | Check | 05/18/2016 | wire | Steve Ervi/SDE Ventures LLC | | -SPLIT- | -4,083.05 | -1,272.01 |
| | | | Check | 05/18/2016 | ach | Amegy Bank | wire fee | Bank Fees | -27.50 | -1,299.51 |
| | | | Check | 05/18/2016 | 8166 | Madison County Clerk | Addison Co update | Title Records, Maps & Drafting | -18.00 | -1,317.51 |
| | | | Deposit | 05/18/2016 | | | Deposit | Title Rover LLC | 4,500.00 | 3,182.49 |
| | | | Check | 05/19/2016 | 3003 | Carlos Manrique | May 1-15 | Title Records, Maps & Drafting | -2,400.00 | 782.49 |
| | | | Bill Pmt -Check | 06/01/2016 | 3004 | Houston Bookkeeping Solutions | | Accounts Payable | -250.00 | 532.49 |
| | | | Check | 06/01/2016 | 3007 | Patterson PC | retainer | Patterson PC | -5,000.00 | -4,467.51 |
| | | | Deposit | 06/02/2016 | | | Deposit | Willis Group- Jabco | 17,500.00 | 13,032.49 |
| | | | Check | 06/02/2016 | ach | Amegy Bank | wire fee | Bank Fees | -15.50 | 13,016.99 |
| | | | Bill Pmt -Check | 06/02/2016 | Trans | Title Rover, LLC | | Accounts Payable | -17,500.00 | -4,483.01 |
| | | | Check | 06/06/2016 | ach | Amegy Bank | wire fee | Bank Fees | -15.50 | -4,498.51 |

WIL_00001670
Page 464

Accrual Basis

**Hopewell-Pilot  Project, LLC**
**General Ledger**
As of December 31, 2016

| | | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Bill Pmt -Check | 06/06/2016 | Wire | Steve Ervil/SDE Ventures LLC | | Accounts Payable | -4,543.00 | -9,041.51 |
| | | | Check | 06/06/2016 | ach | Amegy Bank | wire fee | Bank Fees | -27.50 | -9,069.01 |
| | | | Bill Pmt -Check | 06/06/2016 | Trans | PDP Management Group, LLC | | Accounts Payable | -500.00 | -9,569.01 |
| | | | Bill Pmt -Check | 06/06/2016 | Trans | PDP Management Group, LLC | | Accounts Payable | -20,000.00 | -29,569.01 |
| | | | Deposit | 06/06/2016 | | | Deposit - M. Forhan | Willis Group- Jabco | 25,000.00 | -4,569.01 |
| | | | Deposit | 06/20/2016 | wire | Willis Group | Deposit | Willis Group- Jabco | 4,500.00 | -69.01 |
| | | | Check | 06/20/2016 | ach | Amegy Bank | wire fee | Bank Fees | -15.50 | -84.51 |
| | | | Bill Pmt -Check | 06/20/2016 | wire | Steve Ervil/SDE Ventures LLC | June 1 - 15, 2016 | Accounts Payable | -4,436.30 | -4,520.81 |
| | | | Check | 06/20/2016 | ach | Amegy Bank | wire fee | Bank Fees | -27.50 | -4,548.31 |
| | | | Deposit | 06/27/2016 | wire | Gil Lopez | Deposit | Gil Lopez III-25,000 sh | 25,000.00 | 20,451.69 |
| | | | Check | 06/27/2016 | ach | Amegy Bank | | Bank Fees | -15.50 | 20,436.19 |
| | | | Bill Pmt -Check | 06/30/2016 | Trans | PDP Management Group, LLC | | Accounts Payable | -8,000.00 | 12,436.19 |
| | | | Bill Pmt -Check | 06/30/2016 | 3006 | Linda Meiske | | Accounts Payable | -2,079.10 | 10,357.09 |
| | | | Bill Pmt -Check | 07/01/2016 | 3006 | Doherty & Doherty | | Accounts Payable | -5,592.22 | 4,764.87 |
| | | | Check | 07/05/2016 | ach | Amegy Bank | wire fees | Bank Fees | -27.50 | 4,737.37 |
| | | | Bill Pmt -Check | 07/05/2016 | wire | Steve Ervil/SDE Ventures LLC | | Accounts Payable | -4,400.00 | 337.37 |
| | | | Deposit | 07/06/2016 | wire | Thomas Trent Stout | Deposit | Thomas Trent Stout-50,000 sh | 100,000.00 | 100,337.37 |
| | | | Check | 07/06/2016 | Trans | Title Rover, LLC | | Title Rover - IT & License Fees | -17,500.00 | 82,837.37 |
| | | | Check | 07/06/2016 | Trans | Title Rover, LLC | | Title Rover - IT & License Fees | -12,500.00 | 70,337.37 |
| | | | Bill Pmt -Check | 07/06/2016 | Wire | PDP Management Group, LLC | | Accounts Payable | -25,500.00 | 44,837.37 |
| | | | Check | 07/06/2016 | ach | Amegy Bank | wire fee | Bank Fees | -15.50 | 44,821.87 |
| | | | Check | 07/12/2016 | ach | Amegy Bank | | Bank Fees | -27.50 | 44,794.37 |
| | | | Check | 07/12/2016 | Trans | Title Rover, LLC | | -SPLIT- | -12,500.00 | 32,294.37 |
| | | | Bill Pmt -Check | 07/12/2016 | Wire | Beyond Review | | Accounts Payable | -16,380.00 | 15,914.37 |
| | | | Check | 07/12/2016 | Trans | Title Rover, LLC | | Title Rover - IT & License Fees | -7,500.00 | 8,414.37 |
| | | | Bill Pmt -Check | 07/20/2016 | Wire | Steve Ervil/SDE Ventures LLC | | Accounts Payable | -4,315.55 | 4,098.82 |
| | | | Check | 07/20/2016 | ach | Amegy Bank | wire fee | Bank Fees | -27.50 | 4,071.32 |
| | | | Check | 07/23/2016 | 3009 | Tom Tatham | Reimb for Meals on July 8 and July 18 psid for in ca | Tom Tatham | -940.00 | 3,131.32 |
| | | | Check | 07/26/2016 | Trans | Title Rover, LLC | | Title Records, Maps & Drafting | -1,000.00 | 2,131.32 |
| | | | Check | 07/28/2016 | Trans | Title Rover, LLC | | Title Records, Maps & Drafting | -2,000.00 | 131.32 |
| | | | Deposit | 07/29/2016 | wire | Gil Lopez | Deposit | Gil Lopez III-25,000 sh | 25,000.00 | 25,131.32 |
| | | | Check | 07/29/2016 | ach | Amegy Bank | wire fee | Bank Fees | -15.50 | 25,115.82 |
| | | | Check | 08/01/2016 | 3012 | Railroad Commission of Texas | Purchase Digital Data | Digital Data | -421.00 | 24,694.82 |
| | | | Bill Pmt -Check | 08/01/2016 | Trans | Title Rover, LLC | | Accounts Payable | -10,000.00 | 14,694.82 |
| | | | Check | 08/02/2016 | 3013 | LNG Partners | Reduce Advances | Tom Tatham | -2,901.47 | 11,793.35 |
| | | | Check | 08/02/2016 | Trans | Title Rover, LLC | August 1-15, 2016 | Title Rover - IT & License Fees | -8,000.00 | 3,793.35 |
| | | | Deposit | 08/05/2016 | | | Deposit | Title Rover - IT & License Fees | 400.00 | 4,193.35 |
| | | | Check | 08/05/2016 | ach | Amegy Bank | | Bank Fees | -19.50 | 4,173.85 |
| | | | Bill Pmt -Check | 08/05/2016 | Wire | Steve Ervil/SDE Ventures LLC | | Accounts Payable | -4,109.30 | 64.55 |
| | | | Deposit | 08/23/2016 | | | Deposit | Willis Group- Jabco | 4,500.00 | 4,564.55 |
| | | | Check | 08/23/2016 | ach | Amegy Bank | | Bank Fees | -15.50 | 4,549.05 |
| | | | Bill Pmt -Check | 08/23/2016 | Wire | Steve Ervil/SDE Ventures LLC | | Accounts Payable | -4,448.40 | 100.65 |

WIL_00001671

Accrual Basis

**Hopewell-Pilot Project, LLC**
**General Ledger**
As of December 31, 2016

| | | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Check | 08/23/2016 | ach | Amegy Bank | | Bank Fees | -19.50 | 81.15 |
| | | | Check | 08/31/2016 | Trans | Tom Tatham | Advance for TS lunch | Tom Tatham | -50.00 | 31.15 |
| | | | Bill Pmt -Check | 09/01/2016 | 4000 | Daniel L. Ellwood PC | | Accounts Payable | -2,892.50 | -2,861.35 |
| | | | Deposit | 09/13/2016 | | | Deposit | EnSource Investment | 205,000.00 | 202,138.65 |
| | | | Check | 09/13/2016 | Trans | Title Rover, LLC | | Title Rover - IT & License Fees | -35,000.00 | 167,138.65 |
| | | | Check | 09/13/2016 | Trans | Title Rover, LLC | | Title Rover - IT & License Fees | -7,500.00 | 159,638.65 |
| | | | Bill Pmt -Check | 09/13/2016 | Trans | PDP Management Group, LLC | | Accounts Payable | -68,250.00 | 91,388.65 |
| | | | Check | 09/13/2016 | Trans | PDP Management Group, LLC | | Tom Tatham | -250.00 | 91,138.65 |
| | | | Bill Pmt -Check | 09/14/2016 | wire | Steve Ervi/SDE Ventures LLC | | Accounts Payable | -4,847.30 | 86,291.35 |
| | | | Check | 09/14/2016 | ach | Amegy Bank | wire fee | Bank Fees | -19.50 | 86,271.85 |
| | | | Bill Pmt -Check | 09/14/2016 | wire | Beyond Review | | Accounts Payable | -24,273.00 | 61,998.85 |
| | | | Check | 09/14/2016 | ach | Amegy Bank | | Bank Fees | -27.50 | 61,971.35 |
| | | | Bill Pmt -Check | 09/14/2016 | Trans | Title Rover, LLC | | Accounts Payable | -25,090.00 | 36,881.35 |
| | | | Bill Pmt -Check | 09/15/2016 | 3014 | Doherty & Doherty | | Accounts Payable | -1,508.41 | 35,372.94 |
| | | | Bill Pmt -Check | 09/15/2016 | 3011 | Jackson, Sjoberg | | Accounts Payable | -10,000.00 | 25,372.94 |
| | | | Bill Pmt -Check | 09/15/2016 | 3010 | Patterson PC | | Accounts Payable | -15,210.21 | 10,162.73 |
| | | | Bill Pmt -Check | 09/15/2016 | wire | Steve Ervi/SDE Ventures LLC | | Accounts Payable | -4,039.95 | 6,122.78 |
| | | | Check | 09/16/2016 | ach | Amegy Bank | wire fee | Bank Fees | -19.50 | 6,103.28 |
| | | | Check | 09/16/2016 | Trans | Title Rover, LLC | | -SPLIT- | -8,000.00 | -1,896.72 |
| | | | Check | 09/30/2016 | ach | Deluxe Bus Systems | checks | Bank Fees | -131.96 | -2,028.68 |
| | | | Bill Pmt -Check | 09/30/2016 | 4001 | Houston Bookkeeping Solutions | | Accounts Payable | -1,450.00 | -3,478.68 |
| | | | Deposit | 09/30/2016 | | | Deposit | EnSource Investment | 20,000.00 | 16,521.32 |
| | | | Check | 10/03/2016 | 4001*a | Houston Bookkeeping Solutions | | Accounting | -1,450.00 | 15,071.32 |
| | | | Bill Pmt -Check | 10/03/2016 | wire | Steve Ervi/SDE Ventures LLC | | Accounts Payable | -4,460.50 | 10,610.82 |
| | | | Bill Pmt -Check | 10/03/2016 | wire | Title Rover, LLC | | Accounts Payable | -7,500.00 | 3,110.82 |
| | | | Check | 10/05/2016 | ach | Amegy Bank | wire fee | Bank Fees | -19.50 | 3,091.32 |
| | | | Bill Pmt -Check | 10/10/2016 | 1001 | Harry P Gamble IV | | Accounts Payable | -7,042.80 | -3,951.48 |
| | | | Deposit | 10/14/2016 | | | Deposit | Accounting | 1,450.00 | -2,501.48 |
| | | | Deposit | 10/14/2016 | | | Deposit | Willis Group- Jabco | 3,000.00 | 498.52 |
| | | | Check | 10/14/2016 | ach | Amegy Bank | wire fee | Bank Fees | -15.50 | 483.02 |
| | | | Check | 10/14/2016 | ach | Amegy Bank | NSF | Bank Fees | -35.00 | 448.02 |
| | | | Check | 10/14/2016 | ach | Amegy Bank | | Bank Fees | -35.00 | 413.02 |
| | | | Deposit | 10/20/2016 | | | Deposit | Willis Group- Jabco | 7,500.00 | 7,913.02 |
| | | | Check | 10/20/2016 | ach | Amegy Bank | wire fee | Bank Fees | -15.50 | 7,897.52 |
| | | | Bill Pmt -Check | 10/20/2016 | wire | Title Rover, LLC | | Accounts Payable | -7,500.00 | 397.52 |
| | | | Deposit | 10/28/2016 | | | Deposit | EnSource Investment | 205,000.00 | 205,397.52 |
| | | | Bill Pmt -Check | 10/28/2016 | wire | Steve Ervi/SDE Ventures LLC | | Accounts Payable | -4,397.70 | 200,999.82 |
| | | | Check | 10/28/2016 | ach | Amegy Bank | wire fee | Bank Fees | -19.50 | 200,980.32 |
| | | | Bill Pmt -Check | 10/28/2016 | wire | Beyond Review | | Accounts Payable | -26,275.50 | 174,704.82 |
| | | | Bill Pmt -Check | 10/28/2016 | | PDP Management Group, LLC | | Accounts Payable | -32,250.00 | 142,454.82 |
| | | | General Journal | 10/28/2016 | 67 | Tom Tatham | wire for business expenses paid on TPT Credit Card | Tom Tatham | -3,162.03 | 139,292.79 |
| | | | Check | 10/28/2016 | ach | Amegy Bank | wire fee | Bank Fees | -27.50 | 139,265.29 |

Page 3 of 26

**Accrual Basis**

**Hopewell-Pilot Project, LLC**
**General Ledger**
**As of December 31, 2016**

| | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|
| | Check | 10/28/2016 | ach | Amegy Bank | wire fee | Bank Fees | -27.50 | 139,237.79 |
| | Check | 10/28/2016 | 1 | Willis Group | | Willis Group- Jabco | -15,000.00 | 124,237.79 |
| | Bill Pmt -Check | 11/01/2016 | wire | Steve Ervil/SDE Ventures LLC | | Accounts Payable | -4,491.70 | 119,746.09 |
| | Bill Pmt -Check | 11/01/2016 | wire | PDP Management Group, LLC | | Accounts Payable | -29,250.00 | 90,496.09 |
| | Check | 11/01/2016 | ach | Amegy Bank | wire fee | Bank Fees | -19.50 | 90,476.59 |
| | Check | 11/01/2016 | ach | Amegy Bank | | Bank Fees | -27.50 | 90,449.09 |
| | Bill Pmt -Check | 11/01/2016 | wire | Title Rover, LLC | | Accounts Payable | -7,500.00 | 82,949.09 |
| | Check | 11/01/2016 | wire | Title Rover, LLC | | Title Rover - IT & License Fees | -17,500.00 | 65,449.09 |
| | Bill Pmt -Check | 11/01/2016 | Wire | Image Engine | | Accounts Payable | -24,000.00 | 41,449.09 |
| | Check | 11/02/2016 | 1002 | Hopewell Pilot Project LLC | open account | LAF Restricted Cash Account | -1,000.00 | 40,449.09 |
| | Bill Pmt -Check | 11/04/2016 | 1003 | Harry P Gamble IV | | Accounts Payable | -10,464.60 | 29,984.49 |
| | Bill Pmt -Check | 11/07/2016 | 1004 | Jackson, Sjoberg | | Accounts Payable | -11,854.67 | 18,129.82 |
| | Bill Pmt -Check | 11/07/2016 | 1005 | Doherty & Doherty | | Accounts Payable | -3,570.00 | 14,559.82 |
| | Check | 11/10/2016 | 1006 | Tom Tatham | Madisonville trip, car, gas, meals | Tom Tatham- Misc | -526.81 | 14,033.01 |
| | Bill Pmt -Check | 11/16/2016 | wire | Title Rover, LLC | | Accounts Payable | -17,500.00 | -3,466.99 |
| | Bill Pmt -Check | 11/16/2016 | wire | PDP Management Group, LLC | | Accounts Payable | -7,250.00 | -10,716.99 |
| | Check | 11/23/2016 | ach | Amegy Bank | wire fee | Bank Fees | -19.50 | -10,736.49 |
| | Bill Pmt -Check | 11/23/2016 | wire | Steve Ervil/SDE Ventures LLC | | Accounts Payable | -4,046.75 | -14,783.24 |
| | Check | 12/02/2016 | 1011 | Kristin E. Day Hardwig | Lease Bonus | OGM Lease & Mineral Interests | -10,250.00 | -25,033.24 |
| | Check | 12/02/2016 | 1013 | KDH Trustee Joan Day Poorman Trust | Lease Bonus | OGM Lease & Mineral Interests | -10,250.00 | -35,283.24 |
| | Check | 12/05/2016 | 1010 | Tom Tatham | | Tom Tatham- Misc | -923.49 | -36,206.73 |
| | Bill Pmt -Check | 12/05/2016 | 1007 | Harry P Gamble IV | | Accounts Payable | -9,700.56 | -45,907.29 |
| | Bill Pmt -Check | 12/05/2016 | Trans | Title Rover, LLC | | Accounts Payable | -17,500.00 | -63,407.29 |
| | Deposit | 12/05/2016 | | | Deposit | LAF Restricted Cash Account | 86,000.00 | 22,592.71 |
| | Check | 12/05/2016 | ach | Amegy Bank | wire fee | Bank Fees | -19.50 | 22,573.21 |
| | Check | 12/13/2016 | 1014 | Madison County Clerk | | Title Records, Maps & Drafting | -282.00 | 22,291.21 |
| | Bill Pmt -Check | 12/13/2016 | Trans | PDP Management Group, LLC | | Accounts Payable | -22,000.00 | 291.21 |
| | Bill Pmt -Check | 12/13/2016 | wire | Steve Ervil/SDE Ventures LLC | | Accounts Payable | -2,000.00 | -1,708.79 |
| | Bill Pmt -Check | 12/20/2016 | Trans | PDP Management Group, LLC | | Accounts Payable | -7,750.00 | -9,458.79 |
| | Check | 12/20/2016 | Trans | Title Rover, LLC | Reimburse bank fees | Bank Fees | -11.21 | -9,470.00 |
| | Check | 12/27/2016 | 1018 | Tom Tatham | | Tom Tatham | -719.00 | -10,189.00 |
| | General Journal | 12/31/2016 | 89 | | Record contingent deferred payment to Kristin E. Da... | OGM Lease & Mineral Interests- | 10,250.00 | 61.00 |
| | | | | | | | 61.00 | 61.00 |
| **Total Amegy Bank** | | | | | | | 61.00 | 61.00 |
| **LAF Restricted Cash Account** | | | | | | | | 0.00 |
| | Deposit | 11/01/2016 | | | Deposit | SMW Investments | 500,000.00 | 500,000.00 |
| | Check | 11/02/2016 | 1002 | Hopewell Pilot Project LLC | open account | Amegy Bank | 1,000.00 | 501,000.00 |
| | Check | 12/01/2016 | ach | Prosperity Bank | checks | Bank Fees | -102.06 | 500,897.94 |
| | Deposit | 12/05/2016 | | | Advance for pending OGM transactions | Amegy Bank | -86,000.00 | 414,897.94 |
| | Check | 12/21/2016 | 1 | LAF - Payment | | SMW Investments | -400,000.00 | 14,897.94 |
| **Total LAF Restricted Cash Account** | | | | | | | 14,897.94 | 14,897.94 |
| **Accounts Receivable** | | | | | | | | 0.00 |
| **Total Accounts Receivable** | | | | | | | | 0.00 |

WIL_00001673
Page 467

Accrual Basis

**Hopewell-Pilot Project, LLC**
**General Ledger**
**As of December 31, 2016**

| | | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **Computers** | | | | | | | | | | 0.00 |
| | Total Computers | | | | | | | | | 0.00 |
| **Monitors** | | | | | | | | | | 0.00 |
| | Total Monitors | | | | | | | | | 0.00 |
| **Subscription Receivable-IAE Shr** | | | | | | | | | | 0.00 |
| | | | General Journal | 11/30/2016 | 76 | | Subs Receivable Ensource | EnSource Investment | 100,000.00 | 100,000.00 |
| | Total Subscription Receivable-IAE Shr | | | | | | | | 100,000.00 | 100,000.00 |
| **Title Rover LLC** | | | | | | | | | | 0.00 |
| | | | General Journal | 05/06/2016 | 49 | PDP Management Group, LLC | Funds from Jabco for Hopewall, deposits into Title | -SPLIT- | 27,000.00 | 27,000.00 |
| | | | General Journal | 05/06/2016 | 49 | PDP Management Group, LLC | PDP Management paid from Title Rover | Title Rover LLC | -22,500.00 | 4,500.00 |
| | | | Deposit | 05/18/2016 | | Title Rover, LLC | Michael Forhan investment wired to Title Rover in er | Amegy Bank | -4,500.00 | 0.00 |
| | Total Title Rover LLC | | | | | | | | 0.00 | 0.00 |
| **Deposits** | | | | | | | | | | 0.00 |
| | Total Deposits | | | | | | | | | 0.00 |
| **IT License Rights/Project Data** | | | | | | | | | | 0.00 |
| | | | General Journal | 04/04/2016 | 84 | | | Founders Shares-1,000,000 sh | 1.00 | 1.00 |
| | Total IT License Rights/Project Data | | | | | | | | 1.00 | 1.00 |
| **OGM Lease & Mineral Interests** | | | | | | | | | | 0.00 |
| | | | Check | 12/02/2016 | 1011 | Kristin E. Day Hardwig | Lease Bonus | Amegy Bank | 10,250.00 | 10,250.00 |
| | | | Check | 12/02/2016 | 1013 | KDH Trustee Joan Day Poorman Trust | Lease Bonus | Amegy Bank | 10,250.00 | 20,500.00 |
| | Total OGM Lease & Mineral Interests | | | | | | | | 20,500.00 | 20,500.00 |
| **Accounts Payable** | | | | | | | | | | 0.00 |
| | | | Bill | 04/06/2016 | 98087 | Doherty & Doherty | | Doherty & Doherty LLP | -630.97 | -630.97 |
| | | | Bill | 04/19/2016 | 157921 | Beyond Review | | Beyond Review | -652.50 | -1,283.47 |
| | | | Bill | 04/19/2016 | 157922 | Beyond Review | | Beyond Review | -765.00 | -2,048.47 |
| | | | Bill | 04/26/2016 | 157942 | Beyond Review | | Beyond Review | -1,899.00 | -3,947.47 |
| | | | Bill | 04/26/2016 | 157341 | Beyond Review | | Beyond Review | -1,264.50 | -5,211.97 |
| | | | Bill | 04/29/2016 | 21001 | Daniel L. Ellwood PC | | Daniel Ellwood PC | -5,000.00 | -10,211.97 |
| | | | Bill | 04/29/2016 | | Houston Bookkeeping Solutions | | Accounting | -250.00 | -10,461.97 |
| | | | Bill | 04/29/2016 | | Steve Ervi/SDE Ventures LLC | | -SPLIT- | -4,219.45 | -14,681.42 |
| | | | Bill | 04/29/2016 | | Willis Group | | Office Equipment | -4,719.87 | -19,401.29 |
| | | | Bill | 04/30/2016 | 157965 | Beyond Review | | Beyond Review | -2,133.00 | -21,534.29 |
| | | | Bill | 04/30/2016 | 157964 | Beyond Review | | Beyond Review | -2,088.00 | -23,622.29 |
| | | | Bill | 04/30/2016 | | Carlos Manrique | | Title Records, Maps & Drafting | -2,200.00 | -25,822.29 |
| | | | Bill | 04/30/2016 | | Willis Group | | Office Expense/ Supplies | -250.00 | -26,072.29 |
| | | | Bill | 04/30/2016 | | Willis Group | | Office Expense/ Supplies | -811.88 | -26,884.17 |
| | | | Bill Pmt -Check | 05/05/2016 | 3000 | Daniel L. Ellwood PC | | Amegy Bank | 5,000.00 | -21,884.17 |
| | | | Bill Pmt -Check | 05/05/2016 | 3001 | Carlos Manrique | | Amegy Bank | 2,200.00 | -19,684.17 |
| | | | Bill Pmt -Check | 05/05/2016 | Wire | Steve Ervi/SDE Ventures LLC | | Amegy Bank | 4,219.45 | -15,464.72 |
| | | | Bill | 05/10/2016 | 157976 | Beyond Review | | Beyond Review | -1,773.00 | -17,237.72 |
| | | | Bill | 05/10/2016 | 157977 | Beyond Review | | Beyond Review | -1,732.50 | -18,970.22 |
| | | | Bill | 05/17/2016 | 157996 | Beyond Review | | Beyond Review | -2,029.50 | -20,999.72 |

