**PANAKOS LAW, APC**
Aaron D. Sadock (SBN 282131)
555 West Beech Street, Ste. 500
San Diego, California 92101
Telephone:(619) 800-0529
Facsimile:(866) 365-4856
Email: asadock@panakoslaw.com

Attorney for Plaintiff ENSOURCE INVESTMENTS LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENSOURCE INVESTMENTS LLC, a Delaware limited liability company,<br><br>Plaintiff,<br>v.<br><br>THOMAS P. TATHAM, an individual; MARK A. WILLIS, an individual; PDP MANAGEMENT GROUP, LLC, a Texas limited liability company; TITLE ROVER, LLC, a Texas limited liability company; BEYOND REVIEW, LLC, a Texas limited liability company; IMAGE ENGINE, LLC, a Texas limited liability company; WILLIS GROUP, LLC, a Texas limited liability company; and DOES 1-50,<br><br>           Defendants. | Case No.: 3:17-CV-00079-H-LL<br><br>**PLAINTIFF ENSOURCE INVESTMENTS LLC'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW PURSUANT TO CIVIL LOCAL RULE 16.1(f)(2)**<br><br>Magistrate Judge: Hon. Linda Lopez<br>District Judge: Hon. Marilyn L. Huff<br>Courtroom: 15A<br>Action filed:  January 13, 2017 |

**PLAINTIFF ENSOURCE INVESTMENTS LLC'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW PURSUANT TO CIVIL LOCAL RULE 16.1(f)(2)**

i

3:17-CV-00079-H-LL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Table of Contents

I.      INTRODUCTION ...................................................................................1

II.     CONTENTIONS OF FACT ..................................................................2

  A.  The Fraudulent Offering ..................................................................2

  B.  The Misrepresentations and Omissions ...........................................4

    1.   Defendants Failed to Disclose the Insolvency of Hopewell to Plaintiff During Their Solicitation of Plaintiff as an Investor of Hopewell ...................4

      a.   Hopewell's Liabilities Substantially Outweighed Its Assets. .................4

    2.   Defendants Represented That Plaintiffs' Investment Would Be Used for Overhead, Acquisition of Leases, and Necessary Legal Expenses, Not Pre-Existing Accounts Payable ........................................................5

      a.   Defendant Willis Paid Substantial Fees to His Own Entities and Used Hopewell's Investment to Cover the Obligations of Willis Group. ................7

    3.   Defendants Mispresented the Title Rover Technology: The Technology Was Not Fully Functional Nor Proprietary and Title Rover Did Not Possess a License to Use The Beyond Recognition Technology ......................................8

      a.   The July 25, 2016 and August 19th Pitch Decks ......................................9

      b.   The August 23, 2016 Pitch Deck .............................................................9

III.    CONTENTIONS OF LAW.....................................................................10

  A.  Defendants Violated Section 10b and Rule 10b-5. .........................10

    1.   Defendants Misrepresented and Concealed Material Facts........................11

      a.   Defendants' Misrepresentations and Omissions were Material. ............12

        i.   Platforms Wireless .............................................................................12

        ii.  SEC v. Piorer ....................................................................................14

    2.   Plaintiff Has Satisfied the "In Connection With" Element. ......................15

**PLAINTIFF ENSOURCE INVESTMENTS LLC'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW PURSUANT TO CIVIL LOCAL RULE 16.1(f)(2)**

ii

3:17-CV-00079-H-LL

3.   Scienter is Satisfied by Defendants' Knowing or Reckless Conduct. ....... 15

4.   Plaintiff Relied on Defendants' Misrepresentations and Omissions. ........ 17

B.   Defendants Cannot Shield Their Liabilities Through Disclaimers. ............. 18

C.   Persons Liable for Securities Violations ....................................................... 19

D.   Requested Relief for Securities Violations ................................................... 19

E.   Defendants Wrongfully Converted Plaintiff's Investment Funds. ................ 20

1.   Plaintiff Had Possession of the Investment Fund. ..................................... 21

2.   Money Can Be Subject to Conversion. ...................................................... 21

3.   Defendants Exercised Dominion and Control. .......................................... 22

4.   Plaintiff's Demand Would be Futile Because Defendants' Acts Manifested a Clear Repudiation of Plaintiff's Rights. ......................................................... 22

5.   Plaintiff Can Recover the Return of the Property Plus Actual Damages. . 22

6.   Punitive Damages are Warranted for Conversion. .................................... 23

7.   Plaintiff Can Recover Prejudgment Interest. ............................................. 23

F.   Defendants' Conduct Constitutes Intentional Misrepresentation and Fraudulent Concealment ........................................................................................ 24

1.   Persons Liable ............................................................................................ 24

a.   A Principal Can Be Liable for the Fraud of its Agent. ........................... 24

b.   A Beneficiary of Fraud Can Be Liable for the Fraudulent Act. ............. 24

c.   An Agent May Be Liable for Fraud of its Own or Principal. ................. 25

2.   Intentional Misrepresentation ................................................................... 25

a.   Defendants' Representations were Material. .......................................... 25

b.   Defendants' Representations were False. ............................................... 25

i.   Opinions May Also Support Fraud. ....................................................... 26

**PLAINTIFF ENSOURCE INVESTMENTS LLC'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW PURSUANT TO CIVIL LOCAL RULE 16.1(f)(2)**

iii

3:17-CV-00079-H-LL

c.   Defendants Made the Misrepresentation with Knowledge of Its Falsity or Recklessly. ........................................................................26

d.   Intention to Induce Reliance...................................................27

e.   Actual Reliance and Resulting Damages ................................27

3.   Defendants' Failure to Disclose the Insolvency of Hopewell Constitutes A Fraudulent Concealment..........................................................................27

a.   Defendants Had a Duty to Disclose. ......................................28

b.   Facts Defendants Omitted were Material..............................28

c.   Defendants Knew Plaintiff's Ignorance of the Facts and Plaintiff Did Not Have an Equal Opportunity to Discover the Facts................................29

d.   Defendants Were Deliberately Silent Despite a Duty to Speak. ............30

e.   Defendants Intended to Induce Plaintiff's Actual Reliance. ................30

f.   Plaintiff Placed Actual Reliance which Caused it Damage. .................30

G.   Remedies Applicable Under Texas Law.......................................31

1.   Post-judgment Interest and Court Costs. ...................................31

2.   Exemplary Damages .................................................................31

H.   Defendants Engaged in Unfair Competition. ................................32

1.   Defendants' Wrongful Acts and Business Practices are Unlawful. ..........32

2.   Defendants' Wrongful Acts and Business Practices are Unfair ...............33

3.   Defendants' Wrongful Acts and Business Practices are Fraudulent. ........33

IV.   ABANDONED ISSUES ..............................................................34

V.   LIST OF WITNESSES................................................................34

VI.   LIST OF EXHIBITS .................................................................34

**PLAINTIFF ENSOURCE INVESTMENTS LLC'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW PURSUANT TO CIVIL LOCAL RULE 16.1(f)(2)**

iv

3:17-CV-00079-H-LL

1

# TABLE OF AUTHORITIES

2

**Cases**

3

4

*Affco Investments 2001, L.L.C. v. Proskauer Rose, L.L.P.*
625 F.3d 175, 194 (5th Cir. 2010)……………………………………… 17, 18

5

6

*Adam v. Silicon Valley Bancshares*
884 F. Supp. 1398 (N.D. Cal. 1995)………………………………………  15

7

8

*Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*
287 S.W.3d 877, 889 (Tex.App. 2009)………………………………………  23

9

10

*American Med. Int'l v. Giurintano*
821 S.W.2d 331, 338 (Tex.App. 1991)…….. 29

11

12

*Associated Tel. Directory Publ'rs v. Five D's Publ'g Co.*
849 S.W.2d 894, 900 (Tex.App. 1993)……………………….……………… 23

13

14

*Atari Corp. v. Ernst & Whinney*
 981 F.2d 1025, 1031 (9th Cir. 1992)……………………………………… 17,18

15

16

*Atlantic Lloyds Ins. v. Butler*,
137 S.W.3d 199, 225 (Tex.App.2004)………...................................…… 30

17

18

*Basic, Inc. v. Levinson*
 485 U.S. 224, 231-32 (1988)……………………………………….…...… 12

19

20

*Blankinship v. Brown*
 339 S.W.3d 303, 308 (Tex. App. 2013)…………………..……………..…   28

21

22

*Blanton v. Sherman Compress Co.*
256 S.W.2d 884, 888 (Tex.App. 1953)……………………………………… 30

23

24

*Bradford v. Vento*
48 S.W.3d 749, 755 (Tex. 2001)………………….……………...28, 29, 30

25

26

*Bright v. Addison*,
171 S.W.3d 588, 599-600 (Tex.App. 2005)…………………….…...………31

27

28

1

2   *Burgess v. Premier Corp.*
3   727 F.2d 826, 832 (9th Cir. 1984)……………………………………..……... 16

4   *Bures v. First Nat'l Bank*
5   806 S.W.2d 935, 938 (Tex.App.  1991)...…………….….………….……..... 22

6   *Burleson State Bank v. Plunkett*
7   27 S.W. 3d 605, 613 (Tex.App. 2000)……………………………………... 25

8   *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*
9   20 Cal.4th 163, 180 (1999)……………………………………………32, 33

10   *Chase Commercial Corp. v. Datapoint Corp.*
11   774 S.W.2d 359, 367 (Tex.App. 1989)……………………………… 27, 30

12   *Citizens Nat'l Bank v. Allen Rae Invs.*
13   142 S.W.3d 459, 478-79 (Tex.App. 2004)……………..………………… 28

14   *City Nat'l Bank v. Martin*
15   8 S.W. 507, 509 (Tex.1888)……………………………………..…… 24

16   *City of Wichita Falls v. ITT Commercial Fin. Corp.*
17   827 S.W.2d 6 (Tex.App. 1992)……………………………………… 21
.
18   *Corpus Christi Area Teachers Credit Un. v. Hernandez*
19   814 S.W.2d 195, 198 (Tex.App. 1991)……………………………... 25

