**RICHARD E. NAWRACAJ**
Law Offices of Richard E. Nawracaj
155 N. Wacker Drive, Suite 4250
Chicago, Illinois 60606
Email: rich.nawracaj@nawracaj-law.com

**PANAKOS LAW, APC**
Aaron D. Sadock (SBN 282131)
555 West Beech Street, Ste. 500
San Diego, California 92101
Telephone:   (619) 800-0529
Facsimile:   (866) 365-4856
Email: asadock@panakoslaw.com

Attorneys for Plaintiff ENSOURCE INVESTMENTS LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENSOURCE INVESTMENTS LLC, a Delaware limited liability company,<br><br>        Plaintiff,<br>v.<br><br>THOMAS P. TATHAM, an individual; MARK A. WILLIS, an individual; PDP MANAGEMENT GROUP, LLC, a Texas limited liability company; TITLE ROVER, LLC, a Texas limited liability company; BEYOND REVIEW, LLC, a Texas limited liability company; IMAGE ENGINE, LLC, a Texas limited liability company; WILLIS GROUP, LLC, a Texas limited liability company; and DOES 1-50,<br><br>        Defendants. | Case No.: 3:17-CV-00079-H-LL<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**Date: December 9, 2019**<br>**Time: 10:30a.m.**<br>**Courtroom: 15A**<br><br>Magistrate Judge: Hon. Linda Lopez<br>District Judge: Hon. Marilyn L. Huff<br>Courtroom: 15A<br>Action filed:  January 13, 2017 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................iv

I. INTRODUCTION ..........................................................................................1

II. LEGAL STANDARD.....................................................................................1

III. ARGUMENT ................................................................................................2

    A. The Motion for Summary Judgment with Respect to Count I Must be Denied Since Pursuant to the Evidence and Applicable Law, Material Misrepresentations were Made with Scienter by Defendant Willis and the Defendant Willis Entities, upon which Plaintiff Justifiably Relied and which Caused its Economic Loss ..........3

        1. Defendant Willis ..................................................................................3

            a. Clear and Sufficient Evidence Demonstrates the Existence of Material Misrepresentations as well as Omissions of Material Facts in the Private Placement Memorandum and Investor Pitch Decks ...................................................................................3

            b. Defendant Willis was the "Maker" of the Material Misrepresentations Because he had "Ultimate Authority" Over the Content of the Private Placement Memorandum and Investor Pitch Decks, as well as whether and how to communicate the Private Placement Memorandum and Investor Pitch Decks, to the Plaintiff...............................8

            c. The Evidence Demonstrates that Defendant Willis Acted with Scienter, as Defined Under and in Accordance with Controlling Case Precedent .........................................................11

            d. The Evidence Demonstrates Justifiable Reliance by the Plaintiff on the Material Misrepresentations Made by Defendant Willis.................................................................14

            e. The Evidence Demonstrates Loss Causation...............................15

ii

2.  Defendant Willis Entities ...................................................................17

B.  Defendants' Motion for Summary Judgment with Respect to Count
    II Must be Denied Because Under Texas Law Money Can be the
    Subject of Conversion and the Evidence Demonstrates that the
    Investment was not Treated in the Manner Represented in the
    Private Placement Memorandum .............................................................18

    1.  Under Texas Law, Money can be the Subject of Conversion ..........18

    2.  The Investment was not Treated in the Manner Represented in
        the Private Placement Memorandum ..................................................20

C.  Defendants' Motion for Summary Judgment with Respect to Count
    III Must be Denied Because it Fails to Present any Argument
    Specific to the Sufficiency of Plaintiff's Claim of Intentional
    Misrepresentation Under Texas Law ......................................................21

D.  Defendants' Motion for Summary Judgment with Respect to Count
    IV Must be Denied Because §17200 *et seq.* of the California
    Business & Professions Code Applies to Securities Transactions .........22

IV.  CONCLUSION .................................................................................................24

V.   REQUESTED RELIEF ....................................................................................24

iii

1

## <u>TABLE OF AUTHORITIES</u>

2

**Federal Cases**

3   *Affco Investments 2001, LLC v. Proskauer Rose, LLP*,

4      625 F.3d 175 (5th Cir. 2010) ................................................ 14

5   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................. 1

6   *Atari Corp. v. Ernst & Whinney,* 981 F.2d 1025 (9th Cir. 1992).......................... 14

7   *Basic Inc. v. Levinson*, 485 U.S. 224 (1989) ............................................................ 4

8   *Dura Pharm. v. Broudo,* 544 U.S. 336, 125 S.Ct.1627 ........................................ 15

9   *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) ....................... 14

10  *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990),

11   *cert. denied*, 499 U.S. 976 (1991) ................................................ 11

12  *Howard v. Everex Systems, Inc.*, 288 F.3d 1057 (9th Cir. 2000) ........................ 1, 2

13  *In re Charles Schwab Corp. Secs. Litig.*, 257 F.R.D. 534 (N.D.Cal.2009) ........... 24

14  *In re Homestore.com, Inc. Sec. Litig.*, 37 F.Supp.2d 769 (C.D. Cal ....................... 2

15      2004)........................................................................................ 2

16  *In re Novatel Wireless Sec. Litig.*, 830 F.Supp.2d 996 (S.D. Cal 2011) ................. 2

17  *In re Numerex Corp. Sec. Litig.*, 913 F Supp 391 (E.D. Pa 1996) ........................ 15

18  *Janus Capital Group v. First Derivative Traders*, 564 U.S. 135 (2011) ........... 9, 10

19  *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706 (2d Cir. 2011) ................................. 4

20  *Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.,* 416 F.3d 940 (9th Cir.

