1  SULLIVAN HILL REZ & ENGEL
   A Professional Law Corporation
2  Shannon D. Sweeney, SBN 204868
   Sweeney@sullivanhill.com
3  600 B Street, Suite 1700
   San Diego, California 92101
4  Telephone: (619) 233-4100
   Fax Number: (619) 231-4372
5
   Attorneys for Defendants:
6  MARK A. WILLIS; BEYOND REVIEW, LLC; IMAGE ENGINE, LLC; and
   WILLIS GROUP, LLC
7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10 | ENSOURCE INVESTMENTS LLC, a       ) CASE NO. 17CV0079 HJMA
    Delaware limited liability company, )
11 |                                    ) **THE WILLIS GROUP, LLC'S
                                        ) MEMORANDUM IN SUPPORT
12 |        Plaintiff,                  ) OF ITS MOTION FOR
                                        ) ATTORNEY'S FEES AGAINST
13 | v.                                 ) PLAINTIFF AND ITS
                                        ) MEMBERS**
14 | THOMAS P. TATHAM, an               )
    individual; MARK A. WILLIS, an      )
15 | individual; PDP MANAGEMENT         )
    GROUP, LLC, a Texas limited         ) DATE:  February 3, 2020
16 | liability company; TITLE ROVER,    ) TIME:  10:30 a.m.
    LLC, a Texas limited liability      ) JUDGE: Hon. Marilyn L. Huff
17 | company; BEYOND REVIEW, LLC,       )
    a Texas limited liability company;  )
18 | IMAGE ENGINE, LLC, a Texas         )
    limited liability company; WILLIS   )
19 | GROUP, LLC, a Texas limited        )
    liability company; and DOES 1-50,   )
20 |                                    )
            Defendants.                 )
21 |_____)

22

23

24

25

26

27

28

## TABLE OF CONTENTS

| | PAGE |
|---|---|
| TABLE OF CONTENTS | i |
| TABLE OF AUTHORITIES | ii |
| I. INTRODUCTION | 1 |
| II. RELEVANT FACTS AND PROCEDURAL HISTORY | 2 |
| III. THE COURT SHOULD AWARD THE WILLIS GROUP ITS ATTORNEYS' FEES | 4 |
|     A. The Willis Group Is Entitled to its Fees Pursuant to the Agreement | 5 |
|     B. The Indemnity Clause Is Enforceable and Consistent with Public Policy | 7 |
|     C. The Fees Are Payable From Plaintiff and its Members | 9 |
|     D. The Willis Group's Request for $96,914.03 in Attorneys' Fees is Supported by the Evidence | 11 |
|         1. Hours Billed by the Willis Group's Counsel Are Reasonable | 11 |
|         2. Hourly Rates of the Willis Group's Counsel Are Reasonable | 12 |
| IV. CONCLUSION | 13 |

# TABLE OF AUTHORITIES

CASES                                                                                                    PAGE

*Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*,
   2019 Tex. LEXIS 688 (June 28, 2019) ...................................................................... 6

*Chalmers v. City of Los Angeles*,
   796 F. 2d 1205 (9th Cir. 1986) ............................................................................... 11

*City of Bell v. Superior Court*,
   220 Cal. App. 4th 236 (2013) ................................................................................. 9

*Crawford v. Weather Shield Mfg., Inc.*,
   44 Cal. 4th 541 (2008) ............................................................................................ 9

*Dressler Indus. V. Page Petroleum*,
   853 S.W.2d 505 (Tex. 1993) ................................................................................. 7

*Ethyl Corp. v. Daniel Constr. Co.*,
   725 S.W.2d 705 (Tex. 1987) ................................................................................. 8

*Fischer v. SJB-P.D. Inc.*,
   214 F.3d 1115 (9th Cir. 2000) ............................................................................... 11

*Goldman v. Ecco-Phoenix Electric Corp.*,
   62 Cal. 2d 40 (1964) ............................................................................................. 9

*Hamblin v. Lamont*,
   433 S.W.3d 51 (Tex. App. 2013) .......................................................................... 8

*Hawkins-Dean v. Metro. Life Ins. Co.*,
   2007 U.S. Dist. LEXIS 73291 (C.D. Cal. Sep. 18, 2007) ................................... 12

