**EXHIBIT E**



**Sullivan Hill Lewin Rez & Engel**
A Professional Law Corporation

550 West C Street
15th Floor
San Diego, CA 92101
☎ 619.233.4100
📠 619.231.4372

**sullivanhill.com**

Federal Tax ID
33-0644076

Mark Willis
c/o Willis Group
Redacted

Invoice 167733
November 7, 2017

Our Matter # 09404-17558 - SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 10/31/2017

| | |
|---|---:|
| Current Fees | 10,606.00 |
| Advanced Deposit Applied | - 5,000.00 |
| Total Current Charges | 5,606.00 |
| **Total Due** | **5,606.00** |

## Sullivan Hill Lewin Rez & Engel, APLC

Mark Willis
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

November 7, 2017
Invoice: 167733
Page: 2

| | | Fee Recap | Hours | Rate/Hour | Amount |
|---|---|---|---|---|---|
| Erin A. Barber | Paralegal | | 4.80 | 175.00 | 840.00 |
| Katie A. Millerick | Associate | | 1.30 | 325.00 | 422.50 |
| Shannon D. Sweeney | Shareholder | | 0.70 | 0.00 | 0.00 |
| Shannon D. Sweeney | Shareholder | | 19.70 | 350.00 | 6,895.00 |
| Priyanka Talukdar | Associate | | 8.30 | 295.00 | 2,448.50 |
| | | **Totals:** | **34.80** | | **10,606.00** |



**Sullivan Hill Lewin Rez & Engel**
A Professional Law Corporation

550 West C Street
15th Floor
San Diego, CA 92101
☎ 619.233.4100
📠 619.231.4372

sullivanhill.com

Federal Tax ID
33-0644076

Mark Willis
c/o Willis Group
Redacted

Invoice 168004
January 8, 2018

Our Matter # 09404-17558 - SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 12/31/2017

| | | |
|---|---|---|
| Balance Forward | | 5,606.00 |
| Current Fees | 11,334.00 | |
| Current Disbursements | 11.34 | |
| Current Interest | 56.06 | |
| Total Current Charges | | 11,401.40 |
| **Total Due** | | **17,007.40** |

## Sullivan Hill Lewin Rez & Engel, APLC

Mark Willis
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

January 8, 2018
Invoice: 168004
Page: 2

| Fee Recap | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Erin A. Barber | Paralegal | 20.40 | 175.00 | 3,570.00 |
| Shannon D.  Sweeney | Shareholder | 17.80 | 350.00 | 6,230.00 |
| Priyanka Talukdar | Associate | 5.20 | 295.00 | 1,534.00 |
| | Totals: | 43.40 | | 11,334.00 |



**Sullivan Hill Lewin Rez & Engel**
A Professional Law Corporation

550 West C Street
15th Floor
San Diego, CA 92101
T 619.233.4100
F 619.231.4372

sullivanhill.com

Federal Tax ID
33-0644076

Mark Willis
c/o Willis Group
     Redacted

Invoice 168271
February 8, 2018

Our Matter # 09404-17558 - SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 1/31/2018

| | | |
|---|---|---|
| Balance Forward | | 17,007.40 |
| Current Fees | 6,570.00 | |
| Current Interest | 169.51 | |
| Total Current Charges | | 6,739.51 |
| **Total Due** | | **23,746.91** |

## Sullivan Hill Lewin Rez & Engel, APLC

Mark Willis
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

February 8, 2018
Invoice: 168271
Page: 2

### Fee Recap

|  |  | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Erin A. Barber | Paralegal | 8.10 | 175.00 | 1,417.50 |
| Shannon D.  Sweeney | Shareholder | 1.10 | 400.00 | 440.00 |
| Priyanka Talukdar | Associate | 14.50 | 325.00 | 4,712.50 |
|  | **Totals:** | **23.70** |  | **6,570.00** |



**Sullivan Hill Lewin Rez & Engel**
A Professional Law Corporation

550 West C Street
15th Floor
San Diego, CA 92101
T 619.233.4100
F 619.231.4372

sullivanhill.com

Federal Tax ID
33-0644076

Mark Willis
c/o Willis Group
　　　Redacted

Invoice 168399
March 6, 2018

Our Matter # 09404-17558 - SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 2/28/2018

| | | |
|---|---|---|
| Balance Forward | | 23,746.91 |
| Current Fees | 10,664.50 | |
| Current Interest | 169.51 | |
| Total Current Charges | | 10,834.01 |
| **Total Due** | | **34,580.92** |

## Sullivan Hill Lewin Rez & Engel, APLC

Mark Willis
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

March 6, 2018
Invoice: 168399
Page: 2

| Fee Recap | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Erin A. Barber | Paralegal | 11.30 | 175.00 | 1,977.50 |
| Katie A. Healy | Associate | 0.60 | 345.00 | 207.00 |
| Shannon D.  Sweeney | Shareholder | 8.20 | 400.00 | 3,280.00 |
| Priyanka Talukdar | Associate | 2.10 | 0.00 | 0.00 |
| Priyanka Talukdar | Associate | 16.00 | 325.00 | 5,200.00 |
| | Totals: | 38.20 | | 10,664.50 |



**Sullivan Hill Lewin Rez & Engel**
A Professional Law Corporation

550 West C Street
15th Floor
San Diego, CA 92101
T 619.233.4100
F 619.231.4372

sullivanhill.com

Federal Tax ID
33-0644076

Mark Willis
c/o Willis Group
       Redacted

Invoice 168595
April 9, 2018

Our Matter # 09404-17558 - SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 3/31/2018

| | | |
|---|---:|---:|
| Previous Balance | | 34,580.92 |
| Payments | | -12,000.00 |
| Balance Forward | | 22,580.92 |
| Current Fees | 13,010.00 | |
| Current Interest | 221.86 | |
| Total Current Charges | | 13,231.86 |
| **Total Due** | | **35,812.78** |

### Sullivan Hill Lewin Rez & Engel, APLC

Mark Willis
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

April 9, 2018
Invoice: 168595
Page: 2

| Fee Recap | | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|---|
| Erin A. Barber | Paralegal | | 3.00 | 175.00 | 525.00 |
| Shannon D.  Sweeney | Shareholder | | 7.00 | 400.00 | 2,800.00 |
| Priyanka Talukdar | Associate | | 9.20 | 0.00 | 0.00 |
| Priyanka Talukdar | Associate | | 29.80 | 325.00 | 9,685.00 |
| | | Totals: | 49.00 | | 13,010.00 |



**Sullivan Hill Lewin Rez & Engel**
A Professional Law Corporation

550 West C Street
15th Floor
San Diego, CA 92101
**T** 619.233.4100
**F** 619.231.4372

sullivanhill.com

Federal Tax ID
33-0644076

Mark Willis
c/o Willis Group
    Redacted

Invoice 168727
May 8, 2018

Our Matter # 09404-17558 - SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 4/30/2018

| | | |
|---|---:|---:|
| Previous Balance | | 35,812.78 |
| Payments | | -10,000.00 |
| Balance Forward | | 25,812.78 |
| Current Fees | 2,995.00 | |
| Current Disbursements | 11.74 | |
| Current Interest | 121.86 | |
| Total Current Charges | | 3,128.60 |
| **Total Due** | | **28,941.38** |

**Sullivan Hill Lewin Rez & Engel, APLC**

Mark Willis
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

May 8, 2018
Invoice: 168727
Page: 2

| Fee Recap | | Hours | Rate/Hour | Amount |
|-----------|---|-------|-----------|--------|
| Erin A. Barber | Paralegal | 0.20 | 175.00 | 35.00 |
| Shannon D. Sweeney | Shareholder | 7.40 | 400.00 | 2,960.00 |
| | **Totals:** | **7.60** | | **2,995.00** |



**Sullivan Hill Lewin Rez & Engel**
A Professional Law Corporation

550 West C Street
15th Floor
San Diego, CA 92101
T 619.233.4100
F 619.231.4372

sullivanhill.com

Federal Tax ID
33-0644076

Mark Willis
c/o Willis Group
      Redacted

Invoice 168915
June 11, 2018

Our Matter # 09404-17558 - SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 5/31/2018

| | | |
|---|---|---|
| Balance Forward | | 28,941.38 |
| Current Fees | 17,510.00 | |
| Current Interest | 282.03 | |
| Total Current Charges | | 17,792.03 |
| **Total Due** | | **46,733.41** |

**Sullivan Hill Lewin Rez & Engel, APLC**

Mark Willis                                                                     June 11, 2018
Re: Ensource Investments LLC v. Tatham et al.                     Invoice: 168915
I.D. 09404-17558 - SDS                                                     Page: 2

| Fee Recap | | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|---|
| Erin A. Barber | Paralegal | | 75.60 | 175.00 | 13,230.00 |
| Shannon D.  Sweeney | Shareholder | | 10.70 | 400.00 | 4,280.00 |
| | | **Totals:** | **86.30** | | **17,510.00** |



550 West C Street
15th Floor
San Diego, CA 92101
**T** 619.233.4100
**F** 619.231.4372

**sullivanhill.com**

Federal Tax ID
33-0644076

**Sullivan Hill Lewin Rez & Engel**
A Professional Law Corporation

Mark Willis
c/o Willis Group
      Redacted

Invoice 169047
July 9, 2018

Our Matter # 09404-17558 - SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 6/30/2018

| | | |
|---|---:|---:|
| Previous Balance | | 46,733.41 |
| Payments | | -17,792.09 |
| Balance Forward | | 28,941.32 |
| Current Fees | 2,437.50 | |
| Current Disbursements | 7.08 | |
| Current Interest | 282.03 | |
| Total Current Charges | | 2,726.61 |
| **Total Due** | | **31,667.93** |

**Sullivan Hill Lewin Rez & Engel, APLC**

Mark Willis
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

July 9, 2018
Invoice: 169047
Page: 2

| Fee Recap | | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|---|
| Erin A. Barber | Paralegal | | 5.70 | 175.00 | 997.50 |
| Shannon D.  Sweeney | Shareholder | | 3.60 | 400.00 | 1,440.00 |
| | | **Totals:** | **9.30** | | **2,437.50** |



550 West C Street
15th Floor
San Diego, CA 92101
**T** 619.233.4100
**F** 619.231.4372

**sullivanhill.com**

Federal Tax ID
33-0644076

**Sullivan Hill Lewin Rez & Engel**
A Professional Law Corporation

Mark Willis                                          Invoice 169286
c/o Willis Group                                     August 7, 2018
      Redacted

Our Matter # 09404-17558 - SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 7/31/2018

| | | |
|---|---|---|
| Balance Forward | | 31,667.93 |
| Current Fees | 3,845.00 | |
| Current Interest | 282.03 | |
| Total Current Charges | | 4,127.03 |
| **Total Due** | | **35,794.96** |

## Sullivan Hill Lewin Rez & Engel, APLC

Mark Willis
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

August 7, 2018
Invoice: 169286
Page: 2

| Fee Recap | | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|---|
| Erin A. Barber | Paralegal | | 3.00 | 175.00 | 525.00 |
| Shannon D. Sweeney | Shareholder | | 8.30 | 400.00 | 3,320.00 |
| | | **Totals:** | **11.30** | | **3,845.00** |



600 B Street
Suite 1700
San Diego, CA 92101
T 619.233.4100
F 619.231.4372

sullivanhill.com

**Sullivan Hill Rez & Engel**
A Professional Law Corporation

Mark Willis                                                    Invoice 169464
c/o Willis Group                                          September 14, 2018
        Redacted

Our Matter # 09404-17558 - SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 8/31/2018

| | | |
|---|---:|---:|
| Balance Forward | | 35,794.96 |
| Current Fees | 11,287.50 | |
| Current Disbursements | 5.68 | |
| Current Interest | 344.92 | |
| Total Current Charges | | 11,638.10 |
| **Total Due** | | **47,433.06** |

## Sullivan Hill Rez & Engel, APLC

Mark Willis
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

September 14, 2018
Invoice: 169464
Page: 2

| Fee Recap | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Erin A. Barber | Paralegal | 27.70 | 175.00 | 4,847.50 |
| Shannon D. Sweeney | Shareholder | 16.10 | 400.00 | 6,440.00 |
| | Totals: | 43.80 | | 11,287.50 |



**Sullivan Hill Rez & Engel**
A Professional Law Corporation

600 B Street
Suite 1700
San Diego, CA 92101
**T** 619.233.4100
**F** 619.231.4372

**sullivanhill.com**

Mark Willis
c/o Willis Group
      Redacted

Invoice 169626
October 16, 2018

Our Matter # 09404-17558 - SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 9/30/2018

| | | |
|---|---|---|
| Balance Forward | | 47,433.06 |
| Current Fees | 5,370.00 | |
| Current Interest | 457.85 | |
| Total Current Charges | | 5,827.85 |
| **Total Due** | | **53,260.91** |

**Sullivan Hill Rez & Engel, APLC**

Mark Willis
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

October 16, 2018
Invoice: 169626
Page: 2

| Fee Recap | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Erin A. Barber | Paralegal | 17.20 | 175.00 | 3,010.00 |
| Shannon D. Sweeney | Shareholder | 5.90 | 400.00 | 2,360.00 |
| | Totals: | 23.10 | | 5,370.00 |



**Sullivan Hill Rez & Engel**
A Professional Law Corporation

600 B Street
Suite 1700
San Diego, CA 92101
**T** 619.233.4100
**F** 619.231.4372

sullivanhill.com

Mark Willis
c/o Willis Group
        Redacted

Invoice 169823
November 15, 2018

Our Matter # 09404-17558 - SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 10/31/2018

| | | |
|---|---:|---:|
| Previous Balance | | 53,260.91 |
| Payments | | -15,000.00 |
| Balance Forward | | 38,260.91 |
| Current Fees | 35,590.00 | |
| Current Disbursements | 2.10 | |
| Current Interest | 311.80 | |
| Total Current Charges | | 35,903.90 |
| **Total Due** | | **74,164.81** |

**Sullivan Hill Rez & Engel, APLC**

Mark Willis
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

November 15, 2018
Invoice: 169823
Page: 2

| Fee Recap | | | | |
|---|---|---|---|---|
| | | **Hours** | **Rate/Hour** | **Amount** |
| Erin A. Barber | Paralegal | 70.80 | 175.00 | 12,390.00 |
| Shannon D.  Sweeney | Shareholder | 58.00 | 400.00 | 23,200.00 |
| | **Totals:** | **128.80** | | **35,590.00** |



600 B Street
Suite 1700
San Diego, CA 92101
T 619.233.4100
F 619.231.4372

sullivanhill.com

**Sullivan Hill Rez & Engel**
A Professional Law Corporation

Mark Willis                                                                    Invoice 169898
c/o Willis Group                                                      December 6, 2018
　　　　　Redacted

