1  SULLIVAN HILL REZ & ENGEL
   A Professional Law Corporation
2  Shannon D. Sweeney, SBN 204868
   Michael A. Zarconi, SBN 288970
3  600 B Street, 17th Floor
   San Diego, California 92101
4  Telephone: (619) 233-4100
   Fax Number: (619) 231-4372
5  9404.17558

6  Attorneys for Defendants, MARK A. WILLIS; BEYOND REVIEW, LLC; IMAGE
   ENGINE, LLC; and WILLIS GROUP, LLC
7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10 ENSOURCE INVEMENTS LLC, a          )  Case No. 17cv0079 H LL
   Delaware limited liability company, )
11                                     )  **SUPPLEMENTAL BRIEF (In
                Plaintiff,             )  Response to the Court's 12/16/19
12                                     )  Order)**
   v.                                  )
13                                     )
   THOMAS P. TATHAM, an                )  JUDGE: Hon. Marilyn L. Huff
14 individual; MARK A. WILLIS, an      )
   individual; PDP MANAGEMENT          )
15 GROUP, LLC, a Texas limited         )
   liability company; TITLE ROVER,     )
16 LLC, a Texas limited liability      )
   company; BEYOND REVIEW,             )
17 LLC, a Texas limited liability      )
   company; IMAGE ENGINE, LLC, a       )
18 Texas limited liability company;    )
   WILLIS GROUP, LLC, a Texas          )
19 limited liability company; and DOES )
   1-50,                               )
20                                     )
                Defendants.            )
21 _____    )

22      On December 16, 2019, the Court ordered the parties to brief four issues in

23 advance of the upcoming trial. Below is Defendant Mark Willis' position on each

24 issue:

25 / / /

26 / / /

27 / / /

28

1. **How the Amount of Exemplary Damages for a Claim of Intentional Misrepresentation is Determined Under Texas Law?**

The Texas Civil Practice and Remedies Code sets forth the types of evidence that the trier of fact may consider when determining the amount of exemplary damages. *See* Tex. Civ. Prac. & Rem. Code section 41.011(a). Such subsection transcribed in its entirety below:

> EVIDENCE RELATING TO AMOUNT OF EXEMPLARY DAMAGES. (a) In determining the amount of exemplary damages, the trier of fact shall consider evidence, if any, relating to:
>
> (1)    the nature of the wrong;
> (2)    the character of the conduct involved;
> (3)    the degree of culpability of the wrongdoer;
> (4)    the situation and sensibilities of the parties concerned;
> (5)    the extent to which such conduct offends a public sense of justice and propriety; and
> (6)    the net worth of the defendant.

*Id.* Such statute also provides that "[e]vidence that is relevant only to the amount of exemplary damages that may be awarded [such as net worth] is not admissible during the first phase of a bifurcated trial." *Id.*, (b). The Texas Supreme Court agrees: "evidence of defendant's net worth, which is generally relevant only to the *amount* of punitive damages, by highlighting the relative wealth of a defendant, has a very real potential for prejudicing the jury's determination of other disputed issues in a tort case." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 30 (1994)("We therefore conclude that a trial court, if presented by a timely motion, should bifurcate the determination of the amount of punitive damages from the remaining issues).

2. **Whether the Case Should be Bifurcated to Determine the Amount of Exemplary Damages, if Any, If the Jury Finds by Clear and Convincing Evidence in a First Phase That Such Damages are Warranted?**

The Texas Civil Practice and Remedies Code also provides that the Court *shall* bifurcate trial upon a timely motion. *See* Tex. Civ. Prac. & Rem. Code §41.009(a). As is set forth in such Section, the second phase of a bifurcated trial

408259-v1

2

Case No. 17cv0079 H LL

1   would occur only if the jury determines, in phase one, that there is liability for both

2   compensatory and exemplary damages. *See id.*, (c)-(d).[1] Based on such authority, the

3   parties have agreed to stipulate to bifurcation should the jury determine in phase one

4   that there is liability for exemplary damages. *See* Exhibit A to the Sweeney Decl.

5   Assuming so, phase two of the trial would solely focus on evidence necessary to

6   determine the amount of such damages.

7   3.   **Whether the Indemnification Provision of §13.10 of the Third Amended and**

8       **Restated Company Agreement of Hopewell-Pilot Project LLC is Against**

9       **Public Policy if Plaintiff Prevails in Either Remaining Claim?**

10          Whether and the extent to which public policy precludes contractual

11  exculpation and indemnity with respect to intentional torts appears somewhat

12  undecided under Texas law.  *See Hamblin v. Lamont*, 433 S.W.3d 51, 57 (Tex. App.

