1

2

**PANAKOS LAW, APC**
Aaron D. Sadock (SBN 282131)
555 West Beech Street, Ste. 500
San Diego, California 92101
Telephone: (619) 800-0529
Facsimile: (866) 365-4856
Email: asadock@panakoslaw.com

3

4

5

**RICHARD E. NAWRACAJ**
Law Offices of Richard E. Nawracaj
155 N. Wacker Drive, Suite 4250
Chicago, Illinois 60606
Email: rich.nawracaj@nawracaj-law.com

6

7

8

9

Attorneys for Plaintiff ENSOURCE INVESTMENTS LLC

10

11

# UNITED STATES DISTRICT COURT

12

# SOUTHERN DISTRICT OF CALIFORNIA

13

14

ENSOURCE INVESTMENTS LLC, a Delaware limited liability company,

15

Plaintiff,

v.

16

17

18

19

20

21

22

23

24

THOMAS P. TATHAM, an individual; MARK A. WILLIS, an individual; PDP MANAGEMENT GROUP, LLC, a Texas limited liability company; TITLE ROVER, LLC, a Texas limited liability company; BEYOND REVIEW, LLC, a Texas limited liability company; IMAGE ENGINE, LLC, a Texas limited liability company; WILLIS GROUP, LLC, a Texas limited liability company; and DOES 1-50,

25

Defendants.

Case No.: 3:17-CV-00079-H-LL

**PLAINTIFF ENSOURCE INVESTMENTS LLC'S OPPOSITION TO DEFENDANT MARK WILLIS'S BRIEF IN RESPONSE TO COURT'S 12/16/19 ORDER**

**Date: February 3, 2020**
**Time: 10:30a.m.**
**Courtroom: 15A**

Magistrate Judge: Hon. Linda Lopez
District Judge: Hon. Marilyn L. Huff
Courtroom: 15A
Action filed: January 13, 2017

26

27

28

PLAINTIFF ENSOURCE INVESTMENTS LLC'S OPPOSITION TO DEFENDANT MARK WILLIS'S BRIEF

1

## I.  INTRODUCTION

### 1.  How the Amount of Exemplary Damages for a Claim of Intentional Misrepresentation is Determined Under Texas Law

"There can be no set rule or ratio between the amount of actual and exemplary damages which will be considered reasonable. This determination must depend upon the facts of each particular case." Alamo Nat. Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981). However, Plaintiff agrees with Defendant that the Texas Civil Practice and Remedies Code does set forth the evidence to consider for determining the amount of exemplary damages. Pursuant to Texas Civil Practice and Remedies Code Section 41.0110:

> In determining the amount of exemplary damages, the trier of fact shall consider evidence, if any, relating to:
>
> (1)  the nature of the wrong;
> (2)  the character of the conduct involved;
> (3)  the degree of culpability of the wrongdoer;
> (4)  the situation and sensibilities of the parties concerned;
> (5)  the extent to which such conduct offends a public sense of justice and propriety;  and
> (6)  the net worth of the defendant.

However, Texas courts have found that "[n]othing in chapter 41 of the Texas Civil Practice and Remedies Code ... or other Texas case law indicates that evidence of the defendant's net worth is a necessary element for the plaintiff to recover any exemplary damages." Durban v. Guajardo, 79 S.W.3d 198, 210-211 (Tex. App. 2002); see also Barnhart v. Morales, 459 S.W.3d 733, 751 (Tex. App. 2015). "Nothing in chapter 41 of the Texas Civil Practice and Remedies Code, *Moriel,* or other Texas case law indicates that evidence of the defendant's net worth is a necessary element for the plaintiff to recover any exemplary damages." Durban v. Guajardo,  79  S.W.3d  198,  210–11  (Tex. App. 2002).

1    In *Durban,* the Texas Court of Appeals upheld the exemplary damages

2    award even though the trial court had denied the defendant's request to introduce

3    evidence of his net worth. The court found that, if the award was an enormous

4    penalty to the defendant, who had been found guilty of assault, then it was

5    deserved, and if the award was a mere annoyance, then the lack of evidence of his

6    net worth benefited him rather than harmed him. *79 S.W.3d* at 211; *see*

7    *also Rangel v. Robinson,* 2007 WL 625042, at *7 (Tex. App. 2007) (holding that

8    plaintiffs are not required to produce evidence of the defendant's net worth in order

9    to recover punitive damages and that the trial court could have reasonably

10   concluded that the lack of evidence on the defendant's ability to pay the damages

11   was outweighed by the enormity of his indifference and the public's need to stop

12   drunk drivers); see also Soon Phat, L.P. v. Alvarado, 396 S.W.3d 78, 109 (Tex.

