**PANAKOS LAW, APC**
Aaron D. Sadock (SBN 282131)
555 West Beech Street, Ste. 500
San Diego, California 92101
Telephone:   (619) 800-0529
Facsimile:    (866) 365-4856
Email: asadock@panakoslaw.com

**RICHARD E. NAWRACAJ**
Law Offices of Richard E. Nawracaj
155 N. Wacker Drive, Suite 4250
Chicago, Illinois 60606
Email: rich.nawracaj@nawracaj-law.com

Attorneys for Plaintiff ENSOURCE INVESTMENTS LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENSOURCE INVESTMENTS LLC, a Delaware limited liability company,<br><br>             Plaintiff,<br><br>v.<br><br>THOMAS P. TATHAM, an individual; MARK A. WILLIS, an individual; PDP MANAGEMENT GROUP, LLC, a Texas limited liability company; TITLE ROVER, LLC, a Texas limited liability company; BEYOND REVIEW, LLC, a Texas limited liability company; IMAGE ENGINE, LLC, a Texas limited liability company; WILLIS GROUP, LLC, a Texas limited liability company; and DOES 1-50,<br><br>             Defendants. | Case No.: 3:17-CV-00079-H-LL<br><br>**PLAINTIFF ENSOURCE INVESTMENTS LLC'S OPPOSITION TO THE WILLIS GROUP LLC'S MOTION FOR ATTORNEY'S FEES**<br><br>**Date: February 3, 2020**<br>**Time: 10:30a.m.**<br>**Courtroom: 15A**<br><br>Magistrate Judge: Hon. Linda Lopez<br>District Judge: Hon. Marilyn L. Huff<br>Courtroom: 15A<br>Action filed:  January 13, 2017 |

## I.  INTRODUCTION

The Third Amended and Restated Company Agreement of Hopewell-Pilot Project supports that Willis Group cannot unilaterally seek attorney's fees from Plaintiff alone and that Section 13.10 does not apply in this situation. Even if Section 13.10 did apply to this situation, it does not meet the requirements under the express negligence doctrine to be enforceable. In the event the Court finds that Section 13.10 is in fact applicable and enforceable, Plaintiff would only be responsible for a <u>portion</u> of the fees under the plain language of the section itself. Defendant also did not meet its burden to show that its fees were reasonable for purposes of its motion. For these reasons, Defendant's motion for attorney fees should be denied.

## II.  ARGUMENT

### A. The Agreement Itself Does Not Support That Plaintiff Is Responsible for The Fees of Willis Group

"Principles of contract law require courts to ascertain and give effect to the intentions of the parties as expressed within the four corners of the agreement." <u>Hamblin v. Lamont</u> 433 S.W.3d 51, 54 (Tex. App. 2013). Indemnity agreements are construed under the normal rules of contract construction. <u>Gulf Ins. Co. v. Burns Motors, Inc.,</u> 22 S.W.3d 417, 423 (Tex.2000). Indemnity clauses must be clear and unambiguous. If an indemnity clause is capable of two different meanings, then it will be unenforceable as a matter of law. See <u>Trans. Gas Pipeline v. Texaco</u> 35 S.W.3rd 658 (Tex.App. 2000). "[A] contract may be construed against the drafter only as a last resort when all other rules of construction leave the court with doubt as to its meaning." <u>AT&T Corp. v. Rylander</u>, 2 S.W.3d 546, 560 (Tex. App. 1999, pet. denied).

"To be enforceable, an indemnity contract must satisfy the fair notice requirements: (1) the express negligence doctrine and (2) the conspicuousness requirement." <u>Hamblin v. Lamont</u>, 433 S.W.3d 51, 55 (Tex. App. 2013).

Under the express negligence doctrine, "parties seeking to indemnify the indemnitee from the consequences of its own negligence *must express that intent in specific terms.* Under the doctrine of express negligence, the *intent of the parties must be specifically stated within the four corners of the contract.*" Hamblin v. Lamont, 433 S.W.3d 51, 56 (Tex. App. 2013) (citing *Ethyl Corp.* 725 S.W.2d at 708 (emphasis added)). "This rule has been expanded to contracts indemnifying against other risks besides the indemnitee's own negligence." Transcon. Gas Pipeline Corp. v. Texaco, Inc., 35 S.W.3d 658, 669 (Tex. App. 2000); see Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 387 (Tex. 1997).

