1                    UNITED STATES DISTRICT COURT

2                  SOUTHERN DISTRICT OF CALIFORNIA

3

4  ENSOURCE INVESTMENTS, LLC,     )  Case No. 17CV0079-H-LL
                                  )
5            Plaintiff,           )  San Diego, California
                                  )
6  vs.                            )  Friday,
                                  )  December 13, 2019
7  TATHAM, et al.,                )  10:30 a.m.
                                  )
8            Defendants.          )
   _____)

9
                   TRANSCRIPT OF FINAL PRETRIAL CONFERENCE
10             BEFORE THE HONORABLE MARILYN L. HUFF
                   UNITED STATES DISTRICT JUDGE
11
   APPEARANCES:
12
   For the Plaintiff:            VERONICA MCKNIGHT, ESQ.
13                               AARON D. SADOCK, ESQ.
                                 Panakos Law, APC
14                               555 West Beech Street
                                 Suite 500
15                               San Diego, California 92101
                                 (619) 800-0529
16
                                 RICHARD E. NAWRACAJ, ESQ.
17                               Law Offices of Richard E.
                                   Nawracaj
18                               155 North Wacker Drive
                                 Suite 4250
19                               Chicago, Illinois 60606
                                 (312) 803-4837
20

21

22

23

24
   Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

*Echo Reporting, Inc.*

ii

1 APPEARANCES:   (Cont'd.)

2 For the Defendants:            SHANNON D. SWEENEY, ESQ.
                                MICHAEL ZARCONI, ESQ.
3                               Sullivan, Hill, Rez & Engel,
                                  APLC
4                               600 B Street, Suite 1700
                                San Diego, California 92101
5                               (619) 233-4100

6 Transcript Ordered by:        SHONNON D. SWEENEY, ESQ.

7 Court Recorder:               Lynnette Lawrence
                                United States District Court
8                               333 West Broadway
                                San Diego, California 92101
9
  Transcriber:                  Jordan R. Keilty
10                              Echo Reporting, Inc.
                                2160 Fletcher Parkway
11                              Suite 209
                                El Cajon, California 92020
12                              (858) 453-7590

13

14

15

16

17

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*

1

1    <u>SAN DIEGO, CALIFORNIA  FRIDAY, DECEMBER 13, 2019 10:30 A.M.</u>

2                                --oOo--

3        (Call to order of the Court.)

4            THE CLERK:  Calling matter one on calendar,

5    17CV0079, Ensource Investments, LLC versus Tatham, et al., for

6    a final pretrial conference.

7            THE COURT:  Good morning.  Could you state your

8    appearances, first for the Plaintiff.

9            MS. MCKNIGHT:  Good morning.  Bonnie McKnight on

10   behalf of Plaintiff.

11           MR. NAWRACAJ:  Good morning, your Honor.  Rich

12   Nawracaj on behalf of the Plaintiff.

13           THE COURT:  All right.  And on behalf of the

14   Defendant?

15           MR. SADOCK (telephonic):  Good morning, your Honor.

16   Aaron Sadock on behalf of the Plaintiffs.

17           THE COURT:  Oh, thank you.  And can you spell your

18   last name.

19           MR. SADOCK:  Yes.  S-A-D-O-C-K.

20           THE COURT:  And are you in lovely France?

21           MR. SADOCK:  I am, with in and out reception.  So I

22   will be on mute for most of the time, your Honor.

