SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation
Shannon D. Sweeney, SBN 204868
Michael A. Zarconi, SBN 288970
600 B Street, 17th Floor
San Diego, California 92101
Telephone: (619) 233-4100
Fax Number: (619) 231-4372
9404.17558

Attorneys for Defendant, MARK A. WILLIS

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ENSOURCE INVESTMENTS LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS P. TATHAM, an individual; MARK A. WILLIS, an individual; PDP MANAGEMENT GROUP, LLC, a Texas limited liability company; TITLE ROVER, LLC, a Texas limited liability company; BEYOND REVIEW, LLC, a Texas limited liability company; IMAGE ENGINE, LLC, a Texas limited liability company; WILLIS GROUP, LLC, a Texas limited liability company ; and DOES 1-50,<br><br>Defendants. | Case No. 17cv0079 H LL<br><br>**DEFENDANT MARK A. WILLIS' REPLY TO PLAINTIFF ENSOURCE INVESTMENTS LLC'S OPPOSITION TO SUPPLEMENTAL BRIEFING IN RESPONSE TO COURT'S 12/16/19 ORDER**<br><br>Trial Date: February 4, 2020<br>Dept.: 15A<br>Judge: Hon. Marilyn L. Huff<br>Action Filed: January 13, 2017 |

Defendant Mark Willis ("Willis") hereby submits the following reply to the arguments made in Plaintiff's Opposition:

**1. <u>How the Amount of Exemplary Damages for a Claim of Intentional Misrepresentation is Determined Under Texas Law?</u>**

There is no dispute that the Texas Civil Practice and Remedies Code, section 41.011(a) sets forth the types of evidence that the trier of fact may consider when

determining the amount of exemplary damages. That section mandates that the trial of fact *shall* consider the evidence listed in such section. *See* Tex. Civ. Prac. & Rem. Code section 41.011(a). The net worth of the defendant is one of the types of evidence on the list that is relevant to determining the amount of punitive damages.

Plaintiff argues that evidence of net worth is not necessary for determining the amount of punitive damages. The Texas Supreme Court disagrees, recognizing that "the amount of punitive damages necessary to punish and deter wrongful conduct depends on the financial strength of the defendant. That which could be an enormous penalty to one may be but a mere annoyance to another." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 29 (1994). Willis agrees that Plaintiff should not be required to present evidence of his wealth, but the jury should be allowed to hear evidence of his *lack of wealth*, should Willis choose to present it, if the jury is considering an appropriate penalty to punish and deter. *See* Reply Declaration of Shannon Sweeney ("Reply Decl."), ¶5 (Willis intends to present evidence of his lack of wealth during phase two, if any).

And, there is no dispute that such evidence of net worth, if adduced, may <u>only</u> be admitted during the second phase of a bifurcated trial. *See See* Tex. Civ. Prac. & Rem. Code section 41.011(b)("[e]vidence that is relevant only to the amount of exemplary damages that may be awarded [such as net worth] is not admissible during the first phase of a bifurcated trial."); *see also Moriel*, 879 S.W.2d at 30 ("evidence of defendant's net worth, which is generally relevant only to the *amount* of punitive damages, by highlighting the relative wealth of a defendant, has a very real potential for prejudicing the jury's determination of other disputed issues in a tort case.").

**2. <u>Whether the Case Should be Bifurcated to Determine the Amount of Exemplary Damages, if Any, If the Jury Finds by Clear and Convincing Evidence in a First Phase That Such Damages are Warranted?</u>**

On December 19, 2019, Willis' counsel asked Plaintiff to stipulate to

bifurcation based on clear Texas authority, and provided such authority to Plaintiff's counsel. *See* Exhibit A to the Reply Decl. After considering the matter for three weeks, Plaintiff agreed to stipulate to bifurcation on January 7, 2020. *See id*. Willis relied on such stipulation and therefore did not brief the issue in its opening brief (due January 10). *See* Reply Decl., ¶4. More importantly, it did not file a motion *in limine* to exclude evidence of Willis' wealth (or lack thereof) during phase one of the trial when the motions *in limine* were due (January 13). *See id*. On January 14, 2020, Plaintiff reneged on its stipulation, but stated that it would not disclose the reason for the change-of-heart until January 17, 2020. *See* Exhibit B to the Reply Decl. Had Willis known that Plaintiff did not agree with bifurcation, it would have filed a motion *in limine* to address evidence related to Willis' finances in phase one. *See* Reply Decl., ¶4. Plaintiff had weeks to review and consider Willis' request and the authority cited therein. After the passage of so much time, it was reasonable for Willis to assume that Plaintiff had conducted whatever research it deemed necessary, and he was entitled to rely on Plaintiff's agreement. The suspect timing of Plaintiff's withdrawal has prejudiced Willis, and Willis' request for bifurcation should be granted on that basis alone.

