SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation
Shannon D. Sweeney, SBN 204868
Michael A. Zarconi, SBN 288970
600 B Street, 17th Floor
San Diego, California 92101
Telephone: (619) 233-4100
Fax Number: (619) 231-4372
9404.17558

Attorneys for Defendant THE WILLIS GROUP

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ENSOURCE INVESTMENTS LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>THOMAS P. TATHAM, an individual; MARK A. WILLIS, an individual; PDP MANAGEMENT GROUP, LLC, a Texas limited liability company; TITLE ROVER, LLC, a Texas limited liability company; BEYOND REVIEW, LLC, a Texas limited liability company; IMAGE ENGINE, LLC, a Texas limited liability company; WILLIS GROUP, LLC, a Texas limited liability company; and DOES 1-50,<br><br>    Defendants. | Case No. 17cv0079 H LL<br><br>**REPLY IN SUPPORT OF THE WILLIS GROUP, LLC'S MOTION FOR ATTORNEYS' FEES AGAINST PLAINTIFF AND ITS MEMBERS**<br><br>DATE: February 3, 2020<br>TIME: 10:30 a.m.<br>JUDGE: Hon. Marilyn L. Huff |

As a Member of Hopewell-Pilot Project LLC ("Hopewell") and a party to the Third Amended and Restated Company Agreement ("Agreement"), Plaintiff Ensource Investments, LLC is bound by the Agreement's clear, binding, conspicuous, and enforceable indemnity provision. Plaintiff caused the Willis Group, LLC (another Member of Hopewell) to incur attorneys' fees to defend against Plaintiff's meritless lawsuit arising from the Willis Group's Hopewell business activities. Plaintiff's claims were dismissed on the merits, and the Willis Group was deemed the prevailing party. As such, the indemnity provision must be enforced and, because Ensource is the mere alter ego of its individual members and justice demands it, it must be enforced against Plaintiff and each of its members, jointly and severally.

## I. THE WILLIS GROUP IS ENTITLED TO ITS FEES UNDER THE AGREEMENT

The Agreement makes abundantly clear—especially when, as here, there has been no willful misconduct—that a Member "shall" not be liable to another Member for its acts on behalf of Hopewell *and* that each Member "shall" indemnify the other and hold it harmless for the costs of suit and attorney's fees it incurs on account of such business activities. *See* Ex. A to the Declaration of Shannon Sweeney in support of the Motion ("Sweeney Decl."), §§9.1, 13.10. Notwithstanding Plaintiff's disagreement, it is black letter law that contracts are to be read in context of the four corners of the document. *See Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 2019 Tex. LEXIS 688, at *24 (June 28, 2019)(citing *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018))(contractual language must be interpreted in context); *see also Louder v. Crop Quest, Inc.*, 2014 Tex. App. LEXIS 7368, at *13 (Tex. App. July 8, 2014)("It must be remembered that the meaning of words and passages in a contract are interpreted by considering them within the context of the whole document"); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005)("courts should examine and consider the entire writing in an effort to

harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."); *and R & P Enters. v. La Guarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex. 1980)("Court will examine and consider the entire instrument so that none of the provisions will be rendered meaningless.").

Plaintiff cannot escape that the Agreement has generous indemnity and exculpatory provisions for the benefit of its Managers and Members (*see* Article IX), and that such provisions must be read in conjunction with the express indemnification provision of section 13.10, which states:

> ***Indemnification.*** To the fullest extent permitted by law, <u>each Member shall indemnify</u> the Company, and <u>each other Member</u> and hold them harmless from and against all losses, costs, liabilities, damages and expenses (including, without limitation, costs of suit and attorney's fees) they may incur on account of any breach by that Member of this Agreement or on account of any business activities conducted by that Member or its affiliates prior to the Effective Date of this Agreement.

Ex. A, §13.10 (underline added).

Plaintiff argues that this provision "does not explicitly reference proceedings brought by one member against another member," but it doesn't need to. It is clear that the contractual indemnity (including attorneys' fees) is from one Member to another Member, when such Member has incurred fees as a result of its business activities. Here, the Willis Group has incurred significant attorneys' fees (as of the end of November 2019, $388,107.82 jointly and severally), because its business activities conducted prior to September 1, 2016 made it a target for Plaintiff's baseless and unsupported allegations.[1]

---

[1] Plaintiff is the reason the fees were incurred. If not for Plaintiff's wholly unsupported lawsuit against the Willis Group (which Plaintiff made no effort to prove), the Willis Group would not have needed lawyers, would not have had to defend itself, and would not have been responsible for paying attorneys' fees. The indemnity provision would be inapplicable. Plaintiff argues that the attorneys' fees should be apportioned between all Hopewell Members. Given that none of the other Members created the problem, the suggestion is meritless. Further, it is completely unsupported by law.

