SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation
Shannon D. Sweeney, SBN 204868
Michael A. Zarconi, SBN 288970
600 B Street, 17th Floor
San Diego, California 92101
Telephone:  (619) 233-4100
Fax Number: (619) 231-4372
9404.17558

Attorneys for Defendant, MARK A. WILLIS

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ENSOURCE INVESTMENTS LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> THOMAS P. TATHAM, an individual; MARK A. WILLIS, an individual; PDP MANAGEMENT GROUP, LLC, a Texas limited liability company; TITLE ROVER, LLC, a Texas limited liability company; BEYOND REVIEW, LLC, a Texas limited liability company; IMAGE ENGINE, LLC, a Texas limited liability company; WILLIS GROUP, LLC, a Texas limited liability company ; and DOES 1-50, <br><br> Defendants. | Case No. 17cv0079 H LL <br><br> **[PROPOSED] JURY INSTRUCTIONS** |

Defendant MARK A. WILLIS hereby submits the following proposed jury

instructions:

/ / /

/ / /

/ / /

### 1.3    DUTY OF JURY (COURT READS AT THE BEGINNING OF TRIAL BUT DOES NOT PROVIDE WRITTEN COPIES)

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

### Comment

This instruction may be used as an oral instruction if the court elects to read its preliminary instructions to the jury but not to provide the jury with a copy of the instructions.

## 1.4 DUTY OF JURY (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT END OF CASE)

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

### Comment

This instruction should be used with the written final set of the instructions to be sent to the jury.

## 1.6    BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**1.4 BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable.  This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

**Comment**

*See Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (defining clear and convincing evidence). *See also Murphy v. I.N.S.*, 54 F.3d 605, 610 (9th Cir.1995) (the burden of proving a matter by clear and convincing evidence is "a heavier burden than the preponderance of the evidence standard").

## 1.9    WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.  the sworn testimony of any witness;

2.  the exhibits that are admitted into evidence;

3.  any facts to which the lawyers have agreed; and

4.  any facts that I have instructed you to accept as proved.

## 1.10   WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)  Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)  Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)  Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition some evidence was received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4)  Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

## 1.11   EVIDENCE FOR LIMITED PURPOSE

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

### Comment

As a rule, limiting instructions need only be given when requested and need not be given *sua sponte* by the court. *United States v. McLennan*, 563 F.2d 943, 947-48 (9th Cir. 1977).

*See United States v. Marsh*, 144 F.3d 1229, 1238 (9th Cir. 1998) (when trial court fails to instruct jury in its final instructions regarding receipt of evidence for limited purpose, Ninth Circuit examines trial court's preliminary instructions to determine if court instructed jury on this issue).

## 1.12   DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

### Comment

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

## 1.13   RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

## 1.14   CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. the opportunity and ability of the witness to see or hear or know the things testified to;
2. the witness's memory;
3. the witness's manner while testifying;
4. the witness's interest in the outcome of the case, if any;
5. the witness's bias or prejudice, if any;
6. whether other evidence contradicted the witness's testimony;
7. the reasonableness of the witness's testimony in light of all the evidence; and
8. any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

1    The weight of the evidence as to a fact does not necessarily depend on the

2  number of witnesses who testify. What is important is how believable the witnesses

3  were, and how much weight you think their testimony deserves.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 1.15   CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

1      Because you will receive all the evidence and legal instruction you properly

2  may consider to return a verdict: do not read, watch or listen to any news or media

3  accounts or commentary about the case or anything to do with it, although I have no

4  information that there will be news reports about this case; do not do any research,

5  such as consulting dictionaries, searching the Internet, or using other reference

6  materials; and do not make any investigation or in any other way try to learn about the

7  case on your own.  Do not visit or view any place discussed in this case, and do not

8  use Internet programs or other devices to search for or view any place discussed

9  during the trial.  Also, do not do any research about this case, the law, or the people

10  involved—including the parties, the witnesses or the lawyers—until you have been

11  excused as jurors. If you happen to read or hear anything touching on this case in the

12  media, turn away and report it to me as soon as possible.

13

14      These rules protect each party's right to have this case decided only on

15  evidence that has been presented here in court. Witnesses here in court take an oath to

16  tell the truth, and the accuracy of their testimony is tested through the trial process. If

17  you do any research or investigation outside the courtroom, or gain any information

18  through improper communications, then your verdict may be influenced by

19  inaccurate, incomplete or misleading information that has not been tested by the trial

20  process. Each of the parties is entitled to a fair trial by an impartial jury, and if you

21  decide the case based on information not presented in court, you will have denied the

22  parties a fair trial. Remember, you have taken an oath to follow the rules, and it is

23  very important that you follow these rules.

24

25      A juror who violates these restrictions jeopardizes the fairness of these

26  proceedings, and a mistrial could result that would require the entire trial process to

27  start over. If any juror is exposed to any outside information, please notify the court

28  immediately.

**Comment**

This instruction has been updated specifically to instruct jurors against accessing electronic sources of information and communicating electronically about the case, as well as to inform jurors of the potential consequences if a juror violates this instruction. An abbreviated instruction should be repeated before the first recess, and as needed before other recesses.

The practice in federal court of instructing jurors not to discuss the case until deliberations is widespread. *See, e.g., United States v. Pino-Noriega*, 189 F.3d 1089, 1096 (9th Cir. 1999).

## 1.18   TAKING NOTES

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let note taking distract you.  When you leave, your notes should be left in the courtroom jury room envelope in the jury room. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

## Comment

It is well settled in this circuit that the trial judge has discretion to allow jurors to take notes. *United States v. Baker*, 10 F.3d 1374, 1403 (9th Cir. 1993). *See also* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 3.4 (2013).

1

2

## 1.20   BENCH CONFERENCES AND RECESSES

3      From time to time during the trial, it became necessary for me to talk with the
4  attorneys out of the hearing of the jury, either by having a conference at the bench
5  when the jury was present in the courtroom, or by calling a recess. Please understand
6  that while you were waiting, we were working. The purpose of these conferences is
7  not to keep relevant information from you, but to decide how certain evidence is to be
8  treated under the rules of evidence and to avoid confusion and error.

9

10     Of course, we have done what we could to keep the number and length of these
11  conferences to a minimum. I did not always grant an attorney's request for a
12  conference. Do not consider my granting or denying a request for a conference as any
13  indication of my opinion of the case or of what your verdict should be.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 1.21   OUTLINE OF TRIAL

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

## 2.2   STIPULATIONS OF FACT

The parties have agreed to certain facts to be placed in evidence that will be read to you. You must therefore treat these facts as having been proved.

### Comment

When parties enter into stipulations as to material facts, those facts will be deemed to have been conclusively proved, and the jury may be so instructed. *United States v. Mikaelian*, 168 F.3d 380, 389 (9th Cir. 1999) (citing *United States v. Houston*, 547 F.2d 104, 107 (9th Cir. 1976)), *amended by* 180 F.3d 1091 (9th Cir. 1999).

