**PANAKOS LAW, APC**
Aaron D. Sadock (SBN 282131)
555 West Beech Street, Ste. 500
San Diego, California 92101
Telephone:   (619) 800-0529
Facsimile:    (866) 365-4856
Email: asadock@panakoslaw.com

**RICHARD E. NAWRACAJ**
Law Offices of Richard E. Nawracaj
155 N. Wacker Drive, Suite 4250
Chicago, Illinois 60606
Email: rich.nawracaj@nawracaj-law.com

Attorneys for Plaintiff ENSOURCE INVESTMENTS LLC

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENSOURCE INVESTMENTS LLC, a Delaware limited liability company,<br><br>Plaintiff,<br>v.<br><br>THOMAS P. TATHAM, an individual; MARK A. WILLIS, an individual; PDP MANAGEMENT GROUP, LLC, a Texas limited liability company; TITLE ROVER, LLC, a Texas limited liability company; BEYOND REVIEW, LLC, a Texas limited liability company; IMAGE ENGINE, LLC, a Texas limited liability company; WILLIS GROUP, LLC, a Texas limited liability company; and DOES 1-50,<br><br>Defendants. | Case No.: 3:17-CV-00079-H-LL<br><br>**[PROPOSED] JOINT JURY INSTRUCTIONS**<br><br>District Judge: Hon. Marilyn L. Huff<br>Courtroom: 15A |

///

///

Plaintiff Ensource Investments LLC and Defendant Mark Willis hereby jointly submit[1] the following proposed Jury Instructions:

## 1.3    DUTY OF JURY (COURT READS AT THE BEGINNING OF TRIAL BUT DOES NOT PROVIDE WRITTEN COPIES)

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

### Comment

This instruction may be used as an oral instruction if the court elects to read its preliminary instructions to the jury but not to provide the jury with a copy of the instructions.

---

[1] The parties have indicated in footnotes throughout the instructions where a stipulation was not reached.

## 1.4    DUTY OF JURY (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT END OF CASE)

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

### Comment

This instruction should be used with the written final set of the instructions to be sent to the jury.

1

## 1.6   BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

## 1.4 BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable.  This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

### Comment

*See Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (defining clear and convincing evidence). *See also Murphy v. I.N.S.*, 54 F.3d 605, 610 (9th Cir.1995) (the burden of proving a matter by clear and convincing evidence is "a heavier burden than the preponderance of the evidence standard").

**1.9   WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits that are admitted into evidence;

3.      any facts to which the lawyers have agreed; and

4.      any facts that I have instructed you to accept as proved.

## 1.10   WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)    Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)    Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)    Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition some evidence was received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4)    Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

1

## 1.11   EVIDENCE FOR LIMITED PURPOSE

2

3       Some evidence may be admitted only for a limited purpose.

4

5       When I instruct you that an item of evidence has been admitted only for a

6   limited purpose, you must consider it only for that limited purpose and not for any

7   other purpose.

8

9                                  **Comment**

10       As a rule, limiting instructions need only be given when requested and need

11   not be given *sua sponte* by the court. *United States v. McLennan*, 563 F.2d 943,

12   947-48 (9th Cir. 1977).

13

14       *See United States v. Marsh*, 144 F.3d 1229, 1238 (9th Cir. 1998) (when trial

15   court fails to instruct jury in its final instructions regarding receipt of evidence for

16   limited purpose, Ninth Circuit examines trial court's preliminary instructions to

17   determine if court instructed jury on this issue).

18

19

20

21

22

23

24

25

26

27

28

## 1.12   DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

## Comment

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

1

2

## 1.13   RULING ON OBJECTIONS

3

4

      There are rules of evidence that control what can be received into evidence.

5

When a lawyer asks a question or offers an exhibit into evidence and a lawyer on

6

the other side thinks that it is not permitted by the rules of evidence, that lawyer

7

may object. If I overrule the objection, the question may be answered or the exhibit

8

received. If I sustain the objection, the question cannot be answered, and the

9

exhibit cannot be received. Whenever I sustain an objection to a question, you

must ignore the question and must not guess what the answer might have been.

10

11

      Sometimes I may order that evidence be stricken from the record and that

12

you disregard or ignore that evidence. That means when you are deciding the case,

13

you must not consider the stricken evidence for any purpose.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 1.14   CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.  the opportunity and ability of the witness to see or hear or know the things testified to;

2.  the witness's memory;

3.  the witness's manner while testifying;

4.  the witness's interest in the outcome of the case, if any;

5.  the witness's bias or prejudice, if any;

6.  whether other evidence contradicted the witness's testimony;

7.  the reasonableness of the witness's testimony in light of all the evidence; and

8.  any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some

things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

### 1.15   CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process

to start over. If any juror is exposed to any outside information, please notify the court immediately.

**Comment**

This instruction has been updated specifically to instruct jurors against accessing electronic sources of information and communicating electronically about the case, as well as to inform jurors of the potential consequences if a juror violates this instruction. An abbreviated instruction should be repeated before the first recess, and as needed before other recesses.

The practice in federal court of instructing jurors not to discuss the case until deliberations is widespread. *See, e.g., United States v. Pino-Noriega*, 189 F.3d 1089, 1096 (9th Cir. 1999).

1

2

## 1.18   TAKING NOTES

3

4       If you wish, you may take notes to help you remember the evidence. If you

5   do take notes, please keep them to yourself until you go to the jury room to decide

6   the case. Do not let note taking distract you.  When you leave, your notes should be

7   left in the courtroom jury room envelope in the jury room. No one will read your

8   notes.

9

10       Whether or not you take notes, you should rely on your own memory of the

11   evidence.  Notes are only to assist your memory. You should not be overly

12   influenced by your notes or those of other jurors.

13

### Comment

14   It is well settled in this circuit that the trial judge has discretion to allow jurors to

15   take notes. *United States v. Baker*, 10 F.3d 1374, 1403 (9th Cir. 1993). *See also*

16   JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL

17   ON JURY TRIAL PROCEDURES, § 3.4 (2013).

18

19

20

21

22

23

24

25

26

27

28

## 1.20   BENCH CONFERENCES AND RECESSES

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury was present in the courtroom, or by calling a recess. Please understand that while you were waiting, we were working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we have done what we could to keep the number and length of these conferences to a minimum. I did not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

## 1.21   OUTLINE OF TRIAL

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

## 2.2   STIPULATIONS OF FACT

The parties have agreed to certain facts to be placed in evidence that will be read to you. You must therefore treat these facts as having been proved.

