1 | SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation
2 | Shannon D. Sweeney, SBN 204868
Michael A. Zarconi, SBN 288970
3 | 600 B Street, 17th Floor
San Diego, California 92101
4 | Telephone: (619) 233-4100
Fax Number: (619) 231-4372
5 | Our Client No.: 9404.17558

6 | Attorneys for Defendant, MARK A. WILLIS



FILED

FEB - 6 2020

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

8 | **UNITED STATES DISTRICT COURT**

9 | **SOUTHERN DISTRICT OF CALIFORNIA**

10 | ENSOURCE INVESTMENTS LLC,
a Delaware limited liability company,

  ) Case No. 3:'17-cv-0079-H-LL

11 | Plaintiff,

  ) DEFENDANT MARK A. WILLIS'
  ) SUPPLEMENTAL TRIAL BRIEF
  ) REGARDING LOSS CAUSATION

12 | v.

13 | THOMAS P. TATHAM, an
individual; MARK A. WILLIS, an
14 | individual; PDP MANAGEMENT
GROUP, LLC, a Texas limited
15 | liability company; TITLE ROVER,
LLC, a Texas limited liability
16 | company; BEYOND REVIEW,
LLC, a Texas limited liability
17 | company; IMAGE ENGINE, LLC, a
Texas limited liability company;
18 | WILLIS GROUP, LLC, a Texas
limited liability company ; and
19 | DOES 1-50,

  ) Magistrate Judge: Hon. Linda Lopez
  ) District Judge:    Hon. Marilyn L. Huff

20 | Defendants.

Case No. 3:'17-cv-0079-H-LL

1

## TABLE OF CONTENTS

2

PAGE

3  TABLE CONTENTS..................................................................................... i

4  TABLE OF AUTHORITIES ....................................................................... ii

5  I.    INTRODUCTION .............................................................................. 1

6  II.   ALLEGED MISREPRESENTATIONS REMAINING FOR TRIAL ........ 2

7  III.  DISCUSSION..................................................................................... 5

8      A.   Ensoure Must Prove Loss Causation by a Preponderance
            of Admissible Evidence ........................................................... 5
9

10     B.   Ensoure Has Not Established, and Cannot Establish, a
            Decline in Valuation ............................................................... 9
11

12     C.   Ensoure Has Not Established, and Cannot Establish, a
            Causal Link Establishing that the Revelation of any
13          Misrepresentation Was a Substantial Factor in
            Proximately Causing any Decline in Value ............................ 9
14

15          1.   Ensoure Cannot Establish Loss Causation as to
                 "Development and Efficacy" of the Technology
16               licensed to Hopewell.................................................... 10

17          2.   Ensoure Cannot Establish Loss Causation
                 Regarding the "Proprietary" Nature of the Title
18               Rover Software ........................................................... 10

19  IV.   CONCLUSION .................................................................................. 12

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2 <u>CASES</u>                                                                      <u>PAGE</u>

3 <u>Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv.,</u>
4     189 F.3d 1017 (9th Cir. 1999).................................................................. 6

5 <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,</u>
6     493 F.3d 87 (2d Cir. 2007)........................................................................ 8

7 <u>Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.,</u>
    No. 12-CV-04115-JST,
8     2013 U.S. Dist. LEXIS 112733 (N.D. Cal. Aug. 9, 2013)........................... 8

9 <u>Cutler v. Kirchner,</u>
    No. 15-56897,
10     2017 U.S. App. LEXIS 15538 (9th Cir. Aug. 17, 2017).............................. 8

11 <u>In re Daou Sys., Inc.,</u>
    411 F.3d 1006 (9th Cir. 2005)................................................................... 7
12

13 <u>Dura Pharms., Inc. v. Broudo,</u>
    544 U.S. 336 (2005) ........................................................................ 1, 5, 7
14

15 <u>Eagle v. Am. Tel. & Tel. Co.,</u>
    769 F.2d 541(9th Cir. 1985)...................................................................... 4
16

