1
2
3

**RICHARD E. NAWRACAJ**
Law Offices of Richard E. Nawracaj
155 N. Wacker Drive, Suite 4250
Chicago, Illinois 60606
Email: rich.nawracaj@nawracaj-law.com

4
5
6
7

**PANAKOS LAW, APC**
Aaron D. Sadock (SBN 282131)
555 West Beech Street, Ste. 500
San Diego, California 92101
Telephone:   (619) 800-0529
Facsimile:    (866) 365-4856
Email: asadock@panakoslaw.com

8

Attorneys for Plaintiff ENSOURCE INVESTMENTS LLC

9

10
11
12

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

13
14

ENSOURCE INVESTMENTS LLC, a
Delaware limited liability company,

15

              Plaintiff,

v.

16
17
18
19
20
21
22
23
24
25

THOMAS P. TATHAM, an
individual; MARK A. WILLIS, an
individual; PDP MANAGEMENT
GROUP, LLC, a Texas limited
liability company; TITLE ROVER,
LLC, a Texas limited liability
company; BEYOND REVIEW, LLC,
a Texas limited liability company;
IMAGE ENGINE, LLC, a Texas
limited liability company; WILLIS
GROUP, LLC, a Texas limited
liability company; and DOES 1-50,

              Defendants.

Case No.: 3:17-CV-00079-H-LL

**MEMORANDUM IN OPPOSITION OF DEFENDANT MARK A. WILLIS' MOTION FOR JUDGMENT AS A MATTER OF LAW WITH RESPECT TO COUNT I OF THE FIRST AMENDED COMPLAINT**

**Date: February 10, 2019**
**Time: 10:30a.m.**
**Courtroom: 15A**

Magistrate Judge: Hon. Linda Lopez
District Judge: Hon. Marilyn L. Huff
Courtroom: 15A
Action filed:  January 13, 2017

26
27
28

1

## <u>TABLE OF CONTENTS</u>

2    TABLE OF AUTHORITIES.................................................................................i

3    INTRODUCTION ........................................................................................1

4    ARGUMENT ...............................................................................................1

5       A.  Applicable Legal Standard ............................................................2

6       B.  The Testimonial Evidence Establishes that Plaintiff Suffered a Decline

7            in the Value of its Investment and, therefore an Actionable Loss .................3

8       C.  Loss Causation Only Requires a Showing of a "Casual Connection

9            Between the Fraud and the Loss ...................................................4

10          1.   Evidence has been Proffered that Reasonably Allows a Jury to

11               Find that the Misrepresentation Concerning the Existence and

12               Efficacy of the TR Technology Caused the Loss of Plaintiff's

13               Investment ........................................................................6

14          2.   Plaintiff has Proffered Evidence that Creates Issue of Fact o

15               Whether the Misrepresentation Concerning the Alleged

16               Proprietary Nature of the TR Technology Caused the Loss of its

17               Investment .......................................................................8

18    CONCLUSION ...........................................................................................9

19    REQUESTED RELIEF ................................................................................9

20

21

22

23

24

25

26

27

28

i

1

2

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)................................2

*Assoc'd Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
  459 U.S. 519 (1983) ..............................................................................5

*Blanton v. Mobil Oil Corp.*, 721 F.2d 1207, 1219 (9th Cir.1983), *cert.
  denied*, 471 U.S. 1007 (1985) ...........................................................2, 4

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341, 125 S.Ct. 1627, 161
  L.Ed.2d 577 (2005) ...........................................................................4, 6

*E.E.O.C. v Go Daddy Software, Inc.,* 581 F.3d 951 .................................2

*In re Oracle Corp. Securities Litigation*, 627 F.3d 376 *(9th Cir. 2010)* ..................4

*Johnson v. Paradise Valley Unified Sch. Dist.,* 251 F.3d 1222 (9th Cir.2001)........2

*Jorgensen v. Cassiday, 320 F.3d 906* (9th Cir.2003).................................2

*Krechman v. County of Riverside*, 723 F.3d 1104 (9th Cir.2013)...........................2

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 949
  (9th Cir. 2005) ……………………………………………………………5

*Lloyd v. CVB Fin. Corp., 811 F.3d 1200, 1210 (9th Cir. 2016)* ........................4, 5

*Loos v. Immersion Corp.*, 762 F.3d 880 *(9th Cir. 2014)*................................4

