1                    UNITED STATES DISTRICT COURT

2                  SOUTHERN DISTRICT OF CALIFORNIA

3

4  ENSOURCE INVESTMENTS, LLC,      )  Case No. 17CV0079-H-LL
                                   )
5              Plaintiff,          )  San Diego, California
                                   )
6  vs.                             )  Monday,
                                   )  April 20, 2020
7  WILLIS, et al.,                 )  10:30 a.m.
                                   )
8              Defendants.         )
   _____)
9
                TRANSCRIPT OF TELEPHONIC MOTION HEARING
10               BEFORE THE HONORABLE MARILYN L. HUFF
                   UNITED STATES DISTRICT JUDGE
11
   APPEARANCES:
12
   For the Plaintiff:            VERONICA MCKNIGHT, ESQ.
13                               AARON D. SADOCK, ESQ.
                                 Panakos Law, APC
14                               555 West Beech Street
                                 Suite 500
15                               San Diego, California 92101
                                 (619) 800-0529
16
   For the Defendants:          SHANNON D. SWEENEY, ESQ.
17                              MICHAEL ZARCONI, ESQ.
                                Sullivan, Hill, Rez & Engel,
18                                APLC
                                600 B Street, Suite 1700
19                              San Diego, California 92101
                                (619) 233-4100
20
   Transcript Ordered by:       SHANNON D. SWEENEY, ESQ.
21
   Court Recorder:              Lynnette Lawrence
22                              United States District Court
                                333 West Broadway
23                              San Diego, California 92101

24
   Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

ii

1 Transcriber:                    Jordan R. Keilty
                                  Echo Reporting, Inc.
2                                 2160 Fletcher Parkway
                                  Suite 209
3                                 El Cajon, California 92020
                                  (858) 453-7590
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

1   SAN DIEGO, CALIFORNIA  MONDAY, APRIL 20, 2020 10:30 A.M.

2                         --oOo--

3      (Call to order of the Court.)

4          THE CLERK:  Calling matter one on calendar,

5  17CV0079, Ensource Investments, LLC versus Willis, for a

6  telephonic motion hearing.

7          THE COURT:  good morning.  State your appearances,

8  first for the Plaintiff.

9          MR. SADOCK (telephonic):  Aaron Sadock on behalf of

10 Plaintiff.

11         MS. MCKNIGHT (telephonic):   Good morning, your

12 Honor.  Bonnie McKnight on behalf of Plaintiff.

13         MS. SWEENEY (telephonic):  Shannon Sweeney

14 appearing on behalf of Mark Willis.

15         MR. ZARCONI (telephonic):  And good morning, your

16 Honor.  Michael Zarconi on behalf of Mark Willis.

17         THE COURT:  All right.  This is the Defendant's

18 motion.  You may proceed.

19         MS. SWEENEY:  Thank you, your Honor.  As you know,

20 the jury determined that Plaintiff was injured in the amount

21 of $205,000.  So this motion is to have such award set off by

22 the amount that Tom Hayden paid in settlement to Plaintiff

23 because he was alleged to be a joint tortfeasor with Mr.

24 Willis and because the injury that was alleged by Plaintiff

25 was the same for both of the joint tortfeasors.

2

1         The briefing makes it clear, your Honor, that both

2 parties are in agreement that setoff is appropriate and

3 warranted when both of two items are met:

4         Number one, it was the same injury in both the

5 matter that was settled and the matter that was resolved by

6 trial.

7         And, number two, that the injury is individual --

8 indivisible such that there's joint and several liability.

9         In this case, it is clearly the same injury.  And

10 the injury as alleged and prosecuted by Plaintiffs was the

11 loss of the investment money that Plaintiffs made in Hopewell.

12 The causes of action asserted against Mr. Tathum and Mr.

13 Willis were identical.  The allegations alleged against them

14 were identical.  The misrepresentations that both joint

15 tortfeasors were alleged to have made were identical.  And the

16 injury was the same.

17         Moving on to the second element, the injury was

18 individual such that -- excuse me -- indivisible such that

19 there was joint and several liability.  Plaintiff in multiple

20 documents, including the original complaint and the first

21 amended complaint, asserted in binding judicial admissions

22 that the liability of Mr. Tathum and Mr. Willis was joint and

23 several.  That means they are not allowed to contest that fact

24 or that issue at this point.  Moreover, the authority that we

25 presented, the <u>Lafayette</u> case, which is 152 Cal.App. 3d, 547,

3

1 which Plaintiff did not contest or distinguish, states that it
2 is enough that Plaintiff only alleges that the injury is the
3 same.