WIL_00001674
Page 468

Accrual Basis

**Hopewell-Pilot Project, LLC**
**General Ledger**
**As of December 31, 2016**

| | | | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Bill | 05/17/2016 | 157997 | Beyond Review | | Beyond Review | -2,043.00 | -23,042.72 |
| | | | | Bill | 05/24/2016 | 158019 | Beyond Review | | Beyond Review | -1,872.00 | -24,914.72 |
| | | | | Bill | 05/24/2016 | 158020 | Beyond Review | | Beyond Review | -2,398.50 | -27,313.22 |
| | | | | Bill | 05/30/2016 | | Greg Kane | April 16-30, 2016 | -SPLIT- | -4,551.56 | -31,864.78 |
| | | | | Bill | 05/31/2016 | | Meridan Capital Advisors | | Investment Banking | -10,000.00 | -41,864.78 |
| | | | | Bill | 05/31/2016 | | Jackson, Sjoberg | | Jackson Sjoberg LLP | -10,000.00 | -51,864.78 |
| | | | | Bill | 05/31/2016 | May 16-31 | Steve Ervi/SDE Ventures LLC | | Steve Ervi | -4,543.00 | -56,407.78 |
| | | | | Bill | 05/31/2016 | | PDP Management Group, LLC | | PDP Management Group LLC | -28,500.00 | -84,907.78 |
| | | | | Bill | 05/31/2016 | 158041 | Beyond Review | | Beyond Review | -1,728.00 | -86,635.78 |
| | | | | Bill | 05/31/2016 | 158042 | Beyond Review | | Beyond Review | -1,840.50 | -88,476.28 |
| | | | | Bill | 05/31/2016 | | Carlos Manrique | | Title Records, Maps & Drafting | -2,000.00 | -90,476.28 |
| | | | | Bill Pmt -Check | 06/01/2016 | 3004 | Houston Bookkeeping Solutions | | Amegy Bank | 250.00 | -90,226.28 |
| | | | | Bill | 06/01/2016 | | Title Rover, LLC | | Title Rover - IT & License Fees | -17,500.00 | -107,726.28 |
| | | | | Bill | 06/01/2016 | Hope 2016-2 | Houston Bookkeeping Solutions | | Accounting | -250.00 | -107,976.28 |
| | | | | Bill | 06/01/2016 | | Doherty & Doherty | | Doherty & Doherty LLP | -4,961.25 | -112,937.53 |
| | | | | Bill Pmt -Check | 06/02/2016 | Trans | Title Rover, LLC | | Amegy Bank | 17,500.00 | -95,437.53 |
| | | | | Bill Pmt -Check | 06/06/2016 | Wire | Steve Ervi/SDE Ventures LLC | | Amegy Bank | 4,543.00 | -90,894.53 |
| | | | | Bill Pmt -Check | 06/06/2016 | Trans | PDP Management Group, LLC | | Amegy Bank | 500.00 | -90,394.53 |
| | | | | Bill Pmt -Check | 06/06/2016 | Trans | PDP Management Group, LLC | | Amegy Bank | 20,000.00 | -70,394.53 |
| | | | | Bill | 06/07/2016 | 158067 | Beyond Review | | Beyond Review | -1,557.00 | -71,951.53 |
| | | | | Bill | 06/07/2016 | 158066 | Beyond Review | | Beyond Review | -1,642.50 | -73,594.03 |
| | | | | Bill | 06/07/2016 | 96087 | Doherty & Doherty | | Doherty & Doherty LLP | -2,357.26 | -75,951.29 |
| | | | | Bill | 06/14/2016 | 158095 | Beyond Review | | Beyond Review | -1,935.00 | -77,886.29 |
| | | | | Bill | 06/14/2016 | 158096 | Beyond Review | | Beyond Review | -1,957.50 | -79,843.79 |
| | | | | Bill | 06/20/2016 | | Steve Ervi/SDE Ventures LLC | | -SPLIT- | -4,436.30 | -84,280.09 |
| | | | | Bill Pmt -Check | 06/20/2016 | wire | Steve Ervi/SDE Ventures LLC | June 1 - 15, 2016 | Amegy Bank | 4,436.30 | -79,843.79 |
| | | | | Bill | 06/21/2016 | 158133 | Beyond Review | | Beyond Review | -1,764.00 | -81,607.79 |
| | | | | Bill | 06/21/2016 | 158134 | Beyond Review | | Beyond Review | -1,890.00 | -83,497.79 |
| | | | | Bill | 06/28/2016 | 158161 | Beyond Review | | Beyond Review | -1,156.50 | -84,654.29 |
| | | | | Bill | 06/28/2016 | 1581.62 | Beyond Review | | Beyond Review | -1,152.00 | -85,806.29 |
| | | | | Bill | 06/30/2016 | Hope 2016-3 | Houston Bookkeeping Solutions | | Accounting | -250.00 | -86,056.29 |
| | | | | Bill Pmt -Check | 06/30/2016 | Trans | PDP Management Group, LLC | | Amegy Bank | 8,000.00 | -78,056.29 |
| | | | | Bill | 06/30/2016 | 6-16-30-2016 | Steve Ervi/SDE Ventures LLC | | Steve Ervi | -4,400.00 | -82,456.29 |
| | | | | Bill | 06/30/2016 | | Linda Meiske | | Linda Meiske | -1,875.00 | -84,331.29 |
| | | | | Bill | 06/30/2016 | | Linda Meiske | | Office Equipment | -204.10 | -84,535.39 |
| | | | | Bill | 06/30/2016 | acc | PDP Management Group, LLC | | -SPLIT- | -25,500.00 | -110,035.39 |
| | | | | Bill Pmt -Check | 06/30/2016 | 3006 | Linda Meiske | | Amegy Bank | 2,079.10 | -107,956.29 |
| | | | | Bill | 06/30/2016 | | Patterson PC | | Patterson PC | -10,888.19 | -118,844.48 |
| | | | | Bill | 06/30/2016 | 201606-1038 | Image Engine | | Image Engine - Imaging | -18,227.75 | -137,072.23 |
| | | | | Bill | 06/30/2016 | 2016606-1037 | Image Engine | | Image Engine - Imaging | -1,617.90 | -138,690.13 |
| | | | | Bill Pmt -Check | 07/01/2016 | 3006 | Doherty & Doherty | | Amegy Bank | 5,392.22 | -133,297.91 |
| | | | | Bill | 07/05/2016 | 158171 | Beyond Review | | Beyond Review | -1,453.50 | -134,751.41 |

WIL_00001675

Accrual Basis

**Hopewell-Pilot Project, LLC**
**General Ledger**
As of December 31, 2016

| | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| | | Bill | 07/05/2016 | 158172 | Beyond Review | | Beyond Review | -1,926.00 | -136,677.41 |
| | | Bill Pmt -Check | 07/05/2016 | wire | Steve Ervi/SDE Ventures LLC | | Amegy Bank | 4,400.00 | -132,277.41 |
| | | Bill Pmt -Check | 07/06/2016 | Wire | PDP Management Group, LLC | | Amegy Bank | 25,500.00 | -106,777.41 |
| | | Bill | 07/12/2016 | 158227 | Beyond Review | | Beyond Review | -1,521.00 | -108,298.41 |
| | | Bill | 07/12/2016 | 158226 | Beyond Review | | Beyond Review | -1,620.00 | -109,918.41 |
| | | Bill Pmt -Check | 07/12/2016 | Wire | Beyond Review | | Amegy Bank | 16,380.00 | -93,538.41 |
| | | Check | 07/12/2016 | Trans | Carlos Manrique | To repay for payment made by Title Rover to Carlos | Amegy Bank | 2,000.00 | -91,538.41 |
| | | Bill | 07/15/2016 | July 1-15-2016 | Steve Ervi/SDE Ventures LLC | | -SPLIT- | -4,315.55 | -95,853.96 |
| | | Bill | 07/18/2016 | July 1-15-16 | PDP Management Group, LLC | | PDP Management Group LLC | -17,250.00 | -113,103.96 |
| | | Bill | 07/19/2016 | 158260 | Beyond Review | | Beyond Review | -1,723.50 | -114,827.46 |
| | | Bill | 07/19/2016 | 158261 | Beyond Review | | Beyond Review | -1,764.00 | -116,591.46 |
| | | Bill Pmt -Check | 07/20/2016 | Wire | Steve Ervi/SDE Ventures LLC | | Amegy Bank | 4,315.55 | -112,275.91 |
| | | Bill | 07/23/2016 | | Image Engine | | Image Engine - Imaging | -24,864.66 | -137,140.77 |
| | | Bill | 07/26/2016 | July 16-29-2016 | Steve Ervi/SDE Ventures LLC | | -SPLIT- | -4,109.30 | -141,250.07 |
| | | Bill | 07/27/2016 | 158266 | Beyond Review | | Beyond Review | -1,768.50 | -143,018.57 |
| | | Bill | 07/27/2016 | 158269 | Beyond Review | | Beyond Review | -2,029.50 | -145,048.07 |
| | | Bill | 07/28/2016 | | Title Rover, LLC | | Title Rover - IT & License Fees | -10,000.00 | -155,048.07 |
| | | Bill | 07/29/2016 | Hope-2016-4 | Houston Bookkeeping Solutions | | Accounting | -250.00 | -155,298.07 |
| | | Bill | 07/29/2016 | July 16-31-16 | PDP Management Group, LLC | | PDP Management Group LLC | -15,000.00 | -170,298.07 |
| | | Bill | 07/29/2016 | 21055 | Daniel L. Ellwood PC | | Daniel Ellwood PC | -2,892.50 | -173,190.57 |
| | | Bill | 07/29/2016 | | Willis Group | | Office Expense/ Supplies | -5,000.00 | -178,190.57 |
| | | Bill | 07/31/2016 | 158335 | Beyond Review | | Beyond Review | -1,440.00 | -179,630.57 |
| | | Bill | 07/31/2016 | 158336 | Beyond Review | | Beyond Review | -2,182.50 | -181,813.07 |
| | | Bill | 07/31/2016 | 201607-1045 | Image Engine | | Image Engine - Imaging | -11,112.68 | -192,925.75 |
| | | Bill | 08/01/2016 | | Patterson PC | | -SPLIT- | -474.52 | -193,400.27 |
| | | Bill Pmt -Check | 08/01/2016 | Trans | Title Rover, LLC | | Amegy Bank | 10,000.00 | -183,400.27 |
| | | Bill Pmt -Check | 08/01/2016 | Wire | Steve Ervi/SDE Ventures LLC | | Amegy Bank | 4,109.30 | -179,290.97 |
| | | Bill | 08/16/2016 | 158412 | Beyond Review | | Beyond Review | -1,395.00 | -180,685.97 |
| | | Bill | 08/16/2016 | 158413 | Beyond Review | | Beyond Review | -1,822.50 | -182,508.47 |
| | | Bill | 08/16/2016 | 158414 | Beyond Review | | Beyond Review | -1,755.00 | -184,263.47 |
| | | Bill | 08/16/2016 | Aug 1-15-16 | PDP Management Group, LLC | | PDP Management Group LLC | -15,000.00 | -199,263.47 |
| | | Bill | 08/16/2016 | | Willis Group | | Office Expense/ Supplies | -2,500.00 | -201,763.47 |
| | | Credit | 08/19/2016 | | Greg Kane | | -SPLIT- | 4,551.56 | -197,211.91 |
| | | Bill | 08/23/2016 | Aug 1-15, 2016 | Steve Ervi/SDE Ventures LLC | | -SPLIT- | -4,448.40 | -201,660.31 |
| | | Bill Pmt -Check | 08/23/2016 | Wire | Steve Ervi/SDE Ventures LLC | | Amegy Bank | 4,448.40 | -197,211.91 |
| | | Bill | 08/23/2016 | 158453 | Beyond Review | | Beyond Review | -1,876.50 | -199,088.41 |
| | | Bill | 08/23/2016 | 158452 | Beyond Review | | Beyond Review | -1,836.00 | -200,924.41 |
| | | Bill | 08/24/2016 | | Patterson PC | | Patterson PC | -3,847.50 | -204,771.91 |
| | | Bill | 08/30/2016 | 158489 | Beyond Review | | Beyond Review | -1,755.00 | -206,526.91 |
| | | Bill | 08/30/2016 | 158490 | Beyond Review | | Beyond Review | -1,786.50 | -208,313.41 |
| | | Bill | 08/31/2016 | Hope 2016-5 | Houston Bookkeeping Solutions | | Accounting | -350.00 | -208,663.41 |
| | | Bill | 08/31/2016 | Aug16-31-16 | PDP Management Group, LLC | | PDP Management Group LLC | -21,000.00 | -229,663.41 |

WIL_00001676
Page 470

Accrual Basis

**Hopewell-Pilot  Project, LLC**
**General Ledger**
As of December 31, 2016

| | | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Bill | 08/31/2016 | | Willis Group | | Office Expense/ Supplies | -2,500.00 | -232,163.41 |
| | | | Bill | 08/31/2016 | | Steve Ervi/SDE Ventures LLC | | -SPLIT- | -4,847.30 | -237,010.71 |
| | | | Bill | 08/31/2016 | | Title Rover, LLC | | Title Rover - IT & License Fees | -17,500.00 | -254,510.71 |
| | | | Bill | 08/31/2016 | | Title Rover, LLC | | Title Rover - IT & License Fees | -7,500.00 | -262,010.71 |
| | | | Bill | 08/31/2016 | | Doherty & Doherty | | Doherty & Doherty LLP | -262.50 | -262,273.21 |
| | | | Bill | 09/01/2016 | | Steve Ervi/SDE Ventures LLC | | -SPLIT- | -4,039.95 | -266,313.16 |
| | | | Bill | 09/01/2016 | | Title Rover, LLC | | Bank Fees | -90.00 | -266,403.16 |
| | | | Bill | 09/06/2016 | 158536 | Beyond Review | | Beyond Review | -1,746.00 | -268,149.16 |
| | | | Bill | 09/06/2016 | 158537 | Beyond Review | | Beyond Review | -1,804.50 | -269,953.66 |
| | | | Bill Pmt -Check | 09/09/2016 | 4000 | Daniel L. Ellwood PC | | Amegy Bank | 2,892.50 | -267,061.16 |
| | | | Bill | 09/13/2016 | 158577 | Beyond Review | | Beyond Review | -1,404.00 | -268,465.16 |
| | | | Bill | 09/13/2016 | 158578 | Beyond Review | | Beyond Review | -1,462.50 | -269,927.66 |
| | | | Bill Pmt -Check | 09/13/2016 | Trans | PDP Management Group, LLC | | Amegy Bank | 68,250.00 | -201,677.66 |
| | | | Bill Pmt -Check | 09/14/2016 | wire | Steve Ervi/SDE Ventures LLC | | Amegy Bank | 4,847.30 | -196,830.36 |
| | | | Bill Pmt -Check | 09/14/2016 | wire | Beyond Review | | Amegy Bank | 24,273.00 | -172,557.36 |
| | | | Bill Pmt -Check | 09/14/2016 | Trans | Title Rover, LLC | | Amegy Bank | 25,090.00 | -147,467.36 |
| | | | Bill Pmt -Check | 09/15/2016 | 3014 | Doherty & Doherty | | Amegy Bank | 1,508.41 | -145,958.95 |
| | | | Bill Pmt -Check | 09/15/2016 | 3011 | Jackson, Sjoberg | | Amegy Bank | 10,000.00 | -135,958.95 |
| | | | Bill Pmt -Check | 09/15/2016 | 3010 | Patterson PC | | Amegy Bank | 15,210.21 | -120,748.74 |
| | | | Bill Pmt -Check | 09/16/2016 | wire | Steve Ervi/SDE Ventures LLC | | Amegy Bank | 4,039.95 | -116,708.79 |
| | | | Bill | 09/16/2016 | | PDP Management Group, LLC | | PDP Management Group LLC | -15,000.00 | -131,708.79 |
| | | | Bill | 09/16/2016 | | Mark Willis | | Mark Willis | -6,000.00 | -137,708.79 |
| | | | Bill | 09/16/2016 | | Willis Group | | Office Expense/ Supplies | -2,500.00 | -140,208.79 |
| | | | Credit | 09/19/2016 | | Doherty & Doherty | | Willis Group- Jabco | 1,111.35 | -139,097.44 |
| | | | Bill | 09/20/2016 | 158614 | Beyond Review | | Beyond Review | -1,723.50 | -140,820.94 |
| | | | Bill | 09/20/2016 | 158615 | Beyond Review | | Beyond Review | -1,939.50 | -142,760.44 |
| | | | Bill | 09/28/2016 | 158654 | Beyond Review | | Beyond Review | -1,710.00 | -144,470.44 |
| | | | Bill | 09/28/2016 | 158655 | Beyond Review | | Beyond Review | -1,795.50 | -146,265.94 |
| | | | Bill | 09/30/2016 | Hope 2016-6 | Houston Bookkeeping Solutions | | Accounting | -350.00 | -146,615.94 |
| | | | Bill Pmt -Check | 09/30/2016 | 4001 | Houston Bookkeeping Solutions | | Amegy Bank | 1,450.00 | -145,165.94 |
| | | | Bill | 09/30/2016 | | PDP Management Group, LLC | | PDP Management Group LLC | -17,250.00 | -162,415.94 |
| | | | Bill | 09/30/2016 | | Willis Group | | Office Expense/ Supplies | -2,500.00 | -164,915.94 |
| | | | Bill | 09/30/2016 | | Mark Willis | | Mark Willis | -6,000.00 | -170,915.94 |
| | | | Bill | 09/30/2016 | | Harry P Gamble IV | | -SPLIT- | -7,042.80 | -177,958.74 |
| | | | Bill | 09/30/2016 | | Steve Ervi/SDE Ventures LLC | | -SPLIT- | -4,460.50 | -182,419.24 |
| | | | Bill | 09/30/2016 | | Title Rover, LLC | | Title Rover - IT & License Fees | -7,500.00 | -189,919.24 |
| | | | Bill Pmt -Check | 10/03/2016 | wire | Steve Ervi/SDE Ventures LLC | | Amegy Bank | 4,460.50 | -185,458.74 |
| | | | Bill Pmt -Check | 10/03/2016 | wire | Title Rover, LLC | | Amegy Bank | 7,500.00 | -177,958.74 |
| | | | Bill | 10/04/2016 | 158688 | Beyond Review | | Beyond Review | -1,764.00 | -179,722.74 |
| | | | Bill Pmt -Check | 10/10/2016 | 1001 | Harry P Gamble IV | | Amegy Bank | 7,042.80 | -172,679.94 |
| | | | Bill | 10/10/2016 | | Doherty & Doherty | | Doherty & Doherty LLP | -3,570.00 | -176,249.94 |
| | | | Bill | 10/11/2016 | 158723 | Beyond Review | | Beyond Review | -1,755.00 | -178,004.94 |

Accrual Basis

**Hopewell-Pilot Project, LLC**
**General Ledger**
As of December 31, 2016

| | | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Bill | 10/11/2016 | 158724 | Beyond Review | | Beyond Review | -1,809.00 | -179,813.94 |
| | | | Bill | 10/15/2016 | | Steve Ervi/SDE Ventures LLC | | -SPLIT- | -4,397.70 | -184,211.64 |
| | | | Bill | 10/16/2016 | | PDP Management Group, LLC | | PDP Management Group LLC | -13,500.00 | -197,711.64 |
| | | | Bill | 10/16/2016 | | Mark Willis | | Mark Willis | -6,000.00 | -203,711.64 |
| | | | Bill | 10/16/2016 | | Willis Group | | Office Expense/ Supplies | -2,500.00 | -206,211.64 |
| | | | Bill | 10/16/2016 | | Title Rover, LLC | | Title Rover - IT & License Fees | -7,500.00 | -213,711.64 |
| | | | Bill | 10/16/2016 | | Title Rover, LLC | | Title Rover - IT & License Fees | -8,750.00 | -222,461.64 |
| | | | Bill | 10/18/2016 | 158747 | Beyond Review | | Beyond Review | -1,714.50 | -224,176.14 |
| | | | Bill | 10/18/2016 | 158748 | Beyond Review | | Beyond Review | -1,755.00 | -225,931.14 |
| | | | Bill | 10/19/2016 | | Jackson, Sjoberg | | Jackson Sjoberg LLP | -11,854.67 | -237,785.61 |
| | | | Bill Pmt -Check | 10/20/2016 | wire | Title Rover, LLC | | Amegy Bank | 7,500.00 | -230,285.61 |
| | | | Bill | 10/25/2016 | 158780 | Beyond Review | | Beyond Review | -1,786.50 | -232,072.31 |
| | | | Bill | 10/25/2016 | 158779 | Beyond Review | | Beyond Review | -1,710.00 | -233,782.31 |
| | | | Bill Pmt -Check | 10/28/2016 | wire | Steve Ervi/SDE Ventures LLC | | Amegy Bank | 4,397.70 | -229,384.61 |
| | | | Bill Pmt -Check | 10/28/2016 | wire | Beyond Review | | Amegy Bank | 26,275.50 | -203,109.11 |
| | | | Bill Pmt -Check | 10/28/2016 | | PDP Management Group, LLC | | Amegy Bank | 32,250.00 | -170,859.11 |
| | | | Bill | 10/30/2016 | Hope 2016-7 | Houston Bookkeeping Solutions | | Accounting | -350.00 | -171,209.11 |
| | | | Bill | 10/31/2016 | 15680 | Beyond Review | | Beyond Review | -1,125.00 | -172,334.11 |
| | | | Bill | 10/31/2016 | 158799 | Beyond Review | | Beyond Review | -1,705.50 | -174,039.61 |
| | | | Bill | 10/31/2016 | | PDP Management Group, LLC | | PDP Management Group LLC | -15,750.00 | -189,789.61 |
| | | | Bill | 10/31/2016 | | Mark Willis | | Mark Willis | -6,000.00 | -195,789.61 |
| | | | Bill | 10/31/2016 | | Title Rover, LLC | | Title Rover - IT & License Fees | -7,500.00 | -203,289.61 |
| | | | Bill | 10/31/2016 | | Harry P Gamble IV | | -SPLIT- | -10,464.60 | -213,754.21 |
| | | | Bill | 10/31/2016 | | Steve Ervi/SDE Ventures LLC | | -SPLIT- | -4,491.70 | -218,245.91 |
| | | | Bill | 10/31/2016 | | Willis Group | | Office Expense/ Supplies | -2,500.00 | -220,745.91 |
| | | | Bill | 10/31/2016 | | Title Rover, LLC | | Title Rover - IT & License Fees | -8,750.00 | -229,495.91 |
| | | | Bill Pmt -Check | 11/01/2016 | wire | Steve Ervi/SDE Ventures LLC | | Amegy Bank | 4,491.70 | -225,004.21 |
| | | | Bill Pmt -Check | 11/01/2016 | wire | PDP Management Group, LLC | | Amegy Bank | 29,250.00 | -195,754.21 |
| | | | Bill Pmt -Check | 11/01/2016 | wire | Title Rover, LLC | | Amegy Bank | 7,500.00 | -188,254.21 |
| | | | General Journal | 11/01/2016 | 87 | Image Engine | Settlement with Mark Willis of balance owed in regar | Image Engine - Imaging | 32,023.19 | -156,231.02 |
| | | | Bill Pmt -Check | 11/01/2016 | Wire | Image Engine | | Amegy Bank | 24,000.00 | -132,231.02 |
| | | | Bill Pmt -Check | 11/04/2016 | 1003 | Harry P Gamble IV | | Amegy Bank | 10,464.60 | -121,766.42 |
| | | | Bill Pmt -Check | 11/07/2016 | 1004 | Jackson, Sjoberg | | Amegy Bank | 11,854.67 | -109,911.75 |
| | | | Bill Pmt -Check | 11/07/2016 | 1005 | Doherty & Doherty | | Amegy Bank | 3,570.00 | -106,341.75 |
| | | | Bill | 11/08/2016 | | Beyond Review | | Beyond Review | -3,555.00 | -109,896.75 |
| | | | Bill | 11/15/2016 | 158828 | Beyond Review | | Beyond Review | -1,791.00 | -111,687.75 |
| | | | Bill | 11/15/2016 | | Beyond Review | | Beyond Review | -1,750.50 | -113,438.25 |
| | | | Bill Pmt -Check | 11/16/2016 | wire | Title Rover, LLC | | Amegy Bank | 17,500.00 | -95,938.25 |
| | | | Bill | 11/16/2016 | | Steve Ervi/SDE Ventures LLC | | -SPLIT- | -4,046.75 | -99,985.00 |
| | | | Bill | 11/16/2016 | | PDP Management Group, LLC | | PDP Management Group LLC | -17,250.00 | -117,235.00 |
| | | | Bill | 11/16/2016 | | Mark Willis | | Mark Willis | -6,000.00 | -123,235.00 |
| | | | Bill | 11/16/2016 | | Willis Group | | Office Expense/ Supplies | -2,500.00 | -125,735.00 |

Accrual Basis

**Hopewell-Pilot  Project, LLC**
**General Ledger**
As of December 31, 2016

| | | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Bill Pmt -Check | 11/16/2016 | wire | PDP Management Group, LLC | | Amegy Bank | 7,250.00 | -118,485.00 |
| | | | Bill | 11/23/2016 | 158859 | Beyond Review | | Beyond Review | -1,786.50 | -120,271.50 |
| | | | Bill | 11/23/2016 | 158858 | Beyond Review | | Beyond Review | -1,629.00 | -121,900.50 |
| | | | Bill Pmt -Check | 11/23/2016 | wire | Steve Ervi/SDE Ventures LLC | | Amegy Bank | 4,046.75 | -117,853.75 |
| | | | Bill | 11/30/2016 | | PDP Management Group, LLC | | PDP Management Group LLC | -12,000.00 | -129,853.75 |
| | | | Bill | 11/30/2016 | | Mark Willis | | Mark Willis | -6,000.00 | -135,853.75 |
| | | | Bill | 11/30/2016 | | Harry P Gamble IV | | -SPLIT- | -9,700.56 | -145,554.31 |
| | | | Bill | 11/30/2016 | | Steve Ervi/SDE Ventures LLC | | Steve Ervi | -2,000.00 | -147,554.31 |
| | | | Bill | 11/30/2016 | 11552 | Jackson, Sjoberg | | -SPLIT- | -5,386.58 | -152,940.89 |
| | | | Bill | 11/30/2016 | | Beyond Review | | Beyond Review | -720.00 | -153,660.89 |
| | | | Credit | 11/30/2016 | | Meridan Capital Advisors | | Investment Banking | 10,000.00 | -143,660.89 |
| | | | Bill | 11/30/2016 | | Willis Group | | Office Expense/ Supplies | -2,500.00 | -146,160.89 |
| | | | Bill | 11/30/2016 | Hope 2016-8 | Houston Bookkeeping Solutions | | Accounting | -350.00 | -146,510.89 |
| | | | Bill | 11/30/2016 | | Jackson, Sjoberg | | Jackson Sjoberg LLP | -15,725.00 | -162,235.89 |
| | | | Bill Pmt -Check | 12/05/2016 | 1007 | Harry P Gamble IV | | Amegy Bank | 9,700.56 | -152,535.33 |
| | | | Bill | 12/05/2016 | | Title Rover, LLC | | Title Rover - IT & License Fees | -17,500.00 | -170,035.33 |
| | | | Bill Pmt -Check | 12/05/2016 | Trans | Title Rover, LLC | | Amegy Bank | 17,500.00 | -152,535.33 |
| | | | Bill | 12/06/2016 | 15888 | Beyond Review | | Beyond Review | -1,813.50 | -154,348.83 |
| | | | Bill | 12/06/2016 | 15887 | Beyond Review | | Beyond Review | -1,084.50 | -155,433.33 |
| | | | Bill Pmt -Check | 12/13/2016 | Trans | PDP Management Group, LLC | | Amegy Bank | 22,000.00 | -133,433.33 |
| | | | Bill Pmt -Check | 12/13/2016 | wire | Steve Ervi/SDE Ventures LLC | | Amegy Bank | 2,000.00 | -131,433.33 |
| | | | Bill | 12/15/2016 | Hope 2016-9 | Houston Bookkeeping Solutions | | Accounting | -350.00 | -131,783.33 |
| | | | Bill | 12/15/2016 | | Harry P Gamble IV | | Hank Gamble | -4,250.00 | -136,033.33 |
| | | | Bill | 12/15/2016 | | Mark Willis | | Mark Willis | -6,000.00 | -142,033.33 |
| | | | Bill | 12/15/2016 | | PDP Management Group, LLC | | PDP Management Group LLC | -15,750.00 | -157,783.33 |
| | | | Bill | 12/15/2016 | | Willis Group | | Office Expense/ Supplies | -2,500.00 | -160,283.33 |
| | | | Bill Pmt -Check | 12/20/2016 | Trans | PDP Management Group, LLC | | Amegy Bank | 7,750.00 | -152,533.33 |
| | | | Bill | 12/30/2016 | Hope201-10 | Houston Bookkeeping Solutions | | Accounting | -1,000.00 | -153,533.33 |
| | | | Bill | 12/31/2016 | | PDP Management Group, LLC | | PDP Management Group LLC | -14,250.00 | -167,783.33 |
| | | | Bill | 12/31/2016 | | Mark Willis | | Mark Willis | -6,000.00 | -173,783.33 |
| | | | Bill | 12/31/2016 | | Willis Group | | Office Expense/ Supplies | -2,500.00 | -176,283.33 |
| | | | Bill | 12/31/2016 | | Harry P Gamble IV | | -SPLIT- | -537.54 | -176,820.87 |
| | Total Accounts Payable | | | | | | | | -176,820.87 | -176,820.87 |
| | **Accrued Payments** | | | | | | | | | 0.00 |
| | Total Accrued Payments | | | | | | | | | 0.00 |
| | **Accured Interest** | | | | | | | | | 0.00 |
| | | | General Journal | 11/30/2016 | 70 | | 123.29/d x 25 under LAF credit facility | Interest Expense | -3,082.19 | -3,082.19 |
| | | | General Journal | 12/15/2016 | 72 | | Accured interest Dec 1-15, 2016 | Interest Expense | -1,849.35 | -4,931.54 |
| | | | General Journal | 12/31/2016 | 90 | LAF - Interest | LAF accured interest Dec 16-31, 2016 $123.29/d x 8 | Interest Expense | -986.32 | -5,917.86 |
| | Total Accured Interest | | | | | | | | -5,917.86 | -5,917.86 |
| | **Advances - WG/Jabco/MAW** | | | | | | | | | 0.00 |
| | | Jabco CC and Misc | | | | | | | | 0.00 |