20   *Cortis, Inc. v. Cortislim Int'l, Inc*.
21   No. 3:12-CV-0562-B, 2016 WL 6330579, at *6 (N.D. Tex. July 22, 2016)…. 24

22   *Disney Enters. v. Esprit Fin., Inc*.
23    981 S.W.2d 25, 31 (Tex.App. 1998)……………………………………… 24

24   *Dixon v. State*
25   808 S.W.2d 721, 723-24 (Tex.App. 1991)…..………………….………… 21

26   *Encinas v. Jackson*
27   553 S.W.3d 723, 727 (Tex.App. 2018)………………………….………… 21

28

---

1

*Ernst & Ernst v. Hochfelder*
425 U.S. 185, 203 (1976)……………………………………..….. 11, 15

*Ernst & Young, L.L.P. v. Pacific Mut. Life Ins*., 51 S.W.3d 573, 580
(Tex.2001)………………………………………………………….27

*Estate of Townes v. Townes*
867 S.W.2d 414, 419 (Tex.App. 1993)……………….….………….. 21

*Feagins v. Tyler Lincoln-Mercury, Inc*., 277 S.W.3d 450, 457
(Tex.App. 2009)………………………………………….…..29, 30

*First State Bank v. Fatheree*
847 S.W.2d 391, 396 (Tex.App. 1993)…….…………………….… 25

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,*
 960 S.W.2d 41, 47 (Tex. 1998)…………………………………….24

*Green Int'l v. Solis*
951 S.W.2d 384, 391 (Tex. 1997)…………………………….… 23

*Halliburton Co. v. Erica P. John Fund, Inc.*
573 U.S. 258, 267 (2014)…………………………………….....… 17

*Herman & MacLean v. Huddleston*
459 U.S. 375, 390 n. 30 (1982)……………………………………… 16

*Hoenig v. Texas Commerce Bank*
*N.A.* 939 S.W. 2d 656 (1996)…………………………….………... 22

*Hollinger v. Titan Capital Corp.*
 914 F.2d 1564 (9th Cir.1990)………………………………… 15, 16

*Howard v. Everex Sys., Inc.*
228 F.3d 1057, 1064 (9th Cir. 2000)………………….……………… 16

*Hubenak v. San Jacinto Gas Transmission Co.*
141 S.W.3d 172 (Tex.2004).…………………………………….…. 29

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

*H.W. Broaddus Co. v. Binkley*
88 S.W.2d 1040, 1042-43 (Tex.1936)……………………………………… 28-29

4

5

*In re Apple Computer Sec. Litig.*
886 F.2d 1109, 1113 (9th Cir. 1989)……………………………….…..….. 12

6

7

*In re Burlington Coat Factory Sec. Litig.*
114 F.3d 1410, 1431 (3rd Cir. 1997)………………………………….... 12

8

9

*In re Glenfed, Inc. Sec. Litig.*
42 F.3d 1541, 1549 (9th Cir. 1994)……………………………….….. 12

10

11

*In re International Profit Assocs.,*
274 S.W.3d 672, 678 (Tex.2009)……………………….….…………… 28

12

13

*In re Numerex Corp. Sec. Litig.*
(1996, ED Pa) 913 F Supp 391, (1996, ED Pa)………………………….... 19

14

15

*In re Software Toolworks Sec. Litig.*
50 F.3d 615, 626 (9th Cir. 1995)………………………………….… 15, 16

16

17

*Intermarkets U.S.A., Inc. v. C-E Natco*
749 S.W.2d 603, 604 (Tex.App. 1988)………………………….…... 21

18

19

*Italian Cowboy Partners, Ltd. V. Prudential Ins. Co. of Am.,*
341 S.W. 3d 323, 337 (Tex. 2011)……………………………..…25, 26

20

21

*Jarrin v. Sam White Oldsmobile Co.*
 929 S.W.2d 21, 25 (Tex.App. 1996)……………………………..… 31

22

23

*JJJJ Walker, LLC v. Yollick*
 447 S.W.3d 453, 468-69 (Tex.App. 2014)…………………………..… 25

24

25

*Johnson v. Brewer & Pritchard, P.C.*
73 S.W.3d 193, 211 (Tex.2002)…………………………………..… 31

26

27

*Kasky v. Nike, Inc.*, 27
Cal. 4th 939, 948, 45 P.3d 243 (2002)………………………………….. 33

28

1

2
3
*Kirkland v. E.F. Hutton & Co.*
564 F. Supp. 427, 447 (E.D. Mich. 1983)……………………………………….….. 17

4
5
*Lawyers Title Co. v. J.G. Cooper Dev., Inc.*, 424 S.W.3d 713, 718
(Tex.App. 2014)……………………………………………………………………21

6
7
*Lorenzo v. SEC*
139 S. Ct. 1094, 1101 (2019)……………………………………………...… 19

8
9
*Ludlow v. BP, P.L.C*
800 F.3d 674, 681 (5th Cir. 2015). ……………………………………………… 11

10
11
*Marburger v. Seminole Pipeline Co.*
957 S.W.2d 82 (Tex.App.1997)………………………………………………... 29

12
13
*Motors, Inc. v. Times Mirror Co.,*
102 Cal.App.3d 735 (1980)……………………………………………..…… 33

14
15
*NationsBank v. Dilling*
922 S.W.2d 950 (Tex.1996)……………………………….…………………... 24

16
17
*Nursing Home Pension Fund v. Oracle Corp.*
380 F.3d 1226 (9th Cir. 2004)…………………………………………………….. 16

18
19
*Nwokedi v. Unlimited Restoration Specialists, Inc.*
428 S.W.3d 191 (Tex.App. 2014)……………………………………..……… 25

20
21
*Oats v. Dublin Nat'l Bank*
 90 S.W.2d 824 (Tex.1936)……………………………………………….…… 21

22
23
*Paschal v. Great W. Drilling, Ltd.*
215 S.W.3d 437 (Tex.App. 2006)…………………………………………….. 21

24
25
*Paull v. Capital Res. Mgmt.*
987 S.W.2d 214 (Tex.App. 1999)………………….……………………..……. 26

26
27
*Richman v. Goldman Sachs Group, Inc.*
868 F. Supp. 2d 261  (S.D. N.Y. 2012)…………………………………………….. 18

28

---

1

2

*Samson Lone Star, L.P. v. Hooks*
3
497 S.W.3d 1 (Tex.App. 2016)……………………………………..…………… 27

4

*Santa Fe Industries v. Green*
5
430 U.S. 462 (1977)………………………………………..…………… 11

6

*Saunders v. Superior Court*
7
27 Cal.App. 4 832 (1994)……………………………………….…….…….. 32, 33

8

*Scott v. Sebree*
9
986 S.W.2d 364 (Tex. App. 1999)………………………………………… 31

10

*Security State Bank v. Valley Wide Elec. Sup. Co.*
11
752 S.W.2d 661 (Tex.App. 1988)……………..……………………………   22

12

*SEC v. Blinder, Robinson & Co.*
13
542 F. Supp. 468 (D. Colo. 1982)…………………………….……… 17

14

*SEC v. Cross Fin. Servs.*
15
908 F. Supp. 718 (C.D. Cal. 1995)……………………………………….. 19, 20

16

*SEC v. Dain Rauscher, Inc.*
17
254 F.3d 852 (9th Cir. 2001)…………..…………………………….…….. 11

18

*SEC v. First Pac. Bancorp,*
19
142 F.3d 1186 (9th Cir. 1998)……………..……………………………… 19, 20

20

*SEC v. Lund*
21
570 F. Supp. 1397 (C.D. Cal. 1983)…………………………………….. 19

22

*SEC v. Manor Nursing Centers, Inc.*
23
458 F.2d 1082 (2d Cir. 1972)…..………………………………………. 16, 20

24

*SEC v. Patel*
25
 61 F.3d 137 (2d Cir. 1995)……………………………………………… 20

26

*SEC v. Phan*
27
 500 F.3d 895 (9th Cir. 2007)…………………………………………… 11

28

---

**PLAINTIFF ENSOURCE INVESTMENTS LLC'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW PURSUANT TO CIVIL LOCAL RULE 16.1(f)(2)**

x

*SEC v. Platforms Wireless Int'l Corp.*,
617 F.3d 1072 (9th Cir. 2010)…………………………………………….. 11, 12, 13, 14

*SEC v. Poirier*,
140 F.Supp.2d 1033 (D. Ariz. 2001)…………………………...……….. 14

*SEC v. Rana Research*,
8 F.3d 1358 (9th Cir. 1993)…………………..……………………….…… 15

*SEC v. Rind*
991 F.2d 1486 (9th Cir. 1993)…………………………………...…..……… 19

*SEC v. Sethi*
910 F.3d 198 (5th Cir. 2018)………………………………………………. 12

*Spethmann v. Anderson*
171 S.W.3d 680 (Tex.App. 2005)………………………………………….. 30

*Spoljaric v. Percival Tours, Inc.*
708 S.W.2d 432, 434 (Tex.1986)…………………..……………………… . 30

*Texas Integrated Conveyor Systems, Inc. v. Innovative Conveyor Concepts, Inc.*
300 S.W.3d 348(Tex.App.2009)………………………………….………..20

*Transp. Ins. Co. v. Faircloth*
898 S.W.2d 269 (Tex. 1995)…………………..……………………………. 26

*Trenholm v. Ratcliff*
646 S.W.2d 927 (Tex. 1983)…………………………………………..….. 26

*UMLIC VP LLC v. T&M Sales & Envtl. Sys.*
176 S.W.3d 595 (Tex.App. 2005)…………………………………………. 30

*Ventling v. Johnson*
466 S.W.3d 143 (Tex.2015). …………………………………………….. 31

*Western Pacific Fisheries, Inc. v. S.S. President Grant,*
730 F.2d 1280 (9th Cir. 1984)……………………………………..…. 20

*Winkle Chevy-Olds-Pontiac, Inc. v. Condon*
  830 S.W.2d 740 (Tex.App. 1992)…………………………………………… 23

**Statutes**

15 U.S.C. § 78j(b). ………………………………….……………………..10, 18

15 U.S.C. § 77q(a)(1) ……………………………………………………19

28 U.S.C. § 1961……………………………….…….……………………20

Cal. Bus. & Prof. Code § 17200…………………………………………32, 33

Tex. Fin. Code §304.006……………………………….……….…………31

Tex.Civ.Prac. & Rem. Code Ann. §41.003(a)………………………...….….……31

Tex.Civ.Prac. & Rem. Code Ann. §41.001(2)…………………………………32

Tex.Civ.Prac. & Rem. Code Ann. §41.008(b)………………….……...…………32

**Regulations**

17 C.F.R. §240.10b5……………………………………………11, 18, 19

**Local Rules**

Civil Local Rule 16.1(f)(2) ………………………………………………… 1

Pursuant to Civil Local Rule 16.1(f)(2) and the Court's Scheduling Order, Plaintiff Ensoure Investments LLC ("Plaintiff") respectfully submits the following Memorandum of Contentions of Fact and Law, addressing the contentions of the parties with regard to the trial scheduled to commence on February 4, 2020.[1]

## I.    INTRODUCTION

In the summer of 2016, a group of investors met a self-proclaimed sophisticated venture capitalist named Mark A. Willis, who eventually cheated them out of just below half a million dollars. Through repeated misrepresentations, Mark A. Willis and his brother-in-law, Tom Tatham, rushed these investors, who later set up the company, Ensoure Investments, LLC ("Plaintiff"), to invest in Hopewell-Pilot Project, LLC ("Hopewell").