21      2005).......................................................................................... 16

22  *Lorenzo v. SEC,* 139 S. Ct. 1094 (2019) ................................................................ 17

23  *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702 (7th Cir. 2008)........... 11

24  *McCabe v. Ernst & Young, LLP,* 494 F.3d 418 (3d Cir.2007)............................... 16

25  *McGonigle v. Combs,* 968 F.2d 810 (9th Cir.1992) ............................................. 16

26  *Metzler Inv. GMBH v. Corinthian Colls., Inc.,* 540 F.3d 1049 (9th Cir. 2008)...... 16

27  *Provenz v. Miller*, 102 F.3d 1478 (1996) ................................................................. 1

28

iv

*Richman v. Goldman Sachs Group, Inc.*, 868 F. Supp. 2d 261, Fed. Sec. L.
   Rep. (CCH) P 96926 (S.D. N.Y. 2012)................................................................15

*Sands v. SEC,* 525 U.S. 1121 (1999) ......................................................................11

*SEC v. First Pacific Bancorp*, 142 F.3d 1186 (9th Cir. 1998),
   *cert. denied* sub. nom ........................................................................................11

*SEC v. Platforms Wireless Int'l Corp.,*617 F.3d 1072 (9th Cir. 2010) ..................11

*SEC v. Wang*, 2016 WL 7671369 (S.D. Cal. 2016) ...................................................4

*Svalberg v. SEC*, 876 F.2d 181, 184 (D.C. Cir. 1989) ............................................11

*TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438 (1976).........................................4

*Vucinich v. Paine, Webber, Jackson & Curtis, Inc.,* 739 F.2d 1434
   (9th Cir.1976).....................................................................................................11

**California Cases**

*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 101 Cal.Rptr. 745,
   496 P.2d 817.......................................................................................................23

*Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20
   Cal.4th 163, 83 Cal.Rptr.2d 548, 973 P.2d 527 (Cal.1999)..............................23

*Overstock.com v. Gradient Analytics, Inc*., 151 Cal.App.4th 688 (2007)..............23

*Roskind v. Morgan Stanley Dean Witter & Co.*, 80 Cal.App. 4th 345, 95
   Cal.Rptr.2d 258 (Cal.Ct.App. 2000) .................................................................23

*Rubin v. Green* (1993) 4 Cal.4th 1187, 17 Cal.Rptr.2d 828, 847 P.2d 1044 ..........24

*Strigliabotti v. Franklin Resources, Inc.,* No. C 04–00883 SI, 2005 U.S. Dist.
   LEXIS 9625, 2005 WL 645529 (N.D.Cal. Mar. 7, 2005) ................................24

**Texas Cases**

*Ernst & Young, L.L.P. v. Pac. Mut. Life. Ins. Co.*, 51 S.W.3d 573 (Tex. 2001).....22

*Houston Nat. Bank v. Biber*, 613 S.W.2d 771 (Tex.Civ.App. 1981) ...............18, 19

*Intermarket U.S.A., Inc. v. C-E Natco,* 749 S.W.2d 603 (Tex.Civ.App. 1988)  .....20

*Sw. Indus. Inv. Co. v. Berkeley House Inv'rs*, 695 S.W.2d 615 (Tex. App. 1985), *writ refused* NRE (Nov. 27, 1985).........................................................19

*Texas State Title Co. v. Sawicki*, No. 01-94-00915-CV, 1995 WL 555853 (Tex. App. Sept. 21, 1995).........................................................19

**Statutes**

15 U.S.C. § 78u–4(b)(4) .........................................................15

15 U.S.C. § 77q(a)(1) .........................................................17

15 U.S.C. § 78j(b).........................................................15

15 U.S.C. § 80a–13.........................................................24

**Regulations**

17 C.F.R. § 240.10b–5.........................................................15, 17

**Code**

Fed. R. Civ. P. 56(a) .........................................................1

**Other**

Instruction 18.3 of <u>Manual of Model Civil Jury Instructions</u> issued by the Ninth Circuit Court of Appeals .........................................................4

## I.   INTRODUCTION.

Plaintiff, EnSource Investments LLC, submits this Memorandum in Opposition of the Motion for Summary Judgment jointly filed by Defendant Mark A. Willis ("Defendant Willis") and Defendants Beyond Review, LLC, Image Engine, LLC and Willis Group, LLC (collectively referred to herein as the "Defendant Willis Entities") (the "Motion for Summary Judgment").  As demonstrated *infra*, pursuant to controlling case precedent and statutory law, as well as the evidence discovered and presented by Plaintiff, the Motion for Summary Judgment must be denied, *in toto*.

## II.   LEGAL STANDARD.

The well-established standard in general matters is that summary judgment may be granted only if the evidence, view in the light most favorable to Plaintiff, shows "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(a). The party moving for summary judgment has the burden to show the absence of a genuine issue concerning any material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] ruling on a motion for summary judgment.  *Id*. at 255. Conflicting inferences result in a case for the jury. *See Howard v. Everex Systems, Inc.*, 288 F.3d 1057, 1060 (9th Cir. 2000).

In addition, courts have adopted a more specific and rigorous standard with respect to summary judgment involving matters concerning scienter and have stated that "[g]enerally, scienter should ***not*** be resolved by summary judgment." *Provenz v. Miller*, 102 F.3d 1478, 1489 (1996) (emphasis in original).  Courts have held that a finding of scienter requires knowledge of recklessness and that a defendant is reckless if "…he had reasonable grounds to believe that material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although [he] could have done so without extraordinary

effort". *See Howard*, 228 F.3d at 1063 - 1064.  In denying summary judgment in a situation where a Chief Executive Officer signed financial statements in the face of potentially alarming financial information, the Ninth Circuit has held that such recklessness can be demonstrated by showing potential motive and opportunity to commit securities fraud. *Id*.

"'[A] private securities plaintiff proceeding under the PSLRA must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct'… *But at summary judgment, the standard is less stringent* – the PSLRA requirement of pleading a 'strong' inference of scienter 'puts securities fraud claims in the interesting posture of requiring plaintiffs to plead more than they must prove at trial, *where a simple inference of scienter is sufficient to support a jury's verdict.'*" *In re Novatel Wireless Sec. Litig.*, 830 F.Supp.2d 996, 1017 (S.D. Cal 2011); *see also In re Homestore.com, Inc. Sec. Litig.*, 37 F.Supp.2d 769, 784 (C.D. Cal 2004). ("[I]t is generally more difficult to overcome a motion to dismiss than a motion for summary judgment.").

### III. ARGUMENT.

This Memorandum will address each argument Defendant Willis and the Defendant Willis Entities assert in the Motion for Summary Judgment, sequentially by count number of the First Amended Complaint.[1]   As demonstrated *infra*, when the relevant case precedent as well as the facts in dispute are view in their totality and light most favorable to Plaintiff, the Motion for Summary Judgment must be denied, *in toto*.