*Jordan v. Multnomah County*,
   815 F. 2d 1258 (9th Cir. 1987) ............................................................................. 12

*Kolay Flooring Int'l, LLC v. Milliken & Co.*,
   2019 U.S. Dist. LEXIS 128157 (C.D. Cal. Mar. 6, 2019) ................................... 12

*Likens v. Colvin*,
   2014 U.S. Dist. LEXIS 166921 (S.D. Cal. Dec. 2, 2014) .................................... 12

*Nash v. Colvin*,
  2014 U.S. Dist. LEXIS 158009 (S.D. Cal. Nov. 7, 2014) .......................... 13

*OXY USA, Inc. v. Sw. Energy Prod. Co.*,
  161 S.W.3d 277 (Tex. App. 2005) ............................................................ 8

*Pohlmann v. Berryhill*,
  2019 U.S. Dist. LEXIS 53161 (S.D. Cal. Mar. 28, 2019).......................... 12

*Richardson v. Colvin*,
  2017 U.S. Dist. LEXIS 66886 (S.D. Cal. May 2, 2017) ............................ 13

*Sands v. Reimers*,
  1995 U.S. App. LEXIS 5515 (9th Cir. Mar. 17, 1995) .............................. 10

*Sproul v. Astrue*,
  2013 U.S. Dist. LEXIS 12667 (S.D. Cal. Jan. 30, 2013) ........................... 13

*United States v. Standard Beauty Supply Stores, Inc.*
  561 F. 2d 774 (9th Cir. 1977) .................................................................... 10

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
  896 F. 2d 403 (9th Cir. 1990) .................................................................... 12

*URI, Inc. v. Kleberg Cty.*,
  543 S.W.3d 755 (Tex. 2018) ...................................................................... 6

*US Foods, Inc. v. Lalla Holding Corp.*,
  2014 U.S. Dist. LEXIS 136018 (N.D. Cal. Sep. 25, 2014).......................... 13

*Watson v. Commonwealth Insurance Co.*,
  8 Cal. 2d 61 (1936).................................................................................... 10

# I. INTRODUCTION

On December 19, 2019 the Court entered Judgment in favor of the Willis Group, LLC (the "Willis Group"), Image Engine and Beyond Review. Of such defendants, the Willis Group was a party to the Third Amended and Restated Company Agreement of Hopewell-Pilot Project LLC ("Agreement") and a "Member" of Hopewell-Pilot Project LLC ("Hopewell"). So was Plaintiff Ensource Investments, LLC. The Agreement mandates that Members of such Agreement exculpate, indemnify and pay the attorney's fees for other Members who have incurred fees as a result of their business activities. Thus, Plaintiff is now obliged to pay the Willis Group's attorney's fees incurred to defend against Plaintiff's unsupported and meritless allegations of fraud in connection with its Hopewell activities. Plaintiff's attorney negotiated and revised the Agreement, and its satisfactory amendment was a condition precedent to Plaintiff's decision to invest in Hopewell. The indemnity provisions are clear, unambiguous and conspicuous. Thus, there can be no credible dispute that Plaintiff knowingly and intentionally agreed to the indemnity provisions, and that attorney's fees would be owing in this situation. Further, Texas law and its public policies support enforcement of the provisions.

As a prevailing party to the Judgment, the Willis Group seek an award of $96,914.03, which is its proportionate amount of the total fees incurred by all Willis Defendants through November 2019. While the Agreement does not mandate that the fees or the attorney billing rates be "reasonable," both eminently are in this case. Because the Agreement reflects the parties' negotiated bargain, it should be enforced, and the total amount of requested fees awarded.

///

///

///

///

## II. RELEVANT FACTS AND PROCEDURAL HISTORY

On September 30, 2016, when it decided to invest in Hopewell, Plaintiff became a party to the Agreement, and a "Member" of Hopewell.[1] *See* Ex. A, p.3 ("Member means any Person executing this Agreement as of the date of this Agreement as a member. . .") and Ex. H (transmitting fully executed agreement 9/30/16).[2] Such Agreement is dated September 1, 2016. *See id.* Its terms were negotiated by Plaintiff (by and through its attorney) prior to, and as a condition precedent to, Plaintiff's agreement to invest. *See* Ex. B (9/12/16 email from attorney Nawracaj). The Agreement was signed by Sharp on behalf of Plaintiff. *See* Ex. A. The Willis Group was also a Member to such Agreement. *See id.*, p.28 & "Schedule A." In addition to being a Member of Hopewell, the Willis Group also provided office space and IT services to, invested in, and lent money to, Hopewell. *See* Declaration of Mark Willis ("Willis Decl."), ¶2.