Our Matter # 09404-17558-SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 11/30/2018

| | | |
|---|---|---:|
| Balance Forward | | 74,164.81 |
| Current Fees | 23,513.00 | |
| Current Disbursements | 1,570.64 | |
| Current Interest | 365.50 | |
| Total Current Charges | | 25,449.14 |
| **Total Due** | | **99,613.95** |

### Sullivan Hill Rez & Engel, APLC

Mark Willis
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

December 6, 2018
Invoice: 169898
Page: 2

| Fee Recap | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Erin A. Barber | Paralegal | 1.00 | 0.00 | 0.00 |
| Erin A. Barber | Paralegal | 45.60 | 175.00 | 7,980.00 |
| Donald G. Rez | Shareholder | 0.50 | 0.00 | 0.00 |
| Donald G. Rez | Shareholder | 1.40 | 495.00 | 693.00 |
| Shannon D.  Sweeney | Shareholder | 37.10 | 400.00 | 14,840.00 |
| | **Totals:** | **85.60** | | **23,513.00** |



**Sullivan Hill Rez & Engel**
A Professional Law Corporation

600 B Street
Suite 1700
San Diego, CA 92101
**T** 619.233.4100
**F** 619.231.4372

**sullivanhill.com**

Mark Willis
c/o Willis Group
     Redacted

Invoice 170118
January 14, 2019

Our Matter # 09404-17558-SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 12/31/2018

| | | |
|---|---|---|
| Balance Forward | | 99,613.95 |
| Current Fees | 6,380.00 | |
| Current Disbursements | 2,725.50 | |
| Current Interest | 972.26 | |
| Total Current Charges | | 10,077.76 |
| **Total Due** | | **109,691.71** |

## Sullivan Hill Rez & Engel, APLC

Mark Willis
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

January 14, 2019
Invoice: 170118
Page: 2

| Fee Recap | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Erin A. Barber | Paralegal | 0.80 | 175.00 | 140.00 |
| Donald G. Rez | Shareholder | 0.20 | 0.00 | 0.00 |
| Shannon D.  Sweeney | Shareholder | 15.60 | 400.00 | 6,240.00 |
| | Totals: | 16.60 | | 6,380.00 |



**Sullivan Hill Rez & Engel**
A Professional Law Corporation

600 B Street
Suite 1700
San Diego, CA 92101
T 619.233.4100
F 619.231.4372

sullivanhill.com

Mark Willis; The Willis Group; Beyond Review and Image
c/o Willis Group
        Redacted

Invoice 170210
February 11, 2019

Our Matter # 09404-17558-SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 1/31/2019

| | | |
|---|---:|---:|
| Previous Balance | | 109,691.71 |
| Adjustments | | -3,620.00 |
| Balance Forward | | 106,071.71 |
| Current Fees | 4,226.50 | |
| Current Disbursements | 0.89 | |
| Current Interest | 936.06 | |
| Total Current Charges | | 5,163.45 |
| **Total Due** | | **111,235.16** |

**Sullivan Hill Rez & Engel, APLC**

Mark Willis
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

February 11, 2019
Invoice: 170210
Page: 2

| Fee Recap | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Erin A. Barber | Paralegal | 1.90 | 185.00 | 351.50 |
| Shannon D.  Sweeney | Shareholder | 0.70 | 0.00 | 0.00 |
| Shannon D.  Sweeney | Shareholder | 9.20 | 400.00 | 3,680.00 |
| Michael A. Zarconi | Associate | 0.60 | 325.00 | 195.00 |
| | Totals: | **12.40** | | **4,226.50** |



**Sullivan Hill Rez & Engel**
A Professional Law Corporation

600 B Street
Suite 1700
San Diego, CA 92101
T 619.233.4100
F 619.231.4372

sullivanhill.com

Mark Willis; The Willis Group; Beyond Review and Image
c/o The Willis Group
         Redacted

Invoice 170426
March 13, 2019

Our Matter # 09404-17558-SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 2/28/2019

| | |
|---|---:|
| Balance Forward | 111,235.16 |
| Current Fees | 3,163.00 |
| Current Interest | 1,027.12 |
| Total Current Charges | 4,190.12 |
| **Total Due** | **115,425.28** |

**Sullivan Hill Rez & Engel, APLC**

Mark Willis; The Willis Group; Beyond Review and Image
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

March 13, 2019
Invoice: 170426
Page: 2

| Fee Recap | | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|---|
| Erin A. Barber | Paralegal | | 6.30 | 185.00 | 1,165.50 |
| Shannon D.  Sweeney | Shareholder | | 0.10 | 0.00 | 0.00 |
| Shannon D.  Sweeney | Shareholder | | 4.70 | 425.00 | 1,997.50 |
| | | Totals: | 11.10 | | 3,163.00 |



**Sullivan Hill Rez & Engel**
A Professional Law Corporation

600 B Street
Suite 1700
San Diego, CA 92101
T 619.233.4100
F 619.231.4372

sullivanhill.com

Mark Willis; The Willis Group; Beyond Review and Image
c/o The Willis Group
        Redacted

Invoice 170605
April 22, 2019

Our Matter # 09404-17558-SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 3/31/2019

| | | |
|---|---:|---:|
| Previous Balance | | 115,425.28 |
| Payments | | -60,000.00 |
| Balance Forward | | 55,425.28 |
| Current Fees | 3,164.50 | |
| Current Interest | 501.02 | |
| Total Current Charges | | 3,665.52 |
| **Total Due** | | **59,090.80** |

### Sullivan Hill Rez & Engel, APLC

Mark Willis; The Willis Group; Beyond Review and Image
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

April 22, 2019
Invoice: 170605
Page: 2

| Fee Recap | | | | |
|---|---|---|---|---|
| | | **Hours** | **Rate/Hour** | **Amount** |
| Erin A. Barber | Paralegal | 1.70 | 185.00 | 314.50 |
| D. Gianna Garcia | Paralegal | 0.50 | 175.00 | 87.50 |
| Shannon D.  Sweeney | Shareholder | 6.50 | 425.00 | 2,762.50 |
| | **Totals:** | **8.70** | | **3,164.50** |



**Sullivan Hill Rez & Engel**
A Professional Law Corporation

600 B Street
Suite 1700
San Diego, CA 92101
T 619.233.4100
F 619.231.4372

sullivanhill.com

Mark Willis; The Willis Group; Beyond Review and Image
c/o The Willis Group
          Redacted

Invoice 170742
May 14, 2019

Our Matter # 09404-17558-SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 4/30/2019

| | |
|---|---:|
| Balance Forward | 59,090.80 |
| Current Fees | 16,557.00 |
| Current Interest | 501.02 |
| Total Current Charges | 17,058.02 |
| **Total Due** | **76,148.82** |

**Sullivan Hill Rez & Engel, APLC**

Mark Willis; The Willis Group; Beyond Review and Image
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

May 14, 2019
Invoice: 170742
Page: 2

| Fee Recap | | | | |
|---|---|---|---|---|
| | | **Hours** | **Rate/Hour** | **Amount** |
| Erin A. Barber | Paralegal | 19.20 | 185.00 | 3,552.00 |
| Shannon D.  Sweeney | Shareholder | 30.60 | 425.00 | 13,005.00 |
| | **Totals:** | **49.80** | | **16,557.00** |



**Sullivan Hill Rez & Engel**
A Professional Law Corporation

600 B Street
Suite 1700
San Diego, CA 92101
**T** 619.233.4100
**F** 619.231.4372

**sullivanhill.com**

Mark Willis; The Willis Group; Beyond Review and Image
c/o The Willis Group
　　　　　Redacted

Invoice 170925
June 13, 2019

Our Matter # 09404-17558 - SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 5/31/2019

| | | |
|---|---:|---:|
| Previous Balance | | 76,148.82 |
| Payments | | -30,000.00 |
| Adjustments | | -2,022.35 |
| Balance Forward | | 44,126.47 |
| Current Fees | 10,837.50 | |
| Current Disbursements | 765.66 | |
| Current Interest | 232.66 | |
| Total Current Charges | | 11,835.82 |
| **Total Due** | | **55,962.29** |

### Sullivan Hill Rez & Engel, APLC

Mark Willis; The Willis Group; Beyond Review and Image
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

June 13, 2019
Invoice: 170925
Page: 2

| Fee Recap | | | | |
|---|---|---|---|---|
| | | **Hours** | **Rate/Hour** | **Amount** |
| Erin A. Barber | Paralegal | 34.00 | 185.00 | 6,290.00 |
| Shannon D.  Sweeney | Shareholder | 10.70 | 425.00 | 4,547.50 |
| | **Totals:** | **44.70** | | **10,837.50** |



**Sullivan Hill Rez & Engel**
A Professional Law Corporation

600 B Street
Suite 1700
San Diego, CA 92101
**T** 619.233.4100
**F** 619.231.4372

**sullivanhill.com**

Mark Willis; The Willis Group; Beyond Review and Image
c/o The Willis Group
      Redacted

Invoice 171114
July 17, 2019

Our Matter # 09404-17558-SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 6/30/2019

| | | |
|---|---:|---:|
| Previous Balance | | 55,962.29 |
| Payments | | -30,000.00 |
| Adjustments | | -3,801.96 |
| Balance Forward | | 22,160.33 |
| Current Fees | 20,326.00 | |
| Current Disbursements | 501.00 | |
| Current Interest | 214.27 | |
| Total Current Charges | | 21,041.27 |
| **Total Due** | | **43,201.60** |

### Sullivan Hill Rez & Engel, APLC

| | |
|---|---|
| Mark Willis; The Willis Group; Beyond Review and Image | July 17, 2019 |
| Re: Ensource Investments LLC v. Tatham et al. | Invoice: 171114 |
| I.D. 09404-17558 - SDS | Page: 2 |

|  | | Fee Recap | | | |
|---|---|---|---|---|---|
| | | | **Hours** | **Rate/Hour** | **Amount** |
| Robert P. Allenby | Shareholder | | 0.30 | 0.00 | 0.00 |
| Robert P. Allenby | Shareholder | | 0.30 | 495.00 | 148.50 |
| Erin A. Barber | Paralegal | | 13.50 | 185.00 | 2,497.50 |
| Shannon D. Sweeney | Shareholder | | 41.60 | 425.00 | 17,680.00 |
| | | **Totals:** | **55.70** | | **20,326.00** |



**Sullivan Hill Rez & Engel**
A Professional Law Corporation

600 B Street
Suite 1700
San Diego, CA 92101
T 619.233.4100
F 619.231.4372

sullivanhill.com

Mark Willis; The Willis Group; Beyond Review and Image
c/o The Willis Group
        Redacted

Invoice 171229
August 15, 2019

Our Matter # 09404-17558-SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 7/31/2019

| | |
|---|---:|
| Balance Forward | 43,201.60 |
| Current Fees | 11,700.50 |
| Current Disbursements | 3.80 |
| Current Interest | 214.27 |
| Total Current Charges | 11,918.57 |
| **Total Due** | **55,120.17** |

**Sullivan Hill Rez & Engel, APLC**

Mark Willis; The Willis Group; Beyond Review and Image
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

August 15, 2019
Invoice: 171229
Page: 2

| Fee Recap | | | | |
|---|---|---|---|---|
| | | **Hours** | **Rate/Hour** | **Amount** |
| Erin A. Barber | Paralegal | 8.80 | 185.00 | 1,628.00 |
| Shannon D.  Sweeney | Shareholder | 23.70 | 425.00 | 10,072.50 |
| | **Totals:** | **32.50** | | **11,700.50** |



**Sullivan Hill Rez & Engel**
A Professional Law Corporation

600 B Street
Suite 1700
San Diego, CA 92101
T 619.233.4100
F 619.231.4372

sullivanhill.com

Mark Willis; The Willis Group; Beyond Review and Image
c/o The Willis Group
     Redacted

Invoice 171325
September 10, 2019

Our Matter # 09404-17558-SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 8/31/2019

| | | |
|---|---|---|
| Balance Forward | | 55,120.17 |
| Current Fees | 30,485.50 | |
| Current Disbursements | 16.50 | |
| Current Interest | 422.54 | |
| Total Current Charges | | 30,924.54 |
| **Total Due** | | **86,044.71** |

### Sullivan Hill Rez & Engel, APLC

Mark Willis; The Willis Group; Beyond Review and Image
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

September 10, 2019
Invoice: 171325
Page: 2

| Fee Recap | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Erin A. Barber | Paralegal | 28.30 | 185.00 | 5,235.50 |
| Shannon D.  Sweeney | Shareholder | 58.80 | 425.00 | 24,990.00 |
| Michael A. Zarconi | Associate | 0.80 | 325.00 | 260.00 |
| | **Totals:** | **87.90** | | **30,485.50** |



**Sullivan Hill Rez & Engel**
A Professional Law Corporation

600 B Street
Suite 1700
San Diego, CA 92101
T 619.233.4100
F 619.231.4372

sullivanhill.com

Mark Willis; The Willis Group; Beyond Review and Image
c/o The Willis Group
Redacted

Invoice 171480
October 7, 2019

Our Matter # 09404-17558-SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 9/30/2019

| | | |
|---|---|---|
| Balance Forward | | 86,044.71 |
| Current Fees | 7,482.50 | |
| Current Interest | 539.58 | |
| Total Current Charges | | 8,022.08 |
| **Total Due** | | **94,066.79** |

**Sullivan Hill Rez & Engel, APLC**

Mark Willis; The Willis Group; Beyond Review and Image
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

October 7, 2019
Invoice: 171480
Page: 2

| Fee Recap | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Erin A. Barber | Paralegal | 3.00 | 185.00 | 555.00 |
| Shannon D.  Sweeney | Shareholder | 16.30 | 425.00 | 6,927.50 |
| | Totals: | **19.30** | | **7,482.50** |



**Sullivan Hill Rez & Engel**
A Professional Law Corporation

600 B Street
Suite 1700
San Diego, CA 92101
T 619.233.4100
F 619.231.4372

sullivanhill.com

Mark Willis; The Willis Group; Beyond Review and Image
c/o The Willis Group
   Redacted

Invoice 171680
November 14, 2019

Our Matter # 09404-17558-SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 10/31/2019

| | | |
|---|---|---|
| Previous Balance | | 94,066.79 |
| Payments | | -50,000.00 |
| Balance Forward | | 44,066.79 |
| Current Fees | 38,449.50 | |
| Current Disbursements | 1,503.30 | |
| Current Interest | 419.42 | |
| Total Current Charges | | 40,372.22 |
| **Total Due** | | **84,439.01** |

### Sullivan Hill Rez & Engel, APLC

Mark Willis; The Willis Group; Beyond Review and Image
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

November 14, 2019
Invoice: 171680
Page: 2

| Fee Recap | | | | |
|---|---|---|---|---|
| | | **Hours** | **Rate/Hour** | **Amount** |
| Robert P. Allenby | Shareholder | 4.40 | 495.00 | 2,178.00 |
| Erin A. Barber | Paralegal | 51.90 | 185.00 | 9,601.50 |
| Donald G. Rez | Shareholder | 0.50 | 0.00 | 0.00 |
| Shannon D.  Sweeney | Shareholder | 61.30 | 425.00 | 26,052.50 |
| Michael A. Zarconi | Associate | 1.90 | 325.00 | 617.50 |
| | **Totals:** | **120.00** | | **38,449.50** |



**Sullivan Hill Rez & Engel**
A Professional Law Corporation

600 B Street
Suite 1700
San Diego, CA 92101
T 619.233.4100
F 619.231.4372

sullivanhill.com

Mark Willis; The Willis Group; Beyond Review and Image
c/o The Willis Group
          Redacted

Invoice 171955
December 12, 2019

Our Matter # 09404-17558-SDS

Re: Ensource Investments LLC v. Tatham et al.