13  2013)("we question whether public policy would prevent [defendant] from

14  'prospectively contractually exculpating himself with respect to intentional torts' even

15  if the indemnity provisions contained specific language"); *but see Lexington Ins. Co.*

16  *v. W.M. Kellogg Co.*, 976 S.W.2d 807, 809 (Tex. App. 1998)(holding "fair notice

17  doctrine" does not apply when indemnity agreement "signed *after* the acts which

18  could give rise to liability were completed")(italics original). Considering all parts of

19  the contract together, however, the unambiguous language of the Third Amended and

20  Restated Company Agreement of Hopewell – Pilot Project, LLC (the "Hopewell

21  Company Agreement") forecloses the need to resolve this question as a matter of

22  public policy.  *See OXY USA, Inc. v. Southwestern Energy Prod. Co.*, 161 S.W.3d

23  277, 284-85 (Tex. App. 2005)("Only when we consider all parts of the contract

24  together can we give it the meaning that will carry out and effectuate the intention of

25

26          [1]    Phase two does not come into play unless the jury determines there is
    liability for both compensatory and exemplary damages. *See* Tex. Civ. Prac. & Rem.
27  Code §41.009(c). Simply establishing a Defendant made an intentional misrepresentation
    is not enough. The parties will address this issue in the special verdict form.

28

1  the parties to the fullest extent.")

2        Here, any ambiguity regarding the application of the indemnity provision in the

3  event that Plaintiff establishes Defendant's liability for the fraud alleged is resolved by

4  the language of the exculpatory clause.  In particular, Section 9.1 of Article IX of the

5  Hopewell Company Agreement provides in pertinent part:

6        ***Exculpation.***        Neither any Manager, any Member nor any Person
       appointed to act as liquidator under Article XII (each a "Covered
7        Person") shall be liable to the Company or any Member under any theory
       of law, including tort, contract or otherwise (INCLUDING A COVERED
8        PERSON'S OWN NEGLIGENCE) for any loss, damage or claim
       incurred by reason of any act or omission by such Covered Person in
9        good faith on behalf of the Company and in a manner reasonably
       believed to be within the scope of authority conferred on such Covered
10       Person by this Agreement, including any such loss, damage or claim
       attributable to errors in judgment, negligence or other fault of such
11       Covered Person, ***except that a Covered Person shall be liable for any***
       ***such loss, damage or claim incurred by reason of gross negligence,***
12       ***willful misconduct, intentional misrepresentation or breach of duty of***
       ***loyalty of such Covered Person. . .***
13

14  Sweeney Decl. ¶ 3 at 2; Ex. B, Art. IX § 9.1(emphasis added).

15        Reading the entire Hopewell Company Agreement as a whole, Defendant

16  concedes there is no right to exculpation or indemnity from Plaintiff in the event that

17  Plaintiff establishes Defendant's liability for alleged intentional fraud.

18  **4.   Whether it is Proper to Apply the Indemnification Provision if Defendant**

19        **Prevails, Assuming the Provision Is Against Public Policy Should Plaintiff**

20        **Prevail?**

21        Irrespective of whether public policy in Texas might forbid parties from

22  contractually agreeing to exculpate or indemnify one another for future intentional

23  torts, there can be no doubt that Texas law supports the application of the

24  indemnification provisions in the Hopewell Company Agreement in the event that

25  Defendant prevails with respect to Plaintiff's remaining claims.  The Texas Supreme

26  Court has repeatedly stated that indemnity provisions are enforceable under Texas

27  law, so long as fair notice is provided, i.e. (1) the intent to provide indemnity is

28

1   expressed in specific terms in the contract (the "express negligence doctrine") and (2)

2   the clause meets Texas requirements of conspicuousness (the "conspicuousness

3   retirement"). *See Dresser Indus. v. Page Petroleum*, 853 S.W.2d 505, 509 (Tex.

4   1993).[2] Both requirements of fair notice are met here. The Hopewell Company

5   Agreement repeatedly and abundantly expresses an intent to provide indemnification

6   to Members and Managers. An entire Article in the contract is devoted to

7   indemnification and exculpation. *See* Ex. B, Article IX. In addition, Section 13.10,

8   also entitled "Indemnification" is found in the "general provisions" of the Agreement.

9   The words "Indemnification" and "Exculpation" are separated as paragraph headers,

10  and are bolded, underlined and italicized. *Id.* These sections make it clear that

11  indemnity is to be provided by Members to other Members, and that Members will not

12  be liable "*under any theory of law*, including tort, contract or otherwise (INCLUDING

13  A COVERED PERSON'S OWN NEGLIGENCE)" for any act or omission

14  reasonably conducted, in good faith, on behalf of the Company. Ex. A, §9.1 (emphasis

15  added, but all caps in original). The indemnity and attorneys' fees provision in Section

16  13.10 is consistent with the Section 9.1 exculpation provision. The main difference

17  between them is that Section 13.10 makes it express that a Member will be

18  responsible for another Member's costs of suit and attorney's fees when, as here, the

19  claims and alleged damage relate to the Member's or its affiliate's business conduct.

20          Although "Texas courts place great restrictions on a party's ability to

21  exculpate itself, in advance, of responsibility for its own negligence," the public

22  policy concerns justifying such restrictions do not arise where the parties use, "express

23  language within the four corners of the contract specifically stating that the party will

24  be indemnified for liability arising from the party's own negligence." *Hamblin v.*

25  *Lamont*, 433 S.W.3d 51, 55-57 (Tex. App. 2013)(citing *Ethyl Corp. v. Daniel Constr.*

26  _____

   [2]     "[C]ompliance with both of the fair notice requirements is a question of

27  law for the court." *Dresser*, 853 S.W.2d at 509.