13   App. 2013).

14   Texas Civil Practice and Remedies Code Section 41.008 reinforces that net

15   worth is not necessary since it limits an award of exemplary damages to the greater

16   of:

17
18   (1)(A) two times the amount of economic damages; plus
     (B) an amount equal to any noneconomic damages found by the jury,
     not to exceed $ 750,000; or
19   (2) $ 200,000.

20

21   Therefore, while the net worth of a Defendant can be considered, it is not required

22   under Texas law in evaluating exemplary damages.

23

24   **2. Whether the Court Should Bifurcate the Trial Into a Second Phase On**
     **the Amount of Exemplary Damages, if Any, if the Jury Finds By Clear**
25   **and Convincing Evidence in the First Phase of The Trial that Defendant**
     **Committed Intentional Misrepresentation.**
26

27   It is ultimately up to the discretion of the trial court to determine whether

28   bifurcation is appropriate in this case, but the convenience to the Court and

PLAINTIFF ENSOURCE INVESTMENTS LLC'S OPPOSITION TO
DEFENDANT MARK WILLIS'S BRIEF

1  lack of prejudice to Defendant supports trying the compensatory and exemplary

2  damages claims together.[1]

3       "The bifurcation of trial 'is primarily procedural in nature and … federal

4  procedural law controls.'" Holland v. Harmon, No. CIV.A. 3:97-CV-0754-D, 1999

5  WL 58226, *1 (N.D. Tex. Jan. 29, 1999) (quoting Rosales v. Honda Motor Co.,

6  726 F.2d 259, 260 (5th Cir. 1984)); see also Getty Petroleum Corp. v. Island

7  Transp. Corp., 862 F.2d 10, 14-15 (2d Cir.1988), cert. denied, 490 U.S. 1006

8  (1989). The applicable standard is found in Federal Rule of Civil Procedure 42(b),

9  which permits a court to bifurcate a claim or issue in a trial. Fed. R. Civ. P. 42(b).

10 Rule 42(b) "allows, but does not require, a trial court to bifurcate cases 'in

11 furtherance of convenience or to avoid prejudice.'" Hangarter v. Provident Life

12 and Acc. Ins. Co., 373 F.3d 998, 1021 (9th Cir. 2004).  A district court's refusal to

13 bifurcate a trial is accordingly reviewed for an abuse of discretion. Id.

14      Rather, "since the evidence usually overlaps substantially, the normal

15 procedure is to try compensatory and punitive damage claims together with

16 appropriate instructions to make clear to the jury the difference in the clear and

17 convincing evidence required for the award of punitive damages." Id. (citing

18 McLaughlin v. State Farm Mut. Auto. Ins. Co., 30 F.3d 861, 871 (7th Cir. 1994)).

19       Here, the issues relevant to intentional misrepresentation and exemplary

20 damages overlap. The first four factors for determining exemplary damages ( the

21 nature of the wrong; the character of the conduct involved; the degree of

22 culpability of the wrongdoer; the situation and sensibilities of the parties

23 concerned) are each relevant to Plaintiff's claim of intentional misrepresentation.

24 Importantly, the "clear and convincing" standard of review is the same for both

25 compensatory damages and exemplary damages, minimizing any confusion for the

26

27       [1] While Plaintiff originally agreed to bifurcation, upon a closer look at the federal and
    state law, Plaintiff no longer stipulates to bifurcation of trial. On January 14, 2020, Plaintiff's
    counsel emailed Defendant's counsel to notify Defendant that Plaintiff no longer agreed to
28  bifurcation.

1   jury's determination of liability. Any bifurcation of trial would be inconvenient

2   and would be an unnecessary expenditure of resources for both parties. Finally, as

3   discussed *supra*, Defendant's net worth is not a requirement for establishing

4   exemplary damages under Texas law, so Defendant's concerns of prejudice are not

5   at issue. For these reasons, the Court should not bifurcate the trial.