"The express negligence rule applies only to indemnification against future acts of negligence, not past acts" and so the rule does not apply to the case at bar since, *de facto*, the acts of negligence for which Defendant Willis Group seeks indemnification occurred prior to the execution of the very document providing such indemnity. *Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 387 (Tex.1997). Furthermore, Section 13.10 does not contain the language necessary for Plaintiff to be responsible for any fees resulting from this lawsuit. It reads as follows:

> Section 13.10 Indemnification. To the fullest extent permitted by law, each Member shall indemnify the Company, and each other Member and hold them harmless from and against all losses, costs, liabilities, damages, and expenses (including, without limitation, costs of suit and attorney's fees) they may incur on account of any breach by that Member of this Agreement or on account of ***any business activities*** conducted by that Member or its affiliates prior to the Effective Date of this Agreement. (emphasis added).

Contrary to Defendant's assertion that Article XIII must be read "in context" of Article IX (see Mtn. p. 6:5-9), the Texas Supreme Court described the context for purposes of reading the contract as surrounding circumstances that include 'the commercial or other setting in which the contract was negotiated and other *objectively determinable* factors that give a context to the transaction

between the parties.' " URI, Inc. v. Kleberg Cty., 543 S.W.3d 755, 768 (Tex. 2018) (quoting Hous. Expl. Co. v. Wellington Underwriting Agencies, Ltd., 352 S.W.3d 462, 469 (Tex. 2011)). The transactional context for purposes of reviewing the Agreement, which is defined as "Company Business" is the following:

> "to acquire and own oil, gas and mineral leases, mineral interests, royalty interests, top leases, and options related to the foregoing in Madison County, Texas and to develop a land management, legal and technical team capable of implementing a similar broad strategy to finance and acquire oil, gas and mineral leases, mineral interests, royalty interests, top leases, and options in the Area of Mutual Interest."

See Def's. Ex. A, p. 4. The Agreement itself does not explicitly reference proceedings brought by one member against another member, nor did the transaction contemplate lawsuits between members. Taken in context of the setting in which the Agreement was negotiated, the provision does not apply to indemnification for this lawsuit and instead contemplates past actions which occurred prior to the Effective Date of the Agreement related to acquiring oil, gas and mineral leases.

The drafting of the agreement does not support Defendant's argument that Article IX and Article XIII should be read together for purposes of indemnification. Despite Defendant's argument that the exculpation agreement (section 9.1) should be read together with section 13.10, Section 9.1 is not an indemnification provision, since it does not shift any responsibility by any Covered Person to anyone else. See Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 387. Such a reading of 9.1 with 13.10 is attenuated and against public policy.

The remainder of Article IX includes the rights of Managers for advance payments from the Company (see 9.3), the Company's ability to indemnify

officers, employees or agents via the adoption of a resolution of a Majority Interest (see 9.4), the nonexclusively of rights pursuant to Article IX (9.5), the Company's right to purchase insurance (9.6), the requirement for written notification to members of any indemnification or advance of expenses in accordance with Article IX (9.7), and a savings clause (9.8). See Ex. A, p. 20-21. In short, nothing in Article IX integrates or references Section 13.10, nor does Section 13.10 reference Article IX. Only Article IX specifically states in bold that "**[i]t is expressly acknowledged that the indemnification provided in this Article IX could involve indemnification for negligence of the Manager or under theories of strict liability.**" *See* Ex. A, p. 20, § 9.2. (emphasis added). Such language is <u>not</u> included in Section 13.10. Article IX does not incorporate or reference Article 13 at all, and the specific language of the provisions cited by Defendant in Article 9 only reference the contents <u>within Article IX itself</u>. Article IX appears six pages before Article XIII in the Agreement, and Article IX is titled "Indemnification" whereas Article XIII is titled "General Provisions." The construction of the Agreement should be construed against Willis Group, since its law firm Doherty & Doherty drafted the Agreement. See Ex. A p. 28, § 13.14.