23           THE COURT:  All right.  Thank you.

24           MR. SADOCK:  I apologize.

25           THE COURT:  Thank you.

2

1          MS. SWEENEY:  Shannon Sweeney appearing on behalf
2   of the Willis Defendants, Mark Willis, the Willis Group, Image
3   Engine, and Beyond Review.
4          MR. ZARCONI:  Michael Zarconi on behalf of the
5   Defendants.
6          THE COURT:  So are those the only parties that
7   remain in this case?
8          MS. MCKNIGHT:  Yes, I believe so.
9          MS. SWEENEY:  And, your Honor, based on the summary
10  judgment ruling dismissing most of the Willis Defendants, we
11  were wondering if you were planning to enter an order of
12  dismissal or a judgment on behalf of the other Willis
13  Defendants at this point or if you would consider doing so.
14         THE COURT:  You would need to submit a written
15  request.
16         MS. SWEENEY:  Okay.
17         THE COURT:  All right.  So the only people going to
18  trial would be who?
19         MS. SWEENEY:  Mark Willis.
20         THE COURT:  Mark Willis.  And you agree?
21         MS. MCKNIGHT:  That's correct.
22         THE COURT:  All right.  I have reviewed the
23  voluminous dockets.  That's one of the things I was getting
24  prepared, and so Hopewell is not in the case, correct?
25         MS. MCKNIGHT:  That's correct, your Honor.

3

1          THE COURT:  All right.  So in your estimate of time

2 for trial, the Court had previously given nine hours a side.

3 That's a four-day trial.  You're estimating nine days.  This

4 is no way a nine-day case.  So what do you realistically

5 think?  There's only the one Defendant.  We're talking about

6 the technology.  You have listed six witnesses for sure and

7 some reserved witnesses, and you've listed some of the same,

8 but so do you think that you can do this in four days?  I have

9 a criminal case the week right after.

10          MS. SWEENEY:  I think five days is doable.  I don't

11 know how Plaintiff feels.

12          MS. MCKNIGHT:  I think four days would be too

13 short, your Honor.  I think five days would be more realistic.

14 Our concern is even though there's just one Defendant in the

15 case, there will be third party witnesses, including Mr.

16 Stanley and Mr. Tatham, as well as our expert, and because

17 of --

18          THE COURT:  Your expert would be an hour?

19          MS. MCKNIGHT:  That's -- that's true.

20          THE COURT:  And Mr. Tatham will be coming for sure?

21          MS. MCKNIGHT:  Our understanding is he will be.  So

22 I think that Mr. Tatham would take -- we would take, you know,

23 an hour with him, but I don't know how long, you know, the

24 defense counsel anticipates.  I could see Mr. Tatham going

25 longer than maybe we expect.

4

1          THE COURT:  So do you think you could do it in five

2     days?  It's problematic for me because of the criminal case

3     schedule, but the Court could potentially expand it if both

4     sides say that you can do it in five days, but you really need

5     -- especially on this, you can lose a jury if you're talking

6     about the same thing over and over and over again.

7          MS. MCKNIGHT:  That's fair.  I think we can work

8     with five days.

9          THE COURT:  All right.  So then the separate issue

10    is on the intentional misrepresentation claim under Texas law,

11    there's a request for punitive damages.

12         MS. MCKNIGHT:  Correct.

13         THE COURT:  And, typically, unless the Defendant

14    agrees, which he's not, we would not get into his network or

15    other things absent first the finding in the special verdict

16    form, do we the jury find by clear and convincing evidence,

17    whatever the requisite standard is for -- usually in

18    California it would be malice, oppression or fraud.  You can

19    propose that, and if they say no, then you don't go further.

20    If they say yes, then there's a short trial or stipulation

21    about the amount, financial net worth of the Defendant and

22    then a separate finding by the jury.

23         Now, the five days includes that, and what you

24    don't know is how long is the jury going to be out

25    deliberating.  So we might have to somewhat adjust because

5

1  we'll probably be going into another trial.  So you'd have to

2  be flexible on this.  So I would grant the Defendants' request

3  for bifurcation, first having the jury make a finding on the

4  issue of the predicate for punitive damages under Texas law,

5  before any net worth information.  There's going to be some

6  financial information because of the investment nature of it,

7  but that's not what we're talking about.  We're talking about

8  under Texas law the -- the parties have agreed that Section

9  41.008 limits an award of exemplary damages to the greater of

10 two times the amount of economic damages plus an amount equal

11 to any non-economic damages found by the jury not to exceed

12 $750,000 or $200,000.  So maybe under Texas law you don't get

13 into the financial net worth of the Defendant.  Is that what

14 happens?