The trial should also be bifurcated if the jury determines that there is liability for exemplary damages because Texas law requires it.[1] *See* Tex. Civ. Prac. & Rem. Code §41.009(a)("On motion by a defendant, the Court *shall* provide for a bifurcated trial")(emphasis added); *see also Moriel*, 879 S.W.2d at 30 ("We therefore conclude that a trial court, if presented by a timely motion, should bifurcate the determination of the amount of punitive damages from the remaining issues"). Plaintiff argues that the

---

[1] Phase two does not come into play unless the jury determines there is liability for both compensatory and exemplary damages. *See* Tex. Civ. Prac. & Rem. Code §41.009(c). Simply establishing a Defendant made an intentional misrepresentation is not enough. The parties will address this issue in the special verdict form.

Court has discretion under federal law to determine if bifurcation is warranted. *See e.g.*, Fed. R. Civ. P. 42(b)("the court may order a separate trial of one or more separate issues…"). This is true under federal law when federal law claims give rise to punitive damages (a circumstance not present here), but the cases cited in support of applying federal law herein are inapposite. *See e.g.*, *Holland v. Harmon*, 1999 U.S. Dist. LEXIS 1081, at *1 (N.D. Tex. Jan. 29, 1999)(There, as opposed to here, punitive damages were at issue for both federal and state law claims. When declining to bifurcate the trial on punitive damages on federal law claims, the court determined "there is nothing to be gained by bifurcating the trial of the state-law claims"); *Getty Petroleum Corp. v. Island Transp. Corp.*, 862 F.2d 10, 14 (2d Cir. 1988)(disagreeing, but finding no abuse of discretion, with refusing to bifurcate because other "blatant" evidence supported the award); *and Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004)(court did not abuse discretion in trying *liability* for contract and punitive damages together, which is exactly what would happen here).

Even if the Court applies federal procedural law in this instance, the Court should exercise its discretion in favor of complying with Texas law on the Texas state law claim. It should bifurcate the trial for determining the amount of exemplary damages in a second phase, if warranted. Such decision will not impact the evidence that must come in to establish liability. The only evidence that will be affected by bifurcation is evidence that applies only to the amount of exemplary damages—i.e. evidence of Willis' wealth or lack thereof, comparative evidence of the parties' situations and sensibilities, and evidence of whether Willis' conduct offends a public sense of justice and propriety, etc. Under Texas law, phase two of a bifurcated trial must solely focus on evidence necessary to determine the *amount* of exemplary damages.

/ / /

/ / /

3. **Whether the Indemnification Provision of §13.10 of the Third Amended and Restated Company Agreement of Hopewell-Pilot Project LLC is Against Public Policy if Plaintiff Prevails in Either Remaining Claim?**

Plaintiff's opposition points are completely nonresponsive to the legal question framed by the Court regarding the application of Section 13.10 in the event that Plaintiff prevails. At the pre-trial conference, the Court framed this issue upon which supplemental briefing was requested as follows:

> THE COURT: . . . Then I also had a question about the indemnification and attorneys' fees. How – so the Defense is saying that the Plaintiff agreed in the doc to indemnify the Defendant in any event, but how, if there is a 10 (b) (5) violation or intentional misrepresentation, how can that apply?
>
> MS. SWEENEY: Well, there's no limitation. It does say to the fullest extent of the law.
>
> THE COURT: But it doesn't – it seems like that would be against public policy . . . So why wouldn't this be subject to a motion to dismiss? What has been the point of this entire litigation if they can't prevail?
>
> MS. SWEENEY: I think then the question that your Honor is asking perhaps is whether or not this is a prevailing party attorneys' fees provision or whether the indemnification applies per se and the mere act of bringing a lawsuit as a result of business activities makes the whole thing moot.
>
> MR. NAWRACAJ: Your Honor, if I may. Plaintiff agrees with your Honor's thought process. It seems to me that this sort of indemnity would not apply to intentional torts, something like indemnifying a board of director [sic]. Usually there's indemnification. However, if there's intentional tort, there would not be an indemnification owed to that director. It appears that this is that type of clause. And so with respect to the 10 (b) (5) claim, [an] unintentional [sic] tort, we believe that this clause would be inapplicable.

(Docket No. 176 ln. 11 at 8 to ln. 14 at 9.)