## II. THE INDEMNITY CLAUSE IS ENFORCEABLE

Because Texas courts steadfastly protect parties' freedom to contract, they routinely enforce indemnity provisions. The Texas Supreme Court recently explained:

> Texas's public policy that strongly favors freedom of contract. We have repeatedly reaffirmed that competent parties shall have the utmost liberty of contract, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by Courts of justice. This paramount public policy mandates that courts are not lightly to interfere with this freedom of contract. Absent compelling reasons, courts must respect and enforce the terms of a contract the parties have freely and voluntarily entered, and as a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy.

*Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 481 (Tex. 2017)(internal citations omitted); *see also Gym-N-I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 912 (Tex. 2007)(reaffirming that competent parties "shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by Courts of justice"). The indemnity provision herein, and the Agreement as a whole, does not impinge on any public policy concerns.

Courts acknowledge that that there is a risk for parties to indemnify unknown intentional conduct that might occur in the future. Such provisions are to be viewed carefully, if not with skepticism. *See e.g., Hamblin v. Lamont*, 433 S.W.3d 51, 57 (Tex. App. 2013). But that is not the situation here. The Agreement only exculpates and provides indemnity for conduct occurring *before* the date of the Agreement, including specifically negligent and tortious conduct. *See OXY USA, Inc. v. Sw. Energy Prod. Co.*, 161 S.W.3d 277, 286-87 (Tex. App. 2005)(there are less public policy concerns when the indemnity provision at issue is limited to acts that have already occurred). And, though intentional conduct was alleged herein, the Court decisively concluded as a matter of law that the Willis Group had no liability for the alleged intentional torts.

When, as here, Ensource agreed to indemnify the Willis Group for activities that took place before the agreement was signed, there is substantial doubt that the Agreement even needs to comply with the "fair notice doctrine," which governs review of indemnity provisions with respect to their application to future misconduct. *See Lexington Ins. Co. v. W.M. Kellogg Co.*, 976 S.W.2d 807, 809 (Tex. App. 1998)(holding "fair notice doctrine" does not apply when indemnity agreement "signed *after* the acts which could give rise to liability were completed")(italics original); *see also* Opposition, p. 3 ("the rule does not apply to the case at bar"). Thus, the provision here should simply be enforced without regard to fair notice requirements.

Notwithstanding that the doctrine likely doesn't apply, it should be noted that the indemnity provision does meet Texas' "fair notice" requirements (i.e. (1) the intent to provide indemnity is expressed in specific terms in the contract, and (2) the clause is conspicuous). *See Dresser Indus. v. Page Petroleum*, 853 S.W.2d 505, 509 (Tex. 1993). On the first point, the Agreement as a whole repeatedly and abundantly expresses an intent to provide indemnification to Members and Managers. The Sections make it clear that indemnity is to be provided by Members to other Members, and that Members will not be liable to other Members "*under any theory of law*, including tort, contract or otherwise (INCLUDING A COVERED PERSON'S OWN NEGLIGENCE)" for any act or omission reasonably conducted, in good faith, on behalf of the Company. Ex. A to Sweeney Decl., §9.1 (emphasis added, but all caps in original). The indemnity and attorney's fees provision in Section 13.10 is consistent with the indemnity and exculpation obligations of Article IX (entitled "**Indemnification**").

On the second point, Plaintiff argues that the intent to indemnify, and the provision itself, are inconspicuous. Not so. "Conspicuous . . . means so written, displayed, or presented that a reasonable person against which it is to operate ought to

have noticed it." *In re Bank of Am., N.A.*, 278 S.W.3d 342, 344 (Tex. 2009). An entire Article in the Agreement is devoted to indemnification and exculpation. *See* Ex. A to Sweeney Decl., Article IX (The words "***Indemnification***" and "***Exculpation***" are separated as paragraph headers, and are bolded and italicized.). The intent to exculpate makes it clear that it applies to bar any liability, under any theory of law, including tort. *See id.*, §9.1. Section 13.10, also entitled "***Indemnification***," is found in the "**General Provisions**" Article of the Agreement. The word "***Indemnification***" is a section heading and is bolded and italicized. Bolded text, and its separation from the rest of the information on the page, are deemed duly conspicuous in Texas. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 134 (Tex. 2004)(paragraph was captioned in bold type so it was deemed "crystal clear" by the Texas Supreme Court); *see also Cate v. Dover Corp.*, 790 S.W.2d 559, 560 (Tex. 1990)(lack of bolded text was problematic: "Nothing distinguishes the third paragraph, which contains the exclusionary language. It is printed in the same typeface, size and color as the rest of the warranty text").