## 2.4    DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The deposition of Substantia Logix, by and through its designated Person Most Knowledgeable, Susan Willard-Killen, was taken on April 30, 2019. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

The deposition of Joseph V. Haynes was taken on April 29, 2019. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

### Comment

This instruction should be used only when testimony by deposition is used in lieu of live testimony. The Committee recommends that it be given immediately before a deposition is to be read. It need not be repeated if more than one deposition is read. If the judge prefers to include the instruction as a part of his or her instructions before evidence, it should be modified appropriately.

## 2.9   IMPEACHMENT EVIDENCE—WITNESS

The evidence that a witness has, for example, been convicted of a crime or lied under oath on a prior occasion, may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

**Comment**

*See* Fed. R. Evid. 608–09; *United States v. Hankey*, 203 F.3d 1160, 1173 (9th Cir. 2000) (finding that district court properly admitted impeachment evidence following limiting instruction to jury). If this instruction is given during the trial, the Committee recommends giving the second sentence in numbered paragraph 3 of Instruction 1.10 (What Is Not Evidence) with the concluding instructions. *See also* Instruction 1.11 (Evidence for Limited Purpose).

# 2.16 EVIDENCE IN ELECTRONIC FORMAT

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the bailiff. If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the clerk, signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the bailiff present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database,

1  directory, game, or other material. Do not attempt to alter the computer to obtain

2  access to such materials. If you discover that the computer provides or allows access

3  to such materials, you must inform the court immediately and refrain from viewing

4  such materials. Do not remove the computer or any electronic data or disk from the

5  jury room, and do not copy any such data.

6

7  **Comment**

8  This instruction is premised on the assumption that either the court has ordered these

9  procedures or the parties have agreed to the availability of electronic display devices

10  in the jury room and to the procedures set forth in the instruction. If the parties'

11  agreement is in the form of a written stipulation, the stipulation should be subject to

12  approval by the judge and entered as an order. The following are possible provisions

13  in such a stipulation:

14

15      1.     The parties agree to an allocation of the costs of providing the necessary

16  equipment, including the computer, hard drive, projector, cable, printer, monitor and

17  other accessories.

18

19      2.     Can the technical problem be addressed without any information from

20  the jury other than an innocuous statement to the effect that (for example) "the printer

21  isn't working"?

22      3.     Can the risk of even inadvertent disclosure of the jury's deliberations be

23  eliminated by instructing the jury to cover any charts and to remove or conceal any

24  papers, etc.?

(b)
25      4.     Should the technician, bailiff or clerk be sworn in, with an oath that

26  requires him or her not to disclose whatever he or she sees or hears in the jury room,

27  except for the nature of the technical problem and whether the problem has been

28  fixed?

1       Whether or not these or other appropriate precautions to minimize or eliminate

2   the risk of disclosure are taken, the judge may consider giving the jury this

3   instruction:

4

5       You have informed me that there is a technical problem that has interfered

6       with your ability to review evidence electronically. I will send a technician

7       into the jury room to deal with the problem while you are out of the

8       deliberation room on a break. Please do not allow any materials reflecting

9       any aspect of your deliberations to be visible during the technician's

10      presence.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 3.1    DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

### Comment

A jury verdict in a federal civil case must be unanimous, unless the parties stipulate otherwise. *Murray v. Laborers Union Local No. 324*, 55 F.3d 1445, 1451 (9th Cir. 1995) (citing *Johnson v. Louisiana*, 406 U.S. 356, 369-70 n.5 (1972)); *see also* Fed. R. Civ. P. 48(b). A federal civil jury must also unanimously reject any affirmative defenses before it may find a defendant liable and proceed to determine damages. *Jazzabi v. Allstate Ins. Co.*, 278 F.3d 979, 985 (9th Cir. 2002).

### 3.2    CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

1   These rules protect each party's right to have this case decided only on
2   evidence that has been presented here in court. Witnesses here in court take an oath to
3   tell the truth, and the accuracy of their testimony is tested through the trial process. If
4   you do any research or investigation outside the courtroom, or gain any information
5   through improper communications, then your verdict may be influenced by
6   inaccurate, incomplete or misleading information that has not been tested by the trial
7   process. Each of the parties is entitled to a fair trial by an impartial jury, and if you
8   decide the case based on information not presented in court, you will have denied the
9   parties a fair trial. Remember, you have taken an oath to follow the rules, and it is
10  very important that you follow these rules.

11

12  A juror who violates these restrictions jeopardizes the fairness of these
13  proceedings, and a mistrial could result that would require the entire trial process to
14  start over. If any juror is exposed to any outside information, please notify the court
15  immediately.

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.3    COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**Comment**

For guidance on the general procedures regarding jury questions during deliberations, *see* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 5.1.A (2013).

## 3.4   READBACK OR PLAYBACK

If during jury deliberations you request for a readback of the testimony of a witness, you are cautioned that all readbacks run the risk of distorting the trial because of overemphasis of one portion of the testimony. The readback could contain errors. The readback cannot reflect matters of demeanor , tone of voice, and other aspects of the live testimony. Your recollection and understanding of the testimony controls. Finally, in your exercise of judgment, the testimony read cannot be considered in isolation, but must be considered in the context of all the evidence presented.

**Comment**

Although a court has broad discretion to read back excerpts or the entire testimony of a witness when requested by a deliberating jury, precautionary steps should be taken. Absent the parties' stipulation to a different procedure, the jury should be required to hear the readback in open court, with counsel for both sides present, and after giving the admonition set out above. *See United States v. Newhoff*, 627 F.3d 1163, 1167 (9th Cir. 2010); *see also* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 5.1.C (2013).

1

2

## 3.5    RETURN OF VERDICT

3        A verdict form has been prepared for you. You should work through the verdict

4   form carefully and strictly follow the directions set forth in the form. After you have

5   reached unanimous agreement on a verdict, your foreperson should complete the

6   verdict form according to your deliberations, sign and date it, and advise the clerk or

7   bailiff that you are ready to return to the courtroom.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1      **5.1    DAMAGES—PROOF**

2

3           It is the duty of the Court to instruct you about the measure of damages. By

4    instructing you on damages, the Court does not mean to suggest for which party your

5    verdict should be rendered.

6

7           If you find for the plaintiff on either or both of plaintiff's claims, you must

8    determine the plaintiff's damages. The plaintiff has the burden of proving damages by

9    a preponderance of the evidence. Damages means the amount of money that will

10   reasonably and fairly compensate the plaintiff for any injury you find was caused by

11   the defendant. It is for you to determine what damages, if any, have been proved.

12   Your award must be based upon evidence and not upon speculation, guesswork or

13   conjecture.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 5.3    DAMAGES—MITIGATION

The plaintiff has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

1.      that the plaintiff failed to use reasonable efforts to mitigate damages; and

2.      the amount by which damages would have been mitigated

## 18.2   SECURITIES—RULE 10b-5 CLAIM

The plaintiff alleges that the defendant defrauded it by intentional misrepresentation of fact regarding the Title Rover technology that was the subject of the investment in securities for Hopewell-Pilot Project, LLC, and regarding the job title of one of Title Rover's technology developers, Brent Stanley.  In making these misrepresentations, plaintiff alleges that defendant engaged in a scheme to artificially inflate the value and attractiveness of equity in the Hopewell-Pilot Project, LLC. This is referred to as "the plaintiff's 10b-5 claim."