### Comment

When parties enter into stipulations as to material facts, those facts will be deemed to have been conclusively proved, and the jury may be so instructed. *United States v. Mikaelian*, 168 F.3d 380, 389 (9th Cir. 1999) (citing *United States v. Houston*, 547 F.2d 104, 107 (9th Cir. 1976)), *amended by* 180 F.3d 1091 (9th Cir. 1999).

## 2.4    DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The deposition of Substantia Logix, by and through its designated Person Most Knowledgeable, Susan Willard-Killen, was taken on April 30, 2019. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

The deposition of Joseph V. Haynes was taken on April 29, 2019. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

### Comment

This instruction should be used only when testimony by deposition is used in lieu of live testimony. The Committee recommends that it be given immediately before a deposition is to be read. It need not be repeated if more than one deposition is read. If the judge prefers to include the instruction as a part of his or her instructions before evidence, it should be modified appropriately.

## 2.9   IMPEACHMENT EVIDENCE—WITNESS

The evidence that a witness has, for example, been convicted of a crime or lied under oath on a prior occasion, may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

### Comment

*See* Fed. R. Evid. 608–09; *United States v. Hankey*, 203 F.3d 1160, 1173 (9th Cir. 2000) (finding that district court properly admitted impeachment evidence following limiting instruction to jury). If this instruction is given during the trial, the Committee recommends giving the second sentence in numbered paragraph 3 of Instruction 1.10 (What Is Not Evidence) with the concluding instructions. *See also* Instruction 1.11 (Evidence for Limited Purpose).

## 2.16 EVIDENCE IN ELECTRONIC FORMAT

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the bailiff. If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the clerk, signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the bailiff present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to

ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data or disk from the jury room, and do not copy any such data.

### Comment

This instruction is premised on the assumption that either the court has ordered these procedures or the parties have agreed to the availability of electronic display devices in the jury room and to the procedures set forth in the instruction. If the parties' agreement is in the form of a written stipulation, the stipulation should be subject to approval by the judge and entered as an order. The following are possible provisions in such a stipulation:

1.     The parties agree to an allocation of the costs of providing the necessary equipment, including the computer, hard drive, projector, cable, printer, monitor and other accessories.

2.     Can the technical problem be addressed without any information from the jury other than an innocuous statement to the effect that (for example) "the printer isn't working"?

3.     Can the risk of even inadvertent disclosure of the jury's deliberations be eliminated by instructing the jury to cover any charts and to remove or conceal any papers, etc.?

4.     Should the technician, bailiff or clerk be sworn in, with an oath that requires him or her not to disclose whatever he or she sees or hears in the jury room, except for the nature of the technical problem and whether the problem has been fixed?

Whether or not these or other appropriate precautions to minimize or eliminate the risk of disclosure are taken, the judge may consider giving the jury this instruction:

> You have informed me that there is a technical problem that has interfered with your ability to review evidence electronically. I will send a technician into the jury room to deal with the problem while you are out of the deliberation room on a break. Please do not allow any materials reflecting any aspect of your deliberations to be visible during the technician's presence.

## 3.1    DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

### Comment

A jury verdict in a federal civil case must be unanimous, unless the parties stipulate otherwise. *Murray v. Laborers Union Local No. 324*, 55 F.3d 1445, 1451 (9th Cir. 1995) (citing *Johnson v. Louisiana*, 406 U.S. 356, 369-70 n.5 (1972)); *see also* Fed. R. Civ. P. 48(b). A federal civil jury must also unanimously reject any affirmative defenses before it may find a defendant liable and proceed to determine damages. *Jazzabi v. Allstate Ins. Co.*, 278 F.3d 979, 985 (9th Cir. 2002).

### 3.2    CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been

excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

### 3.3    COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**Comment**

For guidance on the general procedures regarding jury questions during deliberations, *see* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 5.1.A (2013).

1

2

### 3.4    READBACK OR PLAYBACK

3

If during jury deliberations you request for a readback of the testimony of a
witness, you are cautioned that all readbacks run the risk of distorting the trial
because of overemphasis of one portion of the testimony. The readback could
contain errors. The readback cannot reflect matters of demeanor , tone of voice,
and other aspects of the live testimony. Your recollection and understanding of the
testimony controls. Finally, in your exercise of judgment, the testimony read
cannot be considered in isolation, but must be considered in the context of all the
evidence presented.

### Comment

Although a court has broad discretion to read back excerpts or the entire
testimony of a witness when requested by a deliberating jury, precautionary steps
should be taken. Absent the parties' stipulation to a different procedure, the jury
should be required to hear the readback in open court, with counsel for both sides
present, and after giving the admonition set out above. *See United States v.
Newhoff*, 627 F.3d 1163, 1167 (9th Cir. 2010); *see also* JURY INSTRUCTIONS
COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL
PROCEDURES § 5.1.C (2013).

### 3.5    RETURN OF VERDICT

A verdict form has been prepared for you. You should work through the verdict form carefully and strictly follow the directions set forth in the form. After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the clerk or bailiff that you are ready to return to the courtroom.

## 5.1    DAMAGES—PROOF

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff on either or both of plaintiff's claims, you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant. It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**5.3      DAMAGES—MITIGATION**

The plaintiff has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

1.      that the plaintiff failed to use reasonable efforts to mitigate damages; and

2.      the amount by which damages would have been mitigated

## 18.2   SECURITIES—RULE 10b-5 CLAIM

The plaintiff alleges that the defendant made material misrepresentations concerning the ownership and the functionality of the Title Rover technology that was the subject of the investment in securities for Hopewell-Pilot Project, LLC as well as the use of the investment proceeds of the plaintiff by Hopewell-Pilot Project, LLC.  This is referred to as "the plaintiff's 10b-5 claim."