17 <u>Eastman v. Allstate Ins. Co.,</u>
    No. 3:14-CV-00703-WQH-WVG,
18     2015 U.S. Dist. LEXIS 92144 (S.D. Cal. July 15, 2015)............................ 11

19 <u>McCabe v. Ernst & Young, LLP,</u>
    494 F.3d 418 (3d Cir. 2007)...................................................................... 6
20

21 <u>Mustang Pipeline Co. v. Driver Pipeline Co.,</u>
    134 S.W.3d 195 (Tex. 2004)...................................................................... 1
22

23 <u>Nuveen Mun. High Income Opportunity Fund v. City of Alameda,</u>
    730 F.3d 1111 (9th Cir. 2013)............................................................ 1, 6, 7, 8
24

25 <u>Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.,</u>
    774 F.3d 598 (9th Cir. 2014)................................................................. 6, 8
26

27 <u>Schaaf v. Residential Funding Corp.,</u>
    517 F.3d 544 (8th Cir. 2008)..................................................................... 7
28

Strong v. Walgreen Co.,
      No. 09cv611 WQH (WVG),
      2013 U.S. Dist. LEXIS 66514 (S.D. Cal. May 9, 2013) .............................. 4

In re Williams Secs. Litig.-WCG Subclass,
      558 F.3d 1130 (10th Cir. 2009) ..................................................................... 7

Xcentric Ventures, LLC v. Stanley,
      No. CV-07-00954-PHX-NVW,
      2007 U.S. Dist. LEXIS 55459 (D. Ariz. July 27, 2007) .............................. 11

STATUTES

15 U.S.C. § 78u-4(b)(4) .......................................................................................... 5

FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. Proc. 16(d) ........................................................................................... 4

Fed. R. Civ. Proc. 16(e) ........................................................................................... 4

1

## I.   INTRODUCTION

2       Central to Plaintiff ENSOURCE INVESTMENTS LLC's ("Ensource") federal
3  securities fraud claim is proof of "loss causation" (i.e. that alleged misrepresentations,
4  once revealed, substantially caused Ensource's investment to decline in value). <u>See</u>
5  <u>Nuveen Mun. High Income Opportunity Fund v. City of Alameda</u>, 730 F.3d 1111,
6  1119 (9th Cir. 2013)(confirming Supreme Court's "reinforc[ing] the centrality of loss
7  causation.")(citing <u>Dura Pharms., Inc. v. Broudo</u>, 544 U.S. 336, 345 (2005)).
8  Particularly given Ensource's stipulated admissions and the limited issues that
9  survived summary judgment and the Court's Pretrial Order, Ensource cannot establish
10  loss causation.

11       Based upon the Court's rulings granting the Willis Defendants partial summary
12  judgment, it is undisputed that it was entirely appropriate for the Willis Defendants to
13  expend proceeds from Ensource's investments on operating expenses, including
14  antecedent debts, before acquiring leases with oil, gas or mineral interests. (See Doc.
15  No. 159 § II(A)(i) at 11-14.)[1]  Further, Ensource has stipulated: 1) that the Title Rover
16  technology licensed to Hopewell, "made title searching easier and faster than manual
17  searches" ([Proposed] Pretrial Order Ex. E at 3); 2) that "Ensource agreed to invest
18  $530,000 in Hopewell," (id. at 3); 3) that "Hopewell received a total of $430,000 from
19  [Ensource] for its investment," (id.); 4)  that "Hopewell ran out of money at the end of
20  November 2016," (id. at 4); and 5) that "[w]ithout additional funding the Pilot Project
21  could not be continued, and it ended," (id.).  On these indisputable facts Ensource
22  cannot establish loss causation.

23       Obviously, the failure of the project was at least a proximate cause, if not the
24  sole proximate cause, of any alleged decline in value of Ensource's investment.
25  Ensource's material breach of its contractual funding commitments not only excused
26  Hopewell's performance obligations, see <u>Mustang Pipeline Co. v. Driver Pipeline Co.</u>,

27

---

28       [1]     Citations to "Doc. No." are to the Civil Docket in this action.