*Nuveen Municipal High Income Opportunity Fund v. City of Alameda*
  730 F.3d 1111 (9th Cir. 2013) ...........................................................5

*Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133* (2000)..........................2

*Twin City Fire Ins. Co. v. Philadelphia Life Ins. Co., 795 F.2d 1417* (9th
  Cir.1986) ............................................................................................2

*United States v. Horowitz*, 756 F.2d 1400, *cert. denied*
  474 U.S. 822 (1985) ...........................................................................3

*Winarto v. Toshiba Am. Elecs. Comp., Inc., 274 F.3d 1276 (9th Cir.2001)* .............2

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1053
  (9th Cir. 2011)…………………………………………………………..4, 5

**Federal Rules**

Fed.R.Civ.P. 50(b) ......................................................................................2

**Statutes**

15 U.S.C. § 78u-4(b)(4) ............................................................................4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **INTRODUCTION**

Plaintiff, EnSource Investments LLC, submits this Memorandum in Opposition of the Motion for Judgment as a Matter of Law with respect to Count I of the First Amended Complaint and as against Defendant Mark A. Willis ("<u>Defendant Willis</u>") (the "<u>Motion for JMOL</u>").[1]  As demonstrated *infra*, pursuant to controlling case precedent as well as the evidence presented at trial, the Motion for JMOL must be denied, *in toto*.

As a preliminary matter, it is well to note that the Motion for JMOL mischaracterizes certain aspects of the Final Pre-Trial Order dated December 16, 2019 and entered into the document as Document 163 (the "<u>Final Pre-Trial Order</u>").  Of the more meaningful mischaracterizations in the Motion for JMOL is that concerning the misrepresentations at issue and to be decided by the jury in this case.  Without delving into the specifics, suffice it to state that Plaintiff agrees with the Court in its Final Pre-Trial Order that the misrepresentation at issue is whether Defendant Willis individually and/or as a controlling person of Title Rover, LLC ("<u>Title Rover</u>") and/or Hopewell – Pilot Project, LLC ("<u>Hopewell</u>") "lied about the development and efficacy" of the TR Technology.  *See* Final Pre-Trial Order, Page 2, Lines 3 – 4.

## **ARGUMENT**

The primary basis of the Motion for JMOL is the assertion that the Plaintiff cannot establish the element of loss causation for the Rule 10b-5(b) claim.  *See* Motion for JMOL, Page 1, Paragraph 1.  The Motion for JMOL also asserts that Plaintiff cannot establish that it, indeed, suffered a loss in connection with its investment in Hopewell.  As demonstrated *infra*, the evidence presented at trial in

---

[1] The Motion for JMOL only requests judgment as a matter of law with respect to Count I of the First Amended Complaint.  The Motion for JMOL does not discuss nor seeks judgment as a matter of law with respect to Count III of the First Amended Complaint, which alleges intentional misrepresentation against Defendant Willis.

connection with the controlling case law warrants summary rejection of both of these assertions.

### A.    Applicable Legal Standard

A district court can grant a motion for judgment as a matter of law only if "there is no legally sufficient basis for a reasonable jury to find for that party on that issue." *Krechman v. County of Riverside*, 723 F.3d 1104, 1109; *Jorgensen v. Cassiday,* 320 F.3d 906, 917 (9th Cir.2003);  *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). "[I]n entertaining a motion for judgment as a matter of law, the court ... may not make credibility determinations or weigh the evidence." *Go Daddy Software, Inc.,* 581 F.3d at 961 (quoting *Reeves,* 530 U.S. at 150, 120 S.Ct. 2097).  Further, although taking a motion under submission and ruling on it after the jury returns a verdict is proper  practice (*see* Fed.R.Civ.P.  50(b) advisory  committee's note),  the court "may not substitute its view of the evidence for that of the jury." *Winarto v. Toshiba  Am.  Elecs.  Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir.2001) (quoting *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir.2001)).