4        And, here, no doubt that they alleged that the
5 injury was the same.  They asserted that everything was the
6 same.  In their opposing papers, Plaintiff states that things
7 were changed by the summary judgment resolution.  But all that
8 was changed was that the issues were narrowed for trial.  It
9 doesn't change the fact that the settlement still resolved the
10 same causes of action and the same injury against Mr. Tathum.
11 And, because of that, there is no distinguishing the fact that
12 the injury was the same and that the liability was joint and
13 several.

14        The only real argument that Plaintiff makes in
15 opposition to the motion is that the issue of setoff was
16 waived because it was not raised by Mr. Willis in his answer.
17 And I'm going to turn it over to Mr. Zarconi to discuss the
18 issue of waiver.

19        MR. ZARCONI:  Thank you, Shannon.  Mike Zarconi
20 speaking.

21        The -- the Defendants' primary -- I'm sorry.  The
22 Plaintiff's primary rebuttal to this setoff request is that
23 the Defendants waived it by failing to plead it in their
24 answer, and the cases that they rely on, primarily, the <u>Borges</u>
25 <u>v. City of Humboldt</u> case, are really in apposite.  <u>Borges</u> was

4

1 a situation where a setoff issue was -- it arose in a

2 settlement agreement, and the request for the setoff wasn't

3 raised until a year later, as stated in the -- in the opinion,

4 on the eve of trial.

5          The circumstances here are vastly different than

6 the Ninth Circuit says -- and we cited a plethora of cases in

7 the Ninth Circuit and circuits -- circuits all around the

8 country that admonish that a setoff for an affirmative defense

9 broadly speaking is not necessarily waived simply by failing

10 to plead it.  There has to be a showing by the other party of

11 a prejudice that arises (indiscernible) or a lack of notice.

12 And in this case, there's no -- there's no facts to support

13 any such prejudice because the right of setoff didn't arise

14 until August of 2019.  That was, you know, almost two full

15 years after this case had been filed and the pleadings were at

16 issue, not -- the right of setoff wasn't confirmed with the

17 judge and the Defendants until Mr. Tathum was dismissed in

18 October of 2019, and as we set forth in our reply papers, we

19 began raising the issue immediately after that through a

20 discovery dispute in front of Judge Lopez where we requested a

21 copy of the settlement agreement, and we raised the issue of

22 setoff.  It was discussed during our motion for summary

23 judgment in that hearing, and I think --

24          THE CLERK:  Counsel?

25          MS. SWEENEY:  Michael, you're cutting off.

5

1        MR. ZARCONI:  Oh, I'm sorry.  Can you hear me now?

2        THE CLERK:  Yes.

3        THE COURT:  I can, yes.

4        MR. ZARCONI:  Okay.  It was discussed on the record

5   and in the motion for summary judgment hearing that it was --

6   it was discussed in emails between (indiscernible) leading up

7   to trial (indiscernible) subpoena us to obtain a copy of that

8   document, all for purposes of setoff, and counsel even

9   confirmed in writing prior to trial that he -- that they

10  understood that the reason (indiscernible) agreement was so

11  purposely was setoff.

12        There's no indication that -- you know, that the

13  Defendants waived or did not raise the issue timely.  It

14  doesn't state any cases that require that (indiscernible)

15  needs to amend the pleadings within months of trial after the

16  case had been litigated for this long and the Defendant was

17  clearly on notice of the request for a setoff arising out of

18  the (indiscernible).

19        THE COURT:  What was discussed, if at all, in the

20  pretrial order about the issue?

21        MS. SWEENEY:  Your Honor, the pretrial order does

22  not raise the setoff issue.  This is Shannon Sweeney.

23        THE COURT:  All right.  Thank you.

24        And then is there any other position?

25        MS. SWEENEY:  Sorry, your Honor.  May I add to

6

1 that?  Shannon Sweeney.

2           THE COURT:  You may.

3           MS. SWEENEY:  Thank you.  While the setoff issue

4 was not raised in the pretrial order, it was something that

5 was top of mind, as Mr. Zarconi said.  It was part of the

6 discussion that was ongoing between counsel prior to trial and

7 the reason for the pretrial subpoena.

8           Also, as your Honor is aware, the idea of control

9 person liability was also not discussed or raised in the

10 pretrial order, and yet that was something that Plaintiffs

11 brought up during trial and were allowed to tailor their

12 arguments, again, consistent with their theme that Mr. Tathum

13 and Mr. Willis were responsible for the identical alleged

14 misrepresentations.