WIL_00001679
**Page 473**

Accrual Basis

**Hopewell-Pilot  Project, LLC**
**General Ledger**
As of December 31, 2016

| | | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | Total Jabco CC and Misc | | | | | | | | | 0.00 |
| | **Mark Willis** | | | | | | | | | **0.00** |
| | Total Mark Willis | | | | | | | | | 0.00 |
| | **Willis Group- Wires** | | | | | | | | | **0.00** |
| | Total Willis Group- Wires | | | | | | | | | 0.00 |
| | **Willis Group CC and Misc** | | | | | | | | | **0.00** |
| | Total Willis Group CC and Misc | | | | | | | | | 0.00 |
| | **Advances - WGI/Jabco/MAW - Other** | | | | | | | | | **0.00** |
| | Total Advances - WGI/Jabco/MAW - Other | | | | | | | | | 0.00 |
| Total Advances - WGI/Jabco/MAW | | | | | | | | | | 0.00 |
| **Advances from Managers/Shrhldrs** | | | | | | | | | | **0.00** |
| | **Doug Schroeder** | | | | | | | | | **0.00** |
| | | | General Journal | 03/02/2016 | 1 | Doug Schroeder | Prior advances to Greg Kane | Greg Kane | -30,000.00 | -30,000.00 |
| | | | General Journal | 05/31/2016 | 27 | | March 23, 2016 entry due to termination with Kane | Greg Kane | 30,000.00 | 0.00 |
| | Total Doug Schroeder | | | | | | | | 0.00 | 0.00 |
| | **Tom Tatham** | | | | | | | | | **0.00** |
| | | | General Journal | 03/28/2016 | 46 | | Record TPT's time charges for January 2016 consul | Consulting Services | -11,375.00 | -11,375.00 |
| | | | General Journal | 03/30/2016 | 8 | Tom Tatham | Lunch at ROCC - T Bowman, GK, MAW, TPT - Cas | Business Entertainment | -478.74 | -11,853.74 |
| | | | General Journal | 03/31/2016 | 10 | Tom Tatham | Cash Advance Greg Kane for Travel/Lodging from T | Travel / Lodging | -75.00 | -11,928.74 |
| | | | General Journal | 04/01/2016 | 11 | Tom Tatham | La Quinta Inn - Greg Kane - TPT MC | Travel / Lodging | -174.33 | -12,103.07 |
| | | | General Journal | 04/01/2016 | 12 | Tom Tatham | La Quinta Inn - Greg Kane - TPT MC | Travel / Lodging | -360.36 | -12,463.43 |
| | | | General Journal | 04/01/2016 | 13 | Tom Tatham | P2 Energy Solutions - Madison County Maps - TPT | Digital Data | -834.60 | -13,298.03 |
| | | | General Journal | 04/01/2016 | 14 | Tom Tatham | Lunch Peska - Brent Stanley, TPT - TPT MC | Business Entertainment | -40.00 | -13,338.03 |
| | | | Deposit | 04/04/2016 | | Tom Tatham | Open Amegy Demand A/C | Amegy Bank | -100.00 | -13,438.03 |
| | | | General Journal | 04/06/2016 | 15 | Tom Tatham | P2 Energy Solutions - Madison county Digital Data - | Digital Data | -759.92 | -14,197.95 |
| | | | General Journal | 04/16/2016 | 19 | Tom Tatham | Cosco printer & Cartridge TPT MC ( WG conference | Office Expense/ Supplies | -420.59 | -14,618.54 |
| | | | General Journal | 04/22/2016 | 23 | Tom Tatham | TRRC  Well Layer Data - Madison, Walker & Houstc | Title Records, Maps & Drafting | -227.00 | -14,845.54 |
| | | | Deposit | 05/03/2016 | | Tom Tatham | From LNG to cover Dan Elwood | Amegy Bank | -5,000.00 | -19,845.54 |
| | | | Deposit | 05/13/2016 | | Tom Tatham | From LNG | Amegy Bank | -6,000.00 | -25,845.54 |
| | | | Deposit | 05/18/2016 | | Tom Tatham | LNG | Amegy Bank | -2,000.00 | -27,845.54 |
| | | | General Journal | 06/01/2016 | 26 | Tom Tatham | Lunch Pesks, Brent S, Lauren M, Jenn B, TPT - paid | Business Entertainment | -154.23 | -27,999.77 |
| | | | General Journal | 06/01/2016 | 26 | Tom Tatham | Madison co Clerk - paid TPT credit card | Business Entertainment | -19.00 | -28,018.77 |
| | | | General Journal | 06/02/2016 | 29 | Madison County Clerk | TPT Credit Card | Title Records, Maps & Drafting | -19.00 | -28,037.77 |
| | | | General Journal | 06/07/2016 | 30 | | Lunch @ Peska, Tiger Stripe Resources, TPT,MAW | Business Entertainment | -165.00 | -28,202.77 |
| | | | General Journal | 06/09/2016 | 31 | Madison County Clerk | TPT credit card | Title Records, Maps & Drafting | -19.00 | -28,221.77 |
| | | | General Journal | 06/10/2016 | 33 | Tom Tatham | ROCC TPT,MAW, Sean Keenan | Business Entertainment | -167.25 | -28,389.02 |
| | | | General Journal | 06/14/2016 | 32 | Cosco | Print Cartridges - TPT credit card | Office Equipment | -294.39 | -28,683.41 |
| | | | General Journal | 06/30/2016 | 34 | Madison County Clerk | TPT credit card | Title Records, Maps & Drafting | -19.00 | -28,702.41 |
| | | | General Journal | 06/30/2016 | 35 | | Uber SF to Green Bay Advisors meeting - TPT CC | Travel / Lodging | -15.20 | -28,717.61 |
| | | | General Journal | 07/07/2016 | 42 | Tom Tatham | Madison Co paid TPT Credit Card | Title Records, Maps & Drafting | -19.00 | -28,736.61 |
| | | | General Journal | 07/08/2016 | 36 | Tom Tatham | TPT Ben Morris, Steve Holstead, Jennifer Burkhard | Business Entertainment | -240.00 | -28,976.61 |
| | | | General Journal | 07/18/2016 | 37 | Tom Tatham | TPT, MAW, JH, BS - TPT paid cash | Business Entertainment | -700.00 | -29,676.61 |

WIL_00001680
Page 474

Accrual Basis

**Hopewell-Pilot Project, LLC**
**General Ledger**
As of December 31, 2016

| | | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | General Journal | 07/19/2016 | 43 | Tom Tatham | Madison Co paid TPT Credit Card | Title Records, Maps & Drafting | -19.00 | -29,695.61 |
| | | | General Journal | 07/20/2016 | 44 | Thomas Trent Stout | Lunch Peska - TPT, Steve Ervi, BS, JB, LM paid TP | Business Entertainment | -150.00 | -29,845.61 |
| | | | General Journal | 07/21/2016 | 45 | Tom Tatham | Uber - for SMW presentation TPT, paid with his CC | Travel / Lodging | -10.64 | -29,656.45 |
| | | | General Journal | 07/22/2016 | 46 | Tom Tatham | Gas to Madisonville To/From TPT | Travel / Lodging | -38.29 | -29,694.74 |
| | | | Check | 07/23/2016 | 3009 | Tom Tatham | Reimb for Meals on July 8 and July 18 paid for in ca | Amegy Bank | 940.00 | -28,954.74 |
| | | | General Journal | 07/27/2016 | 51 | | ROCC Ed Powell Fairway Capital Partners, T | Business Entertainment | -204.60 | -29,159.34 |
| | | | General Journal | 07/29/2016 | 47 | Tom Tatham | Madison Co updates - paid TPT Credit card | Title Records, Maps & Drafting | -19.00 | -29,178.34 |
| | | | General Journal | 07/30/2016 | 41 | Tom Tatham | ROCC TPT - Mike Willis, Johnny Johnson, Don Tay | Business Entertainment | -302.73 | -29,481.07 |
| | | | General Journal | 07/31/2016 | 53 | South Padre Gas | Sale of IAE Shares Paid by offset - SouthPardre Gas | South Padre Gas LP-25,000 sh | 25,000.00 | -4,481.07 |
| | | | Check | 08/02/2016 | 3013 | LNG Partners | Reduce Advances | Amegy Bank | 2,901.47 | -1,579.60 |
| | | | General Journal | 08/26/2016 | 59 | | | Business Entertainment | -233.25 | -1,612.85 |
| | | | General Journal | 08/26/2016 | 60 | | Trans to TPT - PDP - TS lunch | Business Entertainment | -129.25 | -1,942.10 |
| | | | General Journal | 08/30/2016 | 61 | | Hunters creek | Business Entertainment | -40.00 | -1,982.10 |
| | | | Check | 08/31/2016 | Trans | Tom Tatham | Advance for TS lunch | Amegy Bank | 50.00 | -1,932.10 |
| | | | General Journal | 08/31/2016 | 57 | | TPT Credit card charges for August | Business Entertainment | -1,099.38 | -3,031.48 |
| | | | Check | 09/13/2016 | Trans | PDP Management Group, LLC | | Amegy Bank | 250.00 | -2,781.48 |
| | | | General Journal | 09/23/2016 | 65 | Tom Tatham | Record Reimbursable expenses Hertz 9/23/256 - Mi | Travel / Lodging | -305.45 | -3,086.93 |
| | | | General Journal | 09/30/2016 | 66 | Tom Tatham | Record Uber expenses for September - TPT credit c | Travel / Lodging | -75.10 | -3,162.03 |
| | | | General Journal | 10/28/2016 | 67 | Tom Tatham | wire for business expenses paid on TPT Credit Card | Amegy Bank | 3,162.03 | 0.00 |
| | | | General Journal | 12/15/2016 | 73 | | TPT estimate Dec 1-15,2016 | Travel / Lodging | -1,900.00 | -1,900.00 |
| | | | General Journal | 12/15/2016 | 73 | | Madison County | Travel / Lodging | -19.00 | -1,919.00 |
| | | | Check | 12/27/2016 | 1016 | Tom Tatham | | Amegy Bank | 719.00 | -1,200.00 |
| | Total Tom Tatham | | | | | | | | -1,200.00 | -1,200.00 |
| | **Tom Tatham- Misc** | | | | | | | | | 0.00 |
| | | | Check | 11/10/2016 | 1006 | Tom Tatham | Madisonville trip, car, gas, meals | Amegy Bank | 526.81 | 526.81 |
| | | | General Journal | 11/30/2016 | 68 | Tom Tatham | TPT out of pocket expenses Oct - Nov | Title Records, Maps & Drafting | -1,450.30 | -923.49 |
| | | | Check | 12/05/2016 | 1010 | Tom Tatham | | Amegy Bank | 923.49 | 0.00 |
| | Total Tom Tatham- Misc | | | | | | | | 0.00 | 0.00 |
| | **Willis Group- Jabco** | | | | | | | | | 0.00 |
| | | | General Journal | 03/24/2016 | 2 | Jabco | Wire to Steve Ervi | Steve Ervi | -6,370.00 | -6,370.00 |
| | | | General Journal | 03/24/2016 | 3 | Jabco | Wire transfer fees | Bank Fees | -30.00 | -6,400.00 |
| | | | General Journal | 03/24/2016 | 4 | MJ Amex | Micro Center - Flash Drives - MJ Amex | Office Expense/ Supplies | -181.80 | -6,581.80 |
| | | | General Journal | 03/29/2016 | 5 | Mark Willis | Cash to Greg Kane for travel/lodging - from Mark W | Travel / Lodging | -100.00 | -6,681.80 |
| | | | General Journal | 03/29/2016 | 6 | Don Taylor | Discount Office Supplies - DT Amex | Office Expense/ Supplies | -622.19 | -7,303.99 |
| | | | General Journal | 03/30/2016 | 7 | Don Taylor | Micro Center - Flash drives - DT Amex | Office Expense/ Supplies | -162.00 | -7,465.99 |
| | | | General Journal | 03/31/2016 | 9 | Don Taylor | Labels - Greg Kane - DT Amex | Office Expense/ Supplies | -28.49 | -7,494.48 |
| | | | Deposit | 04/05/2016 | | Jabco | Mike Willis investment | Amegy Bank | -30,000.00 | -37,494.48 |
| | | | General Journal | 04/08/2016 | 18 | Jabco | Wire Transfer fees - charged to Jabco | Bank Fees | -60.00 | -37,554.48 |
| | | | General Journal | 04/08/2016 | 16 | Mark Willis | La Quinta - Greg, Linda, Steve - MAW Amex | Travel / Lodging | -1,486.94 | -39,041.42 |
| | | | General Journal | 04/08/2016 | 16 | Mike Willis | La Quinta - Greg, Linda, Steve - MTW Amex | Travel / Lodging | -456.09 | -39,497.51 |
| | | | General Journal | 04/08/2016 | 16 | Mark Willis | La Quinta - Greg, Linda, Steve - MAW Amex | Travel / Lodging | -500.00 | -39,997.51 |
| | | | General Journal | 04/13/2016 | 20 | Mark Willis | La Quinta - Greg,Kane - MAW Amex | Travel / Lodging | -383.76 | -40,381.27 |

Page 12 of 26

Accrual Basis

**Hopewell-Pilot Project, LLC**
**General Ledger**
**As of December 31, 2016**

| | | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Deposit | 04/21/2016 | | Willis Group LLC | Deposit | Amegy Bank | -50,000.00 | -90,361.27 |
| | | | General Journal | 04/22/2016 | 21 | Mark Willis | La Quinta - Greg Kane - MAW Amex | Travel / Lodging | -389.15 | -90,750.42 |
| | | | General Journal | 04/22/2016 | 22 | Mark Willis | Willie G's Lunch Jennifer and Lauren - Mark's Amex | Business Entertainment | -79.28 | -90,829.70 |
| | | | Deposit | 05/03/2016 | | Willis Group | Deposit | Amegy Bank | -17,500.00 | -108,329.70 |
| | | | General Journal | 05/03/2016 | 24 | Mark Willis | Holiday Inn Express - Greg Kane - MAW Amex | Travel / Lodging | -606.00 | -108,935.70 |
| | | | Deposit | 05/04/2016 | | Willis Group | Deposit | Amegy Bank | -5,000.00 | -113,935.70 |
| | | | General Journal | 05/06/2016 | 49 | PDP Management Group, LLC | Funds from Jabco for Hopewell, deposites into Title | Title Rover LLC | -27,000.00 | -140,935.70 |
| | | | General Journal | 05/16/2016 | 26 | Mark Willis | Steve Ervi paid on Marks Card | Travel / Lodging | -140.39 | -141,076.09 |
| | | | General Journal | 05/31/2016 | 39 | Mark Willis | Meals Mark paid for on his personal credit card | Business Entertainment | -533.22 | -141,609.31 |
| | | | Deposit | 06/02/2016 | | Jabco | Deposit | Amegy Bank | -17,500.00 | -159,109.31 |
| | | | Deposit | 06/06/2016 | | Michael Foran | Michael Foran deposit into Jabco | Amegy Bank | -25,000.00 | -184,109.31 |
| | | | Deposit | 06/20/2016 | wire | Willis Group | Deposit | Amegy Bank | -4,500.00 | -188,609.31 |
| | | | General Journal | 06/30/2016 | 40 | Mark Willis | Meals Mark paid for on his personal credit card | Business Entertainment | -658.96 | -189,268.27 |
| | | | General Journal | 07/31/2016 | 53 | South Padre Gas | Sale of IAE Shares Paid by offset - SouthPadre Gas | South Padre Gas LP-25,000 sh | 25,000.00 | -164,268.27 |
| | | | General Journal | 07/31/2016 | 54 | | Sale of IAE Shares Paid by offset - Michael Foran | Michael Foran-17,500 sh | 35,000.00 | -129,268.27 |
| | | | General Journal | 07/31/2016 | 54 | | Sale of IAE Shares Paid by offset - Foran LTD | Michael Foran-17,500 sh | 25,000.00 | -104,268.27 |
| | | | General Journal | 07/31/2016 | 55 | | Sale of IAE Shares Paid by offset - Michael Willis Fu | Michael Willis-15,000 sh | 30,000.00 | -74,268.27 |
| | | | General Journal | 07/31/2016 | 56 | | Sale of IAE Shares Paid by offset - Mark Willis | Hopewell Willis Hldg-50,000 sh | 77,000.00 | 2,731.73 |
| | | | General Journal | 07/31/2016 | 56 | | Sale of IAE Shares Paid by offset - Mark Willis | Hopewell Willis Hldg-50,000 sh | 4,601.73 | 7,333.46 |
| | | | General Journal | 07/31/2016 | 56 | | Sale of IAE Shares Paid by offset - Mark Willis | Hopewell Willis Hldg-50,000 sh | 13,192.18 | 20,525.64 |
| | | | General Journal | 07/31/2016 | 56 | | Sale of IAE Shares Paid by offset - Mark Willis | Hopewell Willis Hldg-50,000 sh | 3,437.51 | 23,963.15 |
| | | | General Journal | 07/31/2016 | 56 | | Sale of IAE Shares Paid by offset - Mark Willis | Hopewell Willis Hldg-50,000 sh | 1,768.58 | 25,731.73 |
| | | | General Journal | 07/31/2016 | 76 | | Accrue Mark's July fees | Mark Willis | -12,000.00 | 13,731.73 |
| | | | Deposit | 08/23/2016 | | Jabco | Deposit | Amegy Bank | -4,500.00 | 9,231.73 |
| | | | General Journal | 08/31/2016 | 77 | | Accrue Mark's August fees | Mark Willis | -12,000.00 | -2,768.27 |
| | | | General Journal | 09/06/2016 | 63 | | Mark - Le Clonial lunch Mark Bush | Business Entertainment | -124.59 | -2,892.86 |
| | | | Credit | 09/19/2016 | | Doherty & Doherty | Legal paid by WG | Accounts Payable | -1,111.35 | -4,004.21 |
| | | | Deposit | 10/14/2016 | | Jabco | Deposit | Amegy Bank | -3,000.00 | -7,004.21 |
| | | | Deposit | 10/20/2016 | | Jabco | Deposit | Amegy Bank | -7,500.00 | -14,504.21 |
| | | | Check | 10/28/2016 | 1 | Willis Group | Repay Jabco advances | Amegy Bank | 15,000.00 | 495.79 |
| | | | General Journal | 11/30/2016 | 85 | | Estimate of Mark Willis | Business Entertainment | -250.00 | 245.79 |
| | | | General Journal | 12/15/2016 | 86 | | Estimate of Mark Willis | Business Entertainment | -250.00 | -4.21 |
| | | Total Willis Group- Jabco | | | | | | | -4.21 | -4.21 |
| | **Advances from Managers/Shrhldrs - Other** | | | | | | | | | 0.00 |
| | | Total Advances from Managers/Shrhldrs - Other | | | | | | | | 0.00 |
| | Total Advances from Managers/Shrhldrs | | | | | | | | -1,204.21 | -1,204.21 |
| **Bridge Loan** | | | | | | | | | | 0.00 |
| | **EnSource Investment** | | | | | | | | | 0.00 |
| | | | Deposit | 09/13/2016 | | EnSource Investment - Bridge Loan | Deposit | Amegy Bank | -205,000.00 | -205,000.00 |
| | | | Deposit | 09/30/2016 | | EnSource Investment - Bridge Loan | Justin Pannu | Amegy Bank | -20,000.00 | -225,000.00 |
| | | | Deposit | 10/28/2016 | | EnSource Investment - Bridge Loan | Deposit | Amegy Bank | -205,000.00 | -430,000.00 |
| | | | General Journal | 11/30/2016 | 78 | | Subs Receivable Ensource | Subscription Receivable-IAE Shr | -100,000.00 | -530,000.00 |

WIL_00001682

Accrual Basis

**Hopewell-Pilot Project, LLC**
**General Ledger**
As of December 31, 2016

| | | | | Type | Date | Num | | Name | | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | General Journal | 11/30/2016 | 79 | | | | Ensource - move to IAE Shares | EnSource LLC-265,000 sh | 530,000.00 | 0.00 |
| | Total EnSource Investment | | | | | | | | | | | 0.00 | 0.00 |
| **Bridge Loan - Other** | | | | | | | | | | | | | 0.00 |
| | Total Bridge Loan - Other | | | | | | | | | | | | 0.00 |
| Total Bridge Loan | | | | | | | | | | | | 0.00 | 0.00 |
| **Notes Payable** | | | | | | | | | | | | | 0.00 |
| | **LAF Credit Facility** | | | | | | | | | | | | 0.00 |
| | | **SMW Investments** | | | | | | | | | | | 0.00 |
| | | | | Deposit | 11/01/2016 | | | SMW Investments | | Draw initial lease acquisition funds | LAF Restricted Cash Account | -500,000.00 | -500,000.00 |
| | | | | Check | 12/21/2016 | 1 | | LAF - Payment | | | LAF Restricted Cash Account | 400,000.00 | -100,000.00 |
| | | Total SMW Investments | | | | | | | | | | -100,000.00 | -100,000.00 |
| | | **LAF Credit Facility - Other** | | | | | | | | | | | 0.00 |
| | | Total LAF Credit Facility - Other | | | | | | | | | | | 0.00 |
| | Total LAF Credit Facility | | | | | | | | | | | -100,000.00 | -100,000.00 |
| | **Notes Payable - Other** | | | | | | | | | | | | 0.00 |
| | Total Notes Payable - Other | | | | | | | | | | | | 0.00 |
| Total Notes Payable | | | | | | | | | | | | -100,000.00 | -100,000.00 |
| **OGM Lease & Mineral Interests-** | | | | | | | | | | | | | 0.00 |
| | | | | General Journal | 12/31/2016 | 89 | | | | Record contingent deferred payment to Kristin E. Da | Amegy Bank | -10,250.00 | -10,250.00 |
| Total OGM Lease & Mineral Interests- | | | | | | | | | | | | -10,250.00 | -10,250.00 |
| **Payroll Liabilities** | | | | | | | | | | | | | 0.00 |
| Total Payroll Liabilities | | | | | | | | | | | | | 0.00 |
| **Suspense - Greg Kane** | | | | | | | | | | | | | 0.00 |
| Total Suspense - Greg Kane | | | | | | | | | | | | | 0.00 |
| **Contingent Deffered Payment** | | | | | | | | | | | | | 0.00 |
| Total Contingent Deffered Payment | | | | | | | | | | | | | 0.00 |
| **Founders Shares-1,000,000 sh** | | | | | | | | | | | | | 0.00 |
| | | | | General Journal | 04/04/2016 | 84 | | | | | IT License Rights/Project Data | -1.00 | -1.00 |
| Total Founders Shares-1,000,000 sh | | | | | | | | | | | | -1.00 | -1.00 |
| **IAE Shares** | | | | | | | | | | | | | 0.00 |
| | **EnSource LLC-265,000 sh** | | | | | | | | | | | | 0.00 |
| | | | | General Journal | 11/30/2016 | 79 | | | | Ensource - move to IAE Shares | EnSource Investment | -530,000.00 | -530,000.00 |
| | Total EnSource LLC-265,000 sh | | | | | | | | | | | -530,000.00 | -530,000.00 |
| | **Foran LTD-12,500 sh** | | | | | | | | | | | | 0.00 |
| | | | | General Journal | 07/31/2016 | 54 | | | | Sale of IAE Shares Paid by offset - Foran LTD | Michael Foran-17,500 sh | -25,000.00 | -25,000.00 |
| | Total Foran LTD-12,500 sh | | | | | | | | | | | -25,000.00 | -25,000.00 |
| | **Gil Lopez III-25,000 sh** | | | | | | | | | | | | 0.00 |
| | | | | Deposit | 06/27/2016 | wire | | Gil Lopez | | Deposit | Amegy Bank | -25,000.00 | -25,000.00 |
| | | | | Deposit | 07/29/2016 | wire | | Gil Lopez | | Deposit | Amegy Bank | -25,000.00 | -50,000.00 |
| | Total Gil Lopez III-25,000 sh | | | | | | | | | | | -50,000.00 | -50,000.00 |
| | **Hopewell Willis Hldg-50,000 sh** | | | | | | | | | | | | 0.00 |
| | | | | General Journal | 07/31/2016 | 56 | | | | Sale of IAE Shares Paid by offset - Mark Willis | -SPLIT- | -77,000.00 | -77,000.00 |