In order to secure Plaintiff as an investor of Hopewell-Pilot Project, LLC ("Hopewell"), Defendant Willis engaged in a scheme to artificially inflate the value and attractiveness of the equity of Hopewell by lying about the development and efficacy of certain technology licensed to Hopewell – which technology was critical to Hopewell's ability to execute on its business plan and to potentially achieve massive economic success – as well as the use of the proceeds of the investment in Hopewell.

Specifically, Defendant Willis (1) failed to disclose the insolvency of Hopewell to Plaintiff, instead made up numbers without any evaluation or assessment when responding to Plaintiff's constant inquiries, (2) misrepresented to

---

[1] This memorandum, while based on a diligent inquiry and investigation by Plaintiff, necessarily reflects only the current state of Plaintiff's knowledge, understanding, and belief based upon the information made available to Plaintiff. Plaintiff reserves the right to modify, supplement, revise, or amend this Memorandum and to correct any inadvertent errors or omissions that maybe contained herein. This memorandum is provided without prejudice to Plaintiff's right to amend as a result of mistake, error, or oversight.

Plaintiff that the investment fund would be used in go-forward activities, (3) misrepresented the progress of Hopewell with respect to its then-current oil, gas, and mineral exploration activities, and (4) misrepresented the efficacy of the technology purportedly used by Hopewell through Title Rover ("TR Technology"), while said technology was never licensed to any of the Defendants.

With complete access to these funds, Defendants Willis and Tatham embarked upon a surreptitious pattern of siphoning away this money and using it to benefit their related business entities, which include Defendants Beyond Review, Willis Group, and Image Engine, and pay off overdue debts and outstanding obligations. In less than six months after Plaintiff's investment, Defendants had already burned through Plaintiff's entire investment. Plaintiff filed this instant action in January 2017, in an effort to recover its investment Defendants fraudulently induced through their misrepresentations and omissions.

## II.    CONTENTIONS OF FACT

### A.    <u>The Fraudulent Offering</u>

Around July 2016, Defendants Tatham and Willis began soliciting the members of Plaintiff to invest in their limited liability company Hopewell, which Defendants represented had an exclusive right to use Title Rover's proprietary technology. Prior to Plaintiff's investment, Defendant Willis already had a long-time friendship with Ensource member Chad Martin. Defendant Willis represented to Mr. Martin that there was an opportunity for an investment, causing him to connect with other investors. These investors later formed Plaintiff, an LLC solely created for the purpose of investing in go-forward activities in Hopewell. Defendant Willis conducted in-person meetings, telephone calls, and presentations with members of Plaintiff concerning their potential investment in Hopewell.

During Defendant Willis' solicitations to convince Plaintiff's members to invest, Willis claimed that Hopewell was oversubscribed, represented that his

friends and family had already invested in it, there was a $25-million-dollar venture capitalist in the wings, and that time was of the essence or otherwise Plaintiff would miss out on the opportunity.

Furthermore, Defendant Willis issued, or caused to be issued, a patently false and misleading Private Placement Memorandum that stated the investment funds for Hopewell were to be used for "acquiring new lease and mineral interest acquisitions in the four initial target areas and for working capital to continue the Company's operations and evaluation of lease acquisition opportunities" when, in fact, none of the investment proceeds were used in such manner. Plaintiff was also provided with access to "data rooms" for Hopewell and Title Rover, containing documents regarding the so-called proprietary technology of Title Rover, which Defendants claimed Hopewell had a license to use.

Defendants presented to Plaintiff during webinars that the TR Technology was proprietary technology that was able to perform feats that no other software produced by any other company in the world could accomplish. These webinars were led by the purported "CTO" of Title Rover, Brent Stanley, under the direction, supervision, and instruction of Defendant Willis, who also attended and spoke during the webinars to investors, including the one presented to Plaintiff.

Plaintiff relied on these representations, and decided to invest in Hopewell and paid a total of $430,000.00 which was made in three Tranches on September 13, 2016 (in the amount of $205,000.00) (the "First Tranche"), September 30, 2016 (in the amount of $20,000.00) (the "Second Tranche"), and on October 28, 2016 (in the amount of $205,000.00) (the "Third Tranche").

The reality, however, was that many components of the Title Rover Technology contained non-proprietary, third-party "off-the-shelf" technology, any purported Title Rover "license" for proprietary technology did not exist, and that

the TR Technology's functionality and performance were surpassed by then-commercially available software.

In January 2017, Plaintiff filed the instant lawsuit. Following this filing, Willis has taken improper measures to delay and obstruct Plaintiff from pursuing its case. For example, five months after the filing of this lawsuit, Hopewell-Pilot Project, LLC ("Hopewell") filed for Chapter 11 bankruptcy on May 4, 2017 and Defendant Title Rover, LLC ("Title Rover") filed Chapter 7 bankruptcy that same day. Willis was behind these bankruptcy filings which were done in an effort to delay the instant litigation and create further costs to Plaintiff in the pursuit of seeking the ill-gotten gains of Defendants.

**B.   The Misrepresentations and Omissions**

    **1.   Defendants Failed to Disclose the Insolvency of Hopewell to Plaintiff During Their Solicitation of Plaintiff as an Investor of Hopewell**

Plaintiff questioned Defendants Willis and Tatham about the financial strength of Hopewell during the solicitation period, but both Defendants Tatham Willis failed to disclose the pathetically low (and sometimes negative) cash balance, insolvency, and near bankrupt condition.

    **a.   Hopewell's Liabilities Substantially Outweighed Its Assets.**

In reality, the evidence will show Defendants solicited Plaintiff to invest funds in July knowing and concealing that Hopewell was insolvent and desperate for money. By way of example, according to Hopewell's Balance Sheet, Hopewell's current liabilities as of July 31, 2016 were $183,675.09, which is seven (7) times more than its assets. Then as of August 31, 2016, Hopewell's current liabilities were $268,072.96, yet its assets were only $32.15. In fact, on September 30, 2016, even after Plaintiff's tranche was made in the amount of $225,000.00, Hopewell's current liabilities were still $422,085.48.

Among the many existing liabilities were the monthly "licensing fees" to Title Rover, which had not been paid since July 2016, along with amounts owed to AIT/Substantia Logix. One of the primary obligations Hopewell was not able to pay during the Active Solicitation Period for Plaintiff's investment was the monthly license fee for Beyond Recognition Technology, which was due the first of each month and had not been paid for the months of August 2016 and September 2016. The evidence will show Defendant Willis was aware of Hopewell's liabilities at the time Plaintiff was solicited to invest in Hopewell. This "license" fee for Beyond Recognition's technology, which in reality was a monthly payment made to Beyond Recognition despite Defendant Willis knowing Beyond Recognition had not performed the initial scope of work set forth in the Development Plan.

Because of this, Title Rover, in turn, was not able to pay some of its vendors that were critical to the purported development of the proprietary nature of TR Technology.  Willis was aware of these financial issues and will not dispute that at trial.

2.     **Defendants Represented That Plaintiffs' Investment Would Be Used for Overhead, Acquisition of Leases, and Necessary Legal Expenses, Not Pre-Existing Accounts Payable**

Defendants represented to Plaintiff that its investment money would be used to cover (1) operating overhead, (2) acquisition of leases, and (3) necessary legal expenses in answering Plaintiff's due diligence questions. Moreover, during both in-person meetings and telephonic meetings, Defendants informed Plaintiff that its investment would be used in go-forward activities, and failed to disclose that the investment would be used to pay back Hopewell's outstanding debts and other obligations.

The Private Placement Memorandum issued to Plaintiff was materially misleading because the investment proceeds from the Plaintiff were not used for the purposes stated therein but, rather, for payment of antecedent debt that had been incurred prior to the investment date. None of the investment proceeds were actually used for "…acquiring new lease and mineral interest acquisitions…" or for working capital purposes.

The general ledgers and the balance sheets show that Defendants used Plaintiff's investment to pay back outstanding debts and obligations and thus, Defendants' representation of the use of Plaintiff's investments is untrue.

The proceeds of the First Tranche were used to pay accounts payable, including amounts due to AIT/Substantia Logix, LLC, and to provide an advance to Beyond Recognition, on the insistence of Willis who insisted on using $25,000.00 of the remaining amount of the First Tranche to make an additional advance to Beyond Recognition. As a result, the entire amount of the First Tranche was used within three days following its receipt. Notwithstanding receipt of the First Tranche, its use and application, the financial problems of Hopewell continued. The First and Second Tranches were also applied in a similar fashion to pay for Hopewell operations and antecedent debts related thereto.