---

[1] As discussed *infra*, the Motion for Summary Judgment does not appropriately address Count III of the First Amended Complaint, which is the claim of intentional misrepresentation against Defendant Willis and the Defendant Willis Entities.  Accordingly, as asserted by the Plaintiff in Section III.C of this Memorandum, such Count III of the First Amended Complaint should not be considered by this Honorable Court as a subject to the Motion for Summary Judgment.

**A.   The Motion for Summary Judgment with Respect to Count I Must be Denied Since Pursuant to the Evidence and Applicable Law, Material Misrepresentations were Made with Scienter by Defendant Willis and the Defendant Willis Entities, upon which Plaintiff Justifiably Relied and which Caused its Economic Loss.**

Count I of the First Amended Complaint alleges violation of Rule 10b-5 against the Defendant Willis as well as the Defendant Willis Entities. Since the Motion for Summary Judgment presents two different arguments with respect to Defendant Willis, on the one hand, and the Defendant Willis Entities, on the other hand, each will be discussed separately in the following sections.

**1. <u>Defendant Willis.</u>**

With respect to Defendant Willis, the Motion for Summary Judgment asserts that summary judgment is to be granted in his favor because:

(a)   no material misrepresentations were made to Plaintiff in connection with its investment in Hopewell – Pilot Project, LLC ("<u>Hopewell</u>") (the "<u>Investment</u>");

(b)   even if there were material misrepresentations made to Plaintiff in connection with the Investment, Defendant Willis did not "make" such material misrepresentations;

(c)   even if Defendant Willis made such material misrepresentations to Plaintiff in connection with the Investment, there is no evidence that Defendant Willis did so with scienter;

(d)   Plaintiff did not justifiably rely on any of the material misrepresentations made to it in connection with the Investment; and

(e)   Plaintiff cannot establish loss causation.

**a. Clear and Sufficient Evidence Demonstrates the Existence of Material Misrepresentations as well as Omissions of Material Facts in the Private Placement Memorandum and Investor Pitch Decks.**

3

A fact is material if "there is a substantial likelihood that a reasonable shareholder would consider it important" in making his investment decision.  In determining materiality, the misstatement or omission is not viewed in a vacuum. Rather, the question is whether disclosure would have "significantly altered the 'total mix'" of available information. *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438 (1976); *Basic Inc. v. Levinson*, 485 U.S. 224 (1989).   Further, materiality can only be decided as a matter of law only when "reasonable minds could not differ on" the statement's importance.  *SEC v. Wang*, 2016 WL 7671369 (S.D. Cal. 2016), citing *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 717 (2d Cir. 2011).

Significantly, the Manual of Model Civil Jury Instructions issued by the Ninth Circuit Court of Appeals contains a jury instruction addressing the issue of "materiality" in connection with a civil lawsuit alleging misrepresentations in the sale of securities.  Instruction No. 18.3 provides as follows:

 "A factual representation concerning a security is material if there is a substantial likelihood a reasonable investor would consider the fact important in deciding whether to buy or sell that security."

Essentially, a misrepresentation of material fact in the sale of securities may consist of almost any representation, written or oral, which would affect an investor's decision to make or refrain from making a particular investment. The "material fact" may concern the value of the investment, the qualifications of the management team controlling the investment, the expected return, or the amount the investor is ultimately required invest to receive the expected return.

**i.  The Private Placement Memorandum.**   The Private Placement Memorandum stated that Hopewell was seeking investment for the purpose of "…acquiring new lease and mineral interest acquisitions in the four target areas and for working capital to continue the Company's operations and evaluation of

lease acquisition opportunities." *See* Ex. A, Page 2.[2]  It also stated that it had "…new proprietary software technology which ***can*** geographically sort and analyze land and mineral title records and related digital data for the purpose of acquiring Oil, Gas & Mineral interests in the most contemporary 'tight sands' and 'shale' plays." (emphasis added).  *See* Ex. A, Page 2.  The Private Placement Memorandum, however, contained material misrepresentation because the investment proceeds from Plaintiff were not used for the purposes stated therein but, rather, for payment of antecedent debt that had been incurred prior to the investment date.  *See* Ex. B, ¶¶ 16, 19, 21.  None of the investment proceeds was actually used for "…acquiring new lease and mineral interest acquisitions…" or for working capital purposes.  *See* Ex. B, ¶¶ 16, 19, 21.

In addition, the statement contained in the Private Placement Memorandum touting "new proprietary software technology" was a material misrepresentation because: (1) the TR Technology was never fully functional but, rather, was a work in progress that was never finished; and (2) the TR Technology was not proprietary to Hopewell or, for that matter, its licensor, Title Rover, LLC ("Title Rover").  *See* the sworn testimony of Defendant Willis stating that the TR Technology was "never completed" (Ex. C., Page 43) and the sworn testimony of Defendant Tatham corroborating such statement (Ex. B, ¶ 22).  *See also* the sworn testimony of Defendant Willis admitting that the TR Technology was comprised of "off the shelf" software that was not proprietary to Title Rover (Ex. C., Page 57,  Line 7 – Page 58, Line 4) and the sworn testimony of Joseph V. Hanyes corroborating such statement (Ex. D., Pages 38 – 43, 47 and 71).

**ii.  The July 25, 2016 Pitch Deck.**  The investor pitch deck dated July 25, 2016 entitled "Data Mining for Mineral Resource Investigations" (the "July 25th Deck") contained material misrepresentations as well as material omissions.

---

[2] All exhibits referenced herein are attached to the Appendix of Exhibits filed concurrently herewith.

Specifically, nowhere in the July 25th Deck is there any statement that the TR Technology is a work-in-process or incomplete.  *See* Ex. G.  To the contrary, the July 25th Deck states that Title Rover "…has developed its own proprietary technology and licensed sole rights to additional technology which delivers a 10x improvement to traditional methods of supporting data investigations and specialized analysis" – which is a blatant material misrepresentation.  *See* Ex. G, Page 3.  The July 25th Deck also describes, in detail, the purported functionality of the "developed" and "proprietary" TR Technology, yet further multiple material misstatements. *See* Ex. G, Page 3.

As noted *supra*, the TR Technology was never fully functional but, rather, was a work in progress that was never finished, and the TR Technology was not proprietary to Hopewell or, for that matter, its licensor, Title Rover.  Thus, the July 25th Deck contained multiple material misrepresentations as well as material omissions.