The Agreement has an exculpation clause that mandates that:

> No "Member. . . ("Covered Person") shall be liable to the Company or any other Member under any theory of law, including tort, contract or otherwise (INCLUDING A COVERED PERSON'S OWN NEGLIGENCE) for any loss, damage or claim incurred by reason of any act or omission by such Covered Person in good faith on behalf of the Company…

Ex. A, §9.1. The Agreement also contains an indemnity provision that provides:

> To the fullest extent permitted by law, <u>each Member shall indemnify</u> the Company, and <u>each other Member</u> and hold them harmless from and against all losses, costs, liabilities, damages and expenses (including, without limitation, costs of suit and attorney's fees) they may incur on account of any breach by that Member of this Agreement or on account of any business activities conducted by that Member or its affiliates prior to the Effective Date of this Agreement.

---

[1] Plaintiff is a company formed in August 2016 for the sole purpose of investing in Hopewell. *See* Ex. C; *see also* Ex. F (39:6-9). It has four members (Justin Pannu ("Pannu"), Chad Martin ("Martin"), Cliff Sharp ("Sharp"), and the Kilimanjaro Group (Jerome Johns ("Johns")). *See* Ex. F (39:6-17).

[2] According to the Agreement, "Person" "has the meaning given that term in Section 1.002(69-b) of the Code." Ex. A, p.3. "Code" "means the Texas Business Organizations Code and any successor statute as amended from time to time." *Id.*, p.2. The Texas Business Organizations Code defines "Person" as "an individual or a corporation, partnership, limited liability company…." Texas Business Organizations Code, Section 1.002(69-b).

*Id.,* §13.10 (emphasis added).

At the same time, Plaintiff also executed Hopewell-Pilot Project, LLC Subscription Agreement ("Subscription Agreement"). *See* Ex. G. Therein, Plaintiff expressly represented, among other things:

> No representations or warranties have been made to [Plaintiff] by the Company, the Company's Managers, or any agent thereof, other than as set forth in the Company Agreement, and this Agreement. Investor has had access to such information concerning the Company as the Investor deems necessary to enable the Investor to make an informed decision concerning the acquisition of the Interest. The Investor has had access to the designated representatives of the Company, it Managers and the opportunity to ask questions of, and receive answers satisfactory to the Investor from, the Managers and or such designated representatives concerning the offering of Interests in the Company generally. *The Investor has obtained all additional information requested by the Investor to verify the accuracy of all information furnished in connection with the offering of Interests in the Company.*

Ex. G. ¶5(d) at p. 3 (italics added).

On January 13, 2017 Plaintiff filed its case against the Willis Group, Mark Willis, Image Engine and Beyond Review (collectively, the "Willis Defendants"). It amended its Complaint on December 21, 2018. The First Amended Complaint ("FAC") alleges four causes of action: (1) securities fraud (10(b)-(5)); (2) conversion; (3) intentional misrepresentation; and (4) violation of the Unfair Competition Laws. Each claim is asserted against each defendant, including the Willis Group. The FAC alleges that the Willis Group "syphoned bogus services fees" from Hopewell. FAC, ¶16. It also alleges that Mark Willis, as an agent of the Willis Group, deceived and induced Plaintiff to investing in Hopewell. *See id.,* ¶45. The FAC does not allege, however,— and there is no evidence to prove—that the Willis Group itself ever made representations to Ensource, let alone misrepresentations. Indeed, there is no allegation or evidence to support a theory that the Willis Group was involved in any way with the solicitation of investors for Hopewell.