For Services Rendered Through 11/30/2019

| | |
|---|---:|
| Balance Forward | 84,439.01 |
| Current Fees | 74,255.50 |
| Current Disbursements | 58.40 |
| Current Interest | 419.42 |
| Total Current Charges | 74,733.32 |
| **Total Due** | **159,172.33** |

**Sullivan Hill Rez & Engel, APLC**

Mark Willis; The Willis Group; Beyond Review and Image
Re: Ensource Investments LLC v. Tatham et al.
I.D. 09404-17558 - SDS

December 12, 2019
Invoice: 171955
Page: 2

| Fee Recap | | | | |
|---|---|---|---|---|
| | | Hours | Rate/Hour | Amount |
| Robert P. Allenby | Shareholder | 1.10 | 495.00 | 544.50 |
| Erin A. Barber | Paralegal | 79.40 | 185.00 | 14,689.00 |
| Erin A. Barber | Paralegal | -6.80 | 185.00 | -1,258.00 |
| Donald G. Rez | Shareholder | 0.10 | 525.00 | 52.50 |
| Donald G. Rez | Shareholder | -0.10 | -525.00 | -52.50 |
| Shannon D.  Sweeney | Shareholder | 114.00 | 425.00 | 48,450.00 |
| Michael A. Zarconi | Associate | 41.80 | 325.00 | 13,585.00 |
| Michael A. Zarconi | Associate | -5.40 | 325.00 | -1,755.00 |
| | **Totals:** | **224.10** | | **74,255.50** |

# EXHIBIT F

Justin Pannu  10/29/2018

1                   UNITED STATES DISTRICT COURT

2                 SOUTHERN DISTRICT OF CALIFORNIA

3

4    ENSOURCE INVESTMENTS, LLC, a          )
     Delaware limited liability company,   )
5                                          )
                   Plaintiff,              )
6                                          )
         v.                                )
7                                          )Case No.:
                                           )17CV0079 H JMA
8    THOMAS P. TATHAM, an individual;      )
     MARK A. WILLIS, an individual; PDP    )
9    MANAGEMENT GROUP, LLC, a Texas        )
     limited liability company; TITLE     )
10   ROVER, LLC, a Texas limited liability)
     company; BEYOND REVIEW, LLC, a Texas )
11   limited company; IMAGE ENGINE, LLC, a)
     WILLIS GROUP, LLC, a Texas limited    )
12   liability company; and DOES 1-50,    )
                                           )
13                 Defendants.             )
     _____)

14

15          VIDEOTAPED DEPOSITION OF JUSTIN PANNU

16                 SAN DIEGO, CALIFORNIA

17                 OCTOBER 29, 2018

18

19   REPORTED BY BRIDGET L. MASTROBATTISTA, CSR NO. 7715,
               REGISTERED PROFESSIONAL REPORTER
20             REGISTERED MERIT REPORTER
               CERTIFIED REALTIME REPORTER
21

22

23

24

25

Exhibit F
Page 118

Justin Pannu  10/29/2018

1    might have been a year.

2         **Q    And did you go every weekend during that**

3    **year --**

4         A    I did.

5         **Q    -- to Canada?**

6         A    I did go to Canada during that weekend.

7    Well, every second weekend would be the course.  So

8    every second weekend.

9         **Q    So I noticed when you were going through**

10   **the lawsuits that you've been involved in that you**

11   **have some experience with investing in other outside**

12   **endeavors.**

13        **Are you involved in any investments right**

14   **now?**

15        A    I am.

16        **Q    What are those?**

17        A    With Chad Martin in real estate in -- in

18   Houston.

19        **Q    How long have you been involved in that?**

20        A    I believe 2016.

21        **Q    You made the investment in 2016?**

22        A    It's an ongoing investment.  So the first

23   investment was 2016, you know, in the number of

24   different companies or entities that held real

25   estate for rehabs or development.

Justin Pannu  10/29/2018

1        Q        And do you have an entity that was created

2    in order to make that investment?

3        A        There was a few entities that were

4    created, yes.

5        Q        What are the names of those entities?

6        A        One of them -- the first was

7    CMSK Ventures.

8        Q        CMSK?

9        A        CMSK Ventures.  The other one is -- and

10   that held the two rehabs.

11               The other one is -- I don't remember the

12   address, but it's a numbered address, Woodthorpe,

13   LLC.

14       Q        Are those --

15       A        And then --

16       Q        Excuse me.

17       A        There is one called JPCM Ventures, LLC.

18               And there are a number of companies on the

19   shelf that we have created that we haven't actually

20   used yet.  So I don't remember what they were, but

21   if you want them I can get them.

22       Q        The CMSK Ventures, is that an LLC as well?

23       A        Yes.

24       Q        And is Chad Martin the other -- the only

25   other member in those three entities?

Justin Pannu  10/29/2018

1      A    No.  It is Cliff Sharp in CMSK.  And

2   Scott Kelly in CMSK.  And it is myself and

3   Chad Martin in Woodthorpe and JPCM.  I believe JPCM

4   now owns Woodthorpe.  And Queenswood.  There's

5   6102 Queenswood, LLC.  That's Chad and I also.

6      Q    **Are all of those Houston-based LLCs?**

7      A    They are.

8      Q    **And are they all involved in real estate?**

9      A    They are all involved in real estate, yes.

10      Q    **Is that purchasing different types of real**

11   **estate as investments?**

12      A    That is -- we -- that is either purchasing

13   them for rehabs or purchasing for the purpose of

14   developing new -- a spec home.

15      Q    **So is the business model that you purchase**

16   **rehab and then sell or is it to purchase rehab and**

17   **rent?**

18      A    At first it was to purchase rehab and

19   sell.  Now it is to purchase lots or homes with --

20   or lots with homes that can be torn down and then

21   redeveloped by a builder that we have.

22      Q    **And are all of the properties being**

23   **purchased in Houston?**

24      A    Yes.

25      Q    **How much money do you have invested in the**

Justin Pannu  10/29/2018

1       A    The note is due and payable as of

2  September 30th.

3       Q    **Are you worried that that debt won't get**

4  **resolved?**

5       A    Yes.

6       Q    I want to learn about EnSource.  Why --

7  what is EnSource?

8       A    EnSource is a company that was formed for

9  the purpose of investing in Hopewell.

10      Q    Who are its members?

11      A    Its members are the Kilimanjaro group,

12  myself, Cliff Sharp and Chad Martin.

13      Q    Was anyone else ever a member?

14      A    No.

15      Q    Kilimanjaro is affiliated with

16  Jerry Johns; is that correct?

17      A    Jerry Johns, yes.

18      Q    What's the affiliation there?

19      A    He's a member of Kilimanjaro.

20      Q    Is he the managing member?

21      A    As far as I know.  I don't know exactly.

22      Q    What does Kilimanjaro do?

23      A    I --

24           MR. SADOCK:  Objection.  Calls for

25  speculation.

Justin Pannu  10/29/2018

1                    THE WITNESS:  I don't know.  I don't know.

2     They're just a group.  They're a member of EnSource.

3     BY MS. SWEENEY:

4          **Q     Did you do any sort of due diligence on**

5     **the members of EnSource before they became members?**

6          A     Other than that they're my friends and

7     that I've known them for quite some time, no.

8          **Q     Jerry Johns is your friend?**

9          A     Yes.

10         **Q     How long have you known him?**

11         A     Over, I think, quite a number of years.

12    No, I couldn't tell you.  I think maybe ten?  I

13    don't know.

14         **Q     Did you ever ask him what Kilimanjaro did?**

15         A     I don't remember what -- I don't remember

16    what he did.  I don't know -- I do have some vague

17    memory that he might have told me they formed

18    Kilimanjaro for the purpose of investing in

19    EnSource.  Or they had that on the shelf.

20         **Q     So you're using the word "they."  Does**

21    **that mean that Kilimanjaro has more than one member?**

22         A     Yes.

23         **Q     Who are the other members of Kilimanjaro?**

24         A     James Dibble.  Jeff Merola.  And there's

25    another member.  I don't know who it is.  And there

Justin Pannu  10/29/2018

1   **Kilimanjaro?**

2        A    I don't know if it was Kilimanjaro at that

3   time.  I don't think it was.

4        **Q    And when you say Jerry's group, do you**

5   **mean the group that includes James Dibble and**

6   **Jeff Merola?**

7        A    Yeah.  And maybe other people that I don't

8   know about.

9        **Q    They were involved in the Fantasy Hub?**

10       A    Yes.

11       **Q    Okay.  When you formed EnSource, was there**

12   **any sort of requirement for someone to become a**

13   **member?**

14            MR. SADOCK:  Objection.  Vague as to time.

15   Ambiguous as to "requirement."

16            THE WITNESS:  Other than we were friends,

17   I don't remember being any requirement.

18   BY MS. SWEENEY:

19       **Q    There wasn't a requirement that somebody**

20   **had a certain amount of net worth or a certain**

21   **amount of money to invest?**

22       A    Oh, yes, I'd asked -- because the Hopewell

23   subscription agreement had asked for a net worth, I

24   had asked if everybody was accredited.  And I got a

25   yes from everybody.

Justin Pannu  10/29/2018

1      Q      Did you ask it just like that, "Are you

2   accredited?"

3      A      Yes.  "Are you accredited?"   That's it.

4      Q      What do you understand accredited to mean?

5             MR. SADOCK:  Objection.  Calls for a legal

6   conclusion.

7             THE WITNESS:  I believe it was over -- I

8   believe it was a SEC definition at the time, and I

9   don't remember what that was, but I just asked if

10  they were accredited.

11  BY MS. SWEENEY:

12     Q      Do you have a appreciation as to what it

13  means?  Does it require a certain net worth?  Does

14  it require --

15     A      Yeah, I didn't ask exactly what -- it just

16  said -- everyone seemed to know what that meant.

17  And they just said yes.  So I -- for me, I don't

18  remember the amounts, but I think it was 200- or

19  250- for the last two years, and a million dollars

20  net of your residence or something like that.

21     Q      Were you an accredited investor?

22     A      I'm an accredited investor.

23     Q      You are now?

24     A      I am now as well.

25     Q      You were in 2016?

Justin Pannu  10/29/2018

1        A     I was -- I was as well in 2016.

2        **Q     And that was based on what?**

3        A     Based on my income in the last two years.

4              MR. SADOCK:  Just objection -- standing

5     objection to legal conclusion for the last four

6     questions.

7              MS. SWEENEY:  What's the objection?

8              MR. SADOCK:  Calls for a legal conclusion.

9     BY MR. SADOCK:

10       **Q     Are you married?**

11       A     No.

12       **Q     Have you been married?**

13       A     No.

14             MR. SADOCK:  Justin, if you could slow

15    down your answers, I could object.

16             THE WITNESS:  Okay.  Sorry.

17    BY MS. SWEENEY:

18       **Q     Did the members of EnSource have regular**

19    **meetings?**

20             MR. SADOCK:  Objection.  Vague as to time.

21             THE WITNESS:  Not regular meetings.

22    BY MS. SWEENEY:

23       **Q     Is EnSource still a going concern as an**

24    **organization?**

25       A     Yes.

Exhibit F
Page 126

Justin Pannu  10/29/2018

1       **Q      Approximately how many meetings per year**

2  **does EnSource hold?**

3       A      They're ad hoc, so I wouldn't be able to

4  say.

5       **Q      You don't have regular annual meetings?**

6       A      It's a formation of friends.  So it's

7  pretty informal.

8       **Q      When you do have meetings, do you have**

9  **minutes of those meetings?**

10       A      No.

11       **Q      Do you do anything to formalize or**

12  **memorialize the meetings or discussions that you**

13  **have?**

14       A      No.

15            MR. SADOCK:  Objection.  Calls for a legal

16  conclusion as -- slow down.

17            THE WITNESS:  I don't believe so, other

18  than a bank account.

19            MR. SADOCK:  Objection.  Calls for a legal

20  conclusion as it pertains to questions on legal

21  formation.

22  BY MS. SWEENEY:

23       **Q      Do you -- does EnSource invest -- have any**

24  **other investments going on right now?**

25       A      No.

Justin Pannu  10/29/2018

1      **Q      Has EnSource made any other investments**
2   **other than the one at issue in this lawsuit?**
3      A      No.
4      **Q      For what reason is EnSource still a valid**
5   **entity?**
6            MR. SADOCK:  Objection.  Calls for a legal
7   conclusion.  Speculation.
8            THE WITNESS:  Why?  I guess for the
9   purpose of this case.
10  BY MS. SWEENEY:
11     **Q      Did you ever have meetings in person?**
12     A      Could you be more specific, like EnSource
13  meetings?
14     **Q      Correct.**
15     A      In person?
16     **Q      Yes.**
17     A      With?
18     **Q      With the members of EnSource.**
19           MR. SADOCK:  Vague as to time.
20  BY MS. SWEENEY:
21     **Q      Did you ever?**
22     A      I don't believe we have because we live --
23  all of us live all over the country.
24     **Q      Do you ever have meetings via Skype or**
25  **video conference?**

Peterson Reporting Video & Litigation Services            46

Justin Pannu  10/29/2018

1     A     No.

2          Q     So is it fair then to say that whenever

3     you do have a meeting, it's over the telephone?

4     A     Yes.

5          Q     And is that something that you do via a

6     conference call?

7          A     I think there was -- I think that we dial

8     each other in just off our iPhones, or when we were

9     during the due diligence period, we may have used

10    Free Count Conference Call.  But I'm not sure.

11         Q     How many times in the approximate two

12    years since EnSource was formed was there a

13    telephone communication that included all the

14    members of EnSource?

15    A     When was the first time?

16         Q     How many times.

17    A     I don't know.  I don't remember.

18         Q     More than ten?

19    A     That included all the members?

20         Q     Correct.

21    A     Every single member?  I don't think there

22    has been that many.