28

1   *Co.*, 725 S.W.2d 705, 708 (Tex. 1987)).  Nor does the public policy argument of

2   deterring misconduct by preventing a party from contracting away liability apply

3   when the indemnity provision at issue was limited to acts that had already occurred.

4   *OXY USA, Inc. v. Sw. Energy Prod. Co.*, 161 S.W.3d 277, 286-87 (Tex. App. 2005).

5          Here, the indemnity provision at issue is expressly limited to "business

6   activities conducted by that Member or its affiliates *prior to the Effective Date of this*

7   *Agreement*." Ex. A § 13.10 (emphasis added).  Likewise, the provision specifically

8   includes indemnity for negligence. *Id.* Thus, if Plaintiff fails to establish any liability

9   for intentional conduct on the part of the Mr. Willis in connection with his business

10  activities, whether individually as a Manager of Hopewell or as the affiliate and sole

11  owner of Member Willis Group, LLC, the public policy considerations warranting a

12  strict construction or narrow reading of the indemnity provisions simply do not come

13  to bear. Plaintiff, a sophisticated and accredited investor represented by able counsel,

14  negotiated and ultimately agreed to indemnify the "Company" (Hopewell) and its

15  Members from any loss arising out of its or its affiliates business activities.  In doing

16  so, Plaintiff further assumed indemnity obligations through the Company that extend

17  beyond just Members but also to Managers.[3]  Moreover, at the same time Plaintiff

18

19          [3]      Section 9.2 of the Hopewell Company Agreement states in pertinent part:

20  Subject to the limitations and conditions as provided in this Article IX,
    each Manager who was or is made a party or is threated to be made a
21  party to oor is involved in any threatened, pending or completed action,
    suit or proceeding, whether civil, criminal, administrative, arbitrative or
22  investigative (hereinafter a "*Proceeding*"), or any appeal in such a
    Proceeding or any inquiry or investigation that could lead to such a
23  Proceeding, by reason of the fact that he or she is acting on behalf of the
    Company or was serving at the request of the Company as a manager,
24  officer, partner, venturer, proprietor, trustee, employee, agent, or similar
    functionary . . . shall be indemnified by the Company to the fullest extent
25  permitted [by Texas law] . . . against judgments, penalties . . . (including,
    without limitation, attorneys' fees) actually incurred by such Manager in
26  connection with such Proceeding. . .

27  Sweeney Decl. Ex. A, Art. IX § 9.2.

28                                                                    (continued…)

1  executed the Hopewell Company Agreement, Plaintiff entered the Hopewell-Pilot

2  Project, LLC Subscription Agreement wherein Plaintiff expressly disclaimed reliance

3  upon any representations or warranties made to Plaintiff by Hopewell, its managers, or

4  any agents thereof—including Defendant Mark Willis. *See* Sweeney Decl. ¶ 4 at 2;

5  Ex. C. Because Plaintiff's remaining claims for relief are predicated entirely upon

6  alleged misrepresentations and/or omissions by Defendant made in the course of his

7  business activities as an agent/owner/affiliate of Hopewell Willis Holdings, LLC (a

8  Member of Hopewell) or as a Manager of Hopewell, it is entirely consistent with

9  public policy to enforce the contractual indemnity provisions in the event that Plaintiff

10  fails to establish liability and Defendant suffers attorneys' fees and costs vindicating

11  his position.[4]

12  Dated:      January 10, 2020              SULLIVAN HILL REZ & ENGEL
                                             A Professional Law Corporation
13

14                                           By:    */s/     Shannon D. Sweeney*
                                                    Shannon D. Sweeney
15                                                  Attorneys for Defendant
                                                    MARK A. WILLIS
16

17

18
_____

19  (…continued)

20       Whether and the extent to which Defendant is entitled to reimbursement as a
    Manager as opposed to as a Member, and from whom, will be addressed in connection
21  with any motion for attorneys' fees Defendant may be entitled to bring upon
    prevailing against Plaintiff's claims.  At this time, the question the Court has framed
22  for supplemental briefing is merely whether it would be consistent with public policy
    to enforce the indemnification provision in the event that Defendant prevails.

23  [4]     Public policy considerations in California would mandate the same result.  In
    California, "subject to public policy and established rules of contract interpretation,
24  the parties to noninsurance indemnity agreements have great freedom to allocate such
    responsibilities as they see fit." *Crawford v. Weather Shield Mfg., Inc.*, 44 Cal. 4th
25  541, 551 (2008); *City of Bell v. Superior Court*, 220 Cal. App. 4th 236, 248 (2013).
    California courts have long held that specific, precise, and unambiguous indemnity
26  terms, including those which provide indemnity in connection with a party's own
    negligence are not inconsistent with public policy.  *E.g.*, *Goldman v. Ecco-Phoenix*
27  *Electric Corp.*, 62 Cal. 2d 40, 41 (1964).

28