6

7   **3. Whether the Indemnification Provision in Section 13.10 of the Third**
    **Amended and Restated Company Agreement of the Hopewell-Pilot**

8   **Project, LLC is against Public Policy if Plaintiff Prevails In Its**
    **Securities Fraud or Intentional Misrepresentation Claims**

9

10  In the event Plaintiff prevails in either its claim for violation of Rule 10(b)-

11  5(b) by Defendant Willis or the commission of intentional misrepresentation by

12  Defendant Willis, the jury – comprised of the societal peers of Defendant Willis –

13  will have determined that the acts and omissions of Defendant Willis were not

14  accidental or otherwise justifiable, but rather reprehensible and of a nature that

15  deserves retribution in the form of a verdict against him.  Simply put, the jury –

16  essentially a cross section of the public – will have determined that Defendant

17  Willis committed fraud.

18  It is axiomatic that the *prevention* of fraud is consistent with public policy.

19  Whether it concerns the centuries-old Statute of Fraud or the more recent

20  Securities Act of 1933, public policy has always upheld – and strove for – the

21  prevention of fraud.  To be sure, the government has implemented measures to

22  prevent fraud to further such public policy.  One such measure relevant to the case

23  at bar was the establishment and continued existence of the Securities and

24  Exchange Commission.  The government, however, can only police a certain

25  amount of all of the activities that may comprise fraud.  The public is needed to

26  supplement such efforts in order to further, as much as possible, the public policy

27  to prevent fraud.

28  The   public,   however,   is   not   always   well-equipped   to   do   so.

PLAINTIFF ENSOURCE INVESTMENTS LLC'S OPPOSITION TO
DEFENDANT MARK WILLIS'S BRIEF

1  Litigation is expensive the "upside" of litigation may many times be viewed as
2  outweighed by its "downside". To be sure, if there isn't any ability to be "made
3  whole" after the litigation process is exhaustive – even if successful – a potential
4  plaintiff may be dissuaded from pursuing an action which, as its end result, could
5  promote the public policy of preventing fraud.

6        The indemnification clause of Section 13.10 allows for a perfect solution
7  that uniquely, fairly and pragmatically promotes the public policy to prevent fraud.
8  Specifically, Section 13.10 offered the Plaintiff a "reward" for a successful
9  outcome with respect to this case and, consequently, the promotion of public
10  policy to prevent fraud: the reimbursement of its fees and costs in connection
11  therewith. At the same token, however, Section 13.10 provides a throttle so that
12  only claims with substantial merit are pursued in connection with this "reward"
13  because if unsuccessful, the reimbursement may not be offered and the
14  complainant's spent resources will not be reimbursed. Thus, the award of
15  indemnification to the Plaintiff if successful in one or both of its claims against
16  Defendant Willis pursuant to Section 13.10 is not only fair and equitable, but
17  promotes the public policy to prevent fraud.

18  **4. Whether It is Proper to Apply the Indemnification Provision if
19      Defendant Prevails; Assuming It Is Against Public Policy Should
       Plaintiff Prevail.**

20  Texas courts place great restrictions on a party's ability to exculpate itself, in
21  advance, of responsibility for its own negligence. *See Ethyl Corp. v. Daniel Constr.*
22  *Co.,* 725 S.W.2d 705, 708 (Tex.1987). In *Ethyl,* the court examined the trend
23  toward a stricter construction of indemnity contracts and adopted the express
24  negligence doctrine. *Id.* at 707–08. Under the express negligence doctrine, "parties
25  seeking to indemnify the indemnitee from the consequences of its own
26  negligence ***must express that intent in specific terms***. Under the doctrine of
27  express negligence, the ***intent of the parties must be specifically stated within the***
28

1   ***four corners of the contract***." *Ethyl*, 725 S.W.2d at 708 (emphasis added); *see Van*

2   *Voris v. Team Chop Shop, LLC*, 402 S.W.3d 915 (Tex.App.-Dallas 2013, no pet.)

3   (requiring explicit clarity for any party expressing an intent to protect a party for

4   that party's negligence); *see also Ensearch Corp. v. Parker*, 794 S.W.2d 2

5   (Tex.1990) (reinforcing requirement that words expressly state an indemnitee will

6   be reimbursed even for its own negligence). Simply stated, absent language stating

7   a clear intent to indemnify, there is no obligation to do so. *Ethyl,*725 S.W.2d at

8   708. The court noted that the express negligence doctrine would preclude

9   "scriveners of indemnity agreements [from devising] novel ways of writing

10  provisions which fail to expressly state the true intent of those provisions." *Id*. at

11  707.