In sum, Section 13.10 is not applicable to the facts at hand, and at best is capable of more than one meaning, rendering it unenforceable. Thus, Defendant's motion should be denied on this basis.

**B. The Indemnity Clause is Not Enforceable Because It Does Not Meet the Requirements Under the Express Negligence Doctrine and Is Against Public Policy**

Even if Section 13.10 is applicable, the requirements under the express negligence rule are not met for Plaintiff to be solely responsible for Defendant's fees and costs arising out of this lawsuit. "Where an indemnitor is not contractually obligated to indemnify an indemnitee's negligence then it is not liable for attorney's fees or other costs of defense." <u>Fisk Elec. Co. v. Constructors & Assocs., Inc.</u>, 888

S.W.2d 813, 815 (Tex. 1994).

Section 13.10 did not express the intent that the indemnitee will be indemnified from the consequences of its own negligence. "Either the indemnity agreement is clear and enforceable, or it is not." DDD Energy, Inc. v. Veritas DGC Land, Inc., 60 S.W.3d 880, 884 (Tex. App. 2001). Here, the provision is not clear and enforceable.

Section 9.2 is the only provision that would meet the requirements of the express negligence rule, since it states that "each Manager who was or is made a party….in any threatened, pending, or completed action, suit or proceeding….shall be indemnified by the Company to the fullest extent permitted by the Code…..indemnification provided in this Article IX could involve indemnification for negligence of the Manager or under theories of strict liability."  However, Section 9.2 does not apply to Willis Group because it only refers to indemnification of a **Manager** <u>by the Company itself</u>. Willis Group is not a Manager and Plaintiff is not the Company. As discussed *supra*, Article IX is not integrated into Article XIII. Section 13.10 omits the language required for the specific negligence doctrine to be enforceable.

If the Court is inclined to follow Defendant's interpretation of the clause, then section 13.10 confers indemnity upon <u>each Member and the Company</u> for already existing liability prior to the signing of this Agreement <u>without the appropriate language</u> needed to express that intent. For these reasons, Section 13.10 is unenforceable as a matter of law and Defendant's request for fees should be denied.

### 1. The Clause is Not Conspicuous For Purposes of the Fair Notice Requirement

Section 13.10 is buried in "General Provisions" instead of being grouped with Article 9 raising serious questions about the conspicuousness of the section. The conspicuous requirement mandates "that something must appear on the face of

the [contract] to attract the attention of a reasonable person when he looks at it." Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 508 (Tex. 1993) (quoting Ling & Co. v. Trinity Sav. & Loan Ass'n, 482 S.W.2d 841, 843 (Tex.1972). The title of Section 13.10 alone is not sufficient to be conspicuous, and the text was in the same print as the rest of the surrounding provisions, and was not distinguishable in typeface, size, and color.  See Cate v. Dover Corp., 790 S.W.2d 559, 561 (Tex. 1990). Defendant has not submitted evidence of Plaintiff's actual knowledge of the indemnity clause despite arguing that Plaintiff had an attorney review the language. Nothing in the exhibits provided by Defendant affirmatively show knowledge of section 13.10.  Therefore, fair notice or knowledge is not established to render the provision enforceable.

### C. In the event the Court finds indemnity is applicable, there should be proportional liability between all members.

The members pursuant to the Agreement include: 1. Hopewell Willis Holdings LLC; 2.Willis Group LLC; 3. Hopewell Tatham Holdings LLC; 4. LNG Partners LLC; 5. Mark Bush; 6. Gil Lopez III; 7. Michael Casey Foran; 8. Foran Limited; 9. Michael T. Willis; 10. South Padre Gas Partners, L.P.; 11. Thomas Trent Stout; and 12. Ensource Investments, LLC. (*See* Defs. Ex. A p. 39-40.) In the event the Court finds the provision enforceable and applicable, the provision itself does not state that Plaintiff is solely responsible as a member for indemnifying Willis Group.

The language of Section 13.10 expressly states that "*each* member shall indemnify the Company, and *each other* member." If the Agreement contemplated for a single member to be held responsible for another member's attorney's fees and costs, the indemnity provision should state that responsibility. At most, Ensource would be responsible for a portion of any fees and costs recoverable under that provision. Therefore, each member of Hopewell (not just Plaintiff) are responsible for any indemnity of Willis Group in the event the Court finds that the

indemnity clause is enforceable and applicable.