15         MS. MCKNIGHT:  I think, your Honor, that you do get

16 into that and that that might form the basis of at least this

17 section one there, two times.  Perhaps the Court accepts the

18 jury --

19         THE COURT:  So will the jury be -- so they will

20 make a finding of economic and non-economic damages in the

21 verdict form?

22         MS. MCKNIGHT:  Yes.

23         MS. SWEENEY:  I think that's right, yes.

24         THE COURT:  And that would be Plaintiff's loss of

25 the investment.  What are the non-economic damages?

6

1          MS. MCKNIGHT:  I think it would just be economic
2  damages, your Honor.  I don't think we have any non-economic.
3          THE COURT:  Okay.  Because it's not a tort?
4          MS. MCKNIGHT:  Correct.
5          THE COURT:  It's --
6          MS. MCKNIGHT:  Well --
7          THE COURT:  -- intentional misrepresentation?
8          MS. MCKNIGHT:  Correct.  It is -- it is still --
9  it's -- the damage is the economic damages.  We don't have any
10  allegations of -- what's it called, other special damages?
11          MS. SWEENEY:  Pain and suffering.
12          MS. MCKNIGHT:  Pain and suffering.  Thank you.
13          MS. SWEENEY:  Yeah.
14          THE COURT:  All right.  So then we wouldn't take
15  additional evidence in the bifurcated matter, right?  You
16  would simply just then argue to the jury?  If it's just this,
17  why do you need it to be bifurcated?  If it's just limited to
18  two times the amount of economic damages or $200,000, why
19  couldn't they just make that finding on the jury -- on the
20  verdict form?
21          MS. SWEENEY:  I think they would have to have
22  grounds to make that finding.  The jury might determine that
23  punitive damages are warranted but they are only warranted in
24  the amount of one dollar, that the -- the amount -- the Texas
25  statute does not require those amounts.  It's a limitation

7

1 that's the cap.  So they would need to judge somehow based on

2 something whether they were warranted and -- and what amount.

3        THE COURT:  So I need more information about the

4 Texas process in order -- so it may be -- so right now the

5 whole case is five days, including any other phase.  I'm

6 reserving -- I'm backtracking on the request to bifurcate.  If

7 there is this limitation and we don't get into the personal,

8 financial, and net worth of the Defendant, then -- then it

9 could just be one more answer on the verdict form, what amount

10 do you find.

11        MS. SWEENEY:  So, your Honor, if it's okay, we'll

12 go ahead and do a little bit of research on Texas procedure,

13 and we'll meet and confer and --

14        THE COURT:  Uh-huh.  So we'll reserve that right

15 but recognize that if it is, the five days includes any

16 bifurcated amount.

17        MS. SWEENEY:  Okay.

18        THE COURT:  Okay.  So you'll have to figure that

19 out.  And also whether we should just do it all at once so

20 it's all there and, like any verdict form, if they don't find

21 by clear and convincing evidence -- it's probably one or the

22 other.  If they're going to -- if the Defense prevails, no

23 10(b)(5), no intentional misrepresentation.  They're not going

24 to find punitive damages.  On the other hand, if the Plaintiff

25 prevails, there's probably a good argument for punitive

8

1 damages.  We don't know the amount.

2          MS. SWEENEY:  I think as a matter of law, if

3 Defense prevails on the liability aspects, there can be no

4 punitive damages.

5          THE COURT:  Correct.  Correct.  So if we're just --

6 you're going to say that they're zero, and they're going to

7 say we win, and so maybe we should just do it all together.