The Court, in its Order Issuing Briefing Schedule for the supplemental briefing then framed the pertinent question as follows: "(3) whether the indemnification provision in § 13.10 of the Third Amended and Restated Company Agreement of the Hopewell-Pilot Project, LLC is against public policy *if Plaintiff prevails* in their securities fraud or intentional misrepresentation claims." (Docket No. 164 ln. 25 at 1

to ln. 1 at 2.) Thus, the question framed by the Court was clearly whether it would be against public policy to interpret the indemnity provision in Section 13.10 to require Plaintiff to indemnify Willis against any attorneys' fees and damages award *Willis* suffered in the event that Plaintiff prevailed—thereby making the entire lawsuit pointless.

The fact that Plaintiff has ostensibly opposed Willis' analysis on this question is all the more curious given the fact that Willis ultimately conceded that such an interpretation would be improper. That is, "[r]eading the entire Hopewell Company Agreement as a whole, Defendant concedes there is no right to exculpation or indemnity from Plaintiff in the event that Plaintiff establishes Defendant's liability for alleged intentional fraud." (Docket No. 170 lns. 15-17 at 4.) Instead, what Plaintiff has actually done is argue, without citation to a single legal authority, that *Plaintiff* should be entitled to indemnity under Section 13.10 in the event that Plaintiff prevails at trial. That was neither the question framed by the Court nor is it at issue at this stage in the litigation. If Plaintiff prevails at trial, Plaintiff can bring a post-trial, noticed motion for attorneys' fees pursuant to the Hopewell Company Agreement if it so chooses. Plaintiff's right to indemnity can and should be briefed and argued by the parties if and only if Plaintiff prevails.[2] That question is simply not before the Court at this time.

/ / /

/ / /

/ / /

[2] Moreover, it remains questionable at best that Plaintiff's initial investment into the Hopewell-Title Rover Project, or its filing and litigating a lawsuit against other members, constitute "business activities" within the meaning of the indemnity clause in Section 13.10 of the Hopewell Company Agreement. Such questions are better left for comprehensive briefing if and only if the Plaintiff prevails at trial and moves for an attorney fee award.

**4. Whether it is Proper to Apply the Indemnification Provision if Defendant Prevails, Assuming the Provision Is Against Public Policy Should Plaintiff Prevail?**

In arguing that Willis has no right to indemnity under Section 13.10 of the Hopewell Company Agreement, Plaintiff concludes:

> Since such provision does not contain specific language with respect to indemnification against intentional torts – and since the claims of violation of Rule 10b-5(b) and intentional misrepresentation are intentional torts – consistent with the Lamont court, Defendant Willis' request for indemnification should be accordingly denied.

(See Docket No. 173 lns. 1-5 at 9.)

However, the question framed by the Court for supplemental briefing on this issue was, "whether it is proper to apply the indemnification provision *if Defendant prevails*. . ." (Docket No. 164 lns. 1-2 at 2 (emphasis added).) If Willis prevails, *there would be no intentional tort as a matter of law*. Accordingly, Plaintiff's entire argument regarding the absence of any language in the indemnity provision clearly expressing the Hopewell Company Agreement Members' intent to indemnify an indemnitee for the indemnitee's intentional torts—the point Willis has already conceded in connection with issue number three (3) above—is wholly inapposite.[3]

Properly framed, the question is whether and to what extent Willis would be entitled to indemnity in the event that he suffers losses arising out of his business activities ("including, without limitation, costs of suit and attorney's fees" (see Ex. B

---

[3] Although not entirely clear from the opposition, Plaintiff appears to be suggesting that mere *allegations* of intentional torts—despite ultimately being disproven—are sufficient to defeat a valid indemnity provision that does not provide express notice of indemnification for intentional torts. If that were the law, which obviously it is not, unsuccessful plaintiffs would be able to overcome otherwise valid indemnity obligations despite filing meritless lawsuits simply by adding a cause of action alleging an intentional tort. Willis assumes that is not the position Plaintiff is actually advancing in its opposition, but if so, reserves the right to further brief this issue in a post-trial, noticed motion for attorneys' fees should Willis ultimately prevail at trial.

to Declaration of Shannon D. Sweeney in Support of Supplemental Brief, Docket No. 170-1, Page ID 5448, § 13.10)) *if no intentional tort was committed*. For all the reasons set forth in Willis' Supplemental Brief and the authorities cited therein (Docket No. 170 ln. 21 at 4 to ln. 11 at 7)—which Plaintiff has simply failed to oppose—the unrefuted answer to that question is "yes."

Dated: January 24, 2020

SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation

By: */s/ Shannon D. Sweeney*
Shannon D. Sweeney
Attorneys for Defendants
MARK A. WILLIS