Notwithstanding the conspicuous indemnity provision, Plaintiff makes the extraordinary argument that it is unenforceable because the Willis Group did not proffer evidence that Plaintiff knew about such provision. Opposition, p.7. Clearly, it was under no obligation to do so. It is a basic tenet of contract law that "[p]arties are presumed to know the contents of their contracts." *Shields*, 526 S.W.3d at 485-86; *see also APC Home Health Servs. v. Martinez*, 2019 Tex. App. LEXIS 10803, at *12 (Tex. App. Dec. 12, 2019)("The fact that a party has signed a contract creates a strong presumption that the party has assented to its terms"). A such, "Texas does not impose a burden on the enforcing party to produce evidence that a[n] [indemnity provision] was executed knowingly and voluntarily. Such a presumption would. . . be contrary to the longstanding Texas contract principle that parties are free to enter into contracts without fear of retroactive nullification." *In re Bank of Am., N.A.*, 278 S.W.3d 342,

344 (Tex. 2009).

The indemnity provision is conspicuous and clear, and it is binding. This is all the more true and appropriate given that Plaintiff, a sophisticated and accredited investor represented by able counsel, negotiated and revised the very Agreement that houses the indemnity obligation. Moreover, because Plaintiff failed to establish any liability on the part of the Willis Group in connection with its business activities, there is no reason why Plaintiff shouldn't be required to comply with its clear contractual obligation to indemnify Willis Group for the losses that it suffered defending against Plaintiff's ill-conceived action.

### III. THE FEES SHOULD BE PAID BY PLAINTIFF'S MEMBERS

Plaintiff argues that the Court should apply Texas law when determining alter ego liability for attorneys' fees. Plaintiff is wrong. "The alter ego doctrine is only a procedural device." *CTC Glob. Corp. v. Huang*, 2018 U.S. Dist. LEXIS 222517, at *9 (C.D. Cal. June 5, 2018); *see also Five Points Hotel P'ship v. Pinsonneault*, 697 F. App'x 549, 550 (9th Cir. 2017)("alter ego is a procedural mechanism"). As such, the Ninth Circuit applies the law of the forum state for such determination. *See SEC v. Hickey*, 2003 U.S. App. LEXIS 13563, at *10 (9th Cir. Mar. 7, 2003)("We apply the law of the forum state in determining whether a corporation is an alter ego of an individual."). California's alter ego standard was set forth in the Willis Group's moving papers, and both elements have been established.

Plaintiff next argues that the corporate veil should not be pierced because Ensource "is a separate entity apart from each of its members." Opposition, p.9. In so arguing, it relies on a declaration from Justin Pannu, Ensource's designated Person Most Qualified. Mr. Pannu claims in such declaration that Ensource has corporate formalities, such as regular meetings and voting by members. *See id.* This information is directly contradicted by the information Mr. Pannu gave at his deposition on October 29, 2018. There, he testified that Ensource Members ***do not*** have regular

meetings. *See* Ex F to the Sweeney Decl., (44:18-21)(it had no regular meetings); (46:11-23)(no in-person meetings); (46:24-47:1)(no video meetings); (47:11-24)(less than 5 telephonic meetings). He also testified that Ensource's decisions were made by him without any formal (or informal) vote. *See id.*, (47:25-49:19). No minutes were ever made of any meeting or discussion. *See id.*, (45:8-14). Mr. Pannu's declaration must be disregarded as a "sham declaration." "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). In such circumstances, when the declaration makes no attempt to explain the prior deposition testimony, the declaration may be disregarded. *Slojewski v. Polam Fed. Credit Union*, 473 F. App'x 534, 535 (9th Cir. 2012)(plaintiff "made no attempt in his declaration to explain his prior deposition testimony, nor did he claim that he was confused during his deposition. Accordingly, the district court did not abuse its discretion in discounting his declaration as a "sham" declaration").

Other than the Pannu declaration, which should be given no consideration, Plaintiff makes no attempt to argue that alter ego liability should not attach here. Nor does it argue that Ensource is adequately capitalized, that it could satisfy an attorneys' fee award, that it will not cease to exist after the trial concludes, or that injustice would not result if the corporate form is not disregarded. *See e.g., United States v. Standard Beauty Supply Stores, Inc.*, 561 F.2d 774, 777 (9th Cir. 1977). For these reasons, and based on the evidence set forth in its moving papers, the fees owing to the Willis Group should be awarded against Ensource and its Members, jointly and severally.