On this claim, the plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1.      A material misrepresentation or omission by the defendant;

2.      the defendant acted with scienter, that is, knowingly and with the intent to deceive plaintiff;

3.      a connection between the misrepresentation or omission and the purchase or sale of a security;

4.      the plaintiff justifiably relied on the defendant's untrue statement of a material fact or on the defendant's omission to state a necessary material fact in buying securities;

5.      economic loss; and

6.      loss causation, that is, the defendant's misrepresentation or omission caused the diminution in the value of the securities plaintiff purchased.

If you find that the plaintiff has proved each of the above elements, your verdict should be for the plaintiff. If, on the other hand, you find that the plaintiff has failed to prove any one of these elements, your verdict should be for the defendant.

1                                     **Comment**

2      *See Retail Wholesale & Dep't Store Union Local 338 Retirement Fund v.*

3 *Hewlett-Packard Co.*, 845 F.3d 1268, 1274 (9th Cir. 2017) (listing elements of claim).

4

5      *See Instruction* 18.1 (Securities—Definition of Recurring Terms) for definitions

6 of "security," "10b-5 claim," "misrepresentation," "omission," "in connection with,"

7 and "instrumentality of interstate commerce." National security exchanges include the

8 New York Stock Exchange and the NASDAQ Stock Market.

9

10      *See* 15 U.S.C. § 78j(b) (unlawful to use deceptive device in connection with

11 purchase or sale of security) and 17 C.F.R. § 240.10b-5 (unlawful to use device to

12 defraud, to make untrue statement or omission of material fact, or to engage in

13 fraudulent act in connection with purchase or sale of security). *Gray v. First Winthrop*

14 *Corp.*, 82 F.3d 877, 884 (9th Cir. 1996), confirms that the elements described in this

15 instruction are required to prove a 10b-5 claim.

16

17      A defendant "makes" a statement if the defendant has ultimate authority over the

18 statement, including its content and whether and how to communicate it. *Janus*

19 *Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). The plaintiff

20 must show that the defendant had control over the statement; a defendant's significant

21 involvement in the preparation of a prospectus containing untrue or misleading

22 statements is not enough to show that the defendant "made" the statements. *Id.*

23

24      A defendant may also be liable if the defendant disseminates false statements

25 with intent to defraud. *Lorenzo v. S.E.C.*, 139 S. Ct. 1094 (2019). Where a defendant

26 does not "make" a statement but disseminates information that is "understood to

27 contain material untruths," such conduct can fall within the scope of a 10b-5 claim.

28 *Id.* at 1101; *see also id.* at 1103 ("[U]sing false representations to induce the purchase

1  of securities would seem a paradigmatic example of securities fraud.").

2

3      Previously, these instructions phrased the fourth element as requiring that "the

4  plaintiff *reasonably* relied" on the misrepresentation. Several Ninth Circuit cases,

5  however, use the phrase "justifiable reliance." *See Livid Holdings Ltd. v. Salomon*

6  *Smith Barney, Inc.*, 416 F.3d 940, 950 (9th Cir. 2005) ("If [Plaintiff] justifiably relied

7  on Defendants' misrepresentation about the stock sale and, in turn, bought [company]

8  stock based on this reliance, it incurred damages from Defendants' fraud"); *Binder v.*

9  *Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999); *Gray*, 82 F.3d at 884.

10

11      *Revised June 2019*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **18.3   SECURITIES—MISREPRESENTATIONS OR OMISSIONS—**

2   **MATERIALITY**

3

4       The plaintiff must prove by a preponderance of the evidence that the

5   defendant's misrepresentation or omission was material.

6

7       A factual representation concerning a security is material if there is a

8   substantial likelihood a reasonable investor would consider the fact important in

9   deciding whether to buy or sell that security.

10

11      An omission concerning a security is material if a reasonable investor would

12  have regarded what was not disclosed to it as having significantly altered the total

13  mix of information it took into account in deciding whether to buy or sell the

14  security.

15

16      You must decide whether something was material based on the

17  circumstances as they existed at the time of the statement or omission.

18

19                              **Comment**

20      In Basic *Inc. v. Levinson*, 485 U.S. 224, 231 (1988), the Supreme Court

21  adopted the standard for materiality developed in *TSC Industries, Inc. v.*

22  *Northway, Inc.*, 426 U.S. 438, 449 (1976), (whether a reasonable shareholder

23  would "consider it important" or whether the fact would have "assumed actual

24  significance") as the standard for actions under 15 U.S.C. § 78j(b).

25

26      In discussing materiality, the Ninth Circuit has applied *TSC Industries* and

27  *Basic Inc.* in various formulations. *See, e.g., Livid Holdings Ltd. v. Salomon*

28

1   *Smith Barney, Inc.*, 416 F.3d 940, 946-48 (9th Cir. 2005) (applying *Basic Inc.*

2   materiality test); *No. 84 Emp'r-Teamster Joint Council Pension Trust Fund v.*

3   *Am. W. Holding Corp.*, 320 F.3d 920, 934 (9th Cir. 2003) (declining to adopt

4   bright line rule for materiality that would require immediate change in stock price

5   and instead engaging in "fact-specific inquiry" under *Basic Inc.*); *In re Stac*

6   *Electrs. Sec. Litig.*, 89 F.3d 1399, 1408 (9th Cir. 1996) (applying test of whether

7   there was substantial likelihood that omitted fact would have been viewed by

8   reasonable investor as having significantly altered "total mix" of information

9   made available); *Kaplan v. Rose*, 49 F.3d 1363, 1371 (9th Cir. 1994) (applying

10   test of whether omission or misrepresentation would have misled reasonable

11   investor about nature of his or her investment); *McGonigle v. Combs*, 968 F.2d

12   810, 817 (9th Cir. 1992) (applying test of whether there was substantial

13   likelihood that, under all the circumstances, omitted fact would have assumed

14   actual significance in deliberations of reasonable shareholder); *see also In re*

15   *Atossa Genetics Inc. Sec. Litig.*,868 F.3d 784, 795-96 (9th Cir. 2017) (discussing

16   relationship between materiality and reliance and noting that "materiality" may

17   be different when plaintiff alleges direct reliance on misrepresentation, rather

18   than fraud-on-the-market theory).

19

20       For a discussion of the distinction between mere puffery, which is not

21   material, and a statement that is materially misleading, *see In re Quality Systems,*

22   *Inc. Sec. Litig.*, 865 F.3d 1130, 1143-44 (9th Cir. 2017).

23

24   The Ninth Circuit has held that stock price movements are relevant to reliance,

25   and not to materiality. *See Retail Wholesale & Dep't Store Union Local 338*

26   *Retirement Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1277 (9th Cir. 2017).

27      *Revised Sept. 2017*

28

1    **18.4   SECURITIES—FORWARD-LOOKING STATEMENTS**

2

3       In considering whether the defendant made an untrue statement of a material fact

4    or omitted a material fact necessary under the circumstances to keep the statements

5    that were made from being misleading, you must distinguish between statements of

6    fact and forward-looking statements.