On this claim, the plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1.      the defendant made an untrue statement of a material fact or omitted a material fact necessary under the circumstances to keep the statements that were made from being misleading in connection with the sale of the securities;

2.      the defendant acted knowingly;

3.      the defendant used an instrumentality of interstate commerce, such as email or telephone, in connection with the sale of securities, regardless of whether the instrumentality itself was used to make an untrue statement;

4.      the plaintiff justifiably relied on the defendant's untrue statement of a material fact or on the defendant's omission to state a necessary material fact in buying securities;

5.      the defendant's misrepresentation or omission caused the plaintiff to suffer damages.[2]

---

[2]      Defendant objects to this jury instruction to the extent that the elements set forth for the Plaintiff's burden in proving its securities fraud claim are inconsistent with the elements set forth in the Pre-Trial Order of the Court. (*See* Docket No. 163 lns. 19-27 at 3.)  Defendant proposes the elements should be set forth in a manner more consistent with the Pre-Trial Order as follows:

1.      a material misrepresentation or omission by the defendant;

2.      scienter; that is, the defendant acted knowingly;

3.      a connection between the misrepresentation or omission and the purchase or sale of a security;

1    If you find that the plaintiff has proved each of the above elements, your

2    verdict should be for the plaintiff. If, on the other hand, you find that the plaintiff

3    has failed to prove any one of these elements, your verdict should be for the

4    defendant.

5                                 **Comment**

6    *See Retail Wholesale & Dep't Store Union Local 338 Retirement Fund v.*

7    *Hewlett-Packard Co.*, 845 F.3d 1268, 1274 (9th Cir. 2017) (listing elements of

8    claim).

9

10   *See Instruction* 18.1 (Securities—Definition of Recurring Terms) for

11   definitions of "security," "10b-5 claim," "misrepresentation," "omission," "in

12   connection with," and "instrumentality of interstate commerce." National security

13   exchanges include the New York Stock Exchange and the NASDAQ Stock

14   Market.

15

16   *See* 15 U.S.C. § 78j(b) (unlawful to use deceptive device in connection with

17   purchase or sale of security) and 17 C.F.R. § 240.10b-5 (unlawful to use device to

18   defraud, to make untrue statement or omission of material fact, or to engage in

19   fraudulent act in connection with purchase or sale of security). *Gray v. First*

20   *Winthrop Corp.*, 82 F.3d 877, 884 (9th Cir. 1996), confirms that the elements

21   described in this instruction are required to prove a 10b-5 claim.

22

23   A defendant "makes" a statement if the defendant has ultimate authority

24   over the statement, including its content and whether and how to communicate it.

25   _____

26       4.    the plaintiff justifiably relied upon the material misrepresentation or
omission;

27       5.    the plaintiff suffered economic loss; and

28       6.    loss causation; that is, the defendant's material misrepresentation or
omission caused the diminution in the value of the securities purchased or sold.

1 | *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).
2 | The plaintiff must show that the defendant had control over the statement; a
3 | defendant's significant involvement in the preparation of a prospectus containing
4 | untrue or misleading statements is not enough to show that the defendant "made"
5 | the statements. *Id*.

6 |
7 |       A defendant may also be liable if the defendant disseminates false
8 | statements with intent to defraud. *Lorenzo v. S.E.C.*, 139 S. Ct. 1094 (2019).
9 | Where a defendant does not "make" a statement but disseminates information that
10 | is "understood to contain material untruths," such conduct can fall within the scope
11 | of a 10b-5 claim. *Id*. at 1101; *see also id.* at 1103 ("[U]sing false representations to
12 | induce the purchase of securities would seem a paradigmatic example of securities
13 | fraud.").

14 |
15 |       Previously, these instructions phrased the fourth element as requiring that
16 | "the plaintiff *reasonably* relied" on the misrepresentation. Several Ninth Circuit
17 | cases, however, use the phrase "justifiable reliance." *See Livid Holdings Ltd. v.*
18 | *Salomon Smith Barney, Inc.*, 416 F.3d 940, 950 (9th Cir. 2005) ("If [Plaintiff]
19 | justifiably relied on Defendants' misrepresentation about the stock sale and, in
20 | turn, bought [company] stock based on this reliance, it incurred damages from
21 | Defendants' fraud"); *Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999);
22 | *Gray*, 82 F.3d at 884.

23 |
24 |       *Revised June 2019*

### 18.3   SECURITIES—MISREPRESENTATIONS OR OMISSIONS— MATERIALITY

The plaintiff must prove by a preponderance of the evidence that the defendant's misrepresentation or omission was material.

A factual representation concerning a security is material if there is a substantial likelihood a reasonable investor would consider the fact important in deciding whether to buy or sell that security.

An omission concerning a security is material if a reasonable investor would have regarded what was not disclosed to it as having significantly altered the total mix of information it took into account in deciding whether to buy or sell the security.

You must decide whether something was material based on the circumstances as they existed at the time of the statement or omission.

### Comment

In Basic *Inc. v. Levinson*, 485 U.S. 224, 231 (1988), the Supreme Court adopted the standard for materiality developed in *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976), (whether a reasonable shareholder would "consider it important" or whether the fact would have "assumed actual significance") as the standard for actions under 15 U.S.C. § 78j(b).

In discussing materiality, the Ninth Circuit has applied *TSC Industries* and *Basic Inc.* in various formulations. *See, e.g.*, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946-48 (9th Cir. 2005) (applying *Basic Inc.* materiality

test); *No. 84 Emp'r-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 934 (9th Cir. 2003) (declining to adopt bright line rule for materiality that would require immediate change in stock price and instead engaging in "fact-specific inquiry" under *Basic Inc.*); *In re Stac Electrs. Sec. Litig.*, 89 F.3d 1399, 1408 (9th Cir. 1996) (applying test of whether there was substantial likelihood that omitted fact would have been viewed by reasonable investor as having significantly altered "total mix" of information made available); *Kaplan v. Rose*, 49 F.3d 1363, 1371 (9th Cir. 1994) (applying test of whether omission or misrepresentation would have misled reasonable investor about nature of his or her investment); *McGonigle v. Combs*, 968 F.2d 810, 817 (9th Cir. 1992) (applying test of whether there was substantial likelihood that, under all the circumstances, omitted fact would have assumed actual significance in deliberations of reasonable shareholder); *see also In re Atossa Genetics Inc. Sec. Litig.*,868 F.3d 784, 795-96 (9th Cir. 2017) (discussing relationship between materiality and reliance and noting that "materiality" may be different when plaintiff alleges direct reliance on misrepresentation, rather than fraud-on-the-market theory).

For a discussion of the distinction between mere puffery, which is not material, and a statement that is materially misleading, *see In re Quality Systems, Inc. Sec. Litig.*, 865 F.3d 1130, 1143-44 (9th Cir. 2017).