1   134 S.W.3d 195, 196 (Tex. 2004)(*per curiam*)("It is a fundamental principle of
2   contract law that when one party to a contract commits a material breach of that
3   contract, the other party is discharged or excused from further performance."), it
4   proximately caused the project to fail and thus the very economic loss of which
5   Ensource complains. Ensource's breach has nothing to with any alleged
6   misrepresentations by Defendant MARK A. WILLS ("Mr. Willis") which remain at
7   issue. Accordingly, Ensource cannot establish loss causation absent proof that the
8   alleged misrepresentations themselves also proximately contributed to a decline in
9   value. Ensource has proffered no evidence causally linking the alleged
10  misrepresentations to a decline in value. Indeed, Ensource has not established that
11  there *was* a decline in value—at least not a decline apart from that caused by
12  Ensource's breach of its funding obligation. Ensource has not—and cannot as a matter
13  of law—establish loss causation, and Mr. Willis is entitled to judgment on Ensource's
14  federal securities claim.

15          II.    ALLEGED MISREPRESENTATIONS REMAINING FOR TRIAL

16          Ensource's stipulated admissions; the summary judgment proceedings; and the
17  Pretrial Order have appropriately and dramatically narrowed the alleged
18  misrepresentations that remain at issue for trial. In the First-Amended Complaint
19  operative before the summary judgment proceedings and the Pretrial Order, (see Doc.
20  No. 93), Ensource alleged fraudulent misrepresentations subject to the heightened
21  pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure based upon
22  four categories: 1) Hopewell's "undisclosed dire financial condition," (id. ¶¶ 21-27 at
23  10-11); 2) the intended "use of the investment proceeds," (id. ¶¶ 28-35 at 11-14); 3)
24  the "progress and business state of Hopewell," particularly as to whether Hopewell
25  had "current lease and mineral acquisitions" at the time of the Private Placement
26  Memorandum, (id. ¶¶ 36-37 at 14), and the payoff potential of such acquisitions, (id.
27  ¶¶ 38 & 39 at 14-15); and 4) misrepresentations regarding "the
28  / / /

1  technology and know-how of the Title Rover and Hopewell," (id. ¶¶ 40-43 at 15-16).

2  As to the fourth category, Ensource particularly alleged four misrepresentations:

3  [1] that the Title Rover Technology could search data related to property
4  transfers and discover, without any human intervention, any and all
   defects concerning the chain of title of property transfers in a fraction of
5  the time that it would take humans to perform the same activities [;] . . . .

6  [2] that the technology was being used by IBM under a separate
   exclusive license[;]

7  [3] that Willis Group had invested $3 million into the Title Rover
8  Technology[;] and

9  [4] that the software had [sic: read "been,"] or was already[,] in use for a
   case involving BP dealing with e-discovery.

10  (Id. ¶ 41 at 15.)

11      On December 6, 2019, the Court granted, in part, the Willis Defendants' motion
12  for summary judgment. (Doc. No. 159.) As to the first three categories, the Court
13  found there were no genuine issues and granted the Willis Defendants partial
14  summary judgment, thereby leaving only the four alleged misrepresentations in the
15  fourth category for trial. (Id. § II (A)(i) at 11-14.)

16      On December 12, 2019, the parties submitted a [Proposed] Final Pre-Trial
17  Conference Order to the Court, including a statement of stipulated facts attached as
18  Exhibit E. Therein, Ensource stipulated that "Hopewell has exclusive right to use the
19  Title Rover technology in 2016," ([Proposed] Pretrial Order Ex. E at 1), and that the
20  Title Rover technology licensed to Hopewell, "made title searching easier and faster
21  than manual searches," (id. at 3). In doing so, Ensource removed from the remaining
22  issues for trial the allegation that Mr. Willis had misrepresented that the technology
23  could work faster than people. This left for trial only the alleged misrepresentations
24  that the technology was being used by IBM under a separate exclusive license; that the
25  Willis Group had invested $3 million into the Title Rover Technology; and that the
26  software had been, or already was, in use for a case involving BP dealing with e-
27  discovery.