In reviewing a motion for judgment as a matter of law, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Blanton v. Mobil Oil Corp.*, 721 F.2d 1207, 1219 (9th Cir.1983), *cert. denied,* 471 U.S. 1007, 105 S.Ct. 1874, 85 L.Ed.2d 166 (1985). A motion for judgment as a matter of law is proper when the evidence permits only one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A judgment as a matter of law  is improper, *inter alia*, when there is conflicting testimony raising a question of witness credibility because " '[i]t is the exclusive function of the jury to weigh the credibility of the witnesses.' " *Twin City Fire Ins. Co.  v.  Philadelphia  Life  Ins.  Co.*, 795 F.2d 1417, 1423 (9th

2

Cir.1986) (quoting *United States v. Horowitz,* 756 F.2d 1400, 1406 (9th Cir.), *cert. denied*, 474 U.S. 822, 106 S.Ct. 74, 88 L.Ed.2d 60 (1985)).

**B.     The Testimonial Evidence Establishes that Plaintiff Suffered a Decline in the Value of its Investment and, therefore, an Actionable Loss.**

The evidence admitted in trial clearly, if not unequivocally, demonstrates that Plaintiff not only suffered a decline in the value of its investment in Hopewell, thereby suffering an actionable loss – but suffered a loss of its entire investment.

Specifically, the testimony of Defendant Willis himself demonstrates that Plaintiff made a Four Hundred Thirty Thousand Dollar ($430,000) investment in Hopewell. This fact is corroborated by the testimony of other witnesses, including without limitation Chad Martin.  It is also a fact stipulated by the parties (*See* Exhibit E of Final Pre-Trial Order of December 16, 2019).  The parties also stipulated to the fact that Hopewell as well as Title Rover both had filed Chapter 11 bankruptcy on May 4, 2017 and are currently Chapter 7 debtors in bankruptcy. These facts were also introduced into evidence through the testimony of Thomas P. Tatham as well as Defendant Willis himself.  Further, Defendant Willis testified that the TR Technology was listed as worthless on the bankruptcy schedule of assets for Title Rover and that such schedule of assets had been submitted under oath by Defendant Willis under penalties for perjury. Decl. of Richard Nawracaj, Ex. A, Volume III, page 44:24 - 45:8; 46:4-14. This testimonial evidence provides ample basis for a reasonable jury to conclude that Plaintiff suffered a loss in connection with its investment in Hopewell.

The foregoing is further supported by the following testimony of Defendant Willis which, along with the stipulated facts, unequivocally demonstrates that Plaintiff suffered a complete loss in connection with its investment in Hopewell:

"Q:    How much did – how much money did EnSource lose in the investment?

A:     EnSource lost $430,000 in the investment"

1    *Id.* at Trial Transcript, Volume III, Page 154, Lines 11-13.

2    Thus, through this evidence and in light of the standard of review mandated

3    by *Blanton*, it is clear that a reasonable jury could find that the Plaintiff suffered a

4    decline and/or the total loss of its investment in Hopewell.

5    **C.    Loss Causation Only Requires a Showing of a "Casual**

6    **Connection" Between the Fraud and the Loss.**

7    In the Motion for JMOL, Defendant Willis asserts that "EnSource has

8    proffered no evidence casually linking ***the revelation*** of any alleged

9    misrepresentation as being ***a substantial factor*** in proximately causing any

10   economic loss to EnSource" (*See* Motion for JMOL, Page 9, Lines 17 – 19)

11   (emphasis added).    As demonstrated *infra*, Defendant Willis misstates the

12   applicable standard for proving loss causation and, in so doing, attempts to greatly

13   heighten such threshold in his attempt to persuade this Court to grant the Motion

14   for JMOL.

15   The Securities Exchange Act of 1934, codified at 15 U.S.C. § 78a *et seq.*,

16   imposes statutory requirements on a judicially-implied private damages action

17   rooted in common law tort actions for deceit and misrepresentation. *Dura Pharm.,*

18   *Inc. v. Broudo*, 544 U.S. 336, 341, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005).  The

19   Act defines "loss causation" as the plaintiff's "burden of proving that the act or

20   omission of the defendant alleged to violate this chapter caused the loss for which

21   the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). This inquiry

22   requires no more than the familiar test for proximate cause. *Dura*, 544 U.S. at 346,

23   125 S.Ct. 1627; *accord Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir.

24   2016); *Loos v. Immersion Corp.*, 762 F.3d 880, 887;  *In re Oracle Corp. Securities*

25   *Litigation*, 627 F.3d 376, 394; *Daou*, 411 F.3d at 1025.