15           And so while we acknowledge that the word "setoff"

16 was not in the pretrial order, neither is the words "control

17 person liability," and there was some great support as to

18 claims similar to assert that in order to -- for them to make

19 their case.

20           THE COURT:  Can you address the issue that the

21 amount of damages was less than Plaintiffs requested, so that

22 if there is a setoff, it's on the unrecovered part of the

23 damages?

24           MS. SWEENEY:  Yes, your Honor.  I went back this

25 morning, and I looked at the special verdict form.  This is

7

1 Shannon Sweeney speaking.  And the Question Number 6 of the

2 special verdict form says:

3            "Please determine the economic loss,

4        if any, incurred by Plaintiff, Ensource

5        Investments, LLC, as a result of the

6        violation of Rule 10(b)(5) of the

7        Securities and Exchange Act."

8            So on the special verdict form, the jury was asked

9 for the total amount of damages it attributed -- the total

10 amount of economic damages it attributed to Plaintiff's

11 injury.  It did not specifically ask for the portion of

12 damages it attributed to any misrepresentations made by Mr.

13 Willis.

14            So we believe that the amount, the $205,000 as

15 awarded by the jury in the question on the special verdict

16 form was capped with the full amount of the injury as

17 Plaintiff -- that Plaintiff was entitled to recover for his

18 economic damages.  So any setoff amount by Mr. Tathum would be

19 reduced from that amount.

20            THE COURT:  But because the only Defendant was in

21 the earlier questions, your client, and not Mr. -- there's

22 nowhere in the form that it requests any amount for Mr.

23 Tathum, can the Plaintiff make the argument that the

24 communications on -- between Tathum and the Plaintiff were one

25 subset and the communications by Mr. Willis and the Plaintiffs

8

1 were another subset, so that it's not coextensive?

2          MS. SWEENEY:  I don't -- I don't believe so, your

3 Honor.  This is Shannon again.  Under the Ninth Circuit

4 authority, case C.B. v. City of Sonora, 769 F.3d 1005, the

5 jury can -- can or must apportion fault for non-economic

6 damages when, as here, economic damages are sought.  The jury

7 cannot apportion damages between alleged joint tortfeasors.

8 So it would have been inappropriate for the jury to be

9 determining one subset as to one Defendant and one subset as

10 to the other.  Plaintiff made it very clear they were just

11 seeking economic damages.  And so that is the entire subset

12 from which we must derive the setoffs.

13          THE COURT:  Any other arguments by the Defendants?

14          MS. SWEENEY:  Not right now, your Honor, unless we

15 have something after -- after Plaintiffs.

16          THE COURT:  All right.  Thank you.  And then let's

17 hear from the Plaintiffs.  And I agree with the Defense on the

18 waiver issue in the answer.  It isn't even ripe at that point.

19 There may be an issue under the pretrial order because the

20 pretrial order supersedes the pleadings.  So you may proceed.

21          MR. SADOCK:  Your Honor, this is Aaron Sadock

22 speaking.  I would like to start off with putting things in

23 context in terms of this being an extraordinary remedy that is

24 usually held out for mistake by the Court.  (Indiscernible)

25 all this stems from mistake by the Plaintiffs.  There was

9

1 months of discussions and knowledge where the Plaintiffs were
2 aware of a settlement agreement.  The hearings with Judge
3 Lopez were truly discovery theories regarding their desire to
4 seek the deposition of Tom Tathum rather than offset remedies.
5 This is an issue that could have been addressed then, could
6 have been addressed prior to or during the settlement
7 discussions if the Plaintiffs were aware of it.  It could have
8 been addressed at the pretrial order, the jury verdict, and at
9 trial, which leads to a second highlight, which is really the
10 prejudice to the Plaintiffs.

11        The <u>Borges</u> case reference is directly off point.
12 The Plaintiffs waited to add that case until the eve of trial.
13 The Plaintiff submitted email exchanges between myself and Ms.
14 Sweeney where I'm arguing the prejudice that this causes delay
15 on the business day before trial.  We had no intention of
16 waiving or grant the offset.  We had an intention of arguing
17 it if she brought it up to the Court.

18        The fact that the Plaintiff didn't bring it to the
19 Court's attention clearly puts prejudice as defined in that
20 case on the settlement agreement, puts prejudice on the trial
21 itself, the fact that we couldn't address this in the pretrial
22 order, the jury verdict or during the trial itself.

23        And the biggest point, which is the jury, in the
24 whole trial -- we were all there -- was about Willis' actions.
25 They did not take into account Mr. Tathum's actions, the cost

10

1 of his actions.