WIL_00001683

Accrual Basis

**Hopewell-Pilot Project, LLC**
**General Ledger**
**As of December 31, 2016**

| | | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | General Journal | 07/31/2016 | 56 | | Sale of IAE Shares Paid by offset - Mark Willis | Hopewell Willis Hldg-50,000 sh | -4,601.73 | -81,601.73 |
| | | | General Journal | 07/31/2016 | 56 | | Sale of IAE Shares Paid by offset - Mark Willis | Hopewell Willis Hldg-50,000 sh | -13,192.18 | -94,793.91 |
| | | | General Journal | 07/31/2016 | 56 | | Sale of IAE Shares Paid by offset - Mark Willis | Hopewell Willis Hldg-50,000 sh | -3,437.51 | -98,231.42 |
| | | | General Journal | 07/31/2016 | 56 | | Sale of IAE Shares Paid by offset - Mark Willis | Hopewell Willis Hldg-50,000 sh | -1,768.58 | -100,000.00 |
| | Total Hopewell Willis Hldg-50,000 sh | | | | | | | | -100,000.00 | -100,000.00 |
| | **Michael Foran-17,500 sh** | | | | | | | | | 0.00 |
| | | | General Journal | 07/31/2016 | 54 | | Sale of IAE Shares Paid by offset - Michael Foran | -SPLIT- | -35,000.00 | -35,000.00 |
| | Total Michael Foran-17,500 sh | | | | | | | | -35,000.00 | -35,000.00 |
| | **Michael Willis-15,000 sh** | | | | | | | | | 0.00 |
| | | | General Journal | 07/31/2016 | 55 | | Sale of IAE Shares Paid by offset - Michael Willis Fu | Willis Group- Jabco | -30,000.00 | -30,000.00 |
| | Total Michael Willis-15,000 sh | | | | | | | | -30,000.00 | -30,000.00 |
| | **South Padre Gas LP-25,000 sh** | | | | | | | | | 0.00 |
| | | **Mark Willis (12,500)** | | | | | | | | 0.00 |
| | | Total Mark Willis (12,500) | | | | | | | | 0.00 |
| | | **Tom Tatham (12,500)** | | | | | | | | 0.00 |
| | | Total Tom Tatham (12,500) | | | | | | | | 0.00 |
| | | **South Padre Gas LP-25,000 sh - Other** | | | | | | | | 0.00 |
| | | | General Journal | 07/31/2016 | 53 | South Padre Gas | Sale of IAE Shares Paid by offset - SouthPardre Gas | -SPLIT- | -25,000.00 | -25,000.00 |
| | | | General Journal | 07/31/2016 | 53 | South Padre Gas | Sale of IAE Shares Paid by offset - SouthPardre Gas | South Padre Gas LP-25,000 sh | -25,000.00 | -50,000.00 |
| | | Total South Padre Gas LP-25,000 sh - Other | | | | | | | -50,000.00 | -50,000.00 |
| | Total South Padre Gas LP-25,000 sh | | | | | | | | -50,000.00 | -50,000.00 |
| | **Thomas Trent Stout-50,000 sh** | | | | | | | | | 0.00 |
| | | | Deposit | 07/08/2016 | wire | Thomas Trent Stout | Deposit | Amegy Bank | -100,000.00 | -100,000.00 |
| | Total Thomas Trent Stout-50,000 sh | | | | | | | | -100,000.00 | -100,000.00 |
| | **IAE Shares - Other** | | | | | | | | | 0.00 |
| | Total IAE Shares - Other | | | | | | | | | 0.00 |
| Total IAE Shares | | | | | | | | | -920,000.00 | -920,000.00 |
| **Members Draw** | | | | | | | | | | 0.00 |
| Total Members Draw | | | | | | | | | | 0.00 |
| **Members Equity** | | | | | | | | | | 0.00 |
| Total Members Equity | | | | | | | | | | 0.00 |
| **Opening Balance Equity** | | | | | | | | | | 0.00 |
| Total Opening Balance Equity | | | | | | | | | | 0.00 |
| **LED Sign sales** | | | | | | | | | | 0.00 |
| Total LED Sign sales | | | | | | | | | | 0.00 |
| **Accounting** | | | | | | | | | | 0.00 |
| | | | Bill | 04/29/2016 | | Houston Bookkeeping Solutions | April 2016 set up books and input data | Accounts Payable | 250.00 | 250.00 |
| | | | Bill | 06/01/2016 | Hope 2016-2 | Houston Bookkeeping Solutions | May 2016 | Accounts Payable | 250.00 | 500.00 |
| | | | Bill | 06/30/2016 | Hope 2016-3 | Houston Bookkeeping Solutions | June | Accounts Payable | 250.00 | 750.00 |
| | | | Bill | 07/29/2016 | Hope-2016-4 | Houston Bookkeeping Solutions | July 2016 | Accounts Payable | 250.00 | 1,000.00 |
| | | | Bill | 08/31/2016 | Hope 2016-5 | Houston Bookkeeping Solutions | August | Accounts Payable | 350.00 | 1,350.00 |
| | | | Bill | 09/30/2016 | Hope 2016-6 | Houston Bookkeeping Solutions | Sept 20,16 Accounting | Accounts Payable | 350.00 | 1,700.00 |

WIL_00001684

Accrual Basis

**Hopewell-Pilot  Project, LLC**
**General Ledger**
As of December 31, 2016

| | | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Check | 10/03/2016 | 4001*a | Houston Bookkeeping Solutions | redeposit check 4001 | Amegy Bank | 1,450.00 | 3,150.00 |
| | | | Deposit | 10/14/2016 | | | returned check 4001 | Amegy Bank | -1,450.00 | 1,700.00 |
| | | | Bill | 10/30/2016 | Hope 2016-7 | Houston Bookkeeping Solutions | Services for October 2016 | Accounts Payable | 350.00 | 2,050.00 |
| | | | Bill | 11/30/2016 | Hope 2016-8 | Houston Bookkeeping Solutions | Services for Novmber 2016 | Accounts Payable | 350.00 | 2,400.00 |
| | | | Bill | 12/15/2016 | Hope 2016-9 | Houston Bookkeeping Solutions | Services for December 2016 | Accounts Payable | 350.00 | 2,750.00 |
| | | | Bill | 12/30/2016 | Hope201-10 | Houston Bookkeeping Solutions | Extra Accounting for December | Accounts Payable | 1,000.00 | 3,750.00 |
| | Total Accounting | | | | | | | | 3,750.00 | 3,750.00 |
| **Amegy Bank Demand A/C** | | | | | | | | | | 0.00 |
| | Total Amegy Bank Demand A/C | | | | | | | | | 0.00 |
| **Bank Fees** | | | | | | | | | | 0.00 |
| | | | General Journal | 03/24/2016 | 3 | Jabco | Wire transfer fees | Willis Group- Jabco | 30.00 | 30.00 |
| | | | Check | 04/05/2016 | ach | Amegy Bank | | Amegy Bank | 13.00 | 43.00 |
| | | | General Journal | 04/06/2016 | 18 | Jabco | Wire Transfer fees - charged to Jabco | Willis Group- Jabco | 60.00 | 103.00 |
| | | | Check | 04/21/2016 | avh | Amegy Bank | | Amegy Bank | 13.00 | 116.00 |
| | | | Check | 04/22/2016 | ach | Amegy Bank | Wire to P2 ES | Amegy Bank | 25.00 | 141.00 |
| | | | Check | 04/22/2016 | ach | Amegy Bank | Wire to Steve Ervi | Amegy Bank | 25.00 | 166.00 |
| | | | Check | 05/03/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 15.50 | 181.50 |
| | | | Check | 05/04/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 15.50 | 197.00 |
| | | | Check | 05/05/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 19.50 | 216.50 |
| | | | Check | 05/13/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 19.50 | 236.00 |
| | | | Check | 05/18/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 27.50 | 263.50 |
| | | | Check | 06/02/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 15.50 | 279.00 |
| | | | Check | 06/06/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 15.50 | 294.50 |
| | | | Check | 06/06/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 27.50 | 322.00 |
| | | | Check | 06/20/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 15.50 | 337.50 |
| | | | Check | 06/20/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 27.50 | 365.00 |
| | | | Check | 06/27/2016 | ach | Amegy Bank | | Amegy Bank | 15.50 | 380.50 |
| | | | Check | 07/05/2016 | ach | Amegy Bank | wire fees | Amegy Bank | 27.50 | 408.00 |
| | | | Check | 07/08/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 15.50 | 423.50 |
| | | | Check | 07/12/2016 | ach | Amegy Bank | | Amegy Bank | 27.50 | 451.00 |
| | | | Check | 07/20/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 27.50 | 478.50 |
| | | | Check | 07/29/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 15.50 | 494.00 |
| | | | Check | 08/05/2016 | ach | Amegy Bank | | Amegy Bank | 19.50 | 513.50 |
| | | | Check | 08/23/2016 | ach | Amegy Bank | | Amegy Bank | 15.50 | 529.00 |
| | | | Check | 08/23/2016 | ach | Amegy Bank | | Amegy Bank | 19.50 | 548.50 |
| | | | Bill | 09/01/2016 | | Title Rover, LLC | | Accounts Payable | 90.00 | 638.50 |
| | | | Check | 09/14/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 19.50 | 658.00 |
| | | | Check | 09/14/2016 | ach | Amegy Bank | | Amegy Bank | 27.50 | 685.50 |
| | | | Check | 09/16/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 19.50 | 705.00 |
| | | | Check | 09/30/2016 | ach | Deluxe Bus Systems | checks | Amegy Bank | 131.96 | 836.96 |
| | | | Check | 10/05/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 19.50 | 856.46 |
| | | | Check | 10/14/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 15.50 | 871.96 |

WIL_00001685
Page 479

**Accrual Basis**

**Hopewell-Pilot  Project, LLC**
**General Ledger**
**As of December 31, 2016**

| | | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Check | 10/14/2016 | ach | Amegy Bank | NSF | Amegy Bank | 35.00 | 906.96 |
| | | | Check | 10/14/2016 | ach | Amegy Bank | | Amegy Bank | 35.00 | 941.96 |
| | | | Check | 10/20/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 15.50 | 957.46 |
| | | | Check | 10/28/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 19.50 | 976.96 |
| | | | Check | 10/28/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 27.50 | 1,004.46 |
| | | | Check | 10/28/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 27.50 | 1,031.96 |
| | | | Check | 11/01/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 19.50 | 1,051.46 |
| | | | Check | 11/01/2016 | ach | Amegy Bank | | Amegy Bank | 27.50 | 1,078.96 |
| | | | Check | 11/23/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 19.50 | 1,098.46 |
| | | | Check | 12/01/2016 | ach | Prosperity Bank | checks | LAF Restricted Cash Account | 102.06 | 1,200.52 |
| | | | Check | 12/05/2016 | ach | Amegy Bank | wire fee | Amegy Bank | 19.50 | 1,220.02 |
| | | | Check | 12/20/2016 | Trans | Title Rover, LLC | Reimburse bank fees | Amegy Bank | 11.21 | 1,231.23 |
| Total Bank Fees | | | | | | | | | 1,231.23 | 1,231.23 |
| **Business Entertainment** | | | | | | | | | | 0.00 |
| | | | General Journal | 03/30/2016 | 8 | Tom Tatham | Lunch at ROCC - T Bowman, GK, MAW, TPT - Cas | Tom Tatham | 478.74 | 478.74 |
| | | | General Journal | 04/01/2016 | 14 | Tom Tatham | Lunch Peska - Brent Stanley, TPT - TPT MC | Tom Tatham | 40.00 | 518.74 |
| | | | General Journal | 04/22/2016 | 22 | Mark Willis | Willie G's Lunch Jennifer and Lauren - Mark's Amex | Willis Group- Jabco | 79.28 | 598.02 |
| | | | General Journal | 05/31/2016 | 39 | Mark Willis | Meals Mark paid for on his personal credit card | Willis Group- Jabco | 533.22 | 1,131.24 |
| | | | General Journal | 06/01/2016 | 26 | Tom Tatham | Lunch Peska, Brent S, Lauren M, Jenn B, TPT -paid -SPLIT- | | 154.23 | 1,285.47 |
| | | | General Journal | 06/07/2016 | 30 | | Lunch @ Peska, Tiger Stripe Resources, TPT,MAW | Tom Tatham | 165.00 | 1,450.47 |
| | | | General Journal | 06/10/2016 | 33 | Tom Tatham | ROCC TPT,MAW, Sean Keenan | Tom Tatham | 167.25 | 1,617.72 |
| | | | General Journal | 06/30/2016 | 40 | Mark Willis | Meals Mark paid for on his personal credit card | Willis Group- Jabco | 658.96 | 2,276.68 |
| | | | General Journal | 07/08/2016 | 36 | Tom Tatham | TPT Ben Morris, Steve Holstead, Jennifer Burkhardt | Tom Tatham | 240.00 | 2,516.68 |
| | | | General Journal | 07/18/2016 | 37 | Tom Tatham | TPT, MAW, JH, BS - TPT paid cash | Tom Tatham | 700.00 | 3,216.68 |
| | | | General Journal | 07/20/2016 | 44 | Tom Tatham | Lunch Peska - TPT, Steve Ervi, BS, JB, LM paid TP | Tom Tatham | 150.00 | 3,366.68 |
| | | | General Journal | 07/27/2016 | 51 | | ROCC Ed Powell Fairway Capital Partners, TPT | Tom Tatham | 204.60 | 3,571.28 |
| | | | General Journal | 07/30/2016 | 41 | Tom Tatham | ROCC TPT - Mike Willis, Johnny Johnson, Don Tay | Tom Tatham | 302.73 | 3,874.01 |
| | | | General Journal | 08/26/2016 | 59 | | | Tom Tatham | 233.25 | 4,107.26 |
| | | | General Journal | 08/26/2016 | 60 | | Trans to TPT - PDP - TS lunch | Tom Tatham | 129.25 | 4,236.51 |
| | | | General Journal | 08/30/2016 | 61 | | Hunters creek | Tom Tatham | 40.00 | 4,276.51 |
| | | | General Journal | 08/31/2016 | 57 | | TPT Credit card lunch Jeff Merola | -SPLIT- | 85.00 | 4,361.51 |
| | | | General Journal | 08/31/2016 | 57 | | TPT Credit card lunch Grant Sims, James Lytal | Business Entertainment | 128.77 | 4,490.28 |
| | | | General Journal | 08/31/2016 | 57 | | TPT Credit card Lunch Don Weir | Business Entertainment | 85.00 | 4,575.28 |
| | | | General Journal | 08/31/2016 | 57 | | TPT Credit Card dinner Justine Panu | Business Entertainment | 465.00 | 5,040.28 |
| | | | General Journal | 08/31/2016 | 57 | | TPT credit card Brent Stanley, Joe Haynes | Business Entertainment | 45.00 | 5,085.28 |
| | | | General Journal | 08/31/2016 | 57 | | TPT ROCC Trent Stout | Business Entertainment | 175.00 | 5,260.28 |
| | | | General Journal | 09/06/2016 | 63 | | Mark - Le Clonial lunch Mark Bush | Willis Group- Jabco | 124.59 | 5,384.87 |
| | | | General Journal | 11/30/2016 | 68 | Tom Tatham | TPT out of pocket expenses Oct - Nov | Title Records, Maps & Drafting | 651.39 | 6,036.26 |
| | | | General Journal | 11/30/2016 | 85 | | Estimate of Mark Willis | Willis Group- Jabco | 250.00 | 6,286.26 |
| | | | General Journal | 12/15/2016 | 73 | | TPT estimate Dec 1-15,2016 | Travel / Lodging | 1,550.00 | 7,836.26 |
| | | | General Journal | 12/15/2016 | 86 | | Estimate of Mark Willis | Willis Group- Jabco | 250.00 | 8,086.26 |
| Total Business Entertainment | | | | | | | | | 8,086.26 | 8,086.26 |

WIL_00001686
Page 480

Accrual Basis

**Hopewell-Pilot  Project, LLC**
**General Ledger**
As of December 31, 2016

| | | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **Consulting Services** | | | | | | | | | | 0.00 |
| | | | General Journal | 03/26/2016 | 46 | | Record TPT's time charges for January 2016 consul | Tom Tatham | 11,375.00 | 11,375.00 |
| Total Consulting Services | | | | | | | | | 11,375.00 | 11,375.00 |
| **Contract Land Services** | | | | | | | | | | 0.00 |
| | **Beyond Review** | | | | | | | | | 0.00 |
| | | | Bill | 04/19/2016 | 157921 | Beyond Review | Lauren A Messer - 04/14 to 04/17/16 | Accounts Payable | 652.50 | 652.50 |
| | | | Bill | 04/19/2016 | 157922 | Beyond Review | Jennifer Burkhardt 04/14 -04/17/16 | Accounts Payable | 765.00 | 1,417.50 |
| | | | Bill | 04/26/2016 | 157942 | Beyond Review | Jennifer Burkhardt - 4/18 - 4/24/2016 | Accounts Payable | 1,899.00 | 3,316.50 |
| | | | Bill | 04/26/2016 | 157341 | Beyond Review | Lauren Messer 4/18 - 4/24/2016 | Accounts Payable | 1,264.50 | 4,581.00 |
| | | | Bill | 04/30/2016 | 157965 | Beyond Review | Jeniffer  Burkhardt 4/24-4/30/2016 | Accounts Payable | 2,133.00 | 6,714.00 |
| | | | Bill | 04/30/2016 | 157964 | Beyond Review | Lauren  Messer 4/24-4/30/16 | Accounts Payable | 2,088.00 | 8,802.00 |
| | | | Bill | 05/10/2016 | 157976 | Beyond Review | Lauren Messer May 2-8 2016 | Accounts Payable | 1,773.00 | 10,575.00 |
| | | | Bill | 05/10/2016 | 157977 | Beyond Review | Jennifer Burkhardt May 2-8 2016 | Accounts Payable | 1,732.50 | 12,307.50 |
| | | | Bill | 05/17/2016 | 157996 | Beyond Review | Lauren Messer May 9-15, 2016 | Accounts Payable | 2,029.50 | 14,337.00 |
| | | | Bill | 05/17/2016 | 157997 | Beyond Review | Jennifer Burkhort May 9-15 2016 | Accounts Payable | 2,043.00 | 16,380.00 |
| | | | Bill | 05/24/2016 | 158019 | Beyond Review | Lauren Messer May 16-22 2016 | Accounts Payable | 1,872.00 | 18,252.00 |
| | | | Bill | 05/24/2016 | 158020 | Beyond Review | Jennifer Burkhardt  May 16-22 2016 | Accounts Payable | 2,398.50 | 20,650.50 |
| | | | Bill | 05/31/2016 | 158041 | Beyond Review | Lauuren Messer May 23-29 | Accounts Payable | 1,728.00 | 22,378.50 |
| | | | Bill | 05/31/2016 | 158042 | Beyond Review | Jennifer Burkhardt  May 23 - 29 2016 | Accounts Payable | 1,840.50 | 24,219.00 |
| | | | Bill | 06/07/2016 | 158067 | Beyond Review | Lauren Messer | Accounts Payable | 1,557.00 | 25,776.00 |
| | | | Bill | 06/07/2016 | 156068 | Beyond Review | Jennifer Messer | Accounts Payable | 1,642.50 | 27,418.50 |
| | | | Bill | 06/14/2016 | 158095 | Beyond Review | Lauren Messer | Accounts Payable | 1,935.00 | 29,353.50 |
| | | | Bill | 06/14/2016 | 158096 | Beyond Review | Jennifer Messer | Accounts Payable | 1,957.50 | 31,311.00 |
| | | | Bill | 06/21/2016 | 158133 | Beyond Review | Lauren Messer | Accounts Payable | 1,764.00 | 33,075.00 |
| | | | Bill | 06/21/2016 | 158134 | Beyond Review | Jennifer Messer | Accounts Payable | 1,890.00 | 34,965.00 |
| | | | Bill | 06/28/2016 | 158161 | Beyond Review | Lauren Messer | Accounts Payable | 1,156.50 | 36,121.50 |
| | | | Bill | 06/28/2016 | 1581.62 | Beyond Review | Jennifer Messer | Accounts Payable | 1,152.00 | 37,273.50 |
| | | | Bill | 07/05/2016 | 158171 | Beyond Review | Lauren Messer | Accounts Payable | 1,453.50 | 38,727.00 |
| | | | Bill | 07/05/2016 | 158172 | Beyond Review | Jennifer Messer | Accounts Payable | 1,926.00 | 40,653.00 |
| | | | Bill | 07/12/2016 | 158227 | Beyond Review | Lauren Messer | Accounts Payable | 1,521.00 | 42,174.00 |
| | | | Bill | 07/12/2016 | 158228 | Beyond Review | Jennifer Messer | Accounts Payable | 1,620.00 | 43,794.00 |
| | | | Bill | 07/19/2016 | 158260 | Beyond Review | Lauren Messer | Accounts Payable | 1,723.50 | 45,517.50 |
| | | | Bill | 07/19/2016 | 158261 | Beyond Review | Jennifer Bukhardt | Accounts Payable | 1,764.00 | 47,281.50 |
| | | | Bill | 07/27/2016 | 158288 | Beyond Review | Lauren Messer | Accounts Payable | 1,768.50 | 49,050.00 |
| | | | Bill | 07/27/2016 | 158289 | Beyond Review | Jennifer Messer | Accounts Payable | 2,029.50 | 51,079.50 |
| | | | Bill | 07/31/2016 | 158335 | Beyond Review | Lauren Messer 7-25 to 7-31-2016 | Accounts Payable | 1,440.00 | 52,519.50 |
| | | | Bill | 07/31/2016 | 158336 | Beyond Review | Jennifer Burkhardt  July 25- July 31-2016 | Accounts Payable | 2,182.50 | 54,702.00 |
| | | | Bill | 08/16/2016 | 158412 | Beyond Review | Lauren Messer Aug 8-14 | Accounts Payable | 1,395.00 | 56,097.00 |
| | | | Bill | 08/16/2016 | 158413 | Beyond Review | Jennifer Burkhardt  Aub 1-7 | Accounts Payable | 1,822.50 | 57,919.50 |
| | | | Bill | 08/16/2016 | 158414 | Beyond Review | Jennifer Burkhardt  Aug 8-14 | Accounts Payable | 1,755.00 | 59,674.50 |
| | | | Bill | 08/23/2016 | 158453 | Beyond Review | Jennifer Burkhardt Aub 15-21 | Accounts Payable | 1,876.50 | 61,551.00 |
| | | | Bill | 08/23/2016 | 158452 | Beyond Review | Lauren Messer Aug 15-21-16 | Accounts Payable | 1,836.00 | 63,387.00 |

WIL_00001687

Accrual Basis

**Hopewell-Pilot  Project, LLC**
**General Ledger**
As of December 31, 2016

| | | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Bill | 08/30/2016 | 158489 | Beyond Review | Lauren Messer Aug 22-28 | Accounts Payable | 1,755.00 | 65,142.00 |
| | | | Bill | 08/30/2016 | 158490 | Beyond Review | Jennifer Burkhardt Aug 22-28 | Accounts Payable | 1,786.50 | 66,928.50 |
| | | | Bill | 09/06/2016 | 158536 | Beyond Review | Lauren Messer | Accounts Payable | 1,746.00 | 68,674.50 |
| | | | Bill | 09/06/2016 | 158537 | Beyond Review | Jennifer Burkhardt - Aug29-Sept 4 | Accounts Payable | 1,804.50 | 70,479.00 |
| | | | Bill | 09/13/2016 | 158577 | Beyond Review | Lauren Messer Sepr 5-11, 2016 | Accounts Payable | 1,404.00 | 71,883.00 |
| | | | Bill | 09/13/2016 | 158578 | Beyond Review | Jennifer Burkhardt - Sept 5-11, 2016 | Accounts Payable | 1,462.50 | 73,345.50 |
| | | | Bill | 09/20/2016 | 158614 | Beyond Review | Lauren Messer Sept 12-18, 2016 | Accounts Payable | 1,723.50 | 75,069.00 |
| | | | Bill | 09/20/2016 | 158615 | Beyond Review | Jennifer Burkhardt Sept 12-18, 2016 | Accounts Payable | 1,939.50 | 77,008.50 |
| | | | Bill | 09/28/2016 | 158654 | Beyond Review | Lauren Messer 9-19-25-2016 | Accounts Payable | 1,710.00 | 78,718.50 |
| | | | Bill | 09/28/2016 | 158655 | Beyond Review | Jennifer nurkhardt 9-19-25-2016 | Accounts Payable | 1,795.50 | 80,514.00 |
| | | | Bill | 10/04/2016 | 158688 | Beyond Review | Lauren Messer 9-26 to 10-02-2016 | Accounts Payable | 1,764.00 | 82,278.00 |
| | | | Bill | 10/11/2016 | 158723 | Beyond Review | Lauren Messer 10-3-9-2016 | Accounts Payable | 1,755.00 | 84,033.00 |
| | | | Bill | 10/11/2016 | 158724 | Beyond Review | Jennifer Burkhardt 10-3-9, 2016 | Accounts Payable | 1,808.00 | 85,842.00 |
| | | | Bill | 10/18/2016 | 158747 | Beyond Review | Lauren Messer 10-10 to 10-16-2016 | Accounts Payable | 1,714.50 | 87,556.50 |
| | | | Bill | 10/18/2016 | 158748 | Beyond Review | Jennifer Burkhardt Oct 10 to Oct 16,2016 | Accounts Payable | 1,755.00 | 89,311.50 |
| | | | Bill | 10/25/2016 | 158780 | Beyond Review | Jennifer Burkhardt 10-17 to 10-23-2016 | Accounts Payable | 1,786.50 | 91,098.00 |
| | | | Bill | 10/25/2016 | 158779 | Beyond Review | Lauren Messer 10-17 to 10-23-16 | Accounts Payable | 1,710.00 | 92,808.00 |
| | | | Bill | 10/31/2016 | 15880 | Beyond Review | Jennifer Burkhardt 10-24 to 10-30-16 | Accounts Payable | 1,125.00 | 93,933.00 |
| | | | Bill | 10/31/2016 | 158799 | Beyond Review | Lauren Messer 10-24-10-30-2016 | Accounts Payable | 1,705.50 | 95,638.50 |
| | | | Bill | 11/08/2016 | | Beyond Review | Lauren and Jennifer Oct 31 to Nov 6, 2016 | Accounts Payable | 3,555.00 | 99,193.50 |
| | | | Bill | 11/15/2016 | 158828 | Beyond Review | Jennifer Burkhardt 11-7 to 11-13-16 | Accounts Payable | 1,791.00 | 100,984.50 |
| | | | Bill | 11/15/2016 | | Beyond Review | Lauren Messer 11-7 to 11-13-16 | Accounts Payable | 1,750.50 | 102,735.00 |
| | | | Bill | 11/22/2016 | 158859 | Beyond Review | Jennifer Burkhardt Nov 14-20, 2016 | Accounts Payable | 1,786.50 | 104,521.50 |
| | | | Bill | 11/22/2016 | 158858 | Beyond Review | Lauren Messer 11-14 to 11-20-2016 | Accounts Payable | 1,629.00 | 106,150.50 |
| | | | Bill | 11/30/2016 | | Beyond Review | Jennifer Burkhardt Nov 21-27, 2016 | Accounts Payable | 720.00 | 106,870.50 |
| | | | Bill | 12/06/2016 | 15888 | Beyond Review | Jennifer Burkhardt 11-28 to 12-04-2016 | Accounts Payable | 1,813.50 | 108,684.00 |
| | | | Bill | 12/06/2016 | 15887 | Beyond Review | Lauren Messer 11-28 to 12-04-2016 | Accounts Payable | 1,084.50 | 109,768.50 |
| | Total Beyond Review | | | | | | | | 109,768.50 | 109,768.50 |
| | **Greg Kane** | | | | | | | | | 0.00 |
| | | | General Journal | 03/02/2016 | 1 | Doug Schroeder | Prior advances to Greg Kane | -SPLIT- | 27,500.00 | 27,500.00 |
| | | | Check | 04/05/2016 | 1000 | Greg Kane | Contract Land Services | Amegy Bank | 3,600.00 | 31,100.00 |
| | | | Check | 04/20/2016 | 1002 | Greg Kane | Invoice #1 land work, miles, suplies, lodging - Greg | Amegy Bank | 4,400.00 | 35,500.00 |
| | | | Bill | 05/30/2016 | | Greg Kane | Contract Services for Greg Kane This was settled in | Accounts Payable | 4,000.00 | 39,500.00 |
| | | | General Journal | 05/31/2016 | 27 | | March 23, 2016 entry due to termination with Kane | -SPLIT- | -27,500.00 | 12,000.00 |
| | | | Credit | 08/19/2016 | | Greg Kane | | Accounts Payable | -4,000.00 | 8,000.00 |
| | Total Greg Kane | | | | | | | | 8,000.00 | 8,000.00 |
| | **Hank Gamble** | | | | | | | | | 0.00 |
| | | | Bill | 09/30/2016 | | Harry P Gamble IV | Hank gamble Sept 16-30, 2016 | Accounts Payable | 6,937.50 | 6,937.50 |
| | | | Bill | 10/31/2016 | | Harry P Gamble IV | | Accounts Payable | 10,312.50 | 17,250.00 |
| | | | Bill | 11/30/2016 | | Harry P Gamble IV | November services | Accounts Payable | 9,562.50 | 26,812.50 |
| | | | Bill | 12/15/2016 | | Harry P Gamble IV | Services Dec 1-15, 2016 | Accounts Payable | 4,250.00 | 31,062.50 |
| | | | Bill | 12/31/2016 | | Harry P Gamble IV | | Accounts Payable | 437.50 | 31,500.00 |