By way of example, before September 13, 2016, when Plaintiff first funded its tranche of $205,000.00, Hopewell's balance was -$2,892.50. The very same day Plaintiff's first tranche was made, on September 13, 2016, Hopewell paid Title Rover in the amount of $7,500.00 for the payment accrued on August 31, 2016. As evidenced in the Transaction Detail by Account, the transaction of $35,000.00 from Hopewell to Title Rover on September 13 covered both the $17,500.00 monthly "licensing fee" for September and for August, which accrued on August 31, 2016. On September 16, 2016, three (3) days after Plaintiff's first tranche was made to Hopewell, Hopewell's balance went down to -$1,896.72.

In sum, the transactional history for Hopewell illustrates the systematic use of Plaintiff's investments for pre-existing debts and obligations, including paying a "licensing fee" to Title Rover for purported proprietary technology Defendant Willis knew it did not own.

> **a.    Defendant Willis Paid Substantial Fees to His Own Entities and Used Hopewell's Investment to Cover the Obligations of Willis Group.**

Plaintiffs' investment was also used by Defendants Willis to line the pockets and cover the outstanding obligations of his own entities, which included Title Rover, Beyond Review, Image Engine, and Willis Group, which all shared the same address at 1400 Post Oak Boulevard, Suite 200, Houston, Texas 77056. Defendant Willis was the manager of Title Rover and Hopewell and CEO of Willis Group, Beyond Review, and Image Engine.

Beyond Review, a Willis Group affiliate, is a company that provided legal services to Hopewell through its attorneys' review of the land, oil, gas and mining contracts as needed. Image Engine, another Willis Group affiliate, is a company that contracted with Hopewell to provide copying and imaging services. Image Engine invoiced significantly more than its initial quote given to Title Rover, allowing Defendant Willis to siphon funds for his own entity. In total, Hopewell paid Beyond Review at least $109,768.50, and Image Engine at least $24,000.00.

On June 24, 2016, Defendants Willis Group and Title Rover entered into a settlement agreement with Beyond Recognition, which obligated Title Rover to pay $200,000.00 within 90 days of the Development Plan, also executed that same day. Thus, Defendant Willis, on behalf of himself and his entities Willis Group and Title Rover, solicited Plaintiff for its investment knowing that this investment

would be used to pay off the already incurred obligations entered into by Willis Group and Title Rover.

3.  **Defendants Mispresented the Title Rover Technology: The Technology Was Not Fully Functional Nor Proprietary and Title Rover Did Not Possess a License to Use The Beyond Recognition Technology**

The Private Placement Memorandum's "new proprietary software technology" represented to Plaintiff as fully functional was, in fact, a work in progress and never finished – and was not proprietary to Hopewell or, for that matter, its licensor, Title Rover. Defendant Willis himself will admit that the TR Technology was never completed and will be corroborated by Tatham.

Defendant Willis also admits that the TR Technology was comprised of "off the shelf" software that were not proprietary to Title Rover.  In the deposition of Joseph Haynes, who developed the portal for Title Rover, Haynes testified that the TR portal software is AIT's intellectual property if it is anyone's and that it was not a product but rather "a way of presenting data from a specific county so that the people at Title Rover could look at it." Haynes also testified that AIT owned the licenses used behind the TR software including, ABCpdf, Crystal Reports, and others which were used as elemental functions within the portal. It should be noted that use of these off the shelf products are prohibited from being re-licensed and as such TR had no legal right to sell a TR license to Hopewell.

These statements are in direct contradiction to the representations made through the Solicitation Period of Plaintiff, where Plaintiff was presented with a variety of materials during webinars, through the data rooms, and/or by email, including Pitch Decks created by Brent Stanley under the supervision and instruction of Defendant Willis, which were provided to Plaintiff.

///

a. **The July 25, 2016 and August 19th Pitch Decks**

The investor pitch deck dated July 25, 2016 is entitled "Data Mining for Mineral Resource Investigations" (the "July 25th Deck"). Nowhere in the July 25th Deck is there any statement that the TR Technology is a work-in-process or incomplete. To the contrary, the July 25th Deck states that Title Rover "…has developed its own proprietary technology and licensed sole rights to additional technology which delivers a 10x improvement to traditional methods of supporting data investigations and specialized analysis." The July 25th Deck also describes, in detail, the purported functionality of the "developed" and "proprietary" TR Technology. Additionally, the Pitch Deck does not mention the use of 3rd party software products, abcPDF, crystal reports, etc, which require third party reseller agreements for the use of opensource products like Google's Tessaract. The use of a third party, opensource product would have been a red flag for the investors.

These statements were again printed in a pitch deck dated August 19, 2016 entitled "Data Mining for Mineral Resource Investigations – Capabilities Summary and Technical Overview" (the "August 19th Deck"), and a pitch deck dated August 23, 2016 entitled "Technology Utilization and Intellectual Property" (the "August 23rd Deck").

Thus, the statements made in the July 25th Deck and August 19th Deck concerning the ownership and fully developed status of the TR Technology were misrepresentations.

b. **The August 23, 2016 Pitch Deck**

The investor pitch deck dated August 23, 2016 is entitled "Technology Utilization and Intellectual Property" (the "August 23rd Deck"). Nowhere in the August 23rd Deck is there any statement that the TR Technology is a work-in-process or incomplete. To the contrary, the August 23rd Deck touts the purported extensive functionality of the TR Technology, including its ability to create "…an

**PLAINTIFF ENSOURCE INVESTMENTS LLC'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW PURSUANT TO CIVIL LOCAL RULE 16.1(f)(2)**

9

3:17-CV-00079-H-LL

automated chain of title from the data…".  The August 23rd Deck also states that "Title Rover has commissioned [Beyond Review] to execute a statement of work demonstrating its ability to derive a high quality, deep index from a collection of land records from scratch, obviating the need for a manually intensive effort as is used by the rest of the industry."

Further, the August 23rd Deck contains a material omission.  Specifically, that although Beyond Recognition executed a statement of work with Title Rover to demonstrate, *inter alia*, the ability of the TR Technology to achieve successful indexing, at the time of the August 23rd Deck, Beyond Review was not only unable to successfully conduct such demonstration but it was also in breach of such statement of work for such failure.  The Statement of Work effective on July 24, 2016 demonstrated that Beyond Recognition should have already completed Phase I of the indexing within thirty days when the reality is no such phase had been completed. Beyond that, indexing had not been completed by October 18, 2016, which was already well-known by Defendant Willis.

Defendants, through the August 23, 2016 pitch deck stated that "Title Rover has both a license for use of the technology [Beyond Recognition] and an exclusivity option." The evidence will show Title Rover had no license to use the technology developed by Beyond Recognition, and that Title Rover did not even have direct access to use the technology itself.

## III.   CONTENTIONS OF LAW

### A.   <u>Defendants Violated Section 10b and Rule 10b-5.</u>

Section 10(b) of the Securities Exchange Act makes it unlawful for any person to employ "any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). Rule 10b-5, promulgated under Section 10(b), makes it unlawful, in connection with the purchase or sale of a security, to "make any untrue

**PLAINTIFF ENSOURCE INVESTMENTS LLC'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW PURSUANT TO CIVIL LOCAL RULE 16.1(f)(2)**
10

3:17-CV-00079-H-LL

statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. §240.10b5(b).  *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1092 (9th Cir. 2010); *SEC v. Dain Rauscher, Inc.,* 254 F.3d 852, 856 (9th Cir. 2001).

A violation of Section 10(b) and Rule 10b-5 is established if the defendant: (1) made a material misrepresentation or omission; (2) in connection with the purchase of a sale or security; (3) with scienter; (4) in interstate commerce. *SEC v. Phan,* 500 F.3d 895, 907-908 (9th Cir. 2007); *Ludlow v. BP, P.L.C.,* 800 F.3d 674, 681 (5th Cir. 2015).

Conduct prohibited by these provisions includes: (i) the making of any untrue statement of a material fact; (ii) omitting to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading; (iii) the use of any device, scheme or artifice to defraud; or (iv) the use of any act, practice, or course of conduct that operates as a fraud or deceit.  In enacting Section 10(b), Congress "meant to prohibit the full range of ingenious devices that might be used to manipulate securities."  *Santa Fe Industries v. Green*, 430 U.S. 462, 477 (1977).  Section 10(b) has been "described rightly as a 'catchall' clause to enable the Commission to 'deal with new manipulative [or cunning] devices.'"  *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 203 (1976).

### 1.    Defendants Misrepresented and Concealed Material Facts.

Defendants violated § 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder by making untrue statements of a material fact and failing to state material facts that were necessary to prevent the statements from being misleading under the circumstances.

---

Falsity is alleged (i) by identifying "inconsistent contemporaneous statements or information ... made by or available to the defendants" *In re Glenfed, Inc. Sec. Litig.,* 42 F.3d 1541, 1549 (9th Cir. 1994); and (ii) by omission where a defendant was aware of "undisclosed facts tending to seriously undermine the accuracy of the statement." *In re Apple Computer Sec. Litig*., 886 F.2d 1109, 1113 (9th Cir. 1989). Internal forecasts are the type of contemporaneously known facts that rendered public statements that conflict with those forecasts false and misleading. Companies also have a duty to update a prior disclosure if that disclosure has "become materially misleading in light of subsequent events." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1431 (3rd Cir. 1997) (citation omitted).

### a.   Defendants' Misrepresentations and Omissions were Material.

A statement is material under the securities laws "if there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest." *SEC v. Sethi* 910 F.3d 198, 206 (5th Cir. 2018) (citation omitted); *see also Basic, Inc. v. Levinson,* 485 U.S. 224, 231-32 (1988).

### i.   *Platforms Wireless*

The *Platforms Wireless* case bears many striking similarities to the case at hand. In particular, the defendants in *Platforms Wireless* made material misrepresentations proclaiming a successfully working "ARC System" – the sole technology on which the company and its future was based – had been developed when, in fact, none existed. One press release declared the "unveiling" of such system and even described the apparent technical details and performance characteristics of five models of such system – even though at the time of such press release the company only had "…a description of how the ARC System would operate and did not have prototypes built, nor even the money to build the

prototype." *S.E.C. v. Platforms Wireless Int'l Corp.,* 617 F.3d at 1082 (9th Cir. 2010).