**iii. The August 19, 2016 Pitch Deck.**  The investor pitch deck dated August 19, 2016 is entitled "Data Mining for Mineral Resource Investigations – Capabilities Summary and Technical Overview" (the "August 19th Deck") contained material misrepresentations as well as material omissions. Specifically, nowhere in the August 19th Deck is there any statement that the TR Technology is a work-in-process or incomplete.  *See* Ex. F.  To the contrary, the August 19th Deck, like the July 25th Deck, states that Title Rover "…has developed its own proprietary technology and licensed sole rights to additional technology which delivers a 10x improvement to traditional methods of supporting data investigations and specialized analysis" – which is a blatant material misrepresentation. *See* Ex. F, Page 3.  The August 19th Deck also describes, in detail, the purported functionality of the "developed" and "proprietary" TR Technology, yet further multiple misrepresentations.  *See* Ex. F, Page 3.

As noted *supra*, the TR Technology was never fully functional but, rather, was a work in progress that was never finished, and the TR Technology was not proprietary to Hopewell or, for that matter, its licensor, Title Rover.  Thus, the August 19th Deck contained multiple material misrepresentations as well as material omissions.

**iv. The August 23, 2016 Pitch Deck.**  The investor pitch deck dated August 23, 2016 is entitled "Technology Utilization and Intellectual Property" (the "August 23rd Deck" and, collectively with the July 25th Deck and the August 19th Deck, the "Investor Pitch Decks") contained material misrepresentations as well as material omissions.  Specifically, nowhere in the August 23rd Deck is there any statement that the TR Technology is a work-in-process or incomplete.  *See* Ex. G.  To the contrary, the August 23rd Deck touts the purported extensive functionality of the TR Technology, including its ability to create "…an automated chain of title from the data…" – which is a blatant material misrepresentation.  *See* Ex. G, Page 1.  The August 23rd Deck also states that "Title Rover has commissioned [Beyond Recognition] to execute a statement of work demonstrating its ability to derive a high quality, deep index from a collection of land records from scratch, obviating the need for a manually intensive effort as is used by the rest of the industry" – yet another material misrepresentation.  *See* Ex. G, Page 1.

As noted *supra*, the TR Technology was never fully functional but, rather, was a work in progress that was never finished, and the TR Technology was not proprietary to Hopewell or, for that matter, its licensor, Title Rover.  Further, the August 23rd Deck states that Beyond Recognition executed a statement of work with Title Rover to demonstrate, *inter alia*, the ability of the TR Technology to achieve successful indexing.  However, the August 23rd Deck fails to state that at the time, Beyond Review was not able to complete even *Phase I* of such statement of work.  *See* Ex. H, Page 43.  Thus, the August 23rd Deck contained

not only multiple material misrepresentations, but also multiple instances of omission of material facts.

**v. The Misrepresentations were Material.** The misrepresentations and omissions of fact contained in the private placement memorandum provided to Plaintiff in connection with the Investment in Hopewell (the "Private Placement Memorandum") and Investor Pitch Decks were material because they all directly related to the TR Technology – which was critical to any success of Hopewell – and collectively falsely portrayed fully-developed and functional TR Technology. The misrepresentations and omissions of fact contained in the Private Placement Memorandum and Investor Pitch Decks were material also because they lead a reasonable investor to believe that the use of the investment proceeds would be for critical go-forward items of Hopewell: namely, for "…acquiring new lease and mineral interest acquisitions…" or for working capital purposes, which, of course, was not the case. A reasonable investor would find that each of the misstatements and omissions was material because, individually and collectively, they fostered the impression that Hopewell had an exciting, commercially-viable software licensed to it from Title Rover that would likely uncover land opportunities with massive upside potential – and that the investment proceeds were to be used in connection with such efforts.

**b. Defendant Willis was the "Maker" of the Material Misrepresentations Because he had "Ultimate Authority" Over the Content of the Private Placement Memorandum and Investor Pitch Decks, as well as whether and how to communicate the Private Placement Memorandum and Investor Pitch Decks, to Plaintiff.**

In the Motion for Summary Judgment, Defendant Willis argues that he is not, technically, the "maker" of the material misrepresentations contained in the Private Placement Memorandum and Investor Pitch Decks and, therefore, should

not be held liable for violation of Rule 10b-5 for the material misrepresentations contained therein.

One of the primary cases cited by Defendant Willis in illusory support for his contention that he cannot be held liable for violation of Rule 10b-5 because Defendant Willis was not, technically, the "maker" of the material misrepresentations is *Janus Capital Group., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011).  In his reliance on *Janus*, Defendant Willis does not discuss the underlying facts of the case nor demonstrate their resemblance to those of the case at bar.  Instead, Defendant Willis plucks a few words and a single clause from the *Janus* case in stating that "…to be liable, the defendant 'must have 'made' the material misstatements' and "[o]ne who prepare or publishes a statement on behalf of another is not its maker.'"  *See* Motion for Summary Judgment, Page 11, Lines 9 – 11.

In *Janus*, the question decided by the United States Supreme Court was whether an investment advisor and administrator, and the parent company of such investment advisor, could be held liable for the material misrepresentations of an investment fund that had been created by such parent corporation.  In analyzing this issue, the Court recognized that the three separate legal entities – the parent corporation, the investment advisor and the investment fund – all operated independently from each other, maintained board of director independence from each other and maintained all of the corporate formalities to ensure independent legal existence from one another.  Consequently, the Court found that the participation of the parent company and the investment advisor in connection with the material misrepresentations of the investment fund was that of an aider and abettor relationship - rather than as the "maker" - of the material misrepresentations and, therefore, were not liable under Rule 10b-5 for such statements contained in prospectuses of the investment fund.  *Janus,* 564 U.S. at 137.

It is difficult to imagine a more divergent set of facts with respect to the context as to whether one is the "maker" of a material misrepresentation than those contained in the *Janus* case versus those contained in the case at bar. In fact, there are no similarities in the fact pattern in the two cases at all. As such, *Janus* is distinguishable from the case at bar and, consequently, provides no supporting precedent for Defendant Willis' assertion that he was not the "maker" of the material misrepresentations in the Private Placement Memorandum and Investor Pitch Decks and, therefore, is not liable under Rule 10b-5.