On October 29, 2019, the Willis Group, along with the other Willis Defendants, moved for summary judgment against Plaintiff on all claims. On December 6, 2019, after full briefing and oral argument, the Court granted such motion as to the Willis

Group, among several other defendants. *See* 12/6/19 Order, pp.26, 30)("the court grants summary judgment in favor of… Willis Group on all of Plaintiff's claims."). In so ruling, the Court concluded that there was no evidence that the Willis Group made misrepresentations. *See* Order, p.25 (such holding was also applicable to Beyond Review and Imagine Engine). As misrepresentation is an essential element of fraud, the fraud claims failed. The Court also concluded that the conversion claim failed as a matter of law because Plaintiff's investment proceeds were used for the stated purpose. *See id.*, p.29 (this holding was applicable to all the Willis Defendants). Finally, because this case arises from a securities transaction, the Court determined that California's Unfair Competition Laws do not apply. *See id.*, p.30 (such holding was also applicable to all the Willis Defendants). The Court entered judgment in favor of the Willis Group consistent with its Order on December 19, 2019. As the prevailing party, the Willis Group (along with the other Willis entities) is entitled to its costs. *See* Rule 54(d) of the Federal Rules of Civil Procedure. Pursuant to the Agreement, as any liability is now foreclosed, it is also entitled to be awarded its attorney's fees. *See* Ex. A, §13.10.

### III. THE COURT SHOULD AWARD THE WILLIS GROUP ITS ATTORNEY'S FEES

As of the date of Judgment, the Willis Defendants' attorneys' fees are $388,107.82. *See* Declaration of Shannon Sweeney ("Sweeney Decl."), ¶5. The Willis Defendants have shared a unity of interest in the defense of this case. After the Court's Order on MSJ, and its conclusion that there are a few remaining triable issues that pertain to Mr. Willis exclusively, there are now legal issues that solely apply to Mark Willis individually. However, prior to such Order, each of the Willis Defendants (including Mr. Willis) have been united in their common goals, have asserted and advocated the same defenses in the same filings, and have been represented by the same counsel. As such, all of the legal actions taken by the Willis Defendants, individually or collectively, have been actions of each of the Willis Defendants, individually and collectively. The Willis Defendants have also been jointly and

severally responsible for payment of the attorney's fees. *See* Willis Decl, ¶4. Because the legal actions taken on the Willis Defendants' behalf benefitted each of the four Willis Defendants equally, attribution of a quarter[3] of the fees incurred to date to the Willis Group is a fair and reasonable apportionment.[4] *See Emma C. v. Eastin*, 2016 U.S. Dist. LEXIS 30317, at *5 (N.D. Cal. Mar. 9, 2016) ("In allocating attorneys' fees and costs among multiple defendants, a district court should make every effort to achieve the most fair and sensible solution that is possible.")(internal citations omitted). Thus, the Willis Group hereby seeks **$96,914.03** in attorney's fees (1/4 of the Willis Defendants' total fees from Sullivan Hill between October 2017 and November 30, 2019 ($95,440.13), and 1/6 of the total fees from Patterson PC between January and October 2017 ($1,473.90)). *See* Sweeney Decl., ¶¶6, 8.

### A. <u>The Willis Group is Entitled to its Fees Pursuant to the Agreement</u>

The Agreement has generous indemnity provisions for the benefit of its Managers and Members. The Agreement has only thirteen Articles, and one of them—Article IX—is dedicated to Indemnification. *See* Ex. A, p.19 (such Article is entitled **Indemnification**)(emphasis in original). Article IX mandates that Managers, Officers, Employees and Agents will be indemnified by the Company (§§9.2, 9.4) and that the Company shall defend such Manager, Officer, Employee and Agent in any legal action (§§9.2, 9.4). The Article also has an ***Exculpation*** clause that exculpates a Manager or Member from liability *from another Member*. *See id.*, §9.1 (emphasis added). Such exculpation includes any "loss, damage or claim" "under any theory of law, including tort." *Id.* (No "Member. . . ("Covered Person") shall be liable to the

---

[3] Prior to Sullivan Hill becoming attorney of record for the Willis Defendants, they were represented by the Patterson PC in Houston, TX (local counsel was Gomez Trial Attorneys). During that time, Mr. Patterson also represented co-defendants Thomas Tatham and his company PDP Management Group, LLC (six defendants total). Thus, during such period, attribution of the fees to the Willis Group is appropriately 1/6th of the total fees. *See* Sweeney Decl., ¶6.

[4] Because the Willis Group has joint and several responsibility for the fees incurred by the Willis Defendants, it could be seeking recovery of *all* of the fees incurred by the Willis Defendants.