23         Q     Less than five?

24    A     Maybe.

25         Q     So when a decision needs to be made, is

Justin Pannu  10/29/2018

1    **there a formal vote that is taken?**

2        A    I think for a portion of the time after

3    the due diligence period, the members just relied on

4    what I was doing.

5        **Q    What you were doing?**

6        A    Yeah.

7        **Q    So you would make a recommendation to the**

8    **group?**

9        A    I don't even know if it went that far,

10   but...

11       **Q    So is it fair to say that if you took an**

12   **action, that the general practice was that the rest**

13   **of the members would back up whatever action you**

14   **took?**

15            MR. SADOCK:  Objection.  Misstates

16   testimony.  Vague as to time.  Ambiguous as to

17   voting.

18            THE WITNESS:  Yeah, I don't remember like

19   all these details, but there would be some -- during

20   the due diligence period or are you talking about

21   afterwards?

22   BY MS. SWEENEY:

23       **Q    I'm talking about in general.**

24       A    In general.  During the due diligence

25   period, we'd have conference calls with our -- to

Justin Pannu  10/29/2018

1    make a decision with our attorney onboard.   So...

2              MR. SADOCK:   Don't answer anything that

3    involves decision-making with your attorney.

4              THE WITNESS:   Okay.

5    BY MS. SWEENEY:

6         Q     I don't want to hear about the

7    communications with your attorney.

8         A     All right.

9         Q     But do you, as the manager, have a comfort

10   or an understanding that if you make a decision on

11   behalf of EnSource, that you -- that you were

12   allowed to make that decision without soliciting the

13   vote of the rest of the members?

14             MR. SADOCK:   Objection.   Compound.   Calls

15   for a legal conclusion.

16             THE WITNESS:   I think I would inform them

17   by a telephone call what I -- one at a time what I

18   was doing.   So it wouldn't be really a meeting of

19   the members.

20   BY MS. SWEENEY:

21        Q     Did you ever get a EnSource domain

22   registry for your emails?

23        A     No.

24        Q     So we're going to go through some of the

25   emails here today, and I notice that there are --

Justin Pannu  10/29/2018

1   **that a lot of them are gmails or personal email**

2   **accounts.**

3              **Is that the way it still is?**

4       A    Yes, for -- yeah.

5       Q    Who is your lawyer for EnSource?

6       A    Aaron Sadock, Bonnie, and Rich Nawracaj --

7   or I don't know how to pronounce his last name.

8   But --

9       Q    Are there any other lawyers that EnSource

10  has used?

11             MR. SADOCK:  Objection as to -- are you

12  referring to this case?

13             MS. SWEENEY:  I'm just asking if there

14  were other lawyers that have been used.

15             MR. SADOCK:  By EnSource?

16  BY MR. SADOCK:

17      Q    By EnSource.

18      A    Including Houston?

19      Q    Yes.

20      A    So Alan Gerber.  Justin Stoller.  And then

21  there are a couple of, I believe, attorneys that

22  Gerber had used, but I don't remember their names.

23      Q    Mr. Nawracaj, is he somebody that you knew

24  prior to becoming involved with EnSource?

25      A    Yes.

Justin Pannu  10/29/2018

```
 1   State of California      )

 2                            )      ss

 3   County of San Diego      )

 4

 5         I, BRIDGET L. MASTROBATTISTA, CSR No. 7715,

 6   RPR, RMR, CRR, duly licensed and qualified in and

 7   for the State of California, do hereby certify that

 8   there came before me on the 29th day of October,

 9   2018, at 530 B Street, Suite 350, San Diego,

10   California, the following named person, to-wit

11   JUSTIN PANNU, who was duly sworn to testify the

12   truth, the whole truth, and nothing but the truth of

13   knowledge touching and concerning the matters in

14   controversy in this case; and that he was thereupon

15   examined under oath and his examination reduced to

16   typewriting under my supervision; that the

17   deposition is a true record of the testimony given

18   by the witness.

19         I further certify that pursuant to FRCP

20   Rule 30(e)(1) that the signature of the deponent:

21         (x) Was requested by the deponent or a

22   party before the completion of the deposition;

23         ( ) Was not requested by the deponent of a

24   party before the completion of the deposition.

25         I further certify that I am neither
```

Justin Pannu, 10/29/2018

```
 1   attorney or counsel for, nor related to or employed      06:20
 2   by any of the parties to the action in which this
 3   deposition is taken, and further that I am not a
 4   relative, employee of any attorney or counsel
 5   employed by the parties hereto, or financially         06:20
 6   interested in the action.
 7          CERTIFIED TO BY ME on this 12th day of
 8   November, 2018.
 9
10          _____             06:20
11          BRIDGET L. MASTROBATTISTA
            CSR No. 7715, RPR, RMR, CRR
12
13
14
15                                                        06:20
16
17
18
19
20
21
22
23
24
25
```

**307**

Peterson Reporting Video & Litigation Services

Exhibit F
Page 134

**EXHIBIT G**

# HOPEWELL-PILOT PROJECT, LLC

## INITIAL ADDITIONAL EQUITY SHARES

### SUBSCRIPTION AGREEMENT

THE OFFERING OF SECURITIES DESCRIBED HEREIN HAS NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR UNDER ANY SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OR ANY OTHER JURISDICTION. THIS OFFERING IS MADE PURSUANT TO REGULATION S OR REGULATION D UNDER SECTION 4(a)(2) OF SAID ACT, WHICH EXEMPTS FROM SUCH REGISTRATION CERTAIN TRANSACTIONS. FOR THIS REASON, THESE SECURITIES WILL BE SOLD ONLY TO INVESTORS WHO MEET CERTAIN MINIMUM SUITABILITY QUALIFICATIONS DESCRIBED HEREIN.

A PROSPECTIVE INVESTOR SHOULD BE PREPARED TO BEAR THE ECONOMIC RISK OF AN INVESTMENT IN THE COMPANY FOR AN INDEFINITE PERIOD OF TIME BECAUSE THE SHARES OR MEMBER'S INTERESTS HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OR THE LAWS OF ANY OTHER JURISDICTION, AND, THEREFORE, CANNOT BE SOLD UNLESS THEY ARE SUBSEQUENTLY REGISTERED OR AN EXEMPTION FROM REGISTRATION IS AVAILABLE. THERE IS NO OBLIGATION OF THE ISSUER TO REGISTER THE SHARES OR MEMBER'S INTERESTS UNDER THE SECURITIES ACT OR THE LAWS OF ANY OTHER JURISDICTION. TRANSFER OF THE SHARES OR MEMBER'S INTERESTS IS ALSO RESTRICTED BY THE TERMS OF THE AMENDED AND RESTATED COMPANY AGREEMENT RELATING THERETO.

-1-

## HOPEWELL-PILOT PROJECT, LLC

### A TEXAS LIMITED LIABILITY COMPANY

Hopewell-Pilot Project, LLC
c/o Willis Group
1400 Post Oak Blvd. Suite 200
Attention: Tom Tatham
Telephone: (713) 547-4531
E-mail: TTatham@HopewellTX.com

Ladies & Gentlemen:

This SUBSCRIPTION AGREEMENT (the "Agreement") is entered into as of the Closing Date specified on the signature page hereto by and among HOPEWELL-PILOT PROJECT, LLC, a Texas limited liability company (the "Company"), and the investor identified on the signature page hereto (the "Investor"). Investor seeks admission to the Company as a New Member and the acquisition of Shares representing Member's Interest in the Company (the "Interest") in accordance with the Company's Amended and Restated Company Agreement (the "Company Agreement"). Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Company Agreement.

1.    **Capital Commitment.** In accordance with the terms of the Company Agreement and this Agreement, the Investor agrees to contribute to the Company the amount of capital specified under the heading "Capital Commitment" set forth on the signature page hereto, or such lesser amount as the Company shall accept as determined by the Company's Managers in their sole and absolute discretion.

2.    **Adoption.** If the Investor is accepted as a New Member pursuant to paragraph 3 below, the Investor hereby agrees to adhere to and be bound by all terms and provisions of the Company Agreement and to perform all obligations therein imposed upon a New Member with respect to the Interest.

3.    **Acceptance of Subscription; Delivery of Company Agreement.** The Investor understands and agrees that this subscription is made subject to the following terms and conditions:

(a)    The Managers jointly reserve the right to review the suitability of any person desiring to acquire an Interest and, in connection with such review, to waive such suitability standards as to such person as the Managers jointly deem appropriate under applicable law;

(b)    The Managers may accept or reject the Investor's subscription, in whole or in part, and the Investor's subscription shall be deemed to be accepted by the Managers only when both of the Company's Managers have executed Investor's Agreement and Investor has been admitted to the Company as a New Member in accordance with the terms of the Company Agreement;

(c)    The Managers shall have no obligation to accept subscriptions in the order received;

(d)    The Interest to be created on account of this subscription shall be created only in the name of the Investor, and the Investor agrees to comply with the terms of the Company Agreement

-1-

28ML-207663

and to execute any and all further documents necessary in connection with becoming a New Member of the Company;

(e)     The Investor hereby requests and authorizes the Managers to enter Investor's name on the Schedule of Members as holder of the Interest;

(f)     The Investor has consulted to the extent deemed appropriate by the Investor with the Investor's own advisers as to the financial, tax, legal and related matters concerning an investment in Interests and on that basis believes that an investment in the Interests is suitable and appropriate for the Investor;

(g)     The Investor is aware of and understands each of the risks and potential conflicts of interest inherent of an investment in the Company as set forth in the Memorandum;

(h)     The Managers, acting jointly, may transfer proceeds into an account in the name of the Company, and in such event, the Managers shall not be liable for any losses arising from such transfer and shall be fully indemnified by the Company out of the assets of the Company to the fullest extent permitted by law for any and all actions, costs, claims, damages, demands or expenses (including any reasonable attorneys' fees) suffered or incurred by the Managers as a result of such transfer;

(i)     The Investor hereby undertakes in respect of the Interest that the Investor: (i) shall comply with the restrictions on transfer of the Interest contained in the Company Agreement; and (ii) acknowledges and agrees that, in the event that Investor defaults on its capital contribution obligation to the Company, the Interest may be subject to forfeiture and other consequences as specified in the Company Agreement; and

(j)     The Investor hereby declares that the Investor is not in the course of winding up or under liquidation or judicial management.

4.     **Conditions to Closing.** The Company's obligations hereunder are subject to acceptance by the Managers of the Investor's subscription, and to the fulfillment at the time of, or prior to, the Closing Date of each of the following conditions:

(a)     The representations and warranties of the Investor contained in this Agreement shall be true and correct as of the Closing Date; and

(b)     All proceedings in connection with the transactions contemplated hereby and all documents and instruments incident to such transactions shall be satisfactory in substance and form to the Managers, and the Company shall have received all such counterpart originals or certified or other copies of such documents as the Managers may request.

The Investor's obligations hereunder are subject to the fulfillment at the time of, or prior to, the Closing Date of the following condition:  an Amended and Restated Company Agreement of Title Rover, LLC reasonably acceptable to Investor.

5.     **Investor Representations.** In connection with the Investor's acquisition of the Interest as of the Closing Date, the Investor makes the following representations and warranties on which the Managers and the Company are entitled to rely:

(a)     The Interest will be held under the type of ownership identified on the signature page hereto.

-2-

(b)    If the Investor has checked that the Investor is not a "U.S. Person," as such term is used in Internal Revenue Service Form W-9, under the subheading "Tax Jurisdiction" below, the Investor hereby represents, under penalties of perjury, that the Investor (i) is a "non-U.S. Person" (as defined below); (ii) will not transfer or deliver any interest in the Interests except in accordance with the restrictions set forth in the Company Agreement; (iii) will notify the Managers immediately if the Investor becomes a U.S. Person at any time during which the Investor holds or owns any Interests; (iv) is not subscribing on behalf of or funding its Capital Contribution with funds obtained from U.S. Persons; and (v) it was not in the United States at the time the Interests were offered to it, and it was not in the United States at the time such offer was accepted; and (vi) it is not acting on behalf of, and it will not fund any portion of its subscription with assets of, any entity that is a "benefit plan investor" within the meaning of the United States Department of Labor Reg. Section 2510-101.3. For purposes of this section 5(b), a "non-U.S. Person" is an individual who is not a citizen or resident of the United States or a corporation, partnership, estate or trust which is not a U.S. entity. Except for offers and sales to discretionary or similar accounts held for the benefit or account of a non-U.S. person by a U.S. dealer or other professional fiduciary, all offers to sell and offers to buy the Interests were made to or by the Investor while the Investor was outside the United States and at the time that the Investor's order to buy the Interests was originated the Investor was outside the United States.

(c)    The Investor is an "accredited investor" within the meaning of Regulation D of the U.S. Securities Act of 1933, as amended (the "Securities Act") and a "qualified client" as defined in the Investment Advisers Act of 1940, as amended, on the basis identified by checking the box adjacent to the applicable representation on *Schedule 2, Part 1* in the case of an individual investors and on *Schedule 2, Part 2* in the case of entity investors; and in the case of entity investors, represents to such further matters by checking the boxes adjacent to the applicable further representations on *Schedule 2, Part 2* (which checked representations in *Schedule 2, Parts 1 and 2* are hereby incorporated by reference). The Investor (i) is not subject to any of the "Bad Actor" disqualifications (each, a "Disqualification Event") described in Rule 506(d)(1) under the Securities Act and (ii) will, subsequent to the date hereof, notify the Company's Managers of (A) any Disqualification Event relating to the Investor not previously disclosed and (B) any event that would, with the passage of time, become a Disqualification Event relating to the Investor. The Investor is acquiring the Interest solely for the Investor's own account and not directly or indirectly for the account of any other person whatsoever for investment and not with a view to, or for sale in connection with, any distribution of the Interest. The Investor does not have any contract, undertaking or arrangement with any person to sell, transfer or grant a participation to any person with respect to the Interest. The Investor has such knowledge and experience in financial and business matters that the Investor is capable of evaluating the merits and risks of the investment evidenced by the Investor's acquisition of the Interest, and the Investor is able to bear the economic risk of such investment.

(d)    No representations or warranties have been made to the Investor by the Company, the Company's Managers, or any agent thereof, other than as set forth in the Company Agreement, and this Agreement. The Investor has had access to such information concerning the Company as the Investor deems necessary to enable the Investor to make an informed decision concerning the acquisition of the Interest. The Investor has had access to the designated representatives of the Company, its Managers and the opportunity to ask questions of, and receive answers satisfactory to the Investor from, the Managers and or such designated representatives concerning the offering of Interests in the Company generally. The Investor has obtained all additional information requested by the Investor to verify the accuracy of all information furnished in connection with the offering of Interests in the Company.