12  In *Dresser Industries, Inc. v. Page Petroleum, Inc.,* the Texas Supreme

13  Court further explained the policy reasons behind its adoption of the express

14  negligence doctrine. 853 S.W.2d 505, 507–09 (Tex.1993). Although the court

15  recognized that indemnity agreements operate to transfer risk against existing or

16  future loss liability, the court reasoned that using indemnity agreements to

17  "exculpate a party from the consequences of its own negligence" goes further and

18  involves "an extraordinary shifting of risk." *See Id*. at 508. Under those

19  circumstances, the express negligence doctrine mandates that the party use express

20  language within the four corners of the contract specifically stating that the party

21  will  be indemnified for  liability  arising  from  the  party's  own

22  negligence. *Id*. References to liabilities or claims in general will not suffice;

23  instead, the language must specifically refer to liability pertaining to the party's

24  own negligence. *Id*.

25  The same public policy concerns associated with extraordinary risk-shifting

26  set forth in *Ethyl* and *Dresser* should apply with equal or greater force

27  to intentional torts. *See Green Int'l Inc. v. Solis,* 951 S.W.2d 384, 387

28  (Tex.1997) (distinguishing  provisions that shift economic damages resulting

PLAINTIFF ENSOURCE INVESTMENTS LLC'S OPPOSITION TO
DEFENDANT MARK WILLIS'S BRIEF

7                                    3:17-CV-00079-H-LL

1    from breach of contract with extraordinary shift from consequence of a person's

2    own future acts); *cf*. <u>Dresser</u>, 853 S.W.2d at 508*; Ethyl,* 725 S.W.2d at 708. "As

3    such, only an indemnity provision specifically stating an intent to indemnify the

4    indemnitee for the indemnitee's intentional torts should be enforceable against the

5    indemnitor for the indemnitee's intentional acts." <u>Hamblin v Lamont</u>, 433 S.W.3d

6    51 (citing *Ethyl,* 725 S.W.2d at 708; *Dresser,* 853 S.W.2d at 508*; Ott v. Sonic*

7    *Land Corp.,* No. 09–94–209CV, 1996 WL 185347, at *7 (Tex.App.-Beaumont,

8    1996) ("If a release must expressly state it will release future negligence, then

9    surely it must expressly state it will release future intentional tortious conduct.")

10   ("we question whether public policy would prevent [the claimed indemnitee] from

11   'prospectively contractually exculpat[ing himself] with respect to intentional torts'

12   even if the indemnity provisions contained the specific language." <u>Lamont</u>, 433

13   S.W.3d at 57 (citing *Solis v. Evins,* 951 S.W.2d 44, 50 (Tex.App.Corpus Christi

14   1997, no writ); *accord* <u>Oxy USA, Inc. v. Sw. Energy Prod. Co.,</u> 161 S.W.3d 277,

15   283 (Tex.App.-Corpus Christi 2005, pet. denied); *Budner v. Wellness Int'l*

16   *Network, Ltd.,* No. 3:06–CV–0329–K, 2007 WL 806642, at *8 (N.D.Tex.2007).

17   Since no such specific language existed, the <u>Lamont</u> court concluded that there was

18   no obligation to indemnify and, in so doing, found such to be consistent with

19   public policy.

20          With respect to the case at bar, the applicable indemnification language

21   states as follows:

22

23          "Section 13.10 Indemnification. To the fullest extent permitted by
        law, each Member shall indemnify the Company, and each other
24          Member and hold them harmless from and against all losses, costs,
        liabilities, damages, and expenses (including, without limitation, costs
25          of suit and attorney's fees) they may incur on account of any breach
        by that Member of this Agreement or on account of any business
26          activities conducted by that Member or its affiliates prior to the
        Effective Date of this Agreement."
27

28

Since such provision does not contain specific language with respect to indemnification against intentional torts – and since the claims of violation of Rule 10b-5(b) and intentional misrepresentation are intentional torts – consistent with the <u>Lamont</u> court, Defendant Willis' request for indemnification should be accordingly denied.  Such denial would, as well, be consistent with public policy as explained by the court in <u>Lamont</u>.

**5.    CONCLUSION**

As demonstrated *supra*, while the net worth of a defendant can be considered, it is not required under Texas law in evaluating exemplary damages.  To that end, the convenience to the Court and lack of prejudice to Defendant Willis supports trying the compensatory and exemplary damages claims together.  Furthermore, pursuant to the case law and argument cited above, public policy dictates that the indemnification provision of Section 13.10 (i) be applied in the event the Plaintiff prevails in either or both of its claims against Defendant Willis, and (ii) not be applied in the event Defendant Willis prevails on either or both of these claims.

Respectfully submitted,

DATED: January 17, 2020                    PANAKOS LAW, APC

By:  /s/ Aaron D. Sadock
Attorney for Plaintiff
ENSOURCE INVESTMENTS LLC