### D. Willis Group Has Not Met Its Burden That Its Attorneys' Fees Are Reasonable

By submitting invoices redacting the categories of work billed, Defendant's attorneys have not met their burden to show that their attorney's fees are reasonable. The Ninth Circuit has previously held that "plaintiff's counsel can meet his burden—although just barely—by simply listing his hours and identify[ing] the general subject matter of his time expenditures." Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1121 (9th Cir. 2000). However, Plaintiff's counsel's request in Fischer included a summary of time spent on categories which included motion practice, court appearances, and pleadings. Id. "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." Gates v. Deukmejian, 987 F.2d at 1397-98 (citing Blum v. Stenson, 465 U.S. 886, 892 n.5 (1984)).

Defendant claims that it needed to submit fully redacted invoices because the case is still ongoing, but Defendant could have simply identified categories of work conducted without compromising the attorney-work product doctrine. Defendant's total fees on their face are surprisingly large in light of the minimal work conducted, but Plaintiff is unable to submit evidence to rebut the accuracy and reasonableness of the hours charged. See Gates v. Deukmejian, 987 F.2d at 1397-98 (citing Blum v. Stenson, 465 U.S. 886, 892 n.5 (1984)). Such deficient and vague billing records more than justify denying fees altogether or, at a minimum, reducing requested fees. Norris v. Sysco Corp., 191 F.3d 1043, 1052 (9th Cir. 1992).

Accordingly, Plaintiff requests the Court to deny Defendant's motion on this basis.

### E. The Evidence Does Not Support An Alter Ego Between Plaintiff and Its Members

Any evaluation of alter ego liability should apply Texas law due to the choice of law clause agreed to by the parties. Piercing the veil is an equitable remedy that is available only in exceptional circumstances under Texas Law. *Wilson v. Davis*, 305 S.W.3d 57, 59, 69 (Tex. App.-Houston [1st Dist.] 2009, no pet.). Section 101.114 of the Business Organizations Code states: "Except as and to the extent the company agreement specifically provides otherwise, a member or manager is not liable for a debt, obligation, or liability of a limited liability company, including a debt, obligation, or liability under a judgment, decree, or order of a court." Only under the exception of constructive fraud could a member be individually liable. Spring St. Partners-IV, L.P. v. Lam, 730 F.3d 427, 443 (5th Cir. 2013) "Examples [of an inequitable result] are when the corporate structure has been abused to perpetrate a fraud, evade an existing obligation, achieve or perpetrate a monopoly, circumvent a statute, protect a crime, or justify wrong. SSP Partners v. Gladstrong Invs. (USA) Corp., 275 S.W.3d 444, 451 (Tex. 2008). No evidence exists showing that the corporate structure has been abused to meet any of these exceptions. Even under California law, the factors are not met sufficient to establish any alter ego liability.

The evidence supports that Ensource is a separate entity from each of its members. For example, Ensource has its own bank account, holds regular meetings, conducts voting pursuant to its Company agreement, and files annual K-1s, among other corporate formalities.  *See* Exhibit A, Declaration of Justin Pannu.

### III.  CONCLUSION

Pursuant to the Third Amended and Restated Company Agreement of Hopewell-Pilot Project, Defendant Willis Group cannot unilaterally seek attorney's fees from Plaintiff alone.  Further, Section 13.10 of such Company Agreement does not apply with respect to the case at bar and, even if it did, Section 13.10 does

not meet the requirements under the express negligence doctrine to be enforceable. Even if the Court found that Section 13.10 is in fact applicable and enforceable, Plaintiff would only be responsible for a <u>portion</u> of the fees under the plain language of the section itself. Defendant also did not meet its burden to show that its fees were reasonable for purposes of its motion. For these reasons, Defendant's motion for attorney fees should be denied.

Respectfully submitted,

DATED: January 17, 2020                    PANAKOS LAW, APC

                                           By: <u>/s/ Aaron D. Sadock</u>
                                           Attorney for Plaintiff
                                           ENSOURCE INVESTMENTS LLC