8 So you -- I'll set out a little briefing schedule for you to

9 tell me more about the Texas procedure on punitive damages and

10 also as to whether it applies here.

11          Then I also had a question about the

12 indemnification and attorneys' fees.  How -- so the Defense is

13 saying that the Plaintiff agreed in the doc to indemnify the

14 Defendant in any event, but how, if there is a 10(b)(5)

15 violation or intentional misrepresentation, how can that

16 apply?

17          MS. SWEENEY:  Well, there's no limitation.  It does

18 say to the fullest extent of the law.

19          THE COURT:  But it doesn't -- it seems like that

20 would be against public policy to make sure that you're -- and

21 -- that you are in -- you've agreed to indemnify.  So why

22 wouldn't this be subject to a motion to dismiss?  What has

23 been the point of this entire litigation if they can't

24 prevail?

25          MS. SWEENEY:  I think then the question that your

9

1 Honor is asking perhaps is whether or not this is a prevailing
2 party attorneys' fees provision or whether the indemnification
3 applies per se and the mere act of bringing a lawsuit as a
4 result of business activities makes the whole thing moot.

5         MR. NAWRACAJ:  Your Honor, if I may.  Plaintiff
6 agrees with your Honor's thought process.  It seems to me that
7 this sort of indemnity would not apply to intentional torts,
8 somewhat like indemnifying a board of director.  Usually
9 there's indemnification.  However, if there's intentional
10 tort, there would not be an indemnification owed to that
11 director.

12        It appears that this is that type of clause.  And
13 so with respect to the 10(b)(5) claim, unintentional tort, we
14 believe that this clause would be inapplicable.

15        THE COURT:  What if they win, though?  If they win
16 and there is no fraud or 10(b)(5) violation, then there's
17 nothing to prevent them from seeking all their costs and fees
18 back against you.

19        MS. SWEENEY:  Exactly, your Honor.

20        THE COURT:  So doesn't this seem to be a court
21 issue later rather than a jury issue?

22        MS. SWEENEY:  I think so.  I think the way --

23        THE COURT:  But they're more at risk.  If they win,
24 great for them.  But if they lose, you're going to seek all of
25 your attorneys' fees and everything else against them.

10

1        MS. SWEENEY:  That's correct.  That's how we see

2 it, your Honor.

3        MR. NAWRACAJ:  Agreed.  I think it would be a court

4 issue.

5        THE COURT:  So if it is a court issue and it --

6 I'll let you -- I'll also set up a briefing schedule to brief

7 this issue, but it seems to me that it's not relevant before

8 the jury.  How would it be relevant before the jury?

9        MS. SWEENEY:  I'm not sure it is, your Honor.  We

10 put it in here because we were trying to set forth the issues

11 for the Court that we see as being germane.  To the extent

12 that the information contained herein is intended to go to the

13 jury, then we may want to modify it and take out for some of

14 the arguments and some of the -- I can put -- there's several

15 things in here that we would not expect would go to the jury.

16        THE COURT:  The pretrial conference order -- the

17 jury statement I will say to the jury.  The pretrial

18 conference order doesn't go to the jury.  But it does

19 supersede all of the -- all of the pleadings.  So it may need

20 some additional work.

21        MS. SWEENEY:  We also made note in the proposed

22 order, your Honor, that the statement of stipulated facts, we

23 agree on the facts that are listed, but we have not artfully

24 put them together in a way that would be meaningful or

25 interesting to a jury.  So we have asked the Court's leave to

11

1  wordsmith it a bit to make it read better.

2             THE COURT:  You mean on the jury statement?

3             MS. SWEENEY:  No.  Exhibit E, which is the

4  statement of stipulated facts.

5             THE COURT:  Oh, I see.  Oh, I see, for the jury.

6  And can you meet and confer and come up with an agreed set?

7             MS. SWEENEY:  Yes, we agree on --

8             THE COURT:  Especially if you're saying it's five

9  days.  Then to the extent you can just tell them, "Here, this

10 -- these are facts," that saves time.