**IV. WILLIS GROUP'S FEE REQUEST FOR $96,914.03 IS APPROPRIATE**

By arguing that the Willis Group has not met its burden to demonstrate that its fees are reasonable, Plaintiff ignores the language of section 13.10. Such indemnity provision does not require that the recoverable fees be "reasonable." It simply states

that the indemnified Member shall recover "costs of suit and attorney's fees." There is no limit in the Agreement.[2]

Plaintiff argues that the motion should be denied because the Willis Group attached redacted invoices to its motion and thus, it claims, it cannot rebut the invoices' accuracy and reasonableness.[3] The Willis Group presented detailed billing statements that reveal the date, hours and nature of the work performed by its attorneys. It offered to make unredacted versions available for the Court's *in camera* inspection. Such practice is not only common, but also commonly done at the request of the Court. *See e.g., B.M. v. Encinitas Union Sch. Dist.*, 2013 U.S. Dist. LEXIS 104474, at *8 (S.D. Cal. July 25, 2013)(fees deemed reasonable after review of unredacted billings *in camera*); *APL Co. Pte v. UK Aerosols Ltd.*, 2011 U.S. Dist. LEXIS 9213, at *5 (N.D. Cal. Jan. 31, 2011)(party ordered to submit unredacted billing records, under seal, for *in camera* review); *FCC, Ltd. Liab. Co. v. Mizuho Medy Co.*, 2009 U.S. Dist. LEXIS 135052, at *3 (S.D. Cal. Nov. 5, 2009)(same)*; and Voltage Pictures, LLC v. Gulf Film, LLC*, 2018 U.S. Dist. LEXIS 121108, at *20 (C.D. Cal. Apr. 17, 2018)(finding it was not unfair for an arbitrator to review redacted fee descriptions *in camera* and to deprive respondent unredacted review). Though a determination of reasonableness is not required, the Willis Group renews its offer to make its unredacted invoices available to the Court as needed.

---

[2]   It's worth remembering that the Willis Group is jointly and severally liable for the entire amount of fees billed by its attorneys ($388,107.82 as of the end of November 2019). Rather than seek the entire amount, however, the Willis Group made the reasonable decision to seek only its proportionate amount of the fees—$96,914.03.

[3]   Plaintiff does not object to the hourly rates of the Willis Group's counsel.

## V. CONCLUSION

As a prevailing party to the Judgment entered on December 19, 2019, the Willis Group respectfully urges this Court to award it $96,914.03, which is its proportionate amount of the total fees incurred by the Willis Defendants through November 2019. Such attorneys' fees are mandated by the Agreement, which is enforceable under Texas law.

Dated:   January 27, 2020                SULLIVAN HILL REZ & ENGEL
                                         A Professional Law Corporation

                                         By:      */s/Shannon D. Sweeney*
                                                  Shannon D. Sweeney
                                                  Attorneys for the Willis Group

```
SULLIVAN, HILL, LEWIN, REZ & ENGEL, APLC
Shannon D. Sweeney, SBN 204868
  Sweeney@sullivanhill.com
Michael A. Zarconi, SNB 288970
  zarconi@sullivanhill.com
600 B Street, Suite 1700
San Diego, California 92101
Telephone: (619) 233-4100
Fax Number: (619) 231-4372
9404.17558
```

Attorneys for Defendant MARK A. WILLIS

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENSOURCE INVESTMENTS LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> THOMAS P. TATHAM, an individual; MARK A. WILLIS, an individual; PDP MANAGEMENT GROUP, LLC, a Texas limited liability company; TITLE ROVER, LLC, a Texas limited liability company; BEYOND REVIEW, LLC, a Texas limited liability company; IMAGE ENGINE, LLC, a Texas limited liability company; WILLIS GROUP, LLC, a Texas limited liability company; and DOES 1-50, <br><br> Defendants. | CASE NO. 17cv0079 H LL <br><br> CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, Shauna M. Matheny, am a citizen of the United States and am at least eighteen years of age. My business address is 600 B Street, Suite 1700, San Diego, California 92101. My electronic notification address is *matheny@sullivanhill.com*.

I am not a party to the above-entitled action. I have caused service of the following document(s):

**REPLY IN SUPPORT OF THE WILLIS GROUP, LLC'S MOTION FOR ATTORNEYS' FEES AGAINST PLAINTIFF AND ITS MEMBERS**

by electronic mail on all parties to the email address provided in the CM/ECF System. A copy of this electronic mail is available for review and retained in our files.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 27, 2020 at San Diego, California.

_____
Shauna M. Matheny

408656-v1  2  Case No. 17cv0079 H LL
CERTIFICATE OF SERVICE