7

8       Predictions, projections and other forward-looking statements, even if ultimately

9    proven incorrect, are generally not statements of fact, but instead forecasts about what

10   may or may not occur in the future.

11

12      Predictions, projections and other forward-looking statements may constitute a

13   basis for a violation of Rule 10b-5 only if the plaintiff proves by a preponderance of

14   the evidence that, at the time the forward-looking statements were made, (1) the

15   defendant did not actually believe the statements, (2) there was no reasonable basis

16   for the defendant to believe the statements, or (3) the defendant was aware of

17   undisclosed facts tending to seriously undermine the accuracy of the statements.

18

19                            **Comment**

20      This instruction addresses "forward-looking statements" that fall outside the

21   coverage of the safe harbor afforded to forward-looking statements by the Private

22   Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-5(c). The

23   PSLRA's safe harbor has numerous exclusions. For example, the safe harbor does not

24   apply to statements contained in audited financial statements, nor does it apply to

25   various other categories of statements such as statements made in connection with a

26   going-private transaction, a tender offer, or an initial public offering. *See generally* 15

27   U.S.C. § 78u-5(b). When the PSLRA's safe harbor does not apply, background

28

1  judicial doctrines may nonetheless govern whether statements of opinion or

2  statements accompanied by cautionary language are actionable under Rule 10b-5. *See,*

3  *e.g.*, *Retail Wholesale & Dep't Store Union Local 338 Retirement Fund v. Hewlett-*

4  *Packard* Co., 845 F.3d 1268, 1275-76 (9th Cir. 2017) (concluding that aspirational

5  statements were not capable of being false); *In re Oracle Corp. Sec. Litig.*, 627 F.3d

6  376, 388 & n.2 (9th Cir. 2010) (applying materiality test to forward-looking

7  statements when PSLRA safe harbor did not apply); *In re Cutera Sec. Litig.*, 610 F.3d

8  1103, 1111 (9th Cir. 2010) (holding that "vague statements of optimism" are not

9  actionable); *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 947

10  (9th Cir. 2005) (applying "bespeaks caution" doctrine).

11

12       The term "forward-looking statements" refers generally to management

13  projections of future economic performance, such as sales, revenue or earnings per

14  share forecasts. In the context of the PSLRA safe harbor, the term means "any

15  statement regarding (1) financial projections, (2) plans and objectives of management

16  for future operations, (3) future economic performance, or (4) the assumptions

17  'underlying or related to' any of these issues." *No. 84 Empl'r-Teamster Joint Council*

18  *Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003)

19  (quoting 15 U.S.C. § 78u-5(I)). When a defendant makes mixed statements containing

20  non-forward-looking statements as well as forward-looking statements, the non-

21  forward-looking statements are not protected by the safe harbor of the PSLRA. *In re*

22  *Quality Systems, Inc. Sec. Litig.*, 865 F.3d 1130, 1146-48 (9th Cir. 2017).

23

24       As to forward-looking statements not subject to the PSLRA safe harbor, the

25  Ninth Circuit has stated that such statements are potentially actionable under the

26  theory that "[a] projection or statement of belief contains at least three implicit factual

27  assertions: (1) that the statement is genuinely believed, (2) that there is a reasonable

28

1 basis for that belief, and (3) that the speaker is not aware of any undisclosed facts

2 tending to seriously undermine the accuracy of the statement." *In re Apple Computer*

3 *Sec. Litig.*, 886 F.2d 1109, 1113 (9th Cir. 1989). *See also In re Oracle*, 627 F.3d at

4 388; *Provenz v. Miller*, 102 F.3d 1478, 1487 (9th Cir. 1996); *Hanon v. Dataproducts*

5 *Corp.*, 976 F.2d 497, 501 (9th Cir. 1992). Accordingly, "[f]or a forward-looking

6 statement . . . to constitute a material misrepresentation giving rise to Section 10(b) or

7 Rule 10b-5 liability, a plaintiff must prove either '(1) the statement is not actually

8 believed [by the speaker], (2) there is no reasonable basis for the belief, or (3) the

9 speaker is aware of undisclosed facts tending seriously to undermine the statement's

10 accuracy.'" *In re Oracle*, 627 F.3d at 388 (quoting *Provenz*, 102 F.3d at 1487)

11 (alteration in original). "The fact that [a] forecast turn[s] out to be incorrect does not

12 retroactively make it a misrepresentation." *Id.* at 389.

13

14       Forward-looking statements that are not affirmatively exempted from the safe

15 harbor's coverage under 15 U.S.C. § 78u-5(c), are afforded safe harbor protection "in

16 either of two circumstances: if they were identified as forward-looking statements and

17 accompanied by meaningful cautionary language, . . . or if the investors fail to prove

18 the projections were made with *actual* knowledge that they were materially false or

19 misleading." *In re Cutera*, 610 F.3d at 1111-12 (9th Cir. 2010). These two types of

20 forward-looking statements are independent grounds for protection under the safe

21 harbor. *See id.* at 1112-13 (holding that the safe harbor rule should be read

22 disjunctively).

23

24       As to the first category, the PSLRA provides a safe harbor for identified forward-

25 looking statements that are "accompanied by meaningful cautionary statements

26 identifying important factors that could cause actual results to differ materially from

27 those in the forward-looking statement[s]." 15 U.S.C. § 78u-5(1)(A)(I); *see also id.* §

28

1   78u-5(2) (providing a conditional safe harbor for oral forward-looking statements).

2   This prong of the PSLRA safe harbor codifies principles underlying the "bespeaks

3   caution" doctrine. *See Empl'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund*

4   *v. Clorox Co.*, 353 F.3d 1125, 1132 (9th Cir. 2004). This instruction does not address

5   the bespeaks caution doctrine because application of that doctrine is typically not a

6   question for the jury. *See id.* ("The bespeaks caution doctrine provides a mechanism

7   by which a court can rule as a matter of law [typically in a motion to dismiss for

8   failure to state a cause of action or a motion for summary judgment] that defendants'

9   forward-looking representations contained enough cautionary language or risk

10  disclosure to protect the defendant against claims of securities fraud.") (alteration in

11  original) (quoting *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1413-15 (9th Cir.

12  1994)) (internal quotation marks omitted).

13

14       As to the second category, the PSLRA provides a safe harbor for forward-

15  looking statements that the speaker actually believed were true. *See* 15 U.S.C. § 78u-

16  5(c)(1)(B).  To avoid application of the safe harbor under this category, "plaintiffs

17  must prove that 'forward- looking' statements were made with 'actual knowledge'

18  that they were false or misleading." *In re Daou Sys., Inc., Sec. Litig.*, 411 F.3d 1006,

19  1021 (9th Cir. 2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970,

20  993 (1999) (Browning, J., concurring in part and dissenting in part)). By contrast, if

21  the statement is not covered by the PSLRA safe harbor, "[t]he requisite state of mind,

22  at a minimum, is deliberate or conscious recklessness." *Empl'rs Teamsters*, 353 F.3d

23  at 1134.