The Ninth Circuit has held that stock price movements are relevant to reliance, and not to materiality. *See Retail Wholesale & Dep't Store Union Local 338 Retirement Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1277 (9th Cir. 2017).

*Revised Sept. 2017*

## 18.4   SECURITIES—FORWARD-LOOKING STATEMENTS

In considering whether the defendant made an untrue statement of a material fact or omitted a material fact necessary under the circumstances to keep the statements that were made from being misleading, you must distinguish between statements of fact and forward-looking statements.

Predictions, projections and other forward-looking statements, even if ultimately proven incorrect, are generally not statements of fact, but instead forecasts about what may or may not occur in the future.

Predictions, projections and other forward-looking statements may constitute a basis for a violation of Rule 10b-5 only if the plaintiff proves by a preponderance of the evidence that, at the time the forward-looking statements were made, (1) the defendant did not actually believe the statements, (2) there was no reasonable basis for the defendant to believe the statements, or (3) the defendant was aware of undisclosed facts tending to seriously undermine the accuracy of the statements.

### Comment

This instruction addresses "forward-looking statements" that fall outside the coverage of the safe harbor afforded to forward-looking statements by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-5(c). The PSLRA's safe harbor has numerous exclusions. For example, the safe harbor does not apply to statements contained in audited financial statements, nor does it apply to various other categories of statements such as statements made in connection with a going-private transaction, a tender offer, or an initial public offering. *See generally* 15 U.S.C. § 78u-5(b). When the PSLRA's safe harbor does not apply, background judicial doctrines may nonetheless govern whether statements of

opinion or statements accompanied by cautionary language are actionable under Rule 10b-5. *See, e.g.*, *Retail Wholesale & Dep't Store Union Local 338 Retirement Fund v. Hewlett-Packard* Co., 845 F.3d 1268, 1275-76 (9th Cir. 2017) (concluding that aspirational statements were not capable of being false); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 388 & n.2 (9th Cir. 2010) (applying materiality test to forward-looking statements when PSLRA safe harbor did not apply); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010) (holding that "vague statements of optimism" are not actionable); *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 947 (9th Cir. 2005) (applying "bespeaks caution" doctrine).

The term "forward-looking statements" refers generally to management projections of future economic performance, such as sales, revenue or earnings per share forecasts. In the context of the PSLRA safe harbor, the term means "any statement regarding (1) financial projections, (2) plans and objectives of management for future operations, (3) future economic performance, or (4) the assumptions 'underlying or related to' any of these issues." *No. 84 Empl'r-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003) (quoting 15 U.S.C. § 78u-5(I)). When a defendant makes mixed statements containing non-forward-looking statements as well as forward-looking statements, the non-forward-looking statements are not protected by the safe harbor of the PSLRA. *In re Quality Systems, Inc. Sec. Litig.*, 865 F.3d 1130, 1146-48 (9th Cir. 2017).

As to forward-looking statements not subject to the PSLRA safe harbor, the Ninth Circuit has stated that such statements are potentially actionable under the theory that "[a] projection or statement of belief contains at least three implicit factual assertions: (1) that the statement is genuinely believed, (2) that there is a reasonable basis for that belief, and (3) that the speaker is not aware of any

undisclosed facts tending to seriously undermine the accuracy of the statement." *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113 (9th Cir. 1989). *See also In re Oracle*, 627 F.3d at 388; *Provenz v. Miller*, 102 F.3d 1478, 1487 (9th Cir. 1996); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 501 (9th Cir. 1992). Accordingly, "[f]or a forward-looking statement . . . to constitute a material misrepresentation giving rise to Section 10(b) or Rule 10b-5 liability, a plaintiff must prove either '(1) the statement is not actually believed [by the speaker], (2) there is no reasonable basis for the belief, or (3) the speaker is aware of undisclosed facts tending seriously to undermine the statement's accuracy.'" *In re Oracle*, 627 F.3d at 388 (quoting *Provenz*, 102 F.3d at 1487) (alteration in original). "The fact that [a] forecast turn[s] out to be incorrect does not retroactively make it a misrepresentation." *Id.* at 389.

Forward-looking statements that are not affirmatively exempted from the safe harbor's coverage under 15 U.S.C. § 78u-5(c), are afforded safe harbor protection "in either of two circumstances: if they were identified as forward-looking statements and accompanied by meaningful cautionary language, . . . or if the investors fail to prove the projections were made with *actual* knowledge that they were materially false or misleading." *In re Cutera*, 610 F.3d at 1111-12 (9th Cir. 2010). These two types of forward-looking statements are independent grounds for protection under the safe harbor. *See id.* at 1112-13 (holding that the safe harbor rule should be read disjunctively).

As to the first category, the PSLRA provides a safe harbor for identified forward-looking statements that are "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement[s]." 15 U.S.C. § 78u-5(1)(A)(I); *see also id.* § 78u-5(2) (providing a conditional safe harbor for oral

forward-looking statements). This prong of the PSLRA safe harbor codifies principles underlying the "bespeaks caution" doctrine. *See Empl'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1132 (9th Cir. 2004). This instruction does not address the bespeaks caution doctrine because application of that doctrine is typically not a question for the jury. *See id.* ("The bespeaks caution doctrine provides a mechanism by which a court can rule as a matter of law [typically in a motion to dismiss for failure to state a cause of action or a motion for summary judgment] that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud.") (alteration in original) (quoting *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1413-15 (9th Cir. 1994)) (internal quotation marks omitted).

As to the second category, the PSLRA provides a safe harbor for forward-looking statements that the speaker actually believed were true. *See* 15 U.S.C. § 78u-5(c)(1)(B).  To avoid application of the safe harbor under this category, "plaintiffs must prove that 'forward- looking' statements were made with 'actual knowledge' that they were false or misleading." *In re Daou Sys., Inc., Sec. Litig.*, 411 F.3d 1006, 1021 (9th Cir. 2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 993 (1999) (Browning, J., concurring in part and dissenting in part)). By contrast, if the statement is not covered by the PSLRA safe harbor, "[t]he requisite state of mind, at a minimum, is deliberate or conscious recklessness." *Empl'rs Teamsters*, 353 F.3d at 1134.

*Revised Sept. 2017*

1

2

### 18.5   SECURITIES—KNOWINGLY/SCIENTER

3

4    A defendant acts knowingly when he makes an untrue statement with the

5    knowledge that the statement was false or with reckless disregard for whether the

6    statement was true. A defendant acts knowingly when he omits necessary

7    information with the knowledge that the omission would make the statement false

8    or misleading or with reckless disregard for whether the omission would make the

9    statement false or misleading.