28  / / /

In the stipulated statement of facts, Ensource further admitted that: 1) "Ensource agreed to invest $530,000 in Hopewell," ([Proposed] Pretrial Order Ex. E at 3); 2) that "Hopewell received a total of $430,000 from [Ensource] for its investment," (id.); 3) that "Hopewell ran out of money at the end of November 2016," (id. at 4); and 4) that "[w]ithout additional funding the Pilot Project could not be continued, and it ended," (id.).

On December 13, 2019, the Court held its Final Pretrial Conference during which the parties agreed to the material terms of a pretrial order and were admonished that the pretrial order would supersede the allegations in the operative pleadings. See Fed. R. Civ. Proc. 16(d) & (e)("pretrial *order controls the course of the action* unless the court modifies it. . . .[¶] . . . The court may modify the [pretrial] order issued after a final pretrial conference *only to prevent manifest injustice*." (italics added)); Eagle v. Am. Tel. & Tel. Co., 769 F.2d 541, 548 (9th Cir. 1985)(new legal theory barred by pretrial order where theory not mentioned in initial and operative pleadings); Strong v. Walgreen Co., No. 09cv611 WQH (WVG), 2013 U.S. Dist. LEXIS 66514, at *16 (S.D. Cal. May 9, 2013)(Hayes, J.)(evidence of barriers of access in ADA action not alleged in operative complaint or identified in pretrial order properly barred).

On December 16, 2019, the Court entered the Pretrial Order.  (See Doc. No. 163.)  Nowhere does the Pretrial Order make any mention of the alleged misrepresentations that the technology was being used by IBM under a separate exclusive license; that the Willis Group had invested $3 million into the Title Rover Technology; or that the software had been, or already was, in use for a case involving BP dealing with e-discovery.  Rather, of the surviving misrepresentations alleged in the First-Amended Complaint, at most two remained in the Pretrial Order: 1) the "development and efficacy of certain technology licensed to Hopewell," (Doc. No. 163 lns. 3-4 at 2); and 2) whether the Title Rover software was "not proprietary and [] built with third party tools," (id. lns. 2-4 at 9); see also (Doc. No. 93 ¶¶ 40-43; Doc.

No. 159)(but see § III(C)(2) Discussion and Note 4 infra at 11).[2]  Based upon these facts, Ensoure cannot establish loss causation.

### III.   DISCUSSION

**A.   Ensoure Must Prove Loss Causation by a Preponderance of Admissible Evidence.**

To prevail on its federal securities fraud claim, Ensoure must prove by a preponderance of admissible evidence:

1) *a material misrepresentation (or omission),* see *Basic Inc.* v. *Levinson,* 485 U.S. 224, 231-232 (1988);

(2) *scienter, i.e.,* a wrongful state of mind, see *Ernst & Ernst, supra,* at 197, 199;

(3) *a connection with the purchase or sale of a security,* see *Blue Chip Stamps, supra,* at 730-731;

(4) *reliance,* often referred to in cases involving public securities markets (fraud-on-the-market cases) as "transaction causation," see *Basic, supra,* at 248-249, 99 L. Ed. 2d 194, 108 S. Ct. 978 (nonconclusively presuming that the price of a publicly traded share reflects a material misrepresentation and that plaintiffs have relied upon that misrepresentation as long as they would not have bought the share in its absence);

(5) *economic loss,* 15 USC § 78u-4(b)(4) [15 USCS § 78u-4(b)(4)]; and

(6) *"loss causation," i.e.,* a causal connection between the material misrepresentation and the loss, *ibid.;* cf. T. Hazen, Law of Securities Regulation §§ 12.11[1], [3] (5th ed. 2005).