26   "With a privately held company, a comparison of market stock price to

27   establish loss causation has less relevance because market forces will less directly

28   affect the sales prices of shares of a privately held company." *WPP Luxembourg*

4

*Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1053 (9th Cir. 2011), abrogated on other grounds by *Lorenzo v. Sec. & Exch. Comm'n*, 139 S. Ct. 1094, 203 L. Ed. 2d 484 (2019). To prove loss causation, ***plaintiffs need only show a "causal connection" between the fraud and the loss***, *Nuveen*, 730 F.3d at 1119; *Daou*, 411 F.3d at 1025, by tracing the loss back to "the very facts about which the defendant lied," *Nuveen Municipal High Income Opportunity Fund v. City of Alameda*, 730 F.3d at 1111 (emphasis added); see also *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 949 (9th Cir. 2005). Thus, according to *Nuveen* – and contrary to the assertion of Defendant Willis in the Motion for JMOL – a plaintiff ***does not*** need to demonstrate that any alleged misrepresentation as being a substantial factor in proximately causing any economic loss; rather, a plaintiff need only demonstrate that there is a "causal connection" between the misrepresentation and the loss.

Furthermore, and contrary to Defendant Willis' assertion in the Motion for JMOL, there is no requirement that Plaintiff "links" ***the revelation*** of any alleged misrepresentation as being ***a substantial factor*** in proximately causing any economic loss to it. In fact, controlling case precedent clearly mandates the opposite. "Disclosure of the fraud is not a sine qua non of loss causation, which may be shown even where the alleged fraud is not necessarily revealed prior to the economic loss." *Nuveen*, 730 F.3d at 1120. "Because loss causation is simply a variant of proximate cause, the ultimate issue is whether the defendant's misstatement, as opposed to some other fact, foreseeably caused the plaintiff's loss." *Lloyd*, 811 F.3d at 1210 – 1211.

"[L]oss causation is a 'context-dependent' inquiry as there are an 'infinite variety' of ways for a tort to cause a loss." *Lloyd* at 1210 (citing *Assoc'd Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 536, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) ) (internal citation omitted). "Because loss causation is simply a variant of proximate cause, the ultimate issue is whether the

5

defendant's misstatement, as opposed to some other fact, foreseeably caused the plaintiff's loss." *Id.* (citing *Dura*, 544 U.S. at 343–46, 125 S.Ct. 1627) (internal citation omitted).  Thus, loss causation can be proven in a multitude of manners, with the ultimate issue whether the defendant's misstatement, as opposed to some other fact, foreseeably caused the plaintiff's loss.  Further and as noted *supra*, pursuant to controlling case precedent, there is ***no requirement*** for Plaintiff to link ***the revelation*** of any alleged misrepresentation as being ***a substantial factor*** in proximately causing any economic loss to it.

> **1.    Evidence has been Proffered that Reasonably Allows a Jury to Find that the Misrepresentation Concerning the Existence and Efficacy of the TR Technology Caused the Loss of Plaintiff's Investment.**

The evidence proffered throughout trial, when viewed in the light most favorable to Plaintiff, reasonably allows a jury to find that the misrepresentation concerning the existence and efficacy of the TR Technology caused the loss of Plaintiff's investment.

To begin, evidence has been admitted throughout trial demonstrating that one of the primary reasons for Plaintiff's investment was the alleged existence and fully developed functionality of the TR Technology.  The testimony of James Dibble is strewn with statements that unequivocally indicate that the representations concerning the existence and functionality of the TR Technology, as contained in the pitch decks of July 25, 2016, August 19, 2016 and August 23, 2016, were the basis of Plaintiff's decision to invest.  *See*, *generally*, Decl. of Richard Nawracaj, ¶ 5, **Ex. B**, Trial Transcript, Volume II, Pages 67 – 80.  Mr. Dibble testified that the existence of such functionality was a primary driver with respect to Plaintiff's decision to ultimately make the investment.  The testimony of Jerry Johns mirrors that of James Dibble with respect to the representations concerning the existence and functionality of the TR Technology were the basis of Plaintiff's decision to invest.  *See*, *generally*, Decl. of Richard Nawracaj, ¶ 6, **Ex.**