2          The third point I'd like to highlight from my

3 pleadings is there are a number of assumptions that the

4 Plaintiffs are making.  They're assuming that they know

5 signing the agreement would have been bad.  They're assuming

6 they included, in fact, causes of action that were addressed

7 at trial.  They assume it includes the same parties.  And all

8 of which are pure assumptions.

9          Regardless of that fact and our objections and our

10 motion to strike, it comes down to will the Plaintiff be made

11 whole.  Now, the Court highlights the amount awarded, which

12 was a -- which, in fact, is less than what we asked for or

13 that undisputed fact.  We have no idea what the jury would

14 have awarded if this issue was brought up with the Court and

15 during trial.  And the fact that we don't know how the jury

16 would have awarded the damages means this motion inherently --

17 inherently results in prejudice to our client, injustice, and

18 should be denied.

19          I'm more than happy to address any other points

20 that the Court would like us to expand upon.

21          THE COURT:  Can -- can both sides refresh the

22 Court's recollection, who had the initial conversations with

23 the one plaintiff that made the investment and then he got his

24 buddies in?

25          MR. SADOCK:  That was Mr. Willis.  And, to expand

11

1 on that line of logic, we inherently focused our trial on the

2 pretrial order, on the jury verdict.  Hence, there's no

3 prejudice during the trial, not just the settlement and not

4 just after the fact.  This whole case was on Mr. Willis.

5          MS. SWEENEY:  Your Honor --

6          THE COURT:  Yeah, can you agree or disagree?

7          MS. SWEENEY:  Your Honor, we -- we agree that Mr.

8 Willis was the one who contacted or who was discussing it with

9 Chad Martin, but the testimony at trial was that after the

10 initial conversation, Mr. Tathum was the one who handled all

11 of the information providing and information receiving with

12 Plaintiffs.  Moreover, the testimony at trial over and over

13 and over again was that the very items of evidence that was

14 contended to contain misrepresentations, the PowerPoint

15 presentations, the pitch decks, were not drafted or authored

16 by Mr. Willis.  They were either drafted by a third party or

17 by Mr. Tathum, which was the reason why Plaintiff wanted

18 control person liability to be at issue, because they

19 contended that it was Mr. Tathum who actually made the

20 representations and that Mr. Willis should be responsible for

21 them.

22          MR. ZARCONI:  Your Honor, this is Mike Zarconi.

23          THE COURT:  Yes.

24          MR. ZARCONI:  If I could add one point to that.

25 It's critical to recognize that these two individuals were

*Echo Reporting, Inc.*

12

1  jointly and severally liable purely because of their roles as

2  co-managers of the Hopewell Company.  And so any action that

3  either one of them did, the other was entirely responsible

4  for.  And so the finding by the jury that the Plaintiff was

5  injured in an amount equal to $205,000 would be a finding that

6  absent the settlement with -- with Mr. Tathum would be equally

7  enforceable against either of the joint and several

8  Defendants.  And so here, what the jury has found is that the

9  Plaintiffs' harm in full, based on all of the evidence that

10 included Mr. Tathum's representations, was $205,000.  And the

11 Plaintiffs have already recovered what we believe to be a

12 portion of that from Mr. Tathum who is one of the joint and

13 several co-managers equally responsible.

14          MS. SWEENEY:  And this is Shannon Sweeney --

15          THE COURT:  Remind me again the breakout of the

16 205?  Was there logic to that?  Can you remind me about that?

17          MS. SWEENEY:  This is Shannon Sweeney.  There was

18 no logic provided by the jury other than that provided in the

19 hallway after trial as to the $205,000.  And --

20          THE COURT:  No, but there was a basis in the

21 evidence.  There was a basis in the evidence for that.

22          MR. SADOCK:  Your Honor, this is Aaron Sadock.  I

23 remember during trial at the time at -- myself and Ms. Sweeney

24 arguing with you the basis for that 205, and we know the basis

25 was the time line in which that 205 too, place and

13

1 representations made by Mr. Willis.

2          THE COURT:  Yes.  Okay.  And so some -- and so the

3 jury could -- the evidence could support that the specific

4 representations made by Willis as to the 205, Mr. Tathum could

5 have been liable for later claims which the jury didn't effect

6 as to Mr. Willis.