WIL_00001688
Page 482

Accrual Basis

**Hopewell-Pilot  Project, LLC**
**General Ledger**
**As of December 31, 2016**

| | | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | Total Hank Gamble | | | | | | | | 31,500.00 | 31,500.00 |
| | **Linda Meiske** | | | | | | | | | 0.00 |
| | | | Bill | 06/30/2016 | | Linda Meiske | March - April 2016 | Accounts Payable | 1,875.00 | 1,875.00 |
| | Total Linda Meiske | | | | | | | | 1,875.00 | 1,875.00 |
| | **Steve Ervi** | | | | | | | | | 0.00 |
| | | | General Journal | 03/24/2016 | 2 | Steve Ervi/SDE Ventures LLC | Wire to Steve Ervi | Willis Group- Jabco | 6,370.00 | 6,370.00 |
| | | | Check | 04/20/2016 | wire | Steve Ervi/SDE Ventures LLC | Contract work | Amegy Bank | 6,000.00 | 12,370.00 |
| | | | Bill | 04/29/2016 | | Steve Ervi/SDE Ventures LLC | Time and milage | Accounts Payable | 4,000.00 | 16,370.00 |
| | | | Check | 05/18/2016 | wire | Steve Ervi/SDE Ventures LLC | May 1 - 15, 2016 | Amegy Bank | 4,000.00 | 20,370.00 |
| | | | Bill | 05/31/2016 | May 16-31 | Steve Ervi/SDE Ventures LLC | May 16-31 | Accounts Payable | 4,543.00 | 24,913.00 |
| | | | Bill | 06/20/2016 | | Steve Ervi/SDE Ventures LLC | June 1-15, 2016 | Accounts Payable | 4,400.00 | 29,313.00 |
| | | | Bill | 06/30/2016 | 6-16-30-2016 | Steve Ervi/SDE Ventures LLC | June 16-30, 2016 | Accounts Payable | 4,400.00 | 33,713.00 |
| | | | Bill | 07/15/2016 | July 1-15-2016 | Steve Ervi/SDE Ventures LLC | July 1-15-2016 | Accounts Payable | 4,000.00 | 37,713.00 |
| | | | Bill | 07/29/2016 | July 16-29-2016 | Steve Ervi/SDE Ventures LLC | July 16-29-2016 | Accounts Payable | 4,000.00 | 41,713.00 |
| | | | Bill | 08/23/2016 | Aug 1-15, 2016 | Steve Ervi/SDE Ventures LLC | | Accounts Payable | 4,400.00 | 46,113.00 |
| | | | Bill | 08/31/2016 | | Steve Ervi/SDE Ventures LLC | | Accounts Payable | 4,800.00 | 50,913.00 |
| | | | Bill | 09/01/2016 | | Steve Ervi/SDE Ventures LLC | | Accounts Payable | 4,000.00 | 54,913.00 |
| | | | Bill | 09/30/2016 | | Steve Ervi/SDE Ventures LLC | Services Sept 16-30, 2016 | Accounts Payable | 4,400.00 | 59,313.00 |
| | | | Bill | 10/15/2016 | | Steve Ervi/SDE Ventures LLC | | Accounts Payable | 4,000.00 | 63,313.00 |
| | | | Bill | 10/31/2016 | | Steve Ervi/SDE Ventures LLC | | Accounts Payable | 4,400.00 | 67,713.00 |
| | | | Bill | 11/16/2016 | | Steve Ervi/SDE Ventures LLC | Services Nov 1-15, 2016 | Accounts Payable | 4,000.00 | 71,713.00 |
| | | | Bill | 11/30/2016 | | Steve Ervi/SDE Ventures LLC | Services Nov  16-30, 2016 | Accounts Payable | 2,000.00 | 73,713.00 |
| | Total Steve Ervi | | | | | | | | 73,713.00 | 73,713.00 |
| | **Contract Land Services - Other** | | | | | | | | | 0.00 |
| | Total Contract Land Services - Other | | | | | | | | | 0.00 |
| | Total Contract Land Services | | | | | | | | 224,856.50 | 224,856.50 |
| | **Copies** | | | | | | | | | 0.00 |
| | Total Copies | | | | | | | | | 0.00 |
| | **Dues $ Subscriptions** | | | | | | | | | 0.00 |
| | **Domain Name / Office 365** | | | | | | | | | 0.00 |
| | Total Domain Name / Office 365 | | | | | | | | | 0.00 |
| | **Dues $ Subscriptions - Other** | | | | | | | | | 0.00 |
| | Total Dues $ Subscriptions - Other | | | | | | | | | 0.00 |
| | Total Dues $ Subscriptions | | | | | | | | | 0.00 |
| | **Geology & Reservoir Engineering** | | | | | | | | | 0.00 |
| | | | Check | 05/13/2016 | wire | Schurbarth Inc. | Contract for initial  EUR estimates  Areas 1-4 | Amegy Bank | 6,120.00 | 6,120.00 |
| | Total Geology & Reservoir Engineering | | | | | | | | 6,120.00 | 6,120.00 |
| | **Interest Expense** | | | | | | | | | 0.00 |
| | | | General Journal | 11/30/2016 | 70 | | 123.29/d x 25 under LAF credit facility | Accured Interest | 3,082.19 | 3,082.19 |
| | | | General Journal | 12/15/2016 | 72 | | Accured interest Dec 1-15, 2016 | Accured Interest | 1,849.35 | 4,931.54 |
| | | | General Journal | 12/31/2016 | 90 | LAF - Interest | LAF accured interest Dec 16-31, 2016 $123.29/d x 8 | Accured Interest | 986.32 | 5,917.86 |
| | Total Interest Expense | | | | | | | | 5,917.86 | 5,917.86 |

WIL_00001689
Page 483

Accrual Basis

**Hopewell-Pilot  Project, LLC**
**General Ledger**
As of December 31, 2016

| | | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 0.00 |
| **Investment Banking** | | | | | | | | | | |
| | | | Bill | 05/31/2016 | | Meridan Capital Advisors | Retainer | Accounts Payable | 10,000.00 | 10,000.00 |
| | | | Credit | 11/30/2016 | | Meridan Capital Advisors | Reverse Accural | Accounts Payable | -10,000.00 | 0.00 |
| | Total Investment Banking | | | | | | | | 0.00 | 0.00 |
| **IRS Penalty** | | | | | | | | | | 0.00 |
| | Total IRS Penalty | | | | | | | | | 0.00 |
| **IT Services** | | | | | | | | | | 0.00 |
| | **Digital Data** | | | | | | | | | 0.00 |
| | | | General Journal | 04/01/2016 | 13 | Tom Tatham | P2 Energy Solutions - Madison County Maps - TPT | Tom Tatham | 834.60 | 834.60 |
| | | | General Journal | 04/06/2016 | 15 | Tom Tatham | P2 Energy Solutions - Madison county Digital Data - | Tom Tatham | 759.92 | 1,594.52 |
| | | | Check | 08/01/2016 | 3012 | Railroad Commission of Texas | Purchase Digital Data | Amegy Bank | 421.00 | 2,015.52 |
| | Total Digital Data | | | | | | | | 2,015.52 | 2,015.52 |
| | **Image Engine - Imaging** | | | | | | | | | 0.00 |
| | | | Bill | 06/30/2016 | 201606-1038 | Image Engine | | Accounts Payable | 18,227.75 | 18,227.75 |
| | | | Bill | 06/30/2016 | 206606-1037 | Image Engine | | Accounts Payable | 1,817.90 | 20,045.65 |
| | | | Bill | 07/22/2016 | | Image Engine | May 31 Invoice for copying unit files | Accounts Payable | 24,864.86 | 44,910.51 |
| | | | Bill | 07/31/2016 | 201607-1045 | Image Engine | | Accounts Payable | 11,112.68 | 56,023.19 |
| | | | General Journal | 11/01/2016 | 87 | Image Engine | Settlement with Mark Willis of balance owed in rega | Accounts Payable | -32,023.19 | 24,000.00 |
| | Total Image Engine - Imaging | | | | | | | | 24,000.00 | 24,000.00 |
| | **P2 Energy Solutions** | | | | | | | | | 0.00 |
| | Total P2 Energy Solutions | | | | | | | | | 0.00 |
| | **Railroad Commission of Texas** | | | | | | | | | 0.00 |
| | Total Railroad Commission of Texas | | | | | | | | | 0.00 |
| | **Title Rover - IT & License Fees** | | | | | | | | | 0.00 |
| | | | Check | 04/06/2016 | Trans | Title Rover, LLC | License Fee for April | Amegy Bank | 17,500.00 | 17,500.00 |
| | | | Check | 04/19/2016 | ach | Title Rover, LLC | Data Purchase from Title Rover deposit Madison Co | Amegy Bank | 5,050.00 | 22,550.00 |
| | | | Check | 05/03/2016 | Trans | Title Rover, LLC | License Fee for May | Amegy Bank | 17,500.00 | 40,050.00 |
| | | | Bill | 06/01/2016 | | Title Rover, LLC | License Fee for June | Accounts Payable | 17,500.00 | 57,550.00 |
| | | | Check | 07/06/2016 | Trans | Title Rover, LLC | License Fee for July | Amegy Bank | 17,500.00 | 75,050.00 |
| | | | Check | 07/08/2016 | Trans | Title Rover, LLC | SLX Madison County indexing | Amegy Bank | 12,500.00 | 87,550.00 |
| | | | Check | 07/12/2016 | Trans | Title Rover, LLC | IT services | Amegy Bank | 10,500.00 | 98,050.00 |
| | | | Check | 07/19/2016 | Trans | Title Rover, LLC | Brent Stanley | Amegy Bank | 7,500.00 | 105,550.00 |
| | | | Bill | 07/28/2016 | | Title Rover, LLC | BR set up charges Madison & Houston Counties | Accounts Payable | 10,000.00 | 115,550.00 |
| | | | Check | 08/02/2016 | Trans | Title Rover, LLC | August 1-15, 2016 | Amegy Bank | 8,000.00 | 123,550.00 |
| | | | Deposit | 08/05/2016 | | Title Rover, LLC | Adjustment for services | Amegy Bank | -400.00 | 123,150.00 |
| | | | Bill | 08/31/2016 | | Title Rover, LLC | License Fee for August | Accounts Payable | 17,500.00 | 140,650.00 |
| | | | Bill | 08/31/2016 | | Title Rover, LLC | BS Aug 16-31-2016 services | Accounts Payable | 7,500.00 | 148,150.00 |
| | | | Check | 09/13/2016 | Trans | Title Rover, LLC | License Fee for September & October | Amegy Bank | 35,000.00 | 183,150.00 |
| | | | Check | 09/13/2016 | Trans | Title Rover, LLC | Brent Stanley services | Amegy Bank | 7,500.00 | 190,650.00 |
| | | | Check | 09/16/2016 | Trans | Title Rover, LLC | Brent Stanley | Amegy Bank | 7,500.00 | 198,150.00 |
| | | | Bill | 09/30/2016 | | Title Rover, LLC | BS services Sept 16-30-2016 | Accounts Payable | 7,500.00 | 205,650.00 |
| | | | Bill | 10/16/2016 | | Title Rover, LLC | Bret Stanley Oct 1-15, 2016 | Accounts Payable | 7,500.00 | 213,150.00 |

WIL_00001690

**Accrual Basis**

**Hopewell-Pilot  Project, LLC**
**General Ledger**
**As of December 31, 2016**

| | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|
| | Bill | 10/16/2016 | | Title Rover, LLC | SLX/AIT services Oct 1-15, 2016 | Accounts Payable | 8,750.00 | 221,900.00 |
| | Bill | 10/31/2016 | | Title Rover, LLC | Brent Stanley Oct 16-31, 2016 | Accounts Payable | 7,500.00 | 229,400.00 |
| | Bill | 10/31/2016 | | Title Rover, LLC | SLX/AIT Oct 16-31, 2016 | Accounts Payable | 8,750.00 | 238,150.00 |
| | Check | 11/01/2016 | wire | Title Rover, LLC | License Fee for November | Amegy Bank | 17,500.00 | 255,650.00 |
| | Bill | 12/05/2016 | | Title Rover, LLC | License Fee for December | Accounts Payable | 17,500.00 | 273,150.00 |
| Total Title Rover - IT & License Fees | | | | | | | 273,150.00 | 273,150.00 |
| **IT Services - Other** | | | | | | | | **0.00** |
| Total IT Services - Other | | | | | | | | 0.00 |
| Total IT Services | | | | | | | 299,165.52 | 299,165.52 |
| **Land Records** | | | | | | | | **0.00** |
| Total Land Records | | | | | | | | 0.00 |
| **Legal** | | | | | | | | **0.00** |
| **Daniel Ellwood PC** | | | | | | | | **0.00** |
| | Bill | 04/29/2016 | 21001 | Daniel L. Ellwood PC | Retainer | Accounts Payable | 5,000.00 | 5,000.00 |
| | Bill | 07/29/2016 | 21055 | Daniel L. Ellwood PC | | Accounts Payable | 2,892.50 | 7,892.50 |
| Total Daniel Ellwood PC | | | | | | | 7,892.50 | 7,892.50 |
| **DAS PC** | | | | | | | | **0.00** |
| | General Journal | 03/02/2016 | 1 | Doug Schroeder | Prior advance from DAS | Greg Kane | 2,500.00 | 2,500.00 |
| | General Journal | 05/31/2016 | 27 | | March 23, 2016 entry due to termination with Kane | Greg Kane | -2,500.00 | 0.00 |
| Total DAS PC | | | | | | | 0.00 | 0.00 |
| **Doherty & Doherty LLP** | | | | | | | | **0.00** |
| | Bill | 04/06/2016 | 98087 | Doherty & Doherty | March charges | Accounts Payable | 630.97 | 630.97 |
| | Bill | 06/01/2016 | | Doherty & Doherty | April charges | Accounts Payable | 4,961.25 | 5,592.22 |
| | Bill | 06/07/2016 | 98087 | Doherty & Doherty | May charges | Accounts Payable | 2,357.26 | 7,949.48 |
| | Bill | 08/31/2016 | | Doherty & Doherty | Aug charges | Accounts Payable | 262.50 | 8,211.98 |
| | Bill | 10/10/2016 | | Doherty & Doherty | September legal services | Accounts Payable | 3,570.00 | 11,781.98 |
| Total Doherty & Doherty LLP | | | | | | | 11,781.98 | 11,781.98 |
| **Jackson Sjoberg LLP** | | | | | | | | **0.00** |
| | Bill | 05/31/2016 | | Jackson, Sjoberg | Review pooled unit legal issues | Accounts Payable | 10,000.00 | 10,000.00 |
| | Bill | 10/19/2016 | | Jackson, Sjoberg | September legal without offset of $10,000 retainer | Accounts Payable | 11,854.67 | 21,854.67 |
| | Bill | 11/30/2016 | 11552 | Jackson, Sjoberg | October legal fees | Accounts Payable | 15,386.58 | 37,241.25 |
| | Bill | 11/30/2016 | 11552 | Jackson, Sjoberg | Retainer applied | Accounts Payable | -10,000.00 | 27,241.25 |
| | Bill | 11/30/2016 | | Jackson, Sjoberg | Nobember legal expense | Accounts Payable | 15,725.00 | 42,966.25 |
| Total Jackson Sjoberg LLP | | | | | | | 42,966.25 | 42,966.25 |
| **Patterson PC** | | | | | | | | **0.00** |
| | Check | 06/01/2016 | 3007 | Patterson PC | Retainer | Amegy Bank | 5,000.00 | 5,000.00 |
| | Bill | 06/30/2016 | | Patterson PC | | Accounts Payable | 10,888.19 | 15,888.19 |
| | Bill | 08/01/2016 | | Patterson PC | | Accounts Payable | 5,474.52 | 21,362.71 |
| | Bill | 08/01/2016 | | Patterson PC | | Accounts Payable | -5,000.00 | 16,362.71 |
| | Bill | 08/24/2016 | | Patterson PC | Greg Kane | Accounts Payable | 3,847.50 | 20,210.21 |
| Total Patterson PC | | | | | | | 20,210.21 | 20,210.21 |
| **Legal - Other** | | | | | | | | **0.00** |

WIL_00001691

Accrual Basis

**Hopewell-Pilot Project, LLC**
**General Ledger**
As of December 31, 2016

| | | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | Total Legal - Other | | | | | | | | | 0.00 |
| Total Legal | | | | | | | | | 82,850.94 | 82,850.94 |
| **Madison Co recording fees** | | | | | | | | | | 0.00 |
| Total Madison Co recording fees | | | | | | | | | | 0.00 |
| **Management Fees** | | | | | | | | | | 0.00 |
| | **Mark Willis** | | | | | | | | | 0.00 |
| | | | General Journal | 07/31/2016 | 76 | | Accrue Mark's July fees | Willis Group- Jabco | 12,000.00 | 12,000.00 |
| | | | General Journal | 08/31/2016 | 77 | | Accrue Mark's August fees | Willis Group- Jabco | 12,000.00 | 24,000.00 |
| | | | Bill | 09/16/2016 | | Mark Willis | Management fee Sept 1-15, 2016 | Accounts Payable | 6,000.00 | 30,000.00 |
| | | | Bill | 09/30/2016 | | Mark Willis | Mark Willis Sept 16-30, 2016 | Accounts Payable | 6,000.00 | 36,000.00 |
| | | | Bill | 10/16/2016 | | Mark Willis | fees Oct 1-15, 2016 | Accounts Payable | 6,000.00 | 42,000.00 |
| | | | Bill | 10/31/2016 | | Mark Willis | Fees Oct 16-31, 2016 | Accounts Payable | 6,000.00 | 48,000.00 |
| | | | Bill | 11/16/2016 | | Mark Willis | Feex Nov 1-15, 2016 | Accounts Payable | 6,000.00 | 54,000.00 |
| | | | Bill | 11/30/2016 | | Mark Willis | Fees Nov 16-30, 2016 | Accounts Payable | 6,000.00 | 60,000.00 |
| | | | Bill | 12/15/2016 | | Mark Willis | Fees Dec 1-15, 2016 | Accounts Payable | 6,000.00 | 66,000.00 |
| | | | Bill | 12/31/2016 | | Mark Willis | December 16-31, 2016 mangement fees | Accounts Payable | 6,000.00 | 72,000.00 |
| | Total Mark Willis | | | | | | | | 72,000.00 | 72,000.00 |
| | **PDP Management Group LLC** | | | | | | | | | 0.00 |
| | | | Check | 04/21/2016 | ach | PDP Management Group, LLC | March and prior consulting | Amegy Bank | 34,500.00 | 34,500.00 |
| | | | General Journal | 05/06/2016 | 49 | PDP Management Group, LLC | PDP Management paid from Title Rover | Title Rover LLC | 22,500.00 | 57,000.00 |
| | | | Bill | 05/31/2016 | | PDP Management Group, LLC | | Accounts Payable | 28,500.00 | 85,500.00 |
| | | | Bill | 06/30/2016 | acc | PDP Management Group, LLC | June 1 - 15 | Accounts Payable | 14,250.00 | 99,750.00 |
| | | | Bill | 06/30/2016 | acc | PDP Management Group, LLC | June 16-30 | Accounts Payable | 11,250.00 | 111,000.00 |
| | | | Bill | 07/16/2016 | July 1-15-16 | PDP Management Group, LLC | July 1-15-2016 | Accounts Payable | 17,250.00 | 128,250.00 |
| | | | Bill | 07/29/2016 | July 16-31-16 | PDP Management Group, LLC | July 16-31-16 | Accounts Payable | 15,000.00 | 143,250.00 |
| | | | Bill | 08/16/2016 | Aug 1-15-16 | PDP Management Group, LLC | Aug 1-15-16 | Accounts Payable | 15,000.00 | 158,250.00 |
| | | | Bill | 08/31/2016 | Aug16-31-16 | PDP Management Group, LLC | Aug 16-31-16 | Accounts Payable | 21,000.00 | 179,250.00 |
| | | | Bill | 09/16/2016 | | PDP Management Group, LLC | PDP management fees Sept 1-16-2016 | Accounts Payable | 15,000.00 | 194,250.00 |
| | | | Bill | 09/30/2016 | | PDP Management Group, LLC | PDP Management fees for September 16-30 | Accounts Payable | 17,250.00 | 211,500.00 |
| | | | Bill | 10/16/2016 | | PDP Management Group, LLC | Fees Oct 1-15, 2016 | Accounts Payable | 13,500.00 | 225,000.00 |
| | | | Bill | 10/31/2016 | | PDP Management Group, LLC | Fees Oct 16-31, 2016 | Accounts Payable | 15,750.00 | 240,750.00 |
| | | | Bill | 11/16/2016 | | PDP Management Group, LLC | Fees Nov 1-15, 2016 | Accounts Payable | 17,250.00 | 258,000.00 |
| | | | Bill | 11/30/2016 | | PDP Management Group, LLC | Services Nov 16-30, 2016 | Accounts Payable | 12,000.00 | 270,000.00 |
| | | | Bill | 12/15/2016 | | PDP Management Group, LLC | Fees Dec 1-15, 2016 | Accounts Payable | 15,750.00 | 285,750.00 |
| | | | Bill | 12/31/2016 | | PDP Management Group, LLC | December 1 - 16, 2016 management fees | Accounts Payable | 14,250.00 | 300,000.00 |
| | Total PDP Management Group LLC | | | | | | | | 300,000.00 | 300,000.00 |
| | **Management Fees - Other** | | | | | | | | | 0.00 |
| | Total Management Fees - Other | | | | | | | | | 0.00 |
| Total Management Fees | | | | | | | | | 372,000.00 | 372,000.00 |
| **Office Equipment** | | | | | | | | | | 0.00 |
| | | | Bill | 04/29/2016 | | Willis Group | Computer equipment and laptop | Accounts Payable | 4,719.87 | 4,719.87 |
| | | | General Journal | 06/14/2016 | 32 | Cosco | Print Cartridges - TPT credit card | Tom Tatham | 294.39 | 5,014.26 |