This is eerily similar to the case at bar in that Defendant Willis approved and knowingly had disseminated the Private Placement Memorandum and Investor Pitch Decks to Plaintiff that described the fully-functional TR Technology when, in fact, the TR Technology was nowhere near the state of completion or functionality at the time of the Private Placement Memorandum and Investor Pitch Decks were distributed to Plaintiff.   Also, as with the company in *Platforms Wireless*, Title Rover did not have the money to complete the build of the TR Technology so that it performed in accordance with the representations contained in the Private Placement Memorandum and Investor Pitch Decks.

The district court in *Platforms Wireless* concluded that the press release "unveiling" the ARC System was materially misleading because it "only permits the conclusion that Platforms was announcing that it had actually developed a viable ARC system" – even though at the time of such press release it was undisputed that "…Platforms had only a design of the system, had no operational prototype, and did not have the money to build the prototype." *Platforms Wireless*, 617 F.3d at 1094.  The district could further concluded that since the Chairman and Chief Executive Officer of the company knew Platforms did not have any such technology at the time of the press release, there was no genuine issue of material fact that he acted with deliberate recklessness by issuing such press release. Consequently, the district court granted summary judgment in favor of the plaintiff on the Section 10(b) and Rule 10b-5 claims.  On appeal, the Ninth Circuit affirmed such ruling and further holding that "…if no reasonable person could deny that the statement was materially misleading, a defendant with knowledge of the relevant facts cannot manufacture a genuine issue of material fact merely by denying (or

1  intentionally disregarding) what any reasonable person would have known."

2  *Platforms Wireless*, 617 F.3d at 1094.

3                              **ii.    SEC v. Piorer**

4          In *SEC v. Poirier*, 140 F.Supp.2d 1033 (D. Ariz. 2001), the Commission was

5  granted summary judgment against a defendant accused of orchestrating a "pump

6  and dump" scheme by distributing false information to inflate the company's share

7  prices with intent to sell off shares at the inflated price before the false information

8  was uncovered.    In particular, the defendants in *Poirier* "repeatedly cause[d]

9  patently false press releases to be published that misstated [the company's] sales

10 and revenue prospects…"  *Id.* at 1043.  One such press release asserted that the

11 company had a "$1.3 million-dollar sales backlog and would be sending the first

12 shipment to Southwest Airlines."  140 F. Supp.2d at 1040.  The court determined

13 that "[t]his press release was false and misleading because [the company] did not

14 have a $1.3 million backlog of sales and had no contract with Southwest Airlines."

15 *Id*.

16 Defendants solicited Plaintiff's investment through, among other things, the false

17 statements of the efficacy of the TR Technology. Specifically, Defendants

18 misrepresented to Plaintiff that its investment would be used in go-forward

19 activities and that Title Rover, LLC had a license to use Beyond Recognition's

20 technology, when there was no such license in existence.

21        Defendants also failed to disclose that Hopewell was heavily indebted and

22 made statements and/or omissions relating to accounting, profitability, potential

23 investments, and technology that were false and misleading. Had Plaintiff been

24 informed the truth as to any of these aspects, Plaintiff would not have made the

25 investment.

26 ///

27 ///

28

1

2.      **Plaintiff Has Satisfied the "In Connection With" Element.**

2      Plaintiff can easily establish the "in connection with" element. In *Adam v.*

3  *Silicon Valley Bancshares*, 884 F. Supp. 1398 (N.D. Cal. 1995), the court stated,

4  "The Ninth Circuit has traditionally taken as expansive view of the 'in connection

5  with requirement, recognizing that statements satisfy the "in connection with the

6  purchase or sale of any security" requirement of Rule 10b-5(c) if the statements

7  were "made ... in a manner reasonably calculated to influence the investing public,

8  e.g. by means of the financial media."' *Id*. at 1402 (citations omitted). The court in

9  *SEC v. Rana Research*, 8 F.3d 1358, 1362 (9th Cir. 1993), noted that:

10
11
12
13

> Where the fraud allegations involves public dissemination in a document
> such a press release, annual report, investment prospectus or other such
> document on which an investor would presumably rely, the "in connection
> with" requirement is generally met by proof of the means of dissemination
> and the materiality of the misrepresentation or omission.

14  *Adam*, 884 F. Supp. at 1402.

15      Defendants made or were substantially involved in preparing each of the

16  material misstatements or omissions, referred to in the contentions of fact, above,

17  with knowledge of their falsity or with reckless disregard of their truth.

18
19

3.      **Scienter is Satisfied by Defendants' Knowing or Reckless
Conduct.**

20      Scienter is "a mental state embracing intent to deceive, manipulate, or

21  defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n. 12  (1976).  In the

22  Ninth Circuit, scienter may also be established by demonstrating that the defendant

23  acted recklessly.  *Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1568-69 (9th

24  Cir.1990), <u>cert. denied</u>, 499 U.S. 976 (1991).

25      Both actual knowledge and recklessness, in turn, can be established by either

26  direct or circumstantial evidence. *See In re Software Toolworks Sec. Litig*., 50 F.3d

27  615, 626 (9th Cir. 1995). Circumstantial proof is demonstrated by facts allowing a

28

"reasonable inference" at trial that the defendant acted knowingly or recklessly. *Id*. at 627; see *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 n. 30 (1982). "The most direct way to show... that the party making the statement knew that it was false is via contemporaneous reports of data, available to the party, which contradict the statement." *Nursing Home Pension Fund v. Oracle Corp*., 380 F.3d 1226, 1230 (9th Cir. 2004).

Recklessness is conduct or omissions "involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Software Toolworks*, 50 F.3d at 626 (quoting *Hollinger v. Titan Capital Corp*., 914 F.2d 1564, 1569 (9th Cir. 1990) (en banc), *cert. denied*, 499 U.S. 976 (1991) (citations omitted). Defendants acted recklessly because they "had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although [he] could have done so without extraordinary effort." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1064 (9th Cir. 2000) (quoting *Burgess v. Premier Corp.,* 727 F.2d 826, 832 (9th Cir. 1984)).

Plaintiffs need only offer evidence sufficient to raise a reasonable inference of scienter. The Private Securities Litigation Reform Act of 1995 ("PSLRA"), which requires a "strong inference" of scienter, is expressly applicable only at the pleading stage. 15 U.S.C. § 78u-4. Thus, plaintiffs need only establish a reasonable inference that the defendants acted with the requisite mental state, as the standard at trial is unaltered by the PSLRA. *See Howard,* 228 F.3d at 1064 (9th Cir. 2000).

Because corporate defendants are not capable of possessing a "mental state," for purposes of establishing scienter, the state of mind of their agents is imputed to them. *See SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1089 n.3 (2d Cir.

1972); *Kirkland v. E.F. Hutton & Co.,* 564 F. Supp. 427, 447 (E.D. Mich. 1983); *SEC v. Blinder, Robinson & Co.,* 542 F. Supp. 468, 476 n.3 (D. Colo. 1982).

Defendants' actions rise to the level of scienter, such that they made serious misrepresentations to Plaintiff regarding its investment money. Not only did Defendants not disclose to Plaintiff the insolvency of Hopewell-Pilot project, LLC, but repeatedly misrepresented that there were other investors ready, willing, and able to fund the company. Defendants misappropriated Plaintiff's investment to cover debts and outstanding balance accrued prior to Plaintiff's investment and to cover expenses incurred by themselves individually and by their companies. In addition, Defendants continued to deny Plaintiff the opportunity to obtain information regarding the status of their funds and knowingly (or at least recklessly) misled Plaintiff into believing that the TR Technology was proprietary. Without question, this specious behavior demonstrates that both Defendants Mark Willis and Tom Tatham embraced the intention to deceive, manipulate, and defraud: they acted with scienter.

### 4. Plaintiff Relied on Defendants' Misrepresentations and Omissions.

"The traditional (and most direct) way a plaintiff can demonstrate reliance is by showing that he was aware of a company's statement and engaged in a relevant transaction – e.g., purchasing common stock – based on that specific misrepresentation." *Halliburton Co. v. Erica P. John Fund, Inc.* 573 U.S. 258, 267 (2014); see *Affco Investments 2001, L.L.C. v. Proskauer Rose, L.L.P.* 625 F.3d 175, 194 (5th Cir. 2010). Justifiable reliance inquires the reasonableness of a plaintiff's reliance "in light of all the circumstances giving consideration to the plaintiff's intelligence and experience." *Atari Corp. v. Ernst & Whinney,* 981 F.2d 1025, 1031 (9th Cir. 1992). The reasonableness analysis ultimately seeks whether

1   defendant's alleged misrepresentations in fact caused plaintiff's injury. *Atari,* 981

2   F.2d at 1030.

3       Here, Defendants made the misrepresentation and omission of the material

4   facts. Hopewell made omissions regarding its dire financial situation and

5   misrepresentations and omissions about the efficacy of the technology, to Plaintiff,

6   who, based on this information, funded Hopewell. Plaintiff's reliance was

7   justifiable because (i) it was not aware of Hopewell's financial condition since

8   Plaintiff did not, at minimum, have *pro forma and certainly had no access to the*

9   *company's books* to properly assess its decision to fund Hopewell; (ii) while these

10  omissions and misrepresentations were being made, Defendant Mark A. Willis

11  portrayed himself as a sophisticated businessman and an experienced venture

12  capitalist, ratifying all the statements presented in the pre-investment stage. "[A]

13  word of assurance is only as good as its giver." *Affco,* at 194; (iii) Plaintiff was led

14  to believe the investment would be used for go-forward activities; (iv) Plaintiff was

15  unaware of the specific terms of the Defendants' settlement with Beyond

16  Recognition; and (v) Plaintiff was unaware the Title Rover technology that was

17  licensed to Hopewell was in fact third party software that was not properly licensed

18  or owned by Title Rover.  Plaintiff lost all its investment money as a result of these

19  misrepresentations and omissions.