Interestingly, however, is the fact that although the landmark case on this issue, Defendant Willis fails to cite portions of the *Janus* case that are highly elucidating on the issue of when a party *is* a "maker" of a statement that violates Rule 10b-5. Specifically, in *Janus* the United States Supreme Court stated that:

> "For purposes of Rule 10b-5, the maker of a statement is the person or entity with ***ultimate authority*** over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to so, not 'make' a statement in its own right". *Janus*, 564 U.S. at 142. (emphasis added).

As the Chief Executing Officer of both Hopewell and Title Rover, Defendant Willis had the "ultimate authority" over the Private Placement Memorandum and Investor Pitch Decks, including their content and whether and how to communicate them to prospective investors, such as Plaintiff. Not only is such ultimate authority obviously inherent in the position of Chief Executive Officer of small "start-up" organizations such as Hopewell and Title Rover, but such fact was also admitted by Defendant Willis himself in his deposition. *See* Ex. C, Pages 74-75, 112-113. Further, the "ultimate authority" that Defendant Willis maintained over the Private Placement Memorandum and Investor Pitch Decks, including their content and whether and how to communicate them to prospective investors such as Plaintiff, was corroborated in the sworn testimony

10

of Defendant Tatham, his co-manager of both Hopewell and Title Rover.  *See* Ex. B, ¶¶ 8, 12.   Consequently, pursuant to *Janus*, Defendant was the "maker" of the material misrepresentations contained in the Private Placement Memorandum and Investor Pitch Decks.

**c. The Evidence Demonstrates that Defendant Willis Acted with Scienter, as Defined Under and in Accordance with Controlling Case Precedent.**

In the Ninth Circuit, scienter may be established by demonstrating that the defendant acted recklessly.  *Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1568-69 (9th Cir.1990), *cert. denied*, 499 U.S. 976 (1991) (defining recklessness as a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.). Scienter can also be established by showing "knowledge of what one is doing and the consequences of those actions."  *Svalberg v. SEC*, 876 F.2d 181, 184 (D.C. Cir. 1989), as quoted in *SEC v. First Pacific Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998), *cert. denied* sub. nom. *Sands v. SEC*, 525 U.S. 1121 (1999).

Further, "[w]hen the defendant is aware of the facts that made the statement misleading, 'he cannot ignore the facts and plead ignorance of the risk.'" *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1092 (9th Cir. 2010), citing *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 704 (7th Cir. 2008) and *Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 739 F.2d 1434, 1436 (9th Cir. 1984).  "Stated another way, if no reasonable person could deny that the statement was materially misleading, a defendant with knowledge of the relevant facts cannot manufacture a genuine issue of material fact merely by denying (or intentionally disregarding) what any reasonable person would have known." *Platforms Wireless*, 617 F.3d at 1094.

As the Manager of Title Rover – the licensor of the TR Technology – Defendant Willis reviewed and approved the Investor Pitch Decks.  *See* Ex. B, ¶ 12; Ex. C, Pages 111-113, 129, 135-136; Ex. H, Pages 58, 170.  Similarly, as the Manager of Hopewell, Defendant Willis reviewed and approved the Private Placement Memorandum.  *See* Ex. B, ¶ 8; Ex. C, Pages 74-75.  In reviewing each Investor Pitch Deck as well as the Private Placement Memorandum, Defendant Willis knew, or should have known, that the they contained materially false and misleading statements.  In particular, Defendant Willis knew or should have known that Hopewell did not intend to use the investment proceeds for "acquiring new lease and mineral interest acquisitions in the four initial target areas and for working capital to continue the Company's operations and evaluation of lease acquisition opportunities" as stated in the Private Placement Memorandum.  This is because Defendant Willis knew, through an e-mail from the Chief Financial Officer of Hopewell, Defendant Tatham, *before* it received the first tranche of the investment (which represented nearly fifty percent of the entire investment by Plaintiff), that the entire amount of the first tranche was ear-marked to pay certain trade payables constituting antecedent debt.  *See* Ex. B, ¶¶ 16, 19.  Defendant Willis had knowledge of the same use of the remainder of the investment proceeds because he was kept fully apprised of the financial activities of Hopewell by Defendant Tatham.  See Ex. B, ¶¶ 3 – 5; Ex. C, Pages 32-33.  Defendant Willis further admitted under oath that some of the proceeds of Plaintiff's investment in Hopewell had been used to pay the vendors of Title Rover and, therefore, were used to fund the development expenses of another company.  *See* Ex. C, Pages 148-149.  Notwithstanding the use of the investment proceeds contrary to the statement thereof in the Private Placement Memorandum, Defendant Willis made no effort to correct such misrepresentation.

Defendant Willis also knew or should have known that Title Rover did not have the TR Technology developed to the extent proclaimed in the Investor Pitch Decks and that there were insufficient funds to fully-develop the TR Technology so that it operated in conformity with the representations made in them. Defendant Willis admitted under oath that the TR Technology was never completed. *See* Ex. C, Page 43. Defendant Willis further admitted under oath that Title Rover risked losing its developers because of an inability of Title Rover to pay them. *See* Ex. C, Pages 148-149. Moreover, Defendant Willis participated in all of the demonstrations and "pitches" of the TR Technology to Plaintiff and had every opportunity to correct the misrepresentations concerning its development and efficacy – but did not. *See* Ex. H, Pages 54-55. In falsely touting the development and capabilities of the TR Technology, Defendant Willis went so far as to direct Brent Stanley to lie about his position at Title Rover and state to representatives of Plaintiff that he was the Chief Technology Officer of the company – presumably to create better optics to increase the chance that Plaintiff would invest in Hopewell. *See* Ex. H, Pages 49-50, 74.

Through all of this, Defendant Willis acted with scienter. He stood to profit from all of fraudulent Investor Pitch Decks as well as the fraudulent Private Placement Memorandum. Defendant Willis demonstrated scienter through his activities in approving the fraudulent Investor Pitch Decks and the fraudulent Private Placement Memorandum, participating in presentations of the Investor Pitch Decks to representatives of Plaintiff and failing to correct any of the known material misrepresentations concerning the TR Technology. Defendant Willis also demonstrated scienter through his role in approving the use of the investment proceeds to pay antecedent trade payables – many of which were to companies that Defendant Willis controlled – rather than for "acquiring new lease and mineral interest acquisitions in the four initial target areas and for working capital

to continue the Company's operations and evaluation of lease acquisition opportunities".