Company or any other Member under any theory of law, including tort, contract or otherwise (INCLUDING A COVERED PERSON'S OWN NEGLIGENCE) for any loss, damage or claim incurred by reason of any act or omission by such Covered Person in good faith on behalf of the Company")(emphasis in original).

It is against this backdrop of the Agreement's express (and liberal) contractual indemnification of Managers and Members that Section 13.10 must be read. *See Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 2019 Tex. LEXIS 688, at *24 (June 28, 2019)(citing *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018))(contractual language must be interpreted in context). Such provision, separately identified as **"*Indemnification*,"** provides:

> To the fullest extent permitted by law, <u>each Member shall indemnify</u> the Company, and <u>each other Member</u> and hold them harmless from and against all losses, costs, liabilities, damages and expenses (including, without limitation, costs of suit and attorney's fees) they may incur on account of any breach by that Member of this Agreement or on account of any business activities conducted by that Member or its affiliates prior to the Effective Date of this Agreement.

*Id.,* §13.10 (emphasis added). In this context, the "Member" identified first—the indemnitor—is Plaintiff. The second identified "Member"—the indemnitee—is the Willis Group. Here, the indemnitor is agreeing to indemnify (and pay the attorney's fees for) the indemnitee for such indemnitee's business activities that were conducted prior to September 1, 2016.[5] The Willis Group's business activities included investing in Hopewell and providing it office space and IT services free of charge. Such activities (and presumably its affiliation with Mark Willis) made it a target for Plaintiff's baseless and unsupported allegations. Because its business conduct was completely lawful and appropriate, and there was no justification or support for suing

---
[5] Because such provision is clear when construed in context, the parol evidence rule prohibits review of extrinsic evidence to determine the intent beyond the meaning of the contractual language. *See Barrow-Shaver*, 2019 Tex. LEXIS at *23. The Court can, however, "consider the surrounding circumstances,... including the fact that negotiations took place between sophisticated parties" to inform the meaning of the language. *Id.,* *23-24. Here, the Agreement was negotiated and revised by Plaintiff's counsel. In fact, such negotiated revisions were a condition precedent to Plaintiff's investment. *See* Ex. B. Upon satisfactory revision, Plaintiff made its investment and executed the Agreement.

it, the indemnity provided by Section 13.10 is warranted.

## B. The Indemnity Clause Is Enforceable and Consistent With Public Policy

The Texas Supreme Court has repeatedly stated that indemnity provisions are enforceable under Texas law, so long as fair notice is provided, i.e. (1) the intent to provide indemnity is expressed in specific terms in the contract (the "express negligence doctrine") and (2) the clause meets Texas requirements of conspicuousness (the "conspicuousness retirement"). *See Dresser Indus. v. Page Petroleum*, 853 S.W.2d 505, 509 (Tex. 1993).[6] Both requirements of fair notice are met here. The Agreement repeatedly and abundantly expresses an intent to provide indemnification to Members and Managers. An entire Article in the contract is devoted to indemnification and exculpation. *See* Ex. A. Article IX. Section 13.10, also entitled "Indemnification" is found in the "general provisions" of the Agreement. The words "Indemnification" and "Exculpation" are separated as paragraph headers, and are bolded, underlined and italicized. The Sections make it clear that indemnity is to be provided by Members to other Members, and that Members will not be liable "*under any theory of law*, including tort, contract or otherwise (INCLUDING A COVERED PERSON'S OWN NEGLIGENCE)" for any act or omission reasonably conducted, in good faith, on behalf of the Company. Ex. A, §9.1 (emphasis added, but all caps in original).[7] The indemnity and attorney's fees provision in Section 13.10 is consistent with the Section 9.1 exculpation provision. The main difference between them is that Section 13.10 makes it express that a Member will be responsible for another Member's costs of suit and attorney's fees when, as here, the claims and alleged damage relate to the Member's business conduct.

---

[6] "[C]ompliance with both of the fair notice requirements is a question of law for the court." *Dresser*, 853 S.W.2d at 509.

[7] The Section goes on to say that a Member may be liable, however, for "any such loss, damage or claim incurred by reason of gross negligence, willful misconduct, intentional misrepresentation or breach of duty of loyalty." Ex. A, §9.1. In dismissing and entering judgment in favor of the Willis Group, the Court concluded that the Willis Group did not engage in, and is not liable, for gross negligence, willful misconduct, intentional misrepresentation or breach of duty of loyalty.