(e)    The Investor understands that the Interest has not been registered under the Securities Act, or any securities law of any state of the United States or any other jurisdiction in reliance on an exemption for private offerings, and the Investor acknowledges that it has received and carefully

-3-

read the Confidential Private Placement Memorandum of the Company (the "Memorandum"), the Company Agreement and this Agreement. The Investor understands that Doherty & Doherty LLP acts as counsel for the Company, the Company's Managers. No separate counsel has been retained to act on behalf of the Investors. No attorney-client relationship exists with any other person by reason of such person making an investment in the Company. The Investor has received and reviewed all such other information of the Company as the Investor or its representatives and advisers have requested.

(f)     The Investor is aware that the Investor must bear the economic risk of investment in the Interest for an indefinite period of time, possibly until final winding up of the Company, because the Interest has not been registered under the Securities Act, there is currently no public market therefor, and the Interest cannot be sold unless subsequently registered under the Securities Act or an exemption from such registration is available. The Investor understands that the Company is under no obligation, and does not intend, to effect any such registration at any time. The Investor also understands that sales or transfers of the Interest are further restricted by the provisions of the Company Agreement and, as applicable, securities laws of other jurisdictions and the states of the United States, and that the Interest will not be transferred or disposed of except in accordance with the terms of this Agreement, the Company Agreement and registration under the Securities Act, or pursuant to an applicable exemption therefrom.

(g)     The execution and delivery of the Company Agreement and this Agreement, the consummation of the transactions contemplated thereby and the performance of the obligations thereunder will not conflict with or result in any violation of or default under any provision of any other agreement or instrument to which the Investor is a party or any license, permit, franchise, judgment, order, writ or decree, or any statute, rule or regulation, applicable to the Investor.

(h)     The Investor has full power and authority to make the representations referred to in this Agreement, to acquire the Interest pursuant to this Agreement and the Company Agreement and to deliver the Company Agreement and this Agreement. The Company Agreement and this Agreement create valid and binding obligations of the Investor and are enforceable against the Investor in accordance with their terms, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, arrangement, moratorium or other similar laws affecting creditors' rights, and subject to general equity principles and to limitations on availability of equitable relief, including specific performance.

(i)     The Investor confirms that the Investor has been advised to consult with the Investor's attorney regarding legal matters concerning the Company and to consult with independent tax advisers regarding the tax consequences of investing in the Company. The Investor acknowledges that it understands that any anticipated United States federal or state income tax benefits may not be available and, further, may be adversely affected through adoption of new laws or regulations or amendments to existing laws or regulations. The Investor acknowledges and agrees that the Company has made no warranty or assurance regarding the ultimate availability of any tax benefits to the Investor by reason of the Investor's investment in the Company.

(j)     The Investor acknowledges and agrees that (i) information relating to the identity of the Investor shall appear on the Schedule of Members and may appear on the financial statements of the Company, and (ii) other Members shall receive such information and may share such information with their advisors and other parties pursuant to the terms of the Company's Confidentiality Agreement.

(k)     The Investor is knowledgeable and experienced in evaluating investments and experienced in financial and business matters and is capable of evaluating the merits and risks of investing in the Interests. The Investor has evaluated the risks of investing in the Interests, and has determined that the Interests are a suitable investment for the Investor. In evaluating the suitability of an

-4-

investment in the Interests, the Investor has not relied upon any representations or other information (whether oral or written) other than as set forth herein, in the Memorandum, the Company Agreement, the other agreements and independent investigations made by the Investor or representative(s) of the Investor. With respect to its investment in the Company, the Investor is not relying upon any other information, representation or warranty by the Company, the Managers of the Company or any designated representatives of the Company.

       (l)    The Investor is aware and acknowledges that (i) the Company has limited or no significant operating history; (ii) there is no assurance of any income from an investment in the Company; (iii) any federal and/or state income tax benefits which may be available to the Investor may be lost through the adoption of new laws or regulations or changes to existing laws and regulations or differing interpretations of existing laws and regulations, in certain circumstances with retroactive effect; and (iv) the Investor, in making this investment, is relying, if at all, solely upon the advice of such Investor's personal tax advisor with respect to the tax aspects of an investment in the Company.

      6.    **Company's and Manager's Representations.** The Company and the Company's Managers make the following representations and warranties on which the Investor and its counsel are entitled to rely:

        (a)    The execution and delivery of the Company Agreement and this Agreement, the consummation of the transactions contemplated thereby and the performance of the obligations thereunder will not conflict with or result in any violation of or default under any provision of any other agreement or instrument to which the Company is a party or any judgment, order, writ or decree applicable to the Company.

        (b)    No suit, action, claim, investigation or other proceeding is pending or, to the best of the Company's or the Manager's knowledge, is threatened in writing against the Company which questions the validity of the Company Agreement or this Agreement or any action taken or to be taken pursuant to the Company Agreement or this Agreement, or which could otherwise have a material adverse effect on the Company.

        (c)    The Company Agreement and this Agreement create valid and binding obligations of the Company and are enforceable against the Company in accordance with their terms.

      7.    **Trustee, Agent, Representative or Nominee.** If the natural person or entity completing this Agreement is acting as trustee, agent, representative or nominee for the Investor (such person or entity, the "Agent"), the Agent agrees that the representations, warranties and agreements made herein are made by such Agent (a) in respect of such Agent and (b) in respect of the underlying subscriber on whose behalf the Agent is acting. The Agent represents and warrants that such Agent has all requisite power and authority to execute this Agreement and perform the obligations under this Agreement on the underlying Investor's behalf. The Agent agrees to provide any additional documents and information that the Company reasonably requests relating to itself or the underlying Investor.

      8.    **Survival of Agreements, Representations and Warranties; Indemnification.**

        (a)    All agreements, representations and warranties contained herein or made in writing by or on behalf of the Investor, the Company or the Managers of the Company in connection with the transactions contemplated by this Agreement shall survive the execution of this Agreement and the Company Agreement, any investigation at any time made by the Investor, the Company or the Managers of Company or on behalf of any of them and the sale and acquisition of the Interest and payment therefor.

-5-

(b)     The Investor acknowledges that the Investor understands the meaning and legal consequences of the representations and warranties made by the Investor herein. Such representations and warranties are complete and accurate, shall be complete and accurate as of the Closing Date and may be relied upon by the Company's Managers and the Company. If there should be any material change in any of the representations or warranties or other information regarding the Investor set forth herein, including at any time following the Closing Date, the Investor agrees to notify the Company's Managers in writing as promptly as reasonably practicable.

(c)     The Investor agrees that the foregoing representations and warranties, and all other information regarding the Investor set forth herein, may be used as a defense in any actions relating to the Company, the Managers of the Company or the private placement of the Interest, and that it is only on the basis of such representations, warranties and other information that the Company's Managers may be willing to accept this Agreement on behalf of the Company. The Investor acknowledges that the Company, and the Managers of the Company shall rely on such information, representations and warranties on an ongoing basis.

9.     **Binding Effect.** This Agreement shall be binding upon the Investor and the heirs, personal representatives, successors and assigns of the Investor. The Investor agrees that neither this Agreement nor any rights which may accrue to the Investor hereunder may be transferred or assigned without the consent of the Company's Managers, which may be granted or withheld in its sole discretion or otherwise as provided in the Company Agreement. This Agreement shall survive the admission of the Investor to the Company and shall, if the Investor consists of more than one person, be the joint and several obligations of all such persons.

10.     **Severability.** If any provision of this Agreement is held to be invalid or unenforceable in any jurisdiction, such provision shall be deemed modified to the minimum extent necessary so that such provision, as so modified, shall no longer be held to be invalid or unenforceable. Any such modification, invalidity or unenforceability shall be strictly limited both to such provision and to such jurisdiction, and in each case to no other. Furthermore, in the event of any such modification, invalidity or unenforceability, this Agreement shall be interpreted so as to achieve the intent expressed herein to the greatest extent possible in the jurisdiction in question and otherwise as set forth herein.

11.     **Confidentiality.** The Investor has carefully read the Company's Confidentiality Agreement and by execution thereof understands, including without limitation the confidentiality and non-solicitation undertakings set forth therein which shall apply to the Investor, whether or not this Agreement is accepted by the Company.

12.     **Counterparts.** his Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

13.     **Amendments.** Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated orally, but only with the written consent of the Investor and the Company.

14.     **Governing Law.** The interpretation and enforceability of this Agreement and the rights and liabilities of the parties hereto shall be governed by the laws of the State of Texas. To the extent permitted by the Act and other applicable law, the provisions of this Agreement shall supersede any contrary provisions of the Act or other applicable law.

-6-

THE UNDERSIGNED INVESTOR HEREBY REPRESENTS THAT (I) THE UNDERSIGNED INVESTOR HAS CAREFULLY READ AND IS FAMILIAR WITH THIS AGREEMENT AND THE COMPANY AGREEMENT, (II) THE INFORMATION CONTAINED HEREIN IS COMPLETE AND ACCURATE AND MAY BE RELIED UPON, AND (III) THE EXECUTION OF THE FOLLOWING SIGNATURE PAGE SHALL CONSTITUTE THE EXECUTION OF THIS AGREEMENT AND THE COMPANY AGREEMENT BY THE INVESTOR IN THE EVENT THAT THE INVESTOR IS ADMITTED TO THE COMPANY AS A NEW MEMBER.

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement as of this 29th day of September, 2016.

THE COMPANY:

HOPEWELL-PILOT PROJECT, LLC

By: THOMAS P. TATHAM
Its:  Manager

By: MARK A. WILLIS
Its:  Manager

INDIVIDUAL INVESTOR:

_____
(Signature)

_____
(Signature)

_____
(Print Name As It Will Be Registered With This Investment)

ENTITY INVESTOR:
EnSource Investments LLC

By: _____

Name: _____JUSTIN PANNU_____

Title: _____MANAGER_____

Closing Date:
(To be completed by the Company)

Please provide the following information:

☐ Individual
☐ Community Property
☐ Partnership
☐ Limited Liability Company

Capital Commitment: $530,000.00*
*$205,000.00 through exercise of convertible promissory note; $20,000 on or before September 30, 2016; $205,000 on or before October 28, 2016; $100,000 on or before December 31, 2016.

☐ Irrevocable Trust
☐ Living Trust or Revocable Trust w/ ___ grantors.
☐ Corporation
☐ Other: _____.

If the Investor is an entity, as of the Closing Date, there are four (4) holders of its outstanding securities (other than short-term paper) (*please fill in the blank specifying the number of beneficial owners*).

-7-

WII-00080942
Exhibit 6
Page 143

Primary contact person:___Justin Pannu_____

Telephone Number:_____(619) 318-2607_____ Fax Number:_____

E-mail Address:_____justinpannu1503@gmail.com_____

    ■   Social Security or Taxpayer I.D. Number___81 - 3773197___

    ☐   U.S. Investor / U.S. Person       ☐  Non-U.S. Investor / Foreign Person

    ☐   Exempt under Code Section 401(a)    ☐  Exempt under Code Section 892

    ☐   Exempt under Code Section 501(c)3

Residential/Business Address (Domicile for Blue Sky filing purposes):

    700 W. E Street, Unit 3804
    San Diego, California 92101

Registered Address (if applicable):

Mailing Address *(select one)*:

[X]    Please use the Subscriber's Residential/Business Address as the Mailing Address

[ ]    Please use the Subscriber's Registered Address as the Mailing Address

[ ]    Please use the following as the Subscriber's Mailing Address:

**METHOD OF DELIVERY OF ACCOUNT COMMUNICATIONS.** Account Communications may be delivered via the e-mail address provided on this page. Should this means of transmission be unacceptable, Account Communications will be delivered via facsimile or physical delivery if the following box is checked:

☐ E-mail transmission is declined, please send Account Communications via facsimile or physical delivery

**For all account communications, please send via e-mail as well as physical delivery.**

-8-

IN WITNESS WHEREOF, this Amended and Restated Company Agreement has been entered into by the parties as of this 29th day of September, 2016.

THE COMPANY

HOPEWELL-PILOT PROJECT, LLC

By: _____
    MANAGER

By: _____
    MANAGER

NEW MEMBERS

INDIVIDUAL:

By: _____

By: _____

Name: _____

ENTITY:

EnSource Investments LLC

By: _____

Name: JUSTIN PANNU

Title: MANAGER

*Signature Page to the Amended and Restated Company Agreement of
Hopewell-Pilot Project, LLC*

ANNEX 1

PART 1

**Individual Investor Representations.**

All defined terms have the meanings provided to them in the Agreement; the following representations are incorporated by reference into the Agreement.

The Investor makes the following representations regarding the Investor's status as an Accredited Investor and a Qualified Client *by checking the box adjacent to each representation below*:

☐   (a)   <mark>Accredited Investor</mark>:   The Investor is an individual and has a net worth, either individually or upon a joint basis with the Investor's spouse, that exceeds $1,000,000, excluding the net equity value of such individual's primary residence, if any, but including as a liability the amount by which any indebtedness secured by such residence exceeds the value of such residence (within the meaning of such terms as used in Rule 501 under the Securities Act),[1] *or* has had an individual income in excess of $200,000 for each of the two most recent years, or a joint income with the Investor's spouse in excess of $300,000 in each of those years, and has a reasonable expectation of reaching the same income level in the current year.

☐   (b)   <mark>Qualified Client</mark>:   The Investor is an individual that (i) has a net worth, together with assets held jointly with the Investor's spouse, of more than $2,000,000, excluding the net equity value of such individual's primary residence, if any, but including as a liability the amount by which any indebtedness secured by such residence exceeds the value of such residence (within the meaning of such terms as used in Rule 501 under the Securities Act),[2] or (ii) is a Qualified Purchaser.

---

[1] Any indebtedness secured by such primary residence that the Investor incurred within the 60 day period preceding the date of the sale of securities pursuant to this Agreement (other than indebtedness incurred as a result of the acquisition of the primary residence) will be included as a liability for purposes of this calculation, even if the total amount of indebtedness securing such primary residence does not exceed the value of such residence.

WIL 00090945
Exhibit 8
Page 146

ANNEX 1

PART 2

**Entity Investor Representations.**

All defined terms have the meanings provided to them in the Agreement; the following representations are incorporated by reference into the Agreement.

The Investor makes the representations regarding the Investor's status as an Accredited Investor and a Qualified Client *by checking the box adjacent to the each representation below*:

**ACCREDITED INVESTOR REPRESENTATION** (*check the box adjacent to at least one applicable representation below*):

☐ (i) The Investor is a corporation, partnership, business trust or limited liability company, not formed for the purpose of acquiring an Interest, or an organization described in section 501(c)(3) of the Code, in each case with total assets in excess of $5,000,000.