11            MS. SWEENEY:  Yes.  We do agree on the facts that

12 are listed.  We just haven't put it together very

13 attractively.

14            THE COURT:  All right.  I'll let you do that.

15            On the prejudgment and post-judgment interest, is

16 that for the Court to decide or the jury to decide?

17            MS. MCKNIGHT:  For the Court.

18            THE COURT:  Do the parties agree?

19            MS. SWEENEY:  We agree.

20            THE COURT:  And attorneys' fees also for the Court?

21            MS. MCKNIGHT:  Yes.

22            MS. SWEENEY:  Yes.

23            THE COURT:  So in the scheduling order, we also had

24 a request for the jury questionnaire.  Is that correct?

25            MS. SWEENEY:  I believe your Honor has that listed

12

1 as being due on January 27th, along with the jury instructions
2 and the special verdict form.

3          THE COURT:  That would be too late for the -- that
4 would be way too late for the trial.

5          MS. MCKNIGHT:  I think it's actually -- we have the
6 jury questionnaire as being January 13th.

7          MS. SWEENEY:  Okay.  Yeah.

8          THE COURT:  Is that too late?  We need at least a
9 month.  So that's too late.  That's too late.  So we're going
10 to have to change that.

11     (Pause to confer with the clerk.)

12          THE COURT:  Okay.  So it will be -- the jury
13 questionnaire will be due January the 3rd.  And you can look
14 online for other jury questionnaires that are done.  It's not
15 in time to -- so our jury selection usually takes about an
16 hour.  We have a questionnaire.  We send that out.  You get
17 the answers to the questionnaire.  We excuse those who don't
18 want to be here, so you have willing jurors who are happy
19 jurors as opposed to people who want every excuse not to be
20 here, and -- and then the Court will give you probably 20 to
21 30 minutes, maybe only 20 minutes, for follow-up questions for
22 the jury.  So it goes pretty quickly.  And typically we have
23 eight jurors.  There are no alternates.  They all sit, and
24 then you can lose two and still have a -- a jury.

25          MS. SWEENEY:  How many challenges for each side?

13

1          THE COURT:  Three.  So the Court will do an amended

2 pretrial order and send out a briefing schedule on the items

3 that we identified.

4          Do you have any questions?

5          MS. SWEENEY:  I have a couple of questions, your

6 Honor.  The first one is right now our exhibit lists are very

7 large, and they contain a lot of duplications.  And so we have

8 met and conferred and agreed that we're going to go about

9 culling it down and trying to remove the duplicates.

10          At what point would the Court like to have the

11 amended jury list -- the exhibit list, and at what point will

12 the Court be making rulings on the objections?

13          THE COURT:  I won't be making any rulings on the

14 objections.

15          MS. SWEENEY:  Okay.

16          THE COURT:  I'll just make those as we go.

17          MS. SWEENEY:  Okay.  And if we have not --

18          THE COURT:  Usually people designate everything for

19 fear that they're going to miss something and not be able to

20 get it in, and then usually there's only about 10 really good

21 exhibits that everybody uses and a bunch of peripheral things

22 that you need to get in for the appellate record, but I don't

23 mind -- I don't need it until the day before, and even though

24 it's this exhibit list, you have your pretrial order.  There's

25 -- in our scheduling order, there's a separate exhibit list

14

1  for my court clerk, and that's -- and I don't mind if it's

2  that one side uses -- that Plaintiff uses numbers and

3  Defendant uses letters.  It doesn't matter, because that just

4  means where the exhibits go back to.

5          MS. SWEENEY:  And, in some instances, we decline to

6  object on relevance grounds because we don't know for what

7  purpose it will be offered.

8          THE COURT:  Exactly.

9          MS. SWEENEY:  Are we foreclosed from making a

10 relevance objection at trial if we have not made it on the

11 list here?