24       *Revised Sept. 2017*

25

26

27

28

1      **18.5 SECURITIES—KNOWINGLY**

2

3   A defendant acts knowingly when he makes an untrue statement with the

4 knowledge that the statement was false or with reckless disregard for whether the

5 statement was true. A defendant acts knowingly when he omits necessary information

6 with the knowledge that the omission would make the statement false or misleading

7 or with reckless disregard for whether the omission would make the statement false or

8 misleading.

9

10   "Reckless" means highly unreasonable conduct that is an extreme departure from

11 ordinary care, presenting a danger of misleading investors, which is either known to

12 the defendant or is so obvious that the defendant must have been aware of it.

13

14           **Comment**

15   This instruction addresses the element of "scienter," which was developed in

16 *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, *reh'g denied*, 425 U.S. 986 (1976).

17 In *Nelson v. Serwold*, 576 F.2d 1332, 1337 (9th Cir. 1978), the court found that

18 Congress intended Section 10(b) to reach both knowing and reckless conduct, and it

19 interpreted the *Ernst & Ernst* decision as merely eliminating negligence as a basis for

20 liability.

21

22   The Ninth Circuit defined "recklessness" in the context of Section 10(b) and

23 Rule 10b–5 in *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1569 (9th Cir. 1990)

24 (en banc), and *In re Software Toolworks Inc.*, 50 F.3d 615, 626 (9th Cir. 1994).

25 Recklessness satisfies the scienter requirement, except as to forward-looking

26 statements under the safe harbor provisions of the Private Securities Litigation

27 Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-5, for which actual knowledge that

28

1   the statement was false or misleading is required. *See* Comment to Instruction 18.4

2   (Securities—Forward-Looking Statements).

3

4       In Webb *v. SolarCity Corp*., 884 F.3d 844, 851 (9th Cir. 2018), the Ninth Circuit

5   explained that the scienter standard requires facts demonstrating an intent to deceive,

6   manipulate or defraud, or "deliberate recklessness." The court defined "deliberate

7   recklessness" as "an extreme departure from the standard of ordinary care." *Id*.

8

9       For a discussion of when a corporate officer's scienter can be imputed to a

10  corporation, particularly if that officer also defrauds the corporation, *see In re*

11  *ChinaCast Education Corp*. *Securities Litigation*, 809 F.3d 471 (9th Cir. 2015).

12

13      The PSLRA entitles a defendant in any private action arising under Rule 10b-5

14  to require the court to submit a written interrogatory to the jury regarding each

15  defendant's state of mind at the time of the alleged violation of the securities laws. 15

16  U.S.C. § 78u-4(d).

17

18      *Revised June 2018*

19

20

21

22

23

24

25

26

27

28

1    **18.6   SECURITIES—JUSTIFIABLE RELIANCE GENERALLY**

2

3       The plaintiff must prove by a preponderance of the evidence that it

4    justifiably relied on the alleged misrepresentation or omission in deciding to

5    engage in the purchase of the securities in question. The plaintiff may not

6    intentionally close its eyes and refuse to investigate the circumstances or

7    disregard known or obvious risks.

8

9                               **Comment**

10      The element of "reliance [is] often referred to in cases involving public

11   securities markets . . . as transaction causation." *Dura Pharms., Inc. v. Broudo*,

12   544 U.S. 336, 341 (2005).

13

14      In *Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025, 1030 (9th Cir. 1992),

15   the court found that an investor cannot claim reliance on a misrepresentation if

16   the investor already possessed information sufficient to call the representation

17   into question.

18

19      A rebuttable presumption of reliance is deemed to arise when the fraud

20   involves material omissions. *Affiliated Ute Citizens v. United States*, 406 U.S.

21   128, 153-54 (1972). In a "mixed case of misstatements and omissions," the

22   presumption will only apply if the case primarily alleges omissions. *Binder v.*

23   *Gillespie*, 184 F.3d 1059, 1063-64 (9th Cir. 1999) (involving case resolved on

24   summary judgment). Accordingly, at trial, the court will have to resolve whether

25   the presumption is applicable in light of the evidence.

26

27

28

1

2       In deciding whether a plaintiff justifiably relied on the defendant's alleged

3   misrepresentations or omissions, you may consider evidence of:

4       (1)    whether the plaintiff was sophisticated and experienced in financial

5   and securities matters;

6       (2)    whether the plaintiff and the defendant had a long-standing business

7   or personal relationship, or a relationship in which the defendant owed a duty to

8   the plaintiff to not interfere with or adversely affect the plaintiff's interests;

9       (3)    whether the plaintiff ignored or refused to investigate the

10  circumstances surrounding the transaction;

11      (4)    whether the plaintiff disregarded risks so obvious that they should

12  have been known or risks so great as to make it highly probable that harm would

13  follow;

14      (5)    whether the defendant concealed the fraud;

15      (6)    whether the plaintiff had access to the relevant material information;

16      (7)    whether the misrepresentation was general or specific;

17      (8)    whether the plaintiff initiated or sought to expedite the transaction;

18      (9)    whether the defendant prepared or provided to the plaintiff materials

19  that contained adequate warnings about the risks associated with the investment

20  or adequate disclaimers describing limitations on the scope of the defendant's

21  representations or the defendant's involvement; and

22      (10)   any other evidence you find helpful in deciding whether the plaintiff

23  justifiably relied on the defendant's misrepresentation[s] or omission[s].

24

25      For cases listing the factors, *see, e.g.*, *Brown v. E.F. Hutton Grp., Inc.*, 991

26  F.2d 1020, 1032 (2d Cir.1993); *Davidson v. Wilson*, 973 F.2d 1391, 1400 (8th

27  Cir.1992); *Myers v. Finkle*, 950 F.2d 165, 167 (4th Cir.1991); *Jackvony v. RIHT*

28

1  *Fin. Corp.*, 873 F.2d 411, 416 (1st Cir.1989); *Bruschi v. Brown*, 876 F.2d 1526,

2  1529 (11th Cir.1989); *Zobrist v. Coal-X, Inc.*, 708 F.2d 1511, 1518-19 (10th

3  Cir.1983) .

4

5       To establish that a defendant warned the plaintiff adequately of the

6  attendant risks in the transaction, the defendant's disclosures must have been

7  precise and must have related directly to that which the plaintiff claims was

8  misleading. *See In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1414-15 (9th

9  Cir. 1994).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1          **18.8   SECURITIES—CAUSATION**

2

3          The plaintiff must prove by a preponderance of the evidence that the alleged

4    material misrepresentations or omissions were the cause of its economic injury. To

5    establish causation, the plaintiff must prove that the alleged misrepresentations or

6    omissions played a substantial part in causing the injury or loss the plaintiff suffered.

7    The plaintiff need not prove that the alleged misrepresentations or omissions was or

8    were the sole cause of the economic injuries.