10   "Reckless" means highly unreasonable conduct that is an extreme departure

11   from ordinary care, presenting a danger of misleading investors, which is either

12   known to the defendant or is so obvious that the defendant must have been aware

13   of it.

14

15                                    **Comment**

16   This instruction addresses the element of "scienter," which was developed in

17   *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, *reh'g denied*, 425 U.S. 986

18   (1976). In *Nelson v. Serwold*, 576 F.2d 1332, 1337 (9th Cir. 1978), the court found

19   that Congress intended Section 10(b) to reach both knowing and reckless conduct,

20   and it interpreted the *Ernst & Ernst* decision as merely eliminating negligence as a

21   basis for liability.

22

23   The Ninth Circuit defined "recklessness" in the context of Section 10(b) and

24   Rule 10b–5 in *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1569 (9th Cir.

25   1990) (en banc), and *In re Software Toolworks Inc.*, 50 F.3d 615, 626 (9th Cir.

26   1994). Recklessness satisfies the scienter requirement, except as to forward-

27   looking statements under the safe harbor provisions of the Private Securities

28   Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-5, for which actual

knowledge that the statement was false or misleading is required. *See* Comment to Instruction 18.4 (Securities—Forward-Looking Statements).

In Webb *v. SolarCity Corp*., 884 F.3d 844, 851 (9th Cir. 2018), the Ninth Circuit explained that the scienter standard requires facts demonstrating an intent to deceive, manipulate or defraud, or "deliberate recklessness." The court defined "deliberate recklessness" as "an extreme departure from the standard of ordinary care." *Id*.

For a discussion of when a corporate officer's scienter can be imputed to a corporation, particularly if that officer also defrauds the corporation, *see In re ChinaCast Education Corp. Securities Litigation*, 809 F.3d 471 (9th Cir. 2015).

The PSLRA entitles a defendant in any private action arising under Rule 10b-5 to require the court to submit a written interrogatory to the jury regarding each defendant's state of mind at the time of the alleged violation of the securities laws. 15 U.S.C. § 78u-4(d).

*Revised June 2018*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 18.6   SECURITIES—JUSTIFIABLE RELIANCE GENERALLY

The plaintiff must prove by a preponderance of the evidence that it justifiably relied on the alleged misrepresentation or omission in deciding to engage in the purchase of the securities in question. The plaintiff may not intentionally close its eyes and refuse to investigate the circumstances or disregard known or obvious risks.

### Comment

The element of "reliance [is] often referred to in cases involving public securities markets . . . as transaction causation." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005).

In *Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025, 1030 (9th Cir. 1992), the court found that an investor cannot claim reliance on a misrepresentation if the investor already possessed information sufficient to call the representation into question.

A rebuttable presumption of reliance is deemed to arise when the fraud involves material omissions. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972). In a "mixed case of misstatements and omissions," the presumption will only apply if the case primarily alleges omissions. *Binder v. Gillespie*, 184 F.3d 1059, 1063-64 (9th Cir. 1999) (involving case resolved on summary judgment). Accordingly, at trial, the court will have to resolve whether the presumption is applicable in light of the evidence.

In deciding whether a plaintiff justifiably relied on the defendant's alleged misrepresentations or omissions, you may consider evidence of:

(1)    whether the plaintiff was sophisticated and experienced in financial and securities matters;

(2)    whether the plaintiff and the defendant had a long-standing business or personal relationship, or a relationship in which the defendant owed a duty to the plaintiff to not interfere with or adversely affect the plaintiff's interests;

(3)    whether the plaintiff ignored or refused to investigate the circumstances surrounding the transaction;

(4)    whether the plaintiff disregarded risks so obvious that they should have been known or risks so great as to make it highly probable that harm would follow;

(5)    whether the defendant concealed the fraud;

(6)    whether the plaintiff had access to the relevant material information;

(7)    whether the misrepresentation was general or specific;

(8)    whether the plaintiff initiated or sought to expedite the transaction;

(9)    whether the defendant prepared or provided to the plaintiff materials that contained adequate warnings about the risks associated with the investment or adequate disclaimers describing limitations on the scope of the defendant's representations or the defendant's involvement; and

(10)    any other evidence you find helpful in deciding whether the plaintiff justifiably relied on the defendant's misrepresentation[s] or omission[s].

For cases listing the factors, *see, e.g.*, *Brown v. E.F. Hutton Grp., Inc.*, 991 F.2d 1020, 1032 (2d Cir.1993); *Davidson v. Wilson*, 973 F.2d 1391, 1400 (8th Cir.1992); *Myers v. Finkle*, 950 F.2d 165, 167 (4th Cir.1991); *Jackvony v. RIHT Fin. Corp.*, 873 F.2d 411, 416 (1st Cir.1989); *Bruschi v. Brown*, 876 F.2d 1526,

1529 (11th Cir.1989); *Zobrist v. Coal-X, Inc.*, 708 F.2d 1511, 1518-19 (10th Cir.1983) .

To establish that a defendant warned the plaintiff adequately of the attendant risks in the transaction, the defendant's disclosures must have been precise and must have related directly to that which the plaintiff claims was misleading. *See In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1414-15 (9th Cir. 1994).

1

## 18.8   SECURITIES—CAUSATION

2

3        The plaintiff must prove by a preponderance of the evidence that the alleged

4   material misrepresentations or omissions were the cause of its economic injury. To

5   establish causation, the plaintiff must prove that the alleged misrepresentations or

6   omissions played a substantial part in causing the injury or loss the plaintiff

7   suffered. The plaintiff need not prove that the alleged misrepresentations or

8   omissions was or were the sole cause of the economic injuries.