Dura Pharms., 544 U.S. at 341-42 (italics original; parallel citations omitted); see also 15 U.S.C. § 78u-4(b)(4)(requiring proof that "the act or omission of defendant alleged

/ / /

---

[2]    In denying the Willis Defendants summary judgment, the Court found genuine issues as to whether Title Rover was proprietary and fully functional and whether Brent Stanley was the Chief Technology Officer.  (Id. § II(A)(ii) at 14-22.) In no operative pleading has Ensoure ever alleged, far less with particularity, any misrepresentation regarding Mr. Stanley's job title.  (See Doc. No. 93.)  Nor is any such misrepresentation anywhere mentioned in the Pretrial Order superseding the operative pleadings. Accordingly, whether Mr. Stanley's title was an actionable misrepresentation has never been at issue in this action and, in any event, has been removed from the issues for trial.

to violate [Section 10(b)] *caused the loss* for which the plaintiff seeks to recover damages.")(italics added).)

"'To prove loss causation, [the Plaintiffs] must demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the [Plaintiffs].'" Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc., 774 F.3d 598, 608 (9th Cir. 2014)[hereinafter "Apollo"](quoting Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv., 189 F.3d 1017, 1027 (9th Cir. 1999)). Loss causation is distinct from transaction causation, also known as "reliance" or "but for" causation. Nuveen, 730 F.3d at 1118 ("The two elements of causation—transaction causation and loss causation—are distinct and map onto familiar common law concepts.") Thus:

> Transaction causation constitutes "actual" or "but-for" cause. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005)("[T]o prove transaction causation, the plaintiff must show that, but for the fraud, the plaintiff would not have engaged in the transaction at issue. . . ."). Transaction causation is akin to reliance; it focuses on the time of the transaction and "refers to the causal link between the defendant's misconduct and the plaintiff's decision to buy or sell securities." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 197 (2d Cir. 2003) (emphasis added). . . . [¶] The loss causation element, however, requires [a plaintiff] also show "proximate" or "legal" cause. *See Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 550 (8th Cir. 2008)("Though loss causation is an 'exotic name' for this concept, the standard does not differ from that employed in a common law fraud case.").

Nuveen, 730 F.3d at 1118-19.

While loss causation "may be shown even where the alleged fraud is not necessarily revealed prior to the economic loss," Nuveen, 494 F.3d at 1120, typically, "'to satisfy the loss causation requirement, the plaintiff must show that the revelation of that misrepresentation or omission was a substantial factor in causing a decline in the security's price, thus creating an actual economic loss for the plaintiff.'" Nuveen, 730 F.3d at 1119 (quoting McCabe v. Ernst & Young, LLP, 494 F.3d 418, 425-26 (3d Cir. 2007)). For example, an investor relies upon representations of proper accounting practices in acquiring stock. When those practices are later revealed to be improper, the market value of the stock suddenly declines precipitously. In those circumstances,

1  there is sufficient link between the misrepresentation and the decline in value to
2  satisfy loss causation. <u>See</u> <u>In re Daou Sys., Inc.</u>, 411 F.3d at 1026. To be sure, the
3  plaintiff need not:

4  "show 'that a misrepresentation was the *sole* reason for the investment's
   decline in value' in order to establish loss causation. '[A]s long as the
5  misrepresentation is one substantial cause of the investment's decline in
   value, other contributing forces will not bar recovery under the loss
6  causation requirement' but will play a role 'in determining recoverable
   damages.'" *In re Daou Sys.*, 411 F.3d at 1025 (internal citation omitted)
7  (quoting *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1447 n.5 (11th
   Cir. 1997) (emphasis added in *Daou*)).
8

9  <u>Nuveen</u>, 730 F.3d at 1119.