**C**, Trial Transcript, Volume I, Pages 53 - 90.

In assessing such testimony, the jury must weigh the credibility of these witnesses to determine the weight to be provided to their testimony. Furthermore, when viewing such testimony in the light most favorable to Plaintiff – that is, that such witnesses are viewed as credible and their statements are accepted by the jury as true – a reasonable jury can conclude that without the representations concerning the alleged existence and functionality of the TR Technology, Plaintiff would not have made the investment.  This is especially true considering that the parties have agreed, as a stipulated fact, that the TR Technology was never completed (*See* Exhibit E of Final Pre-Trial Order of December 16, 2019).   Consequently, a reasonable jury could conclude that the misrepresentation concerning the existence and functionality of the TR Technology proximately caused the Plaintiff to suffer the loss of investment since without such representations, Plaintiff would not have made the investment.   This, consequently, establishes the element of loss causation.

Even Defendant Willis' own witness – Hank Gamble – offered evidentiary testimony that precludes judgment as a matter of law with respect to the issue of loss causation.  Specifically, Mr. Gamble testified that the "…whole business plan [of Hopewell Pilot-Project] was to go acquire these leases that were open and hadn't been leased by the current operators…" and that in order execute on such business plan the TR Technology had to function correctly.  *See* Decl. of Richard Nawracaj, ¶ 7, Ex. D, Trial Transcript, Volume III, Page 216, Lines 10 - 15.  Using a similar analysis, if the jury, when determining the credibility of Mr. Gamble, found him to be truthful and honest, they may accept as true these statements of Mr. Gamble.  This, consequently, would lead a reasonable jury to find that the failure of the TR Technology to exist or function as represented caused Hopewell to not execute on its business plan and, therefore, caused the economic loss to Plaintiff.

Thomas Tatham also testified that if Beyond Recognition did what it said it did, then it would definitely increase the value of the company. Decl. of Richard Nawracaj, ¶ 8, Ex. E. Trial Transcript, Volume II, Page 127:1-7. He testified that even if Hopewell had failed from a financial perspective, it still would have been a rewarding endeavor if "the technology was refined and improved to where its commercial value could be captured in other projects or subsequent business in the same area." *Id.* at Trial Transcript, Volume II, Page 139:2-12.

**2.    Plaintiff has Proffered Evidence that Creates Issue of Fact on Whether the Misrepresentation Concerning the Alleged Proprietary Nature of the TR Technology Caused the Loss of its Investment.**

Similarly, evidence has been admitted throughout trial demonstrating that one of the primary reasons for Plaintiff's investment was the TR Technology was unique to it and not owned by anyone else.  The testimony of James Dibble clearly demonstrates that another compelling factor that made Plaintiff interested in the investment was the representation that the TR Technology was proprietary to Title Rover.  *See*, *generally*, Decl. of Richard Nawracaj, ¶ 5, Ex. B, Trial Transcript, Volume II, Pages 67 – 80.  The testimony of Jerry Johns also indicates that the alleged proprietary nature of the TR Technology was a misrepresentation that cause Plaintiff to make its investment into Hopewell.  *See*, *generally*, id. at ¶ 6, Ex. C Trial Transcript, Volume I, Pages 53 – 90.

As noted *supra*, in viewing such testimony the jury must weigh the credibility of these witnesses to determine the weight to be provided to their testimony.   In consideration of this as well as when viewing such testimony in the light most favorable to Plaintiff, a reasonable jury can conclude that without the representations concerning the alleged proprietary nature of the TR Technology, Plaintiff would not have made the investment.   This, in turn, would allow a reasonable jury to conclude that the misrepresentation concerning the proprietary nature of the TR Technology proximately caused the Plaintiff to suffer the loss of

investment since without such representations, the Plaintiff may not have made the investment, thereby establishing the element of loss causation.

## CONCLUSION

As demonstrated *supra*, pursuant to controlling case precedent as well as the evidence proffered throughout trial and the applicable standard of review in connection with motions for judgment as a matter of law, the Motion for JMOL must be denied, *in toto*.

## REQUESTED RELIEF

Plaintiff respectfully requests that this Honorable Court deny the Motion for JMOL, *in toto*.

Dated: February 10, 2020          **LAW OFFICES OF RICHARD E. NAWRACAJ**

                                  By:   /s/ Richard E. Nawracaj
                                        Richard E. Nawracaj
                                        Attorney for Plaintiff
                                        EnSource Investments LLC

9