7          MS. SWEENEY:  Your Honor, this is Shannon Sweeney.

8 The tranches of investments that were made by Plaintiffs, the

9 first was in the amount of $205,000.  Then the very next day

10 there was a $20,000 investment, and then a month later there

11 was another $205,000.  If we are to assume that the jury was

12 determining its -- the injury based on that, it would not make

13 sense that the jury was discussing or meaning to compensate

14 for the second tranche of $205,000.  It would have to be the

15 first one.  And there was no evidence whatsoever, and there is

16 no evidence that that $205,000 was for anything specifically

17 said or represented by Mr. Willis.  The evidence showed that

18 Mr. Tatham was the one doing all of the due diligence.  He was

19 the one making the representations.  He was the one putting

20 together the PowerPoint presentations.  And so I disagree

21 wholeheartedly that that amount of money could be attributed

22 to Mr. Willis individually or personally.

23          MR. SADOCK:  Your Honor, may I respond?  This is

24 Aaron Sadock.

25          THE COURT:  Yes.

14

1          MR. SADOCK:  This whole argument is -- was the

2 point in the <u>Borges</u> case.  We are talking about speculation

3 about what the jury was thinking about.  We're talking about

4 assumptions about what was taking place during the trial.  But

5 the <u>Borges</u> case talks about the prejudice and goes back that

6 the Plaintiffs could not address these things with the jury

7 during trial.  The Defendants made many efforts in the trial

8 to show that it's not just Willis, look at Tom, and

9 (indiscernible) what we looked at, other witnesses to try to

10 save not just Willis.  The jury had every opportunity to hear

11 side arguments about testimony given, but the jury was never

12 given the opportunity to say, well, how much should we offset,

13 how much should be attributable to Mr. Tathum.  None of that

14 was addressed by the jury.  In fact, (indiscernible) as to

15 exactly why (indiscernible) denied that motion, including

16 inherent prejudice.  The jury made a ruling.  They ruled an

17 amount under the amount sought.  And to -- to allow it to be

18 offset would create an inherent injustice to the Plaintiffs.

19 It would have been way too much speculation on what the jury

20 would have done.

21          THE COURT:  Does anybody else have any additional

22 argument or responses?

23          MS. MCKNIGHT:  Yes, your Honor.  This is Bonnie --

24 Shannon, if you don't mind me just adding onto what Aaron just

25 said.

15

1          MS. SWEENEY:  Sure.

2          MS. MCKNIGHT:  This is Bonnie McKnight.  Thank you.

3          THE COURT:  You may.  You're welcome.

4          MS. MCKNIGHT:  I appreciate it.  Thank you, your

5 Honor.

6          Just to add onto what Mr. Sadock has raised

7 regarding one of the things that the Defense Counsel raises is

8 , you know, mixing facts regarding the control person

9 liability here, and I think it's really important, as your

10 Honor has noted earlier, to distinguish the different conduct

11 between Mr. Willis, Mr. Tathum.  And also I want to raise PBT

12 Management.  They haven't raised PBT Management at all.  PBT

13 Management's role, as laid out in the complaint, is separate

14 as well completely from the conduct of Mr. Willis.  And so,

15 you know, the Defense conveniently glosses over that.

16          The other clarifying point I wanted to make is that

17 Mr. Stanley acted on behalf of Mr. Willis, and the testimony

18 supports from trial that, you know, Mr. Willis was ultimately

19 the shot caller.  Supporting that the different actions by Mr.

20 Willis and Mr. Tathum and anyone else are separate and,

21 therefore, are not indivisible as the Defense is stating.

22          So that's what I wanted to add.  Thank you.

23          THE COURT:  Any reply?

24          MS. SWEENEY:  Yes, your Honor.  This is Shannon

25 Sweeney.  If you look at the third amended and restated

16

1 company agreement of Hopewell Pilot Project, LLC, which is

2 Exhibit G to my declaration of this motion, and it was Exhibit

3 D at trial, Section 6.3 was the one that makes Willis and

4 Tathum jointly and severally liable and responsible for all

5 conduct, all decisions, all representations made by Hopewell.

6 So the -- the evidence is not that Mr. Willis by himself was

7 responsible for statements made by Mr. Stanley.

8         The evidence, according to that document, the

9 governing document of Hopewell, is that both Tathum and Willis

10 are responsible for all statements made on behalf of Hopewell.

11         THE COURT:  All right.  Thank you.

12         The Court will submit the motion.

13         ALL:  Thank you, your Honor.

14      (Proceedings concluded.)

15

16

17

18

19

20

21

22

23

24

25

17

1            I certify that the foregoing is a correct

2 transcript from the electronic sound recording of the

3 proceedings in the above-entitled matter.

4

5 /s/Jordan Keilty                    6/19/20
  Transcriber                         Date

6
  FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:
7

8 /s/L.L. Francisco
  L.L. Francisco, President
9 Echo Reporting, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25