WIL_00001692
Page 486

Accrual Basis

**Hopewell-Pilot Project, LLC**
**General Ledger**
As of December 31, 2016

| | | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Bill | 06/30/2016 | | Linda Meiske | Office Equipment Linda Meiske | Accounts Payable | 204.10 | 5,218.36 |
| Total Office Equipment | | | | | | | | | 5,218.36 | 5,218.36 |
| **Office Expense/ Supplies** | | | | | | | | | | 0.00 |
| | | | General Journal | 03/24/2016 | 4 | MJ Amex | Micro Center - Flash Drives - MJ Amex | Willis Group- Jabco | 181.80 | 181.80 |
| | | | General Journal | 03/29/2016 | 6 | Don Taylor | Discount Office Supplies - DT Amex | Willis Group- Jabco | 622.19 | 803.99 |
| | | | General Journal | 03/30/2016 | 7 | Don Taylor | Micro Center - Flash drives - DT Amex | Willis Group- Jabco | 162.00 | 965.99 |
| | | | General Journal | 03/31/2016 | 9 | Don Taylor | Labels - Greg Kane - DT Amex | Willis Group- Jabco | 28.49 | 994.48 |
| | | | General Journal | 04/16/2016 | 19 | Tom Tatham | Cosco printer & Cartridge TPT MC ( WG conference | Tom Tatham | 420.59 | 1,415.07 |
| | | | Check | 04/20/2016 | 1002 | Greg Kane | Invoice #1 land work, miles, suplies, lodging - Greg | Amegy Bank | 314.66 | 1,729.73 |
| | | | Bill | 04/30/2016 | | Willis Group | April printing | Accounts Payable | 250.00 | 1,979.73 |
| | | | Bill | 04/30/2016 | | Willis Group | Domain Name | Accounts Payable | 811.88 | 2,791.61 |
| | | | Bill | 05/30/2016 | | Greg Kane | Greg Kane This was settled in August | Accounts Payable | 372.36 | 3,163.97 |
| | | | Bill | 07/29/2016 | | Willis Group | July Office expense allocation | Accounts Payable | 5,000.00 | 8,163.97 |
| | | | Bill | 08/16/2016 | | Willis Group | | Accounts Payable | 2,500.00 | 10,663.97 |
| | | | Credit | 08/19/2016 | | Greg Kane | | Accounts Payable | -372.36 | 10,291.61 |
| | | | Bill | 08/31/2016 | | Willis Group | | Accounts Payable | 2,500.00 | 12,791.61 |
| | | | Bill | 09/16/2016 | | Willis Group | office expense allocation | Accounts Payable | 2,500.00 | 15,291.61 |
| | | | Bill | 09/30/2016 | | Willis Group | Office expense allocation | Accounts Payable | 2,500.00 | 17,791.61 |
| | | | Bill | 10/16/2016 | | Willis Group | | Accounts Payable | 2,500.00 | 20,291.61 |
| | | | Bill | 10/31/2016 | | Willis Group | | Accounts Payable | 2,500.00 | 22,791.61 |
| | | | Bill | 11/16/2016 | | Willis Group | | Accounts Payable | 2,500.00 | 25,291.61 |
| | | | Bill | 11/30/2016 | | Willis Group | | Accounts Payable | 2,500.00 | 27,791.61 |
| | | | Bill | 12/15/2016 | | Willis Group | | Accounts Payable | 2,500.00 | 30,291.61 |
| | | | Bill | 12/31/2016 | | Willis Group | December 16-31, 2016 | Accounts Payable | 2,500.00 | 32,791.61 |
| Total Office Expense/ Supplies | | | | | | | | | 32,791.61 | 32,791.61 |
| **OG & M Interst** | | | | | | | | | | 0.00 |
| Total OG & M Interst | | | | | | | | | | 0.00 |
| **Patterson PC - Retainer** | | | | | | | | | | 0.00 |
| Total Patterson PC - Retainer | | | | | | | | | | 0.00 |
| **Payroll Expenses** | | | | | | | | | | 0.00 |
| Total Payroll Expenses | | | | | | | | | | 0.00 |
| **Postage** | | | | | | | | | | 0.00 |
| Total Postage | | | | | | | | | | 0.00 |
| **Printing** | | | | | | | | | | 0.00 |
| Total Printing | | | | | | | | | | 0.00 |
| **Title Records, Maps & Drafting** | | | | | | | | | | 0.00 |
| | | | General Journal | 04/08/2016 | 16 | Mark Willis | Land Records on MTW - Amex | Travel / Lodging | 500.00 | 500.00 |
| | | | Check | 04/22/2016 | ach | P2 ES Holdings | Deposit on account - Maps & Mapping Services | Amegy Bank | 2,000.00 | 2,500.00 |
| | | | Check | 04/22/2016 | 1003 | Madison County Clerk | Land Records in CD form | Amegy Bank | 90.00 | 2,590.00 |
| | | | General Journal | 04/22/2016 | 23 | Tom Tatham | TRRC Well Layer Data - Madison, Walker & Houst | Tom Tatham | 227.00 | 2,817.00 |
| | | | Bill | 04/30/2016 | | Carlos Manrique | Carlos Manrique April 15-30, 2016 | Accounts Payable | 2,200.00 | 5,017.00 |
| | | | Check | 05/18/2016 | 8168 | Madison County Clerk | Addison Co update | Amegy Bank | 18.00 | 5,035.00 |

WIL_00001693
Page 487

Accrual Basis

**Hopewell-Pilot  Project, LLC**
**General Ledger**
As of December 31, 2016

| | | | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Check | 05/19/2016 | 3003 | Carlos Manrique | May 1-15 | Amegy Bank | 2,400.00 | 7,435.00 |
| | | | | Bill | 05/31/2016 | | Carlos Manrique | May 16 - 31 | Accounts Payable | 2,000.00 | 9,435.00 |
| | | | | General Journal | 06/01/2016 | 26 | Tom Tatham | Madison co Clerk - paid TPT credit card | Business Entertainment | 19.00 | 9,454.00 |
| | | | | General Journal | 06/02/2016 | 29 | Madison County Clerk | TPT Credit Card | Tom Tatham | 19.00 | 9,473.00 |
| | | | | General Journal | 06/09/2016 | 31 | Madison County Clerk | June update | Tom Tatham | 19.00 | 9,492.00 |
| | | | | General Journal | 06/30/2016 | 34 | Madison County Clerk | TPT credit card | Tom Tatham | 19.00 | 9,511.00 |
| | | | | General Journal | 07/07/2016 | 42 | Tom Tatham | Madison Co paid TPT Credit Card | Tom Tatham | 19.00 | 9,530.00 |
| | | | | Bill | 07/15/2016 | July 1-15-2016 | Steve Ervi/SDE Ventures LLC | Steve Ervi | Accounts Payable | 172.00 | 9,702.00 |
| | | | | General Journal | 07/19/2016 | 43 | Tom Tatham | Madison Co paid TPT Credit Card | Tom Tatham | 19.00 | 9,721.00 |
| | | | | Check | 07/26/2016 | Trans | Title Rover, LLC | Upstream Subscription | Amegy Bank | 1,000.00 | 10,721.00 |
| | | | | Bill | 07/26/2016 | July 16-29-2016 | Steve Ervi/SDE Ventures LLC | Steve Ervi | Accounts Payable | 51.00 | 10,772.00 |
| | | | | Check | 07/26/2016 | Trans | Title Rover, LLC | Purchase GIS data Madison County | Amegy Bank | 2,000.00 | 12,772.00 |
| | | | | General Journal | 07/29/2016 | 47 | Tom Tatham | Madison Co updates - paid TPT Credit card | Tom Tatham | 19.00 | 12,791.00 |
| | | | | General Journal | 08/31/2016 | 57 | | TPT credit card - Madison Co updates | Business Entertainment | 19.00 | 12,610.00 |
| | | | | Bill | 10/15/2016 | | Steve Ervi/SDE Ventures LLC | | Accounts Payable | 225.00 | 13,035.00 |
| | | | | Bill | 10/31/2016 | | Steve Ervi/SDE Ventures LLC | | Accounts Payable | 18.00 | 13,053.00 |
| | | | | General Journal | 11/30/2016 | 66 | Tom Tatham | TPT out of pocket expenses Oct - Nov | -SPLIT- | 38.00 | 13,091.00 |
| | | | | Check | 12/13/2016 | 1014 | Madison County Clerk | | Amegy Bank | 282.00 | 13,373.00 |
| | | | | General Journal | 12/15/2016 | 73 | | Madison County | Travel / Lodging | 19.00 | 13,392.00 |
| Total Title Records, Maps & Drafting | | | | | | | | | | 13,392.00 | 13,392.00 |
| **Title Rover Misc Expense** | | | | | | | | | | | **0.00** |
| Total Title Rover Misc Expense | | | | | | | | | | | 0.00 |
| **Travel / Lodging** | | | | | | | | | | | **0.00** |
| | **Airfare** | | | | | | | | | | **0.00** |
| | Total Airfare | | | | | | | | | | 0.00 |
| | **Lodging** | | | | | | | | | | **0.00** |
| | Total Lodging | | | | | | | | | | 0.00 |
| | **Meals** | | | | | | | | | | **0.00** |
| | Total Meals | | | | | | | | | | 0.00 |
| | **Mileage** | | | | | | | | | | **0.00** |
| | Total Mileage | | | | | | | | | | 0.00 |
| | **Transportation** | | | | | | | | | | **0.00** |
| | Total Transportation | | | | | | | | | | 0.00 |
| | **Travel / Lodging - Other** | | | | | | | | | | **0.00** |
| | | | | General Journal | 03/29/2016 | 5 | Mark Willis | Cash to Greg Kane for travel/lodging - from Mark W | Willis Group- Jabco | 100.00 | 100.00 |
| | | | | General Journal | 03/31/2016 | 10 | Tom Tatham | Cash Advance Greg Kane for Travel/Lodging from T | Tom Tatham | 75.00 | 175.00 |
| | | | | General Journal | 04/01/2016 | 11 | Tom Tatham | La Quinta Inn  - Greg Kane - TPT MC | Tom Tatham | 174.33 | 349.33 |
| | | | | General Journal | 04/01/2016 | 12 | Tom Tatham | La Quinta Inn  - Greg Kane - TPT MC | Tom Tatham | 360.36 | 709.69 |
| | | | | Check | 04/05/2016 | 999 | Greg Kane | March and April Rent | Amegy Bank | 3,600.00 | 4,309.69 |
| | | | | General Journal | 04/08/2016 | 16 | Mark Willis | La Quinta - Greg, Linda, Steve - MAW Amex | -SPLIT- | 1,486.94 | 5,796.63 |
| | | | | General Journal | 04/08/2016 | 16 | Mike Willis | La Quinta - Greg, Linda, Steve - MTW Amex | Travel / Lodging | 456.09 | 6,252.72 |
| | | | | General Journal | 04/13/2016 | 20 | Mark Willis | La Quinta - Greg,Kane - MAW Amex | Willis Group- Jabco | 383.76 | 6,636.48 |

WIL_00001694

Accrual Basis

**Hopewell-Pilot  Project, LLC**
**General Ledger**
As of December 31, 2016

| | | | Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Check | 04/20/2016 | wire | Steve Ervi/SDE Ventures LLC | Lodging | Amegy Bank | 366.65 | 7,003.33 |
| | | | Check | 04/20/2016 | 1002 | Greg Kane | Invoice #1 land work, miles, suplies, lodging - Greg | Amegy Bank | 162.00 | 7,165.33 |
| | | | General Journal | 04/22/2016 | 21 | Mark Willis | La Quinta - Greg.Kane - MAW Willis | Willis Group- Jabco | 389.15 | 7,554.48 |
| | | | Bill | 04/29/2016 | | Steve Ervi/SDE Ventures LLC | Time and milage | Accounts Payable | 219.45 | 7,773.93 |
| | | | General Journal | 05/03/2016 | 24 | | Holiday Inn Express - Greg Kane - MAW  Amex | Willis Group- Jabco | 606.00 | 8,379.93 |
| | | | General Journal | 05/16/2016 | 28 | Mark Willis | Steve Ervi paid on Marks Card | Willis Group- Jabco | 140.39 | 8,520.32 |
| | | | Check | 05/18/2016 | wire | | May 1 - 15, 2016 - Steve Ervi | Amegy Bank | 83.05 | 8,603.37 |
| | | | Bill | 05/30/2016 | | Greg Kane | Greg Kane This was settled in August | Accounts Payable | 179.20 | 8,782.57 |
| | | | Bill | 06/20/2016 | | Steve Ervi/SDE Ventures LLC | Steve Ervi June 1-15, 2016 | Accounts Payable | 36.30 | 8,818.87 |
| | | | General Journal | 06/30/2016 | 35 | | Uber SF to Green Bay Advisors meeting - TPT CC | Tom Tatham | 15.20 | 8,834.07 |
| | | | Bill | 07/15/2016 | | Steve Ervi/SDE Ventures LLC | Steve Ervi July 1-015, 2016 | Accounts Payable | 143.55 | 8,977.62 |
| | | | General Journal | 07/21/2016 | 45 | Tom Tatham | Uber - for SMW presentation TPT, paid with his CC | Tom Tatham | 10.84 | 8,988.46 |
| | | | General Journal | 07/22/2016 | 46 | Tom Tatham | Gas to Madisonville To/From TPT | Tom Tatham | 38.29 | 9,026.75 |
| | | | Bill | 07/26/2016 | July 16-29-2016 | Steve Ervi/SDE Ventures LLC | Steve Ervu  July 16-29, 2016 | Accounts Payable | 58.30 | 9,085.05 |
| | | | Credit | 08/19/2016 | | Greg Kane | | Accounts Payable | -179.20 | 8,905.85 |
| | | | Bill | 08/23/2016 | Aug 1-15, 2016 | Steve Ervi/SDE Ventures LLC | | Accounts Payable | 48.40 | 8,954.25 |
| | | | General Journal | 08/31/2016 | 57 | | TPT Credit Card Uber | Business Entertainment | 32.71 | 8,986.96 |
| | | | General Journal | 08/31/2016 | 57 | | TPT Credit Card Uber | Business Entertainment | 5.10 | 8,992.06 |
| | | | General Journal | 08/31/2016 | 57 | | TPT Credit Card Uber | Business Entertainment | 40.00 | 9,032.06 |
| | | | General Journal | 08/31/2016 | 57 | | TPT Credit Card Uber | Business Entertainment | 18.60 | 9,050.66 |
| | | | Bill | 08/31/2016 | | Steve Ervi/SDE Ventures LLC | | Accounts Payable | 47.30 | 9,098.16 |
| | | | Bill | 09/01/2016 | | Steve Ervi/SDE Ventures LLC | | Accounts Payable | 39.95 | 9,138.11 |
| | | | Check | 09/16/2016 | Trans | Title Rover, LLC | | Amegy Bank | 500.00 | 9,638.11 |
| | | | General Journal | 09/23/2016 | 65 | Tom Tatham | Record Reimbursable expenses Hertz 9/23/256 - M| Tom Tatham | 305.45 | 9,943.56 |
| | | | General Journal | 09/30/2016 | 66 | Tom Tatham | Record Uber expenses for September - TPT credit | Tom Tatham | 75.10 | 10,018.66 |
| | | | Bill | 09/30/2016 | | Harry P Gamble IV | | Accounts Payable | 105.30 | 10,123.96 |
| | | | Bill | 09/30/2016 | | Steve Ervi/SDE Ventures LLC | Services Sept 16-30, 2016 | Accounts Payable | 60.50 | 10,184.46 |
| | | | Bill | 10/15/2016 | | Steve Ervi/SDE Ventures LLC | | Accounts Payable | 172.70 | 10,357.16 |
| | | | Bill | 10/31/2016 | | Steve Ervi/SDE Ventures LLC | | Accounts Payable | 73.70 | 10,430.86 |
| | | | Bill | 10/31/2016 | | Harry P Gamble IV | | Accounts Payable | 152.10 | 10,582.96 |
| | | | Bill | 11/16/2016 | | Steve Ervi/SDE Ventures LLC | Services Nov 1-15, 2016 | Accounts Payable | 46.75 | 10,629.71 |
| | | | General Journal | 11/30/2016 | 68 | Tom Tatham | TPT out of pocket expenses Oct - Nov | Title Records, Maps & Drafting | 760.91 | 11,390.62 |
| | | | Bill | 11/30/2016 | | Harry P Gamble IV | November services | Accounts Payable | 138.06 | 11,528.68 |
| | | | General Journal | 12/15/2016 | 73 | | TPT estimate Dec 1-15,2016 | -SPLIT- | 350.00 | 11,878.68 |
| | | | Bill | 12/31/2016 | | Harry P Gamble IV | | Accounts Payable | 100.04 | 11,978.72 |
| | Total Travel / Lodging - Other | | | | | | | | 11,978.72 | 11,978.72 |
| Total Travel / Lodging | | | | | | | | | 11,978.72 | 11,978.72 |
| **unknown expense** | | | | | | | | | | 0.00 |
| | Total unknown expense | | | | | | | | | 0.00 |
| **No accnt** | | | | | | | | | | 0.00 |
| | Total no accnt | | | | | | | | | 0.00 |
| TOTAL | | | | | | | | | 0.00 | 0.00 |

WIL_00001695

**EXHIBIT CC**

Page 490

From: **Mark Willis** Mark@willisgroupus.com
Subject: RE: Oct 28 Subscription Payment
Date: October 26, 2016 at 3:26 PM
To: Justin Pannu justinpannu1503@gmail.com, Tom Tatham tpt@lngpartners.com
Cc: Cliff Sharp ecsharp111@gmail.com, Chad Martin chadlandmark@hotmail.com, Richard E. Nawracaj
rich.nawracaj@nawracaj-law.com, Jerome E. Johns jerry.johns@intelometry.com



Gents,

Please try and coordinate this for timely payment as we currently have commitments that we have budgeted for accordingly.

Thanks,  Mark

Mark Willis – CEO & President
O 713-547-4510  I  M 713-248-1555  I  mark@willisgroupus.com  I  www.linkedin.com/pub/mark-willis
1400 Post Oak Boulevard, Suite 200  I  Houston, TX 77056  I  www.wgcompanies.com
Willis Group – Family of Companies
Professional ServicesPllProject + Process DeliveryPllTalent Acquisition + Flexible Workforce Solutions
T
THIS ELECTRONIC MESSAGE, INCLUDING ANY ACCOMPANYING DOCUMENTS, IS CONFIDENTIAL
and may contain information that is privileged and exempt from disclosure under applicable law. If you are neither the intended
recipient nor responsible for delivering the message to the intended recipient, please note that any dissemination, distribution, copying
or the taking of any action in reliance upon the message is strictly prohibited. If you have received this communication in error, please
notify the sender immediately.

-----Original Message-----
From: Justin Pannu [mailto:justinpannu1503@gmail.com]
Sent: Tuesday, October 25, 2016 10:08 PM
To: Tom Tatham <tpt@lngpartners.com>
Cc: Cliff Sharp <ecsharp111@gmail.com>; Mark Willis <Mark@willisgroupus.com>; Chad Martin <chadlandmark@hotmail.com>;
Richard E. Nawracaj <rich.nawracaj@nawracaj-law.com>; Jerome E. Johns <jerry.johns@intelometry.com>
Subject: Re: Oct 28 Subscription Payment

Hi Tom,

Thanks for the reminder! I am in New York until Sunday. I will coordinate with our group and get back to you.

Justin

Sent from my iPhone

On Oct 25, 2016, at 2:30 PM, Tom Tatham <tpt@lngpartners.com> wrote:

Hi Justin,
I hope you are doing well!  As I will be out Friday at our first lease acquisition closing in Madisonville, I wanted to confirm with you
the details of the $205,000 Subscription Payment from EnSource Investments, LLC which is due on Friday.  Wire transfer
instructions are as follows:  Financial Institution – Amegy Bank, N.A.; ABA# 11301258; Account# 5793018168;  Account Holder-
Hopewell-Pilot Project, LLC; Reference-For the benefit of EnSource Investments, LLC.  Please let me know as soon as possible if
we can rely on the payment being made promptly on Friday as we have included in our cash forecast and have a number of
obligations coming due by the end of the month in addition to payment for the purchase of the new O,G&M leases.  It would be a big
help and greatly appreciated if you could get the payment processed early in the day.   Please give me a call if you have any
questions.  Thanks for your help!
Best regards,
Tom
713 547-4531 (office direct
713 504-7199 (mobile

**To:**     Justinpannu1503@gmail.com[Justinpannu1503@gmail.com]
**Cc:**     Tom Tatham[TTatham@hopewelltx.com]; Mark Willis[Mark@willisgroupus.com]; Chad
Martin[ChadMartin@bgcpartners.com]; Michelle Johnson[mjohnson@willisgroupus.com]
**From:**   Tom Tatham
**Sent:**   Sat 7/9/2016 12:16:09 PM
**Subject:** Hopewell-Pilot Project, LLC - Private Placement of Additional Equity Shares - CA & Non-Compete
Agreement
Confidentiality Agreement-Hopewell & Justin Pannu - July 9, 2016.doc
Hopewell - Pilot Project -Term Sheet w-Exhibits - IAE Shares - revised July 2016.pdf

Hi Justin,

Mark Willis asked that I send you our standard form CA & Non-Compete Agreement.  Please execute, scan and return
or give me a call if you have questions.  I have also attached a Term Sheet for the proposed private placement of IAE
Shares for your review.  Once we have received your executed CA, we will forward the relevant offering materials.

Best regards,

Tom Tatham
Manager
Hopewell-Private Project, LLC
713 547-4531 (office direct
713 504-7199 (mobile

# Hopewell – Pilot Project, LLC
## Term Sheet
## For the Private Placement of Initial Additional Equity Shares
## July 2016

**Issuer:**  Hopewell-Pilot Project, LLC, a Texas Limited Liability Company ("Hopewell");

**Offering Amount:**  Up to 1,000,000 of Initial Additional Equity Shares ("IAE Shares") Common Shares/Member Interests (with preferential rights to revenue and exchange rights);

**Minimum Subscription:**  25,000 shares (for accredited investors only);

**Offering Price:**  $2.00 per share;

**Preferential Rights to Distributions:**  IAE Shares will receive all cash distributions of Hopewell until they have received $2.00 per share in distributions; following which all cash distributions of Hopewell shall be made pro-rata to all shareholders including holders of Founders Shares and any Additional Shares issued;

**IAE Share Exchange Rights:**  Purchasers of IAE Shares shall be issued Share Exchange Warrants for the rights to exchange, on or before June 30, 2017 all IAE Shares held for two (2) shares of Title Rover, LLC ("TR").  A copy of the Share Exchange agreement is attached as Exhibit A;

**Closing Period:**  On or before July 30, 2016 or upon the receipt of minimum subscriptions of 125,000 shares and for 20 days thereafter.

**Existing Capital Structure:**  There are 1,000,000 shares of Founders Shares currently outstanding of 5,000,000 shares authorized and available for issue.  Hopewell has no other shares, equity interests or options for the purchase of Hopewell shares or equity interests currently outstanding.  A copy of the current holders of Founders Shares representing all Hopewell shares currently outstanding is attached as Exhibit B;

**Use of Proceeds:**  All proceeds from the offering and subscription of IAE Shares will be used for: 1) purchase of oil, gas, & mineral leases; oil, gas & mineral "top" leases; oil, gas & mineral interests including non-participating and term royalty interests; all within the Hopewell Area of Mutual Interest ("AMI") covering Madison County, Texas and adjacent counties; 2) funding of Hopewell general and administrative overhead including maintenance of the service contract with TR; and 3) procurement of suitable legal opinions and memorandums regarding validity of existing Designated Pooled Units and underlying pooled leases within the AMI;

**Exclusive Use of Title Rover Technology:**  Hopewell has the exclusive right pursuant to an evergreen contract ("TR Service Contract") to use Title Rover proprietary technology within the AMI for payment of all of TR's direct costs of providing personnel and acquiring digital and other data specific to use by Hopewell in the AMI.  The TR Service Contract is cancellable by TR upon 30 day prior written notice to TR beginning January 1, 2017;

**Other Terms and Conditions:**  As provided in final Subscription Documents.

1

# Exhibit A

### SHARE EXCHANGE WARRANT

To Exchange Initial Additional Equity Shares of Hopewell-Pilot Project, LLC
for Common Shares of

### TITLE ROVER, LLC

(incorporated under the laws of the State of Texas)

(void after June 30, 2017)

No. EW-___ for the acquisition of up to _____              July_____,_____
Common Shares of Title Rover, LLC

**THIS IS TO CERTIFY** that, for value received, _____ (the
"**Holder**") is entitled, subject to the terms and conditions hereinafter set forth, to receive from
the Company by way of exchange of Initial Additional Equity Shares of Hopewell-Pilot Project,
LLC held by Holder as at the Exercise Date up to that number of Common Shares provided
above as specified in Exchange Form & Holder's Notice and in accordance with the terms in
Section 2 below. Holder, as herein provided, may receive two Common Shares of the Company
for each 1 Initial Additional Equity Share so exchanged after exercise of this Exchange Warrant
by surrendering to the Company at the address set forth in Section 4 below, this Exchange
Warrant, together with an Exchange Form & Holder's Notice, duly completed and executed, and
the certificates representing the Initial Additional Equity Shares of Hopewell-Pilot Project, LLC
to be exchanged pursuant to the terms of this Exchange Warrant.

1.    **Definitions**.  In this Exchange Warrant, including the preamble, unless there is something
      in the subject matter or context inconsistent herewith, the following terms shall have the
      following meanings, respectively:

      "**Affiliate**" means an affiliate within the meaning of the *Texas Business Corporations
      Act*;

      "**Business Day**" means any day except Saturday, Sunday or any day on which banks are
      generally not open for business in Houston, Texas;

      "**Common Shares**" means the common shares or members interests in the capital of the
      Company as the same are constituted on the date hereof;

      "**Company**" means Title Rover, LLC, a limited liability company organized under the
      laws and jurisdiction of the state of Texas;

      "**Company Reorganization**" means any reclassification of the Common Shares of the
      Company at any time outstanding or change of the Common Shares into other shares,
      including in connection with (i) the consolidation, amalgamation or merger of the

2

Company with or into any other company or (ii) any transfer of the undertaking or assets of the Company as an entirety or substantially as an entirety to another person or any exchange of Common Shares into securities of another company;

"**Exchange Form & Holder's Notice**" means the exchange form attached hereto as Schedule "A";

"**Exchange Warrant**" means this exchange warrant to acquire Common Shares and any deed or instrument supplemental or ancillary hereto and any schedules hereto or thereto;

"**Exercise Date**" means the date on which the Exchange Warrants are exercised;

"**Expiry Date**" means June 30, 2017; and

"**Initial Additional Equity Shares**" means Initial Additional Equity Shares in the capital of Hopewell-Pilot Project, LLC;

2.   **Exchange Warrant Conditions**.  This Exchange Warrant entitles the Holder, upon its exercise, to receive up to such number of Common Shares as set forth above from the Company by way of exchange of the Exchange Warrant and either:

2.1   Electing to transfer and assign 100% of the Initial Additional Equity Shares held by Holder as at the Exercise Date, free from any and all taxes, liens and charges, which assignment will provide for the issuance by the Company to the Holder of the maximum number of Common Shares as stated herein; or

2.2   Electing to transfer and assign a specified number of Initial Additional Equity Shares (being less than all of the Initial Additional Equity Shares held by Holder), free from any and all taxes, liens and charges, for each two Common Shares to be issued by the Company pursuant to the timely exercise of this Exchange Warrant,

(such Common Shares issuable to the Holder on exercise of this Exchange Warrant referred to as the "**Exchange Warrant Shares**").

3.   **Expiration of Exchange Warrants**.   Notwithstanding any other provision of this Exchange Warrant, all rights under this Exchange Warrant to exercise such Exchange Warrant or part thereof and to acquire Exchange Warrant Shares shall wholly cease and terminate and this Exchange Warrant shall be wholly void and of no valid or binding effect as at 5:00 p.m. (Houston time) on the Expiry Date.