20      **B.**   **Defendants Cannot Shield Their Liabilities Through Disclaimers.**

21      Defendants will likely argue that disclaimers provided to Plaintiff shield

22  them from any liability for securities fraud. However, Disclaimers do not always

23  shield a defendant from liability for securities fraud, and cautionary words about

24  future risk cannot insulate from liability the failure to disclose that the risk has

25  transpired. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17

26  C.F.R. § 240.10b–5. *Richman v. Goldman Sachs Group, Inc.,* 868 F. Supp. 2d 261,

27  Fed. Sec. L. Rep. (CCH) P 96926 (S.D. N.Y. 2012).

28

1
2
3
4
5
6

Moreover, in order to render inactionable any allegedly misleading or false statement contained in registration statement or prospectus, boiler–plate disclaimer that merely warns reader that investment has risks will ordinarily be insufficient; cautionary statements must be substantive and tailored to specific future projections, estimates, or opinions challenged by plaintiffs. *In re Numerex Corp. Sec. Litig.* (1996, ED Pa) 913 F Supp 391, (1996, ED Pa).

7

### C.    Persons Liable for Securities Violations

8
9
10
11
12
13

A person or entity who disseminates false or misleading statements with intent to defraud can violate the anti-fraud provisions of federal securities law, even if the person or entity could not be liable for securities fraud as the maker of an untrue statement of material fact. *Lorenzo v. SEC,* 139 S. Ct. 1094, 1101 (2019) (citation omitted); *see also* Securities Act of 1933 § 17(a)(1), 15 U.S.C.A. § 77q(a)(1); 17 C.F.R. § 240.10b-5.

14
15
16
17

Thus, Defendant Willis, acting on behalf of himself and his entities, cannot avoid liability by blaming Tatham or anyone else for the dissemination of false and misleading statements during the solicitation of Plaintiff and is therefore liable of securities violations.

18

### D.    Requested Relief for Securities Violations

19
20
21
22
23
24
25
26
27

Disgorgement is an available and appropriate equitable remedy for securities fraud. *See SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir.), cert. denied, 510 U.S. 963 (1993). In contrast to damages, which are designed to compensate fraud victims, disgorgement forces a defendant to surrender his unjust enrichment and eliminates any incentive for violating the law. Id. at 1491, 1493; *see also SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998), cert. denied sub. nom. *SEC v. Sands*, 525 U.S. 1121 (1999). The amount of disgorgement should include all gains flowing from illegal activities. *See SEC v. Cross Fin. Servs.,* 908 F. Supp. 718, 734 (C.D. Cal. 1995); *SEC v. Lund*, 570 F. Supp. 1397, 1404 (C.D. Cal.

28

1   1983).    In  calculating  disgorgement,  the  Commission  need  only  show  "a

2   reasonable  approximation  of  profits  causally  connected  to  the  violation."  *First*

3   *Pac.  Bancorp,*  142  F.3d  at  1192  n.6.    Any  uncertainly  in  the  calculation  of

4   disgorgement  "should  fall  on  the  wrongdoer  whose  illegal  conduct  created  that

5   uncertainty."  *SEC v. Patel*, 61 F.3d 137, 140 (2d Cir. 1995) (citation omitted).

6        An order of disgorgement should include prejudgment interest to ensure that

7   the wrongdoer does not profit from the illegal activity.  *See SEC v. Manor Nursing*

8   *Ctrs., Inc.,* 458 F.2d at 1105.   The interest rate prescribed by 28 U.S.C. § 1961,

9   used for calculation of post-judgment interest, is generally the appropriate rate to

10  use to calculate prejudgment interest unless the trial judge finds, on substantial

11  evidence, that the equities of a particular case require a different rate.  *See Western*

12  *Pacific  Fisheries,  Inc.  v.  S.S.  President  Grant,*  730  F.2d  1280,  1289  (9th  Cir.

13  1984); *SEC v. Cross Fin. Servs.*, 908 F. Supp. at 734.

14       Disgorgement  is  appropriate  in  the  case  at  hand.    Defendant  Willis  should

15  disgorge his ill-gotten gains of Four Hundred Thirty Thousand Dollars ($430,000)

16  plus interest.

17       **E.    Defendants Wrongfully Converted Plaintiff's Investment Funds.**

18       Under Texas[2] law, the elements of a claim for conversion are: (1) plaintiff

19  owned or had possession of the property or entitlement to possession, (2) defendant

20  unlawfully  and  without  authorization  assumed  and  exercised  control  over  the

21  property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner,

22  (3) plaintiff demanded return of the property, and (4) defendant refused to return

23  the property.  *Texas  Integrated  Conveyor  Systems,  Inc.  v.  Innovative  Conveyor*

24  *Concepts, Inc.* 300 S.W.3d 348, 366 (Tex.App.2009).

25  _____

26       [2] Texas law is applied for the common law claims under the reasoning stated Court's
    Minute Order regarding Defendants' Motion to Dismiss since the Third Amended and Restated

27  Company Agreement of Hopewell-Pilot Project, LLC provided for Texas law. [*See* ECF No. 15,
    pp. 12-13.]

28

### 1.    Plaintiff Had Possession of the Investment Fund.

To have a right to immediate possession, the plaintiff must have a present interest in the property; a plaintiff who has only a future interest in the property cannot sue for conversion. *See City of Wichita Falls v. ITT Commercial Fin. Corp.*, 827 S.W.2d 6, 9-10 (Tex.App. 1992), rev'd in part on other grounds, 835 S.W.2d 65 (Tex.1992). The question of whether a plaintiff has a present or future interest in property often arises in cases involving lienholders. A lienholder has a present interest in property—and thus a right to immediate possession—when the lienholder has done everything legally necessary to execute the lien. *See, e.g., Oats v. Dublin Nat'l Bank*, 90 S.W.2d 824, 828 (Tex.1936) (bank that had secured lien on cattle could bring suit for conversion against another bank that received proceeds from sale of cattle). Plaintiff here had a right to possession to its own investment that was procured via misrepresentations and omissions of Defendants.

### 2.    Money Can Be Subject to Conversion.

Money can be converted if it can be identified as a specific chattel. *Encinas v. Jackson,* 553 S.W.3d 723, 727 (Tex.App. 2018); *Estate of Townes v. Townes,* 867 S.W.2d 414, 419 (Tex.App. 1993).

To qualify as a specific chattel, the money must be (1) delivered for safekeeping, (2) intended to be kept segregated, (3) substantially in the form in which it was received or in an intact fund, and (4) not the subject of a title claim by its keeper. *Lawyers Title Co. v. J.G. Cooper Dev., Inc.*, 424 S.W.3d 713, 718 (Tex.App. 2014); *Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 456 (Tex.App. 2006); e.g., *Estate of Townes,* 867 S.W.2d at 419-20 (son converted funds from mother's bank accounts); *Dixon v. State,* 808 S.W.2d 721, 723-24 (Tex.App. 1991) (president of corporation converted state sales-tax money); see, e.g., *Intermarkets U.S.A., Inc. v. C-E Natco*, 749 S.W.2d 603, 604 (Tex.App. 1988) (buyer converted proceeds of letter of credit). When a person has designated

1    a particular use of proceeds from a check, the proceeds count as specific chattel

2    capable of conversion. *Security State Bank v. Valley Wide Elec. Sup. Co.*, 752

3    S.W.2d 661, 665 (Tex.App. 1988).

### 3.    Defendants Exercised Dominion and Control.

An action for conversion can arise when the defendant acquires the property

lawfully but uses it in a way that departs from the conditions under which it was

received. *See, e.g., Bures v. First Nat'l Bank*, 806 S.W.2d 935, 938 (Tex.App.

1991) (bank's refusal to release certificate of title after bank's interest had been

extinguished was evidence of conversion).

As discussed above, Plaintiff's investment was not used in the manner in

which it was promised and was under the full control of Defendants, and Plaintiff

relied upon certain conditions about the TR Technology and financial health of

Hopewell when determining to make its investment.

### 4.    Plaintiff's Demand Would be Futile Because Defendants' Acts Manifested a Clear Repudiation of Plaintiff's Rights.

"[W]hen the possessor's acts manifest a clear repudiation of the plaintiff's

rights, demand and refusal are not necessary." *Hoenig v. Texas Commerce Bank,*

*N.A.* 939 S.W. 2d 656, 664 (1996) (citation omitted). In *Hoenig,* the court finds no

demand or refusal necessary when the defendant appropriated money from trust

property contrary to trust's rights. *Id.* Here, the Court should also find demand or

refusal not necessary because Defendants used Plaintiff's investment fund for

purposes contrary to its designated purpose. Regardless, Plaintiff demanded return

of its investment from Defendants on January 4, 2017. Plaintiff's demand was

rejected by Defendants, prompting the instant lawsuit.

### 5.    Plaintiff Can Recover the Return of the Property Plus Actual Damages.

1    In an action for conversion, a plaintiff can seek the return of the property

2    plus actual damages that are necessary to compensate the plaintiff for all actual

3    losses or injuries sustained, not merely the reasonable market value of the property.

4    *Winkle Chevy-Olds-Pontiac, Inc. v. Condon,* 830 S.W.2d 740, 746 (Tex.App.

5    1992); *Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.,* 287 S.W.3d 877, 889

6    (Tex.App. 2009). Thus, Plaintiff seeks to recover the amount converted plus costs

7    and fees associated with recovering that money.

8              **6.       Punitive Damages are Warranted for Conversion.**

9    A plaintiff can recover punitive damages in an action of conversion with

10   proof of defendant's malice. *Green Int'l v. Solis,* 951 S.W.2d 384, 391 (Tex. 1997).

11   To establish malicious conversion, the plaintiff must show more than bad faith and

12   wrongful conduct such that the wrongful act was of a "wanton and malicious

13   nature". *Id.* Malice can be implied from the knowing conversion of another's

14   property without justification. *F.D.I.C. v. Golden Imports, Inc.* 859 S.W.2d 635,

15   646 (Tex.App. 1993).

16   Here, Defendants obtained funds from Plaintiff under the guise of investing in the

17   go-forward activities of a promising company with purported top-of-the-market

18   technology yet instead used said funds to pay off their related entities and already

19   accrued debts. Exemplary damages should be awarded under *F.D.I.C.* because

20   Defendants used the funds for a contrary purpose knowingly.

21             **7.       Plaintiff Can Recover Prejudgment Interest.**

22   In an action for conversion in which the plaintiff recovers for loss of market

23   value, the plaintiff can recover prejudgment interest for loss of use from the date of

24   the conversion to the date of judgment. *Associated Tel. Directory Publ'rs v. Five

25   D's Publ'g Co.,* 849 S.W.2d 894, 900 (Tex.App. 1993). Thus, Plaintiff requests

26   prejudgment interest.