### d. The Evidence Demonstrates Justifiable Reliance by Plaintiff on the Material Misrepresentations Made by Defendant Willis.

"The traditional (and most direct) way a plaintiff can demonstrate reliance is by showing that he was aware of a company's statement and engaged in a relevant transaction – e.g., purchasing common stock – based on that specific misrepresentation." *Halliburton Co. v. Erica P. John Fund, Inc.* 573 U.S. 258, 267 (2014); *see Affco Investments 2001, L.L.C. v. Proskauer Rose, L.L.P.* 625 F.3d 175, 194 (5th Cir. 2010). Justifiable reliance inquires the reasonableness of a plaintiff's reliance "in light of all the circumstances giving consideration to the plaintiff's intelligence and experience." *Atari Corp. v. Ernst & Whinney,* 981 F.2d 1025, 1031 (9th Cir. 1992). The reasonableness analysis ultimately seeks whether defendant's alleged misrepresentations in fact caused plaintiff's injury. *Atari,* 981 F.2d at 1030.

As demonstrated by the deposition transcript of Justin Pannu, the personal most knowledgeable for Plaintiff, Plaintiff relied on the material misrepresentations made by Defendant Willis. *See* Ex. I, Pages 60-61, 77-79, 82-86, 161-165.  Plaintiff's reliance on the material misrepresentations made by Defendant Willis was justifiable because (i) it was not aware of Hopewell's financial condition since Plaintiff did not, at minimum, have  *pro forma and certainly had no access to the company's books* to properly assess its decision to fund Hopewell; (ii) while the material misrepresentations and omissions of material fact were being made, Defendant Willis portrayed himself as a sophisticated businessman and an experienced venture capitalist, ratifying all the statements presented in the pre-investment stage; (iii) Plaintiff was led to believe the Investment would be used for go-forward activities; (iv) Plaintiff was unaware of the specific terms of the Defendants' settlement with Beyond

Recognition; and (v) Plaintiff was unaware the Title Rover technology that was licensed to Hopewell was in fact third party software that was not properly licensed or owned by Title Rover.  Plaintiff lost all its investment money as a result of these material misrepresentations and omissions of material fact.

In the Motion for Summary Judgment, Defendant Willis argues that disclaimers provided to Plaintiff shield him from any liability for securities fraud. However, Disclaimers do not always shield a defendant from liability for securities fraud, and cautionary words about future risk cannot insulate from liability the failure to disclose that the risk has transpired. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5. *Richman v. Goldman Sachs Group, Inc*., 868 F. Supp. 2d 261, Fed. Sec. L. Rep. (CCH) P 96926 (S.D. N.Y. 2012).  Moreover, in order to render unactionable, any allegedly misleading or false statement contained in registration statement or prospectus, boilerplate disclaimer that merely warns reader that investment has risks will ordinarily be insufficient; cautionary statements must be substantive and tailored to specific future projections, estimates, or opinions challenged by plaintiffs. *In re Numerex Corp. Sec. Litig*., 913 F Supp 391(E.D. Pa. 1996).

### e.  The Evidence Demonstrates Loss Causation.

A "loss causation" is "a causal connection between the material [omission] and the loss." *Dura Pharm. v. Broudo,* 544 U.S. 336, 342, 125 S.Ct.1627 (2005). The loss causation requirement was codified in the Private Securities Litigation Reform Act:

> "In any private action arising under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages."15 U.S.C. § 78u–4(b)(4).

The statute applies to "any private action" and does not carve out a different or special standard depending on the type of market in which securities are traded.

15

For a claim involving a company with publicly-traded securities, a plaintiff can plead loss causation by alleging that the share price fell significantly after the truth became known, or by alleging that the content of the omissions caused his or her loss. *Metzler Inv. GMBH v. Corinthian Colls., Inc.,* 540 F.3d 1049, 1062 (9th Cir.2008); *Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.,* 416 F.3d 940, 949 (9th Cir.2005). With a privately held company, a comparison of market stock price to establish loss causation has less relevance because market forces will less directly affect the sales prices of shares of a privately held company. *See, e.g., Livid,* 416 F.3d at 944 n. 2 (distinguishing *Dura* in closely held companies); *McCabe v. Ernst & Young, LLP,* 494 F.3d 418, 434 & n. 11 (3d Cir.2007) (noting *Dura* has less application in a privately held corporation).

In privately held companies, plaintiffs more commonly prove loss by showing that a misrepresentation or omission caused him or her to engage in a transaction and that the revelation of the truth is directly related to the economic loss alleged. *Livid,* 416 F.3d at 949 ("[Plaintiff] has sufficiently pled both elements of causation because it has alleged both that they would not have purchased the ... stock but for the misrepresentation and that the Defendants' misrepresentation was directly related to the actual economic loss it suffered." (citing *McGonigle v. Combs,* 968 F.2d 810, 821 (9th Cir.1992)).

As demonstrated *supra*, Plaintiff relied on the representations contained in the Private Placement Memorandum and the Investor Pitch Decks with respect to the efficacy and proprietary nature of the TR Technology as well as the use of the proceeds of the Investment. *See* Ex. I, Pages 60-61, 77-79, 82-86, 161-165. As a newly created start-up with little to no capital and no stated business plan other than to use the TR Technology to attempt to discover and exploit lease and mineral interest acquisitions, the misrepresentations concerning the efficacy and proprietary nature of the TR Technology as well as the use of the proceeds of the Investment were not just material in influencing Plaintiff to make the Investment

16

– such misrepresentations comprised the entire basis upon which Plaintiff decided to make the Investment in Hopewell. Accordingly, the misrepresentations concerning the efficacy and proprietary nature of the TR Technology as well as the use of the proceeds of the Investment directly related to the actual economic loss suffered by Plaintiff.

In the Motion for Summary Judgment, Defendant Willis asserts that "Plaintiff has not suggested, let alone attempted to prove, that any alleged misrepresentation caused economic loss separate and apart from its decision to invest." Motion to Dismiss, Page 22, Lines 5 – 7. Notably, at this stage of litigation Plaintiff does not have to "prove" its case through the facts produced during the discovery phase of the litigation. Rather, Defendant Willis must show that the uncontested material facts demonstrate, when such uncontested material facts are viewed in the light most favorable to Plaintiff, that no reasonable person can conclude that there was loss causation suffered by Plaintiff. Defendant Willis wholly fails to meet this standard since in the Motion for Summary Judgment concerning the issue of loss causation, he fails to cite a single uncontested fact – let alone a single uncontested fact that remotely supports a position that Plaintiff does not have loss causation.