Although "Texas courts place great restrictions on a party's ability to exculpate itself, in advance, of responsibility for its own negligence," the public policy concerns justifying such restrictions do not arise where the parties use, "express language within the four corners of the contract specifically stating that the party will be indemnified for liability arising from the party's own negligence." *Hamblin v. Lamont*, 433 S.W.3d 51, 55-57 (Tex. App. 2013)(citing *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex. 1987)). Nor does the public policy argument of deterring misconduct by preventing a party from contracting away liability apply when the indemnity provision at issue was limited to acts that had already occurred. *OXY USA, Inc. v. Sw. Energy Prod. Co.*, 161 S.W.3d 277, 286-87 (Tex. App. 2005).

Here, the indemnity provision at issue is expressly limited to "business activities conducted by that Member or its affiliates *prior to the Effective Date of this Agreement*." Ex. A § 13.10 (emphasis added). Likewise, the provision specifically includes indemnity for Member negligence. *Id.* Moreover, the Plaintiff failed to establish any liability on the part of the Willis Group in connection with its business activities, far less any negligent or intentional wrongdoing. *See* 12/6/19 Order (granting summary judgment in favor of Willis Group). Thus, the public policy considerations warranting a strict construction or narrow reading of the indemnity provision simply do not come to bear. The Plaintiff, a sophisticated and accredited investor represented by able counsel, negotiated and ultimately agreed to indemnify Willis Group from any loss arising out of its or its affiliates business activities. At the same time it executed that agreement, Plaintiff entered the Hopewell-Pilot Project, LLC Subscription Agreement wherein Plaintiff expressly disclaimed reliance upon any representations or warranties made to Plaintiff by Hopewell, its managers, or any agents thereof—including Mark Willis. *See* Ex. G. Because Plaintiff's claim against Willis Group was predicated entirely upon alleged misrepresentations and/or omissions of Mark Willis, and the Court has found that the Willis Group has no liability therefor, it is entirely consistent with public policy to require Plaintiff to

comply with its clear contractual obligation to indemnify Willis Group for the losses that it suffered defending this action.[8]

### C. The Fees Are Payable From Plaintiff and its Members

It is undisputed that Ensource was formed as a Delaware limited Liability Company in 2016 for the sole purpose of investing in Hopewell. *See* Ex. C; *see also* Ex. F (39:6-9)("Ensource is a company that was formed for the purpose of investing in Hopewell"). Its Person most Qualified admitted that there were no requirements for becoming a member of Ensource. It was simply a group of friends who came together for this investment. *See* Ex. F (40:4-7)(Q: Did you do any sort of due diligence on the members of Ensource before they became members?" A:"Other than they're my friends and I've known them for quite some time, no"); (42:11-17). Ensource made no other investments, and its sole reason for continuing to exist is to litigate this case. *See id.*, (45:23-46:3; 46:4-9). Ensource Members have had no in-person meetings, no video meetings, and less than five telephonic meetings. *See id.*, (44:18-21)(it had no regular meetings); (46:11-23)(no in-person meetings); (46:24-47:1)(no video meetings); (47:11-24)(less than 5 telephonic meetings). Ensource's decisions were made by Mr. Pannu without any formal (or informal) vote. *See id.*, (47:25-49:19). No minutes were ever made of any meeting or discussion. *See id.*, (45:8-14). The Members did not have an Ensource email address, and there is no website. *See id.*, (49:21-23).

Such facts establish that Ensource is the mere *alter ego* of its Members, such that each Member should be individually and personally responsible for the payment of the Willis Group's fees. Such determination requires two findings: "First, the court must determine that there is such unity of interest and ownership that the separate

---

[8] Public policy considerations in California would mandate the same result. In California, "subject to public policy and established rules of contract interpretation, the parties to noninsurance indemnity agreements have great freedom to allocate such responsibilities as they see fit." *Crawford v. Weather Shield Mfg., Inc.*, 44 Cal. 4th 541, 551 (2008); *City of Bell v. Superior Court*, 220 Cal. App. 4th 236, 248 (2013). California courts have long held that specific, precise, and unambiguous indemnity terms, including those which provide indemnity in connection with a party's own negligence are not inconsistent with public policy. *E.g.*, *Goldman v. Ecco-Phoenix Electric Corp.*, 62 Cal. 2d 40, 41 (1964).