▨ (ii) The Investor is an entity in which all of the equity owners (or *a living trust or other revocable trust* in which all of the grantors to such trust) qualify under Annex 1, Part 1, clause (a) or (b), or clause (i), (iii), (iv), (v) or this clause (ii) of this Annex 1, Part 2.

☐ (iii) The Investor is an employee benefit plan and *either* all investment decisions are made by a bank, savings and loan association, insurance company, or registered investment advisor, *or* the Investor has total assets in excess of $5,000,000 *or*, if such plan is a self-directed plan, investment decisions are made solely by persons who are Accredited Investors.

☐ (iv) The Investor is an *irrevocable* trust with total assets in excess of $5,000,000 whose acquisition is directed by a person with such knowledge and experience in financial and business matters that such person is capable of evaluating the merits and risks of the prospective investment.

☐ (v) The Investor is a bank, insurance company, investment company registered under the Investment Company Act, a broker or dealer registered pursuant to Section 15 of the United States Securities Exchange Act of 1934, as amended, a business development company, a Small Business Investment Company licensed by the United States Small Business Administration, a plan with total assets in excess of $5,000,000 established and maintained by a state for the benefit of its employees, or a private business development company as defined in Section 202(a)(22) of the Investment Advisers Act.

☐ (vi) The Investor cannot make any of the representations set forth in clauses (i) through (v) above.

-1-

QUALIFIED CLIENT REPRESENTATION (*check the box adjacent to at least one applicable representation below*):

☐   (i)     The Investor is a corporation, partnership, association, joint-stock company, trust, or any organized group of persons, whether incorporated or not, that has a net worth of more than $2,000,000. *If the Investor belongs to this investor category, please either check clause (iii) below, if applicable, or affirmatively deny the applicability of clause (iii) below.*

☒   (ii)    The Investor is a corporation, partnership, association, joint stock company, trust, or any organized group of persons, whether incorporated or not, that is a Qualified Purchaser. *If the Investor belongs to this investor category, please either check clause (iii) below, if applicable, or affirmatively deny the applicability of clause (iii) below.*

☐   (iii)   The Investor is a corporation, partnership, association, joint-stock company, trust, or any organized group of persons, whether incorporated or not, that is an Excluded Company, and all of the Investor's equity owners (and all of their respective equity owners) are Qualified Clients.

☒        The Investor has checked either or both of clauses (i) or (ii) above and affirmatively denies applicability of this clause (iii).

☐   (vi)   The Investor cannot make any of the representations set forth in clauses (i) through (iii) above.

## FURTHER ENTITY INVESTOR REPRESENTATIONS

The Investor makes the following representations *by checking the box adjacent to the correct response to each representation below*:

| | | |
|---|---|---|
| ☒ True   ☐ False | The Investor is neither an "investment company" under the Investment Company Act nor does the Investor rely upon the exclusions from the definition of "investment company" provided for in Section 3(c)(1) or 3(c)(7) of the Investment Company Act. |
| ☐ True   ☒ False | The Investor was not organized for the purpose of acquiring the Interest. |
| ☒ True   ☐ False | The Investor has made investments prior to the date hereof or intends to make investments in the near future and each beneficial owner of interests in the Investor has and will share in the same proportion to each such investment. |
| ☐ True   ☒ False | The Investor's investment in the Company will not constitute more than 40% of the assets of the Investor (including any capital commitments that may be drawn upon demand by the Investor). |
| ☒ True   ☐ False | The governing documents of the Investor require that each beneficial owner of the Investor, including, but not limited to, shareholders, partners and beneficiaries, participate through their interest in the Investor in all of the Investor's investments and that the profits and losses from each such investment are shared among such beneficial owners in the same proportions as all other investments of the Investor. No such beneficial owner may vary the Investor's share of the profits and losses or the amount of the Investor's contribution for any investment made by the Investor. |

-2-

If any of the above statements are marked "False," then the Investor will have, as of the Closing Date, four (4) holders of its outstanding securities (other than short-term paper) (*please fill in the blank specifying the number of beneficial owners*).

The Investor is:

☐ True ☒ False (1) an "employee welfare benefit plan" or an "employee pension benefit plan" as defined in sections 3(1) and 3(2), respectively, of ERISA; or

☐ True ☒ False (2) a plan described in section 4975(e)(1) of the Code; or

☐ True ☒ False (3) an entity that is deemed to be a "benefit plan investor" under the DOL Regulations because all or part of its underlying assets include "plan assets" by reason of a plan's investment in the entity (including, by way of example only, a partnership not qualifying as an operating company within the meaning of the DOL Regulations, which is 25% or more owned by entities described in (1) or (2) above); or

☐ True ☒ False (4) subject to any rules or regulations similar to the fiduciary provisions of ERISA and/or the prohibited transaction provisions of Section 4975 of the Code.

If clause (3) above is marked "True," please provide the percentage that the Investor's "plan assets" holdings bear to its aggregate asset holdings (based upon value as of the Closing Date): _____% (the "Plan Asset Percentage").

☐ True ☒ False   The Investor is a "private foundation" as described in Section 509 of the Code.

☐ True ☒ False   The Investor is subject to the Bank Holding Company Act of 1956, as amended.

☒ True ☐ False   To the best of the Investor's knowledge, the Investor does not control nor is it controlled by or under common control with, any other Investor.

*Please check the box next to each applicable statement and provide appropriate information in response to each such statement:*

☐ True ☒ False   The Investor is subject to federal or state freedom of information (FOIA) statutes or other similar statutes in each of the following jurisdictions. (*If a similar statute is applicable, please specify the applicable statute along with the applicable jurisdiction, to the extent known):*

_____

☐ True ☒ False   One or more of the Investor's beneficial owners is subject to federal or state FOIA statutes or other similar statutes in each of the following jurisdictions. (*If a similar statute is applicable, please specify the applicable statute along with the applicable jurisdiction, to the extent known):*

_____

-3-

☐ True   ☒ False   The Investor is a public agency, department, office or pension plan. *(Please specify type and applicable jurisdiction.)*:

_____

☐ True   ☒ False   One or more of the Investor's beneficial owners is a public agency, department, office or pension plan. *(If known, please specify type of owner and applicable jurisdiction below.)*:

_____

-4-

**EXHIBIT H**

**To:**     Justin Pannu[justinpannu1503@gmail.com]
**Cc:**     Cliff Sharp[ecsharp111@gmail.com]; jerry johns[jerry.johns@intelometry.com]; Jeff
Merola[jeff.merola@intelometry.com]; Martin, Chad[ChadMartin@bgcpartners.com]; Mark
Willis[Mark@willisgroupus.com]; Pat Doherty[Pat@doherty-law.com]; Richard E. Nawracaj
(rich.nawracaj@nawracaj-law.com)[rich.nawracaj@nawracaj-law.com]
**From:**   Tom Tatham
**Sent:**    Fri 9/30/2016 2:14:40 PM
**Subject:** Re: EnSource Subscription Agreement to Hopewell Pilot-Project LLC
Hopewell -Pilot Project-Initial Additional Equity Shares-Subscription Agrmt-EnSource-9.29.2016.pdf
Schedule A Third Amendment 9 29 2016 w addition of EnSource Investments, LLC.docx
Third_Amended_Restated Company Agreement.signature page - EnSource Investment, LLC 9-29-16.doc

Hi Justin,
Attached is the <mark>fully executed Subscription Agreement for your files.  I</mark>have also attached a revised SCHEDULE A to
the Third Amended and Restated Company Agreement which reflects the addition of EnSource Investments, LLC.
 Please execute, scan and return the MEMBERS SIGNATURE PAGE and I will circulate the revised SCHEDULE A to all
Members.
Please send the initial payment by wire transfer as per the Subscription Agreement to:  Amegy Bank, N.A.; ABA#
113011258; Account #:  5793018168; Account Holder:  Hopewell-Pilot Project, LLC; Reference:  for the benefit of
EnSource Investments, LLC as per Subscription Agreement dated September 29, 2016.
Thanks for your help!
Have a good weekend,
Tom


**From:** Tom Tatham <tpt@lngpartners.com>
**Date:** Friday, September 30, 2016 at 9:18 AM
**To:** Justin Pannu <justinpannu1503@gmail.com>
**Cc:** Cliff Sharp <ecsharp111@gmail.com>, jerry johns <jerry.johns@intelometry.com>, Jeff Merola
<jeff.merola@intelometry.com>, "Martin, Chad" <ChadMartin@bgcpartners.com>, Mark Willis
<Mark@willisgroupus.com>, Pat Doherty <Pat@Doherty-Law.com>, "Richard E. Nawracaj
(rich.nawracaj@nawracaj-law.com)" <rich.nawracaj@nawracaj-law.com>
**Subject:** Re: EnSource Subscription Agreement to Hopewell Pilot-Project LLC

Hi Justin,
Thanks!  I will have the fully executed subscription back to you this morning when Mark gets in together with wire
transfer instructions.  It looks like the third time will finally be the charm!
Talk soon,
Tom


**From:** Justin Pannu <justinpannu1503@gmail.com>
**Date:** Thursday, September 29, 2016 at 9:24 PM
**To:** Tom Tatham <tpt@lngpartners.com>
**Cc:** Cliff Sharp <ecsharp111@gmail.com>, jerry johns <jerry.johns@intelometry.com>, Jeff Merola
<jeff.merola@intelometry.com>, "Martin, Chad" <ChadMartin@bgcpartners.com>, Mark Willis
<Mark@willisgroupus.com>, Pat Doherty <Pat@Doherty-Law.com>, "Richard E. Nawracaj
(rich.nawracaj@nawracaj-law.com)" <rich.nawracaj@nawracaj-law.com>
**Subject:** EnSource Subscription Agreement to Hopewell Pilot-Project LLC

Hi Tom,
<mark>Please see attached Subscription Agreement reflecting the total new investment of $530,000.</mark> Please send us a fully
executed copy of the Subscription Agreement by tomorrow morning and <mark>we will transfer the next payment of
$20,000 by COB tomorrow.</mark>

EXHIBIT
34
Paino
PENGAD 800-631-6989
Exhibit H
Page 152  WIL_00000933

Hopefully third time is the charm!

Thanks!

Justin

Exhibit H
Page 153 WIL_00000934

# HOPEWELL-PILOT PROJECT, LLC

## INITIAL ADDITIONAL EQUITY SHARES

### SUBSCRIPTION AGREEMENT

THE OFFERING OF SECURITIES DESCRIBED HEREIN HAS NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR UNDER ANY SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OR ANY OTHER JURISDICTION. THIS OFFERING IS MADE PURSUANT TO REGULATION S OR REGULATION D UNDER SECTION 4(a)(2) OF SAID ACT, WHICH EXEMPTS FROM SUCH REGISTRATION CERTAIN TRANSACTIONS. FOR THIS REASON, THESE SECURITIES WILL BE SOLD ONLY TO INVESTORS WHO MEET CERTAIN MINIMUM SUITABILITY QUALIFICATIONS DESCRIBED HEREIN.

A PROSPECTIVE INVESTOR SHOULD BE PREPARED TO BEAR THE ECONOMIC RISK OF AN INVESTMENT IN THE COMPANY FOR AN INDEFINITE PERIOD OF TIME BECAUSE THE SHARES OR MEMBER'S INTERESTS HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OR THE LAWS OF ANY OTHER JURISDICTION, AND, THEREFORE, CANNOT BE SOLD UNLESS THEY ARE SUBSEQUENTLY REGISTERED OR AN EXEMPTION FROM REGISTRATION IS AVAILABLE. THERE IS NO OBLIGATION OF THE ISSUER TO REGISTER THE SHARES OR MEMBER'S INTERESTS UNDER THE SECURITIES ACT OR THE LAWS OF ANY OTHER JURISDICTION. TRANSFER OF THE SHARES OR MEMBER'S INTERESTS IS ALSO RESTRICTED BY THE TERMS OF THE AMENDED AND RESTATED COMPANY AGREEMENT RELATING THERETO.

-1-

## HOPEWELL-PILOT PROJECT, LLC

### A TEXAS LIMITED LIABILITY COMPANY

Hopewell-Pilot Project, LLC
c/o Willis Group
1400 Post Oak Blvd. Suite 200
Attention: Tom Tatham
Telephone: (713) 547-4531
E-mail: TTatham@HopewellTX.com

Ladies & Gentlemen:

This SUBSCRIPTION AGREEMENT (the "Agreement") is entered into as of the Closing Date specified on the signature page hereto by and among HOPEWELL-PILOT PROJECT, LLC, a Texas limited liability company (the "Company"), and the investor identified on the signature page hereto (the "Investor"). Investor seeks admission to the Company as a New Member and the acquisition of Shares representing Member's Interest in the Company (the "Interest") in accordance with the Company's Amended and Restated Company Agreement (the "Company Agreement"). Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Company Agreement.

**1.     Capital Commitment.** In accordance with the terms of the Company Agreement and this Agreement, the Investor agrees to contribute to the Company the amount of capital specified under the heading "Capital Commitment" set forth on the signature page hereto, or such lesser amount as the Company shall accept as determined by the Company's Managers in their sole and absolute discretion.

**2.     Adoption.** If the Investor is accepted as a New Member pursuant to paragraph 3 below, the Investor hereby agrees to adhere to and be bound by all terms and provisions of the Company Agreement and to perform all obligations therein imposed upon a New Member with respect to the Interest.

**3.     Acceptance of Subscription; Delivery of Company Agreement.** The Investor understands and agrees that this subscription is made subject to the following terms and conditions:

**(a)**     The Managers jointly reserve the right to review the suitability of any person desiring to acquire an Interest and, in connection with such review, to waive such suitability standards as to such person as the Managers jointly deem appropriate under applicable law;

**(b)**     The Managers may accept or reject the Investor's subscription, in whole or in part, and the Investor's subscription shall be deemed to be accepted by the Managers only when both of the Company's Managers have executed Investor's Agreement and Investor has been admitted to the Company as a New Member in accordance with the terms of the Company Agreement;

**(c)**     The Managers shall have no obligation to accept subscriptions in the order received;

**(d)**     The Interest to be created on account of this subscription shall be created only in the name of the Investor, and the Investor agrees to comply with the terms of the Company Agreement

-1-

28ML-207663

and to execute any and all further documents necessary in connection with becoming a New Member of the Company;

(e) The Investor hereby requests and authorizes the Managers to enter Investor's name on the Schedule of Members as holder of the Interest;

(f) The Investor has consulted to the extent deemed appropriate by the Investor with the Investor's own advisers as to the financial, tax, legal and related matters concerning an investment in Interests and on that basis believes that an investment in the Interests is suitable and appropriate for the Investor;

(g) The Investor is aware of and understands each of the risks and potential conflicts of interest inherent of an investment in the Company as set forth in the Memorandum;

(h) The Managers, acting jointly, may transfer proceeds into an account in the name of the Company, and in such event, the Managers shall not be liable for any losses arising from such transfer and shall be fully indemnified by the Company out of the assets of the Company to the fullest extent permitted by law for any and all actions, costs, claims, damages, demands or expenses (including any reasonable attorneys' fees) suffered or incurred by the Managers as a result of such transfer;

(i) The Investor hereby undertakes in respect of the Interest that the Investor: (i) shall comply with the restrictions on transfer of the Interest contained in the Company Agreement; and (ii) acknowledges and agrees that, in the event that Investor defaults on its capital contribution obligation to the Company, the Interest may be subject to forfeiture and other consequences as specified in the Company Agreement; and

(j) The Investor hereby declares that the Investor is not in the course of winding up or under liquidation or judicial management.