12         THE COURT:  Oh, you're supposed to make it on the

13 list, but I'm not going to rule on them either.  So you would

14 have to -- if it's totally irrelevant, you can raise it at the

15 time.

16         MS. SWEENEY:  Okay.

17         THE COURT:  But you do have to disclose all the

18 exhibits.  So there's nothing holding back.  This is all lay

19 your cards on the table.  You can't reserve things for

20 impeachment.  It's really you should have in all of the Rule

21 26, all of the discovery.  You should really, if you have an

22 exhibit, make sure that it's listed.  And if you haven't, then

23 do it ASAP so that the other side knows.

24         And then also the two of you -- this -- I differ

25 from one of my colleagues on this.  I have no objection if you

15

1  want to say to the jury "We admit Exhibits 1 through 10."
2  They're in.  All right.  They're in.  You don't have to do a
3  foundation with -- if you both agree.  It's safe.  It's on
4  time.
5          MS. SWEENEY:  Okay.
6          THE COURT:  My colleague, on the other hand, says,
7  well, if it's in evidence and the jury never heard about it,
8  that's bad, and I think, well, I think it's good.  It's in
9  evidence.  They can read it, and you don't have -- you can
10  only show them the relevant parts, not every single page, but
11  so you are free to say we agree these exhibits all come in.
12  You don't really have any foundation.  You don't really have
13  hearsay objections.  It simplifies everything.  It happens in
14  patent cases quite often that a lot of stuff is just admitted,
15  and you just have to make sure that you don't have objections
16  to -- nobody sneaks something in.
17          MS. SWEENEY:  Right.
18          THE COURT:  But it saves a lot of time.  Thank you.
19  That's great.
20          MS. SWEENEY:  We wanted to both ask about
21  technology in the courtroom.
22          THE COURT:  We have the -- you can reserve a time
23  to meet with my courtroom clerk.  We have a big screen.  It
24  doesn't really work very well.  The jurors, every other one
25  has a little monitor, and so most people -- if you have the

*Echo Reporting, Inc.*

16

1 big screen, you have to pay to bring in a device, and that's

2 expensive.  We have the computer, and we have the ELMO, and

3 you can annotate on the computer, and you can reserve a time

4 with my clerk to go over that.

5         Sometimes a gremlin sneaks into our courtroom and

6 the technology, for whatever reason, freezes a little bit.

7 Hasn't happened so much.  It used to happen more with Apple

8 related products, but I think it's pretty good now.  So you

9 can figure out how -- and so if you can key up the documents

10 and easily go through it.  If you're annotating, my clerk has

11 to go back and reset the witnesses monitor, but you can have a

12 time to then go over that.

13        MS. SWEENEY:  Okay.  Thank you.  Does your Honor

14 want all argument and exam from the podium or are we free to

15 move around?

16        THE COURT:  So we are on recording equipment.  So

17 you really need to be by a mic.  But you can -- you can move

18 around.  Typically most people, because you have to be by the

19 mic, go there.  But sometimes they need to come up.  I really

20 don't like the witnesses to come down in the well because then

21 we've got like two different microphones.  Even though we can

22 hear, the record is being made, and so if you're not near a

23 microphone, the record gets messed up.

24        MS. SWEENEY:  Okay.  And do you have time

25 limitations for openings and closings or you just determine

17

1 that on --

2         THE COURT:  I would think for openings it probably

3 shouldn't be more than an hour because, remember, your

4 openings, closings, settling jury instructions, everything,

5 that's part of all over time limits.  So when I say five days,

6 I'll amend it to how many hours, but it's all inclusive.  So

7 -- so closing, you can't -- you can't save your time.  I've

8 had people save your time -- can I argue for two days?  No.