9

10                              **Comment**

11

12          The Private Securities Litigation Reform Act of 1995 ("PSLRA") imposed the

13   requirement that a private plaintiff prove that the defendant's fraud caused an

14   economic loss. 15 U.S.C. § 78u-4(b)(4). This element of causation has been referred

15   to as "'loss causation,' *i.e.*, a causal connection between the material

16   misrepresentation and the loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342

17   (2005). In *Dura*, the Supreme Court held that the PSLRA "makes clear Congress'

18   intent to permit private securities fraud actions for recovery where, but only where,

19   plaintiffs adequately allege and prove the traditional elements of causation and loss."

20   *Id.* at 346. The Supreme Court reversed the Court of Appeals' ruling that a plaintiff

21   may establish loss causation if the plaintiff merely shows that the price paid on the

22   date of purchase was inflated because of the defendant's misrepresentation. The

23   Supreme Court held that a plaintiff's mere purchase of stock at an inflated price is *not*

24   sufficient to establish loss causation for a number of reasons, such as that at the

25   moment of purchase the plaintiff has suffered no loss because the inflated price paid

26   is offset by the value of the shares he or she acquired, which at that instant possess

27   equivalent market value. Also, the purchaser could later sell those shares at a profit.

28

1  Conversely, if the price drops, the cause of the decline could be attributable to a host

2  of factors other than that the stock price previously had been inflated as a result of the

3  defendant's misrepresentation or omission. The Court found that under the plaintiff's

4  theory of liability, the complaint failed adequately to allege causation because it did

5  not allege that the defendant corporation's share price fell significantly after the truth

6  became known, did not specify the relevant economic loss, and did not describe the

7  causal connection between that loss and the misrepresentation. *Id*. at 346-48.

8

9       The Ninth Circuit has recently stated that "[t]ypically, 'to satisfy the loss

10  causation requirement, the plaintiff must show that the revelation of that

11  misrepresentation or omission was a substantial factor in causing a decline in the

12  security's price, thus creating an actual economic loss for the plaintiff.'" *Nuveen Mun.*

13  *High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1119 (9th Cir.

14  2013) (quoting *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 425-26 (3d Cir.2007)).

15  While "an outright admission of fraud" is not required, "a mere 'risk' or 'potential'

16  for fraud is insufficient to establish loss causation." *Loos v. Immersion Corp.*, 762

17  F.3d 880, 888-89 (9th Cir. 2014) (quoting *Metzler Inv. GMBH v. Corinthian Colls.,*

18  *Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008) (holding that revelation of investigation, on

19  its own, amounts only to notice of potential disclosure of fraudulent conduct and thus

20  does not satisfy causation element of § 10(b) and Rule 10b-5 claims). However,

21  "[d]isclosure of the fraud is not a sine qua non of loss causation, which may be shown

22  even where the alleged fraud is not necessarily revealed prior to the economic loss."

23  *Nuveen,* 730 F.3d at 1120. Accordingly, "a plaintiff can satisfy loss causation by

24  showing that 'the defendant misrepresented or omitted the *very facts* that were a

25  substantial factor in causing the plaintiff's economic loss.'" *Id.* (quoting *McCabe*, 494

26  F.3d at 425). For example, in *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416

27  F.3d 940, 949 (9th Cir. 2005), the Ninth Circuit held that loss causation was

28

1 sufficiently alleged when the plaintiff alleged that the very facts concealed by the

2 defendants — facts concerning the company's dire financial situation — resulted in

3 its going bankrupt, which caused the plaintiff to lose the entire value of its investment

4 in the company. *See also id.* at 949 n.2 (concluding that *Dura* did not require plaintiff

5 to allege corrective disclosure because plaintiff alleged "private sale of privately

6 traded stock and . . . not only asserted that it purchased the security at issue at an

7 artificially inflated price, but pled that the [d]efendants' misrepresentation was

8 causally related to the loss it sustained").

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**18.9   SECURITIES—DAMAGES**

If you find for the plaintiff on the 10b-5 claim, then you must consider and decide the amount of money damages to be awarded to the plaintiff. You may award only actual damages in that amount which will reasonably and fairly compensate the plaintiff for the economic loss it sustained. Your award must be based on evidence and not upon speculation, guesswork or conjecture. The plaintiff has the burden of proving damages by a preponderance of the evidence.

**Comment**

Section 10(b) claims for damages are governed by Section 28(a), which limits all claims brought under the Exchange Act to actual damages. *See* 15 U.S.C. § 78bb(a) (providing that no person maintaining a suit for damages under the Exchange Act may recover "a total amount in excess of his actual damages"); *see also Randall v. Loftsgaarden*, 478 U.S. 647, 661-62 (1986).

"The usual measure of damages for securities fraud claims under Rule 10b-5 is out-of-pocket loss; that is, the difference between the value of what the plaintiff gave up and the value of what the plaintiff received. Consequential damages may also be awarded if proved with sufficient certainty  The district court may apply a rescissory measure of damages in appropriate circumstances." *Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1030 (9th Cir. 1999) (citing *DCD Programs v. Leighton*, 90 F.3d 1442, 1449 (9th Cir. 1996)). The Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2005), highlights the difficulty in framing an instruction premised on a theory that the price on the date of purchase was inflated because of a misrepresentation. *See* Comment to Instruction 18.8 (Securities—Causation). Comparable difficulties could arise when there are several different transaction dates or multiple plaintiffs, or when the

1  lawsuit is brought as a class action. In such cases, computations based on average

2  prices during the applicable trading period might prove necessary.

3

4        Because of the above-described complications, expert testimony is often

5  proffered in calculating damages in 10b-5 actions. *See In re Imperial Credit Indus.,*

6  *Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1014-15 (C.D. Cal. 2003); *In re Oracle Sec.*

7  *Litig.,* 829 F. Supp. 1176, 1181 (N.D. Cal. 1993).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1      **18.8 SECURITIES—CONTROLLING PERSON LIABILITY**[1]

2

3         Under the Securities Exchange Act of 1934, a defendant may be liable if

4   during the period that someone else defrauded the plaintiff, the defendant had the

5   authority to control that person or company.

6

7         The plaintiff claims that the defendant is a controlling person and is therefore

8   liable under the securities laws. On this claim, the plaintiff has the burden of

9   proving by a preponderance of the evidence that the defendant [controlling person]

10  possessed, directly or indirectly, the actual power to direct or cause the direction of

11  the management and policies of [controlled person].

12

13                          **Comment**

14        See Instruction 18.0 (Securities—Definition of Recurring Terms) for

15  definition of "controlling person." Section 20(a) of the Securities Exchange Act of

16  1934 provides that "controlling persons" can be vicariously liable for 10b-5

17  violations. See 15 U.S.C. § 78t(a) (liability of controlling persons); 17 C.F.R. §

18  230.405 (definition of "control"); *Hollinger v. Titan Capital Corp*., 914 F.2d 1564,

19  1578 (9th Cir.1990)(en banc)(broker-dealer is "controlling person" within meaning

20  of the 1934 Act and could be liable for its stockbroker-employee's conduct, even if

21  the broker-dealer and the stockbroker contractually agreed that the stockbroker

22  would be an independent contractor), cert. denied, 499 U.S. 976 (1991). *See also*

23  _____

24        [1]    This instruction has been added at the request of Plaintiff only.
    Defendant objects to the inclusion of this instruction on the grounds that controlling
25  person liability in not an issue framed for adjudication in the governing pre-trial
    order. (*See* Transcript of Pre-Trial Conference, Docket No. 176 lns. 18-19 at 10
26  (pre-trial order supersedes the pleadings.)  In the event that Defendant's objection is
    overruled, Jury Instruction No. 18.11 should be included herein as set forth below.
27  In the event that Defendant's objection is sustained, both Instruction Nos. 18.10 and
    18.11 should be stricken from these proposed Jury Instructions.