9

10                                          **Comment**

11        The Private Securities Litigation Reform Act of 1995 ("PSLRA") imposed

12   the requirement that a private plaintiff prove that the defendant's fraud caused an

13   economic loss. 15 U.S.C. § 78u-4(b)(4). This element of causation has been

14   referred to as "'loss causation,' *i.e.*, a causal connection between the material

15   misrepresentation and the loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342

16   (2005). In *Dura*, the Supreme Court held that the PSLRA "makes clear Congress'

17   intent to permit private securities fraud actions for recovery where, but only where,

18   plaintiffs adequately allege and prove the traditional elements of causation and

19   loss." *Id.* at 346. The Supreme Court reversed the Court of Appeals' ruling that a

20   plaintiff may establish loss causation if the plaintiff merely shows that the price

21   paid on the date of purchase was inflated because of the defendant's

22   misrepresentation. The Supreme Court held that a plaintiff's mere purchase of

23   stock at an inflated price is *not* sufficient to establish loss causation for a number of

24   reasons, such as that at the moment of purchase the plaintiff has suffered no loss

25   because the inflated price paid is offset by the value of the shares he or she

26   acquired, which at that instant possess equivalent market value. Also, the purchaser

27   could later sell those shares at a profit. Conversely, if the price drops, the cause of

28   the decline could be attributable to a host of factors other than that the stock price

previously had been inflated as a result of the defendant's misrepresentation or omission. The Court found that under the plaintiff's theory of liability, the complaint failed adequately to allege causation because it did not allege that the defendant corporation's share price fell significantly after the truth became known, did not specify the relevant economic loss, and did not describe the causal connection between that loss and the misrepresentation. *Id*. at 346-48.

The Ninth Circuit has recently stated that "[t]ypically, 'to satisfy the loss causation requirement, the plaintiff must show that the revelation of that misrepresentation or omission was a substantial factor in causing a decline in the security's price, thus creating an actual economic loss for the plaintiff.'" *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1119 (9th Cir. 2013) (quoting *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 425-26 (3d Cir.2007)). While "an outright admission of fraud" is not required, "a mere 'risk' or 'potential' for fraud is insufficient to establish loss causation." *Loos v. Immersion Corp.*, 762 F.3d 880, 888-89 (9th Cir. 2014) (quoting *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008) (holding that revelation of investigation, on its own, amounts only to notice of potential disclosure of fraudulent conduct and thus does not satisfy causation element of § 10(b) and Rule 10b-5 claims). However, "[d]isclosure of the fraud is not a sine qua non of loss causation, which may be shown even where the alleged fraud is not necessarily revealed prior to the economic loss." *Nuveen,* 730 F.3d at 1120. Accordingly, "a plaintiff can satisfy loss causation by showing that 'the defendant misrepresented or omitted the *very facts* that were a substantial factor in causing the plaintiff's economic loss.'" *Id.* (quoting *McCabe*, 494 F.3d at 425). For example, in *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 949 (9th Cir. 2005), the Ninth Circuit held that loss causation was sufficiently alleged when the plaintiff alleged that the very facts concealed by the defendants — facts

concerning the company's dire financial situation — resulted in its going bankrupt, which caused the plaintiff to lose the entire value of its investment in the company. *See also id.* at 949 n.2 (concluding that *Dura* did not require plaintiff to allege corrective disclosure because plaintiff alleged "private sale of privately traded stock and . . . not only asserted that it purchased the security at issue at an artificially inflated price, but pled that the [d]efendants' misrepresentation was causally related to the loss it sustained").

### 18.9   SECURITIES—DAMAGES

If you find for the plaintiff on the 10b-5 claim, then you must consider and decide the amount of money damages to be awarded to the plaintiff. You may award only actual damages in that amount which will reasonably and fairly compensate the plaintiff for the economic loss it sustained. Your award must be based on evidence and not upon speculation, guesswork or conjecture. The plaintiff has the burden of proving damages by a preponderance of the evidence.

### Comment

Section 10(b) claims for damages are governed by Section 28(a), which limits all claims brought under the Exchange Act to actual damages. *See* 15 U.S.C. § 78bb(a) (providing that no person maintaining a suit for damages under the Exchange Act may recover "a total amount in excess of his actual damages"); *see also Randall v. Loftsgaarden*, 478 U.S. 647, 661-62 (1986).

"The usual measure of damages for securities fraud claims under Rule 10b-5 is out-of-pocket loss; that is, the difference between the value of what the plaintiff gave up and the value of what the plaintiff received. Consequential damages may also be awarded if proved with sufficient certainty  The district court may apply a rescissory measure of damages in appropriate circumstances." *Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1030 (9th Cir. 1999) (citing *DCD Programs v. Leighton*, 90 F.3d 1442, 1449 (9th Cir. 1996)). The Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2005), highlights the difficulty in framing an instruction premised on a theory that the price on the date of purchase was inflated because of a misrepresentation. *See* Comment to Instruction 18.8 (Securities—Causation). Comparable difficulties could arise when there are several different transaction dates or multiple plaintiffs, or when the

lawsuit is brought as a class action. In such cases, computations based on average prices during the applicable trading period might prove necessary.

Because of the above-described complications, expert testimony is often proffered in calculating damages in 10b-5 actions. *See In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1014-15 (C.D. Cal. 2003); *In re Oracle Sec. Litig.,* 829 F. Supp. 1176, 1181 (N.D. Cal. 1993).

1
2

## 18.10 SECURITIES—CONTROLLING PERSON LIABILITY

3
4
5

Under the Securities Exchange Act of 1934, a defendant may be liable if during the period that someone else defrauded the plaintiff, the defendant had the authority to control that person or company.

6
7
8
9
10
11

The plaintiff claims that the defendant is a controlling person and is therefore liable under the securities laws. On this claim, the plaintiff has the burden of proving by a preponderance of the evidence that the defendant [controlling person] possessed, directly or indirectly, the actual power to direct or cause the direction of the management and policies of Hopewell Pilot-Project LLC and/or Title Rover.

12

13

## Comment

14
15
16
17
18
19
20
21
22

See Instruction 18.0 (Securities—Definition of Recurring Terms) for definition of "controlling person." Section 20(a) of the Securities Exchange Act of 1934 provides that "controlling persons" can be vicariously liable for 10b-5 violations. See 15 U.S.C. § 78t(a) (liability of controlling persons); 17 C.F.R. § 230.405 (definition of "control"); *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1578 (9th Cir.1990)(en banc)(broker-dealer is "controlling person" within meaning of the 1934 Act and could be liable for its stockbroker-employee's conduct, even if the broker-dealer and the stockbroker contractually agreed that the stockbroker would be an independent contractor), cert. denied, 499 U.S. 976 (1991).