10          Nonetheless, "Because there are a tangle of factors that affect [value], evidence
11  that certain misrepresented risks are responsible for a loss must reasonably distinguish
12  the impact of those risks from other economic factors." <u>Nuveen</u>, 730 F.3d at 1123.
13  That is, a security's decline in "'price may reflect, not the earlier misrepresentation,
14  but changed economic circumstances, changed investor expectations, new industry-
15  specific or firm-specific facts, conditions, or other events, which taken separately or
16  together account for some or all of that lower price.'" <u>Id.</u> (quoting <u>Dura Pharms</u>, 544
17  U.S. at 343; and citing <u>Schaaf</u>, 517 F.3d at 550 ("In a securities case, this standard
18  requires the plaintiff to show that the defendant's fraud—and not other events—
19  caused the security's drop in price.")); <u>see also</u> <u>In re Williams Secs. Litig.-WCG</u>
20  <u>Subclass</u>, 558 F.3d 1130, 1132 (10th Cir. 2009)(affirming summary judgment for
21  defendants where the plaintiffs' expert's "theories of loss causation could not
22  distinguish between loss attributable to the alleged fraud and loss attributable to non-
23  fraud related news and events.").

24          Even where, as here, stock is held privately and not traded in a responsive
25  market like a publically-traded stock exchange, the plaintiff must still show loss
26  / / /
27  / / /
28  / / /

causation. <u>Nuveen</u>, 730 F.3d at 1120. The Ninth Circuit has ruled that in such circumstances:

> [L]oss causation can be established by showing "that the Defendants' misrepresentation was directly related to the actual economic loss [the plaintiff] suffered." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 949 (9th Cir. 2005); *see also McCabe*, 494 F.3d at 434-36; *Emergent Capital*, 343 F.3d at 197. Put another way, a plaintiff can satisfy loss causation by showing that "the defendant misrepresented or omitted the *very facts* that were a substantial factor in causing the plaintiff's economic loss." *McCabe*, 494 F.3d at 425 (emphasis added).

<u>Nuveen</u>, 730 F.3d at 1120 (italics original to Nuveen).[3]

/ / /

---

[3]     Other circuits have adopted a "materialization of the risk" test wherein a plaintiff can establish loss causation by showing that:

> "misstatements and omissions concealed the price-volatility risk (or some other risk) that materialized and played some part in diminishing the market value" of a security. *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 176-77 (2d Cir. 2005); *see also Ray*, 482 F.3d at 995. Although "it cannot ordinarily be said that a drop in the value of a security is 'caused' by the misstatements or omissions made about it, as opposed to the underlying circumstance that is concealed or misstated," materialization of the risk recognizes that "a misstatement or omission is the 'proximate cause' of an investment loss if the risk that caused the loss was within the zone of risk *concealed* by the misrepresentations and omissions alleged by a disappointed investor." *Lentell*, 396 F.3d at 173. Under this theory, the plaintiff must show that "it was the very facts about which the defendant lied which caused its injuries." *McCabe*, 494 F.3d at 431 (internal quotation marks omitted).

<u>Nuveen</u>, 730 F.3d at 1120 (italics original to <u>Lentell</u>).

The Ninth Circuit has "not adopted the materialization of the risk approach," <u>Nuveen</u>, 730 F.3d at 1122 n.5 (but noting application in <u>Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.</u>, No. 12-CV-04115-JST, 2013 U.S. Dist. LEXIS 112733 (N.D. Cal. Aug. 9, 2013)); <u>see also Cutler v. Kirchner</u>, No. 15-56897, 2017 U.S. App. LEXIS 15538 at **4 (9th Cir. Aug. 17, 2017)(Ninth Circuit "not yet ruled on the merits of [materialization of the risk] test."); <u>Apollo</u>, 774 F.3d at 604-05 (adopting heightened pleading standard under Federal Rule of Civil Procedure 9(b) for all elements of federal securities fraud action, including loss causation, but rejecting Second Circuit's "different, but heightened, two-part test for loss causation, requiring that plaintiffs show that the loss was both foreseeable and caused by the materialization of the risk concealed by the fraudulent statement.")(quoting <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 107 (2d Cir. 2007)). Ensource has never alleged loss causation under the materialization-of-the-risk test; whether and the extent to which the Ninth Circuit will ultimately approve and/or adopt that test is of no moment here.

1    Thus, the plaintiff must—through expert testimony or otherwise—"quantify the
2    value of the [security] either at issuance or sale [and] relate how any specific
3    misrepresentation or revelation impacted the value of the [security]." Nuveen, 730
4    F.3d at 1121 n.2. Here, Ensource has not established—and, on the evidence proffered,
5    cannot establish as a matter of law—loss causation.