4.   **Exercise of Exchange Warrants**.  Any exercise of this Exchange Warrant by the Holder must be in respect of all Exchange Warrant Shares issuable pursuant to the terms of this Exchange Warrant and no subsequent exercises will be permitted. The rights represents by this Exchange Warrant may be exercised by the Holder, by the surrender of this Exchange Warrant, with the attached Exchange Form duly executed, together with duly endorsed certificates for the Initial Additional Equity Shares to be exchanged pursuant to this Exchange Warrant at Suite 200, 1400 Post Oak Blvd, Houston Texas, 77056 Attn:

WIL_00002595

Thomas P. Tatham (or such other office or agency of the Company as it may designate by notice in writing to the Holder at the address of the Holder appearing on the books of the Company at any time during the period within which the rights represented by this Exchange Warrant may be exercised).  The Company agrees that the Exchange Warrant Shares acquired on exercise of this Exchange Warrant shall be and be deemed to be issued to the Holder as the registered owner of such shares as of the close of business on the date on which this Exchange Warrant shall have been surrendered and payment made for such shares by surrender of Initial Additional Equity Shares as aforesaid.  Certificates for the Exchange Warrant Shares so issuable shall be delivered to the Holder within a reasonable time, not exceeding thirty (30) Business Days, after the rights represented by this Exchange Warrant shall have been so exercised.

5. **Not a Shareholder**.  Nothing in this certificate or in the holding of an Exchange Warrant evidenced hereby shall be construed as conferring upon the Holder any right or interest whatsoever as a shareholder of the Company.

6. **No Fractional Shares**.  Notwithstanding any provisions to the contrary herein, the Company shall not be required to issue any fractional Common Shares (unless such fractional shares arise from a consolidation of shares) in connection with any exercise of the right to convert this Exchange Warrant into Common Shares, and in the event that the calculation of the number of Common Shares issuable upon such exercise results in a number which includes a fraction of whole shares, then the Company shall be required to issue the largest number of whole shares into which this Exchange Warrant is exercisable.

7. **Covenants of the Corporation**.  The Company hereby agrees as follows:

7.1   All Common Shares that may be issued upon the exercise of the rights represented by this Exchange Warrant will, upon issuance, be validly issued as fully paid and non-assessable and shall be free from any and all liens and charges with respect to the issue thereof.

7.2   As long as this Exchange Warrant remains outstanding, the Company shall reserve and there shall remain unissued out of its capital a sufficient number of its Common Shares to satisfy the right of purchase herein provided for should the Holder determine to exercise its rights in respect of the Common Shares for the time being called for and represented by this Exchange Warrant.

8. **Adjustment of Subscription Rights**.

8.1   If at any time prior to the Expiry Time there shall be a Company Reorganization, and the Holder thereafter exercises the right to purchase Common Shares hereunder, the Holder shall be entitled to receive, and shall accept, in lieu of the number of Common Shares to which the Holder was theretofore entitled upon such exercise, the kind and amount of shares and other securities or property which the Holder would have been entitled to receive as a result of such Company Reorganization if, on the effective date thereof, the Holder had been the registered

4

holder of the number of Common Shares to which the Holder was theretofore entitled upon exercise.  The subdivision or consolidation of the Common Shares at any time outstanding into a greater or lesser number of Common Shares shall be deemed not to be a Company Reorganization for the purposes of this Section 8.1.

8.2     If and whenever at any time prior to the Expiry Time, the Company shall (i) subdivide the outstanding Common Shares into a greater number of shares, (ii) consolidate the outstanding Common Shares into a smaller number of shares, or (iii) issue Common Shares (or other securities convertible into or exchangeable for Common Shares) to the holders of all or substantially all of the outstanding Common Shares by way of a stock dividend on the Common Shares, the number of Common Shares issuable by the Company upon exercise by Holder of this Exchange Warrant shall be adjusted accordingly. The adjustments provided for herein are cumulative and shall apply to successive subdivisions, consolidations, distributions, issues or other events resulting in any adjustment.  Nothing herein shall obligate the Company to make adjustments for any additional Common Shares issued by the Company for "fair value" as determined in good faith by the Directors of the Company.

8.3     Any question arising with respect to the adjustments provided herein shall be conclusively determined by any firm of certified public accountants of national recognition that the Company may designate and who will have access to all appropriate records, and such determination will be binding upon the Company and the Holder.

8.4     The Company shall from time to time immediately after the occurrence of any event which requires an adjustment or readjustment as provided herein, notify the Holder by specifying the nature of the event requiring the same and the amount of the adjustment necessitated thereby and setting forth in reasonable detail the method of calculation and the facts upon which such calculation is based and the adjustment specified therein shall be verified by an opinion of the auditors of the Company and shall be conclusive and binding on all parties in interest.  The Company shall, except with respect to any subdivision or consolidation of the Common Shares, forthwith give notice to the Holder specifying the event requiring such adjustment or readjustment and the results thereof.

9.     **Exchange of Exchange Warrant**.  This Exchange Warrant is exchangeable, upon the surrender hereof by the Holder at the office or agency of the Company referred to in Section 4 hereof, for new exchange warrants of like tenor representing in the aggregate the right to subscribe for and purchase the number of Common Shares that may be subscribed for and purchased hereunder. **Mutilated or Missing Warrants.**  Upon receipt of evidence satisfactory to the Company of the loss, theft, destruction or mutilation of this Exchange Warrant and, in the case of any such loss, theft or destruction, upon delivery of a bond or indemnity satisfactory to the Company, acting reasonably, or, in the case of any such mutilation, upon surrender or cancellation of this Exchange Warrant, the Company will issue to the Holder a new warrant of like tenor, in lieu of this Exchange Warrant,

5

representing the right to subscribe for and purchase the number of Common Shares which may be subscribed for and purchased hereunder.

10. **Governing Law**.   This Exchange Warrant shall be governed by and construed in accordance with the laws of the State of Texas applicable therein.  The reference to such laws shall not, by conflict of laws rules or otherwise, require the application of the law of any jurisdiction other than the State of Texas.  The Parties hereby irrevocably attorns to the exclusive jurisdiction of the courts of the State of Texas.

11. **Severability**.   If any one or more of the provisions or parts thereof contained in this Exchange Warrant should be or become invalid, illegal or unenforceable in any respect in any jurisdiction, the remaining provisions or parts thereof contained herein shall be and shall be conclusively deemed to be, as to such jurisdiction, severable therefrom and:

   11.1   the validity, legality or enforceability of such remaining provisions or parts thereof shall not in any way be affected or impaired by the severance of the provisions or parts thereof severed; and

   11.2   the invalidity, illegality or unenforceability of any provision or part thereof contained in this Exchange Warrant in any jurisdiction shall not affect or impair such provision or part thereof or any other provisions of this Exchange Warrant in any other jurisdiction.

12. **Headings**.   The headings of the sections, subsections, paragraphs, subparagraphs and clauses of this Exchange Warrant have been inserted for convenience of reference only and do not define, limit, alter or enlarge the meaning of any provision of this Exchange Warrant.

13. **Numbering of Articles, etc.**  Unless otherwise stated, a reference herein to a numbered or lettered section, subsection, paragraph, subparagraph or schedule refers to the section, subsection, paragraph, subparagraph or schedule bearing that number or letter in this Exchange Warrant.

14. **Gender**.  Whenever used in this Exchange Warrant, words importing the singular number only shall include the plural, and vice versa, and words importing the masculine gender shall include the feminine gender.

15. **Day not a Business Day**.  In the event that any day on or before which any action is required to be taken hereunder is not a Business Day, then such action shall be required to be taken on or before the requisite time on the next succeeding day that is a Business Day.  If the payment of any amount is deferred for any period, then such period shall be included for purposes of the computation of any interest payable hereunder.

16. **Binding Effect; Assignability**.  This Exchange Warrant and all of its provisions shall enure to the benefit of the Holder and its successors and permitted assigns and shall be binding upon the Company and its successors and permitted assigns.  This Exchange Warrant is not assignable by the Holder without the prior written consent of the Company.

**IN WITNESS WHEREOF** the Company has caused this Exchange Warrant to be signed by its duly authorized officers and this Exchange Warrant to be dated the _____ day of _____, 2016.

**TITLE ROVER, LLC**

By:_____
*Authorized Signing Officer*

## Exhibit B
## Hopewell-Pilot Project, LLC
## Currently Outstanding Shares
## July 1, 2016

| Founders Shares: | Shares Held |
|---|---|
| Hopewell Willis Holdings, LLC | 450,000 |
| Willis Group, LLC | 225,000 |
| Hopewell Tatham Holdings, LLC | 112,500 |
| LNG Partners, LLC | 112,500 |
| Mark A. Bush | 100,000 |
| Total Outstanding | 1,000,000 |

Note:  No other shares, equity interests, or options for the purchase of equity interests in Hopewell-Pilot Project, LLC are currently outstanding.

2

**To:**      Justin Pannu[justinpannu1503@gmail.com]
**Cc:**      Richard E. Nawracaj[rich.nawracaj@nawracaj-law.com]; Mark Willis[Mark@willisgroupus.com]; chadlandmark@hotmail.com[chadlandmark@hotmail.com]; ecsharp111@gmail.com[ecsharp111@gmail.com]; jerry.johns@intelometry.com[jerry.johns@intelometry.com]; Chad Martin[ChadMartin@bgcpartners.com]
**From:**   Tom Tatham
**Sent:**    Fri 10/28/2016 9:13:47 AM
**Subject:** Re: Oct 28 Subscription Payment

Thanks Justin for the prompt attention and early transfer today! I confirm
that the Hopewell Amegy account has been duly credited.  Have a great
weekend!  We will be in touch.
Thanks again,
Tom


On 10/28/16, 9:04 AM, "Justin Pannu" <justinpannu1503@gmail.com> wrote:

>Hi Tom,
>
>The funds have been transferred. You should see them now. Please confirm
>receipt of funds when you are able.
>
>Thanks!
>
>Justin
>
>Sent from my iPhone
>
>> On Oct 27, 2016, at 11:18 AM, Tom Tatham <tpt@lngpartners.com> wrote:
>>
>> Rich,
>>  Attached is a copy of the fully executed Exchange Warrant covering the
>> full subscription of Hopewell IAE Shares by EnSource Investments, LLC.
>>I
>> will forward the original to you or as you direct upon receipt of the
>> $205,000 subscription payment due tomorrow.
>> Thanks,
>> Tom
>>
>> PS:  Great win last night!  Go Cubs!
>>
>>> On 10/26/16, 7:21 PM, "Tom Tatham" <tpt@lngpartners.com> wrote:
>>>
>>> Rich,
>>> No need!  If Friday payment is made promptly on time.  I will forward
>>> Exchange Warrant for full Subscription and we will trust that final
>>> payment is made.  No need for extra legal; we trust you guys!
>>> Thanks,
>>> Tom
>>>
>>>
>>> Sent from my iPhone
>>>
>>>> On Oct 26, 2016, at 6:49 PM, Richard E. Nawracaj
>>>> <rich.nawracaj@nawracaj-law.com> wrote:
>>>>
>>>> My client has rekindled the desire to have warrants issued for each
>>>> tranche.
>>>>
>>>> I'll prepare the warrants for the past tranche and the one for

>>>>Thursday
>>>> and forward to you for execution.  They will be prepared from the form
>>>> of warrant forwarded to me previously.
>>>>
>>>> Thanks,
>>>> Rich
>>>>
>>>> Richard E. Nawracaj
>>>> Law Offices of Richard E. Nawracaj
>>>> 155 N. Wacker Drive, Suite 4250
>>>> Chicago, Illinois 60606
>>>> Phone: (312) 803-4837
>>>> Cell: (773) 255-4541
>>>> Fax: (312) 873-4640
>>>> rich.nawracaj@nawracaj-law.com
>>>>
>>>> -----Original Message-----
>>>> From: Mark Willis [mailto:Mark@willisgroupus.com]
>>>> Sent: Wednesday, October 26, 2016 5:27 PM
>>>> To: Justin Pannu <justinpannu1503@gmail.com>; Tom Tatham
>>>> <tpt@lngpartners.com>
>>>> Cc: Cliff Sharp <ecsharp111@gmail.com>; Chad Martin
>>>> <chadlandmark@hotmail.com>; Richard E. Nawracaj
>>>> <rich.nawracaj@nawracaj-law.com>; Jerome E. Johns
>>>> <jerry.johns@intelometry.com>
>>>> Subject: RE: Oct 28 Subscription Payment
>>>>
>>>> Gents,
>>>>
>>>> Please try and coordinate this for timely payment as we currently have
>>>> commitments that we have budgeted for accordingly.
>>>>
>>>> Thanks,  Mark
>>>>
>>>> Mark Willis - CEO & President
>>>> O 713-547-4510  |  M 713-248-1555  |  mark@willisgroupus.com  |
>>>> www.linkedin.com/pub/mark-willis
>>>> 1400 Post Oak Boulevard, Suite 200  |  Houston, TX 77056  |
>>>> www.wgcompanies.com Willis Group - Family of Companies Professional
>>>> ServicesP||Project + Process DeliveryP||Talent Acquisition + Flexible
>>>> Workforce Solutions T THIS ELECTRONIC MESSAGE, INCLUDING ANY
>>>> ACCOMPANYING DOCUMENTS, IS CONFIDENTIAL and may contain information
>>>>that
>>>> is privileged and exempt from disclosure under applicable law. If you
>>>> are neither the intended recipient nor responsible for delivering the
>>>> message to the intended recipient, please note that any dissemination,
>>>> distribution, copying or the taking of any action in reliance upon the
>>>> message is strictly prohibited. If you have received this
>>>>communication
>>>> in error, please notify the sender immediately.
>>>>
>>>> -----Original Message-----
>>>> From: Justin Pannu [mailto:justinpannu1503@gmail.com]
>>>> Sent: Tuesday, October 25, 2016 10:08 PM
>>>> To: Tom Tatham <tpt@lngpartners.com>
>>>> Cc: Cliff Sharp <ecsharp111@gmail.com>; Mark Willis
>>>> <Mark@willisgroupus.com>; Chad Martin <chadlandmark@hotmail.com>;
>>>> Richard E. Nawracaj <rich.nawracaj@nawracaj-law.com>; Jerome E. Johns
>>>> <jerry.johns@intelometry.com>

>>>> Subject: Re: Oct 28 Subscription Payment
>>>>
>>>> Hi Tom,
>>>>
>>>> Thanks for the reminder! I am in New York until Sunday. I will
>>>> coordinate with our group and get back to you.
>>>>
>>>> Justin
>>>>
>>>> Sent from my iPhone
>>>>
>>>>> On Oct 25, 2016, at 2:30 PM, Tom Tatham <tpt@lngpartners.com> wrote:
>>>>>
>>>>> Hi Justin,
>>>>> I hope you are doing well!  As I will be out Friday at our first
>>>>>lease
>>>>> acquisition closing in Madisonville, I wanted to confirm with you the
>>>>> details of the $205,000 Subscription Payment from EnSource
>>>>>Investments,
>>>>> LLC which is due on Friday.  Wire transfer instructions are as
>>>>>follows:
>>>>> Financial Institution - Amegy Bank, N.A.; ABA# 113011258; Account#
>>>>> 5793018168;  Account Holder- Hopewell-Pilot Project, LLC;
>>>>>Reference-For
>>>>> the benefit of EnSource Investments, LLC.  Please let me know as soon
>>>>> as possible if we can rely on the payment being made promptly on
>>>>>Friday
>>>>> as we have included in our cash forecast and have a number of
>>>>> obligations coming due by the end of the month in addition to payment
>>>>> for the purchase of the new O,G&M leases.  It would be a big help and
>>>>> greatly appreciated if you could get the payment processed early in
>>>>>the
>>>>> day.   Please give me a call if you have any questions.  Thanks for
>>>>> your help!
>>>>> Best regards,
>>>>> Tom
>>>>> 713 547-4531 (office direct
>>>>> 713 504-7199 (mobile
>>>>
>>
>> <Title Rover, LLC-Share Exchange Warrant-Hopewell - IAE Shares -
>>EnSource.pdf>

**To:**      Justin Pannu[justinpannu1503@gmail.com]; Tom Tatham[tpt@lngpartners.com]
**Cc:**      Cliff Sharp[ecsharp111@gmail.com]; Chad Martin[chadlandmark@hotmail.com]; Richard E.
Nawracaj[rich.nawracaj@nawracaj-law.com]; Jerome E. Johns[jerry.johns@intelometry.com]
**From:**    Mark Willis
**Sent:**    Wed 10/26/2016 5:26:55 PM
**Subject:** RE: Oct 28 Subscription Payment

Gents,

==Please try and coordinate this for timely payment as we currently have==
==commitments that we have budgeted for accordingly.==

Thanks, Mark

Mark Willis - CEO & President
O 713-547-4510 | M 713-248-1555 | mark@willisgroupus.com |
www.linkedin.com/pub/mark-willis
1400 Post Oak Boulevard, Suite 200 | Houston, TX 77056 |
www.wgcompanies.com
Willis Group - Family of Companies
Professional ServicesP||Project + Process DeliveryP||Talent Acquisition +
Flexible Workforce Solutions
T
THIS ELECTRONIC MESSAGE, INCLUDING ANY ACCOMPANYING DOCUMENTS, IS
CONFIDENTIAL
and may contain information that is privileged and exempt from disclosure
under applicable law. If you are neither the intended recipient nor
responsible for delivering the message to the intended recipient, please
note that any dissemination, distribution, copying or the taking of any
action in reliance upon the message is strictly prohibited. If you have
received this communication in error, please notify the sender immediately.

-----Original Message-----
From: Justin Pannu [mailto:justinpannu1503@gmail.com]
Sent: Tuesday, October 25, 2016 10:08 PM
To: Tom Tatham <tpt@lngpartners.com>
Cc: Cliff Sharp <ecsharp111@gmail.com>; Mark Willis
<Mark@willisgroupus.com>; Chad Martin <chadlandmark@hotmail.com>; Richard E.
Nawracaj <rich.nawracaj@nawracaj-law.com>; Jerome E. Johns
<jerry.johns@intelometry.com>
Subject: Re: Oct 28 Subscription Payment

Hi Tom,

Thanks for the reminder! I am in New York until Sunday. I will coordinate
with our group and get back to you.

Justin

Sent from my iPhone

> On Oct 25, 2016, at 2:30 PM, Tom Tatham <tpt@lngpartners.com> wrote:
>
> Hi Justin,
> I hope you are doing well!  As I will be out Friday at our first lease
acquisition closing in Madisonville, I wanted to confirm with you the
details of the $205,000 Subscription Payment from EnSource Investments, LLC
which is due on Friday.  Wire transfer instructions are as follows:
Financial Institution - Amegy Bank, N.A.; ABA# 113011258; Account#

5793018168;  Account Holder- Hopewell-Pilot Project, LLC; Reference-For the benefit of EnSource Investments, LLC.  Please let me know as soon as possible if we can rely on the payment being made promptly on Friday as we have included in our cash forecast and have a number of obligations coming due by the end of the month in addition to payment for the purchase of the new O,G&M leases.  It would be a big help and greatly appreciated if you could get the payment processed early in the day.    Please give me a call if you have any questions.  Thanks for your help!
> Best regards,
> Tom
> 713 547-4531 (office direct
> 713 504-7199 (mobile

**To:** Justin Pannu[justinpannu1503@gmail.com]
**Cc:** Martin, Chad[ChadMartin@bgcpartners.com]; Jeff Merola[jeff.merola@intelometry.com]; jerry johns[jerry.johns@intelometry.com]; Jame Dibble[James.Dibble@intelometry.com]; Mark Willis[Mark@willisgroupus.com]; Tom Tatham[TTatham@hopewelltx.com]
**From:** Tom Tatham
**Sent:** Thur 8/18/2016 1:26:11 PM
**Subject:** Re: Profit Potential - Hopewell opportunities

REGARDING PROJECTIONS: Hopewell is an exploitation/asset play! Proceeds from the private placement will most likely be fully expended by the end of 2016 with the result that Hopewell will acquire and own a portfolio of leases (1,000 net acre target) and also possibly validate a much larger "top lease" play which will entail additional outside financing to exploit. An low side/high side estimate of the Hopewell opportunities follow:

PURCHASE OF LEASES: Assuming the private placement is fully subscribed, if we are able to buy 1,000 acres of O,G&M leases in our target areas with the $1,000,000 that has been allocated, those leases should be worth from $5,000/acre up to $60,000/acre based upon historical comps and currently rumored asks/offers. If we are able to acquire the 1,000 net acre target, a sale at the low end of the range will provide $5,000,000 to Hopewell with the IAE Shareholders receiving $3,500,000 and the Founding Shareholders receiving $1,500,000. This assumes no value for the "top lease" play or any conversion/exchange to TR. I am reasonably confident that whatever leases we acquire will have value in the stated range.

TOP LEASE PLAY: If we are able to validate the "top lease" play from a legal and quantitative stand point in the next few months, we will seek to sell the concept most likely to a "hedge fund" or private equity group that has appetite for the inherent risk and reward. A likely deal scenario would be for the hedge fund/PE group to fund the purchase of the top leases (including Hopewell direct costs & overhead related thereto) in exchange for 2x return and 50/50 split thereafter. The current rumor is that $2.2B is being offered for a 40,000 acre lease block in our AMI or $55,000/net acre. Assuming the best case possible and the purported offer was accepted following a successful top lease effort: if this lease block were fully top leased at $1,000/acre and there was a 10% success rate (I.e. 10% of the current leases fail), then the gross reward would be $220,000,000 ($150,000,000 to hedge fund/PE group for $40,000,000 investment/bet and $70,000,000 to Hopewell for its 50% profit share exceeding 2x].

EXCHANGE FOR TITLE ROVER EQUITY: TR should have the near term ability to organize or participate in similar exploitation/asset plays in other proven oil, & gas areas in the U.S. based upon application and use of its unique technology. Notwithstanding the results of the Hopewell-Pilot Project, it will likely be attractive for IAE Shareholders to convert at least a portion of the Hopewell holdings to Title Rover equity if TR is engaged in other projects similar to Hopewell by the expiration of the Share Exchange Warrants (June 30, 2017).

More detailed pro forma projections are not realistic at this point. Please give me a call if you have questions.
Thanks,
Tom

**From:** Justin Pannu <justinpannu1503@gmail.com>
**Date:** Thursday, August 18, 2016 at 12:07 PM
**To:** Tom Tatham <tpt@lngpartners.com>
**Cc:** "Martin, Chad" <ChadMartin@bgcpartners.com>, Jeff Merola <jeff.merola@intelometry.com>, jerry johns <jerry.johns@intelometry.com>, Jame Dibble <James.Dibble@intelometry.com>, Mark Willis <Mark@willisgroupus.com>, "TTatham@hopewelltx.com" <TTatham@hopewelltx.com>
**Subject:** Re: Talking Points

Hi Tom,



EXHIBIT
12
Pannu

We are still working on additional questions and will get those to you as quickly as we can. Thank you for the responses below. As a follow up to your Item #1 response, would you be able to provide any pro forma? I understand value and financial projections are difficult; however, it would helpful to understand capital expenditures and operating expenses to date and into the future to provide a benchmark. Since this project may ultimately result in equity in Title Rover, would you be able to provide any pro forma for Title Rover?

Regards,

Justin

On Thu, Aug 18, 2016 at 9:30 AM, Tom Tatham <tpt@lngpartners.com> wrote:

> Hi Justin,
> See responses below.  Please forward any additional questions as soon as possible or give me a call if you need further clarification.  We hope to have the TR and Hopewell data sites up and running today.
> All the best,
> Tom

**From:** Justin Pannu <justinpannu1503@gmail.com>
**Date:** Wednesday, August 17, 2016 at 10:06 PM
**To:** Tom Tatham <tpt@lngpartners.com>
**Cc:** "Jeffrey D. Merola" <jeff.merola@intelometry.com>, "Jerome E. Johns" <jerry.johns@intelometry.com>, "James P. Dibble" <James.Dibble@intelometry.com>, Mark Willis <mark@willisgroupus.com>, Chad Martin <chadlandmark@hotmail.com>
**Subject:** Talking Points

Hi Tom:

We have a few preliminary talking points  for your consideration concerning the potential investment in Hopewell-Pilot Project, LLC ("Hopewell-Pilot"). We are currently in the process of outlining additional topics but we wanted to start the process on a rolling basis to streamline :

1.   Amount of Units Issued for Capital Raise and Valuation.

      a.    The private placement memorandum ("PPM") states that direct costs of Hopewell-Pilot are currently running at $17,500/month and that the capital raise is to fund operations through the end of the year. Such costs would equal $17,500 x 5 months = $87,500. This is far lower than the stated range of a capital raise of "up to" two million dollars ($2,000,000).  The PPM states that any extra funds raised over the costs of operation may be used to acquire lease and/or mineral rights.  It seems that any money in (other than our own) will dilute ownership interests, so it would be very helpful to understand how much more money up Hopewell-Pilot intends to raise.  It seems to us that this should be relatively quantifiable since particular lease and/or mineral rights have been identified as those of most interest.

The $17,500/month only represents Hopewell's direct cost of maintaining Title Rover exclusive license for Madison and adjacent counties.  The memorandum of agreement with Title Rover provides that Hopewell can

maintain the exclusive use of TR technology for the agreed area by paying $17,500/month and all additional direct costs to acquire and manipulate data unique to the AMI. The agreement can be terminated by Hopewell beginning Jan 1, 2017 upon 30 days prior written notice. The actual cost of maintaining Hopewell's current level of operations is closer to $150,000/month. The placement of 1,000,000 Initial Additional Equity Shares @ $2 per share was allocated to cover: 1) operating overhead through 12/31/16 - approximately $900,000; 2) acquisition of leases - approximately $1,000,000 and 3) legal expense necessary to validate top lease play - approximately $100,000!

b.   The PPM states that it seeks sale of up to one million (1,000,000) additional units(s/b 1,000,000 Initial Additional Equity Shares which are treated differently than additional Shares or Founders Shares; 5,000,000 Shares are authorized in total) and that there are currently five million (5,000,000) units authorized to be issued. Since one million (1,000,000) units are already issued, this means that up to four million (4,000,000) units may be issued without need for any member or manager approval (not true). So, notwithstanding the stated objective of sale of one million (1,000,000) additional units, up to four million (4,000,000) unit could actually be issued. Obviously, if this were to occur and absent any anti-dilution provisions, the interests could be substantially diluted (see next point on company valuation).

No additional Units or Shares can be issued without Board of Directors and Majority Interest approval. There are 1,000,000 Founders Shares outstanding; the private placement of Initial Additional Equity Shares covers up to 1,000,000 shares if fully subscribed, leaving 3,000,000 additional Shares available for issue. It remains to be seen whether or not we will need to raise additional equity for Hopewell, but if the top lease play is validated or we decide to expand into Houston or Walker Counties or we decide to participate in joint development activities as a result of lease ownership we have dry powder to do so. I think you can assume no additional Shares will be issued unless the Managers and Directors believe such issue will be accretive to all of the then existing shareholders.

c.   The implied pre-money valuation of Hopewell-Pilot ranges from $2,000,000 (assuming that only 2,000,000 units will ultimately be issued) to $8,000,000 (assuming that all 5,000,000 units will ultimately be issued). This is for a company that was formed in March 2016 and currently has no assets and, as far as the information provided suggests, only maintains a non-exclusive license to the Title Rover, LLC ("Title Rover") technology, which license (i.e., right to use) may be terminated upon the election of Title Rover on January 1, 2017, thereby only guaranteeing Hopewell-Pilot up to five (5) months of non-exclusive use.