**F.    Defendants' Conduct Constitutes Intentional Misrepresentation and Fraudulent Concealment**

The elements of intentional misrepresentation are (1) a material representation, (2) falsity, (3) made the misrepresentation knowingly or recklessly without any knowledge of the truth and as a positive assertion, (4) intent to induce reliance, (5) actual reliance, and (6) resulting damage. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex. 1998).

Under Texas Business and Commerce Code Section 27.01, "fraud in the sale of stock consists of a: (1) false representation of a past or existing material fact, when the false representation is (A) made to a person for the purpose of inducing that person to enter into a contract; and (B) relied on by that person in entering that contract." *Cortis, Inc. v. Cortislim Int'l, Inc.*, No. 3:12-CV-0562-B, 2016 WL 6330579, at *6 (N.D. Tex. July 22, 2016)

**1.    Persons Liable**

**a.    A Principal Can Be Liable for the Fraud of its Agent.**

A principal may be vicariously liable for the fraudulent conduct of its agent if the agent acted with actual or apparent authority or if the principal ratified the conduct. *See NationsBank v. Dilling*, 922 S.W.2d 950, 952-53 (Tex.1996) (apparent authority); *City Nat'l Bank v. Martin*, 8 S.W. 507, 509 (Tex.1888) (apparent authority); *Disney Enters. v. Esprit Fin., Inc.*, 981 S.W.2d 25, 31 (Tex.App. 1998) (ratification).

Here, Defendant Willis acted with actual authority on behalf of Image Engine, Beyond Review, Title Rover, Hopewell, and Willis Group through the misrepresentations and omissions as described above. Thus, these Defendant entities are liable for Defendant Willis' actions.

**b.A Beneficiary of Fraud Can Be Liable for the Fraudulent Act.**

---

1    A person may be vicariously liable for the fraudulent act of another if the

2    person benefited from a fraudulent transaction and had knowledge of the fraud. *See*

3    *First State Bank v. Fatheree*, 847 S.W.2d 391, 396 (Tex.App. 1993); *Corpus*

4    *Christi Area Teachers Credit Un. v. Hernandez*, 814 S.W.2d 195, 198 (Tex.App.

5    1991). Thus, any attempt by Willis to shirk any fraudulent statements he claims

6    Tatham made will fail, as he benefited and had knowledge of those

7    misrepresentations and omissions.

8         c.    **An Agent May Be Liable for Fraud of its Own or**

9                **Principal.**

10   An agent may be individually liable for its own act of fraud performed for its

11   principal. *See Nwokedi v. Unlimited Restoration Specialists, Inc*., 428 S.W.3d 191,

12   201 (Tex.App. 2014); *see, e.g., JJJJ Walker, LLC v. Yollick,* 447 S.W.3d 453, 468-

13   69 (Tex.App. 2014) (attorney can be liable for knowingly participating in

14   fraudulent conduct on client's behalf). Defendant Willis can thus be individually

15   liable for his fraudulent actions to procure Plaintiff's investment in Hopewell.

16        **2.    Intentional Misrepresentation**

17        **a.    Defendants' Representations were Material.**

18   A statement is material if a reasonable person would find it important and

19   would be induced to act upon the information thereof in determining his choice of

20   actions in the transaction at issue. *Italian Cowboy Partners, Ltd. V. Prudential Ins.*

21   *Co. of Am.,* 341 S.W. 3d 323, 337 (Tex. 2011). As discussed above, Defendants'

22   representations were material because Plaintiff would not have otherwise funded

23   Hopewell but for said representations.

24        **b.    Defendants' Representations were False.**

25   A material representation is fraudulent if it was false when made. *Burleson*

26   *State Bank v. Plunkett*, 27 S.W. 3d 605, 613 (Tex.App. 2000) (citation omitted.)

27   An opinion may support a fraud claim if the opinion is based on or supported with

28

false statements of fact. *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 277 (Tex. 1995); *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983). If an opinion is intertwined with misstatements of fact, the opinion amounts to a false representation of fact. *See Trenholm*, 646 S.W.2d at 931.

### i. Opinions May Also Support Fraud

An opinion may support a fraud claim if (1) it is based on the defendant's special knowledge and (2) the defendant should have known the plaintiff was justified in relying on the defendant's special knowledge. *Transport Ins.*, 898 S.W.2d at 277; *see Italian Cowboy*, 341 S.W.3d at 338. "Special knowledge" means knowledge or information superior to that possessed by the plaintiff and to which the plaintiff did not have equal access. Texas PJC—Business, Consumer, Insurance & Employment (2016), PJC 105.3E (definition of special knowledge); *see Paull v. Capital Res. Mgmt.*, 987 S.W.2d 214, 219 (Tex.App. 1999).

The evidence will show Defendant Willis had special knowledge to support that representations made about the technology were false. As discussed above, Defendants Mark Willis knew at the time they solicited Plaintiff's investment that there was no real deliverable product from Beyond Recognition that could perform the functions as represented to Plaintiff nor did Title Rover have any license to technology that was proprietary and automatic.

### c. Defendants Made the Misrepresentation with Knowledge of Its Falsity or Recklessly.

A statement is fraudulent if the speak made it with knowledge of its falsity at the time or recklessly without knowledge of its truth. *Plunkett,* 27 S.W. at 613 (citation omitted.) Proof of such can be through direct or circumstantial evidence. *Id.* (citation omitted.)

1       As discussed above, Plaintiff can establish that Defendants made these
2  misrepresentations knowing the falsity thereof because there have been many
3  communications, evidenced in the email exchanges, reflecting multiple warnings
4  from different individuals that Beyond Recognition did not have any deliverable
5  products with the purported features and that the Title Rover portal developed by
6  Joseph Haynes was not a proprietary software application.

7              **d.    Intention to Induce Reliance**

8       To prove intent, the plaintiff must show (1) the defendant intended for the
9  plaintiff to act in reliance on the representation or had reason to expect that the
10 plaintiff would do so and (2) the plaintiff incurred pecuniary loss in the type of
11 transaction in which the defendant intended or had reason to expect that the
12 plaintiff's conduct would be influenced. Exxon Corp., 348 S.W.3d at 218-
13 19; *Exxon Corp. v. Emerald Oil & Gas Co., L.C.,* 348 S.W.3d 194, 219 (Tex.
14 2011); *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins*., 51 S.W.3d 573, 580
15 (Tex.2001). The defendant's intent is determined at the time the representation is
16 made. *Samson Lone Star, L.P. v. Hooks*, 497 S.W.3d 1, 15 (Tex.App. 2016). Direct
17 or circumstantial evidence may be used to prove that the defendant intended for the
18 plaintiff to rely on the representation. *Id.*

19             **e.    Actual Reliance and Resulting Damages**

20      The plaintiff's reliance must be both actual and justifiable. *JPMorgan Chase*
21 *Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018), reh'g
22 denied (June 15, 2018). As a result of Plaintiff's reliance on the statements made
23 by Defendants throughout the solicitation period, Plaintiff suffered the loss of its
24 $430,000.00, the amount it invested in Hopewell, plus interest.

25      **3.    Defendants' Failure to Disclose the Insolvency of Hopewell**
26      **Constitutes A Fraudulent Concealment.**

27

28

1

2

3

4

5

6

   Fraudulent Concealment is a subcategory of fraud, and its elements are (1) failure to disclose facts, (2) duty to disclose, (3) facts were material, (4) defendant knew plaintiff's ignorance of the facts and plaintiff did not have an equal opportunity to discover the facts, (5) defendant was deliberately silent when it had a duty to speak, (6) intent to induce, (7) reliance, and (8) injury. *Blankinship v. Brown* 339 S.W.3d 303, 308 (Tex. App. 2013).

7

8

9

"As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information. *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001).

10

### a.    Defendants Had a Duty to Disclose.

11

12

13

14

15

16

17

18

19

   A duty arises when  (1) there was a fiduciary or other special relationship requiring disclosure, (2) the defendant discovered new information that made an earlier representation misleading or untrue, (3) the defendant created a false impression by making a partial disclosure, or (4) the defendant voluntarily disclosed some information and therefore had a duty to disclose the whole truth. *Guevara v. Lackner*, 447 S.W.3d 566, 578 (Tex.App. 2014). When a defendant has a duty to speak and it deliberately remains silent, its silence is equivalent to a false representation. *In re International Profit Assocs.*, 274 S.W.3d 672, 678 (Tex.2009); *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex.2001).

20

21

22

   The evidence will show Defendants had a duty to disclose during the solicitation period of Plaintiff, for numerous reasons, including Defendants making partial disclosures of information and did not disclose the whole truth.

23

### b.    Facts Defendants Omitted were Material.

24

25

26

27

   A fact is material if it is important to the plaintiff in making a decision—that is, if a reasonable person would attach importance to and be induced to act on the information in determining a course of action in the transaction. *Citizens Nat'l Bank v. Allen Rae Invs.*, 142 S.W.3d 459, 478-79 (Tex.App. 2004); *see H.W.*

28

**PLAINTIFF ENSOURCE INVESTMENTS LLC'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW PURSUANT TO CIVIL LOCAL RULE 16.1(f)(2)**
28

3:17-CV-00079-H-LL

1   *Broaddus Co. v. Binkley*, 88 S.W.2d 1040, 1042-43 (Tex.1936) (discussing

2   material inducement); *American Med. Int'l v. Giurintano,* 821 S.W.2d 331, 338

3   (Tex.App. 1991) (jury instruction defining "material"). An omission or

4   concealment can be material even if it is not the plaintiff's only inducement for

5   entering into a contract, as long as the plaintiff relied on it. *Marburger v. Seminole*

6   *Pipeline Co.*, 957 S.W.2d 82, 86 n.4 (Tex.App.1997), disapproved on other

7   grounds, *Hubenak v. San Jacinto Gas Transmission Co.,* 141 S.W.3d 172

8   (Tex.2004).