### 2. **Defendant Willis Entities.**

A person or entity who disseminates false or misleading statements with intent to defraud can violate the anti-fraud provisions of federal securities law, even if the person or entity could not be liable for securities fraud as the maker of an untrue statement of material fact. *Lorenzo v. SEC,* 139 S. Ct. 1094, 1101 (2019) (citation omitted); *see also* Securities Act of 1933 § 17(a)(1), 15 U.S.C.A. § 77q(a)(1); 17 C.F.R. § 240.10b-5.

Throughout the solicitation efforts, Defendant Willis acted on behalf of himself and the Defendant Willis Entities. Thus, pursuant to *Lorenzo,* the

1   material misrepresentations made by Defendant Willis are attributable to the

2   Defendant Willis Entities.

3      **B.   Defendants' Motion for Summary Judgment with Respect to**

4   **Count II Must be Denied Because Under Texas Law Money Can be the**

5   **Subject of Conversion and the Evidence Demonstrates that the Investment**

6   **was not Treated in the Manner Represented in the Private Placement**

7   **Memorandum.**

8      Count II of the First Amended Complaint alleges the tort of conversion

9   against Defendant Willis and the Defendant Willis Entities.  In their Motion for

10  Summary Judgment, Defendant Willis and the Defendant Willis Entities argue

11  that Count II of the First Amended Complaint fails, as a matter of law, because

12  under Texas law, money cannot be the subject of conversion.[3]  Defendant Willis

13  and the Defendant Willis Entities also assert that summary judgment on Count II

14  is warranted because (a) Plaintiff "gave money to Hopewell willingly"; and (b)

15  there is "no evidence" that Defendant Willis and the Defendant Willis Entities

16  "received anything from [the Plaintiff]."

17     **1.  Under Texas Law, Money Can be the Subject of Conversion.**

18     In the Motion for Summary Judgment, Defendant Willis and the Defendant

19  Willis Entities assert that "money cannot generally be the subject of conversion"

20  and cites, as its primary support for such position, the case of *Houston Nat. Bank*

21  *v. Biber*, 613 S.W.2d 771 (Tex.Civ.App. 1981).  There is no discussion, however,

22  of the *Biber* case in the Motion for Summary Judgment, let alone any discussion

23  that lends support to this bald assertion.

24     It is well to note that when the *Biber* case is reviewed and analyzed in its

25  entirety, it holds that "…[a]n action will lie for conversion of money when its

26  identification is possible and there is an obligation to deliver the specific money

27

28     [3] Pursuant to its Order of March 9, 2017, this Honorable Court determined that Texas law applies to Count III of the First Amended Complaint.

in question *or otherwise particularly treat specific money*." (emphasis added). Other Texas courts have recognized this principal. In *Sw. Indus. Inv. Co. v. Berkeley House Inv'rs*, 695 S.W.2d 615, 617 (Tex. App. 1985), *writ refused* NRE (Nov. 27, 1985), the Texas appellate court held that an "action will lie for conversion of money when identification of the money is possible and there is a breach of an obligation to deliver the specific money in question or to otherwise treat specific money." (citations omitted). "When a person has designated a particular use for proceeds…those proceeds count as 'specific money' capable of identification…and capable of conversion." *Id*. (citing *Biber*, 613 S.W.2d at 774).

Furthermore, as this Honorable Court recognized in connection with its previous ruling in this case that denied, *in toto*, the Motion to Dismiss:[4]

> "Texas courts allow actions for conversion when a party breaches its obligation to treat money in a specific manner. In *Berkeley House*, plaintiffs purchased property and provided money that was meant to cover payments on the property's note as well as property taxes. *Berkeley House*, 695 S.W.2d at 616. The defendant kept the money and did not use any of it to pay the property taxes. *Id*. A judgment of conversion was appropriate because the defendant breached its obligation to treat the money in a specific manner and instead converted the funds to the defendant's own use. *Id*. at 616-17; *see also Texas State Title Co. v. Sawicki*, No. 01-94-00915-CV, 1995 WL 555853, at *2 (Tex. App. Sept. 21, 1995) (conversion could lie where defendants allegedly breached obligation to use specific funds to pay lienholders and instead converted the money to their own use). Similarly in *Intermarkets*, the defendant purchased equipment

---

[4] *See* Order of this Honorable Court of March 9, 2017.

19

from the plaintiff. *Intermarkets*, 749 S.W.2d at 604. The defendant had received a letter of credit from a third party, which was supposed to be used to pay for the equipment. *Id*. However, the defendant never paid for the equipment. *Id*. The defendant was liable for converting the money because the defendant violated its obligation to use the money for the specific purpose of paying for the equipment. *Id*."

Thus, it is unquestionable that an action for conversion of money is recognized under Texas law when a party breaches its obligation to treat money in a specific manner.

### 2. The Investment was not Treated in the Manner Represented in the Private Placement Memorandum.

The evidence clearly demonstrates that the Investment was not treated in the manner represented in the Private Placement Memorandum. The Private Placement Memorandum stated that Hopewell was seeking investment for the purpose of "…acquiring new lease and mineral interest acquisitions in the four target areas and for working capital to continue the Company's operations and evaluation of lease acquisition opportunities." *See* Ex. A, Page 2. However, the Investment was not used for such purposes but, rather, for payment of antecedent debt that had been incurred prior to the investment date. *See* Ex. B, ¶¶ 16, 19, 21. Further, none of the investment proceeds was actually used for "…acquiring new lease and mineral interest acquisitions…" or for working capital purposes. *See* Ex. B, ¶¶ 16, 19, 21.

Thus, under Texas case law as well as in light of the evidence of this case, the Motion for Summary Judgement for Count II must be denied.[5]

---

[5] In the Motion for Summary Judgment concerning the issue of conversion, Defendant Willis and the Defendant Willis Entities assert that Plaintiff "gave its money to Hopewell willingly" and, therefore, there is "no conversion". Pursuant to Texas law, whether the Investment was provided willingly is irrelevant. The same comment applies to the statement contained in the Motion for Summary Judgment that there is "no evidence" that Defendant Willis or the Defendant Willis Entities "received anything" from Plaintiff.