1 personalities of the corporation and the individual no longer exist. Second, … it must be shown that the failure to disregard the corporation would result in fraud or injustice." *United States v. Standard Beauty Supply Stores, Inc.*, 561 F.2d 774, 777 (9th Cir. 1977)(citing *Watson v. Commonwealth Insurance Co.*, 8 Cal.2d 61, 68 (1936)). Here, Ensource has no separate and distinct corporate personality. Other than opening a bank account, it did none of the things one would expect to see with a viable independent entity. *See e.g., Standard Beauty*, 561 F.2d at 778 (no alter ego when the "Board of Directors met regularly and prior to major corporate actions… Both books and records were carefully kept. An office was maintained."). Indeed its Member admitted that Ensource is merely "a formation of friends. So it's pretty informal." *See* Ex. F (45:6-7). Mr. Pannu also admitted that the only reason for its formation was the Hopewell investment, and that no other investments have been made. *See id.*, (39:6-9; 45:23-46:3).[9] Based on such admissions, and the fact that it has no income and is not an operational for-profit business, there is no reason to think that Ensource is capitalized in any amount, let alone in an amount sufficient to satisfy an attorneys' fee award. It continues to date solely to prosecute the instant litigation. *See id.*, (46:4-9)(Q: "For what reason is Ensource still a valid entity?" A: "Why? I guess for the purpose of this case."). Thus, there is every reason to expect that the entity will cease its existence at the conclusion of this case.

It would be manifestly unjust for Ensource's Members to escape responsibility for bringing and maintaining baseless litigation against the Willis Group, and for its contractual obligations, by hiding behind a shield of corporate structure, even if flimsy. *See Sands v. Reimers*, 1995 U.S. App. LEXIS 5515, at *6-7 (9th Cir. Mar. 17, 1995)("Failure to pierce the corporate veil would lead to an inequitable result. Given [the Company's] total lack of assets, [Plaintiff] would recover none of the damages to

---

[9] Pannu also admitted that this is how he and the other Members of Ensource do business. They create LLCs in order to make investments. *See e.g.,* Ex. F (31:13-33:7)(Pannu and Martin are Members of JPCM Venures, LLC, Queenswood, LLC and Woodthorpe, LLC, and Pannu and Sharp are Members of CMSK Ventures, LLC).

1 which he is entitled. . . . The existence of an unsatisfied creditor does not alone create an inequitable result; it can be enough, however, when coupled with proof that the corporation was undercapitalized, as [the Company] clearly was"). This is especially true when Plaintiff entered into the Agreement and other investment documents knowing that such exculpation, indemnification and attorneys' fees were part of the bargained-for terms of investment. If Ensource's corporate form is not disregarded, its Members will be immunized from their contractual obligations and the Willis Group left without recourse to collect the contractually-mandated fees.

### D. The Willis Group's Request for $96,914.03 in Attorney's Fees is Supported by the Evidence

Section 13.10 provides for the recovery by a Member of "costs of suit and attorney's fees." It does not limit the fee recovery to "reasonable" fees. There is no limit at all. Thus, the Willis Group is entitled to *all* of the fees attributed to it. Such fees, however, are also abundantly reasonable.

#### 1. Hours Billed by the Willis Group's Counsel Are Reasonable

In determining reasonable hours, the party requesting fees submits its time records justifying the hours claimed to have been expended. *See Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986)*;cf. Fischer v. SJB-P.D. Inc.,* 214 F.3d 1115, 1121 (9th Cir. 2000) (party requesting fees meets burden "by simply listing his hours and identifying the general subject matter of his time expenditures").

The Willis Group has presented detailed billing statements from the law firms that represented it in this matter. *See* Ex. D and Ex. E; *see also* Sweeney Decl., ¶7 and ¶9. Those billing statements reveal the date, hours and nature of the work performed by its attorneys. *See* Sweeney Decl., ¶¶6-9 (because the case is ongoing against Mr. Willis, the work descriptions have been redacted as privileged and attorney work product. The Willis Group is willing and hereby offers to make such descriptions available for the Court's *in camera* inspection). The statements establish that the

Willis Group's law firms have billed approximately 1309.20 hours between January 2017 and November 2019 in defending this action. *See id.*, ¶9.