4. **Conditions to Closing.** The Company's obligations hereunder are subject to acceptance by the Managers of the Investor's subscription, and to the fulfillment at the time of, or prior to, the Closing Date of each of the following conditions:

(a) The representations and warranties of the Investor contained in this Agreement shall be true and correct as of the Closing Date; and

(b) All proceedings in connection with the transactions contemplated hereby and all documents and instruments incident to such transactions shall be satisfactory in substance and form to the Managers, and the Company shall have received all such counterpart originals or certified or other copies of such documents as the Managers may request.

The Investor's obligations hereunder are subject to the fulfillment at the time of, or prior to, the Closing Date of the following condition: an Amended and Restated Company Agreement of Title Rover, LLC reasonably acceptable to Investor.

5. **Investor Representations.** In connection with the Investor's acquisition of the Interest as of the Closing Date, the Investor makes the following representations and warranties on which the Managers and the Company are entitled to rely:

(a) The Interest will be held under the type of ownership identified on the signature page hereto.

-2-

Exhibit H
WIL0000937

**(b)** If the Investor has checked that the Investor is not a "U.S. Person," as such term is used in Internal Revenue Service Form W-9, under the subheading "Tax Jurisdiction" below, the Investor hereby represents, under penalties of perjury, that the Investor (i) is a "non-U.S. Person" (as defined below); (ii) will not transfer or deliver any interest in the Interests except in accordance with the restrictions set forth in the Company Agreement; (iii) will notify the Managers immediately if the Investor becomes a U.S. Person at any time during which the Investor holds or owns any Interests; (iv) is not subscribing on behalf of or funding its Capital Contribution with funds obtained from U.S. Persons; and (v) it was not in the United States at the time that the Interests were offered to it, and it was not in the United States at the time such offer was accepted; and (vi) it is not acting on behalf of, and it will not fund any portion of its subscription with assets of, any entity that is a "benefit plan investor" within the meaning of the United States Department of Labor Reg. Section 2510-101.3. For purposes of this section 5(b), a "non-U.S. Person" is an individual who is not a citizen or resident of the United States or a corporation, partnership, estate or trust which is not a U.S. entity. Except for offers and sales to discretionary or similar accounts held for the benefit or account of a non-U.S. person by a U.S. dealer or other professional fiduciary, all offers to sell and offers to buy the Interests were made to or by the Investor while the Investor was outside the United States and at the time that the Investor's order to buy the Interests was originated the Investor was outside the United States.

**(c)** The Investor is an "accredited investor" within the meaning of Regulation D of the U.S. Securities Act of 1933, as amended (the "Securities Act") and a "qualified client" as defined in the Investment Advisers Act of 1940, as amended, on the basis identified by checking the box adjacent to the applicable representation on *Schedule 2, Part 1* in the case of an individual investors and on *Schedule 2, Part 2* in the case of entity investors; and in the case of entity investors, represents to such further matters by checking the boxes adjacent to the applicable further representations on *Schedule 2, Part 2* (which checked representations in *Schedule 2, Parts 1 and 2* are hereby incorporated by reference). The Investor (i) is not subject to any of the "Bad Actor" disqualifications (each, a "Disqualification Event") described in Rule 506(d)(1) under the Securities Act and (ii) will, subsequent to the date hereof, notify the Company's Managers of (A) any Disqualification Event relating to the Investor not previously disclosed and (B) any event that would, with the passage of time, become a Disqualification Event relating to the Investor. The Investor is acquiring the Interest solely for the Investor's own account and not directly or indirectly for the account of any other person whatsoever for investment and not with a view to, or for sale in connection with, any distribution of the Interest. The Investor does not have any contract, undertaking or arrangement with any person to sell, transfer or grant a participation to any person with respect to the Interest. The Investor has such knowledge and experience in financial and business matters that the Investor is capable of evaluating the merits and risks of the investment evidenced by the Investor's acquisition of the Interest, and the Investor is able to bear the economic risk of such investment.

**(d)** No representations or warranties have been made to the Investor by the Company, the Company's Managers, or any agent thereof, other than as set forth in the Company Agreement, and this Agreement. The Investor has had access to such information concerning the Company as the Investor deems necessary to enable the Investor to make an informed decision concerning the acquisition of the Interest. The Investor has had access to the designated representatives of the Company, its Managers and the opportunity to ask questions of, and receive answers satisfactory to the Investor from, the Managers and or such designated representatives concerning the offering of Interests in the Company generally. The Investor has obtained all additional information requested by the Investor to verify the accuracy of all information furnished in connection with the offering of Interests in the Company.

**(e)** The Investor understands that the Interest has not been registered under the Securities Act, or any securities law of any state of the United States or any other jurisdiction in reliance on an exemption for private offerings, and the Investor acknowledges that it has received and carefully

-3-

Exhibit H
WILP-00000938

read the Confidential Private Placement Memorandum of the Company (the "Memorandum"), the Company Agreement and this Agreement. The Investor understands that Doherty & Doherty LLP acts as counsel for the Company, the Company's Managers. (No separate counsel has been retained to act on behalf of the Investors.) No attorney-client relationship exists with any other person by reason of such person making an investment in the Company. The Investor has received and reviewed all such other information of the Company as the Investor or its representatives and advisers have requested.

(f)     The Investor is aware that the Investor must bear the economic risk of investment in the Interest for an indefinite period of time, possibly until final winding up of the Company, because the Interest has not been registered under the Securities Act, there is currently no public market therefor, and the Interest cannot be sold unless subsequently registered under the Securities Act or an exemption from such registration is available. The Investor understands that the Company is under no obligation, and does not intend, to effect any such registration at any time. The Investor also understands that sales or transfers of the Interest are further restricted by the provisions of the Company Agreement and, as applicable, securities laws of other jurisdictions and the states of the United States, and that the Interest will not be transferred or disposed of except in accordance with the terms of this Agreement, the Company Agreement and registration under the Securities Act, or pursuant to an applicable exemption therefrom.

(g)     The execution and delivery of the Company Agreement and this Agreement, the consummation of the transactions contemplated thereby and the performance of the obligations thereunder will not conflict with or result in any violation of or default under any provision of any other agreement or instrument to which the Investor is a party or any license, permit, franchise, judgment, order, writ or decree, or any statute, rule or regulation, applicable to the Investor.

(h)     The Investor has full power and authority to make the representations referred to in this Agreement, to acquire the Interest pursuant to this Agreement and the Company Agreement and to deliver the Company Agreement and this Agreement. The Company Agreement and this Agreement create valid and binding obligations of the Investor and are enforceable against the Investor in accordance with their terms, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, arrangement, moratorium or other similar laws affecting creditors' rights, and subject to general equity principles and to limitations on availability of equitable relief, including specific performance.

(i)     The Investor confirms that the Investor has been advised to consult with the Investor's attorney regarding legal matters concerning the Company and to consult with independent tax advisers regarding the tax consequences of investing in the Company. The Investor acknowledges that it understands that any anticipated United States federal or state income tax benefits may not be available and, further, may be adversely affected through adoption of new laws or regulations or amendments to existing laws or regulations. The Investor acknowledges and agrees that the Company has made no warranty or assurance regarding the ultimate availability of any tax benefits to the Investor by reason of the Investor's investment in the Company.

(j)     The Investor acknowledges and agrees that (i) information relating to the identity of the Investor shall appear on the Schedule of Members and may appear on the financial statements of the Company, and (ii) other Members shall receive such information and may share such information with their advisors and other parties pursuant to the terms of the Company's Confidentiality Agreement.

(k)     The Investor is knowledgeable and experienced in evaluating investments and experienced in financial and business matters and is capable of evaluating the merits and risks of investing in the Interests. The Investor has evaluated the risks of investing in the Interests, and has determined that the Interests are a suitable investment for the Investor. In evaluating the suitability of an

-4-

investment in the Interests, the Investor has not relied upon any representations or other information (whether oral or written) other than as set forth herein, in the Memorandum, the Company Agreement, the other agreements and independent investigations made by the Investor or representative(s) of the Investor. With respect to its investment in the Company, the Investor is not relying upon any other information, representation or warranty by the Company, the Managers of the Company or any designated representatives of the Company.

       **(l)**    The Investor is aware and acknowledges that (i) the Company has limited or no significant operating history; (ii) there is no assurance of any income from an investment in the Company; (iii) any federal and/or state income tax benefits which may be available to the Investor may be lost through the adoption of new laws or regulations or changes to existing laws and regulations or differing interpretations of existing laws and regulations, in certain circumstances with retroactive effect; and (iv) the Investor, in making this investment, is relying, if at all, solely upon the advice of such Investor's personal tax advisor with respect to the tax aspects of an investment in the Company.

       **6.**    **Company's and Manager's Representations.** The Company and the Company's Managers make the following representations and warranties on which the Investor and its counsel are entitled to rely:

       **(a)**    The execution and delivery of the Company Agreement and this Agreement, the consummation of the transactions contemplated thereby and the performance of the obligations thereunder will not conflict with or result in any violation of or default under any provision of any other agreement or instrument to which the Company is a party or any judgment, order, writ or decree applicable to the Company.

       **(b)**    No suit, action, claim, investigation or other proceeding is pending or, to the best of the Company's or the Manager's knowledge, is threatened in writing against the Company which questions the validity of the Company Agreement or this Agreement or any action taken or to be taken pursuant to the Company Agreement or this Agreement, or which could otherwise have a material adverse effect on the Company.

       **(c)**    The Company Agreement and this Agreement create valid and binding obligations of the Company and are enforceable against the Company in accordance with their terms.

       **7.**    **Trustee, Agent, Representative or Nominee.** If the natural person or entity completing this Agreement is acting as trustee, agent, representative or nominee for the Investor (such person or entity, the "Agent"), the Agent agrees that the representations, warranties and agreements made herein are made by such Agent (a) in respect of such Agent and (b) in respect of the underlying subscriber on whose behalf the Agent is acting. The Agent represents and warrants that such Agent has all requisite power and authority to execute this Agreement and perform the obligations under this Agreement on the underlying Investor's behalf. The Agent agrees to provide any additional documents and information that the Company reasonably requests relating to itself or the underlying Investor.

       **8.**    **Survival of Agreements, Representations and Warranties; Indemnification.**

       **(a)**    All agreements, representations and warranties contained herein or made in writing by or on behalf of the Investor, the Company or the Managers of the Company in connection with the transactions contemplated by this Agreement shall survive the execution of this Agreement and the Company Agreement, any investigation at any time made by the Investor, the Company or the Managers of the Company or on behalf of any of them and the sale and acquisition of the Interest and payment therefor.

-5-

Exhibit H
WILPa600030940

(b)     The Investor acknowledges that the Investor understands the meaning and legal consequences of the representations and warranties made by the Investor herein. Such representations and warranties are complete and accurate, shall be complete and accurate as of the Closing Date and may be relied upon by the Company's Managers and the Company. If there should be any material change in any of the representations or warranties or other information regarding the Investor set forth herein, including at any time following the Closing Date, the Investor agrees to notify the Company's Managers in writing as promptly as reasonably practicable.

(c)     The Investor agrees that the foregoing representations and warranties, and all other information regarding the Investor set forth herein, may be used as a defense in any actions relating to the Company, the Managers of the Company or the private placement of the Interest, and that it is only on the basis of such representations, warranties and other information that the Company's Managers may be willing to accept this Agreement on behalf of the Company. The Investor acknowledges that the Company, and the Managers of the Company shall rely on such information, representations and warranties on an ongoing basis.

**9.     Binding Effect.** This Agreement shall be binding upon the Investor and the heirs, personal representatives, successors and assigns of the Investor. The Investor agrees that neither this Agreement nor any rights which may accrue to the Investor hereunder may be transferred or assigned without the consent of the Company's Managers, which may be granted or withheld in its sole discretion or otherwise as provided in the Company Agreement. This Agreement shall survive the admission of the Investor to the Company and shall, if the Investor consists of more than one person, be the joint and several obligations of all such persons.

**10.     Severability.** If any provision of this Agreement is held to be invalid or unenforceable in any jurisdiction, such provision shall be deemed modified to the minimum extent necessary so that such provision, as so modified, shall no longer be held to be invalid or unenforceable. Any such modification, invalidity or unenforceability shall be strictly limited both to such provision and to such jurisdiction, and in each case to no other. Furthermore, in the event of any such modification, invalidity or unenforceability, this Agreement shall be interpreted so as to achieve the intent expressed herein to the greatest extent possible in the jurisdiction in question and otherwise as set forth herein.

**11.     Confidentiality.** The Investor has carefully read the Company's Confidentiality Agreement and by execution thereof understands, including without limitation the confidentiality and non-solicitation undertakings set forth therein which shall apply to the Investor, whether or not this Agreement is accepted by the Company.

**12.     Counterparts.** his Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

**13.     Amendments.** Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated orally, but only with the written consent of the Investor and the Company.

**14.     Governing Law.** The interpretation and enforceability of this Agreement and the rights and liabilities of the parties hereto shall be governed by the laws of the State of Texas. To the extent permitted by the Act and other applicable law, the provisions of this Agreement shall supersede any contrary provisions of the Act or other applicable law.

-6-

Exhibit H
WILPa000000941

THE UNDERSIGNED INVESTOR HEREBY REPRESENTS THAT (I) THE UNDERSIGNED INVESTOR HAS CAREFULLY READ AND IS FAMILIAR WITH THIS AGREEMENT AND THE COMPANY AGREEMENT, (II) THE INFORMATION CONTAINED HEREIN IS COMPLETE AND ACCURATE AND MAY BE RELIED UPON, AND (III) THE EXECUTION OF THE FOLLOWING SIGNATURE PAGE SHALL CONSTITUTE THE EXECUTION OF THIS AGREEMENT AND THE COMPANY AGREEMENT BY THE INVESTOR IN THE EVENT THAT THE INVESTOR IS ADMITTED TO THE COMPANY AS A NEW MEMBER.

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement as of this 29th day of September, 2016.