9 It doesn't work that way either, and the one who did, the

10 middle juror was asleep, and the other side was complaining

11 that they were going over their time, but the middle juror was

12 asleep and wasn't buying it and was obvious.  We had to wake

13 up the middle juror, but they wanted to keep arguing, and so

14 they did, and it -- it didn't work out so well for them.  So

15 you just have to use some reason.

16         It is a complicated case.  It's a complicated set

17 of facts, but, as I said, most of the time we're pretty

18 efficient, and most of the time the parties say, "Boy, this

19 case is going a whole lot faster than we anticipated."  So

20 make sure you've got witnesses and things to do that would

21 fill up the entire day.

22         And on the time, usually we go from 9:00 to 5:00,

23 and if we're -- if we are kind of delayed on getting through

24 the case, we might go a little bit longer, and we only take

25 one hour for lunch.  There's a witness room, and hopefully we

18

1 can agree one -- there's one witness room here, and then we

2 can try to get one other witness room that's down there that

3 you can use as a little war room.

4          MS. SWEENEY:  Are you dark on Fridays?

5          THE COURT:  No.

6          MS. SWEENEY:  Okay.

7          THE COURT:  No.  We're -- so it would be Monday --

8 it would be Tuesday through Friday, and I do have a calendar

9 on the 10th.  We'll have to see what happens there, if we're

10 finishing up or not.

11          MS. SWEENEY:  Last question.

12          THE COURT:  Uh-huh.

13          MS. SWEENEY:  Motions in limine, are we limited

14 by --

15          THE COURT:  Three -- I think we said -- did we say

16 three or five?  It's in the scheduling order.

17          MS. MCKNIGHT:  I think it's three.

18          MS. SWEENEY:  Is it?  Okay.

19          THE COURT:  Absent further order of the Court.

20 Okay.  It's not supposed to be summary judgment.

21          MS. SWEENEY:  Yes.

22          THE COURT:  And there might be evidence, things

23 that you want to raise.  So if you have a good-faith belief

24 that -- and a lot of times it's just the tentative.  So you

25 can get my thoughts.  It may not be a final order as to

19

1 evidence changes at the time of trial, but so it's three

2 absent further order of the Court.  If you really have, you

3 know, five that you need to -- and don't make three, meaning

4 three with 10 subparts.  That doesn't work either.  And

5 they're really truly supposed to be things that you need the

6 Court to exclude, and it's not supposed to be a substitute for

7 summary judgment.

8          Okay?  Anything else?

9          MS. SWEENEY:  I don't --

10          THE COURT:  So I will revise the pretrial

11 conference order and send out a little briefing schedule on

12 the punitive damages and make it clear that some of the things

13 will be tried to the Court, that Hopewell's not in the case,

14 and that the -- and then you also wanted to request judgment

15 now.  I think even if you get judgment now, I don't think you

16 can appeal that right now on their side.

17          Were you intending the judgment to then be shown to

18 the jury?

19          MS. SWEENEY:  No.

20          THE COURT:  No?

21          MS. SWEENEY:  Not -- no.

22          THE COURT:  You just want those Defendants out?

23          MS. SWEENEY:  Yes.

24          THE COURT:  All right.  Well, submit a request for

25 judgment, and then I'll permit you to oppose if necessary, and

20

1 then the Court can issue a ruling.

2          MS. SWEENEY:  Thank you.

3          THE COURT:  All right.  Thank you very much.

4          MS. MCKNIGHT:  Thank you, your Honor.

5          MR. NAWRACAJ:  Thank you, your Honor.

6          MR. SADOCK:  Thank you, your Honor.

7          THE COURT:  You're welcome.

8      (Proceedings concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

21

1            I certify that the foregoing is a correct

2 transcript from the electronic sound recording of the

3 proceedings in the above-entitled matter.

4

5 /s/Jordan Keilty_____     1/23/20_____
  Transcriber                         Date
6
  FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:
7

8 /s/L.L. Francisco_____
  L.L. Francisco, President
9 Echo Reporting, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*