28

1  *No. 84 Employer-Teamster Joint Council Pension Trust Fund v America West*

2  *Holding Corp.*, 320 F.3d 920, 945 (9th Cir.2003) (discussing traditional indicia of

3  control). See Instruction 18.9 (Securities—Good Faith Defense to Controlling

4  Person Liability).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 18.11 SECURITIES—GOOD FAITH DEFENSE TO CONTROLLING PERSON LIABILITY

The defendant contends that he is not liable to the plaintiff even if he was a controlling person because he did not induce the violation that led to the plaintiff's economic injury and he acted in good faith. The defendant has the burden of proving both of the following elements by a preponderance of the evidence:

1.    the defendant did not directly or indirectly induce the violation; and

2.    the defendant acted in good faith.

If you find that the defendant proved both of these elements, your verdict should be for the defendant. The defendant can prove good faith only by establishing that [he] [she] [it] maintained and enforced a reasonable and proper system of supervision and internal control. If you find that the defendant failed to prove either or both of these elements, your verdict should be for the plaintiff.

### Comment

See 15 U.S.C. § 78t(a) (Section 20(a) of the 1934 Act (Liability of Controlling Persons)); *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575–76 (9th Cir.1990) (en banc)(defendant has the burden of establishing its good faith), cert. denied, 499 U.S. 976 (1991).

1 **PJC 105.2 Instruction on Common-Law Fraud--Intentional Misrepresentation**

2

3    Fraud occurs when--

4    1.  a party makes a material misrepresentation, and

5    2.  the misrepresentation is made with knowledge of its falsity or made

6 recklessly without any knowledge of the truth and as a positive assertion, and

7    3.  the misrepresentation is made with the intention that it should be acted on

8 by the other party, and

9    4.  the other party relies on the misrepresentation and thereby suffers injury.

10    "Misrepresentation" means a false statement of fact.

11

12 **Source of instruction.** The supreme court has repeatedly identified these elements

13 of common-law fraud. *See, e.g., Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d*

14 *193, 211 n.45 (Tex. 2002)* (identifying the recognized elements of common-law

15 fraud); *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc., 960*

16 *S.W.2d 41, 47 (Tex. 1998)* (discussing recoverable damages sounding in tort);

17 *Oilwell Division, United States Steel Corp. v. Fryer, 493 S.W.2d 487, 491 (Tex.*

18 *1973)* (first announcing the recognized elements of common-law fraud and

19 discussing fraudulent inducement as an affirmative defense).

20

21    Reliance. In *Grant Thornton LLP v. Prospect High Income Fund, 314 S.W.3d*

22 *913, 923-24 (Tex. 2010)*, the supreme court explained that "fraud . . . require[s] that

23 the plaintiff show actual and justifiable reliance" and held there was no evidence

24 that the plaintiffs had justifiably relied on an audit report because they had

25 knowledge of the company's true condition. *See Grant Thornton LLP, 314 S.W.3d at*

26 *923* (measuring justifiability "given a fraud plaintiff's individual characteristics,

27 abilities, and appreciation of facts and circumstances at or before the time of the

28 alleged fraud") (quoting *Haralson v. E.F. Hutton Group, Inc., 919 F.2d 1014, 1026*

1   *(5th Cir. 1990));see also Ernst & Young, L.L.P. v. Pacific Mutual Life Insurance*

2   *Co., 51 S.W.3d 573, 577 (Tex. 2001)*. The supreme court has rejected the argument

3   that a party's failure to use due diligence bars a claim of fraud. *See Koral Industries*

4   *v. Security-Connecticut Life Insurance Co., 802 S.W.2d 650, 651 (Tex.*

5   *1990);Trenholm v. Ratcliff, 646 S.W.2d 927, 933 (Tex. 1983)* (defendant in fraud

6   case cannot complain that plaintiff failed to discover truth through exercise of care).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1        **PJC 115.37 Predicate Question and Instruction on Award of**

2                    **Punitive/Exemplary Damages**

3

4       Plaintiff seeks an award of punitive/damages in connection with its common

5 law intentional misrepresentation claim.  To obtain punitive damages, Plaintiff must

6 prove by clear and convincing evidence that in making the intentional

7 misrepresentation found, Defendant acted with malice, gross-negligence or that

8 other "aggravating circumstances" are present.

9       "Clear and convincing evidence" means the measure or degree of proof that

10 produces a firm belief or conviction of the truth of the allegations sought to be

11 established.

12       "Malice" means a specific intent by Defendant to cause substantial injury or

13 harm to Plaintiff.

14

15                            **Comment**

16       In a case in which a defendant has requested a bifurcated trial pursuant to

17 Tex. Civ. Prac. & Rem. Code § 41.009, PJC 115.37 should be answered in the first

18 phase of the trial.

19

20       By the supreme court's March 15, 2011, effective April 1, 2011, and April 13,

21 2011, effective April 13, 2011, orders under Tex. R. Civ. P. 226a, the supreme court

22 requires unanimity on the exemplary damages question and the applicable liability

23 question in cases governed by Tex. Civ. Prac. & Rem. Code § 41.003(d). PJC

24 115.37B is conditioned accordingly. The unanimity instruction is adapted from the

25 instruction in Tex. Civ. Prac. & Rem. Code § 41.003(e) and the supreme court's

26 March 15, 2011, effective April 1, 2011, and April 13, 2011, effective April 13,

27 2011, orders under Tex. R. Civ. P. 226a.

28

1  **Actual damages generally required.** In general, exemplary damages may be

2  awarded only if damages other than nominal damages are awarded. However, in

3  actions filed before September 1, 2003, if the jury finds that the harm suffered by

4  the plaintiff was caused by a specific intent by the defendant to cause substantial

5  injury to the plaintiff (the first definition of "malice" in the question above), then an

6  award of nominal damages will support an award of exemplary damages. Former

7  Tex. Civ. Prac. & Rem. Code § 41.004. Actions filed on or after September 1, 2003,

8  are governed by the 2003 amendments to the Civil Practice and Remedies Code that

9  provide that a claimant may not recover exemplary damages if the jury awards only

10  nominal damages. Tex. Civ. Prac. & Rem. Code § 41.004(a).

11

12  **Fraud as a ground for exemplary damages**. Fraud, as well as malice, is a ground

13  for recovery of exemplary damages. Tex. Civ. Prac. & Rem. Code § 41.003(a)(1).