23
24
25
26
27
28

*See also No. 84 Employer-Teamster Joint Council Pension Trust Fund v America West Holding Corp.*, 320 F.3d 920, 945 (9th Cir.2003) (discussing traditional indicia of control). See Instruction 18.9 (Securities—Good Faith Defense to Controlling Person Liability).[3]

---

[3]       Defendant objects to the inclusion of this instruction on the grounds that controlling person liability is not an issue framed for adjudication in the governing Pre-Trial Order.  (*See* Docket No. 163; and Transcript of Pre-Trial Conference, Docket No. 176 lns. 18-19 at 10 (pre-trial order supersedes the pleadings).)  In the event that Defendant's objection is overruled, Defendant contends that Jury Instruction 18.11 should be included herein as set forth below. In the event that Defendant's objection is sustained, both Instruction Nos. 18.10 and 18.11 should be stricken from these proposed Jury Instructions. Plaintiff contends that the control-person theory has been raised both in its operative complaint [See ECF No. 93, ¶¶ 3,10, 16] and Memo. of Contentions of Fact and Law. [See ECF No. 39, p. 19, subsection C] and will be a core theory of its case at trial. Under Defendant's own logic, Jury Instruction 18.4 (Forward-Looking Statements), would also be precluded, but Defendant does not object to the inclusion of that instruction. Striking out instructions solely on this basis is impractical and against the interests of justice.

## 18.11  SECURITIES—GOOD FAITH DEFENSE TO CONTROLLING PERSON LIABILITY

The defendant contends that he is not liable to the plaintiff even if he was a controlling person because he did not induce the violation that led to the plaintiff's economic injury and he acted in good faith. The defendant has the burden of proving both of the following elements by a preponderance of the evidence:

    1.    the defendant did not directly or indirectly induce the violation; and

    2.    the defendant acted in good faith.

If you find that the defendant proved both of these elements, your verdict should be for the defendant. The defendant can prove good faith only by establishing that [he] [she] [it] maintained and enforced a reasonable and proper system of supervision and internal control. If you find that the defendant failed to prove either or both of these elements, your verdict should be for the plaintiff.

### Comment

See 15 U.S.C. § 78t(a) (Section 20(a) of the 1934 Act (Liability of Controlling Persons)); *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575–76 (9th Cir.1990) (en banc)(defendant has the burden of establishing its good faith), cert. denied, 499 U.S. 976 (1991).

## PJC 105.2 INSTRUCTION ON COMMON LAW FRAUD – INTENTIONAL MISREPRESENTATION

Fraud occurs when:

1.  a party makes a material misrepresentation, and
2.  the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and
3.  the misrepresentation is made with the intention that it should be acted on by the other party, and
4.  the other party relies on the misrepresentation and thereby suffers injury.

"Misrepresentation" means a false statement of fact OR a statement of opinion based on a false statement of fact.

**Source of instruction.** The supreme court has repeatedly identified these elements of common-law fraud. *See, e.g., Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 211 n.45 (Tex. 2002) (identifying the recognized elements of common-law fraud); *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (discussing recoverable damages sounding in tort); *Oilwell Division, United States Steel Corp. v. Fryer*, 493 S.W.2d 487, 491 (Tex. 1973) (first announcing the recognized elements of common-law fraud and discussing fraudulent inducement as an affirmative defense).

**Reliance.** In *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923-24 (Tex. 2010), the supreme court explained that "fraud . . . require[s] that the plaintiff show actual and justifiable reliance" and held there was no evidence that the plaintiffs had justifiably relied on an audit report because they had knowledge of the company's true condition. *See Grant Thornton LLP*, 314 S.W.3d at 923

(measuring justifiability "given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud") (quoting *Haralson v. E.F. Hutton Group, Inc.*, 919 F.2d 1014, 1026 (5th Cir. 1990)); see also *Ernst & Young, L.L.P. v. Pacific Mutual Life Insurance Co.*, 51 S.W.3d 573, 577 (Tex. 2001). The supreme court has rejected the argument that a party's failure to use due diligence bars a claim of fraud. *See Koral Industries v. Security-Connecticut Life Insurance Co.*, 802 S.W.2d 650, 651 (Tex. 1990); *Trenholm v. Ratcliff*, 646 S.W.2d 927, 933 (Tex. 1983) (defendant in fraud case cannot complain that plaintiff failed to discover truth through exercise of care).

Whether a statement is one of fact or merely one of opinion often depends on the circumstances in which the statement is made. *Italian Cowboy Partners, Ltd. v. Prudential Insurance Co. of America*, 341 S.W.3d 323, 338 (Tex. 2011). For example, special or one-sided k knowledge may lead to the conclusion that a statement is one of fact rather than opinion. *Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 338.

## PJC 115.37 PREDICATE QUESTION AND INSTRUCTION ON
## AWARD OF PUNITIVE/EXEMPLARY DAMAGES

Plaintiff seeks an award of punitive/damages in connection with its common law intentional misrepresentation claim.  To obtain punitive damages, Plaintiff must prove by clear and convincing evidence that in making the intentional misrepresentation found, Defendant acted with malice, fraud or gross-negligence or that other "aggravating circumstances" are present.

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means a specific intent by Defendant to cause substantial injury or harm to Plaintiff.

"Gross Negligence" means and act or omission by Defendant:

1.    Which when viewed objectively from the standpoint of the Defendant at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

2.    Of which the Defendant has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety or welfare of others.

"Fraud" means  knowingly or recklessly making an untrue statement.[4]

---

[4]    Defendant objects to this Jury Instruction as phrased.  Defendant contends that, while the standard for punitive damages in Texas requires a showing of malice, fraud, or gross negligence, a showing of clear and convincing evidence of mere fraud is not alone sufficient to support an award of punitive damages *where the underlying liability upon which punitive damages are based is fraud.* Defendant contends that punitive damages may only be awarded upon a finding of fraud where there are further aggravating circumstances, such as where the fraud is found by clear and convincing evidence to have been committed for the specific purpose of causing injury to Plaintiff, or upon a showing by clear and convincing evidence of wonton and malicious conduct in connection with the fraud.  *See Dennis v. Dial Fin. & Thrift Co.,* 401 S.W.2d 803, 805 (Tex. 1966).

**Comment**

In a case in which a defendant has requested a bifurcated trial pursuant to Tex. Civ. Prac. & Rem. Code § 41.009, PJC 115.37 should be answered in the first phase of the trial.