6    **B.    Ensource Has Not Established, and Cannot Establish, a Decline in
7         Valuation.**

8    Ensource has not proffered any evidence as to the value of the shares they
9    acquired in Hopewell at the time of purchase. Nor has Ensource proffered any
10   evidence as to when the "truth" regarding Mr. Willis' alleged misrepresentations was
11   revealed or how that revelation impacted the value of those shares. Finally, Ensource
12   has not proffered any evidence showing the amount by which its shares in Hopewell
13   declined in value due to such revelation. These omissions in proof are fatal to
14   Ensource's federal securities fraud claims.

15   **C.    Ensource Has Not Established, and Cannot Establish, a Causal Link
         Establishing that the Revelation of any Misrepresentation Was a
16        Substantial Factor in Proximately Causing any Decline in Value.**

17   Ensource has proffered no evidence causally linking the revelation of any
18   alleged misrepresentation as being a substantial factor in proximately causing any
19   economic loss to Ensource. Based upon the summary judgment proceedings, the
20   Pretrial Order, and the well-pled allegations of the operative complaint superseded
21   thereby, there are at most two alleged misrepresentations that remain as the basis of
22   Ensource's federal securities fraud claim: 1) the "development and efficacy of certain
23   technology licensed to Hopewell," (Doc. No. 163 lns. 3-4 at 2); and 2) whether the
24   Title Rover software was "not proprietary and [] built with third party tools," (id. lns.
25   2-4 at 9); see also (Doc. No. 93 ¶¶ 40-43; Doc. No. 159). As to loss causation,
26   Ensource has not established, and cannot establish, the necessary causal link between
27   these alleged misrepresentations and any resulting economic loss.

28   / / /

1

2

**1. Ensource Cannot Establish Loss Causation as to "Development and Efficacy" of the Technology licensed to Hopewell.**

3 Based upon the Court's rulings granting the Willis Defendants partial summary
4 judgment, it is undisputed that it was entirely appropriate for the Willis Defendants to
5 expend proceeds from Ensource's investments on operating expenses, including
6 antecedent debts, before acquiring leases with oil, gas or mineral interests. (See Doc.
7 No. 159 § II(A)(i) at 11-14.) Further, Ensource has stipulated: 1) that the Title Rover
8 technology licensed to Hopewell, "made title searching easier and faster than manual
9 searches" ([Proposed] Pretrial Order Ex. E at 3); 2) that "Ensource agreed to invest
10 $530,000 in Hopewell," (id. at 3); 3) that "Hopewell received a total of $430,000 from
11 [Ensource] for its investment," (id.); 4) that "Hopewell ran out of money at the end of
12 November 2016," (id. at 4); and that "[w]ithout additional funding the Pilot Project
13 could not be continued, and it ended," (id.). Thus, the stipulated, proximate cause of
14 the project failing was the lack of funding by Ensource. Ensource cannot proffer any
15 evidence that would support an inference that technology was not developed or
16 efficacious as represented or that, upon revelation of the truth, the value of Ensource's
17 investment declined. The value of Ensource's investment declined because Ensource
18 breached its funding commitment within a month of its initial investment.

19

20

**2. Ensource Cannot Establish Loss Causation Regarding the "Proprietary" Nature of the Title Rover Software.**

21 Ensource predicates federal securities fraud liability on having been told that it
22 would be investing in "proprietary" technology when, in fact, the technology was
23 "being built with third party tools." (See Doc. No. 163 lns. 3-4 at 9.)[4] There is no

24 ───
[4] Ensource never pled this claim or preserved it in the Pretrial Order.
25 While Ensource alleged that Mr. Willis "represented that the primary advantage that Hopewell maintained in its efforts to procure oil, gas and mineral interests was the
26 proprietary title-searching technology of Title Rover, which such technology had been licensed to Hopewell," (Doc. No. 93 ¶ 40 at 15), nowhere in any operative pleading
27 did Ensource ever allege any representation that the Title Rover technology would not be built with "third party tools," (see id.). Nor did Ensource ever allege that the Title
28 Rover technology was not "proprietary." (See id.) No such allegations appear in the
(footnote continues...)