Use by Hopewell of the TR technology is exclusive to Hopewell within the AMI through December 31, 2016 which period can be extended by Hopewell on an evergreen basis through June 30, 2020 pursuant to the terms of the memorandum of agreement. Unless activities are expanded to adjacent counties, or the top lease play is implemented it is unlikely that Hopewell will require this service beyond the end of 2016.
While it is difficult to put a value on Hopewell's work product to date, the preferential recovery right of the Initial Additional Equity Shares is believed to provide an equitable post money valuation between Founders Shares and Initial Additional Equity Shares.

2.    <u>Title Rover Technology.</u>

   a.    The Title Rover technology is a material part of the investment.  That said, it currently can be licensed to anyone else other than Hopewell-Pilot because there appears to only be a non-exclusive term license to Hopewell-Pilot.  Do you believe Title Rover should be licensed exclusively to Hopewell? Just your thoughts here. We understand that there are other project that technology could be used.

Title Rover technology is being made available on an exclusive basis to Hopewell within the agreed AMI!  Title Rover technology will likely be licensed and used in other areas in the future, hopefully on favorable terms and that is the reason that the holders of Initial Additional Equity Shares are being provided with Share Exchange Warrants so as to be able to convert all or part of their investment in Hopewell to equity in Title Rover.  The valuation established for the exchange is considered "ground floor" as there has be in excess of $3M expended previously by WG entities in establishing and developing the software now being utilized by TR.

   b.    The license agreement to the Title Rover technology may be terminated by either party, without any penalty, at any time on and after January 1, 2017.(Title Rover can only terminate prior to June 30, 2020 with the consent of Hopewell)  This seems inordinately short and may put Hopewell-Pilot in a bad position if assets are not identified nearly immediately.

The exclusive license granted to Hopewell for the AMI can only be terminated unilaterally by Hopewell.  Termination by Title Rover which can only occur after December 31, 2016 requires consent of Hopewell [if notice is given by Title Rover prior to June 30, 2020].  Evaluation of the 4 areas within Eastern Madison County should be complete by the end of 2016.  Unless activities are expanded in to adjacent counties or the top lease play is implemented it may not be necessary or desirable for Hopewell to maintain the exclusive license.

   c.    There are no restrains (i.e., negative covenants) that prohibit anyone who remotely developed and/or use the Title Rover technology from competing with it or, for that matter, Hopewell-Pilot.  Our opinion is that such negative covenants are essential in preserving the value of your investment in Hopewell-Pilot.

Title Rover's contractors and consultants have generally agreed not to compete with TR regarding application of the technology to Oil, Gas & Mineral use for varying periods of time.  Please refer to Consulting Contracts in the Title Rover data room for details.

   d.    The genealogy of the Title Rover Technology should be understood.  Who developed it and when and why?  Pursuant to what agreement?  Was the work product constituting the Title Rover technology adequately transferred to the company?  Does anyone or anything have rights to the technology?  See narrative in Title Rover data room regarding use of SLX and BR technology.

We do have a few more topics to flush out and we will send you those tomorrow.

Thanks again!

Justin

Sent from my iPhone

WIL_00000869

**EXHIBIT HH**

Page 515

**To:**  Jerome E. Johns[jerry.johns@intelometry.com]; Justin Pannu[justinpannu1503@gmail.com]
**Cc:**  Mark Willis[Mark@willisgroupus.com]; Tom Tatham[TTatham@hopewelltx.com]; Michelle Johnson[mjohnson@willisgroupus.com]; Martin, Chad[ChadMartin@bgcpartners.com]
**From:**  Tom Tatham
**Sent:**  Wed 8/31/2016 5:58:36 PM
**Subject:**  <mark>Pro Forma Valuations given full dilution following full exercise of all Share Exchange Warrants, all Options and satisfaction of all Employee Milestones</mark>
<mark>Pro Forma Valuations - Hopewell-Pilot Project, LLC and Title Rover, LLC as of Sept 1, 2016.xlsx</mark>

Jerry, Justin,

Please review the pro forma valuation summaries and give me a call if you have any questions.  If you both, and Mark are happy with them, I will put them in the two data rooms.

Please note that the only subjective business assumptions are that Hopewell is able to lease 1,000 net leasehold acres in Target Areas 1-4 prior to December 31, 2016 and that once that acreage is pooled into existing Production Units (on or before June 30, 2017) that the value of such leases (at the low end of our sales comp range) is $5,000 per net leasehold acre or $5,000,000 for the 1,000 net acres.  No value has been attributed to the "Top Lease Play".  In Title Rover, we assume that the value of achieving each of the Milestones is $1/share for Shares issued to the participating employee/consultants. In all likelihood, the FMV of the proprietary rights to fully operational TR or BR validated for indexing is far greater to TitleRover than the $1/share valuation.  All of the other valuations are at cost or for cash, so I would consider these pro forma valuations to be very conservative.

With regard to the remaining CPs, if we are on the same page regarding: 1) a super majority requirement [suggest 75% of shareholder ownership interests] for issue of shares for non-cash consideration [I.e employment/consulting services, asset acquisitions (digital data acquisition) or other M&A opportunities] and 2) issue of shares for services from affiliated entities or the purchase of assets from affiliated entities [suggest a majority of non-affiliated shareholder ownership interests], please confirm and I will draft appropriate revisions to the Company Agreement for approval and acknowledgement tomorrow morning.  As I have continually mentioned, we need to resolve and conclude specified participation from your group as soon as possible.  Once again, please let me know by the end of the day where things stand.

Thanks,
Tom
713 504-7199



WIL_00000873

Page 516

| | HOPEWELL - PILOT PROJECT, LLC | |
|---|---|---|
| | Proforma Pre & Post Money Valuations | |
| Date of Transaction | Details of Transaction | Shares Issued |
| Tuesday, March 29, 2016 | Formation of Entity - Placeholder for complete business plan | 1* |
| Friday, June 10, 2016 | Issue of Founders Shares for contribution of data, IT services, service & consulting agreements necessary to execute Business Plan | 1,000,000 Founders Shares* |
| Friday, August 26, 2016 | r into Lease Acquisiton Facility with SMW/GS - provides $1,000,000 in credit with conversion rights to 300,000 Hopewell IAE Shares @ $2.50/Share through December 31, 2016 | |
| September thru December 2016 | Assume draw down of funds as necessary to acquire at least 1,000 net leasehold acres in Target Areas 1-4 *** | |
| Thursday, September 01, 2016 | Finalize private placement of IAE Shares reserving 300 IAE shares for prospective exercise under -LAF | 700,000 IAE Shares ** |
| Friday, December 30, 2016 | Assume Conversion of $750,000 prinipal amount of LAF for 300,000 IAE Shares | 300,000 IAE Shares ** |
| Friday, June 30, 2017 | Assume valuation of 1,000 net leasehold acres of Hopwell lease and top lease portfolio @ $5,000 / net acre (low end range of comp sales;) | 1,000,000 Founders Shares |
| | Gross Valuation $5,000,000 - Holders of Share Exchange Warrants assign ALL IAE Shares  to Title Rover, LLC in exchange  for 2,000,000 Title Rover Shares | 1,000,000 IAE Shares |

\* initial Share issued March 28, 2016 surrendered and Founders Shares issued effective June 10, 20016

\*\* Assumes 700,000  IAE Shares of 1,000,000 IAE Shares authorized are placed @ $2/Share and 300,000 IAE Shares are reserved and later issued pursuant to LAF conversion rights

\*\*\* Key Assumption - Hopewell is able to acquire 1,000 net leasehold acres in Target Areas 1-4 prior to December 31 2016

WIL_00000874

| Shares Outstanding | Enterprise Value or FMV |
|---|---|
| 1* | $1 |
| 1,000,000 Founders Shares | $1,000,000 |
| | |
| 700,000 IAE Shares; 1,000,000 Founders Shares | $2,400,000 |
| 1,000,000 IAE Shares; 1,000,000 Founders Share | $3,150,000 |
| 1,000,000 Founders Shares | $1,500,000 Allocated to Founders Shares |
| 1,000,000 IAE Shares | $3,500,000 Allocated to IAE Shares |
| | $5,000,000 Total Pro Forma FMV @ June 30, 2017 |

WIL_00000875

| | |
|---|---|
| | TITLE ROVER , LLC |
| | Proforma Pre & Post Money Valuations assuming full exercise of all warrants & options |
| Date | Transaction |
| Monday, April 04, 2016 | Formation of Entity - Placeholder to establish structure and provide agreement to contribute proprietary knowledge and technology developed by WG & related entities |
| Thursday, June 30, 2016 | Anended & Restated Company Agreement executed effective June 30, 2016; 6,500,000 Shares Authorized; 3,000,000 shares issued for agreed contribution of assets, contract rights & proprietary knowledge; |
| | 3,500,000 Shares Reserved;  2,000,000 for Hopewell Share Exchange Warrants; 1,000,000 for Employee Milestone Incentives (3 in total); and 500,000 Shares for Manager Stock Option |
| To be completed September, 2016 | Finalize & Execute - Manager Stock Options 500,000 @ $1/Share; WG options with Willis Family interests 1,000,000 @ $1/Share; Key employee service agreements 1,000,000 shares @ Milestone |
| to be completed Sept/Oct 2016 | Issue 400,000 Shares related to Employee Milestone #1 |
| to be completed Dec 2016/Jan 201 | Issue 200,000 Shares related to Employee Milestone #2 |
| Friday, June 30, 2017 | Issue 500,000 Shares pursuant to exercise of Manager Stock Option; receive $500,000 from exercise price @ $1/Share |
| Friday, June 30, 2017 | Issue 2,000,000 Shares pursuant to exercise of all Share Exchange Warrants; receive assignment of 1,000,000 Hopewell IAE Shares with $3,500,000 assumed value |
| Friday, September 01, 2017 | Issue 400,000 Shares related to Employee Milestone #3 |
| | |
| | |
| | |
| | |
| | |

\* Initial Share surrendered and 3,000,000 Shares issued pursuant to Amended and Restated Company Agreement - Schedule A

\*\*Assume value of $1/Share for Shares issued pursuant to Employee Milestone events (FMV to Title Rover, LLC could be much greater in the case of Milestones #

WIL_00000876

| Shares Issued | Shares Outstanding | Enterprise Value or FMV |
|---|---|---|
| 1* | | |
| 3,000,000 | 3,000,000 | $3,000,000 |
| | | |
| 400,000** | 3,400,000 | $3,400,000 |
| 200,000** | 3,600,000 | $3,600,000 |
| 500,000 | 4,100,000 | $4,100,000 |
| 2,000,000 | 6,100,000 | $7,600,000 |
| 400,000** | 6,500,000 | $8,000,000 |

1 & #2)

WIL_00000877

**EXHIBIT II**

Page 521

Tuesday, August 30, 2016 at 4:43:52 PM Central Daylight Time

**Subject:** RE: Title Rover, LLC - Proposed Equity to SLX/key employees- Memo to file
**Date:** Tuesday, August 30, 2016 at 3:40:06 PM Central Daylight Time
**From:** Brent Stanley
**To:** Tom Tatham
**CC:** Pat Doherty, Mark Willis, jvhaynes

*[handwritten: Status of Key Employee Negotiations. Confirmation of Agreed terms 8/30/16]*

Tom,

Joe and I have discussed and are in agreement with your proposed terms below.

Brent

**From:** Tom Tatham [mailto:tpt@lngpartners.com]
**Sent:** Tuesday, August 30, 2016 10:02 AM
**To:** Brent Stanley <BStanley@titlerover.com>; jvhaynes <jvhaynes@aitllc-us.com>
**Cc:** Pat Doherty <Pat@Doherty-Law.com>; Mark Willis <Mark@willisgroupus.com>
**Subject:** FW: Title Rover, LLC - Proposed Equity to SLX/key employees- Memo to file

Brent, Joe,
For various reasons, I am behind in providing the Memorandum of Agreement regarding your future services to Title Rover, LLC as I had promised. I will do my best to finish it up and deliver within the next day or two as time permits. It would be helpful if you both could confirm our prior discussion regarding the terms below, which Mark has approved, as these agreements have seemingly become one of the outstanding due diligence items for certain Hopewell investors and their counsel. One of the recently completed and executed documents is the Amended and Restated Company Agreement of Title Rover, LLC which I have attached hereto for your files. The Shares to be prospectively issued to you both and Susan Willard have been authorized and reserved pursuant to Section 3.2 (b). Please let me know if you have any questions.
Thanks,
Tom

**From:** Tom Tatham <tpt@lngpartners.com>
**Date:** Thursday, August 18, 2016 at 4:48 PM
**To:** "Mark Willis (Mark@willisgroupus.com)" <Mark@willisgroupus.com>
**Cc:** Mike Willis <mike@willisgroupus.com>, "TTatham@hopewellix.com" <TTatham@hopewellix.com>
**Subject:** Re: Title Rover, LLC - Proposed Equity to SLX/key employees- Memo to file

Mark,
I met with Brent and Joe last night and we agreed subject to your approval as follows:
Comp:
Brent Stanley stays at $15,000 per month for 100 hour monthly minimum

TAT_42131

SLX  Replaced with AIT at $17,500 per month to cover both Joe Haynes and Susan Willard;  Joe to provide language with acceptable time commitment for himself and Susan

Equity incentives to be split 40%, 40% and 20% between Brent, Joe and Susan for each tranche if earned.

Earn Out:  10% (400,000 shares) upon TR acceptance of initial testing upon completion of latest filters for Madison County; 10% (400,000 shares) upon 2 year tenure or earlier sale of TR and 5% (200,000 shares) upon earliest to occur within 2 yr period of 1) successful testing and applied use of BR technology; 2) a financing event occurring within the 2 yr period of mutually agreed amount [$10,000,000] or 3) a change of control of 50% TR equity excluding their holdings.

Non-Compete:  3 years or 1 year following termination of service whichever is the later date.

If these concepts are acceptable to you, I will prepare a binding agreement and term sheet which we can execute early next week.

Tom

---

**From:** Tom Tatham <tpt@lngpartners.com>
**Date:** Tuesday, July 19, 2016 at 2:57 PM
**To:** "Mark Willis (Mark@willisgroupus.com)" <Mark@willisgroupus.com>
**Cc:** Mike Willis <mike@willisgroupus.com>
**Subject:** Title Rover, LLC - Proposed Equity to SLX/key employees

Mark,

Brent and Joe have accepted our offer of 25% (10% at acceptance of initial software testing and modification, 10% upon agreed tenure [2 yrs] and 5% conditioned upon successful testing and applied use of BR technology or another mutually agreed milestone).  They requested that we provide them with a new revised agreement as soon as possible with a goal of completing & executing new agreement when Joe returns the first week in August.  I will try to get a draft prepared for internal review in the next few days as there are still a number of details that need to be addressed.  I think this is a good result and likely fair to all concerned.  Let's try to resolve all remaining details and also our internal equity division later this week.  I'm free tomorrow & Friday but have meeting downtown with SMW on Thursday AM and am taking Deb for her MRI on Thursday afternoon.  Let me know what works best for you and Mike.

Thanks,

Tom

TAT_42132

**EXHIBIT JJ**

Page 524

```
 1              UNITED STATES DISTRICT COURT
 2            SOUTHERN DISTRICT OF CALIFORNIA
 3
 4   ENSOURCE INVESTMENTS LLC, a        )
     Delaware limited liability company, )  Case No.:
 5                                       )  3:17-CV-00079-H-LL
                 Plaintiff,              )
 6                                       )
     v.                                  )
 7                                       )
     THOMAS P. TATHAM, an individual;    )
 8   MARK A. WILLIS, an individual;      )
     PDP MANAGEMENT GROUP, LLC, a Texas  )
 9   limited liability company; TITLE    )
     ROVER, LLC, a Texas limited         )
10   liability company; IMAGE ENGINE,    )
     LLC, a Texas limited liability      )
11   company; WILLIS GROUP, LLC, a Texas )
     limited liability company;          )
12   and DOES 1-50,                      )
                                         )
13               Defendants.             )
     _____)
14
15        VIDEOTAPED DEPOSITION OF MARK ALLEN WILLIS
16              San Diego, California
17            Thursday, June 27, 2019
18
19
20
21   Reported by:
     ANELA SHERADIN, CSR NO. 9128
22
23   JOB NO. 3405283
24
25   PAGES 1 - 176
```

ORIGINAL

Page 1

| | | |
|---|---|---|
| 1 | Q   So you knew him from previous dealings? | 10:23:04 |
| 2 | A   Sure. | 10:23:06 |
| 3 | Q   Did TitleRover have any employees at all? | 10:23:06 |
| 4 | A   No. | 10:23:08 |
| 5 | Q   Was there any plan as far as the capitalization | 10:23:16 |

6  of TitleRover?  In other words, you form a company, the

7  company likely will have expenses.

| | | |
|---|---|---|
| 8 | A   Um-hum. | 10:23:27 |
| 9 | Q   Was there any plan put in place as far as what | 10:23:28 |

10  the capital needs would be for TitleRover?

| | | |
|---|---|---|
| 11 | A   I think we were working on that or developing | 10:23:34 |

12  it.  In the interim, it was -- we were putting together

13  various components of different softwares out there and

14  putting a user interface on it; and we were trying to

15  determine, you know, if that was a real viable plan or

16  not.

| | | |
|---|---|---|
| 17 |       At the moment, it had one -- one -- one client | 10:23:51 |

18  and that was Hopewell.  So, you know, to the extent all

19  that really went well, our goal was to go out and

20  capitalize the company, but our primary focus was on

21  Hopewell-Pilot.

| | | |
|---|---|---|
| 22 | Q   How did you decide -- you mentioned that | 10:24:07 |

23  your -- TitleRover is basically picking different

24  technology pieces out to form a solution.  How did you

25  or who determined what pieces to pick out, what portions

Page 22

1
2
3          I, MARK ALLEN WILLIS, do hereby declare
4    under penalty of perjury that I have read the foregoing
5    transcript; that I have made such corrections as noted
6    herein, in ink, initialed by me, or attached hereto;
7    that my testimony as contained herein, as corrected, is
8    true and correct.
9          EXECUTED this _13_ day of _August_   ,
10   2019, at _HOUSTON_            , _TEXAS_         .
                 (City)                   (State)
11
12
13
14                MARK ALLEN WILLIS
15
16
17
18
19
20
21
22
23
24
25

Kramm Court Reporters, A Veritext Company
866-299-5127

1    I, the undersigned, a Certified Shorthand

2  Reporter of the State of California, do hereby certify:

3    That the foregoing proceedings were taken

4  before me at the time and place herein set forth; that

5  any witnesses in the foregoing proceedings, prior to

6  testifying, were duly sworn; that a record of the

7  proceedings was made by me using machine shorthand

8  which was thereafter transcribed under my direction;

9  that the foregoing transcript is a true record of the

10  testimony given.

11    Further, that if the foregoing pertains to

12  the original transcript of a deposition in a Federal

13  Case, before completion of the proceedings, review of

14  the transcript [ X ] was [  ] was not requested.

15    I further certify I am neither financially

16  interested in the action nor a relative or employee

17  of any attorney or party to this action.

18    IN WITNESS WHEREOF, I have this date

19  subscribed my name.

20  Dated:  07/08/2019

21

22

23

24

_Anela Sheradin_

ANELA SHERADIN

CSR NO. 9128

25

Page 176

Kramm Court Reporters, A Veritext Company
866-299-5127

Page 528

**EXHIBIT KK**

## Memorandum of Agreement

This agreement is made this ___4th___ day of April 2016 by and between Title Rover, LLC, a Texas limited liability company with offices at 1400 Post Oak Blvd. Suite 300 Houston, TX 77056 ("TR") and Hopewell-Pilot Project, LLC, a Texas limited liability company with offices at 1400 Post Oak Blvd. Suite 200 Houston, TX 77056 ("Hopewell") regarding the exclusive use by Hopewell of the proprietary IT software (TR Technology) being developed and refined by TR within an agreed area of mutual interest ("AMI") as follows:

1. As soon as practical, TR will obtain complete digital data for the Deed Records of Madison County, Texas and undertake to obtain or otherwise provide complete digital indices with appropriate fields as determined by Hopewell for all digital images of Madison County Texas Deed Records;

2. As soon as practical, TR will install at least one IT portal in the offices of Hopewell to enable use of TR Technology in its present form; Hopewell may request TR to provide additional portals at locations to be determined by Hopewell and at Hopewell's expense;

3. Hopewell shall pay TR the sum of $17,500 per month as a basic license fee covering exclusive use of TR Technology in the AMI which shall cover Madison, Houston, Walker counties all located in Texas;

4. In addition to the basic license fee, Hopewell agrees to pay for or reimburse TR on a monthly basis for all costs and expenses related to the acquisition of digital data or the costs associated with developing digital indices for all data sets requested by Hopewell;

5. Hopewell may increase or expand the exclusive license and AMI to cover Leon, Grimes, and Brazos counties all locate in Texas by providing written notice to TR and by agreeing to an increase to the basic license fee in the amount of $17,500 per month and the reimbursement of all costs and expenses related to the acquisition of digital data and developing digital indices as provided in paragraph 4 above;

6. TR will provide specialized filters or searches as reasonably required and requested by Hopewell to analyze and sort digital data for Hopewell's commercial purposes;

7. The primary term of this agreement shall commence upon execution hereof and continue until January 1, 2017 after such time the agreement shall continue until terminated by either party.  Either party may terminate this agreement on or subsequent to January 1, 2017 by providing 30 days prior written notice to the other party, provided TR shall not be able to terminate this agreement prior to June 30, 2020 without the expressed written consent of Hopewell;

8. The parties shall not assign, convey, sell or transfer their rights or obligations under this agreement without notice to and consent of the other party which consent shall not be unreasonably withheld;

9. All sums owing by Hopewell to TR under this agreement shall be payable by Hopewell within 10 days of receipt of invoice from TR.

Agreed to and accepted this __4rh__ day of April 2016:

Hopewell-Pilot Project, LLC                     Title Rover, LLC

Thomas P. Tatham                                Mark A. Willis
Manager                                         Manager

**EXHIBIT LL**

Page 532

From: **Mark Willis** Mark@willisgroupus.com
Subject: RE: Summary of Discussion plus other items
Date: September 12, 2016 at 8:02 AM
To: Justin Pannu justinpannu1503@gmail.com
Cc: **Chad Martin** chadlandmark@hotmail.com, **jerry johns** jerry.johns@intelometry.com,
**Richard E. Nawracaj (rich.nawracaj@nawracaj-law.com)** rich.nawracaj@nawracaj-law.com, **Cliff Sharp** ecsharp111@gmail.com

Gents,

I believe all the issues should be addressed. If we agree, let's get the correct language reflected in the documents and let's please close and fund this morning.

I understand Chad opened the accounts on Friday. Would be helpful if you could fund enough for the initial payment this morning in anticipation of closing.

We are also available for a call at your convenience.

Thanks,  Mark

Mark Willis – CEO & President
**O** 713-547-4510  |  **M** 713-248-1555  |  mark@willisgroupus.com  |  www.linkedin.com/pub/mark-willis
1400 Post Oak Boulevard, Suite 200  |  Houston, TX 77056  |  www.wgcompanies.com



**WILLIS/GROUP** FAMILY OF COMPANIES

Professional Services | Project + Process Delivery | Talent Acquisition + Flexible Workforce Solutions

THIS ELECTRONIC MESSAGE, INCLUDING ANY ACCOMPANYING DOCUMENTS, IS CONFIDENTIAL
and may contain information that is privileged and exempt from disclosure under applicable law. If you are neither the intended recipient nor responsible for delivering the message to the intended recipient, please note that any dissemination, distribution, copying or the taking of any action in reliance upon this message is strictly prohibited. If you have received this communication in error, please notify the sender immediately.

**From:** Justin Pannu [mailto:justinpannu1503@gmail.com]
**Sent:** Friday, September 09, 2016 4:32 PM
**To:** Mark Willis <Mark@willisgroupus.com>
**Cc:** Chad Martin <chadlandmark@hotmail.com>; jerry johns <jerry.johns@intelometry.com>; Richard E. Nawracaj (rich.nawracaj@nawracaj-law.com) <rich.nawracaj@nawracaj-law.com>; Cliff Sharp <ecsharp111@gmail.com>
**Subject:** Summary of Discussion plus other items

Hi Mark,

Below is the summary of our discussion, please let me know if you agree to the following and we will make the appropriate changes.

**Shares Issued for Non-Cash Consideration:**

1) I believe we have agreed to eliminate the Board language.  Agreed
2) I believe we have agreed to retain the IPO language.  Agreed
3) I believe we have agreed that all the share exchange warrants exercised does not eliminate the requirement that the Managers cannot issue shares to insiders for non-cash consideration. Language will be narrowed to allow for issuance of shares for currently outstanding exchange warrants  (not entirely sure how this should be worded but I will let Rich flush this out).  If everyone converts than the inside group will not have super majority so the current governance under the shareholder agreement should be sufficient.  If you don't convert and stay all in Honeywell

PLTF_001619

governance under the shareholder agreement should be sufficient. If you don't convert and stay all in Hopewell than there isn't a dog in the fight.

Let's agree in the event that the insiders represent super majority control after the convert than they will be excluded from a vote regarding the ability to issue for non cash consideration. This should only require more than 50%.

As a practical matter the Lion share of the capital is going towards Hopewell for this particular capital raise as outlined in the budget. NO question in my mind that Title Rover will need to raise additional capital if it is going to be successful at building data base for all the target counties. The raise will certainly be multiple seven figures.

**Non-Compete**

We did not discuss this on the phone as I did not remember to bring this up with you but the concern among the group with narrowing the language to plays found using TR is that its very difficult for Ensource members to know exactly what was found using TR and what was not. We'd prefer to be attached to the Managers for a first right or refusal on similar plays.

This would have to be a short fuse to decide but I am ok with it as it relates to your prorated interest.

**Bridge Loan**

We have discussed the changes to Hopewell occurring after the subscription agreement and I believe the group is comfortable with providing a bridge loan (personally secured by one of the Mangers) for 14 days. Once the Hopewell Agreement is modified it would then convert to equity.

I personally fine with this.

Regards,

Justin

 **WILLIS GROUP** FAMILY OF COMPANIES