9       Defendants omitted material facts during the solicitation of Plaintiff's

10   investment, including that Title Rover had no proprietary software, Hopewell had

11   significant outstanding obligations owed prior to Plaintiff's investment, and that

12   Plaintiff's investment would be used to pay off those already incurred obligations.

13           **c.    Defendants Knew Plaintiff's Ignorance of the Facts and**

14                   **Plaintiff Did Not Have an Equal Opportunity to Discover**

15                   **the Facts.**

16       To prove an action for fraud by nondisclosure, the plaintiff must establish

17   the defendant knew the plaintiff (1) was ignorant of the facts and (2) did not have

18   an equal opportunity to discover the truth. *Bradford v. Vento*, 48 S.W.3d 749, 754

19   (Tex.2001); *Feagins v. Tyler Lincoln-Mercury, Inc*., 277 S.W.3d 450, 457

20   (Tex.App. 2009).

21       Plaintiff was not privy to the information Defendants had in their possession,

22   including the technology (or lack thereof) in the possession of Title Rover. Plaintiff

23   also was unaware of the specific terms of the Settlement Agreement Title Rover

24   and Willis Group entered into under the supervision of Defendant Willis as CEO of

25   both entities, which stated that Title Rover had ninety days to pay Beyond

26   Recognition $200,000.00 from the acceptance of the development plan dated June

27   24, 2016.

28

1
2

**d.      Defendants Were Deliberately Silent Despite a Duty to Speak.**

3
4
5
6
7
8
9

Deliberateness must usually be established by circumstantial evidence because it requires the defendant's hidden purposes to be determined. *Chase Commercial Corp. v. Datapoint Corp.,* 774 S.W.2d 359, 367 (Tex.App. 1989); *see Blanton v. Sherman Compress Co.,* 256 S.W.2d 884, 888 (Tex.App. 1953). As discussed *infra,* Defendant Willis was deliberately silent concerning about the insolvency of Hopewell and the lack of viable developed technology for Title Rover throughout the extent of solicitation.

10

**e.      Defendants Intended to Induce Plaintiff's Actual Reliance.**

11
12
13
14
15
16
17

The defendant's intent is determined at the time the defendant made the representation, but it may be inferred from the defendant's subsequent acts. *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex.1986). Because it is inherently undiscoverable, intent must always be established by circumstantial evidence. *Id.* at 435; *see Feagins v. Tyler Lincoln-Mercury, Inc.,* 277 S.W.3d 450, 458 (Tex.App. 2009) (motive, past conduct, and related wrongful acts are factors to be considered in determining intent).

18
19
20

The circumstantial evidence will show that Defendant Willis, individually, and acting on behalf of his entities intended to induce Plaintiff's reliance so it would invest in Hopewell.

21

**f.      Plaintiff Placed Actual Reliance which Caused it Damage.**

22
23
24
25
26
27

Plaintiff's reliance is justifiable. *See, e.g., Spethmann v. Anderson*, 171 S.W.3d 680, 690 (Tex.App. 2005) (evidence was sufficient to support jury's finding that P justifiably relied on nondisclosure); *Atlantic Lloyds Ins. v. Butler*, 137 S.W.3d 199, 225 (Tex.App.2004). Moreover, to prove fraud by nondisclosure, the plaintiff must establish the nondisclosure caused the plaintiff injury. *Bradford v. Vento*, 48 S.W.3d at 754-55; *UMLIC VP LLC v. T&M Sales & Envtl. Sys.,* 176

28

---

**PLAINTIFF ENSOURCE INVESTMENTS LLC'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW PURSUANT TO CIVIL LOCAL RULE 16.1(f)(2)**

30

1   S.W.3d 595, 604 (Tex.App. 2005); *see Bright v. Addison*, 171 S.W.3d 588, 599-

2   600 (Tex.App. 2005). This element is sometimes discussed in terms of the plaintiff

3   relying on the defendant's representation "to the plaintiff's detriment." *See Johnson*

4   *v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 211 (Tex.2002). Because general

5   damages are presumed to have been foreseen by the defendant as a result of the

6   wrongful act, the plaintiff does not need to prove the damages were proximately

7   caused by the fraud. *Scott v. Sebree,* 986 S.W.2d 364, 371 (Tex. App. 1999).

8       As already discussed, its members were unaware of the omissions by

9   Defendants, and thus relied upon the PPM, the decks, and statements made to it by

10  and on behalf of Defendants. Not only has Plaintiff suffered the damages as

11  already outlined above, but consequential damages have occurred including

12  litigation fees and costs in this Court and in the Bankruptcy Court.

13      **G.    Remedies Applicable Under Texas Law**

14          **1.    Post-judgment Interest and Court Costs.**

15      Post-judgment interest is considered general damages and need not be

16  specifically pleaded. *See Jarrin v. Sam White Oldsmobile Co.,* 929 S.W.2d 21, 25

17  (Tex.App. 1996). Post-judgment interest is compounded annually and calculated

18  on both the principal amount and the previously accumulated interest. Tex. Fin.

19  Code §304.006; *Ventling v. Johnson,* 466 S.W.3d 143, 149 (Tex.2015).

20      Moreover, a prevailing party in a lawsuit is entitled to recover from its

21  adversary all of the taxable court costs incurred in the prosecution or defense of the

22  suit. Tex. R. Civ. P. 131.

23          **2.    Exemplary Damages**

24      Section 41.003 of the Civil Practice and Remedies Code provides exemplary

25  damages upon the proof of fraud, malice, or gross negligence through clear and

26  convincing evidence. Tex.Civ.Prac. & Rem. Code Ann. §41.003(a).  "'Clear and

27  convincing' means the measure or degree of proof that will produce in the mind of

28

1  the factfinder a firm belief or conviction as to the truth of the allegations sought to

2  be established." *Id.* § 41.001(2).

3      Section 41.008 limits an award of exemplary damages to the greater of:

4

5  (1)(A) two times the amount of economic damages; plus
   (B) an amount equal to any noneconomic damages found by the jury,
   not to exceed $ 750,000; or

6  (2) $ 200,000.

7      As discussed *infra*, the evidence will be clear and convincing that Defendant

8  Willis' conduct warrants post-judgment interest, recovery of court costs, and

9  exemplary (punitive damages), due to Defendant's fraud, malice, and gross

10 negligence throughout the solicitation of Plaintiff's evidence.

11     **H.**    __Defendants Engaged in Unfair Competition.__

12     Business and Professions Code Section 17200 prohibits unlawful, unfair

13 and/or fraudulent business acts or practices. Plaintiff contends that Defendants'

14 challenged acts and business practices are unlawful, unfair and fraudulent.

15     **1.**    **Defendants' Wrongful Acts and Business Practices are**

16     **Unlawful.**

17     The unlawful practices prohibited by Section 17200 are any practices

18 forbidden by law, be it civil or criminal, federal, state, or municipal, statutory,

19 regulatory, or court-made. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel.*

20 *Co.,* 20 Cal.4th 163, 180 (1999) (the UCL permits violations of other laws to be

21 treated as unfair competition that is independently actionable); *Saunders v.*

22 *Superior Court,* 27 Cal.App. 4 832, 838-839 (1994). Thus, if Defendants are found

23 to have violated Section 10b under the Securities Exchange Act of 1934,

24 conversion, or intentional misrepresentation, then Defendants have also violated

25 Section 17200.

26

27

28

1
2

### 2. Defendants' Wrongful Acts and Business Practices are Unfair

3   Even if not independently unlawful, Defendants engaged in unfair acts
4 and/or business practices when they intentionally made the misrepresentation and
5 omission discussed above. "[T]he UCL sweeps within its scope acts and practices
6 not specifically proscribed by any other law." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939,
7 948, 45 P.3d 243 (2002), <u>as modified</u> (May 22, 2002); *see also Cel-Tech,* 20 Cal.
8 4th at 180 (The UCL is not limited to proscribing independently unlawful
9 practices.) Plaintiff can carry its burden to prove Defendants engaged in an unfair
10 business act or practice by showing only that Defendants' wrongful acts and
11 business practice resulted in harm to Plaintiff that outweighs the benefits of the
12 conduct. *Saunders,* 27 Cal.App. 4 at 839; *Motors, Inc. v. Times Mirror Co.,* 102
13 Cal.App.3d 735, 740 (1980). Thus, even if the Court finds that Defendants'
14 intentional misrepresenting and omission do not constitute a violation of Section
15 10b, then they should still be and could be found as unfair business act and/or
16 practice.

### 3. Defendants' Wrongful Acts and Business Practices are Fraudulent.

17
18

19   As is true for the unfair prong of Section 17200, Plaintiff can establish that
20 Defendant's intentional misrepresentation and omission were fraudulent. In order
21 to prove that a business act or practice is fraudulent, Plaintiff only has to
22 demonstrate that "members of the public are likely to be deceived" without having
23 to prove intent, scienter, actual reliance, or damage. *Comm. On Children's Tele.,*
24 *Inc. v. General Foods Corp.,* 35 Cal. 3d 197, 211 (1983). The prohibition against
25 "fraudulent" business reaches commercial speech that does not involve advertising.
26 *Allied Grape Growers v. Bronco Wine Co.* (1988) 203 Cal.App.3d 432, 452.
27 Therefore, Plaintiff will prevail on this prong at trial.

28

1    **IV.    ABANDONED ISSUES**

2          None.

3    **V.    LIST OF WITNESSES**

4          Pursuant to Local Rule 16.1(f)(2)(d) the list of witnesses Plaintiffs expect to

5    or may call is attached hereto as Exhibit A.

6    **VI.    LIST OF EXHIBITS**

7          Pursuant to Local Rule 16.1(f)(2)(c) Plaintiff's list of exhibits they expect to

8    use is attached hereto as Exhibit B.

9    Respectfully submitted,

10

11   DATED: November 1, 2019             **PANAKOS LAW, APC**

12

13                                       By:/s/ Aaron D. Sadock
                                             Aaron D. Sadock
14                                           Attorney for Plaintiff
                                             ENSOURCE INVESTMENTS LLC
15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**PLAINTIFF ENSOURCE INVESTMENTS LLC'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW PURSUANT TO CIVIL LOCAL RULE 16.1(f)(2)**
34

3:17-CV-00079-H-LL