**C.   Defendants' Motion for Summary Judgment with Respect to Count III Must be Denied Because it Fails to Present any Argument Specific to the Sufficiency of Plaintiff's Claim of Intentional Misrepresentation Under Texas Law.**

In its title, Section IV of the Motion for Summary Judgment purports to address Count III of the First Amended Complaint, which is the state law claim of intentional misrepresentation against Defendant Willis and the Defendant Willis Entities.  However, aside from six lines of text reciting the elements of intentional misrepresentation pursuant to Texas state law and a line and a half of text summarily concluding, without any case law for support, that "[b]ecause both species of fraud [Rule 10b-5 and common law fraud] require similar showings of proof, they are analyzed collectively below", the Motion for Summary Judgment is completely devoid of any argument addressing the sufficiency of Count III of the First Amended Complaint under relevant Texas law.[6]  For this very reason alone, the Motion for Summary Judgment with respect to Count III should be denied since it is axiomatic that the elements of a Federal securities violation pursuant to Rule 10b-5 – and the threshold evidence required to satisfy each element – are not the same as the elements of a claim for intentional misrepresentation under Texas state law.  However, when one actually reviews each element required for a claim of intentional misrepresentation under Texas law and the evidence presented by Plaintiff in this case, it is clear that summary judgment is wholly inappropriate with respect to Count III.

Under Texas law, the tort of intentional misrepresentation requires a showing that: (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a

---

[6]  Aside from the seven and one-half lines that relate to the claim of intentional misrepresentation, the entire Section IV of the Motion for Summary Judgment concern the Rule 10b-5 issue.

positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result. *Ernst & Young, L.L.P. v. Pac. Mut. Life. Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). The evidence of this case sufficiently demonstrates, for purposes of a motion for summary judgment, that facts exist with respect to each and every one of these elements; to wit: (1) the defendant made a material representation that was false (*See* Section III.A.1.a of this Memorandum); (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth (*See* Section III.A.1.c of this Memorandum); (3) the defendant intended to induce the plaintiff to act upon the representation (*See* Section III.A.1.c of this Memorandum); (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result (*See* Section III.A.1.d and III.A.1.e of this Memorandum).

Thus, for the reasons stated *supra*, the Motion for Summary Judgment with respect to Count III of the First Amended Complaint must be denied.

**D. Defendants' Motion for Summary Judgment with Respect to Count IV Must be Denied Because §17200 *et seq.* of the California Business & Professions Code Applies to Securities Transactions.**

Count IV of the First Amended Complaint alleges violation of §17200 *et seq.* of the California Business & Professions Code (the "UCL") against Defendant Willis and the Defendant Willis Entities. In their Motion for Summary Judgment, Defendant Willis and the Defendant Willis Entities argue that Count IV of the First Amended Complaint fails, as a matter of law, because the UCL does not apply to a securities transaction.

In *Roskind v. Morgan Stanley Dean Witter & Co.*, 80 Cal.App.4th 345, 95 Cal.Rptr.2d 258 (Cal.Ct.App. 2000), the California appellate court analyzed the

applicability of the UCL to securities-based claims.  In its opinion, the *Roskind* court noted that:

> "The remedies available under this law [the UCL] are 'cumulative ... to the remedies or penalties available under all other laws of this state.' (§17205.) The UCL 'does not proscribe specific practices. Rather, as relevant here, it defines 'unfair competition' to include 'any unlawful, unfair or fraudulent business act or practice.' (§17200.) Its coverage is 'sweeping, embracing " 'anything that can properly be called a business practice and that at the same time is forbidden by law.' " ' (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1200 [17 Cal.Rptr.2d 828, 847 P.2d 1044], quoting *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 113 [101 Cal.Rptr. 745, 496 P.2d 817].)"

In its opinion, the *Roskind* court analyzed the broad precedents underpinning the UCL and concluded that the UCL could provide a remedy for the securities violation at issue if not preempted by federal law.  The holding in *Roskind* was followed in a subsequent California appellate court opinions.  Specifically, in *Overstock.com v. Gradient Analytics, Inc.*, 151 Cal.App.4th 688 (2007), the California appellate court held that transactions relating to the securities market are not beyond the reach of the UCL.  The *Overstock* court echoed *Roskind*, noting that the UCL's broad and sweeping language reflected an intent to adjudicate "on-going wrongful business conduct in whatever context such activity might occur." *Id*. at 716, 61 Cal.Rptr.3d 29 (quoting *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 181, 83 Cal.Rptr.2d 548, 973 P.2d 527 (Cal.1999)) (internal quotation marks omitted).

Moreover, federal cases are consistent with *Roskind* and *Overstock. See, e.g., Strigliabotti v. Franklin Resources, Inc.*, No. C 04–00883 SI, 2005 U.S. Dist. LEXIS 9625, 2005 WL 645529 at *30 (N.D.Cal. Mar. 7, 2005) (rejecting a

broad reading of *Bowen* and allowing plaintiff shareholders to bring an UCL action against investment advisors who allegedly charged excessive fees for advisory and administrative services, as well as excessive fees for marketing, selling, and distributing mutual fund shares); *In re Charles Schwab Corp. Secs. Litig.,* 257 F.R.D. 534, 553 (N.D.Cal.2009) (limiting the reach of *Bowen* and allowing plaintiff investors to bring an UCL action where investment firm allegedly deviated from investment policies without obtaining proper vote, a violation of Section 13(a) of the Investment Company Act, 15 U.S.C. § 80a–13).

Thus, pursuant to established case precedent at both the state and federal level, it is clear that UCL can apply to a securities transaction. Therefore, the Motion for Summary Judgment with respect to Count IV of the First Amended Complaint must be denied.

## IV.  CONCLUSION.

As demonstrated *supra*, pursuant to controlling case precedent and statutory law, as well as the evidence discovered and presented by Plaintiff and the applicable standard of review in connection with summary judgment motions, the Motion for Summary Judgment must be denied, *in toto*.

## V.  REQUESTED RELIEF.

Plaintiff respectfully requests that this Honorable Court deny the Motion for Summary Judgment, *in toto*.


Dated:  November 25, 2019     **LAW OFFICES OF RICHARD E. NAWRACAJ**


By:   /s/ Richard E. Nawracaj
Richard E. Nawracaj
Attorney for Plaintiff
EnSource Investments LLC