The hours billed on this complex matter were reasonable in that they span almost three years of litigation in a case aggressively (and, in the case of the Willis Defendant, unjustifyingly) prosecuted by Plaintiff.[13] *See* Sweeney Decl., ¶12. Moreover, the Willis Defendants conscientiously staffed and defended the case leanly: only one deposition was noticed (and counsel for the Willis Defendants did not travel to the three cross-country depositions subpoenaed by Plaintiff), written discovery was limited, no experts were retained, and there have been few billing timekeepers. *See id.*, ¶12.

### 2. Hourly Rates of the Willis Group's Counsel Are Reasonable

"A party seeking an award of attorney's fees bears the burden of submitting evidence of the hours worked and the rate paid, as well as evidence that the rate charged is in line with the prevailing market rate in the relevant community." *Hawkins-Dean v. Metro. Life Ins. Co.*, 2007 U.S. Dist. LEXIS 73291, at *1 (C.D. Cal. Sep. 18, 2007). "The prevailing market rate is indicative of a reasonable hourly rate." *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987). "[R]ate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Courts in the Ninth Circuit routinely conclude that rates above $600 are reasonable for experienced counsel handling complex litigation. *See, e.g., Kolay Flooring Int'l, LLC v. Milliken & Co.*, 2019 U.S. Dist. LEXIS 128157, at *14 (C.D. Cal. Mar. 6, 2019)(finding partner hourly rates of $850-$1000 reasonable); *Pohlmann v. Berryhill*, 2019 U.S. Dist. LEXIS 53161, at *5 (S.D. Cal. Mar. 28, 2019)(approving rate of $692); *Likens v. Colvin*, 2014 U.S. Dist. LEXIS 166921, at *2 (S.D. Cal. Dec.

---

[13] The fees sought in this Motion only include those billed through November 2019. The fees incurred on this Motion are not yet billed, and Willis Group will need to file a reply in conjunction with this Motion. Thus, it will reasonably incur additional fees in conjunction with this case prior to its final resolution. The Willis Group respectfully requests that this Court provide it with an opportunity to seek these additional fees at a later date.

2, 2014)(effective hourly rate of $666.68 per hour); *Nash v. Colvin*, 2014 U.S. Dist. LEXIS 158009, at *2 (S.D. Cal. Nov. 7, 2014)(effective hourly rate of $656 per hour); *Sproul v. Astrue*, 2013 U.S. Dist. LEXIS 12667, at *2 (S.D. Cal. Jan. 30 2013)(effective hourly rate of $800 per hour); *Richardson v. Colvin*, 2017 U.S. Dist. LEXIS 66886 at *2 (S.D. Cal. May 2, 2017)(effective hourly rate of $770 per hour).

Ms. Sweeney, lead counsel for the Willis Group, and most expensive member of the team, is a partner with 20 years' experience. In this market, with such level of experience, her current hourly rate of $425 is below market.[10] *See e.g., US Foods, Inc. v. Lalla Holding Corp.*, 2014 U.S. Dist. LEXIS 136018, at *9 (N.D. Cal. Sep. 25, 2014)(awarding fees at an hourly rate of $450 for a 7-year attorney). The Willis Group's attorneys provided quality representation throughout this matter and the experience of the Willis Group's attorneys clearly contributed to the substantial success the Willis Group obtained in this case.

## IV. **CONCLUSION**

The attorneys' fees sought herein are mandated by an Agreement that Plaintiff negotiated and signed, and by Texas law. As a prevailing party to the Judgment entered on December 19, 2019, the Willis Group respectfully urges this Court to award it $96,914.03, which is its proportionate amount of the total fees incurred by the Willis Defendants through November 2019.

Dated: January 2, 2020

SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation

By:  */s/Shannon D. Sweeney*
Shannon D. Sweeney
Attorneys for the Willis Group

---

[10] Ms. Sweeney's rate, along with the other timekeepers at the Firm, has increased each year. Her rate was $350 in 2017, $400 in 2018, and $425 in 2019. *See* Sweeney Decl., ¶11.