THE COMPANY:

HOPEWELL-PILOT PROJECT, LLC

By: **THOMAS P. TATHAM**
Its:  Manager

By: **MARK A. WILLIS**
Its:  Manager

INDIVIDUAL INVESTOR:

_____
(Signature)

_____
(Signature)

_____
(Print Name As It Will Be Registered With This Investment)

ENTITY INVESTOR:
EnSource Investments LLC

By: _____

Name: ___JUSTIN PANNU___

Title: ___MANAGER___

Closing Date:
(To be completed by the Company)

Please provide the following information:

☐   Individual
☐   Community Property
☐   Partnership
☐   Limited Liability Company

Capital Commitment: $530,000.00*
*$205,000.00 through exercise of convertible promissory note; $20,000 on or before September 30, 2016; $205,000 on or before October 28, 2016; $100,000 on or before December 31, 2016.

☐   Irrevocable Trust
☐   Living Trust or Revocable Trust w/ ___ grantors.
☐   Corporation
☐   Other:_____.

If the Investor is an entity, as of the Closing Date, there are four (4) holders of its outstanding securities (other than short-term paper) (*please fill in the blank specifying the number of beneficial owners*).

-7-

Exhibit H
WI_00000942

Primary contact person:____Justin Pannu_____

Telephone Number:____(619) 318-2607_____ Fax Number: _____

E-mail Address:_____justinpannu1503@gmail.com_____

■  Social Security or Taxpayer I.D. Number____91 - 377 3197_____
☐  U.S. Investor / U.S. Person      ☐  Non-U.S. Investor / Foreign Person
☐  Exempt under Code Section 401(a)      ☐  Exempt under Code Section 892
☐  Exempt under Code Section 501(c)3

Residential/Business Address (Domicile for Blue Sky filing purposes):

    700 W. E Street, Unit 3804
    San Diego, California 92101

Registered Address (if applicable):

_____

_____

_____

Mailing Address *(select one)*:

[X]     Please use the Subscriber's Residential/Business Address as the Mailing Address

[ ]     Please use the Subscriber's Registered Address as the Mailing Address

[ ]     Please use the following as the Subscriber's Mailing Address:

        _____

        _____

        _____

**METHOD OF DELIVERY OF ACCOUNT COMMUNICATIONS.** Account Communications may be delivered via the e-mail address provided on this page. Should this means of transmission be unacceptable, Account Communications will be delivered via facsimile or physical delivery if the following box is checked:

☐ E-mail transmission is declined, please send Account Communications via facsimile or physical delivery

**For all account communications, please send via e-mail as well as physical delivery.**

-8-

Exhibit H
WIP 00000943

IN WITNESS WHEREOF, this Amended and Restated Company Agreement has been entered into by the parties as of this 29th day of September, 2016.

THE COMPANY

HOPEWELL-PILOT PROJECT, LLC

By: _____
MANAGER

By: _____
MANAGER

NEW MEMBERS

INDIVIDUAL:

By: _____

By: _____

Name: _____

ENTITY:

_____
EnSource Investments LLC

By: _____

Name: JUSTIN PANNU

Title: MANAGER

*Signature Page to the Amended and Restated Company Agreement of*
*Hopewell-Pilot Project, LLC*

ANNEX 1

PART 1

**Individual Investor Representations.**

All defined terms have the meanings provided to them in the Agreement; the following representations are incorporated by reference into the Agreement.

The Investor makes the following representations regarding the Investor's status as an Accredited Investor and a Qualified Client *by checking the box adjacent to each representation below:*

☐ (a) Accredited Investor: The Investor is an individual and has a net worth, either individually or upon a joint basis with the Investor's spouse, that exceeds $1,000,000, excluding the net equity value of such individual's primary residence, if any, but including as a liability the amount by which any indebtedness secured by such residence exceeds the value of such residence (within the meaning of such terms as used in Rule 501 under the Securities Act),[1] *or* has had an individual income in excess of $200,000 for each of the two most recent years, or a joint income with the Investor's spouse in excess of $300,000 in each of those years, and has a reasonable expectation of reaching the same income level in the current year.

☐ (b) Qualified Client: The Investor is an individual that (i) has a net worth, together with assets held jointly with the Investor's spouse, of more than $2,000,000, excluding the net equity value of such individual's primary residence, if any, but including as a liability the amount by which any indebtedness secured by such residence exceeds the value of such residence (within the meaning of such terms as used in Rule 501 under the Securities Act),[2] or (ii) is a Qualified Purchaser.

---

[1] Any indebtedness secured by such primary residence that the Investor incurred within the 60 day period preceding the date of the sale of securities pursuant to this Agreement (other than indebtedness incurred as a result of the acquisition of the primary residence) will be included as a liability for purposes of this calculation, even if the total amount of indebtedness securing such primary residence does not exceed the value of such residence.

-1-

Exhibit H
WILP-00060945

ANNEX 1

PART 2

**Entity Investor Representations.**

All defined terms have the meanings provided to them in the Agreement; the following representations are incorporated by reference into the Agreement.

The Investor makes the representations regarding the Investor's status as an Accredited Investor and a Qualified Client *by checking the box adjacent to the each representation below:*

**ACCREDITED INVESTOR REPRESENTATION** *(check the box adjacent to at least one applicable representation below):*

☐ (i)    The Investor is a corporation, partnership, business trust or limited liability company, not formed for the purpose of acquiring an Interest, or an organization described in section 501(c)(3) of the Code, in each case with total assets in excess of $5,000,000.

■ (ii)    The Investor is an entity in which all of the equity owners (or *a living trust or other revocable trust* in which all of the grantors to such trust) qualify under Annex 1, Part 1, clause (a) or (b), or clause (i), (iii), (iv), (v) or this clause (ii) of this Annex 1, Part 2.

☐ (iii)    The Investor is an employee benefit plan and *either* all investment decisions are made by a bank, savings and loan association, insurance company, or registered investment advisor, *or* the Investor has total assets in excess of $5,000,000 *or*, if such plan is a self-directed plan, investment decisions are made solely by persons who are Accredited Investors.

☐ (iv)    The Investor is an *irrevocable* trust with total assets in excess of $5,000,000 whose acquisition is directed by a person with such knowledge and experience in financial and business matters that such person is capable of evaluating the merits and risks of the prospective investment.

☐ (v)    The Investor is a bank, insurance company, investment company registered under the Investment Company Act, a broker or dealer registered pursuant to Section 15 of the United States Securities Exchange Act of 1934, as amended, a business development company, a Small Business Investment Company licensed by the United States Small Business Administration, a plan with total assets in excess of $5,000,000 established and maintained by a state for the benefit of its employees, or a private business development company as defined in Section 202(a)(22) of the Investment Advisers Act.

☐ (vi)    The Investor cannot make any of the representations set forth in clauses (i) through (v) above.

-1-

Exhibit H
WILP-00060946

**QUALIFIED CLIENT REPRESENTATION** (*check the box adjacent to at least one applicable representation below*):

☐ **(i)** The Investor is a corporation, partnership, association, joint-stock company, trust, or any organized group of persons, whether incorporated or not, that has a net worth of more than $2,000,000. *If the Investor belongs to this investor category, please either check clause (iii) below, if applicable, or affirmatively deny the applicability of clause (iii) below.*

■ **(ii)** The Investor is a corporation, partnership, association, joint stock company, trust, or any organized group of persons, whether incorporated or not, that is a Qualified Purchaser. *If the Investor belongs to this investor category, please either check clause (iii) below, if applicable, or affirmatively deny the applicability of clause (iii) below.*

☐ **(iii)** The Investor is a corporation, partnership, association, joint-stock company, trust, or any organized group of persons, whether incorporated or not, that is an Excluded Company, and all of the Investor's equity owners (and all of their respective equity owners) are Qualified Clients.

■ The Investor has checked either or both of clauses (i) or (ii) above and affirmatively denies applicability of this clause (iii).

☐ **(vi)** The Investor cannot make any of the representations set forth in clauses (i) through (iii) above.


**FURTHER ENTITY INVESTOR REPRESENTATIONS**

The Investor makes the following representations *by checking the box adjacent to the correct response to each representation below:*

■ True  ☐ False    The Investor is neither an "investment company" under the Investment Company Act nor does the Investor rely upon the exclusions from the definition of "investment company" provided for in Section 3(c)(1) or 3(c)(7) of the Investment Company Act.

☐ True  ■ False    The Investor was not organized for the purpose of acquiring the Interest.

■ True  ☐ False    The Investor has made investments prior to the date hereof or intends to make investments in the near future and each beneficial owner of interests in the Investor has and will share in the same proportion to each such investment.

☐ True  ■ False    The Investor's investment in the Company will not constitute more than 40% of the assets of the Investor (including any capital commitments that may be drawn upon demand by the Investor).

■ True  ☐ False    The governing documents of the Investor require that each beneficial owner of the Investor, including, but not limited to, shareholders, partners and beneficiaries, participate through their interest in the Investor in all of the Investor's investments and that the profits and losses from each such investment are shared among such beneficial owners in the same proportions as all other investments of the Investor. No such beneficial owner may vary the Investor's share of the profits and losses or the amount of the Investor's contribution for any investment made by the Investor.

-2-

Exhibit H
WII00000947

If any of the above statements are marked "False," then the Investor will have, as of the Closing Date, four (4) holders of its outstanding securities (other than short-term paper) *(please fill in the blank specifying the number of beneficial owners)*.

The Investor is:

☐ True  ■ False  **(1)**  an "employee welfare benefit plan" or an "employee pension benefit plan" as defined in sections 3(1) and 3(2), respectively, of ERISA; or

☐ True  ■ False  **(2)**  a plan described in section 4975(e)(1) of the Code; or

☐ True  ■ False  **(3)**  an entity that is deemed to be a "benefit plan investor" under the DOL Regulations because all or part of its underlying assets include "plan assets" by reason of a plan's investment in the entity (including, by way of example only, a partnership not qualifying as an operating company within the meaning of the DOL Regulations, which is 25% or more owned by entities described in (1) or (2) above); or

☐ True  ■ False  **(4)**  subject to any rules or regulations similar to the fiduciary provisions of ERISA and/or the prohibited transaction provisions of Section 4975 of the Code.

If clause (3) above is marked "True," please provide the percentage that the Investor's "plan assets" holdings bear to its aggregate asset holdings (based upon value as of the Closing Date): _____% (the "Plan Asset Percentage").

☐ True  ■ False  The Investor is a "private foundation" as described in Section 509 of the Code.

☐ True  ■ False  The Investor is subject to the Bank Holding Company Act of 1956, as amended.

■ True  ☐ False  To the best of the Investor's knowledge, the Investor does not control nor is it controlled by or under common control with, any other Investor.

*Please check the box next to each applicable statement and provide appropriate information in response to each such statement:*

☐ True  ■ False  The Investor is subject to federal or state freedom of information (FOIA) statutes or other similar statutes in each of the following jurisdictions. *(If a similar statute is applicable, please specify the applicable statute along with the applicable jurisdiction, to the extent known)*:

_____

☐ True  ■ False  One or more of the Investor's beneficial owners is subject to federal or state FOIA statutes or other similar statutes in each of the following jurisdictions. *(If a similar statute is applicable, please specify the applicable statute along with the applicable jurisdiction, to the extent known)*:

_____

-3-

☐ True ■ False      The Investor is a public agency, department, office or pension plan. *(Please specify type and applicable jurisdiction.)*:

_____

☐ True ■ False      One or more of the Investor's beneficial owners is a public agency, department, office or pension plan. *(If known, please specify type of owner and applicable jurisdiction below.)*:

_____

-4-

Exhibit H
WILP-00060949

**SCHEDULE A**
**Member Information**

| Name and Address of Each Member | Founders Shares | Initial Ownership Percentage | Initial Additional Equity Shares** | Capital Contribution Paid for Initial Additional Equity Shares | Adjusted Ownership Percentage after issue of Initial Additional Equity Shares*** |
|---|---|---|---|---|---|
| **Willis Group Members:** | | | | | |
| **Hopewell Willis Holdings, LLC** 1400 Post Oak Blvd. Suite 200 Houston, TX 77056 | 450,000 | 45% | 50,000 | $100,000 | 34.25% |
| **Willis Group LLC** 1400 Post Oak Blvd. Suite 200 Houston, TX 77056 | 225,000 | 22.5% | | | 15.41% |
| **Tatham Group Members:** | | | | | |
| **Hopewell Tatham Holdings LLC** 1400 Post Oak Blvd. Suite 200 Houston, TX 77056 | 112,500 | 11.25% | | | 7.71% |
| **LNG Partners, LLC** 600 Travis St. Suite 5900 Houston, TX 77002 | 112,500 | 11.25% | | | 7.71% |
| **Mark A. Bush** 5868 Westheimer, Apt 458 Houston, TX 77057 | 100,000 | 10% | | | 6.84% |

WIL_00000950

| Initial New Members: | | | | | |
|---|---|---|---|---|---|
| Gil Lopez III<br>16522 Champions Cove Circle<br>Spring, TX 77379 | | | 25,000 | $50,000 | 1.71% |
| Michael Casey Foran<br>200 Lamont Ave.<br>San Antonio, TX 78209 | | | 17,500 | $35,000 | 1.20% |
| Foran Ltd.<br>200 Lamont Ave.<br>San Antonio, TX 78209 | | | 12,500 | $25,000 | 0.86% |
| Michael T. Willis<br>1400 Post Oak Blvd.<br>Suite 200<br>Houston, TX 77056 | | | 15,000 | $30,000 | 1.03% |
| South Padre Gas Partners, L.P.<br>10 S. Briar Hollow Ln., #30<br>Houston, TX 77027 | | | 25,000 | $50,000 | 1.71% |
| Thomas Trent Stout<br>231 Bryn Mawr Cir.<br>Houston, TX 77024 | | | 50,000 | $100,000 | 3.42% |
| EnSource Investments, LLC | | | 265,000 | $530,000 | 18.15% |
| Totals | 1,000,000 | 100% | 460,000 | $920,000 | 100% |
| | | | | | |

\* 1,000,000 Founders Shares allocated among Willis Group Members, Tatham Group Members and Mark A. Bush
\*\* Initial Additional Equity Shares subscribed by Founding Members and Initial New Members
\*\*\* Rounded to nearest 1/100th of one per cent (.01%)

## MEMBER SIGNATURE PAGE

The undersigned Member of **HOPEWELL - PILOT PROJECT, LLC**, a Texas limited liability company (the "Company"), does hereby execute this signature page to be attached to that certain Third Amended and Restated Company Agreement for the Company and agrees to be bound by all of the terms and provisions of such Agreement.

EnSource Investments, LLC

*By:* _____
        Justin Pannu, Manager

*Address:*  700 W. E Street, #3804
         San Diego, CA 92101

1

Exhibit H
PAGE 1
HW-100000952