14  However, where, as here, fraud (intentional misrepresentation) is the underlying

15  theory of liability as well as a predicate for recovery of exemplary damages,

16  "aggravating circumstances" must be found in addition to the fraud alone. *See*

17  *Dennis v. Dial Finance & Thrift Co.*, 401 S.W.2d 803, 805 (acknowledging

18  intentional fraud must be "committed for the purpose of injuring" to justify punitive

19  damage award).

20

21  **Gross negligence as a ground for exemplary damages**. In actions filed on or after

22  September 1, 2003, gross negligence is also a ground for recovery of exemplary

23  damages. Tex. Civ. Prac. & Rem. Code § 41.003(a)(3). As a predicate for recovery

24  of exemplary damages, the following instruction should be given:

25       "Gross negligence" means an act or omission by Defendant,

26       1. which when viewed objectively from the standpoint of Defendant at the

27  time of its occurrence involves an extreme degree of risk, considering the

28  probability and magnitude of the potential harm to others; and

1    2.  of which Defendant has actual, subjective awareness of the risk involved,

2  but nevertheless proceeds with conscious indifference to the rights, safety, or

3  welfare of others.

4         Tex. Civ. Prac. & Rem. Code § 41.001(11).

5

6  **Unanimity**. For actions filed on or after September 1, 2003, "[e]xemplary damages

7  may be awarded only if the jury was unanimous in regard to finding liability for and

8  the amount of exemplary damages." Tex. Civ. Prac. & Rem. Code § 41.003(d).

9  Section 41.003(e) of the Code mandates that the jury be instructed that its answer

10  regarding the amount of exemplary damages must be unanimous. By the supreme

11  court's March 15, 2011, effective April 1, 2011, and April 13, 2011, effective April

12  13, 2011, orders under Tex. R. Civ. P. 226a, the supreme court requires unanimity

13  on the exemplary damages question and the applicable liability question in cases

14  governed by Tex. Civ. Prac. & Rem. Code § 41.003(d). PJC 115.37B is conditioned

15  accordingly.

16

17

18

19

20

21

22

23

24

25

26

27

28

**PJC 115.38 Question and Instruction on Punitive/Exemplary Damages**

If you have found that Plaintiff has proved by clear and convincing evidence that punitive damages are justified, you must unanimously agree on the amount of any award of exemplary damages.

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are--

1.  The nature of the wrong.

2.  The character of the conduct involved.

3.  The degree of culpability of Defendant.

4.  The situation and sensibilities of the parties concerned.

5.  The extent to which such conduct offends a public sense of justice and propriety.

6.  The net worth of Defendant.

**Comment**

When to use. PJC 115.38 is used to submit exemplary damages. It should be predicated on a finding justifying the award of exemplary damages.

Source of instructions. Tex. Civ. Prac. & Rem. Code §§ 41.001(5), 41.003(d), (e), 41.011(a); and the supreme court's March 15, 2011, effective April 1, 2011, and April 13, 2011, effective April 13, 2011, orders under Tex. R. Civ. P. 226a.

**Predicate finding**. Section 41.003 of the Civil Practice and Remedies Code requires a predicate finding before an award of exemplary damages may be made. Tex. Civ. Prac. & Rem. Code § 41.003. Those predicate questions are found at PJC 115.37. If a defendant has requested a bifurcated trial pursuant to Tex. Civ. Prac. & Rem. Code § 41.009, predicate questions should be submitted in the first phase of the

1  trial. By the supreme court's March 15, 2011, effective April 1, 2011, and April 13,

2  2011, effective April 13, 2011, orders under Tex. R. Civ. P. 226a, the supreme court

3  requires unanimity on the exemplary damages question and the applicable liability

4  question in cases governed by Tex. Civ. Prac. & Rem. Code § 41.003(d) that are

5  filed after September 1, 2003. PJC 115.31B and 115.37B are conditioned

6  accordingly.

7

8  **Prejudgment interest not recoverable**. Prejudgment interest on exemplary

9  damages is not recoverable. Tex. Civ. Prac. & Rem. Code § 41.007.

10

11  **Bifurcation**. For actions filed on or after September 1, 2003, the instruction on

12  unanimity must be given in the bifurcated phase.

13      If in the first phase of the trial the jury finds facts establishing a predicate for

14  an award of exemplary damages, then a separate jury charge should be prepared for

15  the second phase of the trial. See the comments above regarding predicate-finding

16  and PJC 115.37. In such a second-phase jury charge, PJC 115.38 should be

17  submitted with both PJC 100.3 and 100.4.

18

19  **Limitation on amount of recovery**. Section 41.008 of the Civil Practice and

20  Remedies Code limits recovery of exemplary damages. Secion 41.008(b) provides:

21      Exemplary damages awarded against a defendant may not exceed an amount

22      equal to the greater of:

23      (1)(A) two times the amount of economic damages;  plus

24      (B)  an amount equal to any noneconomic damages found by the jury, not to

25      exceed $750,000;  or

26      (2)  $200,000.

27  Tex. Civ. Prac. & Rem. Code § 41.008(b).

28

1    **PJC 100.4 ADDITIONAL INSTRUCTION FOR BIFURCATED TRIAL**

2

3        In discharging your responsibility on this jury in the second phase of trial, if

4    any, you are to observe all the instructions that have been previously given to you in

5    the first phase of trial.

6

7    Dated:        January 27, 2020        SULLIVAN HILL REZ & ENGEL
                                            a Professional Law Corporation
8

9
                                            /s/    Michael A. Zarconi
10                                          Michael A. Zarconi
                                            Attorneys for Defendant
11                                          MARK A. WILLIS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SULLIVAN, HILL, LEWIN, REZ & ENGEL, APLC
Shannon D. Sweeney, SBN 204868
 *Sweeney@sullivanhill.com*
Michael A. Zarconi, SNB 288970
 *zarconi@sullivanhill.com*
600 B Street, Suite 1700
San Diego, California 92101
Telephone: (619) 233-4100
Fax Number: (619) 231-4372
9404.17558

Attorneys for Defendant MARK A. WILLIS

## UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENSOURCE INVESTMENTS LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> THOMAS P. TATHAM, an individual; MARK A. WILLIS, an individual; PDP MANAGEMENT GROUP, LLC, a Texas limited liability company; TITLE ROVER, LLC, a Texas limited liability company; BEYOND REVIEW, LLC, a Texas limited liability company; IMAGE ENGINE, LLC, a Texas limited liability company; WILLIS GROUP, LLC, a Texas limited liability company; and DOES 1-50, <br><br> Defendants. | CASE NO. 17cv0079 H LL <br><br> CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, Shauna M. Matheny, am a citizen of the United States and am at least eighteen years of age.  My business address is 600 B Street, Suite 1700, San Diego, California 92101.  My electronic notification address is *matheny@sullivanhill.com*.

I am not a party to the above-entitled action.  I have caused service of the following document(s):

**DEFENDANT MARK A. WILLIS' [PROPOSED] JURY INSTRUCTIONS**

by electronic mail on all parties to the email address provided in the CM/ECF System. A copy of this electronic mail is available for review and retained in our files.

      I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

      Executed on January 27, 2020 at San Diego, California.

          Shauna M. Matheny