By the supreme court's March 15, 2011, effective April 1, 2011, and April 13, 2011, effective April 13, 2011, orders under Tex. R. Civ. P. 226a, the supreme court requires unanimity on the exemplary damages question and the applicable liability question in cases governed by Tex. Civ. Prac. & Rem. Code § 41.003(d). PJC 115.37B is conditioned accordingly. The unanimity instruction is adapted from the instruction in Tex. Civ. Prac. & Rem. Code § 41.003(e) and the supreme court's March 15, 2011, effective April 1, 2011, and April 13, 2011, effective April 13, 2011, orders under Tex. R. Civ. P. 226a.

**Actual damages generally required.** In general, exemplary damages may be awarded only if damages other than nominal damages are awarded. However, in actions filed before September 1, 2003, if the jury finds that the harm suffered by the plaintiff was caused by a specific intent by the defendant to cause substantial injury to the plaintiff (the first definition of "malice" in the question above), then an award of nominal damages will support an award of exemplary damages. Former Tex. Civ. Prac. & Rem. Code § 41.004. Actions filed on or after September 1, 2003, are governed by the 2003 amendments to the Civil Practice and Remedies Code that provide that a claimant may not recover exemplary damages if the jury awards only nominal damages. Tex. Civ. Prac. & Rem. Code § 41.004(a).

**Fraud as a ground for exemplary damages**. Fraud, as well as malice, is a ground for recovery of exemplary damages. Tex. Civ. Prac. & Rem. Code § 41.003(a)(1). "It is generally recognized that exemplary damages may properly be awarded when the plaintiff has suffered actual damage as the result of fraud intentionally

committed for the purpose of injuring him," and "[a] person who intentionally misrepresents facts for the purpose of injuring another is guilty of wanton and malicious conduct" for purposes of exemplary damages. *Dennis v. Dial Fin. & Thrift Co.,* 401 S.W.2d 803, 805 (Tex. 1966).

**Gross Negligence as a ground for exemplary damages**. In actions filed on or after September 1, 2003, gross negligence is also a ground for recovery of exemplary damages. Tex. Civ. Prac. & Rem. Code § 41.003(a)(3).

**Unanimity**. For actions filed on or after September 1, 2003, "[e]xemplary damages may be awarded only if the jury was unanimous in regard to finding liability for and the amount of exemplary damages." Tex. Civ. Prac. & Rem. Code § 41.003(d). Section 41.003(e) of the Code mandates that the jury be instructed that its answer regarding the amount of exemplary damages must be unanimous. By the supreme court's March 15, 2011, effective April 1, 2011, and April 13, 2011, effective April 13, 2011, orders under Tex. R. Civ. P. 226a, the supreme court requires unanimity on the exemplary damages question and the applicable liability question in cases governed by Tex. Civ. Prac. & Rem. Code § 41.003(d). PJC 115.37B is conditioned accordingly.

# PJC 115.38 QUESTION AND INSTRUCTION ON PUNITIVE/EXEMPLARY DAMAGES

If you have found that Plaintiff has proved by clear and convincing evidence that punitive damages are justified, you must unanimously agree on the amount of any award of exemplary damages.

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are--

1.  The nature of the wrong.
2.  The character of the conduct involved.
3.  The degree of culpability of Defendant.
4.  The situation and sensibilities of the parties concerned.
5.  The extent to which such conduct offends a public sense of justice and propriety.
6.  The net worth of Defendant.

## Comment

When to use. PJC 115.38 is used to submit exemplary damages. It should be predicated on a finding justifying the award of exemplary damages.

Source of instructions. Tex. Civ. Prac. & Rem. Code §§ 41.001(5), 41.003(d), (e), 41.011(a); and the supreme court's March 15, 2011, effective April 1, 2011, and April 13, 2011, effective April 13, 2011, orders under Tex. R. Civ. P. 226a.

**Predicate finding**. Section 41.003 of the Civil Practice and Remedies Code requires a predicate finding before an award of exemplary damages may be made. Tex. Civ. Prac. & Rem. Code § 41.003. Those predicate questions are found at PJC 115.37. If a defendant has requested a bifurcated trial pursuant to Tex. Civ. Prac. &

Rem. Code § 41.009, predicate questions should be submitted in the first phase of the trial. By the supreme court's March 15, 2011, effective April 1, 2011, and April 13, 2011, effective April 13, 2011, orders under Tex. R. Civ. P. 226a, the supreme court requires unanimity on the exemplary damages question and the applicable liability question in cases governed by Tex. Civ. Prac. & Rem. Code § 41.003(d) that are filed after September 1, 2003. PJC 115.31B and 115.37B are conditioned accordingly.

**Prejudgment interest not recoverable**. Prejudgment interest on exemplary damages is not recoverable. Tex. Civ. Prac. & Rem. Code § 41.007.

**Bifurcation**. For actions filed on or after September 1, 2003, the instruction on unanimity must be given in the bifurcated phase.

If in the first phase of the trial the jury finds facts establishing a predicate for an award of exemplary damages, then a separate jury charge should be prepared for the second phase of the trial. See the comments above regarding predicate-finding and PJC 115.37. In such a second-phase jury charge, PJC 115.38 should be submitted with both PJC 100.3 and 100.4.

**Limitation on amount of recovery**. Section 41.008 of the Civil Practice and Remedies Code limits recovery of exemplary damages. Section 41.008(b) provides:

> Exemplary damages awarded against a defendant may not exceed an amount equal to the greater of:
> (1)(A) two times the amount of economic damages;  plus
> (B)  an amount equal to any noneconomic damages found by the jury, not to exceed $750,000;  or
> (2)  $200,000.

1    Tex. Civ. Prac. & Rem. Code § 41.008(b).
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PJC 100.4 ADDITIONAL INSTRUCTION FOR BIFURCATED TRIAL**

In discharging your responsibility on this jury in the second phase of trial, if any, you are to observe all the instructions that have been previously given to you in the first phase of trial.

Respectfully submitted,

DATED: January 31, 2020             PANAKOS LAW, APC

                                    By:  /s/ Aaron D. Sadock

                                    Attorney for Plaintiff
                                    ENSOURCE INVESTMENTS LLC

DATED:  January 31, 2020        SULLIVAN HILL REZ & ENGEL

                                    By: /s/ Michael A. Zarconi
                                    Attorney for Defendants MARK A WILLIS;
                                    BEYOND REVIEW, LLC; IMAGE
                                    ENGINE, LLC; and WILLIS GROUP, LLC