evidence than Mr. Willis ever represented that the Title Rover technology would not be built with third-party tools or would be built exclusively with original tools. To the contrary, the undisputed evidence established that Ensource was expressly advised that third-party tools *would* be used to build the Title Rover technology. (See Trial Ex. GI.) There is no evidence that any third-party—whether by a cease & desist demand, lawsuit, or otherwise—asserted any claim of infringement, royalties, or the like due to the improper use of any third-party tools.  Ensource has offered no evidence that the Title Rover technology was not duly licensed to Hopewell.  To the contrary, Ensource has stipulated that Hopewell "has exclusive right to use the Title Rover technology," ([Proposed] Pretrial Order Ex. E at 1.)  That is, Ensource admits that Hopewell in fact *had* a proprietary interest in Title Rover.[5]

Based upon the indisputable evidence, Ensource cannot show loss causation as to the Title Rover being "proprietary" or "not built with third-party tools."  First, that the technology would be built—indeed, was being built—with third-party tools was revealed to Ensource before it made its investments.  (See Trial Ex. GI.)  Accordingly, there can have been no later "revelation of the truth" that could be said to have proximately caused any economic loss.[6]  Second, there has been no showing—far less

Pretrial Order. The closest mention is the statement that Ensource's expert, Jason Frankovitz, will testify regarding the development of the Title Rover software, "including that it was no proprietary and was built with third party tools." (Doc. No. 163 lns. 3-4 at 9.) That opinion is irrelevant if untethered from any claim remaining at issue. Without conceding the issue, Mr. Willis here assumes *arguendo* that this claim remains for trial. Even then, Ensource cannot establish loss causation.

[5]      "Proprietary" merely connotes ownership of property. Eastman v. Allstate Ins. Co., No. 3:14-CV-00703-WQH-WVG, 2015 U.S. Dist. LEXIS 92144, at *22-23 n.12 (S.D. Cal. July 15, 2015)(Gallo, Mag. J)(noting that "proprietary" is an "adjective [which] means nothing more than that he is the records' owners.)(citing Black's Law Dictionary (14th ed. 2014("Proprietary")); Xcentric Ventures, LLC v. Stanley, No. CV-07-00954-PHX-NVW, 2007 U.S. Dist. LEXIS 55459, at *15-16 (D. Ariz. July 27, 2007)(citing Black's Law Dictionary 1256 (8th ed. 1999)(defining "proprietary" as "[o]f, or relating to, or holding as property").  There is nothing about the use of the word "proprietary" that remotely suggests that a given work would not be built with third-party tools.

[6]      For the same reason, Ensource cannot establish but-for, reliance causation; it knew that third-party tools were being used to build Title Rover at the

(footnote continues...)

1  any third-party challenge establishing—that Hopewell's license was not "proprietary"
2  or that third-party tools were improperly used to build Title Rover.   Accordingly,
3  Ensource cannot show that any loss resulted, far less was proximately caused by, such
4  matters.  Finally, Ensource has stipulated that its own breach of its funding
5  commitment—which has nothing to do with the proprietary status of Hopewell's
6  license or the use of third-party tools in building Title Rover—was the proximate
7  cause of the project's failure.

## III.   CONCLUSION

9     Ensource has not established, and cannot establish, loss causation as to
10  any of the remaining alleged misrepresentations upon which its federal securities
11  fraud claims are based.  Accordingly, Mr. Willis is entitled to judgment as a matter of
12  law on those claims.

13  Dated: February 3, 2020          SULLIVAN HILL REZ & ENGEL

14                          By:  /s/ Shannon D. Sweeney
                                E-Mail: sweeney@sullivanhill.com
15                              Attorneys for Defendant MARK A. WILLIS

27  outset and cannot claim it was induced into investing relying upon the truth being
28  otherwise.